## 22-2256 (L), 22-2296

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

### *for the*

# 𝔉𝔬𝔲𝔯𝔱𝔥 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

---

CCWB ASSET INVESTMENTS, LLC; and M.C. DEAN, INC.,

*Claimants-Appellants,*

EBC ASSET INVESTMENT, LLC; JEFFREY J. CONNAUGHTON; IWONA HOWLEY; RICHY CASTRO; TONY DAVIS; ROCHELLE KATZ; BARBARA LOUDERBACK; SCOTT D. OSER; OJAS PATEL; PULIN PATEL; DHAVAL SHUKLA; NISHANT SHUKLA,

*Claimants,*

*(For Continuation of Caption See Inside Cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND AT BALTIMORE IN CASE NO. 1:18-CV-02844-RDB RICHARD D. BENNETT, SENIOR U. S. DISTRICT COURT JUDGE

---

# JOINT APPENDIX

---

DANIEL G. SOLOMON
HUSCH BLACKWELL LLP
1801 Pennsylvania Avenue, NW
Suite 1000
Washington, DC 20006
(202) 378-2391
danny.solomon@huschblackwell.com

*Counsel for Receiver-Appellee*

ROBERT F. MUSE
RACHEL M. CLATTENBURG
RONALD KOVNER
LEVY FIRESTONE MUSE LLP
900 17th Street, NW, Suite 1200
Washington, DC 20006
(202) 845-3215
rmuse@levyfirestone.com
rmc@levyfirestone.com
rk@levyfirestone.com

*Counsel for Claimants-Appellants*

---

– and –

SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff,*

UNITED STATES OF AMERICA,

*Intervenor/Plaintiff,*

MASSACHUSETTS ATTORNEY GENERAL,

*Intervenor,*

– v. –

GREGORY S. MILLIGAN,

*Receiver-Appellee,*

RANDEL LEWIS,

*Receiver,*

– and –

KEVIN B. MERRILL; JAY B. LEDFORD; CAMERON R. JEZIERSKI; GLOBAL CREDIT RECOVERY, LLC; DELMARVA CAPITAL, LLC; RHINO CAPITAL HOLDINGS, LLC; RHINO CAPITAL GROUP, LLC; DEVILLE ASSET MANAGEMENT LTD; RIVERWALK FINANCIAL CORPORATION; AMANDA MERRILL; LALAINE LEDFORD; MAUREEN STEPHENS; ERICKA JOHNSON,

*Defendants.*

# TABLE OF CONTENTS

District Court Docket Sheet ...................................................................................JA1

Amended Complaint
        Filed November 6, 2018 ............................................................................JA53

First Amended Order Appointing Temporary Receiver
        Filed November 27, 2018 .........................................................................JA104

Receiver Gregory S. Milligan's First Quarterly Status Report for the Period
Between September 13, 2018 and December 31, 2018
        Filed January 30, 2019.............................................................................JA132

Order Granting Motion to Authorize the Receiver to Identify Claimants and
Creditors and Propose a Plan of Distribution
        Filed October 4, 2019 ..............................................................................JA165

Receiver Gregory S. Milligan's Motion for Order Setting Claims Bar Date,
Establishing Claims Procedure, and Approving Notification Process
        Filed February 9, 2021.............................................................................JA166

        Exhibit B – Investor Notice of Claims Procedure and Claims
        Bar Date ....................................................................................JA194

        Exhibit C – Attachment B – Schedule...................................................JA200

Order Granting Receiver Gregory S. Milligan's Motion for Order Setting Claims
Bar Date, Establishing Claims Procedure, and Approving Notification Process
        Filed February 10, 2021...........................................................................JA203

Receiver Gregory S. Milligan's Motion for Order Approving Distribution Plan and
Interim Distribution
        Filed November 17, 2021 .........................................................................JA210

        Exhibit A – Declaration of Gregory S. Milligan ...................................JA240

        Exhibit B – Distribution Schedule..........................................................JA244

i

Objections of Investors CCWB Asset Investments, LLC, EBC Asset Investment, Inc., and M.C. Dean, Inc. to the Receiver's Motion for Order Approving Distribution Plan and Interim Distribution
> Filed January 3, 2022................................................................JA249

> Declaration of Eric Dean .......................................................JA260

> Exhibit A – Cash Flow/ Capital Reconciliation .....................................JA265

> Exhibit B – Cash Flow/ Capital Reconciliation ....................................JA269

> Exhibit C – Cash Flow/ Capital Reconciliation ....................................JA272

> Exhibit D.....................................................................JA275

Objection of the *Connaughton* Objections to the Receiver's Motion for Order Approving Distribution Plan and Interim Distribution
> Filed January 3, 2022................................................................JA277

> Exhibit B – Order Implementing Approved Second Amended Distribution Plan ......................................................................JA290

Corrected Exhibit A
> Filed January 5, 2022................................................................JA312

Receiver Gregory S. Milligan's Reply to Objections of Investors CCWB Asset Investments, LLC, EBC Asset Investment, Inc., and M.C. Dean, Inc. to the Receiver's Motion for Order Approving Distribution Plan and Interim Distribution
> Filed January 31, 2022..............................................................JA314

> Exhibit A – Declaration of Robert Klamser ..........................................JA331

> Exhibit B – Declaration of Erik White ...................................JA350

Surreply of Investors CCWB Asset Investments, LLC, EBC Asset Investment, Inc., and M.C. Dean, Inc. to the Receiver's Reply to Objections to the Receiver's Motion for Order Approving Distribution Plan and Interim Distribution
> Filed February 16, 2022............................................................JA435

> Second Declaration of Eric Dean ........................................JA445

Exhibit A – CCWB Distributions and Expenses ....................................JA448

Exhibit B – EBC Distributions and Expenses .........................................JA450

Exhibit C – Investor Notice of Claims Procedure and Claims
Bar Date ...................................................................................JA453

Transcript of Motions Hearing before the Hon. Richard D. Bennett
Heard November 15, 2022...................................................................JA459

Dean Investors' Exhibit List
Filed November 15, 2022 ....................................................................JA560

Exh. 1A – Receiver's Motion, Exhibit B ..............................................JA561

Exh. 1B – CCWB: Receiver's Method - $10m Missing .......................JA562

Exh. 1C – CCWB: Huber Method..........................................................JA563

Exh. 1D – CCWB numbers ....................................................................JA564

Order Granting Receiver Gregory S. Milligan's Motion for Order Approving
Distribution Plan and Interim Distribution
Filed November 15, 2022 ....................................................................JA565

Memorandum Order Overruling Objections
Filed November 18, 2022 ....................................................................JA568

Notice of Appeal
Filed December 5, 2022........................................................................JA576

iii

3/2/23, 9:24 AM                          District of Maryland (CM/ECF Live NextGen 1.6)

**Query**   **Reports**   **Utilities**   **Help**   **Log Out**

APPEAL,STAYED

# U.S. District Court
## District of Maryland (Baltimore)
## CIVIL DOCKET FOR CASE #: 1:18-cv-02844-RDB

Securities and Exchange Commission v. Merrill et al          Date Filed: 09/13/2018
Assigned to: Judge Richard D. Bennett                        Jury Demand: Plaintiff
Case in other court: US Court of Appeals for the 4th Cicuit, 22-02256   Nature of Suit: 850 Securities/Commodities
                    US Court of Appeals for the 4th Cicuit, 22-02296    Jurisdiction: U.S. Government Plaintiff
Cause: 15:77 Securities Fraud

**Plaintiff**

**Securities and Exchange Commission**          represented by   **John T Crutchlow**
                                                                Youman & Caputo, LLC
                                                                Two Logan Square
                                                                100-120 N. 18th Street
                                                                Suite 1925
                                                                Philadelphia, PA 19103
                                                                215-302-1999
                                                                Email: jcrutchlow@youmancaputo.com
                                                                *TERMINATED: 01/13/2023*
                                                                *LEAD ATTORNEY*

                                                                **Judson Thomas Mihok**
                                                                Securities and Exchange Commission
                                                                1617 JFK Boulevard
                                                                Suite 520
                                                                Philadelphia, PA 19103
                                                                215-597-6500
                                                                Fax: 215-597-0684
                                                                Email: MihokJ@SEC.gov
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Catherine E Pappas**
                                                                Securities and Exchange Commission
                                                                1617 JFK Blvd., Ste. 520
                                                                Philadelphia, PA 19103
                                                                215-597-0657
                                                                Fax: 215-597-2740
                                                                Email: pappasc@sec.gov
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Jennifer Chun Barry**
                                                                Securities And Exchange Commission
                                                                One Penn Center
                                                                1617 JFK Blvd. Ste. 520
                                                                Philadelphia, PA 19103
                                                                2155973100
                                                                Fax: 2155972740
                                                                Email: barryj@sec.gov
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Julia C Green**
                                                                Securities and Exchange Commission
                                                                1617 JFK Blvd

JA1

Suite 520
Philadelphia, PA 19103
267-602-2133
Email: greenju@sec.gov
*ATTORNEY TO BE NOTICED*

**Mark Sylvester**
Securities and Exchange Commission
200 Vesey St., Ste 400
New York, NY 10281
(212) 336-1100
Fax: (301) 623-1193
Email: sylvesterm@sec.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Intervenor Plaintiff**

**United States of America**                        represented by **John Joseph Truex Chung**
United States Attorneys Office
36 S Charles St
4th Fl
Baltimore, MD 21201
4102094987
Fax: 4109620693
Email: john.chung3@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Joyce K McDonald**
Office of the United States Attorney
36 S Charles St Fourth Fl
Baltimore, MD 21201
14102094800
Fax: 14109623091
Email: Joyce.McDonald@usdoj.gov
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Kevin B. Merrill**
*TERMINATED: 09/09/2019*

**Defendant**

**Jay B. Ledford**                        represented by **Jay B. Ledford**
*TERMINATED: 08/31/2022*                        1563752
Howard County Department of Corrections
7301 Waterlook Road
Jessup, MD 20794
PRO SE

**Jack T Jamison**
1509 Main St. #205
Dallas, TX 75201
4698029451
Email: jack@jackjamisonattorney.com
*TERMINATED: 02/01/2019*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

JA2

District of Maryland (CM/ECF Live NextGen 1.6)

**Joshua R Treem**
Brown Goldstein Levy LLP
120 E Baltimore St., Ste. 2500
Baltimore, MD 21202
14109621030
Fax: 14103850869
Email: jtreem@browngold.com
*TERMINATED: 08/16/2019*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Cameron R. Jezierski**
*TERMINATED: 08/01/2019*

represented by **Joseph J Aronica**
Duane Morris LLP
901 New York Avenue, NW
Suite 700 East
Washington, DC 20001
202-776-7824
Fax: 202-478-1885
Email: jjaronica@duanemorris.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Global Credit Recovery, LLC**
*TERMINATED: 08/31/2022*

**Defendant**

**Delmarva Capital, LLC**
*TERMINATED: 08/31/2022*

**Defendant**

**Rhino Capital Holdings, LLC**
*TERMINATED: 08/31/2022*

**Defendant**

**Rhino Capital Group, LLC**
*TERMINATED: 08/31/2022*

**Defendant**

**DeVille Asset Management LTD**
*TERMINATED: 08/31/2022*

**Defendant**

**Riverwalk Financial Corporation**
*TERMINATED: 08/31/2022*

**Defendant**

**Amanda Merrill**

represented by **Robert W Biddle**
Nathans and Biddle LLP
120 E Baltimore St Ste 1800
Baltimore, MD 21202
14107830272
Fax: 14107830518
Email: biddle@nathanslaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Lalaine Ledford**
*TERMINATED: 08/31/2022*

represented by **Christopher James Martin**
The C. J. Martin Law Group
1 Research Court

JA3

District of Maryland (CM/ECF Live NextGen 1.6)

                                                        Suite 450
                                                        Rockville, MD 20850
                                                        240-670-5522
                                                        Email: cmartin@cjmartinlaw.com
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Patrick R Driscoll**
                                                        The Law Offices of Patrick Driscoll LLC
                                                        2470 St. Rose Park Ste. 105
                                                        Henderson, NV 89074
                                                        7023888300
                                                        Email: pdriscoll@patrickdriscolllaw.com
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

**Defendant**

**Maureen Stephens**                    represented by **Craig B Sanders**
                                                        Sanders Law Group
                                                        333 Earle Ovington Boulevard
                                                        Suite 402
                                                        Uniondale, NY 11553
                                                        516-203-7600
                                                        Fax: 516-282-7878
                                                        Email: csanders@sanderslaw.group
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

**Defendant**

**Ericka Johnson**                      represented by **Craig B Sanders**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

V.

**Movant**

**International Fidelity Insurance Company**    represented by **Michael Alden Stover**
                                                        Wright, Constable & Skeen
                                                        7 Saint Paul Street
                                                        18th Floor
                                                        Baltimore, MD 21202
                                                        14106591321
                                                        Fax: 14106591350
                                                        Email: mstover@wcslaw.com
                                                        *ATTORNEY TO BE NOTICED*

V.

**Interested Party**

**EagleBank**                           represented by **Ryan Scott Spiegel**
*TERMINATED: 12/11/2019*                                Thompson Hine LLP
                                                        1919 M Street, NW
                                                        Suite 700
                                                        Washington, DC 20036-3537
                                                        202-973-2742
                                                        Email: ryan.spiegel@thompsonhine.com
                                                        *LEAD ATTORNEY*

**Interested Party**

JA4

**PNC Bank, National Association**                    represented by **Beverly Weiss Manne**
Tucker Arensberg, P.C.
1500 One PPG Place
Pittsburgh, PA 15222
412-594-5525
Fax: 412-594-5619
Email: bmanne@tuckerlaw.com
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Harrison Gray**                    represented by **Lee Bryan Rauch**
Funk & Bolton, P.A.
100 Light Street
Suite 1400
Baltimore, MD 21202
410-659-7700
Fax: 410-659-7773
Email: lrauch@fblaw.com
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Charles Gray**                    represented by **Lee Bryan Rauch**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Claimant**

**CCWB Asset Investments, LLC**                    represented by **Robert F Muse**
Levy Firestone Muse LLP
900 17th Street, NW
Ste 1200
20006
Washington, DC 20006
202-517-7256
Fax: 202-595-8253
Email: rmuse@cunninghamlevy.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rachel M. Clattenburg**
Levy Firestone Muse LLP
Ste 600
900 17th St. NW
Suite 1200
Washington, DC 20006
202-845-3215
Email: rmc@levyfirestone.com
*ATTORNEY TO BE NOTICED*

**Claimant**

**ECB Asset Investment, LLC**                    represented by **Robert F Muse**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rachel M. Clattenburg**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Claimant**

**M.C. Dean, Inc.**                    represented by **Robert F Muse**
(See above for address)

JA5

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rachel M. Clattenburg**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Claimant**

**Jeffrey J. Connaughton**                    represented by    **Monica Evan Miller**
Cuneo Gilbert and LaDuca
4725 Wisconsin Avenue NW
Suite 200
Washington, DC 20016
2027893960
Fax: 2027891813
Email: monica@cuneolaw.com
*ATTORNEY TO BE NOTICED*

**Claimant**

**Iwona Howley**                              represented by    **Laurie Goon Furshman**
Duane Morris LLP
100 International Drive, Suite 700
Baltimore, MD 21202
14109492943
Fax: 14105101274
Email: lbgoon@duanemorris.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sam Della Fera , Jr.**
Chiesa Shahinian and Giantomasi PC
One Boland Drive
West Orange, NJ 07052
9735302076
Fax: 9733251501
Email: sdellafera@csglaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Claimant**

**Richy Castro**                              represented by    **Kristi Cahoon Kelly**
Kelly Guzzo
3925 Chain Bridge Road Suite 202
Fairfax, VA 22030
7034247572
Fax: 7035910167
Email: kkelly@kellyguzzo.com
*ATTORNEY TO BE NOTICED*

**Claimant**

**Tony Davis**

**Claimant**

**Rochelle Katz**

**Claimant**

**Barbara Louderback**

**Claimant**

**Scott D Oser**

JA6

**Claimant**

**Ojas Patel**

**Claimant**

**Pulin Patel**

**Claimant**

**Dhaval Shukla**

**Claimant**

**Nishant Shukla**

**Intervenor**

**Massachusetts Attorney General**                    represented by   **Ira Eliot Hoffman**
Butzel Long PC
1909 K Street NW Ste 500
Washington, DC 20006
2024542849
Fax: 2024542805
Email: hoffmani@butzel.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David G Lim**
Massachusetts Attorney General's Office
One Ashburton Place
18th Floor
Boston
Boston, MA 02108
617-963-2137
Email: david.g.lim@mass.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Receiver**

**Gregory S. Milligan**                              represented by   **Brian Paul Waagner**
Husch Blackwell LLP
1801 Pennsylvania Ave, N.W.
Suite 1000
Washington, DC 20006-3606
202-378-2355
Fax: 202-378-2319
Email: brian.waagner@huschblackwell.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Buffey Klein**
Husch Blackwell LLP
1900 N. Pearl, Suite 1800
Dallas, TX 75201
2149996152
Fax: 2149996170
Email: buffey.klein@huschblackwell.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jameson J Watts**
Husch Blackwell LLP

JA7

District of Maryland (CM/ECF Live NextGen 1.6)

111 Congress Avenue Ste 1400
Austin, TX 78701
5124725456
Fax: 5124791101
Email: jameson.watts@huschblackwell.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lynn H Butler**
Husch Blackwell LLP
111 Congress Ave., Ste. 1400
Austin, TX 78701
5124799758
Fax: 5124791101
Email: lynn.butler@huschblackwell.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Receiver**

**Randel Lewis**                                    represented by **Matthew G Summers**
Ballard Spahr LLP
300 E Lombard St 18th Fl
Baltimore, MD 21202
14105285679
Fax: 4103618930
Email: summersm@ballardspahr.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 09/13/2018 | 1 | COMPLAINT against DeVille Asset Management LTD, Delmarva Capital, LLC, Global Credit Recovery, LLC, Cameron R. Jezierski, Jay B. Ledford, Kevin B. Merrill, Rhino Capital Group, LLC, Rhino Capital Holdings, LLC, Riverwalk Financial Corporation, filed by Securities and Exchange Commission. (Attachments: # 1 Civil Cover Sheet) (jnls, Deputy Clerk) (Entered: 09/13/2018) |
| 09/13/2018 | 2 | MOTION to Seal Complaint, Motion for TRO and Related Papers by Securities and Exchange Commission (Attachments: # 1 Text of Proposed Order) (jnls, Deputy Clerk) (Entered: 09/13/2018) |
| 09/13/2018 | 3 | MOTION for Temporary Restraining Order, MOTION to Appoint Receiver by Securities and Exchange Commission (Attachments: # 1 Memorandum in Support, # 2 Declaration of Julia C., # 3 Exhibit 1 Gregory Milligan Resume, # 4 Exhibit 2 Redacted Proposed Temporary Restraining Order, # 5 SEALED Exhibit 2 Unredacted Proposed Temporary Restraining Order, # 6 Exhibit 3 Proposed Order Appointing Temporary Receiver, # 7 Declaration of Dustin Ruta, # 8 Declaration of Dustin Ruta- Redacted Exhibit 1, # 9 Declaration of Dustin Ruta- Redacted Exhibit 2, # 10 Declaration of Dustin Ruta- Redacted Exhibit 3, # 11 Declaration of Dustin Ruta- Redacted Exhibit 4, # 12 Declaration of Dustin Ruta- Redacted Exhibit 5, # 13 Declaration of Dustin Ruta- Redacted Exhibit 6, # 14 Declaration of Dustin Ruta- Redacted Exhibit 7, # 15 Declaration of Dustin Ruta- Redacted Exhibit 8, # 16 Declaration of Dustin Ruta- Redacted Exhibit 9, # 17 Declaration of Dustin Ruta- Redacted Exhibit 10, # 18 Declaration of Dustin Ruta- Redacted Exhibit 11, # 19 Declaration of Dustin Ruta- Redacted Exhibit 12, # 20 Declaration of Dustin Ruta- Redacted Exhibit 13, # 21 Declaration of Dustin Ruta- Redacted Exhibit 14, # 22 Declaration of Dustin Ruta- Redacted Exhibit 15, # 23 Declaration of Dustin Ruta- Redacted Exhibit 16, # 24 Declaration of Dustin Ruta- Redacted Exhibit 17, # 25 Declaration of Dustin Ruta- Redacted Exhibit 18, # 26 Declaration of Dustin Ruta- Redacted Exhibit 19, # 27 Declaration of Dustin Ruta- Redacted Exhibit 20, # 28 Declaration of Dustin Ruta- Redacted Exhibit 21, # 29 Declaration of Dustin Ruta- Redacted Exhibit 22, # 30 Declaration of Dustin Ruta- Redacted Exhibit 23, # 31 Declaration of Dustin Ruta- Redacted Exhibit 24, # 32 Declaration of Dustin Ruta- Redacted Exhibit 25, # 33 Declaration of Dustin Ruta- Redacted Exhibit 26, # 34 Declaration of Dustin Ruta- Redacted Exhibit 27, # 35 Declaration of Dustin Ruta- Redacted Exhibit 28, # 36 Declaration of Dustin Ruta- Redacted Exhibit 29, # 37 Declaration of Dustin Ruta- Redacted Exhibit 30, # 38 Declaration of Dustin Ruta- Redacted Exhibit 31, # 39 Declaration of Dustin Ruta- Redacted Exhibit 32, # 40 Declaration of Dustin Ruta- Redacted Exhibit 33, # 41 Declaration of Dustin Ruta- Redacted Exhibit 34, # 42 Declaration of Dustin Ruta- Redacted Exhibit 35, # 43 Declaration of Dustin Ruta- Redacted Exhibit 36, # 44 Declaration of Dustin Ruta- Redacted Exhibit |

JA8

37, # [45](#) Declaration of Dustin Ruta-Redacted Exhibit 38, # [46](#) Declaration of Dustin Ruta- Redacted Exhibit 39, # [47](#) Declaration of Dustin Ruta- Redacted Exhibit 40, # [48](#)Declaration of Dustin Ruta- Redacted Exhibit 41, # [49](#) Declaration of Dustin Ruta- Redacted Exhibit 42, # [50](#) Declaration of Dustin Ruta- Redacted Exhibit 43, # [51](#) Declaration of Dustin Ruta- Redacted Exhibit 44, # [52](#) Declaration of Dustin Ruta- Redacted Exhibit 45, # [53](#) Declaration of Dustin Ruta- Redacted Exhibit 46, # [54](#) Declaration of Dustin Ruta- Redacted Exhibit 47, # [55](#) Declaration of Dustin Ruta- Redacted Exhibit 48, # [56](#) Declaration of Dustin Ruta- Redacted Exhibit 49, # [57](#) Declaration of Dustin Ruta- Redacted Exhibit 50, # [58](#) Declaration of Dustin Ruta- Redacted Exhibit 51, # [59](#) Declaration of Dustin Ruta- Redacted Exhibit 52, # [60](#) Declaration of Dustin Ruta- Redacted Exhibit 53, # [61](#) Declaration of Dustin Ruta- Redacted Exhibit 54, # [62](#) Declaration of Dustin Ruta- Redacted Exhibit 55, # [63](#) Declaration of Dustin Ruta- Redacted Exhibit 56, # [64](#) Declaration of Dustin Ruta- Redacted Exhibit 57, # [65](#) Declaration of Dustin Ruta- Redacted Exhibit 58, # [66](#) Declaration of Dustin Ruta- Redacted Exhibit 59, # [67](#) Declaration of Dustin Ruta- Redacted Exhibit 60, # [68](#) Declaration of Dustin Ruta- Redacted Exhibit 61, # [69](#) Declaration of Dustin Ruta- Redacted Exhibit 62, # [70](#) Declaration of Dustin Ruta- Redacted Exhibit 63, # [71](#) Declaration of Dustin Ruta- Redacted Exhibit 64, # [72](#) Declaration of Dustin Ruta- Redacted Exhibit 65, # [73](#) Declaration of Dustin Ruta- Redacted Exhibit 66, # [74](#) Declaration of Dustin Ruta- Redacted Exhibit 67, # [75](#) Declaration of Dustin Ruta- Redacted Exhibit 68, # [76](#) Declaration of Dustin Ruta- Redacted Exhibit 69, # [77](#) Declaration of Dustin Ruta- Redacted Exhibit 70, # [78](#) Declaration of Dustin Ruta- Redacted Exhibit 71, # [79](#) Declaration of Dustin Ruta- Redacted Exhibit 72, # [80](#) Declaration of Dustin Ruta- Redacted Exhibit 73, # [81](#) Declaration of Dustin Ruta- Redacted Exhibit 74, # [82](#) Declaration of Dustin Ruta- Redacted Exhibit 75, # [83](#) Declaration of Dustin Ruta- Redacted Exhibit 76, # [84](#) Declaration of Dustin Ruta- Redacted Exhibit 77, # [85](#) Declaration of Dustin Ruta- Redacted Exhibit 78, # [86](#) Declaration of Dustin Ruta- Redacted Exhibit 79, # [87](#) Declaration of Dustin Ruta- Redacted Exhibit 80, # [88](#) Declaration of Dustin Ruta- Redacted Exhibit 81, # [89](#) Declaration of Dustin Ruta- Redacted Exhibit 82, # [90](#) Declaration of Dustin Ruta- Redacted Exhibit 83, # [91](#) Declaration of Dustin Ruta- Redacted Exhibit 84, # [92](#) Declaration of Dustin Ruta- Redacted Exhibit 85, # [93](#) Declaration of Dustin Ruta- Redacted Exhibit 86, # [94](#) Declaration of Dustin Ruta- Redacted Exhibit 87, # [95](#) Declaration of Dustin Ruta- Redacted Exhibit 88, # [96](#) Declaration of Dustin Ruta- Redacted Exhibit 89, # [97](#) Declaration of Dustin Ruta-R edacted Exhibit 90, # [98](#) Declaration of Dustin Ruta- Redacted Exhibit 91, # [99](#) Declaration of Dustin Ruta- Redacted Exhibit 92, # [100](#) Declaration of Dustin Ruta- Redacted Exhibit 93, # [101](#) Declaration of Dustin Ruta- Redacted Exhibit 94, # [102](#) Declaration of Dustin Ruta- Redacted Exhibit 95, # [103](#) Declaration of Dustin Ruta- Redacted Exhibit 96, # [104](#) Declaration of Dustin Ruta- Redacted Exhibit 97, # [105](#) Declaration of Dustin Ruta- Redacted Exhibit 98, # [106](#) Declaration of Dustin Ruta- Redacted Exhibit 99, # [107](#) Declaration of Dustin Ruta- Redacted Exhibit 100, # [108](#) Declaration of Dustin Ruta- Redacted Exhibit 101, # [109](#) Declaration of Dustin Ruta- Redacted Exhibit 102, # [110](#) Declaration of Dustin Ruta- Redacted Exhibit 103, # [111](#) Declaration of Dustin Ruta- Redacted Exhibit 104, # [112](#) Declaration of Dustin Ruta- Redacted Exhibit 105, # [113](#) Declaration of Dustin Ruta- Redacted Exhibit 106, # [114](#) Declaration of Dustin Ruta- Redacted Exhibit 107, # [115](#) Declaration of Dustin Ruta- Redacted Exhibit 108, # [116](#) Declaration of Dustin Ruta- Redacted Exhibit 109, # [117](#) Declaration of Dustin Ruta- Redacted Exhibit 110, # [118](#) Redacted Exhibit 111, # [119](#) Declaration of Dustin Ruta- Redacted Exhibit 112, # [120](#) Declaration of Dustin Ruta- Redacted Exhibit 113, # [121](#) Declaration of Dustin Ruta- Redacted Exhibit 114, # [122](#) Declaration of Dustin Ruta- Redacted Exhibit 115, # [123](#) Declaration of Dustin Ruta- Redacted Exhibit 116, # [124](#) Declaration of Dustin Ruta- Redacted Exhibit 117, # [125](#) Declaration of Dustin Ruta- Redacted Exhibit 118, # [126](#) Declaration of Dustin Ruta- Redacted Exhibit 119, # [127](#) Declaration of Dustin Ruta- Redacted Exhibit 120, # [128](#) Declaration of Dustin Ruta- Redacted Exhibit 121, # [129](#) Declaration of Dustin Ruta- Redacted Exhibit 122, # [130](#) Declaration of Dustin Ruta- Redacted Exhibit 123, # [131](#) Declaration of Dustin Ruta- Redacted Exhibit 124, # [132](#) Declaration of Dustin Ruta- Redacted Exhibit 125, # [133](#) Declaration of Dustin Ruta- Redacted Exhibit 126, # [134](#) Declaration of Dustin Ruta- Redacted Exhibit 127, # [135](#) Declaration of Dustin Ruta- Redacted Exhibit 128, # [136](#) Declaration of Dustin Ruta- Redacted Exhibit 129, # [137](#) Declaration of Dustin Ruta- Redacted Exhibit 130, # [138](#) Declaration of Dustin Ruta- Redacted Exhibit 131)(jnls, Deputy Clerk) Modified on 9/13/2018 (jnls, Deputy Clerk). (Entered: 09/13/2018)

| 09/13/2018 | [4](#) | SEALED - UNREDACTED EXHIBITS re [3](#) Declaration of Dustin Ruta (Attachments: # [1](#) Exhibit 2, # [2](#) Exhibit 3, # [3](#) Exhibit 4, # [4](#) Exhibit 5, # [5](#) Exhibit 6, # [6](#) Exhibit 7, # [7](#) Exhibit 8, # [8](#) Exhibit 9, # [9](#) Exhibit 10, # [10](#) Exhibit 11, # [11](#) Exhibit 12, # [12](#) Exhibit 13, # [13](#) Exhibit 14, # [14](#) Exhibit 15, # [15](#) Exhibit 16, # [16](#) Exhibit 17, # [17](#) Exhibit 18, # [18](#) Exhibit 19, # [19](#) Exhibit 20, # [20](#) Exhibit 21, # [21](#) Exhibit 22, # [22](#) Exhibit 23, # [23](#) Exhibit 24, # [24](#) Exhibit 25, # [25](#) Exhibit 26, # [26](#) Exhibit 27, # [27](#) Exhibit 28, # [28](#) Exhibit 29, # [29](#) Exhibit 30, # [30](#) Exhibit 31, # [31](#) Exhibit 32, # [32](#) Exhibit 33, # [33](#) Exhibit 34, # [34](#) Exhibit 35, # [35](#) Exhibit 36, # [36](#) Exhibit 37, # [37](#) Exhibit 38, # [38](#) Exhibit 39, # [39](#) Exhibit 40, # [40](#) Exhibit 41, # [41](#) Exhibit 42, # [42](#) Exhibit 43, # [43](#) Exhibit 44, # [44](#) Exhibit 45, # [45](#) Exhibit 46, # [46](#) Exhibit 47, # [47](#) Exhibit 48, # [48](#) Exhibit 49, # [49](#) Exhibit 50, # [50](#) Exhibit 51, # [51](#) Exhibit 52, # [52](#) |

JA9

| | | |
|---|---|---|
| | | Exhibit 53, # [53] Exhibit 54, # [54] Exhibit 55, # [55] Exhibit 56, # [56] Exhibit 57, # [57] Exhibit 58, # [58] Exhibit 59, # [59] Exhibit 60, # [60] Exhibit 61, # [61] Exhibit 62, # [62] Exhibit 63, # [63] Exhibit 64, # [64] Exhibit 65, # [65] Exhibit 66, # [66] Exhibit 67, # [67] Exhibit 68, # [68] Exhibit 69, # [69] Exhibit 70, # [70] Exhibit 71, # [71] Exhibit 72, # [72] Exhibit 73, # [73] Exhibit 74, # [74] Exhibit 75, # [75] Exhibit 76, # [76] Exhibit 77, # [77] Exhibit 78, # [78] Exhibit 79, # [79] Exhibit 80, # [80] Exhibit 81, # [81] Exhibit 82, # [82] Exhibit 83, # [83] Exhibit 84, # [84] Exhibit 85, # [85] Exhibit 86, # [86] Exhibit 87, # [87] Exhibit 88, # [88] Exhibit 89, # [89] Exhibit 90, # [90] Exhibit 91, # [91] Exhibit 92, # [92] Exhibit 93, # [93] Exhibit 94, # [94] Exhibit 95, # [95] Exhibit 96, # [96] Exhibit 97, # [97] Exhibit 98, # [98] Exhibit 99, # [99] Exhibit 100, # [100] Exhibit 101, # [101] Exhibit 102, # [102] Exhibit 103, # [103] Exhibit 104, # [104] Exhibit 105, # [105] Exhibit 106, # [106] Exhibit 107, # [107] Exhibit 108, # [108] Exhibit 109, # [109] Exhibit 110, # [110] Exhibit 111, # [111] Exhibit 112, # [112] Exhibit 113, # [113] Exhibit 114, # [114] Exhibit 115, # [115] Exhibit 116, # [116] Exhibit 117, # [117] Exhibit 118, # [118] Exhibit 119, # [119] Exhibit 120, # [120] Exhibit 121, # [121] Exhibit 122, # [122] Exhibit 123, # [123] Exhibit 124, # [124] Exhibit 125, # [125] Exhibit 126, # [126] Exhibit 127, # [127] Exhibit 128, # [128] Exhibit 129, # [129] Exhibit 130, # [130] Exhibit 131) (jnls, Deputy Clerk) Modified on 9/13/2018 (jnls, Deputy Clerk). (Entered: 09/13/2018) |
| 09/13/2018 | [5] | MOTION for Leave to Exceed the Motion Page Limit by Securities and Exchange Commission (Attachments: # [1] Text of Proposed Order) (jnls, Deputy Clerk) (Entered: 09/13/2018) |
| 09/13/2018 | [9] | REDACTED TEMPORARY RESTRAINING ORDER. Signed by Judge Richard D. Bennett on 9/13/2018. (c/m 9/13/18 jnls, Deputy Clerk) (Entered: 09/13/2018) |
| 09/13/2018 | [10] | -SEALED- TEMPORARY RESTRAINING ORDER. Signed by Judge Richard D. Bennett on 9/13/2018. (c/m 9/13/18 jnls, Deputy Clerk) (Entered: 09/13/2018) |
| 09/13/2018 | [11] | ORDER Appointing Temporary Receiver. Gregory S. Milligan appointed. Signed by Judge Richard D. Bennett on 9/13/2018. (jnls, Deputy Clerk) (Entered: 09/13/2018) |
| 09/13/2018 | [12] | ORDER granting [2] MOTION to Seal Complaint, Motion for TRO and Related Papers by Securities and Exchange Commission. Signed by Judge Richard D. Bennett on 9/13/2018. (c/m 9/13/18 jnls, Deputy Clerk) (Entered: 09/13/2018) |
| 09/13/2018 | [13] | ORDER granting [5] for Leave to Exceed the Motion Page Limit by Securities and Exchange Commission. Signed by Judge Richard D. Bennett on 9/13/2018. (c/m 9/13/18 jnls, Deputy Clerk) (Entered: 09/13/2018) |
| 09/13/2018 | [14] | Summons Issued 21 days as to DeVille Asset Management LTD, Delmarva Capital, LLC, Global Credit Recovery, LLC, Cameron R. Jezierski, Jay B. Ledford, Kevin B. Merrill, Rhino Capital Group, LLC, Rhino Capital Holdings, LLC. (c/m 9/13/18 jnls, Deputy Clerk) (Entered: 09/14/2018) |
| 09/14/2018 | [15] | Summons Issued 21 days as to Riverwalk Financial Corporation. (c/m 9/14/18 jnls, Deputy Clerk) (Entered: 09/14/2018) |
| 09/14/2018 | [16] | MOTION to Disclose Sealed Materials to the U.S. Department of Justice by Securities and Exchange Commission (Attachments: # [1] Text of Proposed Order) (jnls, Deputy Clerk) (Entered: 09/14/2018) |
| 09/14/2018 | [17] | ORDER granting [16] Motion to Disclose Sealed Materials to the U.S. Department of Justice by Securities and Exchange Commission. Signed by Judge Richard D. Bennett on 9/14/2018. (c/m 9/14/18 jnls, Deputy Clerk) (Entered: 09/14/2018) |
| 09/18/2018 | [18] | MOTION to Unseal Case by Securities and Exchange Commission (Attachments: # [1] Text of Proposed Order)(cags, Deputy Clerk) (Entered: 09/18/2018) |
| 09/18/2018 | [19] | ORDER granting [18] Motion of plaintiff to Unseal Case. Signed by Judge Richard D. Bennett on 9/18/2018. (jnls, Deputy Clerk) (Entered: 09/18/2018) |
| 09/25/2018 | [20] | MOTION for Extension of Time *of Temporary Restraining Order Freezing Assets and Granting Other Emergency Relief and Order Appointing Temporary Receiver* by Securities and Exchange Commission (Attachments: # [1] Text of Proposed Order)(Sylvester, Mark) (Entered: 09/25/2018) |
| 09/25/2018 | [21] | ANSWER re [9] Order on Motion for TRO filed by Branch Banking and Trust Company. (jnls, Deputy Clerk) (Entered: 09/26/2018) |
| 09/26/2018 | [22] | ORDER granting [20] Motion for Extension of Time of Temporary Restraining Order Freezing Assets and Granting Other Emergency Relief and Order Appointing Temporary Receiver by Securities and Exchange Commission. Signed by Judge Richard D. Bennett on 9/26/2018. (jnls, Deputy Clerk) (Entered: 09/26/2018) |

JA10

| 10/01/2018 | 23 | NOTICE of Appearance by Joseph J Aronica on behalf of Cameron R. Jezierski (Aronica, Joseph) (Entered: 10/01/2018) |
|---|---|---|
| 10/03/2018 | 24 | NOTICE by Securities and Exchange Commission *OF PROPOSED PRELIMINARY INJUNCTION ORDER* (Attachments: # 1 Proposed Order, # 2 Certificate of Service)(Green, Julia) (Entered: 10/03/2018) |
| 10/03/2018 | 25 | NOTICE of Appearance by Brian Paul Waagner on behalf of Gregory S. Milligan (Waagner, Brian) (Entered: 10/03/2018) |
| 10/03/2018 | 26 | NOTICE by Cameron R. Jezierski re 24 Notice (Other) *Position Regarding the Securities and Exchange Commission's Notice of Proposed Preliminary Injunction Order* (Aronica, Joseph) (Entered: 10/03/2018) |
| 10/03/2018 | 27 | MOTION to Appear Pro Hac Vice for Lynn H. Butler (Filing fee $100, receipt number 0416-7597293.) by Gregory S. Milligan(Waagner, Brian) (Entered: 10/03/2018) |
| 10/04/2018 | 28 | PRELIMINARY INJUNCTION ORDER Freezing Assets and Granting Other Relief. Signed by Judge Richard D. Bennett on 10/4/2018. (bas, Deputy Clerk) (Entered: 10/04/2018) |
| 10/04/2018 | 29 | ORDER Granting 27 Directing attorney to register online for CM/ECF at http://www.mdd.uscourts.gov/electronic-case-filing-registration. Signed by Clerk on 10/4/2018. (bas, Deputy Clerk) (bas, Deputy Clerk). (Entered: 10/04/2018) |
| 10/04/2018 | 30 | Motion Hearing held on 10/4/2018 re 3 MOTION for Temporary Restraining Order MOTION to Appoint Receiver filed by Securities and Exchange Commission before Judge Richard D. Bennett.(Court Reporter: Martin Giordano) (ds2s, Deputy Clerk) (Entered: 10/04/2018) |
| 10/18/2018 | 31 | SUMMONS Returned Executed by Securities and Exchange Commission. Cameron R. Jezierski served on 9/18/2018, answer due 10/9/2018. (Attachments: # 1 Certificate of Service)(Green, Julia) (Entered: 10/18/2018) |
| 10/18/2018 | 32 | SUMMONS Returned Executed by Securities and Exchange Commission. Delmarva Capital, LLC served on 9/24/2018, answer due 10/15/2018. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Certificate of Service)(Green, Julia) (Entered: 10/18/2018) |
| 10/18/2018 | 33 | SUMMONS Returned Executed by Securities and Exchange Commission. DeVille Asset Management LTD served on 9/24/2018, answer due 10/15/2018. (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) (Green, Julia) (Entered: 10/18/2018) |
| 10/18/2018 | 34 | SUMMONS Returned Executed by Securities and Exchange Commission. Global Credit Recovery, LLC served on 9/18/2018, answer due 10/9/2018. (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) (Green, Julia) (Entered: 10/18/2018) |
| 10/18/2018 | 35 | SUMMONS Returned Executed by Securities and Exchange Commission. Jay B. Ledford served on 9/18/2018, answer due 10/9/2018. (Attachments: # 1 Exhibit 1, # 2 Certificate of Service)(Green, Julia) (Entered: 10/18/2018) |
| 10/18/2018 | 36 | SUMMONS Returned Executed by Securities and Exchange Commission. Kevin B. Merrill served on 9/18/2018, answer due 10/9/2018. (Attachments: # 1 Certificate of Service)(Green, Julia) (Entered: 10/18/2018) |
| 10/18/2018 | 37 | SUMMONS Returned Executed by Securities and Exchange Commission. Rhino Capital Group, LLC served on 9/18/2018, answer due 10/9/2018. (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) (Green, Julia) (Entered: 10/18/2018) |
| 10/18/2018 | 38 | SUMMONS Returned Executed by Securities and Exchange Commission. Rhino Capital Holdings, LLC served on 9/18/2018, answer due 10/9/2018. (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) (Green, Julia) (Entered: 10/18/2018) |
| 10/18/2018 | 39 | SUMMONS Returned Executed by Securities and Exchange Commission. Riverwalk Financial Corporation served on 9/18/2018, answer due 10/9/2018. (Attachments: # 1 Exhibit 1, # 2 Certificate of Service)(Green, Julia) (Entered: 10/18/2018) |
| 10/24/2018 | 40 | MOTION to Intervene *and Stay Proceedings* by United States of America (Attachments: # 1 Text of Proposed Order)(McDonald, Joyce) (Entered: 10/24/2018) |
| 10/24/2018 | 41 | MOTION to Appear Pro Hac Vice for Jack T. Jamison (Filing fee $100, receipt number 0416-7634991.) by Jay B. Ledford(Treem, Joshua) (Entered: 10/24/2018) |

JA11

| | | |
|---|---|---|
| 10/25/2018 | 42 | ORDER granting 40 Motion to Intervene and Stay Proceedings by United States of America. Signed by Judge Richard D. Bennett on 10/25/2018. (jnls, Deputy Clerk) (Entered: 10/25/2018) |
| 10/25/2018 | | Case Stayed (jnls, Deputy Clerk) (Entered: 10/25/2018) |
| 10/25/2018 | 43 | NOTICE of Appearance by Joshua R Treem on behalf of Jay B. Ledford (Treem, Joshua) (Entered: 10/25/2018) |
| 10/25/2018 | 44 | MOTION for Extension of Time by Jay B. Ledford (Attachments: # 1 Text of Proposed Order)(Treem, Joshua) (Entered: 10/25/2018) |
| 10/25/2018 | 45 | NOTICE of Appearance by Ryan Scott Spiegel on behalf of EagleBank (Spiegel, Ryan) (Entered: 10/25/2018) |
| 10/25/2018 | 46 | NOTICE by EagleBank re 11 Order on Motion to Appoint Receiver *Certified Statement of Financial Institution* (Spiegel, Ryan) (Entered: 10/25/2018) |
| 10/26/2018 | 47 | ORDER granting 44 Unopposed Motion for Extension of Time. Signed by Judge Richard D. Bennett on 10/26/2018. (jnls, Deputy Clerk) (Entered: 10/26/2018) |
| 10/26/2018 | 48 | WITHDRAWN PER 100 ORDER - PAPERLESS ORDER granting 41 Motion to Appear Pro Hac Vice on behalf of Jack Jamison. Directing attorney Jack Jamison to register online for CM/ECF at http://www.mdd.uscourts.gov/electronic-case-filing-registration. Signed by Clerk on 10/26/2018. (srd, Deputy Clerk) Modified on 2/4/2019 (jnls, Deputy Clerk). (Entered: 10/26/2018) |
| 11/03/2018 | 49 | RESPONSE re 28 Preliminary Injunction *Answer of No Assets* filed by PNC Bank, National Association. (Attachments: # 1 Exhibit A - Declaration)(Weiss Manne, Beverly) (Entered: 11/03/2018) |
| 11/06/2018 | 50 | AMENDED COMPLAINT against DeVille Asset Management LTD, Delmarva Capital, LLC, Global Credit Recovery, LLC, Cameron R. Jezierski, Jay B. Ledford, Kevin B. Merrill, Rhino Capital Group, LLC, Rhino Capital Holdings, LLC, Riverwalk Financial Corporation, Amanda Merrill, Lalaine Ledford, filed by Securities and Exchange Commission. (Attachments: # 1 Redlined Amended Complaint, # 2 Summons Amanda Merrill, # 3 Summons Lalaine Ledford)(Sylvester, Mark) (Entered: 11/06/2018) |
| 11/09/2018 | 51 | WAIVER OF SERVICE Returned Executed by Securities and Exchange Commission. Amanda Merrill waiver sent on 11/8/2018, answer due 1/7/2019.(Green, Julia) (Entered: 11/09/2018) |
| 11/13/2018 | 52 | Summons Issued 21 days as to Lalaine Ledford, Amanda Merrill. (jnls, Deputy Clerk) (Entered: 11/13/2018) |
| 11/13/2018 | 53 | Amended MOTION to Amend/Correct 11 Order on Motion to Appoint Receiver by Gregory S. Milligan (Attachments: # 1 Text of Proposed Order Proposed Amended Receivership Order, # 2 Exhibit Exhibit-A Motion to Modify, # 3 Exhibit Exhibit-B Motion to Modify, # 4 Exhibit Exhibit-C Motion to Modify, # 5 Exhibit Exhibit-D Motion to Modify)(Waagner, Brian) (Entered: 11/13/2018) |
| 11/13/2018 | 54 | STATUS REPORT *Initial Preservation Plan* by Gregory S. Milligan(Waagner, Brian) (Entered: 11/13/2018) |
| 11/16/2018 | 55 | MOTION to Appear Pro Hac Vice for Buffey E. Klein (Filing fee $100, receipt number 0416-7675688.) by Gregory S. Milligan(Waagner, Brian) (Entered: 11/16/2018) |
| 11/19/2018 | 56 | NOTICE by Securities and Exchange Commission re 53 Amended MOTION to Amend/Correct 11 Order on Motion to Appoint Receiver - *Notice of No Opposition to Receiver Gregory S. Milligan's Motion to Clarify and Modify Receivership Order* (Sylvester, Mark) (Entered: 11/19/2018) |
| 11/19/2018 | 57 | PAPERLESS ORDER granting 55 Motion to Appear Pro Hac Vice on behalf of Buffey Klein. Directing attorney Buffey Klein to register online for CM/ECF at http://www.mdd.uscourts.gov/electronic-case-filing-registration. Signed by Clerk on 11/19/2018. (srd, Deputy Clerk) (Entered: 11/19/2018) |
| 11/26/2018 | 58 | SUMMONS Returned Executed by Securities and Exchange Commission. Lalaine Ledford served on 11/21/2018, answer due 12/12/2018.(Sylvester, Mark) (Entered: 11/26/2018) |
| 11/26/2018 | 59 | MOTION for Extension of Time *Deadline* by Jay B. Ledford (Attachments: # 1 Memorandum in Support of Defendant Ledford Motion to Extend Deadline, # 2 Exhibit 1 - Memorandum in Support of Defendant Ledford Motion to Extend Deadline, # 3 Text of Proposed Order Granting Defendant Ledford Motion to Extend Deadline)(Jamison, Jack) (Entered: 11/26/2018) |
| 11/27/2018 | 60 | RESPONSE to Motion re 59 MOTION for Extension of Time *Deadline* filed by Securities and Exchange Commission.(Sylvester, Mark) (Entered: 11/27/2018) |

JA12

| 11/27/2018 | 61 | ORDER granting 59 Motion of Jay Ledford for Extension of Time. Signed by Judge Richard D. Bennett on 11/27/2018. (jnls, Deputy Clerk) (Entered: 11/27/2018) |
| --- | --- | --- |
| 11/27/2018 | 62 | FIRST AMENDED ORDER Appointing Temporary Receiver. Signed by Judge Richard D. Bennett on 11/27/2018. (jnls, Deputy Clerk) (Entered: 11/27/2018) |
| 11/27/2018 | 63 | MOTION for Extension of Time *Extend Deadline* by Jay B. Ledford (Attachments: # 1 Memorandum in Support Memorandum in Support of Motion to Extend Deadline, # 2 Exhibit Exhibit 1 Memorandum in Support of Motion to Extend Deadline, # 3 Exhibit Exhibit 2 Memorandum in Support of Motion to Extend Deadline, # 4 Exhibit Exhibit 3 Memorandum in Support of Motion to Extend Deadline, # 5 Text of Proposed Order Proposed Order Granting Ledford Motion to Extend Deadline)(Jamison, Jack) (Entered: 11/27/2018) |
| 11/28/2018 | 64 | Certificate of Service on Motion to Extend Deadline and Supporting Memorandum by Jay B. Ledford(Jamison, Jack) Modified on 11/28/2018 (jnls, Deputy Clerk). (Entered: 11/28/2018) |
| 11/28/2018 | 65 | RESPONSE in Opposition re 63 MOTION for Extension of Time *Extend Deadline* filed by Securities and Exchange Commission. (Attachments: # 1 Text of Proposed Order)(Sylvester, Mark) (Entered: 11/28/2018) |
| 11/29/2018 | 66 | REPLY to Response to Motion re 63 MOTION for Extension of Time *Extend Deadline* filed by Jay B. Ledford.(Jamison, Jack) (Entered: 11/29/2018) |
| 12/03/2018 | 67 | MOTION to Dismiss for Failure to State a Claim, MOTION to Dismiss for Lack of Jurisdiction , MOTION to Transfer Case , MOTION for Reconsideration , MOTION to Vacate by Jay B. Ledford (Attachments: # 1 Memorandum in Support, # 2 Exhibit, # 3 Exhibit)(Jamison, Jack) (Entered: 12/03/2018) |
| 12/03/2018 | 68 | MOTION to Dismiss for Failure to State a Claim, MOTION to Dismiss for Lack of Jurisdiction , MOTION to Sever , MOTION to Transfer Case , MOTION for Reconsideration , MOTION to Vacate by Jay B. Ledford (Attachments: # 1 Memorandum in Support, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit)(Jamison, Jack) (Entered: 12/04/2018) |
| 12/11/2018 | 69 | MOTION for Other Relief *to Enforce Amended Receivership Order and Secure Receivership Assets* by Gregory S. Milligan (Attachments: # 1 Text of Proposed Order)(Butler, Lynn) (Entered: 12/11/2018) |
| 12/13/2018 | 70 | MOTION for Other Relief *for Approval of First Interim Fee Application of Harney Management Partners, LLC* by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order) (Butler, Lynn) (Entered: 12/13/2018) |
| 12/13/2018 | 71 | MOTION for Other Relief *for Approval of First Interim Fee Application of Husch Blackwell LLP* by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 12/13/2018) |
| 12/13/2018 | 72 | -SEALED - NOTICE of Filing Under Seal Exhibit A to Motion for Approval of First Interim Fee Application of Harney Management Partners, LLC by Gregory S. Milligan re 70 MOTION for Other Relief *for Approval of First Interim Fee Application of Harney Management Partners, LLC* (Butler, Lynn) (Entered: 12/13/2018) |
| 12/13/2018 | 73 | -SEALED - NOTICE of Filing Under Seal Exhibit B to Motion for Approval of First Interim Fee Application of Harney Management Partners, LLC by Gregory S. Milligan re 70 MOTION for Other Relief *for Approval of First Interim Fee Application of Harney Management Partners, LLC* (Butler, Lynn) (Entered: 12/13/2018) |
| 12/13/2018 | 74 | -SEALED - NOTICE of Filing Under Seal Exhibit A to Motion for Approval of First Interim Fee Application of Husch Blackwell LLP by Gregory S. Milligan re 71 MOTION for Other Relief *for Approval of First Interim Fee Application of Husch Blackwell LLP* (Butler, Lynn) (Entered: 12/13/2018) |
| 12/13/2018 | 75 | -SEALED - NOTICE of Filing Under Seal Exhibit B to Motion for Approval of First Interim Fee Application of Husch Blackwell LLP by Gregory S. Milligan re 71 MOTION for Other Relief *for Approval of First Interim Fee Application of Husch Blackwell LLP* (Butler, Lynn) (Entered: 12/13/2018) |
| 12/13/2018 | 76 | MOTION to Seal *Exhibits to Fee Applications of Husch Blackwell LLP and Harney Management Partners, LLC* by Gregory S. Milligan (Attachments: # 1 Text of Proposed Order)(Butler, Lynn) (Entered: 12/13/2018) |

JA13

| | | |
|---|---|---|
| 12/14/2018 | 77 | ORDER granting 69 Motion to Enforce Amended Receivership Order and Secure Receivership Assets filed by Gregory S. Milligan. Signed by Judge Richard D. Bennett on 12/14/2018. (jnls, Deputy Clerk) (Entered: 12/14/2018) |
| 12/18/2018 | 78 | ORDER re responses and replies to Receiver's Motions. Signed by Judge Richard D. Bennett on 12/18/2018. (jnls, Deputy Clerk) (Entered: 12/18/2018) |
| 12/24/2018 | 79 | MOTION to Disqualify Counsel *Jack Jamison* by Gregory S. Milligan (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Text of Proposed Order)(Butler, Lynn) (Entered: 12/24/2018) |
| 12/28/2018 | 80 | MOTION for Extension of Time by Jay B. Ledford (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Jamison, Jack) (Entered: 12/28/2018) |
| 12/28/2018 | 81 | NOTICE of Appearance by Robert W Biddle on behalf of Amanda Merrill (Biddle, Robert) (Entered: 12/28/2018) |
| 01/02/2019 | 82 | MARGINAL ORDER granting 80 Motion of Jay Ledford to Extend Deadlines. Signed by Judge Richard D. Bennett on 12/22/2018. (jnls, Deputy Clerk) (Entered: 01/02/2019) |
| 01/07/2019 | 83 | MOTION to Quash *Orders Appointing Temporary Receiver*, MOTION to Expedite *Hearing* by Jay B. Ledford (Attachments: # 1 Memorandum in Support, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit)(Jamison, Jack) (Entered: 01/07/2019) |
| 01/07/2019 | 84 | MOTION for Extension of Time to File Response/Reply as to 71 MOTION for Other Relief *for Approval of First Interim Fee Application of Husch Blackwell LLP*, 70 MOTION for Other Relief *for Approval of First Interim Fee Application of Harney Management Partners, LLC*, 76 MOTION to Seal *Exhibits to Fee Applications of Husch Blackwell LLP and Harney Management Partners, LLC* by Jay B. Ledford (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Jamison, Jack) (Entered: 01/07/2019) |
| 01/08/2019 | 85 | ORDER granting 76 Motion to Seal Exhibits to Fee Applications of Husch Blackwell LLP and Harney Management Partners, LLC by Gregory S. Milligan. Signed by Judge Richard D. Bennett on 1/8/2019. (jnls, Deputy Clerk) (Entered: 01/08/2019) |
| 01/08/2019 | 86 | ORDER granting 84 Motion to Extend Deadlines. Signed by Judge Richard D. Bennett on 1/8/2019. (jnls, Deputy Clerk) (Entered: 01/08/2019) |
| 01/09/2019 | 87 | NOTICE by Jay B. Ledford *Election and Assertion of Exemption of Property FDCPA* (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit)(Jamison, Jack) (Entered: 01/09/2019) |
| 01/09/2019 | 88 | MOTION to Strike 50 Amended Complaint, by Jay B. Ledford (Attachments: # 1 Memorandum in Support of Defendant Ledford Motion to Strike SECs Purported Amended Complaint, # 2 Exhibit A, # 3 Text of Proposed Order)(Jamison, Jack) (Entered: 01/09/2019) |
| 01/09/2019 | 89 | MOTION for Reconsideration re 71 MOTION for Other Relief *for Approval of First Interim Fee Application of Husch Blackwell LLP*, 70 MOTION for Other Relief *for Approval of First Interim Fee Application of Harney Management Partners, LLC* by Jay B. Ledford (Attachments: # 1 Memorandum in Support Opposition to Recvrs Motion to Seal and Opposition to Recvrs First Interim Fee Applications) (Jamison, Jack) (Entered: 01/09/2019) |
| 01/14/2019 | 90 | MOTION for Leave to File , MOTION for Extension of Time to File by Jay B. Ledford (Attachments: # 1 Memorandum in Support of Ledford's and Jamison's Motions to Extend Deadline and for Leave to File Memo in Excess of 35 pgs, # 2 Text of Proposed Order)(Jamison, Jack) (Entered: 01/14/2019) |
| 01/15/2019 | 91 | MOTION to Amend/Correct 90 MOTION for Leave to File MOTION for Leave to File Excess Pages MOTION for Extension of Time to File by Jay B. Ledford (Attachments: # 1 Memorandum in Support) (Jamison, Jack) (Entered: 01/15/2019) |
| 01/15/2019 | 92 | Proposed Order re 91 MOTION to Amend/Correct 90 MOTION for Leave to File MOTION for Leave to File Excess Pages MOTION for Extension of Time to File by Jay B. Ledford by Jay B. Ledford(Jamison, Jack) Modified on 1/16/2019 (jnls, Deputy Clerk). (Entered: 01/16/2019) |
| 01/16/2019 | | Telephone Status Conference held on 1/16/2019 before Judge Richard D. Bennett. (CR: Martin Giordano) (jnls, Deputy Clerk) Modified on 1/28/2019 (jnls, Deputy Clerk). (Entered: 01/17/2019) |

JA14

| | | |
|---|---|---|
| 01/22/2019 | 93 | RESPONSE in Opposition re 79 MOTION to Disqualify Counsel *Jack Jamison* filed by Jay B. Ledford. (Attachments: # 1 Memorandum in Support of Opposition to Receiver's Motion to Disqualify Attorney, # 2 Exhibit 1, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G) (Jamison, Jack) (Entered: 01/22/2019) |
| 01/22/2019 | 94 | ORDER denying as moot 63 Motion of Defendant Ledford to Extend Deadline; denying 83 Motion of Defendant Ledford to Quash Orders Appointing Temporary Receiver or alternatively to modify such orders and request for expedited hearing; denying 88 Motion of Defendant Ledford to Strike United States Securities and Exchange Commission's Purported Amended Complaint; denying 89 Motion of Defendant Ledford for Reconsideration re 71 MOTION for Other Relief for Approval of First Interim Fee Application of Husch Blackwell LLP, 70 MOTION for Other Relief for Approval of First Interim Fee Application of Harney Management Partners, LLC ; denying as moot 90 Motion of Defendant Ledford and Attorney Jack T. Jamison to extend deadline and for leave to file memorandum in excess of 35 pages; denying 91 Amended Motion of Defendant Ledford and Attorney Jack T. Jamison to extend deadline and for leave to file memorandum in excess of 35 pages. Signed by Judge Richard D. Bennett on 1/17/2019. (jnls, Deputy Clerk) (Entered: 01/22/2019) |
| 01/22/2019 | 95 | MOTION for Authority to Surrender Whole Life Insurance Policy to Guardian Life Insurance Company of America by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order) (Butler, Lynn) (Entered: 01/22/2019) |
| 01/24/2019 | 96 | REPLY to Response to Motion re 79 MOTION to Disqualify Counsel *Jack Jamison* filed by Securities and Exchange Commission. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Barry, Jennifer) (Entered: 01/24/2019) |
| 01/25/2019 | 97 | MOTION for Leave to File by Jay B. Ledford (Attachments: # 1 Attachment Proposed Surreply to SEC's Reply to Ledford's and Jamison's Opposition to Receiver's Motion to Disqualify Attorney, # 2 Exhibit 1, # 3 Exhibit A, # 4 Exhibit B, # 5 Text of Proposed Order)(Jamison, Jack) (Entered: 01/25/2019) |
| 01/25/2019 | 98 | REPLY to Response to Motion re 79 MOTION to Disqualify Counsel *Jack Jamison* filed by Gregory S. Milligan. (Attachments: # 1 Exhibit H)(Butler, Lynn) (Entered: 01/25/2019) |
| 01/30/2019 | 99 | STATUS REPORT *for the Period Between September 13, 2018 and December 31, 2018* by Gregory S. Milligan(Klein, Buffey) (Entered: 01/30/2019) |
| 02/01/2019 | 100 | MEMORANDUM AND ORDER granting 79 Motion of Receiver to Disqualify Counsel Jack Jamison ; granting 97 Motion of Jay Ledford and Jack Jamison for Leave to File Surreply; Directing Jack Jamison is disqualified from appearing in this action and the Court's Order granting 48 Motion for Admission Pro Hac Vice is withdrawn and Jack Jamison's admission pro hac vice in this action is revoked. Signed by Judge Richard D. Bennett on 2/1/2019. (jnls, Deputy Clerk) Modified on 2/4/2019 (jnls, Deputy Clerk). (Entered: 02/04/2019) |
| 02/01/2019 | 101 | FILED IN ERROR - SURREPLY re 79 MOTION to Disqualify Counsel Jack Jamison filed by Jay B. Ledford and Jack T. Jamison. (jnls, Deputy Clerk) Modified on 2/4/2019 (jnls, Deputy Clerk). (Entered: 02/04/2019) |
| 02/01/2019 | 102 | SURREPLY re 79 MOTION to Disqualify Counsel Jack Jamison filed by Jay B. Ledford and Jack T. Jamison. filed by Jay B. Ledford. (jnls, Deputy Clerk) (Entered: 02/04/2019) |
| 02/12/2019 | 103 | CERTIFICATE of Counsel re 95 MOTION for Authority to Surrender Whole Life Insurance Policy to Guardian Life Insurance Company of America by Buffey Klein on behalf of Gregory S. Milligan (Klein, Buffey) (Entered: 02/12/2019) |
| 02/13/2019 | 104 | ORDER granting 95 Motion for Authority to Surrender Whole Life Insurance Policy to Guardian Life Insurance Company of America by Gregory S. Milligan. Signed by Judge Richard D. Bennett on 2/13/2019. (jnls, Deputy Clerk) (Entered: 02/13/2019) |
| 02/22/2019 | 105 | MOTION for Order Authorizing Employment and Compensation of Velocity Portfolio Group, Inc. by Gregory S. Milligan (Attachments: # 1 Exhibit Mastriani Declaration, # 2 Exhibit Milligan Declaration, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 02/22/2019) |
| 02/25/2019 | 106 | ORDER granting 105 Motion for Order Authorizing Employment and Compensation of Velocity Portfolio Group, Inc. by Gregory S. Milligan. Signed by Judge Richard D. Bennett on 2/25/2019. (jnls, Deputy Clerk) (Entered: 02/25/2019) |
| 03/08/2019 | 107 | MOTION for Approval of Procedures for Sale of Real Property and Retention of Sotheby's International Realty, Inc. as Brokers by Gregory S. Milligan (Attachments: # 1 Exhibit A - Declaration, # 2 Text of |

JA15

| | | |
|---|---|---|
| | | Proposed Order)(Butler, Lynn) (Entered: 03/08/2019) |
| 03/08/2019 | 108 | MOTION to Approve Procedures for Sale of Automobiles and for Order Authorizing Retention, Employment, and Compensation of Prestige Motor Car Imports, LLC as Broker by Gregory S. Milligan (Attachments: # 1 Exhibit A - Declaration of Brett David, # 2 Exhibit B - Declaration of Greg Milligan, # 3 Exhibit C - Notice of Proposed Sale, # 4 Text of Proposed Sale)(Butler, Lynn) (Entered: 03/08/2019) |
| 03/25/2019 | 109 | CONSENT ORDER Extending Deadlines to Respond or Object to Receiver's Sale Motions. Signed by Judge Richard D. Bennett on 3/25/2019. (jnls, Deputy Clerk) (Entered: 03/25/2019) |
| 03/25/2019 | 110 | Supplemental to 108 MOTION to Approve Procedures for Sale of Automobiles and for Order Authorizing Retention, Employment, and Compensation of Prestige Motor Car Imports, LLC as Broker , 107 MOTION for Approval of Procedures for Sale of Real Property and Retention of Sotheby's International Realty, Inc. as Brokers filed by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Butler, Lynn) (Entered: 03/25/2019) |
| 03/29/2019 | 111 | Supplemental to 99 Status Report filed by Gregory S. Milligan (Klein, Buffey) (Entered: 03/29/2019) |
| 03/29/2019 | 112 | Consent MOTION for Extension of Time to File Response/Reply as to 108 MOTION to Approve Procedures for Sale of Automobiles and for Order Authorizing Retention, Employment, and Compensation of Prestige Motor Car Imports, LLC as Broker , 107 MOTION for Approval of Procedures for Sale of Real Property and Retention of Sotheby's International Realty, Inc. as Brokers by Amanda Merrill. (Attachments: # 1 Text of Proposed Order Granting Extension of Time to Respond to ECF # 107-108 to Friday, April 5, 2019)(Biddle, Robert) (Entered: 03/29/2019) |
| 04/01/2019 | 113 | CONSENT ORDER Extending Deadline to Respond or Object to Receiver's Sale Motions. Signed by Judge Richard D. Bennett on 4/1/2019. (jnls, Deputy Clerk) (Entered: 04/01/2019) |
| 04/04/2019 | 114 | MOTION to Intervene *to Allow Cancellation of Bonds and for Collateral Security* by International Fidelity Insurance Company (Attachments: # 1 Memorandum in Support, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Text of Proposed Order)(Stover, Michael) (Entered: 04/04/2019) |
| 04/05/2019 | 115 | RESPONSE in Opposition re 108 MOTION to Approve Procedures for Sale of Automobiles and for Order Authorizing Retention, Employment, and Compensation of Prestige Motor Car Imports, LLC as Broker , 107 MOTION for Approval of Procedures for Sale of Real Property and Retention of Sotheby's International Realty, Inc. as Brokers filed by Jay B. Ledford. (Attachments: # 1 Memorandum in Support of Def.'s Opposition to Receiver's Sale Motions)(Treem, Joshua) (Entered: 04/05/2019) |
| 04/05/2019 | 116 | STIPULATION re 108 MOTION to Approve Procedures for Sale of Automobiles and for Order Authorizing Retention, Employment, and Compensation of Prestige Motor Car Imports, LLC as Broker , 107 MOTION for Approval of Procedures for Sale of Real Property and Retention of Sotheby's International Realty, Inc. as Brokers *and Certificate of Conference* by Gregory S. Milligan(Klein, Buffey) (Entered: 04/05/2019) |
| 04/05/2019 | 117 | CERTIFICATE of Counsel re 108 MOTION to Approve Procedures for Sale of Automobiles and for Order Authorizing Retention, Employment, and Compensation of Prestige Motor Car Imports, LLC as Broker , 107 MOTION for Approval of Procedures for Sale of Real Property and Retention of Sotheby's International Realty, Inc. as Brokers by Buffey Klein on behalf of Gregory S. Milligan (Klein, Buffey) (Entered: 04/05/2019) |
| 04/08/2019 | 118 | MOTION for Other Relief *for Approval of Second Interim Fee Application of Harney Management Partners, LLC* by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 04/08/2019) |
| 04/08/2019 | 119 | MOTION for Other Relief *for Approval of Second Interim Fee Application of Husch Blackwell LLP* by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 04/08/2019) |
| 04/08/2019 | 120 | -SEALED - NOTICE of Filing Under Seal Exhibit A to Motion for Approval of Second Interim Fee Application of Harney Management Partners, LLC by Gregory S. Milligan re 118 MOTION for Other Relief *for Approval of Second Interim Fee Application of Harney Management Partners, LLC* (Butler, Lynn) (Entered: 04/08/2019) |
| 04/08/2019 | 121 | -SEALED - NOTICE of Filing Under Seal Exhibit A to Motion for Approval of Second Interim Fee Application of Husch Blackwell LLP by Gregory S. Milligan (Butler, Lynn) (Entered: 04/08/2019) |
| 04/08/2019 | 122 | MOTION to Seal *Exhibits to Second Interim Fee Applications of Husch Blackwell LLP and Harney Management Partners, LLC* by Gregory S. Milligan (Attachments: # 1 Text of Proposed Order)(Butler, |

JA16

|            |     | Lynn) (Entered: 04/08/2019) |
|------------|-----|------------------------------|
| 04/09/2019 | 123 | ORDER granting 122 Motion to Seal Exhibits to Second Interim Fee Applications of Husch Blackwell LLP and Harney Management Partners, LLC by Gregory S. Milligan. Signed by Judge Richard D. Bennett on 4/9/2019. (jnls, Deputy Clerk) (Entered: 04/09/2019) |
| 04/15/2019 | 124 | MOTION for Extension of Time to File Response/Reply as to 108 MOTION to Approve Procedures for Sale of Automobiles and for Order Authorizing Retention, Employment, and Compensation of Prestige Motor Car Imports, LLC as Broker , 107 MOTION for Approval of Procedures for Sale of Real Property and Retention of Sotheby's International Realty, Inc. as Brokers *Agreed Motion* by Gregory S. Milligan (Attachments: # 1 Text of Proposed Order)(Klein, Buffey) (Entered: 04/15/2019) |
| 04/16/2019 | 125 | Consent MOTION for Extension of Time *to Respond to Docket #114* by Securities and Exchange Commission (Attachments: # 1 Text of Proposed Order)(Green, Julia) (Entered: 04/16/2019) |
| 04/16/2019 | 126 | ORDER granting 124 Motion for Extension of Time to File Reply in support of 108 MOTION to Approve Procedures for Sale of Automobiles and for Order Authorizing Retention, Employment, and Compensation of Prestige Motor Car Imports, LLC as Broker , and 107 MOTION for Approval of Procedures for Sale of Real Property and Retention of Sotheby's International Realty, Inc. as Brokers . Signed by Judge Richard D. Bennett on 4/15/2019. (dass, Deputy Clerk) (Entered: 04/16/2019) |
| 04/17/2019 | 127 | ORDER granting 125 Consent Motion for Extension of Time to Respond to Docket #114 by Securities and Exchange Commission. Signed by Judge Richard D. Bennett on 4/16/2019. (jnls, Deputy Clerk) (Entered: 04/17/2019) |
| 04/17/2019 | 128 | MOTION for Extension of Time *[Agreed] to Respond to Motion for Limited Intervention to Allow Cancellation of Bonds and for Collateral Security* by Gregory S. Milligan (Attachments: # 1 Text of Proposed Order)(Butler, Lynn) (Entered: 04/17/2019) |
| 04/18/2019 | 129 | CONSENT ORDER granting 128 MOTION for Extension of Time [Agreed] to Respond to Motion for Limited Intervention to Allow Cancellation of Bonds and for Collateral Security by Gregory S. Milligan. Signed by Judge Richard D. Bennett on 4/18/2019. (jnls, Deputy Clerk) (Entered: 04/18/2019) |
| 04/22/2019 | 130 | RESPONSE in Opposition re 118 MOTION for Other Relief *for Approval of Second Interim Fee Application of Harney Management Partners, LLC* filed by Jay B. Ledford.(Treem, Joshua) (Entered: 04/22/2019) |
| 04/22/2019 | 131 | RESPONSE in Opposition re 119 MOTION for Other Relief *for Approval of Second Interim Fee Application of Husch Blackwell LLP* filed by Jay B. Ledford.(Treem, Joshua) (Entered: 04/22/2019) |
| 04/22/2019 | 132 | MOTION for Other Relief *for Entry of an Order Authorizing Retention and Employment of Superyacht Sales and Charter LLC* by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 04/22/2019) |
| 04/22/2019 | 133 | NOTICE by Gregory S. Milligan re 132 MOTION for Other Relief *for Entry of an Order Authorizing Retention and Employment of Superyacht Sales and Charter LLC Certificate of Conference* (Butler, Lynn) (Entered: 04/22/2019) |
| 04/23/2019 | 134 | ORDER granting 132 Motion for Entry of an Order Authorizing Retention and Employment of Superyacht Sales and Charter LLC by Gregory S. Milligan. Signed by Judge Richard D. Bennett on 4/23/2019. (jnls, Deputy Clerk) (Entered: 04/23/2019) |
| 04/25/2019 | 135 | RESPONSE in Opposition re 114 MOTION to Intervene *to Allow Cancellation of Bonds and for Collateral Security* filed by Gregory S. Milligan.(Klein, Buffey) (Entered: 04/25/2019) |
| 04/26/2019 | 136 | NOTICE by Gregory S. Milligan re 108 MOTION to Approve Procedures for Sale of Automobiles and for Order Authorizing Retention, Employment, and Compensation of Prestige Motor Car Imports, LLC as Broker , 107 MOTION for Approval of Procedures for Sale of Real Property and Retention of Sotheby's International Realty, Inc. as Brokers *Certificate of Conference Regarding Sale Motions* (Attachments: # 1 Text of Proposed Order)(Klein, Buffey) (Entered: 04/26/2019) |
| 04/29/2019 | 137 | AGREED ORDER granting in part 107 Receiver's Motion to Approve Sale Procedures and Retention of Sotheby's International Realty, Inc.Receiver's Motion to Approve Sale Procedures and Retention of Prestige Motor Car Imports, LLC; granting in part 108 Receiver's Motion to Approve Sale Procedures and Retention of Sotheby's International Realty, Inc.Receiver's Motion to Approve Sale Procedures and Retention of Prestige Motor Car Imports, LLC. Signed by Judge Richard D. Bennett on 4/29/2019. (jnls, Deputy Clerk) (Entered: 04/29/2019) |

JA17

| | | |
|---|---|---|
| 04/30/2019 | 138 | STATUS REPORT *Second Quarterly for Period Between January 1, 2019 and March 31, 2019* by Gregory S. Milligan (Attachments: # 1 Exhibit A)(Klein, Buffey) (Entered: 04/30/2019) |
| 05/01/2019 | 139 | Joint MOTION for Extension of Time *to Reply to Defendant Ledford's Opposition to Second Interim Fee Applications of Harney Management Partners, LLC [Dkt. 130] and Husch Blackwell, LLP [Dkt. 131]* by Gregory S. Milligan (Attachments: # 1 Text of Proposed Order)(Klein, Buffey) (Entered: 05/01/2019) |
| 05/01/2019 | 140 | CONSENT ORDER granting 139 Joint MOTION for Extension of Time to Reply to Defendant Ledford's Opposition to Second Interim Fee Applications of Harney Management Partners, LLC [Dkt. 130] and Husch Blackwell, LLP. Signed by Judge Richard D. Bennett on 5/1/2019. (jnls, Deputy Clerk) (Entered: 05/01/2019) |
| 05/02/2019 | 141 | RESPONSE in Opposition re 114 MOTION to Intervene *to Allow Cancellation of Bonds and for Collateral Security* filed by Securities and Exchange Commission. (Attachments: # 1 Exhibit)(Green, Julia) (Entered: 05/02/2019) |
| 05/08/2019 | 142 | Consent MOTION for Extension of Time to File Response/Reply as to 135 Response in Opposition to Motion *for Limited Intervention to Allow Cancellation of Bonds for Collateral Security* by International Fidelity Insurance Company (Attachments: # 1 Text of Proposed Order)(Stover, Michael) (Entered: 05/08/2019) |
| 05/08/2019 | 143 | NOTICE by Gregory S. Milligan re 137 Order on Motion for Miscellaneous Relief,,,,, *Certificate of Service* (Butler, Lynn) (Entered: 05/08/2019) |
| 05/09/2019 | 144 | CONSENT ORDER granting 142 Motion for Extension of Time to File Response to Motion for Limited Intervention to Allow Cancellation of Bonds for Collateral Security by International Fidelity Insurance Company. Signed by Judge Richard D. Bennett on 5/9/2019. (jnls, Deputy Clerk) (Entered: 05/10/2019) |
| 05/15/2019 | 145 | Consent MOTION for Extension of Time to File Response/Reply as to 141 Response in Opposition to Motion *for Limited Intervention to Allow Cancellation of Bonds and for Collateral Security* by International Fidelity Insurance Company (Attachments: # 1 Text of Proposed Order)(Stover, Michael) (Entered: 05/15/2019) |
| 05/16/2019 | 146 | ORDER granting 145 Consent Motion by International Fidelity Insurance Company to file Reply to Plaintiff's Memorandum in Opposition to Motion for Limited Intervention to Allow Cancellation of Bonds and for Collateral Security. Signed by Judge Richard D. Bennett on 5/15/2019. (jnls, Deputy Clerk) (Entered: 05/16/2019) |
| 05/16/2019 | 147 | REPLY to Response to Motion re 114 MOTION to Intervene *to Allow Cancellation of Bonds and for Collateral Security* filed by International Fidelity Insurance Company.(Stover, Michael) (Entered: 05/16/2019) |
| 05/20/2019 | 148 | Consent MOTION for Extension of Time to File Response/Reply as to 115 Response in Opposition to Motion,, 130 Response in Opposition to Motion, 131 Response in Opposition to Motion by Jay B. Ledford, Gregory S. Milligan (Attachments: # 1 Text of Proposed Order)(Klein, Buffey) (Entered: 05/20/2019) |
| 05/20/2019 | 149 | ORDER GRANTING 148 Motion for Extension of Time to File Response/Reply. Signed by Judge Richard D. Bennett on 5/20/2019. (hmls, Deputy Clerk) (Entered: 05/20/2019) |
| 05/23/2019 | 150 | REPLY to Response to Motion re 114 MOTION to Intervene *to Allow Cancellation of Bonds and for Collateral Security* filed by International Fidelity Insurance Company.(Stover, Michael) (Entered: 05/23/2019) |
| 06/07/2019 | 151 | MEMORANDUM ORDER granting 70 Motion of Receiver for Approval of First Interim Fee Application of Harney Management Partners, LLC ; granting 71 Motion of Receiver for Approval of First Interim Fee Application of Husch Blackwell LLP ; granting 118 Motion of Receiver for Approval of Second Interim Fee Application of Harney Management Partners, LLC ; granting 119 Motion of Receiver for Approval of Second Interim Fee Application of Husch Blackwell LLP. Signed by Judge Richard D. Bennett on 6/7/2019. (jnls, Deputy Clerk) (Entered: 06/07/2019) |
| 07/09/2019 | 152 | MOTION for Authorization of Sale of 2018 Formula 350 Crossover Bowrider Port Cruiser by Gregory S. Milligan (Attachments: # 1 Exhibit A - Declaration, # 2 Exhibit B - Declaration, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 07/09/2019) |
| 07/09/2019 | 153 | MOTION for Authorization of Sale of Real Property Located at 1848 Circle Road, Towson, MD 21204 by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Butler, Lynn) (Entered: |

JA18

| | | 07/09/2019) |
|---|---|---|
| 07/10/2019 | 154 | ORDER granting 152 Motion for Authorization of Sale of 2018 Formula 350 Crossover Bowrider Port Cruiser by Gregory S. Milligan. Signed by Judge Richard D. Bennett on 7/10/2019. (jnls, Deputy Clerk) (Entered: 07/10/2019) |
| 07/10/2019 | 155 | ORDER granting 153 Motion for Authorization of Sale of Real Property Located at 1848 Circle Road, Towson, MD 21204 by Gregory S. Milligan. Signed by Judge Richard D. Bennett on 7/10/2019. (jnls, Deputy Clerk) (Entered: 07/10/2019) |
| 07/10/2019 | 156 | MOTION for Authorization of Sale of Real Property Located at 1055 Spyglass Lane, Naples, FL 34102 by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Butler, Lynn) (Entered: 07/10/2019) |
| 07/12/2019 | 157 | ORDER granting 156 Motion for Authorization of Sale of Real Property Located at 1055 Spyglass Lane, Naples, FL 34102 by Gregory S. Milligan. Signed by Judge Richard D. Bennett on 7/11/2019. (jnls, Deputy Clerk) (Entered: 07/12/2019) |
| 07/18/2019 | 158 | Correspondence re: Receiver's Sale Plans (Klein, Buffey) (Entered: 07/18/2019) |
| 07/18/2019 | 159 | MOTION for Other Relief *for Approval of Third Interim Fee Application of Harney Management Partners, LLC* by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 07/18/2019) |
| 07/18/2019 | 160 | MOTION for Other Relief *for Approval of Third Interim Fee Application of Husch Blackwell LLP* by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 07/18/2019) |
| 07/18/2019 | 161 | -SEALED - NOTICE of Filing Under Seal Exhibit A to Motion for Approval of Third Interim Fee Application of Harney Management Partners, LLC by Gregory S. Milligan re 159 MOTION for Other Relief *for Approval of Third Interim Fee Application of Harney Management Partners, LLC* (Butler, Lynn) (Entered: 07/18/2019) |
| 07/18/2019 | 162 | -SEALED - NOTICE of Filing Under Seal Exhibit A to Motion for Approval of Third Interim Fee Application of Husch Blackwell LLP by Gregory S. Milligan (Butler, Lynn) (Entered: 07/18/2019) |
| 07/18/2019 | 163 | MOTION to Seal *Exhibits to Third Interim Fee Application of Husch Blackwell LLP and Harney Management Partners, LLC* by Gregory S. Milligan (Attachments: # 1 Text of Proposed Order)(Butler, Lynn) (Entered: 07/18/2019) |
| 07/19/2019 | 164 | MOTION for Authorization of Sale of Real Property Located at 1718 Greenspring Valley Road, Stevenson, MD 21153 by Gregory S. Milligan (Attachments: # 1 Declaration of Gregory Milligan, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Text of Proposed Order)(Butler, Lynn) (Entered: 07/19/2019) |
| 07/19/2019 | 165 | ORDER granting 163 Motion to Seal Exhibits to Third Interim Fee Application of Husch Blackwell LLP and Harney Management Partners, LLC by Gregory S. Milligan Signed by Judge Richard D. Bennett on 7/19/2019. (ol, Deputy Clerk) (Entered: 07/19/2019) |
| 07/23/2019 | 166 | ORDER granting 164 Motion for Authorization of Sale of Real Property Located at 1718 Greenspring Valley Road, Stevenson, MD 21153 by Gregory S. Milligan. Signed by Judge Richard D. Bennett on 7/23/2019. (jnls, Deputy Clerk) (Entered: 07/24/2019) |
| 07/26/2019 | 167 | MOTION for Authorization of Sale of Real Property Located at 531 Hampton Lane, Towson, MD 21286 by Gregory S. Milligan (Attachments: # 1 Affidavit Exhibit A, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Text of Proposed Order)(Butler, Lynn) (Entered: 07/26/2019) |
| 07/26/2019 | 168 | NOTICE by Gregory S. Milligan *of Proposed Sale of Vehicle - 2017 Rolls Royce Wraith Coupe* (Butler, Lynn) (Entered: 07/26/2019) |
| 07/26/2019 | 169 | NOTICE by Gregory S. Milligan *of Proposed Sale of Vehicle - 2018 Cadillac Escalade* (Butler, Lynn) (Entered: 07/26/2019) |
| 07/26/2019 | 170 | NOTICE by Gregory S. Milligan *of Proposed Sale of Vehicle - 2017 Land Rover Range Rover* (Butler, Lynn) (Entered: 07/26/2019) |
| 07/26/2019 | 171 | NOTICE by Gregory S. Milligan *of Proposed Sale of Vehicle - 2017 Lamborghini* (Butler, Lynn) (Entered: 07/26/2019) |

JA19

| 07/29/2019 | 172 | ORDER granting 167 MOTION for Authorization of Sale of Real Property Located at 531 Hampton Lane, Towson, MD 21286 by Gregory S. Milligan. Signed by Judge Richard D. Bennett on 7/29/2019. (jnls, Deputy Clerk) (Entered: 07/30/2019) |
| 07/30/2019 | 173 | -SEALED- MOTION to Seal by Jay B. Ledford(McDonald, Joyce) (Entered: 07/30/2019) |
| 07/30/2019 | 174 | Sealed Document (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(McDonald, Joyce) (Entered: 07/30/2019) |
| 07/30/2019 | 175 | -SEALED- MOTION to Seal by Jay B. Ledford(McDonald, Joyce) (Entered: 07/30/2019) |
| 07/30/2019 | 176 | -SEALED- MOTION For Hearing by Jay B. Ledford (Attachments: # 1 Exhibit 1, # 2 Exhibit 2) (McDonald, Joyce) (Entered: 07/30/2019) |
| 07/30/2019 | 177 | STATUS REPORT *for the Period Between April 1, 2019 and June 30, 2019* by Gregory S. Milligan(Butler, Lynn) (Entered: 07/30/2019) |
| 07/31/2019 | 178 | -SEALED- ORDER granting 173 Motion to Seal. Signed by Judge Richard D. Bennett on 7/30/2019. (c/m 7/31/19 jnls, Deputy Clerk) (Entered: 07/31/2019) |
| 07/31/2019 | 179 | -SEALED- ORDER granting 175 Motion to Seal. Signed by Judge Richard D. Bennett on 7/30/2019. (c/m 7/3/19 jnls, Deputy Clerk) (Entered: 07/31/2019) |
| 08/01/2019 | 180 | Consent MOTION *FOR ENTRY OF PARTIAL JUDGMENT AS TO DEFENDANT CAMERON R. JEZIERSKI* by Securities and Exchange Commission (Attachments: # 1 Exhibit A Consent of Defendant Cameron R. Jezierski,, # 2 Text of Proposed Order)(Green, Julia) (Entered: 08/01/2019) |
| 08/01/2019 | 181 | JUDGMENT as to defendant Cameron R. Jezierski. Signed by Judge Richard D. Bennett on 8/1/2019. (ol, Deputy Clerk) (Entered: 08/01/2019) |
| 08/01/2019 | 182 | MOTION For Authorization of Sale of Real Property Located at 3018 Susanne Court, Owings Mills, MD 21117 by Gregory S. Milligan (Attachments: # 1 Exhibit A - Declaration of Gregory S. Milligan, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Text of Proposed Order)(Butler, Lynn) (Entered: 08/01/2019) |
| 08/02/2019 | 183 | ORDER granting 182 Motion For Authorization of Sale of Real Property Located at 3018 Susanne Court, Owings Mills, MD 21117 by Gregory S. Milligan. Signed by Judge Richard D. Bennett on 8/2/2019. (jnls, Deputy Clerk) (Entered: 08/02/2019) |
| 08/06/2019 | 184 | CERTIFICATE of Counsel *Regarding Real Property Sale Motions (Related to Dkt Nos. 153, 156, 167, & 182)* by Lynn H Butler on behalf of Gregory S. Milligan (Butler, Lynn) (Entered: 08/06/2019) |
| 08/06/2019 | 185 | MOTION for Approval of Procedures for Sale of Real Property and Retention of Coldwell Banker Commercial Amarillo as Broker by Gregory S. Milligan (Attachments: # 1 Exhibit A - Declaration, # 2 Text of Proposed Order)(Butler, Lynn) (Entered: 08/06/2019) |
| 08/08/2019 | 186 | Sealed Document(McDonald, Joyce) (Entered: 08/08/2019) |
| 08/09/2019 | 187 | MOTION to Withdraw as Attorney by Jay B. Ledford (Attachments: # 1 Text of Proposed Order)(Treem, Joshua) (Entered: 08/09/2019) |
| 08/10/2019 | 188 | NOTICE by Gregory S. Milligan re 137 Order on Motion for Miscellaneous Relief,,,,, *Notice of Proposed Sale of Vehicle* (Butler, Lynn) (Entered: 08/10/2019) |
| 08/12/2019 | 189 | ORDER granting 185 Motion for Approval of Procedures for Sale of Real Property and Retention of Coldwell Banker Commercial Amarillo as Broker by Gregory S. Milligan. Signed by Judge Richard D. Bennett on 8/12/2019. (ol, Deputy Clerk) (Entered: 08/13/2019) |
| 08/16/2019 | 192 | ORDER granting 187 Motion to Withdraw as Attorney. Attorney Joshua R Treem terminated. Signed by Judge Richard D. Bennett on 8/16/2019. (ol, Deputy Clerk) (Entered: 08/19/2019) |
| 08/19/2019 | 193 | Local Rule 101.2 Mailed to Jay Ledford(c/m 08/19/2019 ol, Deputy Clerk) (Entered: 08/19/2019) |
| 08/19/2019 | 194 | Consent MOTION *for Entry of Partial Judgment as to Defendant Jay B. Ledford* by Securities and Exchange Commission (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Green, Julia) (Entered: 08/19/2019) |
| 08/19/2019 | 195 | CERTIFICATE OF SERVICE by Securities and Exchange Commission re 194 Consent MOTION *for Entry of Partial Judgment as to Defendant Jay B. Ledford* (Green, Julia) (Entered: 08/19/2019) |

JA20

| 08/19/2019 | 196 | JUDGMENT as to Jay B. Ledford. Signed by Judge Richard D. Bennett on 8/19/2019. (c/m 8/19/19 jnls, Deputy Clerk) (Entered: 08/19/2019) |
| 08/19/2019 | 197 | NOTICE by Gregory S. Milligan *of Proposed Sale of Vehicle* (Butler, Lynn) (Entered: 08/19/2019) |
| 08/22/2019 | 198 | MOTION for Approval of Retention of BDO USA, LLP as Tax Accountant by Gregory S. Milligan (Attachments: # 1 Exhibit A - Declaration of Gregory S. Milligan, # 2 Exhibit 1, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 08/22/2019) |
| 08/22/2019 | 199 | MOTION for Authorization of Sale of Real Property Located at 27776 Sharp Road, Easton, MD 21601 by Gregory S. Milligan (Attachments: # 1 Exhibit A - Declaration of Gregory S. Milligan, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Text of Proposed Order)(Butler, Lynn) (Entered: 08/22/2019) |
| 08/24/2019 | 200 | NOTICE by Gregory S. Milligan *of Proposed Sale of Vehicle* (Butler, Lynn) (Entered: 08/24/2019) |
| 08/26/2019 | 201 | ORDER approving 198 Motion for Approval of Retention of BDO USA, LLP as Tax Accountant by Gregory S. Milligan. Signed by Judge Richard D. Bennett on 8/26/2019. (ol, Deputy Clerk) (Entered: 08/26/2019) |
| 08/26/2019 | 202 | ORDER granting 199 MOTION for Authorization of Sale of Real Property by Gregory S. Milligan. Signed by Judge Richard D. Bennett on 8/26/2019. (ol, Deputy Clerk) (Entered: 08/26/2019) |
| 08/28/2019 | 203 | MOTION for Order Authorizing Retention of Merlin Contracting and Developing Limited Liability Company as General Contractor by Gregory S. Milligan (Attachments: # 1 Exhibit A - Declaration of Gregory S. Milligan, # 2 Exhibit B - Declaration of Bart Jones, # 3 Exhibit 1, # 4 Text of Proposed Order) (Butler, Lynn) (Entered: 08/28/2019) |
| 08/29/2019 | 204 | ORDER granting 203 Motion for Authorizing Retention of Merlin Contracting and Developing Limited Liability Company as General Contractor by Gregory S. Milligan. Signed by Judge Richard D. Bennett on 8/29/2019. (ol, Deputy Clerk) (Entered: 08/29/2019) |
| 08/29/2019 | 205 | NOTICE by Gregory S. Milligan *of Proposed Sale of Vehicle* (Butler, Lynn) (Entered: 08/29/2019) |
| 09/04/2019 | 206 | FILED IN ERROR PER COUNSEL - Consent MOTION *FOR ENTRY OF PARTIAL JUDGMENT AS TO DEFENDANT KEVIN B. MERRILL* by Securities and Exchange Commission (Attachments: # 1 Exhibit A Consent of Defendant Kevin B. Merrill, # 2 Text of Proposed Order)(Green, Julia) Modified on 9/4/2019 (jnls, Deputy Clerk). (Entered: 09/04/2019) |
| 09/04/2019 | 207 | FILED IN ERROR PER COUNSEL - CERTIFICATE OF SERVICE by Securities and Exchange Commission re 206 Consent MOTION *FOR ENTRY OF PARTIAL JUDGMENT AS TO DEFENDANT KEVIN B. MERRILL* (Green, Julia) Modified on 9/4/2019 (jnls, Deputy Clerk). (Entered: 09/04/2019) |
| 09/04/2019 | 208 | MOTION *FOR ENTRY OF PARTIAL JUDGMENT AS TO DEFENDANT KEVIN B. MERRILL* by Securities and Exchange Commission (Attachments: # 1 Exhibit A Consent of Defendant Kevin B. Merrill, # 2 Text of Proposed Order)(Green, Julia) (Entered: 09/04/2019) |
| 09/06/2019 | 209 | Supplemental to 116 Stipulation, 110 Supplemental, filed by Gregory S. Milligan *(Original Motion Dkt. 108)* (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Butler, Lynn) (Entered: 09/06/2019) |
| 09/09/2019 | 210 | ORDER approving 209 Receiver Gregory S. Milligan's Supplement to the Motion to Approve Procedures for Sale of Automobiles and for Order Authorizing Retention, Employment, and Compensation of Prestige Motor Car Imports, LLC as Broker. Signed by Judge Richard D. Bennett on 9/9/2019. (ol, Deputy Clerk) (Entered: 09/09/2019) |
| 09/09/2019 | 211 | Judgment as to Kevin B. Merrill. Signed by Judge Richard D. Bennett on 9/9/2019. (c/m 09/09/2019 ol, Deputy Clerk) (Entered: 09/09/2019) |
| 09/13/2019 | 212 | NOTICE by Gregory S. Milligan *of Proposed Sale of Vehicle - 2008 Bugatti Veyron* (Butler, Lynn) (Entered: 09/13/2019) |
| 09/13/2019 | 213 | NOTICE by Gregory S. Milligan *of Proposed Sale of Vehicle - 2017 Land Rover Range Rover* (Butler, Lynn) (Entered: 09/13/2019) |
| 09/13/2019 | 214 | Supplemental to 177 Status Report filed by Gregory S. Milligan (Butler, Lynn) (Entered: 09/13/2019) |
| 09/16/2019 | 215 | Correspondence from Neil Patel re: Sale of the DeVille Asset Management Receivables (ol, Deputy Clerk) (Entered: 09/17/2019) |

JA21

| 09/23/2019 | 216 | MOTION for Entry of an Order Authorizing Retention and Employment of Velocity Investments, LLC by Gregory S. Milligan (Attachments: # 1 Exhibit A - Declaration of Gregory S. Milligan, # 2 Text of Proposed Order)(Butler, Lynn) (Entered: 09/23/2019) |
| --- | --- | --- |
| 09/24/2019 | 217 | ORDER granting 216 MOTION for Entry of an Order Authorizing Retention and Employment of Velocity Investments, LLC by Gregory S. Milligan. Signed by Judge Richard D. Bennett on 9/24/2019. (ols, Deputy Clerk) (Entered: 09/24/2019) |
| 10/02/2019 | 218 | NOTICE by Gregory S. Milligan *of Proposed Sale of Vehicle - 2016 Mercedes Benz Sprinter 2500 Van* (Butler, Lynn) (Entered: 10/02/2019) |
| 10/04/2019 | 219 | MOTION to Appoint Receiver *to Authorize the Receiver to Identify Claimants and Creditors and Propose a Plan of Distribution* by Securities and Exchange Commission (Attachments: # 1 Text of Proposed Order) (Green, Julia) (Entered: 10/04/2019) |
| 10/04/2019 | 220 | MEMORANDUM ORDER granting 159 Receiver's Motion for Approval of Third Interim Fee Application of Harney Management Partners, LLC; granting 160 Receiver's Motion for Approval of Third Interim Fee Application of Husch Blackwell LLP. Signed by Judge Richard D. Bennett on 10/4/2019. (krs, Deputy Clerk) (Entered: 10/04/2019) |
| 10/04/2019 | 221 | RESPONSE to Motion re 219 MOTION to Appoint Receiver *to Authorize the Receiver to Identify Claimants and Creditors and Propose a Plan of Distribution Regarding ECF #219, page two, footnote two, referencing Ms. Merrill's alleged liability as a relief defendant due to a partial judgment entered against Mr. Kevin Merrill in this case* filed by Amanda Merrill.(Biddle, Robert) (Entered: 10/04/2019) |
| 10/04/2019 | 222 | ORDER granting 219 MOTION to Authorize the Receiver to Identify Claimants and Creditors and Propose a Plan of Distribution by Securities and Exchange Commission. Signed by Judge Richard D. Bennett on 10/4/2019. (c/m 10/7/2019 ol, Deputy Clerk) (Entered: 10/07/2019) |
| 10/11/2019 | 223 | MOTION to Establish Procedures for Sale of Certain Personal Property and for Order Authorizing Retention, Employment, and Compensation of Eastern Shore Auctions, Inc. by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Text of Proposed Order)(Butler, Lynn) (Entered: 10/11/2019) |
| 10/11/2019 | 224 | NOTICE by Gregory S. Milligan re 155 Order on Motion for Miscellaneous Relief *of Relisting of Real Property Located at 1848 Circle Road, Towson, MD 21204* (Butler, Lynn) (Entered: 10/11/2019) |
| 10/15/2019 | 225 | ORDER granting 223 Motion to Establish Procedures for Sale of Certain Personal Property and for Order Authorizing Retention, Employment, and Compensation of Eastern Shore Auctions, Inc. Signed by Judge Richard D. Bennett on 10/15/2019. (ols, Deputy Clerk) (Entered: 10/15/2019) |
| 10/22/2019 | 226 | NOTICE by Gregory S. Milligan re 137 Order on Motion for Miscellaneous Relief,,,,, *of Proposed Sale of Vehicle - 2016 Ducati Panigale 959* (Butler, Lynn) (Entered: 10/22/2019) |
| 10/23/2019 | 227 | NOTICE by Gregory S. Milligan re 137 Order on Motion for Miscellaneous Relief,,,,, *of Proposed Sale of Vehicle - 2015 Ferrari 458 Spider Especial* (Butler, Lynn) (Entered: 10/23/2019) |
| 10/23/2019 | 228 | MOTION for Authorization of Sale of Real Property Located at 2801 Paramount Blvd., Amarillo, TX 79109 re 189 Order on Motion for Miscellaneous Relief by Gregory S. Milligan (Attachments: # 1 Exhibit A - Declaration of Gregory S. Milligan, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Text of Proposed Order)(Butler, Lynn) (Entered: 10/23/2019) |
| 10/24/2019 | 229 | ORDER granting 228 Motion for Authorization of Sale of Real Property. Signed by Judge Richard D. Bennett on 10/24/2019. (ols, Deputy Clerk) (Entered: 10/24/2019) |
| 10/30/2019 | 230 | STATUS REPORT *for Fourth Quarter for Period Between July 1, 2019 and September 30, 2019* by Gregory S. Milligan(Butler, Lynn) (Entered: 10/30/2019) |
| 10/30/2019 | 231 | Supplemental to 230 Status Report filed by Gregory S. Milligan *Supplemental Financial Statement* (Butler, Lynn) (Entered: 10/30/2019) |
| 11/11/2019 | 232 | NOTICE by Gregory S. Milligan *of Proposed Sale of Vehicle - 2015 BMW S1000R Motorcycle* (Butler, Lynn) (Entered: 11/11/2019) |
| 11/11/2019 | 233 | NOTICE by Gregory S. Milligan *of Proposed Sale of Vehicle - 2018 Lamborghini Huracan Spyder* (Butler, Lynn) (Entered: 11/11/2019) |
| 11/11/2019 | 234 | NOTICE by Gregory S. Milligan *or Proposed Sale of Vehicle - 2016 Ducati Scrambler* (Butler, Lynn) |

JA22

| | | (Entered: 11/11/2019) |
|---|---|---|
| 11/11/2019 | 235 | STIPULATION re 110 Supplemental, *Regarding Sale Motions (Dkt. 107 and 108), and Certificate of Conference* by Gregory S. Milligan (Attachments: # 1 Affidavit Declaration of Def. Jay Ledford)(Butler, Lynn) (Entered: 11/11/2019) |
| 11/11/2019 | 236 | Supplemental to 235 Stipulation filed by Gregory S. Milligan *Proposed Order Granting* (Butler, Lynn) (Entered: 11/11/2019) |
| 11/14/2019 | 237 | NOTICE by Gregory S. Milligan re 225 Order on Motion for Miscellaneous Relief, *of Proposed Public Auction* (Attachments: # 1 Exhibit 1)(Butler, Lynn) (Entered: 11/14/2019) |
| 11/19/2019 | 238 | MOTION for Other Relief *for Approval of Fourth Interim Fee Application of Harney Management Partners, LLC* by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 11/19/2019) |
| 11/19/2019 | 239 | MOTION for Other Relief *for Approval of Fourth Interim Fee Application of Husch Blackwell LLP* by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 11/19/2019) |
| 11/19/2019 | 240 | -SEALED - NOTICE of Filing Under Seal Ex A to Motion for Approval of Fourth Interim Fee Application of Harney Management Partners, LLC by Gregory S. Milligan re 238 MOTION for Other Relief *for Approval of Fourth Interim Fee Application of Harney Management Partners, LLC* (Butler, Lynn) (Entered: 11/19/2019) |
| 11/19/2019 | 241 | -SEALED - NOTICE of Filing Under Seal Ex A to Motion for Approval of Fourth Interim Fee Application of Husch Blackwell LLP by Gregory S. Milligan re 239 MOTION for Other Relief *for Approval of Fourth Interim Fee Application of Husch Blackwell LLP* (Butler, Lynn) (Entered: 11/19/2019) |
| 11/19/2019 | 242 | MOTION to Seal *Exhibits to Fourth Interim Fee Applications of Harney Management Partners LLC and Husch Blackwell LLP* by Gregory S. Milligan (Attachments: # 1 Text of Proposed Order)(Butler, Lynn) (Entered: 11/19/2019) |
| 11/20/2019 | 243 | ORDER granting 238 Receiver's Motion for Approval of Fourth Interim Fee Application of Harney Management Partners, LLC. Signed by Judge Richard D. Bennett on 11/19/2019. (ols, Deputy Clerk) (Entered: 11/20/2019) |
| 11/20/2019 | 244 | ORDER granting 239 Receiver's Motion for Approval of Fourth Interim Fee Application of Husch Blackwell LLP. Signed by Judge Richard D. Bennett on 11/19/2019. (ols, Deputy Clerk) (Entered: 11/20/2019) |
| 11/20/2019 | 245 | ORDER granting 242 Motion to Seal Certain Exhibits to Fourth Interim Fee Applications of Harney Management Partners LLC and Husch Blackwell LLP. Signed by Judge Richard D. Bennett on 11/19/2019. (ols, Deputy Clerk) (Entered: 11/20/2019) |
| 11/20/2019 | 246 | NOTICE by Gregory S. Milligan *of Proposed Sale of Vehicle - 2016 Mercedes Benz Sprinter 2500 Van* (Butler, Lynn) (Entered: 11/20/2019) |
| 11/26/2019 | 247 | MOTION to Approve Procedures for Sale of Personal Property and for Order Authorizing Retention, Employment, and Compensation of Heritage Auctioneers & Galleries, Inc. as Broker by Gregory S. Milligan (Attachments: # 1 Exhibit A - Declaration of Kathleen Guzman, # 2 Exhibit B - Declaration of Gregory S. Milligan, # 3 Exhibit C - Notice of Proposed Public Auction, # 4 Text of Proposed Order) (Butler, Lynn) (Entered: 11/26/2019) |
| 11/27/2019 | 248 | -VACATED, per 270 - ORDER granting 247 Motion to Approve Procedures for Sale of Personal Property and for Order Authorizing Retention, Employment, and Compensation of Heritage Auctioneers & Galleries, Inc. as Broker. Signed by Judge Richard D. Bennett on 11/27/2019. (ols, Deputy Clerk) Modified on 1/23/2020 (ols, Deputy Clerk). Modified on 1/23/2020 (ols, Deputy Clerk). (Entered: 11/27/2019) |
| 11/27/2019 | 249 | MOTION for Reconsideration re 248 Order on Motion for Miscellaneous Relief, *Opposition by Amanda Merrill to Receiver's Motion Seeking Authority to Auction Seized Personal Property to be Transferred from the Government to the Receiver* by Amanda Merrill(Biddle, Robert) (Entered: 11/27/2019) |
| 12/04/2019 | | Telephone Conference with all counsel re: Pending Motions (ON the record) held on 12/4/2019 before Judge Richard D. Bennett. (Court Reporter: Renee Ewing) (ols, Deputy Clerk) (Entered: 12/05/2019) |
| 12/05/2019 | 250 | ORDER re: Confirming the results of status conference. Signed by Judge Richard D. Bennett on |

JA23

| | | 12/4/2019. (ols, Deputy Clerk) (Entered: 12/05/2019) |
|---|---|---|
| 12/05/2019 | 251 | NOTICE by Gregory S. Milligan re 233 Notice (Other) *Amended Notice of Proposed Sale of Vehicle - 2018 Lamborghini* (Butler, Lynn) (Entered: 12/05/2019) |
| 12/06/2019 | 252 | NOTICE by Securities and Exchange Commission re 248 Order on Motion for Miscellaneous Relief, *Notice of Proposed Order Staying Previously Issued Order (Dkt. 248) Until January 15, 2020* (Attachments: # 1 Text of Proposed Order)(Sylvester, Mark) (Entered: 12/06/2019) |
| 12/06/2019 | 253 | ORDER Staying Previously Issued Order 248 Order granting 247 Motion to Approve Procedures for Sale of Personal Property and for Order Authorizing Retention, Employment, and Compensation of Heritage Auctioneers & Galleries, Inc. as Broker. Signed by Judge Richard D. Bennett on 12/6/2019. (ols, Deputy Clerk) (Entered: 12/06/2019) |
| 12/09/2019 | 254 | NOTICE by Gregory S. Milligan re 237 Notice (Other) *Amended Notice of Auction - Eastern Shore* (Attachments: # 1 Exhibit 1)(Butler, Lynn) (Entered: 12/09/2019) |
| 12/10/2019 | 255 | MOTION to Withdraw *Non-Party from Case* by EagleBank (Attachments: # 1 Text of Proposed Order) (Spiegel, Ryan) (Entered: 12/10/2019) |
| 12/11/2019 | 256 | ORDER granting 255 Eaglebank's Motion to Withdraw Non-Party from Case. Signed by Judge Richard D. Bennett on 12/11/2019. (ols, Deputy Clerk) (Entered: 12/11/2019) |
| 12/18/2019 | 257 | Consent MOTION Certificate of Conference and Stipulation Regarding Sale Motions re 108 MOTION to Approve Procedures for Sale of Automobiles and for Order Authorizing Retention, Employment, and Compensation of Prestige Motor Car Imports, LLC as Broker , 107 MOTION for Approval of Procedures for Sale of Real Property and Retention of Sotheby's International Realty, Inc. as Brokers by Gregory S. Milligan (Attachments: # 1 Affidavit Declaration of Def. Jay Ledford, # 2 Text of Proposed Order)(Butler, Lynn) (Entered: 12/18/2019) |
| 12/18/2019 | 258 | ORDER granting in part 257 Receiver Gregory S. Milligan's Motion to Approve Sale Procedures and Retention of Sotherby's International Realty, Inc. and Motion to Approve Sale Procedures and Retention of Prestige Motor Car Imports, LLC. Signed by Judge Richard D. Bennett on 12/18/2019. (ols, Deputy Clerk) (Entered: 12/18/2019) |
| 12/19/2019 | 259 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 12/04/2019, before Judge Bennett. Court Reporter/Transcriber Renee Ewing, Telephone number 301-344-3227. Total number of pages filed: 18. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained from the Court Reporter or through PACER. Redaction Request due 1/9/2020. Redacted Transcript Deadline set for 1/21/2020. Release of Transcript Restriction set for 3/18/2020.(re, Court Reporter) (Entered: 12/19/2019) |
| 12/27/2019 | 260 | NOTICE by Gregory S. Milligan re 170 Notice (Other) *Amended Notice of Sale of Vehicle - 2017 Land Rover Range Rover* (Butler, Lynn) (Entered: 12/27/2019) |
| 01/08/2020 | 261 | NOTICE of Appearance by Matthew G Summers on behalf of Randel Lewis (Summers, Matthew) (Entered: 01/08/2020) |
| 01/09/2020 | 262 | STATUS REPORT *Joint by SEC, U.S. Attorney and counsel for Ms. Merrill as requested in ECF #253 regarding objections to ECF #248* by Amanda Merrill(Biddle, Robert) (Entered: 01/09/2020) |
| 01/09/2020 | 263 | NOTICE by Circle International Financial, Inc. re 62 Order on Motion to Amend/Correct *Appointment of Receiver with Certified Statement of Account* (Diemer, Mary) (Entered: 01/09/2020) |
| 01/10/2020 | 264 | NOTICE by Gregory S. Milligan re 137 Order on Motion for Miscellaneous Relief,,,,, *of Proposed Sale of Vehicle - 2015 Porsche 918* (Butler, Lynn) (Entered: 01/10/2020) |
| 01/13/2020 | 265 | MARGINAL ORDER Granting 262 Joint Status Report. Signed by Judge Richard D. Bennett on 1/10/2020. (ols, Deputy Clerk) (Entered: 01/13/2020) |
| 01/13/2020 | 266 | MOTION for Approval of Retention of Garnet Capital Advisors, LLC as Broker by Gregory S. Milligan (Attachments: # 1 Exhibit A - Milligan's Declaration, # 2 Exhibit 1 - Garnet Engagement Agreement, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 01/13/2020) |
| 01/13/2020 | 267 | NOTICE by Gregory S. Milligan re 169 Notice (Other) *Amended Notice of Proposed Sale of Vehicle - 2018 Cadillac Escalade* (Butler, Lynn) (Entered: 01/13/2020) |

JA24

| | | |
|---|---|---|
| 01/14/2020 | 268 | ORDER granting 266 Receiver Gregory S. Milligan's Motion for Approval of Retention of Garnet Capital Advisors, LLC as Broker. Signed by Judge Richard D. Bennett on 1/14/2020. (ols, Deputy Clerk) (Entered: 01/15/2020) |
| 01/22/2020 | 269 | NOTICE by Gregory S. Milligan re 248 Order on Motion for Miscellaneous Relief, *Consent Order Vacating ECF #248 and Granting Receiver's Motion ECF #247 as Modified* (Attachments: # 1 Text of Proposed Order)(Klein, Buffey) (Entered: 01/22/2020) |
| 01/23/2020 | 270 | CONSENT ORDER Vacating 248 and Granting 247 Receiver Gregory S. Milligan's Motion as Modified. Signed by Judge Richard D. Bennett on 1/23/2020. (ols, Deputy Clerk) (Entered: 01/23/2020) |
| 01/24/2020 | 271 | NOTICE by Gregory S. Milligan re 270 Order *Modified Consent Order* (Klein, Buffey) (Entered: 01/24/2020) |
| 01/24/2020 | 272 | MODIFIED CONSENT ORDER Vacating 248 and Granting 247 Receiver Gregory S. Milligan's Motion as Modified. Signed by Judge Richard D. Bennett on 1/24/2020. (ols, Deputy Clerk) (Additional attachment(s) added on 1/30/2020: # 1 Exhibit 1) (ols, Deputy Clerk). (Entered: 01/27/2020) |
| 01/31/2020 | 273 | STATUS REPORT *for Period Between October 1, 2019 and December 31, 2019* by Gregory S. Milligan(Butler, Lynn) (Entered: 01/31/2020) |
| 01/31/2020 | 274 | Supplemental to 273 Status Report filed by Gregory S. Milligan (Butler, Lynn) (Entered: 01/31/2020) |
| 02/07/2020 | 275 | NOTICE of Appearance by Matthew G Summers on behalf of Randel Lewis (Summers, Matthew) (Entered: 02/07/2020) |
| 02/16/2020 | 276 | NOTICE by Gregory S. Milligan *of Proposed Sale of Vehicle - 2015 Ferrari 458 Spider Especial* (Butler, Lynn) (Entered: 02/16/2020) |
| 03/05/2020 | 277 | MOTION For Authorization of Sale of Real Property Located at 1650 Cedar Hill Avenue, Dallas, Texas 75208 by Gregory S. Milligan (Attachments: # 1 Exhibit A - Declaration, # 2 Proposed Order)(Butler, Lynn) (Entered: 03/05/2020) |
| 03/11/2020 | 278 | MOTION for Other Relief *for Approval of Fifth Interim Fee Application of Harney Management Partners, LLC* by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order) (Butler, Lynn) (Entered: 03/11/2020) |
| 03/11/2020 | 279 | MOTION for Other Relief *for Approval of Fifth Interim Fee Application of Husch Blackwell LLP* by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 03/11/2020) |
| 03/11/2020 | 280 | -SEALED - NOTICE of Filing Under Seal Exhibit A to Motion for Approval of Fifth Interim Fee Application of Harney Management Partners, LLC by Gregory S. Milligan re 278 MOTION for Other Relief *for Approval of Fifth Interim Fee Application of Harney Management Partners, LLC* (Butler, Lynn) (Entered: 03/11/2020) |
| 03/11/2020 | 281 | -SEALED - NOTICE of Filing Under Seal Exhibit A to Motion for Approval of Fifth Interim Fee Application of Husch Blackwell LLP by Gregory S. Milligan re 279 MOTION for Other Relief *for Approval of Fifth Interim Fee Application of Husch Blackwell LLP* (Butler, Lynn) (Entered: 03/11/2020) |
| 03/11/2020 | 282 | MOTION to Seal *Certain Exhibits to the Fifth Interim Fee Applications of Husch Blackwell LLP and Harney Management Partners, LLC* by Gregory S. Milligan (Attachments: # 1 Text of Proposed Order) (Butler, Lynn) (Entered: 03/11/2020) |
| 03/13/2020 | 283 | ORDER granting 277 Motion For Authorization of Sale of Real Property Located at 1650 Cedar Hill Avenue, Dallas, Texas 75208. Signed by Judge Richard D. Bennett on 3/12/2020. (ols, Deputy Clerk) (Entered: 03/13/2020) |
| 03/13/2020 | 284 | ORDER granting 278 Motion for Approval of Fifth Interim Fee Application of Harney Management Partners, LLC. Signed by Judge Richard D. Bennett on 3/12/2020. (ols, Deputy Clerk) (Entered: 03/13/2020) |
| 03/13/2020 | 285 | ORDER granting 279 Motion for Approval of Fifth Interim Fee Application of Husch Blackwell LLP. Signed by Judge Richard D. Bennett on 3/12/2020. (ols, Deputy Clerk) (Entered: 03/13/2020) |
| 03/13/2020 | 286 | ORDER granting 282 Motion to Seal Certain Exhibits to the Fifth Interim Fee Applications of Husch Blackwell LLP and Harney Management Partners, LLC. Signed by Judge Richard D. Bennett on 3/12/2020. (ols, Deputy Clerk) Modified on 3/13/2020 (ols, Deputy Clerk). (Entered: 03/13/2020) |

JA25

| 03/25/2020 | 287 | NOTICE by Gregory S. Milligan re 272 Order, *of Proposed Public Auction* (Attachments: # 1 Exhibit 1) (Butler, Lynn) (Entered: 03/25/2020) |
| 04/07/2020 | 288 | NOTICE by Gregory S. Milligan re 272 Order, *of Proposed Public Auction* (Attachments: # 1 Exhibit 1) (Butler, Lynn) (Entered: 04/07/2020) |
| 04/17/2020 | 289 | NOTICE by Gregory S. Milligan re 272 Order, *of Proposed Public Auction (Jewelry)* (Attachments: # 1 Exhibit 1)(Butler, Lynn) (Entered: 04/17/2020) |
| 04/30/2020 | 290 | NOTICE by Randel Lewis *of Claims on Behalf of Aspen Street, LLC* (Summers, Matthew) (Entered: 04/30/2020) |
| 04/30/2020 | 291 | STATUS REPORT *for the Period Between January 1, 2020 and March 31, 2020* by Gregory S. Milligan(Butler, Lynn) (Entered: 04/30/2020) |
| 04/30/2020 | 292 | Supplemental to 291 Status Report filed by Gregory S. Milligan (Butler, Lynn) (Entered: 04/30/2020) |
| 05/04/2020 | 293 | NOTICE by Gregory S. Milligan re 272 Order, *of Proposed Public Auction (Coins)* (Attachments: # 1 Exhibit 1)(Butler, Lynn) (Entered: 05/04/2020) |
| 05/06/2020 | 294 | NOTICE by Gregory S. Milligan re 272 Order, *of Proposed Public Auction (Jewelry 23152)* (Attachments: # 1 Exhibit 1)(Butler, Lynn) (Entered: 05/06/2020) |
| 05/08/2020 | 295 | NOTICE by Gregory S. Milligan re 272 Order, *of Proposed Public Auction (Sports 152025)* (Attachments: # 1 Exhibit 1)(Butler, Lynn) (Entered: 05/08/2020) |
| 05/08/2020 | 296 | NOTICE by Gregory S. Milligan re 272 Order, *of Proposed Public Auction (Timepieces 5506)* (Attachments: # 1 Exhibit 1)(Butler, Lynn) (Entered: 05/08/2020) |
| 05/11/2020 | 297 | NOTICE by Gregory S. Milligan re 272 Order, 289 Notice (Other) *Amended Notice of Proposed Public Auction (Jewelry 172021)* (Attachments: # 1 Exhibit 1)(Butler, Lynn) (Entered: 05/11/2020) |
| 05/11/2020 | 298 | NOTICE by Gregory S. Milligan re 272 Order, *of Proposed Public Auction (Fine Art 16155)* (Attachments: # 1 Exhibit 1)(Butler, Lynn) (Entered: 05/11/2020) |
| 05/12/2020 | 299 | NOTICE by Gregory S. Milligan re 272 Order, *of Proposed Public Auction (Dec. Art 13156)* (Attachments: # 1 Exhibit 1)(Butler, Lynn) (Entered: 05/12/2020) |
| 05/22/2020 | 300 | NOTICE by Gregory S. Milligan re 272 Order, *Notice of Proposed Public Auction* (Attachments: # 1 Exhibit Luxury Accessories Listed for Auction)(Butler, Lynn) (Entered: 05/22/2020) |
| 05/22/2020 | 301 | NOTICE by Gregory S. Milligan re 272 Order, *Notice of Proposed Public Auction* (Attachments: # 1 Exhibit Jewelry Listed for Auction)(Butler, Lynn) (Entered: 05/22/2020) |
| 05/26/2020 | 302 | NOTICE by Gregory S. Milligan re 272 Order, *of Proposed Public Auction (Fine Art 8025)* (Attachments: # 1 Exhibit 1)(Butler, Lynn) (Entered: 05/26/2020) |
| 06/01/2020 | 303 | MOTION for Other Relief *for Approval of Sixth Interim Fee Application of HMP Advisory Holdings, LLC, D/B/A Harney Partners* by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 06/01/2020) |
| 06/01/2020 | 304 | MOTION for Other Relief *for Approval of Sixth Interim Fee Application of Husch Blackwell LLP* by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 06/01/2020) |
| 06/01/2020 | 305 | -SEALED - NOTICE of Filing Under Seal Exhibit A to Motion for Approval of Sixth Interim Fee Application of HMP Advisory Holdings, LLC, D/B/A Harney Partners by Gregory S. Milligan re 303 MOTION for Other Relief *for Approval of Sixth Interim Fee Application of HMP Advisory Holdings, LLC, D/B/A Harney Partners* (Butler, Lynn) (Entered: 06/01/2020) |
| 06/01/2020 | 306 | -SEALED - NOTICE of Filing Under Seal Exhibit A to Motion for Approval of Sixth Interim Fee Application of Husch Blackwell LLP by Gregory S. Milligan re 304 MOTION for Other Relief *for Approval of Sixth Interim Fee Application of Husch Blackwell LLP* (Butler, Lynn) (Entered: 06/01/2020) |
| 06/01/2020 | 307 | MOTION to Seal by Gregory S. Milligan (Attachments: # 1 Text of Proposed Order)(Butler, Lynn) (Entered: 06/01/2020) |
| 06/01/2020 | 308 | -SEALED-ORDER Granting 307 Motion to Seal. Signed by Judge Richard D. Bennett on 6/1/2020. (Entered: 06/01/2020) |

JA26

3/2/23, 9:24 AM                                    District of Maryland (CM/ECF Live NextGen 1.6)

| 06/09/2020 | 309 | MOTION Approve the Sale of and Procedures for the Sale of the Assets of DeVille Asset Management, Ltd. by Gregory S. Milligan (Attachments: # 1 Exhibit Declaration of Gregory S. Milligan, # 2 Exhibit Notice of Proposed Auction, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 06/09/2020) |
| --- | --- | --- |
| 06/09/2020 | 310 | ORDER granting 309 Receiver Gregory S. Milligan's Motion to Approve the Sale of and Procedures for the Sale of the Assets of DeVille Asset Management, Ltd. Signed by Judge Richard D. Bennett on 6/9/2020. (ols, Deputy Clerk) (Entered: 06/09/2020) |
| 06/09/2020 | 311 | NOTICE by Gregory S. Milligan re 272 Order, *of Proposed Public Auction (Comics 7231)* (Attachments: # 1 Exhibit 1)(Butler, Lynn) (Entered: 06/09/2020) |
| 06/15/2020 | 312 | NOTICE by Gregory S. Milligan re 137 Order on Motion for Miscellaneous Relief,,,,, *of Proposed Sale of Vehicle - 2016 Ford F-150* (Butler, Lynn) (Entered: 06/15/2020) |
| 06/17/2020 | 313 | NOTICE by Gregory S. Milligan re 272 Order, 300 Notice (Other) *Amended Notice of Proposed Public Auction (Luxury 22153)* (Attachments: # 1 Exhibit)(Butler, Lynn) (Entered: 06/17/2020) |
| 06/24/2020 | 314 | ORDER granting 303 Motion for Approval of Sixth Interim Fee Application of HMP Advisory Holdings, LLC, D/B/A Harney Partners. Signed by Judge Richard D. Bennett on 6/24/2020. (ols, Deputy Clerk) (Entered: 06/24/2020) |
| 06/24/2020 | 315 | ORDER granting 304 Motion for Approval of Sixth Interim Fee Application of Husch Blackwell LLP. Signed by Judge Richard D. Bennett on 6/24/2020. (ols, Deputy Clerk) (Entered: 06/24/2020) |
| 06/26/2020 | 316 | NOTICE by Gregory S. Milligan re 137 Order on Motion for Miscellaneous Relief,,,,, *of Proposed Sale of Vehicle - 2018 Land Rover Range Rover* (Butler, Lynn) (Entered: 06/26/2020) |
| 06/30/2020 | 317 | NOTICE by Gregory S. Milligan re 137 Order on Motion for Miscellaneous Relief,,,,, *of Proposed Sale of Vehicle - 2015 Bentley Flying Spur* (Butler, Lynn) (Entered: 06/30/2020) |
| 07/07/2020 | 318 | MOTION for Return of Property *held by the Receiver including a request for a telephonic status conference* by Amanda Merrill (Attachments: # 1 Exhibit list of property held by the Receiver, # 2 Text of Proposed Order releasing property)(Biddle, Robert) (Entered: 07/07/2020) |
| 07/08/2020 | 319 | NOTICE by Gregory S. Milligan re 137 Order on Motion for Miscellaneous Relief,,,,, *of Proposed Sale of Vehicle - 2016 Ferrari* (Butler, Lynn) (Entered: 07/08/2020) |
| 07/10/2020 | 320 | NOTICE by Gregory S. Milligan *of Proposed Auction - DeVille Portfolios* (Klein, Buffey) (Entered: 07/10/2020) |
| 07/14/2020 | 321 | RESPONSE in Opposition re 318 MOTION for Return of Property *held by the Receiver including a request for a telephonic status conference* filed by Securities and Exchange Commission. (Attachments: # 1 Text of Proposed Order)(Sylvester, Mark) (Entered: 07/14/2020) |
| 07/15/2020 | 322 | RESPONSE in Opposition re 318 MOTION for Return of Property *held by the Receiver including a request for a telephonic status conference* filed by Gregory S. Milligan. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Text of Proposed Order)(Butler, Lynn) (Entered: 07/15/2020) |
| 07/15/2020 | 323 | NOTICE by Gregory S. Milligan re 137 Order on Motion for Miscellaneous Relief,,,,, *of Proposed Sale of Vehicle - 2015 Ferrari 448 Speciale Aperta* (Butler, Lynn) (Entered: 07/15/2020) |
| 07/15/2020 | | Status Teleconference with all counsel held on 7/15/2020 (NOT on the Record) before Judge Richard D. Bennett. (ols, Deputy Clerk) (Entered: 07/15/2020) |
| 07/15/2020 | 324 | ORDER denying as premature 318 Amanda Merrill's Motion for Return of Property; Directing that the Stay, implemented in this case on 10/25/2018 is lifted and this case shall proceed accordingly. Signed by Judge Richard D. Bennett on 7/15/2020. (ols, Deputy Clerk) Modified on 7/17/2020 (ols, Deputy Clerk). (Entered: 07/15/2020) |
| 07/30/2020 | 325 | STATUS REPORT *for the Period Between April 1, 2020 and June 30, 2020* by Gregory S. Milligan(Butler, Lynn) (Entered: 07/30/2020) |
| 07/30/2020 | 326 | Supplemental to 325 Status Report filed by Gregory S. Milligan (Butler, Lynn) (Entered: 07/30/2020) |
| 07/31/2020 | 327 | MOTION to Dismiss for Failure to State a Claim*and for partial summary judgment* by Amanda Merrill (Attachments: # 1 Text of Proposed Order granting motion to dismiss and for partial summary judgment, # 2 Memorandum in Support of motion to dismiss and for partial summary judgment, # 3 Exhibit Sharp |

JA27

| | | |
|---|---|---|
| | | Road deed for tenancy by the entireties property, # 4 Exhibit Spyglass Lane deed tenancy by the entireties property)(Biddle, Robert) (Entered: 07/31/2020) |
| 07/31/2020 | 328 | NOTICE by Gregory S. Milligan re 272 Order, *of Proposed Public Auction (Jewelry 172036)* (Attachments: # 1 Exhibit 1)(Butler, Lynn) (Entered: 07/31/2020) |
| 08/04/2020 | 329 | Joint MOTION for Extension of Time to File Answer re 50 Amended Complaint, *as to Relief Defendant Lalaine Ledford* by Securities and Exchange Commission (Attachments: # 1 Text of Proposed Order) (Sylvester, Mark) (Entered: 08/04/2020) |
| 08/05/2020 | 330 | ORDER granting 329 Joint Motion for Extension of Time to Respond to the Amended Complaint; Lalaine Ledford answer due 10/5/2020. Signed by Judge Richard D. Bennett on 8/5/2020. (ols, Deputy Clerk) (Entered: 08/05/2020) |
| 08/12/2020 | 331 | MOTION to Approve the Sale and Procedures for the Sale of Riverwalk Credit Repair, Inc. and Riverwalk Debt Solutions, Inc. by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 08/12/2020) |
| 08/13/2020 | 332 | MARGINAL ORDER granting 331 Motion to Approve the Sale and Procedures for the Sale of Riverwalk Credit Repair, Inc. and Riverwalk Debt Solutions, Inc. Signed by Judge Richard D. Bennett on 8/12/2020. (ols, Deputy Clerk) (Entered: 08/13/2020) |
| 08/17/2020 | 333 | NOTICE by Gregory S. Milligan *of Proposed Auction (Riverwalk Properties)* (Attachments: # 1 Exhibit 1) (Butler, Lynn) (Entered: 08/17/2020) |
| 08/21/2020 | 334 | MOTION to Enforce Judgment *(Receivership Order and Petition for Order to Show Cause Against Charles Gray and Harrison Gray)* by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Butler, Lynn) (Entered: 08/21/2020) |
| 08/21/2020 | 335 | RESPONSE in Opposition re 327 MOTION to Dismiss for Failure to State a Claim*and for partial summary judgment* filed by Securities and Exchange Commission. (Attachments: # 1 Text of Proposed Order)(Sylvester, Mark) (Entered: 08/21/2020) |
| 08/24/2020 | 336 | NOTICE by Gregory S. Milligan re 137 Order on Motion for Miscellaneous Relief,,,,, *of Proposed Sale of Vehicle - 2014 Pagani Huayra* (Butler, Lynn) (Entered: 08/24/2020) |
| 08/28/2020 | 337 | -PER 356 , VACATED and SET ASIDE- ORDER granting 334 Receiver Gregory S. Milligan's Motion to Enforce the Receivership Order and Petition for Order to Show Cause. Signed by Judge Richard D. Bennett on 8/28/2020. (ols, Deputy Clerk) Modified on 9/17/2020 (ols, Deputy Clerk). (Entered: 08/28/2020) |
| 08/28/2020 | 338 | MOTION for Other Relief *for Approval of Seventh Interim Fee Application of HMP Advisory Holdings, LLC, D/B/A Harney Partners* by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 08/28/2020) |
| 08/28/2020 | 339 | MOTION for Other Relief *for Approval of Seventh Interim Fee Application of Husch Blackwell LLP* by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 08/28/2020) |
| 08/28/2020 | 340 | -SEALED - NOTICE of Filing Under Seal Exhibit A to Motion for Approval of Seventh Interim Fee Application of HMP Advisory Holdings, LLC, D/B/A Harney Partners by Gregory S. Milligan re 338 MOTION for Other Relief *for Approval of Seventh Interim Fee Application of HMP Advisory Holdings, LLC, D/B/A Harney Partners* (Butler, Lynn) (Entered: 08/28/2020) |
| 08/28/2020 | 341 | -SEALED - NOTICE of Filing Under Seal Exhibit A to Motion for Approval of Seventh Interim Fee Application of Husch Blackwell LLP by Gregory S. Milligan re 339 MOTION for Other Relief *for Approval of Seventh Interim Fee Application of Husch Blackwell LLP* (Butler, Lynn) (Entered: 08/28/2020) |
| 08/28/2020 | 342 | MOTION to Seal by Gregory S. Milligan (Attachments: # 1 Text of Proposed Order)(Butler, Lynn) (Entered: 08/28/2020) |
| 08/31/2020 | 343 | REPLY to Response to Motion re 327 MOTION to Dismiss for Failure to State a Claim*and for partial summary judgment Regarding Liu and Tenancy by the Entirety Real Property* filed by Amanda Merrill. (Biddle, Robert) (Entered: 08/31/2020) |
| 09/01/2020 | 344 | ORDER granting 338 Receiver's Motion for Approval of Seventh Interim Fee Application of HMP Advisory Holdings, LLC, D/B/A Harney Partners. Signed by Judge Richard D. Bennett on 9/1/2020. (ols, |

JA28

| | | Deputy Clerk) (Entered: 09/01/2020) |
|---|---|---|
| 09/01/2020 | 345 | ORDER granting 339 Receiver's Motion for Approval of Seventh Interim Fee Application of Husch Blackwell LLP. Signed by Judge Richard D. Bennett on 9/1/2020. (ols, Deputy Clerk) (Entered: 09/01/2020) |
| 09/01/2020 | 346 | ORDER granting 342 Receiver's Motion to Seal Exhibits to Seventh Interim Fee Applications of Husch Blackwell LLP and Harney Management Partners, LLC. Signed by Judge Richard D. Bennett on 9/1/2020. (ols, Deputy Clerk) (Entered: 09/01/2020) |
| 09/02/2020 | 347 | MOTION for Approval to Pay Commission to Garnet Capital Advisors, LLC *and Notice of Completion of Auction Related to DeVille Asset Management, Ltd.'s Assets* by Gregory S. Milligan (Attachments: # 1 Text of Proposed Order)(Klein, Buffey) (Entered: 09/02/2020) |
| 09/02/2020 | 348 | NOTICE by Gregory S. Milligan re 272 Order, *of Proposed Public Auction (Jewelry 5502)* (Attachments: # 1 Exhibit 1)(Butler, Lynn) (Entered: 09/02/2020) |
| 09/03/2020 | 349 | ORDER granting 347 Motion for Approval to Pay Commission to Garnet Capital Advisors, LLC. Signed by Judge Richard D. Bennett on 9/2/2020. (ols, Deputy Clerk) (Entered: 09/03/2020) |
| 09/04/2020 | 350 | MOTION for Reconsideration by Harrison Gray, Charles Gray (Attachments: # 1 Memo in Support, # 2 Proposed Order, # 3 Exhibit 1, # 4 Exhibit A to Exhibit 1, # 5 Exhibit 2, # 6 Exhibit A to Exhibit 2, # 7 Exhibit B to Exhibit 2, # 8 Exhibit 3, # 9 Exhibit A to Exhibit 3, # 10 Exhibit B to Exhibit 3, # 11 Exhibit C to Exhibit 3)(Rauch, Lee) (Entered: 09/04/2020) |
| 09/15/2020 | 351 | RESPONSE to Motion re 350 MOTION for Reconsideration *and Limited Consent* filed by Gregory S. Milligan. (Attachments: # 1 Text of Proposed Order)(Klein, Buffey) (Entered: 09/15/2020) |
| 09/16/2020 | 352 | MOTION *to Approve Procedures for the Sale of Personal Property and for Order Authorizing Retention, Employment, and Compensation of FLS Auction, Inc.* by Gregory S. Milligan (Attachments: # 1 Exhibit A - Declaration of Gregory S. Milligan, # 2 Exhibit B - Declaration of Frank Sughrue, # 3 Exhibit C - Notice of Proposed Public Auction, # 4 Text of Proposed Order)(Butler, Lynn) (Entered: 09/16/2020) |
| 09/16/2020 | 353 | ORDER granting 352 Receiver Gregory S. Milligan's Motion to Approve Procedures for the Sale of Personal Property and for Order Authorizing Retention, Employment, and Compensation of FLS Auction, Inc. Signed by Judge Richard D. Bennett on 9/16/2020. (ols, Deputy Clerk) (Entered: 09/16/2020) |
| 09/16/2020 | 354 | MOTION for Authorization of Sale of Real Property Located at 1848 Circle Road, Towson, MD 21204 re 137 Order on Motion for Miscellaneous Relief,,,,, by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Butler, Lynn) (Entered: 09/16/2020) |
| 09/17/2020 | 355 | ORDER granting 354 Gregory S. Milligan's Motion for Authorization of Sale of Real Property Located at 1848 Circle Road, Towson, MD 21204. Signed by Judge Richard D. Bennett on 9/17/2020. (ols, Deputy Clerk) (Entered: 09/17/2020) |
| 09/17/2020 | 356 | ORDER granting in part and denying in part 350 Harrison Gray and Charles Gray's Motion for Reconsideration re 337 Order on Motion to Enforce; Directing that 337 Order on Motion to Enforce is vacated and set aside; Denying all other relief requested by the Grays in their Motion. Signed by Judge Richard D. Bennett on 9/17/2020. (ols, Deputy Clerk) (Entered: 09/17/2020) |
| 09/18/2020 | 357 | MOTION for Reconsideration re 355 Order on Motion for Miscellaneous Relief *In Which the Receiver Asked the Court to approve the Sale of the Real Property at 1848 Circle Road and Items of Personal Property Seized by the Receiver upon Ms. Merrill's Departure from the Property on December 11, 2018* by Amanda Merrill(Biddle, Robert) (Entered: 09/18/2020) |
| 09/21/2020 | 358 | MOTION for Other Relief *for Approval of First Interim Fee Application of BDO USA, LLP* by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 09/21/2020) |
| 09/24/2020 | 359 | ORDER denying as moot 67 Ledford's Motion to Dismiss for Failure to State a Claim; denying as moot 68 Ledford's Motion to Dismiss for Failure to State a Claim. Signed by Judge Richard D. Bennett on 9/24/2020. (ols, Deputy Clerk) (Entered: 09/24/2020) |
| 09/24/2020 | | Telephone Status Conference held on 9/24/2020 (NOT on the Record) before Judge Richard D. Bennett. (ols, Deputy Clerk) (Entered: 09/24/2020) |
| 09/25/2020 | 360 | MEMORANDUM AND ORDER denying 114 IFIC's Motion for Limited Intervention to Allow Cancellation of Bonds and for Collateral Security. Signed by Judge Richard D. Bennett on 9/25/2020. (ols, |

JA29

District of Maryland (CM/ECF Live NextGen 1.6)

| | | |
|---|---|---|
| | | Deputy Clerk) (Entered: 09/25/2020) |
| 10/01/2020 | 361 | REPLY to Response to Motion re 334 MOTION to Enforce Judgment *(Receivership Order and Petition for Order to Show Cause Against Charles Gray and Harrison Gray)* filed by Gregory S. Milligan. (Attachments: # 1 Exhibit E, # 2 Exhibit F, # 3 Exhibit G)(Klein, Buffey) (Entered: 10/01/2020) |
| 10/01/2020 | 362 | MOTION for Entry of Agreed Confidentiality and Protective Order re 222 Order on Motion to Appoint Receiver by Gregory S. Milligan (Attachments: # 1 Text of Proposed Order)(Klein, Buffey) (Entered: 10/01/2020) |
| 10/02/2020 | 363 | AGREED CONFIDENTIALITY AND PROTECTIVE ORDER. Signed by Judge Richard D. Bennett on 10/2/2020. (ols, Deputy Clerk) (Entered: 10/02/2020) |
| 10/02/2020 | 364 | Request for Hearing/Trial (Rauch, Lee) (Entered: 10/02/2020) |
| 10/08/2020 | 365 | MOTION for Approval to Release Certain Personal Property to Amanda Merrill and Stipulation Between the Receiver and Amanda Merrill Related to the Release of Certain Personal Property re 357 MOTION for Reconsideration re 355 Order on Motion for Miscellaneous Relief *In Which the Receiver Asked the Court to approve the Sale of the Real Property at 1848 Circle Road and Items of Personal Property Seized by the Receiver upon Ms. Merri,* 354 MOTION for Authorization of Sale of Real Property Located at 1848 Circle Road, Towson, MD 21204 re 137 Order on Motion for Miscellaneous Relief,,,,, by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Klein, Buffey) (Entered: 10/08/2020) |
| 10/09/2020 | 366 | ORDER granting 365 Receiver Gregory S. Milligan's Motion for Approval to Release Certain Personal Property to Amanda Merrill; denying as moot 357 Amanda Merrill's Limited Opposition to the Circle Road Sale Motion. Signed by Judge Richard D. Bennett on 10/9/2020. (ols, Deputy Clerk) Modified on 10/9/2020 (ols, Deputy Clerk). (Entered: 10/09/2020) |
| 10/14/2020 | 367 | Telephonic Motion Hearing held on 10/14/2020 re 334 MOTION to Enforce Judgment *(Receivership Order and Petition for Order to Show Cause Against Charles Gray and Harrison Gray)* filed by Gregory S. Milligan before Judge Richard D. Bennett.(Court Reporter: Ronda Thomas) (mds, Deputy Clerk) (Entered: 10/14/2020) |
| 10/14/2020 | 368 | ORDER denying 334 Receiver Gregory S. Milligan's Motion to Enforce the Receivership Order and Petition for Order to Show Cause Against Charles Gray and Harrison Gray for their Failure to Turn Over Assets Pursuant to the Amended Receivership Order. Signed by Judge Richard D. Bennett on 10/14/2020. (ols, Deputy Clerk) (Entered: 10/14/2020) |
| 10/21/2020 | 369 | REDACTED DOCUMENT *Objections and Response to Subpoena Duces Tecum* by SML Enterprises, Inc. (Romanick, Jeffrey) (Entered: 10/21/2020) |
| 10/30/2020 | 370 | STATUS REPORT *for the Period Between July 1, 2020 and September 30, 2020* by Gregory S. Milligan(Butler, Lynn) (Entered: 10/30/2020) |
| 10/30/2020 | 371 | Supplemental to 370 Status Report filed by Gregory S. Milligan (Butler, Lynn) (Entered: 10/30/2020) |
| 11/02/2020 | 372 | NOTICE by Gregory S. Milligan *of Proposed Public Auction (Time Pieces)* (Attachments: # 1 Exhibit 1) (Butler, Lynn) (Entered: 11/02/2020) |
| 11/06/2020 | 373 | NOTICE by Gregory S. Milligan re 137 Order on Motion for Miscellaneous Relief,,,,, *Amended Notice of Proposed Sale of Vehicle - 2014 Pagani Huayra* (Butler, Lynn) (Entered: 11/06/2020) |
| 11/20/2020 | 374 | MOTION for Other Relief *for Approval of Eighth Interim Fee Application of HMP Advisory Holdings, LLC, D/B/A Harney Partners* by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 11/20/2020) |
| 11/20/2020 | 375 | MOTION for Other Relief *for Approval of Eighth Interim Fee Application of Husch Blackwell LLP* by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 11/20/2020) |
| 11/20/2020 | 376 | -SEALED - NOTICE of Filing Under Seal Exhibit A to Motion for Approval of Eighth Interim Fee Application of HMP Advisory Holdings, LLC, D/B/A Harney Partners by Gregory S. Milligan re 374 MOTION for Other Relief *for Approval of Eighth Interim Fee Application of HMP Advisory Holdings, LLC, D/B/A Harney Partners* (Butler, Lynn) (Entered: 11/20/2020) |
| 11/20/2020 | 377 | -SEALED - NOTICE of Filing Under Seal Exhibit A to Motion for Approval of Eighth Interim Fee Application of Husch Blackwell LLP by Gregory S. Milligan re 375 MOTION for Other Relief *for Approval of Eighth Interim Fee Application of Husch Blackwell LLP* (Butler, Lynn) (Entered: 11/20/2020) |

JA30

| 11/20/2020 | 378 | MOTION to Seal by Gregory S. Milligan (Attachments: # 1 Text of Proposed Order)(Butler, Lynn) (Entered: 11/20/2020) |
| 11/23/2020 | 379 | ORDER granting 378 Receiver Gregory S. Milligan's Motion to Seal Certain Exhibits to the eighth interim fee applications of Husch Blackwell LLP and HMO Advisory Holdings, LLC, d/b/a Harney Partners. Signed by Judge Richard D. Bennett on 11/23/2020. (ols, Deputy Clerk) (Entered: 11/23/2020) |
| 11/25/2020 | 380 | NOTICE by Gregory S. Milligan re 353 Order on Motion for Miscellaneous Relief, *of Public Auction (Firearms)* (Butler, Lynn) (Entered: 11/25/2020) |
| 11/25/2020 | 381 | MOTION for Authorization of Sale of Real Property Located at 9017 Grove Crest Lane, Las Vegas, NV 89134 re 258 Order on Motion for Miscellaneous Relief, by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Text of Proposed Order)(Butler, Lynn) (Entered: 11/25/2020) |
| 12/07/2020 | 382 | ORDER granting 381 Receiver Gregory S. Milligan's Motion for Authorization of Sale of Real Property Located at 9017 Grove Crest Lane, Las Vegas, NV 89134. Signed by Judge Richard D. Bennett on 12/7/2020. (ols, Deputy Clerk) (Entered: 12/07/2020) |
| 12/08/2020 | 383 | NOTICE by Gregory S. Milligan re 137 Order on Motion for Miscellaneous Relief,,,,, *Notice of Proposed Sale of Vehicle - 2015 Harley Davidson V Rod* (Butler, Lynn) (Entered: 12/08/2020) |
| 12/14/2020 | 384 | NOTICE by Randel Lewis *as Receiver of Claims on behalf of Jumar Management, LLC, et. al.* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Summers, Matthew) (Entered: 12/14/2020) |
| 12/17/2020 | 385 | ORDER granting 358 Receiver's Motion for Approval of First Interim Fee Application of BDO USA, LLP. Signed by Judge Richard D. Bennett on 12/17/2020. (ols, Deputy Clerk) (Entered: 12/17/2020) |
| 12/17/2020 | 386 | ORDER granting 374 Receiver's Motion for Approval of Eighth Interim Fee Application of HMP Advisory Holdings, LLC, D/B/A Harney Partners. Signed by Judge Richard D. Bennett on 12/17/2020. (ols, Deputy Clerk) (Entered: 12/17/2020) |
| 12/17/2020 | 387 | ORDER granting 375 Receiver's Motion for Approval of Eighth Interim Fee Application of Husch Blackwell LLP. Signed by Judge Richard D. Bennett on 12/17/2020. (ols, Deputy Clerk) (Entered: 12/17/2020) |
| 01/13/2021 | 388 | MOTION for Clerk's Entry of Default for want of answer or other defense *as to Relief Defendant Lalaine Ledford* by Securities and Exchange Commission (Attachments: # 1 Declaration of Mark R. Sylvester) (Sylvester, Mark) (Entered: 01/13/2021) |
| 01/26/2021 | 389 | -VACATED PER 413 - Clerk's ENTRY OF DEFAULT as to Lalaine Ledford (ols, Deputy Clerk) Modified on 3/12/2021 (ols, Deputy Clerk). (Entered: 01/26/2021) |
| 01/26/2021 | 390 | NOTICE OF DEFAULT as to Lalaine Ledford (c/m 1/26/2021 ols, Deputy Clerk) (Entered: 01/26/2021) |
| 01/30/2021 | 391 | STATUS REPORT *for the Period Between October 1, 2020 and December 31, 2020* by Gregory S. Milligan(Butler, Lynn) (Entered: 01/30/2021) |
| 01/30/2021 | 392 | Supplemental to 391 Status Report filed by Gregory S. Milligan (Butler, Lynn) (Entered: 01/30/2021) |
| 02/05/2021 | 393 | MOTION for Order Authorizing Retention, Employment, and Compensation of Bankruptcy Management Solutions Inc. d/b/a Stretto as Claims Agent by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 02/05/2021) |
| 02/09/2021 | 394 | ORDER granting 393 Receiver Gregory S. Milligan's Motion for Order Authorizing Retention, Employment, and Compensation of Bankruptcy Management Solutions Inc. d/b/a Stretto as Claims Agent. Signed by Judge Richard D. Bennett on 2/9/2021. (ols, Deputy Clerk) (Entered: 02/09/2021) |
| 02/09/2021 | 395 | MOTION for Order Setting Claims Bar Date, Establishing Claims Procedure, and Approving Notification Process by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Text of Proposed Order)(Butler, Lynn) (Entered: 02/09/2021) |
| 02/10/2021 | 396 | ORDER granting 395 Receiver Gregory S. Milligan's Motion for Order Setting Claims Bar Date, Establishing Claims Procedure, and Approving Notification Process. Signed by Judge Richard D. Bennett on 2/10/2021. (ols, Deputy Clerk) (Entered: 02/10/2021) |
| 02/22/2021 | 397 | NOTICE by Gregory S. Milligan re 373 Notice (Other) *Second Amended Notice of Proposed Sale of Vehicle (Pagani)* (Klein, Buffey) (Entered: 02/22/2021) |

JA31

| | | |
|---|---|---|
| 02/24/2021 | 398 | MOTION *for Approval to Release Certain Personal Property to Amanda Merrill and Stipulation Between the Receiver and Amanda Merrill Related to the Release of Certain Personal Property* by Gregory S. Milligan (Attachments: # 1 Exhibit A - Wine Inventory, # 2 Text of Proposed Order)(Klein, Buffey) (Entered: 02/24/2021) |
| 02/25/2021 | 399 | RETURN PLEADING ORDER. Signed by Judge Richard D. Bennett on 2/25/2021. (Attachments: # 1 First Page of Returned Document 1, # 2 First Page of Returned Document 2) (c/m 02/25/2021 ols, Deputy Clerk) (Entered: 02/25/2021) |
| 02/26/2021 | 400 | MOTION to Appear Pro Hac Vice for Patrick R. Driscoll, Jr. (Filing fee $100, receipt number 0416-9132259.) by Lalaine Ledford(Martin, Christopher) (Entered: 02/26/2021) |
| 02/26/2021 | 401 | ORDER granting 398 Receiver Gregory S. Milligan's Motion for Approval to Release Certain Personal Property to Amanda Merrill and Stipulation Between the Receiver and Amanda Merrill Related to the Release of Certain Personal Property. Signed by Judge Richard D. Bennett on 2/26/2021. (ols, Deputy Clerk) (Entered: 02/26/2021) |
| 03/03/2021 | 402 | PAPERLESS ORDER granting 400 Motion to Appear Pro Hac Vice on behalf of Patrick R Driscoll. Directing attorney Patrick R Driscoll to register online for CM/ECF at http://www.mdd.uscourts.gov/electronic-case-filing-registration. Signed by Clerk on 3/3/2021. (srds, Deputy Clerk) (Entered: 03/03/2021) |
| 03/08/2021 | 403 | MOTION To Approve Settlement Agreement and Release by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit A-1, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Text of Proposed Order)(Klein, Buffey) (Entered: 03/08/2021) |
| 03/08/2021 | 404 | MOTION for Other Relief *for Approval of Ninth Interim Fee Application of HMP Advisory Holdings, LLC, D/B/A Harney Partners* by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 03/08/2021) |
| 03/08/2021 | 405 | MOTION for Other Relief *for Approval of Ninth Interim Fee Application of Husch Blackwell LLP* by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 03/08/2021) |
| 03/08/2021 | 406 | -SEALED - NOTICE of Filing Under Seal Exhibit A to Motion for Approval of Ninth Interim Fee Application of HMP Advisory Holdings, LLC, D/B/A Harney Partners by Gregory S. Milligan re 404 MOTION for Other Relief *for Approval of Ninth Interim Fee Application of HMP Advisory Holdings, LLC, D/B/A Harney Partners* (Butler, Lynn) (Entered: 03/08/2021) |
| 03/08/2021 | 407 | -SEALED - NOTICE of Filing Under Seal Exhibit A to Motion for Approval of Ninth Interim Fee Application of Husch Blackwell LLP by Gregory S. Milligan re 405 MOTION for Other Relief *for Approval of Ninth Interim Fee Application of Husch Blackwell LLP* (Butler, Lynn) (Entered: 03/08/2021) |
| 03/08/2021 | 408 | MOTION to Seal by Gregory S. Milligan (Attachments: # 1 Text of Proposed Order)(Butler, Lynn) (Entered: 03/08/2021) |
| 03/09/2021 | 409 | ORDER granting 408 Gregory S. Miligan's Motion to Seal Certain Exhibits to Ninth Interim Fee Applications of Husch Blackwell LLP and HMP Advisory Holdings, LLC, D/B/A Harney Partners. Signed by Judge Richard D. Bennett on 3/9/2021. (ols, Deputy Clerk) (Entered: 03/09/2021) |
| 03/09/2021 | 410 | ORDER granting 403 Receiver Gregory S. Milligan's Motion To Approve Settlement Agreement and Release. Signed by Judge Richard D. Bennett on 3/8/2021. (ols, Deputy Clerk) (Entered: 03/09/2021) |
| 03/10/2021 | 411 | MOTION to Set Aside Default by Lalaine Ledford (Attachments: # 1 Exhibit Exhibits for Motion to Set Aside Default)(Driscoll, Patrick) (Entered: 03/10/2021) |
| 03/12/2021 | 412 | NOTICE by Securities and Exchange Commission *Joint Notice of Proposed Order* (Attachments: # 1 Text of Proposed Order)(Green, Julia) (Entered: 03/12/2021) |
| 03/12/2021 | 413 | ORDER granting in part 411 Lalaine Ledford's Motion to Vacate an Order of Default Entry and Motion to Dismiss for Improper Service. Signed by Judge Richard D. Bennett on 3/12/2021. (ols, Deputy Clerk) (Entered: 03/12/2021) |
| 03/15/2021 | 414 | CERTIFICATE OF SERVICE by Securities and Exchange Commission re 412 Notice (Other) (Green, Julia) (Entered: 03/15/2021) |
| 03/19/2021 | 415 | -FILED IN ERROR- MOTION to Dismiss for Failure to State a Claim by Lalaine Ledford(Driscoll, Patrick) Modified on 3/19/2021 (ols, Deputy Clerk). (Entered: 03/19/2021) |

JA32

| 03/19/2021 | 416 | QC NOTICE: 415 Motion to Dismiss for Failure to State a Claim filed by Lalaine Ledford was filed incorrectly. <br> **A motion and supporting memorandum must be filed separately. The motion should be filed as the main document and the supporting memorandum as a separate attachment to the main document.* (ols, Deputy Clerk) (Entered: 03/19/2021) |
| 03/22/2021 | 417 | MOTION to Dismiss for Failure to State a Claim by Lalaine Ledford (Attachments: # 1 Memorandum in Support)(Driscoll, Patrick) (Entered: 03/22/2021) |
| 03/23/2021 | 418 | MEMORANDUM OPINION. Signed by Judge Richard D. Bennett on 3/23/2021. (ols, Deputy Clerk) (Entered: 03/24/2021) |
| 03/23/2021 | 419 | ORDER denying 327 Relief Defendant Amanda Merrill's Motion to Dismiss Amended Complaint and Motion for Partial Summary Judgment. Signed by Judge Richard D. Bennett on 3/23/2021. (ols, Deputy Clerk) (Entered: 03/24/2021) |
| 03/31/2021 | 420 | STATUS REPORT *Joint by SEC and Relief Defendant Merrill Regarding Scheduling Order and Requested One Week Extension of Deadline to File Answer* by Amanda Merrill(Biddle, Robert) (Entered: 03/31/2021) |
| 04/01/2021 | 421 | MARGINAL ORDER approving 420 Joint Status Report filed by Amanda Merrill. Signed by Judge Richard D. Bennett on 4/1/2021. (ols, Deputy Clerk) (Entered: 04/01/2021) |
| 04/13/2021 | 422 | ORDER granting 404 Receiver's Motion for Approval of Ninth Interim Fee Application of HMP Advisory Holdings, LLC, D/B/A Harney Partners. Signed by Judge Richard D. Bennett on 4/13/2021. (ols, Deputy Clerk) (Entered: 04/13/2021) |
| 04/13/2021 | 423 | ORDER granting 405 Receiver's Motion for Approval of Ninth Interim Fee Application of Husch Blackwell LLP. Signed by Judge Richard D. Bennett on 4/13/2021. (ols, Deputy Clerk) (Entered: 04/13/2021) |
| 04/13/2021 | 424 | *Relief Defendant Amanda Merrill's* ANSWER to 50 Amended Complaint, *ECF #50, identifying property held by the Receiver and claimed by Relief Defendant* by Amanda Merrill.(Biddle, Robert) (Entered: 04/13/2021) |
| 04/16/2021 | 425 | RESPONSE in Opposition re 417 MOTION to Dismiss for Failure to State a Claim filed by Securities and Exchange Commission. (Attachments: # 1 Text of Proposed Order)(Sylvester, Mark) (Entered: 04/16/2021) |
| 04/16/2021 | 426 | Telephone Conference held on 4/16/2021 before Judge Richard D. Bennett.(Court Reporter: Ronda Thomas) (kac2s, Deputy Clerk) (Entered: 04/16/2021) |
| 04/16/2021 | 427 | ORDER re: Results of Telephone Conference. Signed by Judge Richard D. Bennett on 4/16/2021. (ols, Deputy Clerk) (Entered: 04/16/2021) |
| 04/16/2021 | | Case Stayed (ols, Deputy Clerk) (Entered: 04/16/2021) |
| 04/22/2021 | 428 | STATUS REPORT *Regarding ECF # 401, court order releasing property* by Amanda Merrill (Attachments: # 1 Receipt receipt for release of wine pursuant to court order)(Biddle, Robert) (Entered: 04/22/2021) |
| 04/26/2021 | 429 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 4/16/2021, before Judge Richard D. Bennett. Court Reporter Ronda Thomas, Telephone number 410-962-4504. The total number of pages filed: 53. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date, it may be obtained from the Court Reporter or through PACER. Redaction Request due 5/17/2021. Redacted Transcript Deadline set for 5/27/2021. Release of Transcript Restriction set for 7/26/2021.(rt, Court Reporter) (Entered: 04/26/2021) |
| 04/26/2021 | 430 | AMENDED ANSWER by Amanda Merrill to 50 Amended Complaint. (Biddle, Robert) Modified on 4/26/2021 (cags, Deputy Clerk). (Entered: 04/26/2021) |
| 04/27/2021 | 432 | Telephone Conference held on 4/27/2021 before Judge Richard D. Bennett.(Court Reporter: Ronda Thomas) (J Herndons, Deputy Clerk) (Entered: 04/28/2021) |
| 04/28/2021 | 431 | ORDER confirming the results of telephone conference. Signed by Judge Richard D. Bennett on 4/28/2021. (ols, Deputy Clerk) (Entered: 04/28/2021) |

JA33

| 04/30/2021 | 433 | MOTION to Approve the Sale of and Procedures for Sale of Personal Property and for Order Authorizing Retention, Employment and Compensation of EC Group, DBA Dennis & Leen and DBA Formations, a California Corporation, as Consignee by Gregory S. Milligan (Attachments: # 1 Exhibit A - Hearn Declaration, # 2 Exhibit 1 - Consignment Agreement, # 3 Exhibit B - Milligan Declaration, # 4 Text of Proposed Order)(Butler, Lynn) (Entered: 04/30/2021) |
|---|---|---|
| 04/30/2021 | 434 | STATUS REPORT *for the Period Between January 1, 2021 and March 31, 2021* by Gregory S. Milligan(Butler, Lynn) (Entered: 04/30/2021) |
| 04/30/2021 | 435 | Supplemental to 434 Status Report filed by Gregory S. Milligan (Butler, Lynn) (Entered: 04/30/2021) |
| 05/03/2021 | 436 | ORDER granting 433 Gregory S. Milligan's Motion to Approve the Sale of and Procedures for Sale of Personal Property and for Order Authorizing Retention, Employment and Compensation of EC Group, DBA Dennis & Leen and DBA Formations, a California Corporation, as Consignee. Signed by Judge Richard D. Bennett on 5/3/2021. (ols, Deputy Clerk) (Entered: 05/04/2021) |
| 05/05/2021 | 437 | MOTION to Appear Pro Hac Vice for Jameson Watts (Filing fee $100, receipt number 0416-9260809.) by Gregory S. Milligan(Waagner, Brian) (Entered: 05/05/2021) |
| 05/05/2021 | 438 | MOTION for Protective Order *Agreed* by Gregory S. Milligan (Attachments: # 1 Text of Proposed Order) (Klein, Buffey) (Entered: 05/05/2021) |
| 05/06/2021 | 439 | QC NOTICE: 437 Motion to Appear Pro Hac Vice filed by Gregory S. Milligan needs to be modified. See attachment for details and corrective actions needed regarding the signature(s) on the motion. (mh4, Deputy Clerk) (Entered: 05/06/2021) |
| 05/06/2021 | 440 | AGREED CONFIDENTIALITY AND PROTECTIVE ORDER. Signed by Judge Richard D. Bennett on 5/6/2021. (ols, Deputy Clerk) (Entered: 05/06/2021) |
| 05/06/2021 | 441 | CORRECTED MOTION to Appear Pro Hac Vice for Jameson Watts by Gregory S. Milligan. The fee has already been paid.(Waagner, Brian) (Entered: 05/06/2021) |
| 05/07/2021 | 442 | PAPERLESS ORDER granting 441 Corrected Motion to Appear Pro Hac Vice on behalf of Jameson J Watts. Directing attorney Jameson J Watts to register online for CM/ECF at http://www.mdd.uscourts.gov/electronic-case-filing-registration. Signed by Clerk on 5/7/2021. (mh4, Deputy Clerk) (Entered: 05/07/2021) |
| 05/10/2021 | 443 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 4/27/2021, before Judge Richard D. Bennett. Court Reporter Ronda Thomas, Telephone number 410-962-4504. Total number of pages filed: 48. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained from the Court Reporter or through PACER. Redaction Request due 6/1/2021. Redacted Transcript Deadline set for 6/10/2021. Release of Transcript Restriction set for 8/9/2021.(rt, Court Reporter) (Entered: 05/10/2021) |
| 05/13/2021 | 444 | NOTICE by Gregory S. Milligan *of Sale of Vehicle (Tesla)* (Butler, Lynn) (Entered: 05/13/2021) |
| 05/19/2021 | 445 | MOTION for Reconsideration re 396 Order on Motion for Miscellaneous Relief *Regarding Claims Filing Procedure and Consequences* by Amanda Merrill (Attachments: # 1 Exhibit claim filed with Receiver) (Biddle, Robert) (Entered: 05/19/2021) |
| 05/28/2021 | 446 | Joint MOTION re 431 Order *for determination of jury trial right* by Amanda Merrill (Attachments: # 1 Memorandum in Support providing legal authority for jury trial for Relief Defendants Merrill and Ledford)(Biddle, Robert) (Entered: 05/28/2021) |
| 06/01/2021 | 447 | NOTICE by Gregory S. Milligan re 444 Notice (Other) *Amended Notice of Proposed Sale of Vehicle (Tesla)* (Klein, Buffey) (Entered: 06/01/2021) |
| 06/03/2021 | 448 | MOTION Motion to Retain, Employ, and Compensate Victory Claims Consulting, LLC by Gregory S. Milligan (Attachments: # 1 Exhibit Declaration of Gregory S. Milligan Supporting Motion to Retain Victory, # 2 Exhibit Declaration of Benjamin Wright Supporting Motion to Retain Victory, # 3 Text of Proposed Order (Proposed) Order Granting Receiver Gregory S. Milligan's Motion to Retain, Employ, and Compensate Victory Claims Consulting, LLC)(Butler, Lynn) (Entered: 06/03/2021) |
| 06/11/2021 | 449 | RESPONSE in Opposition re 446 Joint MOTION re 431 Order *for determination of jury trial right* filed by Securities and Exchange Commission.(Green, Julia) (Entered: 06/11/2021) |

JA34

| 06/15/2021 | 450 | RESPONSE in Opposition re 445 MOTION for Reconsideration re 396 Order on Motion for Miscellaneous Relief *Regarding Claims Filing Procedure and Consequences* filed by Gregory S. Milligan. (Attachments: # 1 Text of Proposed Order)(Klein, Buffey) (Entered: 06/15/2021) |
|---|---|---|
| 06/17/2021 | 451 | MOTION for Other Relief *for Approval of Tenth Interim Fee Application of HMP Advisory Holdings, LLC, D/B/A Harney Partners* by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 06/17/2021) |
| 06/17/2021 | 452 | MOTION for Other Relief *for Approval of Tenth Interim Fee Application of Husch Blackwell LLP* by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 06/17/2021) |
| 06/17/2021 | 453 | -SEALED - NOTICE of Filing Under Seal Exhibit A to Motion for Approval of Tenth Interim Fee Application of HMP Advisory Holdings, LLC, D/B/A Harney Partners by Gregory S. Milligan re 451 MOTION for Other Relief *for Approval of Tenth Interim Fee Application of HMP Advisory Holdings, LLC, D/B/A Harney Partners* (Butler, Lynn) (Entered: 06/17/2021) |
| 06/17/2021 | 454 | -SEALED - NOTICE of Filing Under Seal Exhibit A to Motion for Approval of Tenth Interim Fee Application of Husch Blackwell LLP by Gregory S. Milligan re 452 MOTION for Other Relief *for Approval of Tenth Interim Fee Application of Husch Blackwell LLP* (Butler, Lynn) (Entered: 06/17/2021) |
| 06/17/2021 | 455 | MOTION to Seal by Gregory S. Milligan (Attachments: # 1 Text of Proposed Order)(Butler, Lynn) (Entered: 06/17/2021) |
| 06/18/2021 | 456 | REPLY to Response to Motion re 446 Joint MOTION re 431 Order *for determination of jury trial right Sought by Relief Defendants Amanda Merrill and Lalaine Ledford* filed by Amanda Merrill.(Biddle, Robert) (Entered: 06/18/2021) |
| 06/18/2021 | 457 | REPLY to Response to Motion re 445 MOTION for Reconsideration re 396 Order on Motion for Miscellaneous Relief *Regarding Claims Filing Procedure and Consequences Addressing preservation of rights to appeal and to contest jurisdiction to enter disgorgement order against a relief defendant after Liu v. SEC* filed by Amanda Merrill.(Biddle, Robert) (Entered: 06/18/2021) |
| 06/21/2021 | 458 | ORDER granting 455 Gregory S. Milligan's Motion to Seal. Signed by Judge Richard D. Bennett on 6/21/2021. (ols, Deputy Clerk) (Entered: 06/21/2021) |
| 06/21/2021 | 459 | ORDER granting 448 Receiver Gregory S. Milligan's Motion to Retain, Employ, and Compensate Victory Claims Consulting, LLC. Signed by Judge Richard D. Bennett on 6/21/2021. (ols, Deputy Clerk) (Entered: 06/21/2021) |
| 06/22/2021 | 460 | Joint MOTION Determination of Burden of Proof and Related Matters re 431 Order *setting motion deadline, motion filed jointly by Ms. Merrill and Ms. Ledford by counsel* by Amanda Merrill (Attachments: # 1 Memorandum in Support)(Biddle, Robert) (Entered: 06/22/2021) |
| 07/07/2021 | 461 | MEMORANDUM ORDER denying 445 Ms. Merrill's Motion for Reconsideration of Court Order ECF #396. Signed by Judge Richard D. Bennett on 7/7/2021. (ols, Deputy Clerk) (Entered: 07/07/2021) |
| 07/15/2021 | 462 | ORDER granting 451 Receiver's Motion for Approval of Tenth Interim Fee Application of HMP Advisory Holdings, LLC, D/B/A Harney Partners. Signed by Judge Richard D. Bennett on 7/15/2021. (ols, Deputy Clerk) (Entered: 07/15/2021) |
| 07/15/2021 | 463 | ORDER granting 452 Receiver's Motion for Approval of Tenth Interim Fee Application of Husch Blackwell LLP. Signed by Judge Richard D. Bennett on 7/15/2021. (ols, Deputy Clerk) (Entered: 07/15/2021) |
| 07/16/2021 | 464 | MEMORANDUM OPINION. Signed by Judge Richard D. Bennett on 7/16/2021. (ols, Deputy Clerk) (Entered: 07/16/2021) |
| 07/16/2021 | 465 | ORDER denying 417 Relief Defendant Lalaine Ledford's Motion to Dismiss for Failure to State a Claim. Signed by Judge Richard D. Bennett on 7/16/2021. (ols, Deputy Clerk) (Entered: 07/16/2021) |
| 07/20/2021 | 466 | RESPONSE re 460 Joint MOTION Determination of Burden of Proof and Related Matters re 431 Order *setting motion deadline, motion filed jointly by Ms. Merrill and Ms. Ledford by counsel* filed by Securities and Exchange Commission. (Attachments: # 1 Attachment Exhibit 1, # 2 Text of Proposed Order Exhibit 2)(Green, Julia) (Entered: 07/20/2021) |
| 07/30/2021 | 467 | REPLY to Response to Motion re 460 Joint MOTION Determination of Burden of Proof and Related Matters re 431 Order *setting motion deadline, motion filed jointly by Ms. Merrill and Ms. Ledford by* |

JA35

| | | |
|---|---|---|
| | | *counsel Ms. Ledford by Counsel joins in this Reply* filed by Amanda Merrill.(Biddle, Robert) (Entered: 07/30/2021) |
| 07/30/2021 | [468](#) | STATUS REPORT *for the Period Between April 1, 2021 and June 30, 2021* by Gregory S. Milligan(Butler, Lynn) (Entered: 07/30/2021) |
| 07/30/2021 | [469](#) | Supplemental to *Status Report* (Butler, Lynn) (Entered: 07/30/2021) |
| 08/05/2021 | [470](#) | MOTION to Intervene by Massachusetts Attorney General (Attachments: # [1](#) Memorandum in Support Memorandum supporting Motion to Intervene, # [2](#) Text of Proposed Order Proposed Order re Motion to Intervene)(Hoffman, Ira) (Entered: 08/05/2021) |
| 08/05/2021 | [471](#) | MOTION for Other Relief *for Confirmation that First Amended Order does not stay Commonwealth's Enforcement Action* by Massachusetts Attorney General (Attachments: # [1](#) Memorandum in Support Memorandum in support of Motion to Confirm, # [2](#) Text of Proposed Order Text of Proposed Order, # [3](#) Appendix Appendix Index of Exhibits, # [4](#) Exhibit Exhibit A, # [5](#) Exhibit Exhibit B, # [6](#) Exhibit Exhibit C, # [7](#) Exhibit Exhibit D, # [8](#) Exhibit Exhibit E, # [9](#) Exhibit Exhibit F, # [10](#) Exhibit Exhibit G, # [11](#) Exhibit Exhibit H, # [12](#) Exhibit Exhibit I, # [13](#) Exhibit Exhibit J, # [14](#) Exhibit Exhibit K, # [15](#) Exhibit Exhibit L) (Hoffman, Ira) (Entered: 08/05/2021) |
| 08/05/2021 | [472](#) | MOTION to Appear Pro Hac Vice for David G. Lim (Filing fee $100, receipt number 0416-9419902.) by Massachusetts Attorney General(Hoffman, Ira) (Entered: 08/05/2021) |
| 08/16/2021 | [473](#) | NOTICE of Appearance by John T Crutchlow on behalf of Securities and Exchange Commission (Crutchlow, John) (Entered: 08/16/2021) |
| 08/16/2021 | [474](#) | Correspondence re: Request for Continuation of Stay (Crutchlow, John) (Entered: 08/16/2021) |
| 08/17/2021 | [475](#) | MOTION for Extension of Time to File Response/Reply as to [471](#) MOTION for Other Relief *for Confirmation that First Amended Order does not stay Commonwealth's Enforcement Action*, [470](#) MOTION to Intervene *UNOPPOSED* by Gregory S. Milligan (Attachments: # [1](#) Text of Proposed Order) (Klein, Buffey) (Entered: 08/17/2021) |
| 08/18/2021 | [476](#) | ORDER granting [475](#) Gregory S. Milligan's Unopposed Motion to Extend Time to Respond re [470](#) MOTION to Intervene , [471](#) MOTION for Other Relief *for Confirmation that First Amended Order does not stay Commonwealth's Enforcement Action*. Signed by Judge Richard D. Bennett on 8/18/2021. (ols, Deputy Clerk) (Entered: 08/18/2021) |
| 08/19/2021 | [477](#) | ANSWER to [50](#) Amended Complaint, by Lalaine Ledford.(Driscoll, Patrick) (Entered: 08/19/2021) |
| 08/24/2021 | [478](#) | ORDER granting [474](#) SEC's Request for Continuation of Stay. Signed by Judge Richard D. Bennett on 8/24/2021. (ols, Deputy Clerk) (Entered: 08/24/2021) |
| 08/27/2021 | [479](#) | Second MOTION to Clarify and Modify Receivership Order re [11](#) Order on Motion to Appoint Receiver by Gregory S. Milligan (Attachments: # [1](#) Exhibit A, # [2](#) Redline, # [3](#) Text of Proposed Order)(Butler, Lynn) (Entered: 08/27/2021) |
| 08/27/2021 | [480](#) | -SEALED - NOTICE of Filing Under Seal Exhibit A to Receiver's Second Motion to Clarify and Modify Receivership Order by Gregory S. Milligan re [479](#) Second MOTION to Clarify and Modify Receivership Order re [11](#) Order on Motion to Appoint Receiver (Attachments: # [1](#) Exhibit A, # [2](#) Text of Proposed Order)(Butler, Lynn) (Entered: 08/27/2021) |
| 08/30/2021 | [481](#) | Second MOTION for Extension of Time *of Receiver to Respond to the Commonwealth of Massachusetts' Motion to Intervene for Limited Purpose and Motion for Confirmation* by Gregory S. Milligan (Attachments: # [1](#) Text of Proposed Order)(Butler, Lynn) (Entered: 08/30/2021) |
| 08/30/2021 | [482](#) | ORDER granting [481](#) Receiver Gregory S. Milligan's Second Unopposed Motion to Extend Time to Respond to the Commonwealth of Massachusetts' Motion to Intervene for Limited Purpose and Motion for Confirmation. Signed by Judge Richard D. Bennett on 8/30/2021. (ols, Deputy Clerk) (Entered: 08/30/2021) |
| 09/01/2021 | [483](#) | CONSENT ORDER. Signed by Judge Richard D. Bennett on 9/1/2021. (ols, Deputy Clerk) (Entered: 09/01/2021) |
| 09/14/2021 | [484](#) | SECOND AMENDED ORDER Appointing Temporary Receiver. Signed by Judge Richard D. Bennett on 9/14/2021. (ols, Deputy Clerk) (Entered: 09/14/2021) |
| 10/01/2021 | [485](#) | MOTION for Extension of Time to File Response/Reply as to [471](#) MOTION for Other Relief *for Confirmation that First Amended Order does not stay Commonwealth's Enforcement Action*, [470](#) |

JA36

| | | |
|---|---|---|
| | | MOTION to Intervene by Gregory S. Milligan. (Attachments: # 1 Text of Proposed Order)(Butler, Lynn) (Entered: 10/01/2021) |
| 10/04/2021 | 486 | ORDER granting 485 Receiver's Unopposed Motion to Extend Time to Respond re 470 MOTION to Intervene , 471 MOTION for Confirmation. Signed by Judge Richard D. Bennett on 10/4/2021. (ols, Deputy Clerk) (Entered: 10/04/2021) |
| 10/04/2021 | 487 | MOTION for Other Relief *for Approval of Eleventh Interim Fee Application of HMP Advisory Holdings, LLC, D/B/A Harney Partners* by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 10/04/2021) |
| 10/04/2021 | 488 | MOTION for Other Relief *for Approval of Eleventh Interim Fee Application of Husch Blackwell LLP* by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 10/04/2021) |
| 10/04/2021 | 489 | -SEALED - NOTICE of Filing Under Seal Exhibit A to Motion for Approval of Eleventh Interim Fee Application of HMP Advisory Holdings, LLC, D/B/A Harney Partners by Gregory S. Milligan re 487 MOTION for Other Relief *for Approval of Eleventh Interim Fee Application of HMP Advisory Holdings, LLC, D/B/A Harney Partners* (Butler, Lynn) (Entered: 10/04/2021) |
| 10/04/2021 | 490 | -SEALED - NOTICE of Filing Under Seal Exhibit A to Motion for Approval of Eleventh Interim Fee Application of Husch Blackwell LLP by Gregory S. Milligan re 488 MOTION for Other Relief *for Approval of Eleventh Interim Fee Application of Husch Blackwell LLP* (Butler, Lynn) (Entered: 10/04/2021) |
| 10/04/2021 | 491 | MOTION to Seal *Certain Exhibits to the Eleventh Interim Fee Applications of Husch Blackwell LLP and HMP Advisory Holdings, LLC D/B/A Harney Partners* by Gregory S. Milligan (Attachments: # 1 Text of Proposed Order)(Butler, Lynn) (Entered: 10/04/2021) |
| 10/05/2021 | 492 | ORDER granting 491 the Receiver's Motion to Seal Certain Exhibits to the Eleventh Interim Fee Applications of Husch Blackwell LLP and HMP Advisory Holdings, LLC D/B/A Harney Partners. Signed by Judge Richard D. Bennett on 10/5/2021. (ols, Deputy Clerk) (Entered: 10/05/2021) |
| 10/05/2021 | 493 | MOTION for Other Relief *for Approval of First Interim Fee Application of Bankruptcy Management Solutions D/B/A Stretto* by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 10/05/2021) |
| 10/25/2021 | 494 | Joint MOTION to Stay *all deadlines of Lalaine Ledford* by Securities and Exchange Commission (Attachments: # 1 Text of Proposed Order, # 2 Attachment)(Crutchlow, John) (Entered: 10/25/2021) |
| 10/26/2021 | 495 | ORDER granting 494 Relief Defendant's Motion to Stay all deadlines of Lalaine Ledford. Signed by Judge Richard D. Bennett on 10/25/2021. (ols, Deputy Clerk) (Entered: 10/26/2021) |
| 10/29/2021 | 496 | STATUS REPORT *for the Period Between July 1, 2021 and September 30, 2021* by Gregory S. Milligan(Butler, Lynn) (Entered: 10/29/2021) |
| 10/29/2021 | 497 | Supplemental to 496 Status Report filed by Gregory S. Milligan (Butler, Lynn) (Entered: 10/29/2021) |
| 11/01/2021 | 498 | RESPONSE re 483 Order *To Establish Prima Facie Case* filed by Securities and Exchange Commission. (Attachments: # 1 Exhibit A, # 2 Exhibit B Declaration of Kathleen Guzman, # 3 Exhibit Declaration of Kathleen Guzman - Attachment 1, # 4 Exhibit C, # 5 Exhibit D Declaration of Dustin Ruta, # 6 Exhibit 1 Declaration of Dustin Ruta - Redacted Exhibit #1, # 7 Exhibit 2 Declaration of Dustin Ruta - Redacted Exhibit #2, # 8 Exhibit 3 Declaration of Dustin Ruta - Redacted Exhibit #3, # 9 Exhibit 4 Declaration of Dustin Ruta - Redacted Exhibit #4, # 10 Exhibit 5 Declaration of Dustin Ruta - Redacted Exhibit #5, # 11 Exhibit 6 Declaration of Dustin Ruta - Redacted Exhibit #6, # 12 Exhibit 7 Declaration of Dustin Ruta - Redacted Exhibit #7, # 13 Exhibit 8 Declaration of Dustin Ruta - Redacted Exhibit #8, # 14 Exhibit 9 Declaration of Dustin Ruta - Redacted Exhibit #9, # 15 Exhibit 10 Declaration of Dustin Ruta - Redacted Exhibit #10, # 16 Exhibit 11 Declaration of Dustin Ruta - Exhibit #11, # 17 Exhibit 12 Declaration of Dustin Ruta - Redacted Exhibit #12, # 18 Exhibit 13 Declaration of Dustin Ruta - Redacted Exhibit #13, # 19 Exhibit E, # 20 Exhibit F Declaration of Gregory S. Milligan)(Crutchlow, John) (Entered: 11/01/2021) |
| 11/01/2021 | 499 | MOTION for Extension of Time to File Response/Reply as to 471 MOTION for Other Relief *for Confirmation that First Amended Order does not stay Commonwealth's Enforcement Action*, 470 MOTION to Intervene by Gregory S. Milligan (Attachments: # 1 Text of Proposed Order)(Butler, Lynn) (Entered: 11/01/2021) |
| 11/03/2021 | 500 | ORDER granting 499 Receiver Gregory S. Milligan's Unopposed Motion to Extend Time to Respond re 471 MOTION for Confirmation that First Amended Order does not stay Commonwealth's Enforcement |

JA37

| | | |
|---|---|---|
| | | Action. Signed by Judge Richard D. Bennett on 11/1/2021. (ols, Deputy Clerk) (Entered: 11/03/2021) |
| 11/15/2021 | 501 | MOTION for Extension of Time to File Response/Reply as to 471 MOTION for Other Relief *for Confirmation that First Amended Order does not stay Commonwealth's Enforcement Action*, 470 MOTION to Intervene by Gregory S. Milligan (Attachments: # 1 Text of Proposed Order)(Butler, Lynn) (Entered: 11/15/2021) |
| 11/15/2021 | 502 | ORDER granting 501 Receiver's Unopposed Motion to Extend Time to Respond re 470 Commonwealth of Massachusetts' MOTION to Intervene , 471 MOTION for for Confirmation that First Amended Order does not stay Commonwealth's Enforcement Action. Signed by Judge Richard D. Bennett on 11/15/2021. (ols, Deputy Clerk) (Entered: 11/16/2021) |
| 11/17/2021 | 503 | MOTION Omnibus Objection to Claims re 396 Order on Motion for Miscellaneous Relief by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Butler, Lynn) (Entered: 11/17/2021) |
| 11/17/2021 | 504 | MOTION for Order Approving Distribution Plan and Interim Distribution re 396 Order on Motion for Miscellaneous Relief by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 11/17/2021) |
| 11/22/2021 | 505 | MOTION for Extension of Time to File Response/Reply as to 504 MOTION for Order Approving Distribution Plan and Interim Distribution re 396 Order on Motion for Miscellaneous Relief by CCWB Asset Investments, LLC, ECB Asset Investment, LLC, M.C. Dean, Inc. (Attachments: # 1 Text of Proposed Order)(Clattenburg, Rachel) (Entered: 11/22/2021) |
| 11/29/2021 | 506 | MOTION for Extension of Time to File Response/Reply as to 504 MOTION for Order Approving Distribution Plan and Interim Distribution re 396 Order on Motion for Miscellaneous Relief by Jeffrey J. Connaughton (Attachments: # 1 Text of Proposed Order)(Miller, Monica) (Entered: 11/29/2021) |
| 11/29/2021 | 507 | ORDER granting 487 Receiver's Motion for Approval of Eleventh Interim Fee Application of HMP Advisory Holdings, LLC, D/B/A Harney Partners. Signed by Judge Richard D. Bennett on 11/29/2021. (ols, Deputy Clerk) (Entered: 11/29/2021) |
| 11/29/2021 | 508 | ORDER granting 488 Receiver's Motion for Approval of Eleventh Interim Fee Application of Husch Blackwell LLP. Signed by Judge Richard D. Bennett on 11/29/2021. (ols, Deputy Clerk) (Entered: 11/29/2021) |
| 11/29/2021 | 509 | ORDER granting 493 Receiver's Motion for Approval of First Interim Fee Application of Bankruptcy Management Solutions D/B/A Stretto. Signed by Judge Richard D. Bennett on 11/29/2021. (ols, Deputy Clerk) (Entered: 11/29/2021) |
| 11/29/2021 | 510 | ORDER granting 506 Claimant Jeffrey J. Connaughton's Unopposed Motion to Extend Time to Respond re 504 MOTION for Order Approving Distribution Plan and Interim Distribution re 396 Order on Motion for Miscellaneous Relief . Signed by Judge Richard D. Bennett on 11/29/2021. (ols, Deputy Clerk) (Entered: 11/29/2021) |
| 11/29/2021 | 511 | MOTION for Extension of Time *to Object or Otherwise Respond to the Receiver's Motion for Order Approving Distribution Plan and Interim Distribution* by Iwona Howley (Attachments: # 1 Text of Proposed Order)(Furshman, Laurie) (Entered: 11/29/2021) |
| 11/29/2021 | 512 | RESPONSE to Motion re 504 MOTION for Order Approving Distribution Plan and Interim Distribution re 396 Order on Motion for Miscellaneous Relief *Ms. Merrill's explanation of her opposition to portions of the proposed distribution order ECF #504-3* filed by Amanda Merrill.(Biddle, Robert) (Entered: 11/29/2021) |
| 11/30/2021 | 513 | MOTION to Appear Pro Hac Vice for Sam Della Fera, Jr. (Filing fee $100, receipt number 0416-9630622.) by Iwona Howley(Furshman, Laurie) (Entered: 11/30/2021) |
| 12/01/2021 | 514 | PAPERLESS ORDER granting 513 Motion to Appear Pro Hac Vice on behalf of Sam Della Fera, Jr. Directing attorney Sam Della Fera, Jr to register online for CM/ECF at http://www.mdd.uscourts.gov/electronic-case-filing-registration. Signed by Clerk on 12/1/2021. (dm4, Deputy Clerk) (Entered: 12/01/2021) |
| 12/01/2021 | 515 | MOTION for Extension of Time to File Response/Reply as to 504 MOTION for Order Approving Distribution Plan and Interim Distribution re 396 Order on Motion for Miscellaneous Relief *(Unopposed)* by Richy Castro (Attachments: # 1 Text of Proposed Order)(Kelly, Kristi) (Entered: 12/01/2021) |
| 12/01/2021 | 516 | ORDER granting 505 Investors CCWB Asset Investments, LLC, ECB Asset Investment, LLC, and M.C. Dean, Inc. Unopposed Motion to Extend Time to Object or Otherwise Respond re 504 Receiver's |

JA38

| | | |
|---|---|---|
| | | MOTION for Order Approving Distribution Plan and Interim Distribution re 396 Order on Motion for Miscellaneous Relief . Signed by Judge Richard D. Bennett on 12/1/2021. (ols, Deputy Clerk) (Entered: 12/02/2021) |
| 12/01/2021 | 517 | ORDER granting 511 Iwona Howley's Unopposed Motion to Extend Time to Object or Otherwise Respond to the Receiver's Motion for Order Approving Distribution Plan and Interim Distribution. Signed by Judge Richard D. Bennett on 12/1/2021. (ols, Deputy Clerk) (Entered: 12/02/2021) |
| 12/01/2021 | 518 | ORDER granting 515 Ricky Castro's Unopposed Motion to Extend Time to Object or Otherwise Respond re 504 Receiver's MOTION for Order Approving Distribution Plan and Interim Distribution re 396 Order on Motion for Miscellaneous Relief . Signed by Judge Richard D. Bennett on 12/1/2021. (ols, Deputy Clerk) (Entered: 12/02/2021) |
| 12/02/2021 | 519 | Consent MOTION for Extension of Time to File Response/Reply as to 503 MOTION Omnibus Objection to Claims re 396 Order on Motion for Miscellaneous Relief by Maureen Stephens, Ericka Johnson (Attachments: # 1 Text of Proposed Order)(Sanders, Craig) (Entered: 12/02/2021) |
| 12/03/2021 | 520 | ORDER granting 519 Claimants Maureen Stephens and Ericka Johnson's Motion to Extend Time to Object or Otherwise Respond re 503 MOTION Omnibus Objection to Claims re 396 Order on Motion for Miscellaneous Relief . Signed by Judge Richard D. Bennett on 12/3/2021. (ols, Deputy Clerk) (Entered: 12/03/2021) |
| 12/03/2021 | 521 | MOTION for Other Relief *for Approval of Twelfth Interim Fee Application of HMP Advisory Holdings, LLC, D/B/A Harney Partners* by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 12/03/2021) |
| 12/03/2021 | 522 | MOTION for Other Relief *for Approval of Twelfth Interim Fee Application of Husch Blackwell LLP* by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 12/03/2021) |
| 12/03/2021 | 523 | -SEALED - NOTICE of Filing Under Seal Exhibit A to Motion for Approval of Twelfth Interim Fee Application of HMP Advisory Holdings, LLC, D/B/A. Harney Partners by Gregory S. Milligan re 521 MOTION for Other Relief *for Approval of Twelfth Interim Fee Application of HMP Advisory Holdings, LLC, D/B/A Harney Partners* (Butler, Lynn) (Entered: 12/03/2021) |
| 12/03/2021 | 524 | -SEALED - NOTICE of Filing Under Seal Exhibit A to Motion for Approval of Twelfth Interim Fee Application of Husch Blackwell LLP by Gregory S. Milligan re 522 MOTION for Other Relief *for Approval of Twelfth Interim Fee Application of Husch Blackwell LLP* (Butler, Lynn) (Entered: 12/03/2021) |
| 12/03/2021 | 525 | MOTION to Seal *Certain Exhibits to the Twelfth Interim Fee Applications of Husch Blackwell LLP and HMP Advisory Holdings, LLC D/B/A Harney Partners* by Gregory S. Milligan (Attachments: # 1 Text of Proposed Order)(Butler, Lynn) (Entered: 12/03/2021) |
| 12/03/2021 | 526 | ORDER granting 525 Receiver's Motion to Seal Certain Exhibits to the Twelfth Interim Fee Applications of Husch Blackwell LLP and HMP Advisory Holdings, LLC D/B/A Harney Partners. Signed by Judge Richard D. Bennett on 12/3/2021. (ols, Deputy Clerk) (Entered: 12/03/2021) |
| 12/06/2021 | 527 | ORDER granting 521 Receiver's Motion for Approval of Twelfth Interim Fee Application of HMP Advisory Holdings, LLC, D/B/A Harney Partners. Signed by Judge Richard D. Bennett on 12/3/2021. (ols, Deputy Clerk) (Entered: 12/06/2021) |
| 12/06/2021 | 528 | ORDER granting 522 Receiver's Motion for Approval of Twelfth Interim Fee Application of Husch Blackwell LLP. Signed by Judge Richard D. Bennett on 12/3/2021. (ols, Deputy Clerk) (Entered: 12/06/2021) |
| 12/10/2021 | 529 | Consent MOTION for Extension of Time by CCWB Asset Investments, LLC, ECB Asset Investment, LLC, M.C. Dean, Inc. (Attachments: # 1 Text of Proposed Order)(Muse, Robert) (Entered: 12/10/2021) |
| 12/13/2021 | 530 | MOTION for Extension of Time to File Response/Reply as to 504 MOTION for Order Approving Distribution Plan and Interim Distribution re 396 Order on Motion for Miscellaneous Relief by Gregory S. Milligan (Attachments: # 1 Text of Proposed Order)(Butler, Lynn) (Entered: 12/13/2021) |
| 12/13/2021 | 531 | ORDER granting 529 Investors CCWB Asset Investments, LLC, ECB Asset Investment, LLC, M.C. Dean, Inc.'s Unopposed Motion for a Second Extension of Time to Object or Otherwise Respond to 504 Receiver's Motion for Order Approving Distribution Plan and Interim Distribution. Signed by Judge Richard D. Bennett on 12/13/2021. (ols, Deputy Clerk) (Entered: 12/14/2021) |

JA39

| | | |
|---|---|---|
| 12/14/2021 | 532 | ORDER granting 530 Receiver's Motion to Extend Time to File Reply re 504 MOTION for Order Approving Distribution Plan and Interim Distribution re 396 Order on Motion for Miscellaneous Relief . Signed by Judge Richard D. Bennett on 12/14/2021. (ols, Deputy Clerk) (Entered: 12/14/2021) |
| 12/14/2021 | 533 | Second MOTION for Extension of Time to File Response/Reply as to 504 MOTION for Order Approving Distribution Plan and Interim Distribution re 396 Order on Motion for Miscellaneous Relief by Jeffrey J. Connaughton (Attachments: # 1 Text of Proposed Order)(Miller, Monica) (Entered: 12/14/2021) |
| 12/14/2021 | 534 | ORDER granting 533 Claimant Jeffrey J. Connaughton's Unopposed Motion to Extend Time to Respond re 504 MOTION for Order Approving Distribution Plan and Interim Distribution re 396 Order on Motion for Miscellaneous Relief . Signed by Judge Richard D. Bennett on 12/14/2021. (ols, Deputy Clerk) (Entered: 12/14/2021) |
| 12/14/2021 | 535 | Second MOTION for Extension of Time to File Response/Reply as to 504 MOTION for Order Approving Distribution Plan and Interim Distribution re 396 Order on Motion for Miscellaneous Relief by Iwona Howley (Attachments: # 1 Text of Proposed Order)(Della Fera, Sam) (Entered: 12/14/2021) |
| 12/14/2021 | 536 | ORDER granting 535 Iwona Howley's Motion to Further Extend Time to Object or Otherwise Respond re 504 MOTION for Order Approving Distribution Plan and Interim Distribution re 396 Order on Motion for Miscellaneous Relief . Signed by Judge Richard D. Bennett on 12/14/2021. (ols, Deputy Clerk) (Entered: 12/15/2021) |
| 12/16/2021 | 537 | Second MOTION for Extension of Time to File Response/Reply as to 504 MOTION for Order Approving Distribution Plan and Interim Distribution re 396 Order on Motion for Miscellaneous Relief *(Unopposed)* by Richy Castro (Attachments: # 1 Text of Proposed Order)(Kelly, Kristi) (Entered: 12/16/2021) |
| 12/16/2021 | 538 | ORDER granting 537 Richy Castro's Second Unopposed Motion to Extend Time to Object or Otherwise Respond re 504 MOTION for Order Approving Distribution Plan and Interim Distribution re 396 Order on Motion for Miscellaneous Relief . Signed by Judge Richard D. Bennett on 12/16/2021. (ols, Deputy Clerk) (Entered: 12/16/2021) |
| 12/16/2021 | 539 | RESPONSE in Opposition re 503 MOTION Omnibus Objection to Claims re 396 Order on Motion for Miscellaneous Relief filed by Ericka Johnson, Maureen Stephens. (Attachments: # 1 Exhibit 1 - Complaint in Johnson I, # 2 Exhibit 2 - Complaint in Johnson II, # 3 Exhibit 3 - Complaint in Johnson III, # 4 Exhibit 4 - Complaint in Stephens, # 5 Exhibit 5 - time records for Johnson I, # 6 Exhibit 6 - time records for Johnson II, # 7 Exhibit 7 - time records for Johnson III, # 8 Exhibit 8 - time records for Stephens)(Sanders, Craig) (Entered: 12/16/2021) |
| 12/20/2021 | 540 | QC NOTICE: 539 Response in Opposition to Motion,, filed by Ericka Johnson, Maureen Stephens was filed incorrectly. <br>***The following attachments or exhibits are missing - Proposed Order. To correct this problem, file Proposed Order using the event Notice (Other) and link Proposed Order to 539* . (ols, Deputy Clerk) (Entered: 12/20/2021) |
| 12/20/2021 | 541 | Consent MOTION for Extension of Time to File Response/Reply as to 504 MOTION for Order Approving Distribution Plan and Interim Distribution re 396 Order on Motion for Miscellaneous Relief by CCWB Asset Investments, LLC, ECB Asset Investment, LLC, M.C. Dean, Inc. (Attachments: # 1 Text of Proposed Order)(Muse, Robert) (Entered: 12/20/2021) |
| 12/20/2021 | 542 | ORDER granting 541 Investors CCWB Asset Investments, LLC, ECB Asset Investment, LLC, M.C. Dean, Inc.'s Unopposed Motion for Third Extension of Time to File Response re 504 MOTION for Order Approving Distribution Plan and Interim Distribution re 396 Order on Motion for Miscellaneous Relief . Signed by Judge Richard D. Bennett on 12/20/2021. (ols, Deputy Clerk) (Entered: 12/20/2021) |
| 12/21/2021 | 543 | Second Correspondence re: Request for Continuation of Stay (Crutchlow, John) (Entered: 12/21/2021) |
| 12/21/2021 | 544 | ORDER granting 543 SEC's request for an extension of the stay for an additional 120 days. Signed by Judge Richard D. Bennett on 12/21/2021. (ols, Deputy Clerk) (Entered: 12/21/2021) |
| 12/22/2021 | 545 | Third MOTION for Extension of Time to File Response/Reply *to Receiver's Motion for Order Approving Distribution Plan and Interim Distribution* by Iwona Howley (Attachments: # 1 Text of Proposed Order) (Della Fera, Sam) (Entered: 12/22/2021) |
| 12/22/2021 | 546 | ORDER granting 545 Iwona Howley's Unopposed Motion to Further Extend Time to Object or Otherwise Respond re 504 MOTION for Order Approving Distribution Plan and Interim Distribution re 396 Order on Motion for Miscellaneous Relief . Signed by Judge Richard D. Bennett on 12/22/2021. (ols, Deputy Clerk) (Entered: 12/22/2021) |

JA40

| | | |
|---|---|---|
| 12/23/2021 | 547 | MOTION for Extension of Time to File Response/Reply as to 503 MOTION Omnibus Objection to Claims re 396 Order on Motion for Miscellaneous Relief *(Unopposed)* by Richy Castro (Attachments: # 1 Text of Proposed Order)(Kelly, Kristi) (Entered: 12/23/2021) |
| 12/23/2021 | 548 | Third MOTION for Extension of Time by Jeffrey J. Connaughton (Attachments: # 1 Text of Proposed Order)(Miller, Monica) (Entered: 12/23/2021) |
| 12/27/2021 | 549 | ORDER granting 547 Richy Castro's Unopposed Motion to Extend Time to Object or Otherwise Respond re 503 MOTION Omnibus Objection to Claims re 396 Order on Motion for Miscellaneous Relief . Signed by Judge Richard D. Bennett on 12/27/2021. (ols, Deputy Clerk) (Entered: 12/27/2021) |
| 12/27/2021 | 550 | ORDER granting 548 Claimant Jeffrey J. Connaughton's Unopposed Third Motion for Extension of Time to Respond. Signed by Judge Richard D. Bennett on 12/27/2021. (ols, Deputy Clerk) (Entered: 12/27/2021) |
| 12/30/2021 | 551 | MOTION for Extension of Time to File Response/Reply as to 539 Response in Opposition to Motion,, by Gregory S. Milligan (Attachments: # 1 Text of Proposed Order)(Butler, Lynn) (Entered: 12/30/2021) |
| 12/30/2021 | 552 | RESPONSE re 498 Response,,,,, *Response to ECF #498 as required by ECF #483* filed by Amanda Merrill. (Attachments: # 1 Exhibit table regarding seized personal property)(Biddle, Robert) (Entered: 12/30/2021) |
| 12/30/2021 | 553 | NOTICE by Amanda Merrill *Exhibits Pertaining to ECF #552, Response to ECF #498, as required by ECF #483* (Attachments: # 1 Exhibit emails with Receiver's agent, # 2 Exhibit gambling record, # 3 Exhibit gambling record, # 4 Exhibit gambling record, # 5 Exhibit gambling record, # 6 Exhibit gambling record, # 7 Exhibit gambling record, # 8 Exhibit statement, # 9 Exhibit business records, # 10 Exhibit statement, # 11 Exhibit statement, # 12 Exhibit statement)(Biddle, Robert) (Entered: 12/30/2021) |
| 12/30/2021 | 554 | MOTION to Produce *Information from Receiver Pertaining to Property Sales* by Amanda Merrill (Attachments: # 1 Text of Proposed Order)(Biddle, Robert) (Entered: 12/30/2021) |
| 01/03/2022 | 555 | Fourth MOTION for Extension of Time to File Response/Reply as to 504 MOTION for Order Approving Distribution Plan and Interim Distribution re 396 Order on Motion for Miscellaneous Relief by Iwona Howley (Attachments: # 1 Text of Proposed Order)(Della Fera, Sam) (Entered: 01/03/2022) |
| 01/03/2022 | 556 | RESPONSE in Opposition re 503 MOTION Omnibus Objection to Claims re 396 Order on Motion for Miscellaneous Relief filed by Richy Castro. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Text of Proposed Order)(Kelly, Kristi) (Entered: 01/03/2022) |
| 01/03/2022 | 557 | ORDER granting 555 Iwona Howley's Unopposed Motion to Further Extend Time to Object or Otherwise Respond re 504 MOTION for Order Approving Distribution Plan and Interim Distribution re 396 Order on Motion for Miscellaneous Relief . Signed by Judge Richard D. Bennett on 1/3/2022. (ols, Deputy Clerk) (Entered: 01/03/2022) |
| 01/03/2022 | 558 | RESPONSE in Opposition re 504 MOTION for Order Approving Distribution Plan and Interim Distribution re 396 Order on Motion for Miscellaneous Relief filed by CCWB Asset Investments, LLC, ECB Asset Investment, LLC, M.C. Dean, Inc.. (Attachments: # 1 Affidavit, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Text of Proposed Order)(Muse, Robert) (Entered: 01/03/2022) |
| 01/03/2022 | 559 | RESPONSE in Opposition re 504 MOTION for Order Approving Distribution Plan and Interim Distribution re 396 Order on Motion for Miscellaneous Relief filed by Jeffrey J. Connaughton. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Miller, Monica) (Entered: 01/03/2022) |
| 01/04/2022 | 560 | QC NOTICE: 559 Response in Opposition to Motion, filed by Jeffrey J. Connaughton was filed incorrectly. *\*\*The following attachments or exhibits are missing - Proposed Order. To correct this problem, file Proposed Order using the event Notice (Other) and link Proposed Order to 559 .* (ols, Deputy Clerk) (Entered: 01/04/2022) |
| 01/04/2022 | 561 | ORDER granting 551 Receiver's Motion to Extend Time to File Reply re 503 MOTION Omnibus Objection to Claims re 396 Order on Motion for Miscellaneous Relief . Signed by Judge Richard D. Bennett on 1/4/2022. (ols, Deputy Clerk) (Entered: 01/04/2022) |
| 01/05/2022 | 562 | -PER COUNSEL FILED IN ERROR. REFILED AT 563 - NOTICE by Jeffrey J. Connaughton, Tony Davis, Rochelle Katz, Barbara Louderback, Scott D Oser, Ojas Patel, Pulin Patel, Dhaval Shukla, Nishant Shukla re 559 Response in Opposition to Motion, *(Notice of Filing Corrected Exhibit A)* (Miller, Monica) Modified on 1/5/2022 (ols, Deputy Clerk). (Entered: 01/05/2022) |

JA41

| | | |
|---|---|---|
| 01/05/2022 | 563 | NOTICE by Jeffrey J. Connaughton, Tony Davis, Rochelle Katz, Barbara Louderback, Scott D Oser, Ojas Patel, Pulin Patel, Dhaval Shukla, Nishant Shukla re 559 Response in Opposition to Motion, *(Notice of filing corrected Exhibit A)* (Attachments: # 1 Exhibit Corrected Exhibit A)(Miller, Monica) (Entered: 01/05/2022) |
| 01/05/2022 | 564 | NOTICE by Jeffrey J. Connaughton, Tony Davis, Rochelle Katz, Barbara Louderback, Scott D Oser, Ojas Patel, Pulin Patel, Dhaval Shukla, Nishant Shukla re 559 Response in Opposition to Motion, (Attachments: # 1 Text of Proposed Order)(Miller, Monica) (Entered: 01/05/2022) |
| 01/07/2022 | 565 | RESPONSE in Opposition re 504 MOTION for Order Approving Distribution Plan and Interim Distribution re 396 Order on Motion for Miscellaneous Relief filed by Iwona Howley. (Attachments: # 1 Declaration of Iwona Howley, # 2 Text of Proposed Order)(Della Fera, Sam) (Entered: 01/07/2022) |
| 01/12/2022 | 566 | Second MOTION for Extension of Time to File Response/Reply as to 504 MOTION for Order Approving Distribution Plan and Interim Distribution re 396 Order on Motion for Miscellaneous Relief by Gregory S. Milligan (Attachments: # 1 Text of Proposed Order)(Butler, Lynn) (Entered: 01/12/2022) |
| 01/13/2022 | 567 | ORDER granting 566 Receiver's Second Motion to Extend Time to File Reply re 504 MOTION for Order Approving Distribution Plan and Interim Distribution re 396 Order on Motion for Miscellaneous Relief . Signed by Judge Richard D. Bennett on 1/12/2022. (ols, Deputy Clerk) (Entered: 01/13/2022) |
| 01/13/2022 | 568 | RESPONSE to Motion re 554 MOTION to Produce *Information from Receiver Pertaining to Property Sales* filed by Gregory S. Milligan. (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Butler, Lynn) (Entered: 01/13/2022) |
| 01/18/2022 | 569 | MOTION for Other Relief *Motion to Enter Agreed Order Resolving the Commonwealth of Massachusetts' Motion Concerning the Application of the Stay Provision in the First Amended Order Appointing Temporary Receiver to the Massachusetts' Enforcement Action and Granting Massachusetts' Motion to Intervene for Limited Purpose* by Gregory S. Milligan (Attachments: # 1 Text of Proposed Order)(Klein, Buffey) (Entered: 01/18/2022) |
| 01/18/2022 | 570 | REPLY to Response to motion re 503 MOTION Omnibus Objection to Claims re 396 Order on Motion for Miscellaneous Relief filed by Gregory S. Milligan.(Butler, Lynn) (Entered: 01/18/2022) |
| 01/19/2022 | 571 | ORDER granting 569 Receiver's Unopposed Motion to Enter Agreed Order Resolving the Commonwealth of Massachusetts' Motion Concerning the Application of the Stay Provision in the First Amended Order Appointing Temporary Receiver to the Massachusetts' Enforcement Action and Granting Massachusetts' Motion to Intervene for Limited Purpose. Signed by Judge Richard D. Bennett on 1/18/2022. (ols, Deputy Clerk) (Entered: 01/19/2022) |
| 01/20/2022 | 572 | RETURN PLEADING ORDER. Signed by Judge Richard D. Bennett on 1/19/2022. (Attachments: # 1 First Page of Returned Document) (c/m 01/20/2022 ols, Deputy Clerk) (Entered: 01/20/2022) |
| 01/21/2022 | 573 | Status Report Submitted by Securities and Exchange Commission (Crutchlow, John) (Entered: 01/21/2022) |
| 01/24/2022 | 574 | QC NOTICE: 573 Status Report Submitted filed by Securities and Exchange Commission was filed incorrectly. <br> **The following attachments or exhibits are missing - Proposed Order. To the extent the Status Report requests that this Court continue the stay of the matter at issue, please submit a proposed order. To correct this problem, file Proposed Order using the event Notice (Other) and link Proposed Order to 573 .* (ols, Deputy Clerk) (Entered: 01/24/2022) |
| 01/24/2022 | 575 | NOTICE by Securities and Exchange Commission re 573 Status Report Submitted (Crutchlow, John) (Entered: 01/24/2022) |
| 01/24/2022 | 576 | ORDER that the stay of all deadlines ordered by the Court on 10/22/2021 shall remain in effect. Signed by Judge Richard D. Bennett on 1/24/2022. (ols, Deputy Clerk) (Entered: 01/25/2022) |
| 01/28/2022 | 577 | RESPONSE re 552 Response *REPLY IN SUPPORT OF 498* filed by Securities and Exchange Commission. (Attachments: # 1 Text of Proposed Order)(Crutchlow, John) (Entered: 01/28/2022) |
| 01/30/2022 | 578 | STATUS REPORT *for the Period Between October 1, 2021 and December 31, 2021* by Gregory S. Milligan(Butler, Lynn) (Entered: 01/30/2022) |
| 01/30/2022 | 579 | Supplemental to 578 Status Report filed by Gregory S. Milligan (Butler, Lynn) (Entered: 01/30/2022) |

**JA42**

| | | |
|---|---|---|
| 01/31/2022 | 580 | REPLY to Response to Motion re 504 MOTION for Order Approving Distribution Plan and Interim Distribution re 396 Order on Motion for Miscellaneous Relief / *Reply to Claimant Iwona Howleys Objection* filed by Gregory S. Milligan. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 01/31/2022) |
| 01/31/2022 | 581 | -FILED IN ERROR- REPLY to Response to Motion re 504 MOTION for Order Approving Distribution Plan and Interim Distribution re 396 Order on Motion for Miscellaneous Relief *Reply to Objection of the Connaughton Objectors* filed by Gregory S. Milligan. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) Modified on 2/1/2022 (ols, Deputy Clerk). (Entered: 01/31/2022) |
| 01/31/2022 | 582 | -FILED IN ERROR -SEALED - NOTICE of Filing Under Seal Reply to Objection of the Connaughton Objectors, Exhibit A, and Exhibit B by Gregory S. Milligan re 581 Reply to Response to Motion, (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Butler, Lynn) Modified on 2/1/2022 (ols, Deputy Clerk). (Entered: 01/31/2022) |
| 01/31/2022 | 583 | MOTION to Seal *Receiver's Reply to Objection of the Connaughton Objectors, Exhibit A, and Exhibit B* by Gregory S. Milligan (Attachments: # 1 Text of Proposed Order)(Butler, Lynn) (Entered: 01/31/2022) |
| 01/31/2022 | 584 | REPLY to Response to Motion re 504 MOTION for Order Approving Distribution Plan and Interim Distribution re 396 Order on Motion for Miscellaneous Relief *Reply to Investors CCWB Asset Investments, LLC, EBC Asset Investment, Inc., and M.C. Dean, Inc.s Objection* filed by Gregory S. Milligan. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 01/31/2022) |
| 02/04/2022 | 585 | NOTICE by Amanda Merrill re 552 Response *correction of typographical error in ECF #552 at p.22* (Biddle, Robert) (Entered: 02/04/2022) |
| 02/08/2022 | 586 | NOTICE of Appearance by John Joseph Truex Chung on behalf of United States of America (Truex Chung, John) (Entered: 02/08/2022) |
| 02/08/2022 | 587 | Motion Hearing held on 2/8/2022 re 498 Plaintiff Securities and Exchange Commission's Memorandum of Law establishing a Prima Facie case for equitable disgorgement against relief Defendant Amanda Merrill before Judge Richard D. Bennett.(Court Reporter: Melissa Clark) (rc2s, Deputy Clerk) (Entered: 02/08/2022) |
| 02/08/2022 | 588 | ORDER finding as moot 554 Ms. Merrill's Motion to Produce Information from Receiver Pertaining to Property Sales. Signed by Judge Richard D. Bennett on 2/8/2022. (ols, Deputy Clerk) (Entered: 02/08/2022) |
| 02/09/2022 | 589 | MEMORANDUM AND ORDER entering partial summary judgment in favor of the SEC against Relief Defendant Amanda Merrill. Signed by Judge Richard D. Bennett on 2/9/2022. (ols, Deputy Clerk) (Entered: 02/09/2022) |
| 02/10/2022 | 590 | Second Correspondence re: Letter to Amanda Merrill's Counsel listing Disputed Items re: ECF#588 (Crutchlow, John) (Entered: 02/10/2022) |
| 02/10/2022 | 591 | -SEALED-REPLY to Response to Motion re 504 MOTION for Order Approving Distribution Plan and Interim Distribution re 396 Order on Motion for Miscellaneous Relief *Reply to Objection of the Connaughton Objectors* filed by Gregory S. Milligan. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 02/10/2022) |
| 02/16/2022 | 592 | MOTION for Leave to File *Surreply* by CCWB Asset Investments, LLC, ECB Asset Investment, LLC, M.C. Dean, Inc. (Attachments: # 1 Exhibit 1 - Surreply, # 2 Affidavit E. Dean, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Text of Proposed Order)(Muse, Robert) (Entered: 02/16/2022) |
| 02/16/2022 | 593 | ORDER granting 592 Motion for Leave to File. Signed by Judge Richard D. Bennett on 2/16/2022. (Bennett, Richard) (Entered: 02/16/2022) |
| 02/17/2022 | 594 | SURREPLY re 504 MOTION for Order Approving Distribution Plan and Interim Distribution re 396 Order on Motion for Miscellaneous Relief filed by CCWB Asset Investments, LLC, ECB Asset Investment, LLC, M.C. Dean, Inc.. (Attachments: # 1 Declaration of Eric Dean, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C) (ols, Deputy Clerk) (Entered: 02/17/2022) |
| 02/17/2022 | 595 | MOTION for Settlement *Regarding Disposition of Check Issued by Wells Fargo Bank payable to Relief Defendant Amanda Merrill in Her Maiden Name* by Amanda Merrill (Attachments: # 1 Exhibit previously executed settlement agreement regarding forfeiture and restitution in criminal case, # 2 Exhibit redacted |

JA43

| | | |
|---|---|---|
| | | copy of Wells Fargo check subject to this motion, # 3 Text of Proposed Order)(Biddle, Robert) (Entered: 02/17/2022) |
| 02/17/2022 | 596 | ORDER granting 595 Amanda Merrill's Motion to Approve Settlement Agreement and Release. Signed by Judge Richard D. Bennett on 2/17/2022. (ols, Deputy Clerk) (Entered: 02/17/2022) |
| 02/22/2022 | 597 | MEMORANDUM ORDER entering partial summary judgment in favor of the SEC against Relief Defendant Amanda Merrill as to the $6.2 million in proceeds from the sales of the Vacation Homes referred to in 498 the SEC's Memorandum. Signed by Judge Richard D. Bennett on 2/22/2022. (ols, Deputy Clerk) (Entered: 02/23/2022) |
| 03/17/2022 | 598 | -SEALED-RESPONSE re 588 Order on Motion to Produce *Estimated Values* filed by Securities and Exchange Commission. (Attachments: # 1 Exhibit A)(Crutchlow, John) (Entered: 03/17/2022) |
| 03/22/2022 | 599 | MOTION for Extension of Time to File Response/Reply as to 598 Response *Relating to Court's Order ECF #588* by Amanda Merrill.(Biddle, Robert) (Entered: 03/22/2022) |
| 03/22/2022 | 600 | QC NOTICE: 599 Motion for Extension of Time to File Response/Reply filed by Amanda Merrill was filed incorrectly. <br> ***The following attachments or exhibits are missing - Proposed Order. To correct this problem, file Proposed Order using the event Notice (Other) and link Proposed Order to 599* . (ols, Deputy Clerk) (Entered: 03/22/2022) |
| 03/22/2022 | 601 | NOTICE by Amanda Merrill re 599 MOTION for Extension of Time to File Response/Reply as to 598 Response *Relating to Court's Order ECF #588 proposed order granting request for extension of time to respond* (Biddle, Robert) (Entered: 03/22/2022) |
| 03/22/2022 | 602 | ORDER granting 599 Amanda Merrill's Motion for Extension of Time to Respond. Signed by Judge Richard D. Bennett on 3/22/2022. (ols, Deputy Clerk) (Entered: 03/22/2022) |
| 03/30/2022 | 603 | MOTION to Seal *Response to SEC filing ECF #598 which was a sealed document* by Amanda Merrill (Attachments: # 1 Text of Proposed Order granting motion to file sealed document)(Biddle, Robert) (Entered: 03/30/2022) |
| 03/30/2022 | 604 | -FILED IN ERROR- Sealed Document(Biddle, Robert) Modified on 3/31/2022 (ols, Deputy Clerk). (Entered: 03/30/2022) |
| 03/31/2022 | 605 | QC NOTICE: 604 Sealed Document was filed incorrectly. <br> ***Incorrect event used. Please refile using the event under Responses and Replies > Response. When prompted please select the "Sealed" Radio button. Also, please link to ECF 598 when prompted. For any questions, please contact the Clerk's Office. It has been noted as FILED IN ERROR, and the document link has been disabled.* (ols, Deputy Clerk) (Entered: 03/31/2022) |
| 03/31/2022 | 606 | -SEALED-RESPONSE re 598 Response *to SEC Filing ECF #598* filed by Amanda Merrill.(Biddle, Robert) Modified on 3/31/2022 (ols, Deputy Clerk). (Entered: 03/31/2022) |
| 03/31/2022 | 607 | ORDER granting 603 Relief Defendant's Motion to File Sealed Document. Signed by Judge Richard D. Bennett on 3/31/2022. (ols, Deputy Clerk) (Entered: 03/31/2022) |
| 04/02/2022 | 608 | MOTION for Other Relief *for Approval of Thirteenth Interim Fee Application of HMP Advisory Holdings, LLC, D/B/A Harney Partners* by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Watts, Jameson) (Entered: 04/02/2022) |
| 04/02/2022 | 609 | MOTION for Other Relief *for Approval of Thirteenth Interim Fee Application of Husch Blackwell LLP* by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Watts, Jameson) (Entered: 04/02/2022) |
| 04/02/2022 | 610 | -SEALED - NOTICE of Filing Under Seal Exhibit A to Motion for Approval of Thirteenth Interim Fee Application of HMP Advisory Holdings, LLC, D/B/A Harney Partners by Gregory S. Milligan re 608 MOTION for Other Relief *for Approval of Thirteenth Interim Fee Application of HMP Advisory Holdings, LLC, D/B/A Harney Partners* (Watts, Jameson) (Entered: 04/02/2022) |
| 04/02/2022 | 611 | -SEALED - NOTICE of Filing Under Seal Exhibit A to Motion for Approval of Thirteenth Interim Fee Application of Husch Blackwell LLP by Gregory S. Milligan re 609 MOTION for Other Relief *for Approval of Thirteenth Interim Fee Application of Husch Blackwell LLP* (Watts, Jameson) (Entered: 04/02/2022) |
| 04/02/2022 | 612 | MOTION to Seal *Certain Exhibits to the Thirteenth Interim Fee Applications of Husch Blackwell LLP and HMP Advisory Holdings, LLC D/B/A Harney Partners* by Gregory S. Milligan (Attachments: # 1 Text of |

JA44

Proposed Order)(Watts, Jameson) (Entered: 04/02/2022)

| | | |
|---|---|---|
| 04/04/2022 | 613 | ORDER granting 612 Receiver's Motion to Seal Certain Exhibits to Thirteenth Interim Fee Applications of Husch Blackwell LLP and HMP Advisory Holdings, LLC. Signed by Judge Richard D. Bennett on 4/4/2022. (ols, Deputy Clerk) (Entered: 04/04/2022) |
| 04/04/2022 | 614 | ORDER granting 583 Receiver's Motion to Seal Reply to Objection of the Connaughton Objectors to the Receiver's Motion for Order Approving Distribution Plan and Interim Distribution. Signed by Judge Richard D. Bennett on 4/4/2022. (ols, Deputy Clerk) (Entered: 04/04/2022) |
| 04/08/2022 | 615 | -SEALED-RESPONSE re 588 Order on Motion to Produce *Estimated Values of Disputed Items* filed by Securities and Exchange Commission. (Attachments: # 1 Exhibit 1 Declaration of Gregory S. Milligan) (Crutchlow, John) (Entered: 04/08/2022) |
| 04/15/2022 | 616 | STATUS REPORT *re Settlement Negotiations* by Securities and Exchange Commission (Attachments: # 1 Text of Proposed Order)(Crutchlow, John) (Entered: 04/15/2022) |
| 04/15/2022 | 617 | ORDER re: Deadlines. Signed by Judge Richard D. Bennett on 4/15/2022. (ols, Deputy Clerk) (Entered: 04/15/2022) |
| 04/15/2022 | 618 | -SEALED-RESPONSE re 615 Response *Regarding Seized Personal Property* filed by Amanda Merrill. (Biddle, Robert) (Entered: 04/15/2022) |
| 04/15/2022 | 619 | MOTION to Seal *ECF #618, Relief Defendant's Response to SEC Filing ECF #615* by Amanda Merrill (Attachments: # 1 Text of Proposed Order granting motion to file sealed document)(Biddle, Robert) (Entered: 04/15/2022) |
| 04/18/2022 | 620 | ORDER granting 619 Relief Defendant's Motion to Seal Document. Signed by Judge Richard D. Bennett on 4/18/2022. (ols, Deputy Clerk) (Entered: 04/18/2022) |
| 04/26/2022 | 621 | RESPONSE re 618 Response, 606 Response *to Defendant Amanda Merrill's Briefing on Disputed Personal Property* filed by Gregory S. Milligan. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Butler, Lynn) (Entered: 04/26/2022) |
| 04/29/2022 | 622 | STATUS REPORT *for the Period Between January 1, 2022 and March 31, 2022* by Gregory S. Milligan(Butler, Lynn) (Entered: 04/29/2022) |
| 04/29/2022 | 623 | Supplemental to 622 Status Report filed by Gregory S. Milligan (Butler, Lynn) (Entered: 04/29/2022) |
| 05/12/2022 | 624 | MOTION for Approval to Abandon Certain Personal Property to Alexander Blank Fabrics & Design by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Klein, Buffey) (Entered: 05/12/2022) |
| 05/23/2022 | 625 | MOTION for Declaratory Relief on Lien Priority and Equitable Subrogation by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit A-1, # 3 Exhibit A-2, # 4 Exhibit A-3, # 5 Exhibit A-4, # 6 Exhibit A-5, # 7 Exhibit A-6, # 8 Exhibit A-7, # 9 Exhibit A-8, # 10 Text of Proposed Order)(Butler, Lynn) (Entered: 05/23/2022) |
| 05/30/2022 | 626 | MOTION for Approval of Second Interim Fee Application of Bankruptcy Management Solutions d/b/a Stretto by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order) (Butler, Lynn) (Entered: 05/30/2022) |
| 05/30/2022 | 627 | MOTION for Approval of Second Interim Fee Application of BDO USA, LLP by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 05/30/2022) |
| 06/06/2022 | 628 | MOTION for Approval of Fourteenth Interim Fee Application of HMP Advisory Holdings, LLC, d/b/a Harney Partners by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 06/06/2022) |
| 06/06/2022 | 629 | MOTION for Approval of Fourteenth Interim Fee Application of Husch Blackwell LLP by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 06/06/2022) |
| 06/06/2022 | 630 | -SEALED - NOTICE of Filing Under Seal Exhibit A to Motion for Approval of Fourteenth Interim Fee Application of HMP Advisory Holdings, LLC, D/B/A Harney Partners by Gregory S. Milligan re 628 MOTION for Approval of Fourteenth Interim Fee Application of HMP Advisory Holdings, LLC, d/b/a Harney Partners (Butler, Lynn) (Entered: 06/06/2022) |

JA45

06/06/2022 | 631 | -SEALED - NOTICE of Filing Under Seal Exhibit A to Motion for Approval of Fourteenth Interim Fee Application of Husch Blackwell LLP by Gregory S. Milligan re 629 MOTION for Approval of Fourteenth Interim Fee Application of Husch Blackwell LLP (Butler, Lynn) (Entered: 06/06/2022)

06/06/2022 | 632 | MOTION to Seal *Certain Exhibits to the Fourteenth Interim Fee Applications of Husch Blackwell LLP and HMP Advisory Holdings, LLC D/B/A Harney Partners* by Gregory S. Milligan (Attachments: # 1 Text of Proposed Order)(Butler, Lynn) (Entered: 06/06/2022)

06/17/2022 | 633 | MOTION Authorization for Sale of Real Property by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Butler, Lynn) (Entered: 06/17/2022)

06/29/2022 | 634 | ORDER granting 624 Gregory S. Milligan's Motion for Approval to Abandon Certain Personal Property. Signed by Judge Richard D. Bennett on 6/29/2022. (ols, Deputy Clerk) (Entered: 06/30/2022)

06/29/2022 | 635 | ORDER granting 625 Gregory S. Milligan's Motion for Declaratory Relief on Lien Priority and Equitable Subrogation. Signed by Judge Richard D. Bennett on 6/29/2022. (ols, Deputy Clerk) Modified on 6/30/2022 (ols, Deputy Clerk). (Entered: 06/30/2022)

06/29/2022 | 636 | ORDER granting 626 Receiver's Motion for Approval of Second Interim Fee Application of Bankruptcy Management Solutions d/b/a Stretto. Signed by Judge Richard D. Bennett on 6/29/2022. (ols, Deputy Clerk) (Entered: 06/30/2022)

06/29/2022 | 637 | ORDER granting 627 Receiver's Motion for Approval of Second Interim Fee Application of BDO USA, LLP. Signed by Judge Richard D. Bennett on 6/29/2022. (ols, Deputy Clerk) (Entered: 06/30/2022)

06/29/2022 | 638 | ORDER granting 628 Receiver's Motion for Approval of Fourteenth Interim Fee Application of HMP Advisory Holdings, LLC, d/b/a Harney Partners. Signed by Judge Richard D. Bennett on 6/29/2022. (ols, Deputy Clerk) (Entered: 06/30/2022)

06/29/2022 | 639 | ORDER granting 629 Receiver's Motion for Approval of Fourteenth Interim Fee Application of Husch Blackwell LLP. Signed by Judge Richard D. Bennett on 6/29/2022. (ols, Deputy Clerk) (Entered: 06/30/2022)

06/29/2022 | 640 | ORDER granting 632 Receiver's Motion to Seal Certain Exhibits to the Fourteenth Interim Fee Applications of Husch Blackwell LLP and HMP Advisory Holdings, LLC D/B/A Harney Partners. Signed by Judge Richard D. Bennett on 6/29/2022. (ols, Deputy Clerk) (Entered: 06/30/2022)

06/30/2022 | 641 | ORDER granting 608 Receiver's Motion for Approval of Thirteenth Interim Fee Application of HMP Advisory Holdings, LLC, D/B/A Harney Partners. Signed by Judge Richard D. Bennett on 6/30/2022. (ols, Deputy Clerk) (Entered: 06/30/2022)

06/30/2022 | 642 | ORDER granting 609 Receiver's Motion for Approval of Thirteenth Interim Fee Application of Husch Blackwell LLP. Signed by Judge Richard D. Bennett on 6/30/2022. (ols, Deputy Clerk) (Entered: 06/30/2022)

07/01/2022 | 643 | NOTICE of Settlement by Gregory S. Milligan (Butler, Lynn) (Entered: 07/01/2022)

07/15/2022 | 644 | STATUS REPORT by Securities and Exchange Commission (Attachments: # 1 Text of Proposed Order) (Crutchlow, John) (Entered: 07/15/2022)

07/18/2022 | 645 | NOTICE by Gregory S. Milligan re 633 MOTION Authorization for Sale of Real Property *Notice of Revised Proposed Order* (Attachments: # 1 Text of Proposed Order, # 2 Redlined Proposed Order)(Butler, Lynn) (Entered: 07/18/2022)

07/19/2022 | 646 | ORDER granting 633 Receiver's Motion for Authorization of Sale of Real Property. Signed by Judge Richard D. Bennett on 7/19/2022. (ols, Deputy Clerk) (Entered: 07/20/2022)

07/29/2022 | 647 | STATUS REPORT *for the Period Between April 1, 2022 and June 30, 2022* by Gregory S. Milligan(Butler, Lynn) (Entered: 07/29/2022)

07/29/2022 | 648 | Supplement to 647 Status Report filed by Gregory S. Milligan (Butler, Lynn) (Entered: 07/29/2022)

08/24/2022 | 649 | MOTION for Entry of Final Judgment as to Defendants Jay B. Ledford, Cameron R. Jezierski, Global Credit Recovery, LLC, Delmarva Capital, LLC,Rhino Capital Holdings, LLC, Rhino Capital Group, LLC, Deville Asset Management LTD, Riverwalk Financial Corporation, and Relief Defendant Lalaine Ledford by Securities and Exchange Commission (Attachments: # 1 Attachment 1a-Consent of Jay B. Ledford, # 2 Attachment 2a-Consent of Cameron R. Jezierski, # 3 Attachment 3a-Consent of Global Credit Recovery, LLC, # 4 Attachment 4a-Consent of Delmarva Capital, LLC, # 5 Attachment 5a-Consent of Rhino Capital Holdings, # 6 Attachment 6a-Consent of Rhino Capital Group, LLC, # 7 Attachment 7a-Consent of

JA46

|  |  |  |
|---|---|---|
|  |  | Deville Asset Management LTD, # 8 Attachment 8a-Consent of Riverwalk Financial Corporation, # 9 Attachment 9a-Consent of Lalaine Ledford, # 10 Text of Proposed Order 1b, # 11 Text of Proposed Order 2b, # 12 Text of Proposed Order 3b, # 13 Text of Proposed Order 4b, # 14 Text of Proposed Order 5b, # 15 Text of Proposed Order 6b, # 16 Text of Proposed Order 7b, # 17 Text of Proposed Order 8b, # 18 Text of Proposed Order 9b)(Crutchlow, John) (Entered: 08/24/2022) |
| 08/31/2022 | 650 | CONSENT JUDGMENT as to Jay B. Ledford. Signed by Judge Richard D. Bennett on 8/30/2022. (ols, Deputy Clerk) (Entered: 08/31/2022) |
| 08/31/2022 | 651 | CONSENT JUDGMENT as to Cameron R. Jezierski. Signed by Judge Richard D. Bennett on 8/30/2022. (ols, Deputy Clerk) (Entered: 08/31/2022) |
| 08/31/2022 | 652 | CONSENT JUDGMENT as to Rhino Capital Group, LLC. Signed by Judge Richard D. Bennett on 8/30/2022. (ols, Deputy Clerk) (Entered: 08/31/2022) |
| 08/31/2022 | 653 | CONSENT JUDGMENT as to DeVille Asset Management LTD. Signed by Judge Richard D. Bennett on 8/30/2022. (ols, Deputy Clerk) (Entered: 08/31/2022) |
| 08/31/2022 | 654 | CONSENT JUDGMENT as to Riverwalk Financial Corporation. Signed by Judge Richard D. Bennett on 8/30/2022. (ols, Deputy Clerk) (Entered: 08/31/2022) |
| 08/31/2022 | 655 | CONSENT JUDGMENT as to Global Credit Recovery, LLC. Signed by Judge Richard D. Bennett on 8/30/2022. (ols, Deputy Clerk) (Entered: 08/31/2022) |
| 08/31/2022 | 656 | CONSENT JUDGMENT as to Delmarva Capital, LLC. Signed by Judge Richard D. Bennett on 8/30/2022. (ols, Deputy Clerk) (Entered: 08/31/2022) |
| 08/31/2022 | 657 | CONSENT JUDGMENT as to Rhino Capital Holdings, LLC. Signed by Judge Richard D. Bennett on 8/30/2022. (ols, Deputy Clerk) (Entered: 08/31/2022) |
| 08/31/2022 | 658 | CONSENT JUDGMENT as to Lalaine Ledford. Signed by Judge Richard D. Bennett on 8/30/2022. (ols, Deputy Clerk) (Entered: 08/31/2022) |
| 09/14/2022 | 659 | -SEALED- MOTION for Other Relief *First Omnibus Motion to Approve Settlement Agreements and Releases* by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Butler, Lynn) (Entered: 09/14/2022) |
| 09/14/2022 | 660 | MOTION to Seal *Receiver's First Omnibus Motion to Approve Settlement Agreements and Releases* by Gregory S. Milligan (Attachments: # 1 Text of Proposed Order)(Butler, Lynn) (Entered: 09/14/2022) |
| 09/15/2022 | 661 | MOTION for Approval of Fifteenth Interim Fee Application of HMP Advisory Holdings, LLC, d/b/a Harney Partners by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Butler, Lynn) (Entered: 09/15/2022) |
| 09/15/2022 | 662 | MOTION for Approval of Fifteenth Interim Fee Application of Husch Blackwell LLP by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 09/15/2022) |
| 09/15/2022 | 663 | -SEALED - NOTICE of Filing Under Seal Exhibit A to Motion for Approval of Fifteenth Interim Fee Application of HMP Advisory Holdings, LLC, D/B/A Harney Partners by Gregory S. Milligan re 661 MOTION for Approval of Fifteenth Interim Fee Application of HMP Advisory Holdings, LLC, d/b/a Harney Partners (Butler, Lynn) (Entered: 09/15/2022) |
| 09/15/2022 | 664 | -SEALED - NOTICE of Filing Under Seal Exhibit A to Motion for Approval of Fifteenth Interim Fee Application of Husch Blackwell LLP by Gregory S. Milligan re 662 MOTION for Approval of Fifteenth Interim Fee Application of Husch Blackwell LLP (Butler, Lynn) (Entered: 09/15/2022) |
| 09/15/2022 | 665 | ORDER granting 660 Motion to Seal Receiver's First Omnibus Motion to Approve Settlement Agreements and Releases. Signed by Judge Richard D. Bennett on 9/15/2022. (ols, Deputy Clerk) (Entered: 09/15/2022) |
| 09/15/2022 | 666 | MOTION to Seal *Certain Exhibits to the Fifteenth Interim Fee Applications of Husch Blackwell LLP and HMP Advisory Holdings, LLC, d/b/a Harney Partners* by Gregory S. Milligan (Attachments: # 1 Text of Proposed Order)(Butler, Lynn) (Entered: 09/15/2022) |
| 09/15/2022 | 667 | ORDER granting 666 Motion to Seal Certain Exhibits to the Fifteenth Interim Fee Applications of Husch Blackwell LLP and HMP Advisory Holdings, LLC, d/b/a Harney Partners. Signed by Judge Richard D. Bennett on 9/15/2022. (ols, Deputy Clerk) (Entered: 09/15/2022) |

JA47

| | | |
|---|---|---|
| 09/19/2022 | 668 | -SEALED- ORDER GRANTING 659 First Omnibus Motion to Approve Settlement Agreements and Releases. Signed by Judge Richard D. Bennett on 9/19/2022. (hmls, Deputy Clerk) (Entered: 09/19/2022) |
| 10/04/2022 | 669 | ORDER granting 662 Receiver's Motion for Approval of Fifteenth Interim Fee Application of Husch Blackwell LLP. Signed by Judge Richard D. Bennett on 10/4/2022. (ols, Deputy Clerk) (Entered: 10/04/2022) |
| 10/04/2022 | 670 | ORDER granting 661 Receiver's Motion for Approval of Fifteenth Interim Fee Application of HMP Advisory Holdings, LLC, d/b/a Harney Partners. Signed by Judge Richard D. Bennett on 10/4/2022. (ols, Deputy Clerk) (Entered: 10/04/2022) |
| 10/30/2022 | 671 | STATUS REPORT *for the Period Between July 1, 2022 and September 30, 2022* by Gregory S. Milligan(Butler, Lynn) (Entered: 10/30/2022) |
| 10/30/2022 | 672 | Supplement to 671 Status Report filed by Gregory S. Milligan (Butler, Lynn) (Entered: 10/30/2022) |
| 10/31/2022 | 674 | PAPERLESS ORDER granting 472 Motion to Appear Pro Hac Vice on behalf of David G Lim. Directing attorney David G Lim to register for pro hac vice filing in the District of Maryland through PACER at https://pacer.uscourts.gov/ if attorney has not already done so. The *Pro Hac Vice* option must be selected when registering. Signed by Clerk on 10/31/2022. (mh4s, Deputy Clerk) (Entered: 10/31/2022) |
| 10/31/2022 | 675 | MOTION Conducting the conference scheduled for Nov. 1 by telephone on the record if merits issues are addressed re 504 MOTION for Order Approving Distribution Plan and Interim Distribution re 396 Order on Motion for Miscellaneous Relief by Amanda Merrill(Biddle, Robert) (Entered: 10/31/2022) |
| 11/01/2022 | 676 | QC NOTICE: 675 Motion for Miscellaneous Relief, filed by Amanda Merrill was filed incompletely. ***The following attachments or exhibits are missing - Text of Proposed Order. Pursuant to Local Rule 105.1, all Motions must be accompanied with a memorandum in support and proposed order. To correct this problem, file Text of Proposed Order using the event Notice (Other) and link the Text of Proposed Order to 675 .* (dg3s, Deputy Clerk) (Entered: 11/01/2022) |
| 11/01/2022 | 677 | LETTER ORDER denying as moot 675 MOTION to Conduct the Conference Call on the Record; scheduling a in-person motions hearing on 11/15/2022 at 11:00 a.m.. Signed by Judge Richard D. Bennett on 11/1/2022. (dg3s, Deputy Clerk) (Entered: 11/01/2022) |
| 11/01/2022 | | Telephone Conference held on 11/1/2022 before Judge Richard D. Bennett. (jh2s, Deputy Clerk) (Entered: 11/01/2022) |
| 11/03/2022 | 678 | NOTICE of Appearance by Catherine E Pappas on behalf of Securities and Exchange Commission (Pappas, Catherine) (Entered: 11/03/2022) |
| 11/03/2022 | 679 | STATUS REPORT by Gregory S. Milligan(Butler, Lynn) (Entered: 11/03/2022) |
| 11/08/2022 | 680 | NOTICE by Gregory S. Milligan re 658 Consent Judgment, 272 Order, *of Proposed Public Auction (Handbag)* (Attachments: # 1 Exhibit 1)(Butler, Lynn) (Entered: 11/08/2022) |
| 11/08/2022 | 681 | NOTICE by Gregory S. Milligan re 658 Consent Judgment, 272 Order, *of Proposed Public Auction (Jewelry)* (Attachments: # 1 Exhibit 1)(Butler, Lynn) (Entered: 11/08/2022) |
| 11/11/2022 | 682 | STATUS REPORT *Supplementing the Status Report filed on Nov. 3, 2022, ECF #679* by Amanda Merrill (Attachments: # 1 Exhibit restitution payment data from the Clerk of the Court, # 2 Exhibit Email from Clerk's Office Financial Administrator)(Biddle, Robert) (Entered: 11/11/2022) |
| 11/15/2022 | 683 | Motion Hearing held on 11/15/2022 re 503 MOTION Omnibus Objection to Claims re 396 Order on Motion for Miscellaneous Relief filed by Gregory S. Milligan, 460 Joint MOTION Determination of Burden of Proof and Related Matters re 431 Order *setting motion deadline, motion filed jointly by Ms. Merrill and Ms. Ledford by counsel* filed by Amanda Merrill, 504 MOTION for Order Approving Distribution Plan and Interim Distribution re 396 Order on Motion for Miscellaneous Relief filed by Gregory S. Milligan, 446 Joint MOTION re 431 Order *for determination of jury trial right* filed by Amanda Merrill before Judge Richard D. Bennett. (Court Reporter: Amanda Longmore.) (rm2s, Deputy Clerk) (Entered: 11/15/2022) |
| 11/15/2022 | 684 | CLAIMANT'S EXHIBIT LIST by Dean Investors/Virginia Group. (rm2s, Deputy Clerk) (Entered: 11/16/2022) |
| 11/15/2022 | 685 | ORDER setting deadlines regarding determination of Burden of Proof and related matters. Signed by Judge Richard D. Bennett on 11/15/2022. (dg3s, Deputy Clerk) (Entered: 11/16/2022) |

JA48

| 11/15/2022 | 686 | ORDER sustaining Receiver Gregory Milligan's Omnibus Objection to Claims. Signed by Judge Richard D. Bennett on 11/15/2022. (dg3s, Deputy Clerk) (Entered: 11/16/2022) |
|---|---|---|
| 11/15/2022 | 687 | ORDER granting Receiver Gregory S. Milligan's Motion for Order Approving Distribution Plan and Interim Distribution. Signed by Judge Richard D. Bennett on 11/15/2022. (dg3s, Deputy Clerk) (Entered: 11/16/2022) |
| 11/16/2022 | 688 | MEMORANDUM ORDER sustaining Claimant Iwona Howley's objection to Receiver Gregory Milligan's Motion for Order Approving Distribution Plan and Interim Distribution. Signed by Judge Richard D. Bennett on 11/16/2022. (dg3s, Deputy Clerk) (Entered: 11/16/2022) |
| 11/16/2022 | 689 | MEMORANDUM ORDER denying 446 Motion for Order for Determination of Jury Trial Right. Signed by Judge Richard D. Bennett on 11/16/2022. (dg3s, Deputy Clerk) (Entered: 11/16/2022) |
| 11/18/2022 | 690 | Memorandum and Order OVERRULING 558 RESPONSE in Opposition re 504 MOTION for Order Approving Distribution Plan and Interim Distribution re 396 Order on Motion for Miscellaneous Relief filed by CCWB Asset Investments, LLC, ECB Asset Investment, LLC, M.C. Dean, Inc. ;OVERRULING 559 RESPONSE in Opposition re 504 MOTION for Order Approving Distribution Plan and Interim Distribution re 396 Order on Motion for Miscellaneous Relief filed by Jeffrey J. Connaughton. Signed by Judge Richard D. Bennett on 11/18/2022. (kb3s, Deputy Clerk) (Entered: 11/18/2022) |
| 12/01/2022 | 691 | MOTION for Authorization for Sale of Real Property by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Butler, Lynn) (Entered: 12/01/2022) |
| 12/01/2022 | 692 | MOTION for Approval of Sixteenth Interim Fee Application of HMP Advisory Holdings, LLC, d/b/a Harney Partners by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 12/01/2022) |
| 12/01/2022 | 693 | MOTION for Approval of Sixteenth Interim Fee Application of Husch Blackwell LLP by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Butler, Lynn) (Entered: 12/01/2022) |
| 12/01/2022 | 694 | -SEALED - NOTICE of Filing Under Seal Exhibit A to Motion for Approval of Sixteenth Interim Fee Application of HMP Advisory Holdings, LLC, D/B/A Harney Partners by Gregory S. Milligan re 692 MOTION for Approval of Sixteenth Interim Fee Application of HMP Advisory Holdings, LLC, d/b/a Harney Partners (Butler, Lynn) (Entered: 12/01/2022) |
| 12/01/2022 | 695 | -SEALED - NOTICE of Filing Under Seal Exhibit A to Motion for Approval of Sixteenth Interim Fee Application of Husch Blackwell LLP by Gregory S. Milligan re 693 MOTION for Approval of Sixteenth Interim Fee Application of Husch Blackwell LLP (Butler, Lynn) (Entered: 12/01/2022) |
| 12/01/2022 | 696 | MOTION to Seal *Certain Exhibits to the Sixteenth Interim Fee Applications of Husch Blackwell LLP and HMP Advisory Holdings, LLC, d/b/a Harney Partners* by Gregory S. Milligan (Attachments: # 1 Text of Proposed Order)(Butler, Lynn) (Entered: 12/01/2022) |
| 12/02/2022 | 697 | ORDER granting 696 MOTION to Seal Certain Exhibits to the Sixteenth Interim Fee Applications of Husch Blackwell LLP and HMP Advisory Holdings, LLC, d/b/a Harney Partners. Signed by Judge Richard D. Bennett on 12/2/2022. (dg3s, Deputy Clerk) (Entered: 12/02/2022) |
| 12/05/2022 | 698 | NOTICE OF APPEAL as to 690 Order,, by CCWB Asset Investments, LLC, ECB Asset Investment, LLC, M.C. Dean, Inc.. Filing fee $ 505, receipt number AMDDC-10305521.(Muse, Robert) (Entered: 12/05/2022) |
| 12/06/2022 | 699 | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re 698 Notice of Appeal. IMPORTANT NOTICE: To access forms which you are required to file with the United States Court of Appeals for the Fourth Circuit please go to http://www.ca4.uscourts.gov and click on Forms & Notices. (jb5s, Deputy Clerk) (Entered: 12/06/2022) |
| 12/08/2022 | 700 | USCA Case Number 22-2256 for 698 Notice of Appeal filed by M.C. Dean, Inc., ECB Asset Investment, LLC, CCWB Asset Investments, LLC. Case Manager - Karen Stump (jb5s, Deputy Clerk) (Entered: 12/08/2022) |
| 12/09/2022 | 701 | Transcript Order Acknowledgement- for dates of 11/15/2022, before Judge The Honorable Judge Bennett, re 698 Notice of Appeal Court Reporter/Transcriber Amanda Longmore, Telephone number 410-962-4474. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained from the Court Reporter or through PACER. Does this satisfy all appellate orders for this reporter? - N. Redaction Request |

JA49

due 12/30/2022. Redacted Transcript Deadline set for 1/9/2023. Release of Transcript Restriction set for 3/9/2023.(jb5s, Deputy Clerk) Modified on 12/9/2022 (jb5s, Deputy Clerk). (Entered: 12/09/2022)

| | | |
|---|---|---|
| 12/13/2022 | 702 | NOTICE by Gregory S. Milligan re 687 Order on Motion for Miscellaneous Relief *Notice of Revised Distribution Schedule for Receivers First Interim Distribution* (Attachments: # 1 Exhibit B - Revised Distribution Schedule)(Butler, Lynn) (Entered: 12/13/2022) |
| 12/16/2022 | 703 | MOTION *For Final Judgment Against Defendant Kevin Merrill* by Securities and Exchange Commission (Attachments: # 1 Memorandum in Support, # 2 Exhibit 1 Declaration of Dustin Ruta, # 3 Text of Proposed Order)(Crutchlow, John) (Entered: 12/16/2022) |
| 12/16/2022 | 704 | NOTICE OF APPEAL as to 690 Order,, by Jeffrey J. Connaughton, Tony Davis, Rochelle Katz, Barbara Louderback, Scott D Oser, Ojas Patel, Pulin Patel, Dhaval Shukla, Nishant Shukla. Filing fee $ 505, receipt number AMDDC-10330413.(Miller, Monica) (Entered: 12/16/2022) |
| 12/16/2022 | 705 | ORDER Granting 692 Motion for Approval of Sixteenth Interim Fee Application of HMP Advisory Holdings, LLC, d/b/a Harney Partners. Signed by Judge Richard D. Bennett on 12/16/2022. (bas, Deputy Clerk) (Entered: 12/19/2022) |
| 12/19/2022 | 706 | ORDER Granting 693 Motion for Approval of Sixteenth Interim Fee Application of Husch Blackwell LLP. Signed by Judge Richard D. Bennett on 12/16/2022. (bas, Deputy Clerk) (Entered: 12/19/2022) |
| 12/19/2022 | 707 | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re 704 Notice of Appeal,. IMPORTANT NOTICE: To access forms which you are required to file with the United States Court of Appeals for the Fourth Circuit please go to http://www.ca4.uscourts.gov and click on Forms & Notices. (jb5s, Deputy Clerk) (Entered: 12/19/2022) |
| 12/22/2022 | 708 | ORDER-The court consolidates Case No. 22-2256 and Case No. 22-2296. Entry ofappearance forms and disclosure statements filed by counsel and parties to the leadcase are deemed filed in the secondary case. of USCA as to 704 Notice of Appeal, filed by Rochelle Katz, Ojas Patel, Nishant Shukla, Scott D Oser, Barbara Louderback, Tony Davis, Jeffrey J. Connaughton, Pulin Patel, Dhaval Shukla (jb5s, Deputy Clerk) (Entered: 12/22/2022) |
| 12/22/2022 | 709 | USCA Case Number 22-2296 for 704 Notice of Appeal, filed by Rochelle Katz, Ojas Patel, Nishant Shukla, Scott D Oser, Barbara Louderback, Tony Davis, Jeffrey J. Connaughton, Pulin Patel, Dhaval Shukla. Case Manager - Naeemah R. Sims (jb5s, Deputy Clerk) (Entered: 12/22/2022) |
| 01/04/2023 | 710 | MOTION to Amend/Correct 685 Order on Motion for Miscellaneous Relief *The SEC and the Receiver do not oppose the requested amendment to ECF #685* by Amanda Merrill (Attachments: # 1 Exhibit checklist showing property released to Ms. Merrill on Dec. 21, 2022, # 2 Text of Proposed Order proposed amendments to Court Order ECF #685)(Biddle, Robert) (Entered: 01/04/2023) |
| 01/05/2023 | 711 | ORDER granting Receiver Gregory S. Milligan's 691 Motion for Authorization of Sale of Real Property as set forth. Signed by Judge Richard D. Bennett on 1/4/2023. (dass, Deputy Clerk) (Entered: 01/05/2023) |
| 01/05/2023 | 712 | FINAL JUDGMENT as to Defendant Kevin B. Merrill. Signed by Judge Richard D. Bennett on 1/4/2023. (dass, Deputy Clerk) (Entered: 01/05/2023) |
| 01/05/2023 | 713 | ORDER granting Amanda Merrill's 710 Motion to Amend 685 Order; amending phrases in paragraph 2 and 3 as set forth; directing other language and provisions in 685 Order shall remain unchanged. Signed by Judge Richard D. Bennett on 1/4/2023. (dass, Deputy Clerk) (Entered: 01/05/2023) |
| 01/09/2023 | 714 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT for dates of 11/15/2022, before Judge Richard Bennett, re 698 Notice of Appeal Court Reporter Amanda L. Longmore, Telephone number 4109624474; amanda_longmore@mdd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained from the Court Reporter or through PACER. Does this satisfy all appellate orders for this reporter? - Y. Redaction Request due 1/30/2023. Redacted Transcript Deadline set for 2/9/2023. Release of Transcript Restriction set for 4/10/2023. (al6, Court Reporter) (Entered: 01/09/2023) |
| 01/12/2023 | 715 | NOTICE of Appearance by Judson Thomas Mihok on behalf of Securities and Exchange Commission (Mihok, Judson) (Entered: 01/12/2023) |
| 01/12/2023 | 716 | MOTION to Amend/Correct 685 Order on Motion for Miscellaneous Relief *Requested relief consented to by the Receiver and the SEC* by Amanda Merrill (Attachments: # 1 Text of Proposed Order further modifying court order ECF #685)(Biddle, Robert) (Entered: 01/12/2023) |

JA50

| 01/13/2023 | 717 | MOTION to Withdraw as Attorney by Securities and Exchange Commission (Attachments: # 1 Text of Proposed Order)(Crutchlow, John) (Entered: 01/13/2023) |
| 01/13/2023 | 718 | ORDER granting 717 MOTION to Withdraw as Attorney. Attorney John T Crutchlow terminated. Signed by Judge Richard D. Bennett on 1/13/2023. (dg3s, Deputy Clerk) (Entered: 01/13/2023) |
| 01/17/2023 | 719 | ORDER granting 716 MOTION to Amend/Correct 685 Order. Signed by Judge Richard D. Bennett on 1/17/2023. (dg3s, Deputy Clerk) (Entered: 01/17/2023) |
| 01/23/2023 | 720 | MOTION to Approve Procedures for Sale of Personal Property and for Order Authorizing Retention, Employment, and Compensation of The RealReal, Inc. as Broker by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Watts, Jameson) (Entered: 01/23/2023) |
| 01/23/2023 | 721 | MOTION to Approve Procedures for Sale of Personal Property and for Order Authorizing Retention, Employment, and Compensation of Quinn & Sons Inc. as Broker by Gregory S. Milligan (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Watts, Jameson) (Entered: 01/23/2023) |
| 01/24/2023 | 722 | ORDER granting 721 MOTION to Approve Procedures for Sale of Personal Property and for Order Authorizing Retention, Employment, and Compensation of Quinn & Sons Inc. as Broker. Signed by Judge Richard D. Bennett on 1/24/2023. (dg3s, Deputy Clerk) (Entered: 01/24/2023) |
| 01/24/2023 | 723 | ORDER granting 720 MOTION to Approve Procedures for Sale of Personal Property and for Order Authorizing Retention, Employment, and Compensation of The RealReal, Inc. as Broker. Signed by Judge Richard D. Bennett on 1/24/2023. (dg3s, Deputy Clerk) (Entered: 01/24/2023) |
| 01/27/2023 | 724 | STATUS REPORT *Joint Status Report on Inspection and Tagging of Relief Defendant Amanda Merrill's Claimed Personal Property* by Gregory S. Milligan (Attachments: # 1 Exhibit A)(Watts, Jameson) (Entered: 01/27/2023) |
| 01/30/2023 | 725 | STATUS REPORT *for the Period Between October 1, 2022 and December 31, 2022* by Gregory S. Milligan(Watts, Jameson) (Entered: 01/30/2023) |
| 01/30/2023 | 726 | Supplement to 725 Status Report filed by Gregory S. Milligan (Watts, Jameson) (Entered: 01/30/2023) |
| 02/01/2023 | 727 | MOTION for Return of Property *pursuant to ECF #685, and subsequent orders* by Amanda Merrill (Attachments: # 1 Affidavit by Amanda Merrill, # 2 Affidavit Gloria Mahlstedt, # 3 Affidavit Alyson Kent, # 4 Attachment proceeds of prior dispositions of property by Heritage, # 5 Attachment household good released by Ms. Merrill to Receiver for Auction by Quinn & Sons, # 6 Text of Proposed Order granting release of property)(Biddle, Robert) (Entered: 02/01/2023) |
| 02/01/2023 | 728 | MOTION for Return of Property *pursuant to buyback proposal* by Amanda Merrill (Attachments: # 1 Attachment identifying property subject to buyback proposal, # 2 Attachment Statement by Relief Defendant's brother agreeing to fund buyback, # 3 Text of Proposed Order directing receiver to proceed with buyback)(Biddle, Robert) (Entered: 02/01/2023) |
| 02/06/2023 | 729 | NOTICE by Gregory S. Milligan re 722 Order on Motion for Miscellaneous Relief *Notice of Public Auction (Personal Property)* (Attachments: # 1 Exhibit 1)(Watts, Jameson) (Entered: 02/06/2023) |
| 02/07/2023 | 730 | NOTICE by Gregory S. Milligan re 658 Consent Judgment, 272 Order, *Notice of Proposed Public Auction (Sports Memorabilia)* (Attachments: # 1 Exhibit 1)(Watts, Jameson) (Entered: 02/07/2023) |
| 02/15/2023 | 731 | RESPONSE in Opposition re 728 MOTION for Return of Property *pursuant to buyback proposal* filed by Gregory S. Milligan. (Attachments: # 1 Exhibit A)(Watts, Jameson) (Entered: 02/15/2023) |
| 02/15/2023 | 732 | -SEALED - NOTICE of Filing Under Seal Exhibit A to Receiver's Response in Opposition by Gregory S. Milligan re 731 Response in Opposition to Motion, 588 Order on Motion to Produce (Watts, Jameson) (Entered: 02/15/2023) |
| 02/15/2023 | 733 | RESPONSE in Opposition re 727 MOTION for Return of Property *pursuant to ECF #685, and subsequent orders ECF #713 and ECF #719* filed by Securities and Exchange Commission. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Text of Proposed Order)(Mihok, Judson) (Entered: 02/15/2023) |
| 02/16/2023 | 734 | QC NOTICE: 732 Notice of Filing Exhibit or Attachment Under Seal filed by Gregory S. Milligan was filed incompletely. *\*\*A Motion to Seal is required when filing a document under seal. Please file a Motion to Seal for the Sealed Document. Also ensure that the Motion to Seal has a Proposed Order attached.* (dg3s, Deputy Clerk) (Entered: 02/16/2023) |

JA51

3/2/23, 9:24 AM                          District of Maryland (CM/ECF Live NextGen 1.6)

02/20/2023    735    MOTION to Seal *Exhibit A to the Receiver's Response and Objection to Relief Defendant Amanda Merrill's Motion to Obtain Court Order Directing the Sale by Receiver of Certain Personal Property to Her* by Gregory S. Milligan (Attachments: # 1 Text of Proposed Order)(Watts, Jameson) (Entered: 02/20/2023)

02/21/2023    736    ORDER granting 735 MOTION to Seal Exhibit A to the Receiver's Response and Objection to Relief Defendant Amanda Merrill's Motion to Obtain Court Order Directing the Sale by Receiver of Certain Personal Property to Her. Signed by Judge Richard D. Bennett on 2/21/2023. (dg3s, Deputy Clerk) (Entered: 02/21/2023)

02/23/2023    737    REPLY to Response to Motion re 728 MOTION for Return of Property *pursuant to buyback proposal* filed by Amanda Merrill.(Biddle, Robert) (Entered: 02/23/2023)

02/23/2023    738    REPLY to Response to Motion re 727 MOTION for Return of Property *pursuant to ECF #685, and subsequent orders pertaining to Ms. Merrill's claims for return of personal property* filed by Amanda Merrill.(Biddle, Robert) (Entered: 02/23/2023)

**PACER Service Center**

**Transaction Receipt**

03/02/2023 09:24:26

| PACER Login: | Cprichmond16 | Client Code: | |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 1:18-cv-02844-RDB |
| Billable Pages: | 30 | Cost: | 3.00 |

JA52

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>KEVIN B. MERRILL; JAY B. LEDFORD; CAMERON R. JEZIERSKI; GLOBAL CREDIT RECOVERY, LLC; DELMARVA CAPITAL, LLC; RHINO CAPITAL HOLDINGS, LLC; RHINO CAPITAL GROUP, LLC; DEVILLE ASSET MANAGEMENT LTD; AND RIVERWALK FINANCIAL CORPORATION,<br><br>　　　　　Defendants,<br><br>and<br><br>AMANDA MERRILL AND LALAINE LEDFORD,<br><br>　　　　　Relief Defendants. | Case No. RDB-18-2844<br><br>AMENDED COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff, Securities and Exchange Commission (the "Commission"), alleges as follows:

### NATURE OF THE ACTION

1.　This matter involves an offering fraud by Defendants Kevin B. Merrill ("Merrill"), Jay B. Ledford ("Ledford"), and Cameron Jezierski ("Jezierski") that raised more than $345 million from over 230 investors to purportedly purchase consumer debt portfolios. From at least 2013 to present, Defendants operated this Ponzi-like scheme that involved, among other things, securities offerings rife with misrepresentations, fake debt, forged signatures, fabricated wire transfers, the movement of millions of dollars into personal accounts, and an

elaborate scheme wherein Defendants offered and sold investments in the same (and often fictitious) debt and/or debt portfolios, to multiple victims.

2.      Of the $345 million raised, more than $90 million was invested by over 200 individual investors; approximately $52 million by family offices; and nearly $203 million by feeder funds, largely made up of groups of individuals.  These investors included small business owners, restauranteurs, construction contractors, retirees, doctors, lawyers, accountants, bankers, talent agents, current and former professional athletes, and financial advisors.

3.      Touting their purported expertise in collecting on and reselling consumer debt, Merrill and Ledford, through a web of entities they owned and/or controlled, including Defendants Global Credit Recovery, LLC; Delmarva Capital, LLC; Rhino Capital Holdings, LLC; Rhino Capital Group, LLC; DeVille Asset Management LTD; and Riverwalk Financial Corporation (collectively, "Entity Defendants"), offered and sold securities to investors with the promise of significant profits.  Defendants used these and a total of approximately 30 interrelated corporate entities and over 55 bank accounts to move investor money, deceive investors, and continue their Ponzi-like scheme that has survived only with the influx of greater and greater sums of cash.

4.      Instead of using investors' money as promised, Defendants stole a vast portion of the money raised and used almost all that remained to make Ponzi-like payments to earlier investors so that the scheme could continue.  Defendants Merrill and Ledford took millions to maintain a lavish lifestyle.  Ledford misappropriated at least $40 million, including transferring at least $17 million to personal bank accounts and purchasing items including a $368,000 Ferrari, a $330,000 seven-carat diamond ring, and a $168,000 23-carat diamond bracelet, while transferring $13 million to casinos.  Merrill misappropriated at least $45 million, including by

transferring over $7 million to his personal bank accounts, spending $10.2 million on at least 25 high-end automobiles (including a 2008 Bugatti Veyron, a 2014 Pagani Huayra Diablo, a 2014 Ferrari F12 Berlinetta, a 2017 Rolls Royce Dawn, and multiple other models made by Ferrari and Lamborghini), $5.5 million toward the purchase of a house in Naples, Florida, over $2 million for home renovations, $500,000 for an interest in a Gulfstream 200 private jet, a $100,000 club membership in Naples, $350,000 on a boat, and transferring approximately $1 million to casinos.  Merrill and Ledford further misappropriated investor funds by transferring to their respective wives, Amanda Merrill and Lalaine Ledford, investor money and other assets purchased using the misappropriated money, including real estate and luxury goods.

5.      Defendants made payments to investors of approximately $197 million, most of which consisted of money received from investors, to deceive investors into believing that their money had been invested as promised and that they were reaping profits from those investments. As a result, many unsuspecting investors were victimized repeatedly and referred other prospective investors to Defendants.  Merrill and Ledford continued to seek additional money from investors until the filing of the SEC's complaint and their arrests by the criminal authorities.

6.      By engaging in the conduct described in this Amended Complaint, Defendants violated, and unless enjoined will continue to violate, Section 17(a) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77q(a), and Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5(a) and (c) thereunder, 17 C.F.R § 240.10b-5(a), (c); and Defendants Merrill and Ledford and the Entity Defendants violated, and unless enjoined will continue to violate Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(b) thereunder, 17 C.F.R. § 240.10b-5(b).  Relief Defendants Amanda Merrill and

JA55

Lalaine Ledford have been unjustly enriched, as they have received proceeds of the fraud to which they have no legitimate claim.

**JURISDICTION AND VENUE**

7.      The Commission brings this action pursuant to Sections 20(b) and 20(d) of the Securities Act, 15 U.S.C. § 77t(b) and 77t(d), and Sections 21(d) and (e) of the Exchange Act, 15 U.S.C. § 78u(d) and 78u(e), to enjoin acts, transactions, practices, and courses of business, and to obtain disgorgement, prejudgment interest, civil penalties, and such other and further relief as the Court may deem just and appropriate.

8.      The Court has jurisdiction over this action pursuant to Sections 20 and 22 of the Securities Act, 15 U.S.C. §§ 77t and 77v, and Sections 21 and 27 of the Exchange Act, 15 U.S.C. §§ 78u and 78aa.

9.      Venue lies in this judicial district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a).  Among other things, certain of the acts, practices, and courses of business constituting the violations of the federal securities laws alleged herein occurred within this district, including that Defendants made misrepresentations and engaged in deceptive conduct affecting investors residing within this district.  In addition, Defendant Merrill resides and transacts business through Defendants Global Credit Recovery, LLC; Delmarva Capital, LLC; Rhino Capital Holdings, LLC; and Rhino Capital Group, LLC in the District of Maryland.  Defendants Ledford, DeVille Asset Management LTD, and Riverwalk Financial Corporation transmitted false documents into the District of Maryland for distribution by Defendant Merrill.  Relief Defendant Amanda Merrill received ill-gotten funds obtained as a result of Defendants' fraudulent scheme operated within the District of Maryland and other assets purchased with such ill-gotten funds.  Relief Defendant

JA56

Lalaine Ledford received ill-gotten funds obtained as a result of Defendants' fraudulent scheme operated within the District of Maryland and other assets purchased with such ill-gotten funds.

**DEFENDANTS**

10.     Kevin B. Merrill, 53, lives in Towson, located in Baltimore County, Maryland. Merrill previously was in the business of buying, selling, and collecting on consumer debt. Merrill owns and/or controls, among other entities, Defendants Global Credit Recovery, LLC; Delmarva Capital, LLC; Rhino Capital Holdings, LLC; and Rhino Capital Group, LLC; as well as GCR CBL CP I, LLC; GCR CBL CP II, LLC ("GCR CBL II"); GCR CBL CP III, LLC; GCR CBL CP IV, LLC("GCR CBL IV"); GCR Mercer Holdings, LLC; GCR HCP Holdings 1, LLC ("GCR HCP"); and K.B. Merrill Associates ("KB Merrill").

11.     Jay B. Ledford, 54, lives in Westlake, Texas and Las Vegas, Nevada. Ledford, through his entities, has, on occasion, bought, sold, and collected on consumer debt and also operated a credit repair business and an accounting firm. Ledford owns and/or controls, among other entities, Defendants DeVille Asset Management LTD and Riverwalk Financial Corporation; as well as Financial Reclamation Group LLC ("FRG"); Halo Credit Solutions LLC ("Halo"); JBL Holdings LLC ("JBL Holdings"); Jay B. Ledford, P.C. ("JBL PC"); the Joseph Finance Company ("JFC"); Leddy Bear LTD ("Leddy Bear"); Ledford & Associates, PLLC ("Ledford & Associates"); King Fischer LTD d/b/a LP Investments LTD ("LP"); NLEX, Inc. ("NLEX"); Receivables Portfolio Interchange, Inc. ("RPI"); Riverwalk Capital Investments, Inc. ("RW Capital"); Riverwalk Credit Solutions, Inc. ("RW Credit"); Riverwalk Debt Solutions, Inc. ("RW Debt"); Riverwalk Fixed Asset Group LLC ("RW Fixed"); SCUSA Financial, Inc. ("SCUSA"), and Vaquero Asset Management ("Vaquero"). Ledford is a certified public accountant registered in Texas.

12.     Cameron R. Jezierski, 27, of Fort Worth, Texas, is an employee of Defendants DeVille Asset Management LTD and/or Riverwalk Financial Corporation.  Jezierski operated the Ledford-controlled entities SCUSA and NLEX, and owns and/or controls CRJ Holdings LLC ("CRJ Holdings").

13.     Global Credit Recovery, LLC ("GCR") is a Maryland limited liability company with its principal place of business in Towson, Maryland.  GCR is the entity through which Merrill primarily operates, and GCR sold purported investments in consumer debt portfolios. Merrill owns, controls, and is the managing member of GCR.

14.     Delmarva Capital, LLC ("Delmarva") is a Delaware limited liability company with its principal place of business in Towson, Maryland.  Merrill owns, controls, and is the CEO/managing member of Delmarva, and Delmarva sold purported investments in consumer debt portfolios.

15.     Rhino Capital Holdings, LLC ("Rhino Capital") is a Montana limited liability company with its principal place of business in Towson, Maryland.  Rhino Capital is owned and controlled by Merrill, and Rhino Capital received money from investors in connection with purported investments in consumer debt portfolios.

16.     Rhino Capital Group, LLC ("Rhino Group") is a Delaware limited liability company with its principal place of business in Towson, Maryland.  Merrill owns and controls Rhino Group, and Rhino Group sold purported investments in consumer debt portfolios.  In his communications with investors, Merrill portrayed Rhino Group and Rhino Capital (collectively, "Rhino") as a single entity and treated the two interchangeably.

17.     DeVille Asset Management LTD ("DeVille") is a Texas limited partnership. DeVille's principal place of business is in Colleyville, Texas.  JBL Holdings, an entity owned

JA58

and/or controlled by Ledford, is DeVille's general partner.  DeVille is controlled by Ledford, who holds himself out as DeVille's CEO, and DeVille sold purported investments in consumer debt portfolios.

18.     Riverwalk Financial Corporation ("RW Financial") is a Delaware corporation with its principal place of business in Colleyville, Texas.  RW Financial is the entity through which Ledford primarily operated.  RW Financial received money from investors and is controlled by Ledford, who is the CEO.

**RELIEF DEFENDANTS**

19.     Amanda Merrill, 29, lives in Towson, Maryland.  Mrs. Merrill married Merrill in December 2015.  Mrs. Merrill is a florist and wedding planner.  Mrs. Merrill previously worked as an assistant to Mr. Merrill in connection with his purported debt portfolio business.

20.     Lalaine Ledford, 35, lives in Las Vegas, Nevada.  Mrs. Ledford married Ledford in December 2017.  Mrs. Ledford previously worked as an assistant to Mr. Ledford in connection with his purported debt portfolio business.

**OTHER ENTITIES**

21.     Centurion Capital Corporation ("Centurion") is a Texas corporation with its principal place of business in Colleyville, Texas.  Centurion is owned by SBL Holdings, LLC, which is controlled by a Ledford family member.  Centurion sold purported investments in consumer debt portfolios at the direction of Ledford.

22.     GCR CBL CP I, LLC ("GCR CBL I") is a Delaware limited liability company with its principal place of business in Towson, Maryland.  GCR CBL I is controlled by Merrill, and GCR CBL I sold investments to investors in connection with the purported purchase of debt portfolios for investment purposes.

23.     GCR CBL CP III, LLC ("GCR CBL III") is a Delaware limited liability company with its principal place of business in Towson, Maryland. GCR CBL III is controlled by Merrill, and GCR CBL III sold investments to investors in connection with the purported purchase of debt portfolios for investment purposes.

24.     GCR Mercer Holdings, LLC ("GCR Mercer") is a Delaware limited liability company with its principal place of business in Towson, Maryland. GCR Mercer is owned and/or controlled by Merrill, and GCR Mercer sold investments to investors in connection with the purported purchase of debt portfolios for investment purposes.

**FACTS**

**I.    MERRILL, LEDFORD, AND ENTITY DEFENDANTS FRAUDULENTLY OFFERED AND SOLD INVESTMENTS RELATING TO PORTFOLIOS OF CONSUMER DEBT**

**A.    Structure of Defendants' Operations**

25.     Since at least 2013, Merrill and Ledford have worked together to offer and sell purported investments in consumer debt portfolios. During this time, on occasion, they purchased, serviced, and sold a limited amount of actual consumer debt. These activities were dwarfed by the fraudulent scheme described herein. Indeed, they often used the actual debt information as part of their scheme to deceive and defraud investors.

26.     Consumer debt of the type relevant to this matter—generally auto debt, credit card debt, and student loan debt—is often sold in portfolios comprised of groups of thousands of individual debtors' accounts. The portfolios are typically denominated by the principal, or face, value amount—the amount of outstanding debt collectively owed by the individual debtors comprising the portfolio. Thus, a portfolio containing $100 million of outstanding debt owed by the individual debtors would be referred to as a "$100 million" portfolio.

JA60

27.     Typically, debt portfolios are sold for a fraction of the face value.  Thus, a $100 million portfolio might be acquired for a few million dollars. The price could depend on numerous factors, including the issuer, type of debt, age of the accounts, whether the debt is secured, or the location of the debtors.

28.     Debt portfolios are often documented in electronic spreadsheets or database files containing thousands of entries with relevant information for each individual debt, including, for example, the identity of debtor and contact information, the type of debt, the amount owed, and the date the debt was acquired.

29.     Merrill and Ledford maintained separate entities, and divided duties relating to the purported business.  The two used this network of entities to give an air of legitimacy to their scheme.

30.     Merrill and Ledford solicited and received money from individual investors, as well as investment funds and special purpose vehicles organized by investors, to make investments related to these purported debt portfolios.  While Merrill and Ledford worked separately at times, they often both worked on the same investments, and relied on each other for documentation, support, introductions to investors, and raising sufficient funds to keep the fraudulent scheme ongoing.

31.     Ledford maintained a network of at least 20 entities, including his own CPA firm, but generally handled the operational aspects of the business through two entities, DeVille and RW Financial, which took in investor money and participated in some limited, actual debt acquisition, resale, and collections activity.  These entities employed individuals to evaluate debt portfolios for purchase, as well as persons who operated debt collection telephone banks, handled human resources, payroll, and other operational duties.

JA61

32.     Merrill operated without much staff and tended to focus on raising money for the scheme, operating mainly through GCR and/or Delmarva.  While Ledford often interacted with investors, he tended to rely on Merrill to find new investors.  Merrill generally negotiated the framework for investments, with Ledford's approval.

33.     Merrill often communicated with investors, including in the emails described herein, through his GCR email address.  Ledford often communicated with investors, including in the emails described herein, through his RW Financial email address.

34.     As a general matter, Ledford, assisted by Jezierski, created the fraudulent documentation and paperwork required to maintain the scheme, including due diligence documents that purportedly summarized the investments.  These usually took the form of asset purchase overviews, summarizing the debt portfolio and its expected returns, and spreadsheets with projected recoveries.  Ledford also created, in the name of various entities controlled by Defendants, documents including purchase agreements, collection reports, and profits projections containing many material misrepresentations.  Ledford also oversaw wire transfer remittances of purported collection amounts, much of which actually constituted Ponzi-like payments.

**B.     Structure of the Securities Offered and Sold by Defendants**

35.     In perpetrating their fraud, Merrill, Ledford, and Entity Defendants used four basic structures for the investments in debt portfolios they offered and sold:  (1) "Investor Agreements," mainly sold to individual investors; (2) "Agreements Concerning Acquisition of Portfolios," or similarly structured agreements; (3) investments structured as credit facilities or promissory notes; and (4) unit interests in limited liability companies.

36.     Typically, GCR or Delmarva was the counterparty on Investor Agreements, which Merrill signed as "Managing Member" or "Member" of the entity.  They typically represented that, upon an investment of money, GCR or Delmarva would "partake in the

10

business of buying, selling, and recovering" on debt portfolios for the investor. Multiple investors purportedly could own an interest in the same portfolio, and investors were led to believe that their "money rides along side" Merrill's and other investors' money.

37.     Merrill referred to these investments as being part of a "fund" or a "pool of dollars" from which purchases of debt portfolios would be made. While returns could be fixed or variable based on purported portfolio sales and/or collections amounts, the Investor Agreements made clear that investors would not "be involved in any day to day or long term decision making" for GCR or Delmarva, and GCR or Delmarva would "use its best reasonable efforts to produce a profit" for the investor. The Merrill entity's compensation was generally tied to investor returns, providing a stated percentage for purported collection costs and/or allowing that the Merrill entity would share in profits above a specified percentage or hurdle.

38.     Other investors entered into Agreements Concerning Acquisition of Portfolios. Under the terms of these investment contracts, investors contributed money toward the purported purchase of all or a portion of a debt portfolio, with the remainder to be funded by other investors or Defendants. An entity controlled by Ledford or Merrill—usually GCR, Rhino, or DeVille—was the counterparty on these contracts. The agreements provided that the Merrill or Ledford entity would hold title to the portfolio in trust for the investors and would attempt to recover money for investors by selling the portfolio or collecting on the underlying debt, as set forth in the specific agreement.

39.     These agreements required the Merrill or Ledford entity to "use [its] best reasonable efforts to produce a profit" for investors, and stated that investors would not be "involved in any day to day or long term decision making" for the entity. Returns were typically variable, and depended on purported collections (net a fee paid to the entity based on purported

JA63

gross collections) or resale results. Many of these agreements provided that the Defendant counterparty was entitled to an additional percentage of profits after a specified threshold.

40.     A few investment funds structured their investments as credit facilities with promissory notes. GCR, Delmarva, a Merrill entity, and a Ledford entity were counterparties under these agreements and Merrill and Ledford signed on behalf of their respective entities as CEO. Under this structure, investors provided money for the purported purchase of either all or a portion of debt portfolios, which Merrill and Ledford represented they would either collect on or resell. Although structured slightly different in each case, the documentation typically stated that investors would receive a fixed return, ranging from 12-15%, and split the remaining profits with the Merrill and Ledford entities.

41.     Investors extending credit, in the form of cash infusions to Defendants' businesses (in truth, the ongoing fraud) were motivated primarily by profit. Indeed, when soliciting investment and thereafter, Merrill and Ledford repeatedly discussed with investors how much money they had made and would make by investing.

42.     Finally, certain investors invested through special purpose vehicles, structured as limited liability companies. Merrill entered into these agreements himself, or on behalf of the various entities he managed and controlled. Merrill represented that these entities would acquire debt portfolios that DeVille would collect on.

43.     These investments were structured such that a special purpose vehicle ("SPV") was owned 50% by GCR or Merrill and 50% by the investors. Investors typically paid into the SPV half the price of a debt portfolio in exchange for 5,000 Class B units of the SPV. Merrill or GCR, depending on the SPV, owned 5,000 Class A units of the SPV. As Class B holders, investors were entitled to receive a 14% return on contributed capital and, after an equal

12

JA64

distribution to GCR as Class A holders, pro rata distribution of profits between investors and GCR.

44.     Again, the SPVs' operating agreements typically gave Merrill "full and exclusive discretion" to "manage and control" the SPVs and stated that Merrill would, with certain limited exceptions, "make all decisions affecting the business and assets" of the SPVs.

45.     Regardless of how the transaction was structured, investors provided Defendants with money in connection with their investments.

46.     Merrill, Ledford, and the Entity Defendants then pooled this money with that of other investors, commingling investors' money in common bank accounts and using such pooled funds to repay previous investors in a Ponzi-like fashion.

47.     Merrill, Ledford, and the Entity Defendants typically structured these fraudulent investments such that the fictitious profits from collections on or resale of debt portfolios were to be split between the investor and the Entity Defendant that was the counterparty to the investment contract.  For example, certain investors who entered into investment contracts with Defendant GCR were promised a fixed rate of return up to a specified percentage, with profits above that percentage either retained by GCR or shared between the investors and GCR.

48.     Investors expected—based on Merrill's, Ledford's, and the Entity Defendants' representations, in Merrill's and Ledford's email communications with investors, and in agreements in which Entity Defendants were counterparties—that their profits would be derived solely from Merrill's, Ledford's, and the Entity Defendants' efforts.

49.      Investors played no role in Defendants' day-to-day operations.  Rather, investors relied on Merrill and Ledford to select debt portfolios and apply their supposed expertise to collect on or resell them in order to make a profit.

**C.    Defendants Made Material Misrepresentations and Omissions and Engaged in Deceptive Conduct**

    **1.    Overall Structure of the Fraudulent Scheme**

50.    To induce investment, Merrill, and GCR by and through Merrill, often provided potential investors with a presentation or similar documentation describing GCR as being in the business of buying and selling consumer debt portfolios, representing that GCR used "proprietary quantitative analytical tools" to evaluate prospective portfolio purchases, and after acquiring debt portfolios, repackaged them for collection and resale "as quickly as possible to maximize profit." All of these statements describing GCR's business operations were false because, since at least 2014, GCR has not been in the business of buying and selling consumer debt.

51.    The presentations also advertised projections as to how investors' money would be spent and returned, including offering to some investors 100% of net collections up to 25% of the principal investment annually, with profits over 25% split 50/50 with GCR up to 40% annually, and profits 41% and over split 80/20 between GCR and the investor. These representations were false because investors often were repaid, if at all, with their own or other investors' money, and not with collections from the debt portfolios in which they thought they had invested.

52.    To induce more sophisticated investors to invest, Merrill provided background "due diligence" documents created by Ledford and/or Jezierski that provided a purported assessment of the portfolio they proposed to purchase and explained why it would be a good investment. These "due diligence" documents misrepresented that the investor's money would be used to purchase a specific portfolio at an advertised price, when in reality, it was used to enrich Defendants, and to pay existing investors.

53.    In offering and selling investments in debt portfolios, Merrill and Ledford made the following misrepresentations, among others:

    a.  False statements during the "due diligence" phase, including at least one occasion in which Ledford created and Merrill supplied to investors falsified tax documents that purported to show that GCR was profitable;

    b.  False statements that Merrill, Ledford, or their affiliates had purchased a debt portfolio when they had not;

    c.  False statements inflating the price paid for a particular debt portfolio;

    d.  "Double selling" overlapping interests in the same debt portfolio; and

    e.  Misrepresentations that payments to investors came from money collected from debt portfolios, when, in reality, such money was typically provided by another investor.

54.    To make it seem as though they genuinely purchased a debt portfolio as promised, Merrill and Ledford fabricated and distributed to investors fake purchase and sale agreements, some of which included the forged signature of an actual executive of a debt issuer, and fake wire transfer and confirmation documents.

55.    Once an investor sent money for investment, Merrill and Ledford wired it throughout their web of Entity Defendants and other affiliates, typically using the money to repay investors and to enrich themselves.

56.    After an investment was made, Merrill and Ledford, with Jezierski's assistance, frequently provided investors with collection reports that purported to show, compared to projections, amounts collected each month on the debt for each portfolio.  These reports were

JA67

false.  In some instances, Merrill and Ledford also falsely reported on the timing and profit associated with the purported (but in reality fictitious) resale of a debt portfolio.

57.    Ledford and Jezierski fabricated debt portfolios that they used to stand in the place of the actual, unpurchased portfolios.  To do this, they combined portions of previously purchased (and, at times, already collected on) debtor accounts to manufacture a portfolio with approximately the same amount of underlying debt as the portfolio from which investors expected their profits.

58.    Ledford and Jezierski created reports that were sent to investors that purported to show projected collections on a specific debt portfolio, where that portfolio did not exist.

59.    After claiming to have purchased a debt portfolio, Ledford and Jezierski fabricated collections reports that presented false collections activity.  An Entity Defendant then sent or caused to be sent the represented amount to the investor, often minus a fee for Merrill's and Ledford's supposed efforts.

60.    Of course, because this was a fraud, these payments consisted of other investors' money and, in some cases, the investor's own money, i.e., money that investors sent to Entity Defendants was sometimes funneled back to the same investor as purported profits on an earlier investment.

61.    Each Entity Defendant made Ponzi-like payments to investors, failing to disclose that the payments were funded from investor contributions—not profits from the consumer debt portfolios.

62.    This distribution of fake collection reports and corresponding payments of purported profits was designed to deceive investors into thinking their investments were legitimate.

JA68

63.     Merrill, Ledford, and Jezierski each knew, or were reckless in not knowing, that his activities were deceptive and part of the fraudulent scheme.

64.     Defendants used Debtmaster, a debt collection software program, to manage their limited, actual debt portfolios, tracking collections activity on, and remittances owed investors related to, those portfolios.

65.     In late 2017, Jezierski recommended to Ledford that they set up a parallel Debtmaster program to manage the purported debt portfolios underlying Defendants' fraudulent scheme, suggesting they "[c]ould even set it up under a random company name just to be clean." Ledford replied, "That's an excellent idea!"

66.     Jezierski later confirmed to Ledford that he had set up the new program under the company name "DVAM."  Jezierski asked Ledford to provide any data he wanted entered into the new program, including any payments that needed to be posted, and "then we can use this system of record going forward as a parallel to the DeVille system."

67.     Ledford agreed that they would fund the costs of the system through DeVille. Jezierski thereafter emailed Ledford, suggesting that they "setup DVAM, LLC (whatever we want to call it) to manage these transactions and deposits . . . we can deposit a sum and then schedule out the remits each month" so that "[t]hen we never tie anything back to our general/main accounts."

68.     Ledford asked, "Is there anyone else aware of this project?"  Jezierski replied, "Nope."

JA69

### 2.    Examples of Fraud Perpetrated on Specific Investors

### a.    Individual A

69.    Since 2015, Merrill and Ledford have raised funds from more than 200

individuals. One individual investor's ("Individual A") experience is illustrative of Defendants'

deception of individual investors.

70.    Merrill was introduced to Individual A by an existing investor, Individual B.

71.    Individual B is himself a victim of the fraudulent scheme. He invested

approximately $3 million and has continued to "reinvest" what he has been told are his "profits,"

and is now owed approximately $5 million. However, none of this money has been invested as

represented by Defendants.

72.    Individual A executed an Investor Agreement stating, among other things, that

GCR would purchase debt portfolios for Individual A, which would be managed at the sole

discretion of GCR and its management, and GCR would use best efforts to produce a profit for

Individual A. The agreement contained a signature line for Merrill as the Managing Member of

GCR.

73.    Individual A initially invested $500,000 by wiring money to Delmarva. Merrill

provided Individual A with a document that reflected that Merrill had used Individual A's money

to invest in two specific debt portfolios. But Merrill knew that was false. The money was not

used to purchase debt portfolios. Instead, Merrill, through Delmarva, used over $400,000 of

Individual A's money to make payments to previous investors, and used over $60,000 to pay

credit card debt and to make payments to Merrill's relatives.

74.    A few weeks later, Merrill asked Individual A if he was interested in investing in

two additional debt portfolios. Individual A agreed to invest another $500,000, and wired the

money to Delmarva.

JA70

75.    Again, the money was not used to purchase any debt portfolios.  Instead, Delmarva, by and through Merrill, wired $400,000 to a luxury sports car dealership for the initial payment on a 2014 Pagani Huayra Diablo (a $2 million sports car acquired by Merrill), made payments to existing investors totaling $54,000, and paid approximately $20,000 in credit card debt.

76.    This cycle repeated, with Individual A again investing hundreds of thousands of dollars based on false representations of profits, and Merrill, and Delmarva by and through Merrill, again using Individual A's money to repay investors and for personal use, including spending tens of thousands of dollars of Individual A's money on cars, jewelry, and $100,000 on a private fitness club membership near Merrill's Naples, Florida home.

77.    In total, Defendants have obtained $1.8 million from Individual A.  Individual A's investments were procured through material misrepresentations and omissions and deceptive conduct.  Defendants obtained more than $90 million from all individual investors based on conduct similar to that described herein.

**b.    The Dallas Group**

78.    Since late 2017, Merrill and Ledford, aided by Jezierski, defrauded an investment adviser and associated funds located in Dallas, Texas (the "Dallas Group") of approximately $30 million.  The Dallas Group invested through a credit facility/note structure.

79.    The Dallas Group requested heightened levels of diligence and access.  Therefore, Merrill and Ledford needed to use additional means of deception—creating fake debt portfolios for purchase, creating fake companies to imitate real companies, forging documents, and creating fake collection reports.

80.    In December 2017, Merrill emailed the Dallas Group regarding investing in a $316 million auto loan debt portfolio being sold by Santander Consumer USA Inc.

19

JA71

("Santander").  Ledford drafted an email to Merrill stating that Santander had contacted Merrill and Ledford directly and offered to sell the portfolio for a specific purchase price if they agreed to close in under two weeks.  Merrill and Ledford knew all of this was false.  Merrill copied and pasted the text of Ledford's email to his associate, who then used it to pitch to the Dallas Group.

81.    In reality, Santander was publicly marketing this debt portfolio through a debt broker.  When the Dallas Group noticed this and inquired, Merrill emailed Ledford, asking "What do I say[?]"  In the meantime, one of Merrill's associates replied to the Dallas Group, stating that Merrill's company was in the final bid group.  Merrill forwarded this reply to Ledford with the message "Dodged bullet."

82.    The next day, Merrill emailed the Dallas Group and represented that his group was awarded the bid to purchase the debt portfolio from Santander.  This was false and misleading.  Santander did not sell the $316 million portfolio to anyone, let alone Defendants, nor did it sell any portfolio to Merrill or GCR during this time frame.

83.    In the course of negotiating the Dallas Group's investment, Merrill created a new special purpose vehicle, GCR Mercer.  Merrill controlled GCR Mercer, but the Dallas Group had the right to inspect GCR Mercer's records, potentially allowing the Dallas Group to trace the flow of their money that was supposed to be used in the first instance to purchase a debt portfolio directly from Santander.

84.    Therefore, to aid their deception, Ledford and Jezierski created a new entity and bank account designed to mimic the real Santander.  Because of its full name, "Santander Consumer USA," Santander is often referred to in the industry as "SCUSA."

85.    On or about December 20, 2017, Ledford and Jezierski formed a new entity, "SCUSA Financial, Inc.," a Texas corporation with Jezierski serving as the sole director and

JA72

President.  This "Fake SCUSA" then opened a bank account at the same bank where the real Santander has accounts.  Jezierski is the sole signatory on the Fake SCUSA account.

86.     Ledford prepared a forged purchase and sale agreement bearing the signature of Santander's CFO, as well as a notary's signature.  No one from Santander signed an agreement to sell the $316 million file (nor was it notarized).  Instead, the signatures had been copied and pasted from a previous Santander agreement.  Merrill countersigned the forged agreement and sent it on to the Dallas Group.

87.     The forged purchase agreement also contained wire instructions as to where GCR Mercer should send the money to complete the purchase.  The agreement made it appear as though GCR Mercer would wire the money to the real Santander, however, the instructions actually directed the transfer to Fake SCUSA's account, maintained by Jezierski.

88.     After Merrill wired his portion of the purported co-investment, $1,579,585.48, into GCR Mercer's account, the Dallas Group wired approximately $14 million to GCR Mercer to fund its portion of the investment.

89.     The Dallas Group's money was not used to purchase a $316 million portfolio from Santander.  Instead, the next day, consistent with the wire instructions in the fake agreement, Merrill-controlled GCR Mercer wired the money to the account of Fake SCUSA— creating the wire trail necessary to make it appear that a genuine transaction had occurred.

90.     The same day that Dallas Group's money arrived in the Fake SCUSA bank account, Ledford emailed wiring instructions to Jezierski for disbursing funds out of the account. Fake SCUSA wired nearly $8 million to Defendant DeVille, over $5 million to Defendant RW Financial, and over $2.5 million to Joseph Finance Company (all Ledford entities).  Ledford used a portion of the money transferred to DeVille to kickback $50,000 to CRJ Holdings, Jezierski's

entity, and to return $1,579,585.48 to Delmarva—the precise amount Merrill purportedly had "co-invested" with the Dallas Group to purchase the Santander debt portfolio.

91.    Joseph Finance Company sent the entire $2.5 million it received to Ledford's personal bank account.  Defendants used the remaining money wired to DeVille and RW Financial, together with other investors' money, to pay existing investors, to make transfers to personal accounts, or for Ledford's personal use.

92.    As part of their investment agreement, Merrill, GCR as servicer, and DeVille, as subservicer, agreed to provide to the Dallas Group reports detailing collections made from individual debtors from the $316 million Santander debt portfolio.  To sidestep the impossibility of providing the Dallas Group with collection reports from a debt portfolio Defendants had never purchased, Ledford directed the creation of a fabricated debt portfolio.

93.    Ledford asked a RW Financial employee to use four other Santander files to create a debt portfolio with approximately the same number of accounts and principal balance as the portfolio in which the Dallas Group purportedly had invested.  Jezierski assisted by making sure that certain older accounts were swapped out for newer accounts to avoid revealing that the portfolio had been cobbled together from old debt files.

94.    Beginning in February 2018, Jezierski provided Ledford trust reports for the Dallas Group's investments that purported to show collection activity based on the fabricated debt portfolio they had created.  The collection activity reflected in the reports also appears to have been fabricated, as no $316 million debt file was actually acquired.  Jezierski provided these reports to a Merrill associate, who forwarded them to the Dallas Group.  GCR Mercer, using money it obtained from DeVille, paid the Dallas Group the amounts listed in the reports as a way to further mask the fraud and continue the relationship.

JA74

95.    Over the next several months, the Dallas Group invested almost $15 million in three more deals.  While Ledford did purchase some smaller debt files, none of the Defendants ever purchased anything close to what Merrill told the Dallas Group, using documents and information provided by Ledford, that GCR Mercer had acquired for its investments, and never for the purchase prices that Merrill represented.

96.    For each repeated investment by the Dallas Group, Defendants' pattern of fraudulent conduct was similar, including using forged agreements memorializing nonexistent purchases from debt issuers, creating a new entity to mimic a genuine entity, cobbling together fabricated debt portfolios, and largely misappropriating the Dallas Group's money to pay existing investors and to fund purchases of luxury cars, a boat, and a vacation home in Florida.

97.    In connection with the creation of a new entity, NLEX, to mimic National Loan Exchange, Inc., an established debt broker with the industry-known acronym NLEX, Jezierski suggested to Ledford:  "As we open these companies I had an idea.  Can I rent a virtual space that handles mail, phone number, etc. that we can use as the incorporation address on all of these companies?  It will be cleaner, and we can use it to kind of divert away from ourselves."

98.    After Ledford agreed that Jezierski's suggestion was a "good idea," Jezierski later reported to Ledford that the task was done and that he had opened the virtual space under one of his (Jezierski's) company's names.

99.    The Dallas Group has invested at least $30 million, and has received back only approximately $4.6 million, principally sourced from other investors' money.  The Dallas Group's investments were procured through material misrepresentations and omissions and deceptive conduct.

23

JA75

       c.      **The Boulder Group**

100.    Since 2014, Merrill and Ledford have defrauded a group of individuals, investment funds, and entities based in Boulder, Colorado (collectively, the "Boulder Group") of approximately $116 million by misrepresenting, among other things, the nature of the investments being made, the use of the invested money, and the source of supposed profits returned to it.

101.    Boulder first invested primarily through investment contracts with GCR, which Merrill signed as managing member of GCR.  Later, the Boulder Group entered into investment contracts with DeVille, which Ledford signed as CEO of DeVille.

102.    The entities within the Boulder Group often co-invested in the same portfolios of debt, and GCR, DeVille, and Centurion provided separate agreements for each entity, documenting their acquisitions of a percentage of the overall portfolio.

103.    In Investor Agreements that the Boulder Group entered into with GCR, GCR promised to "partake in the business of buying, selling, and recovering consumer debt portfolios" and agreed it would "identify and purchase such portfolios for Investor."  According to the agreement, the debt portfolios "shall be managed at the sole discretion of [GCR] and its management," which would "use its best reasonable efforts to produce a profit for the Investor."

104.    Similarly, in an Agreement Concerning Acquisition of Portfolios, which the Boulder Group later entered into with DeVille, DeVille agreed to take title to any debt portfolios acquired, hold them in trust for the investors, and use its "best efforts to sell the Portfolio to unrelated, unaffiliated third parties within 90 days from the execution of this Agreement."  Multiple Boulder Group investors invested in these debt portfolios, each taking a specified percentage interest in the portfolio.  In this agreement, DeVille acknowledged that it had a "fiduciary obligation to obtain the best price for the Portfolio" and to "use its best reasonable

efforts to produce a profit" for the Boulder Group.  The agreement further provided that the Boulder Group would not "be involved in any day to day or long term decision making" of DeVille.

105.    In early interactions with the Boulder Group, Ledford fabricated documents for Merrill to respond to the Boulder Group's due diligence requests.  The Boulder Group requested a CPA letter, averring that Merrill's income taxes had been filed properly, and a copy of GCR's Schedule C, the form used by a sole proprietorship or single-member LLC to report its profits or losses to the IRS.

106.    Merrill suggested that Ledford "use your girl" to write the CPA letter because a letter coming from Ledford, himself a CPA, might create a "snag."  Ledford thereafter emailed to Merrill a letter purportedly written by a female employee of Ledford's accounting firm ("CPA Employee") to attest that Merrill timely filed his income tax returns and had no outstanding tax issues.

107.    Merrill emailed to Ledford GCR's Schedule C, showing an almost $200,000 loss for GCR in 2012, with the message that the form "needs much love and adjusting. ;)"  Ledford thereafter sent to Merrill an altered Schedule C, showing GCR made a profit of approximately $100,000 in 2012.  Merrill responded, "Not sure how you did but looks good to me."  Ledford replied, "As mentioned, not sure how we support the details.  Hopefully, they will not try to contact [CPA Employee] or need further information."

108.    Merrill sent, or directed the sending of, the fabricated CPA Letter and fake Schedule C to the Boulder Group.

109.    Merrill and Ledford have made numerous other misrepresentations to the Boulder Group, including misrepresenting how its money was being used, the price at which certain debt

portfolios were being acquired, and failing to disclose that certain portfolios were acquired from related entities.

110.    For example, on September 16, 2015, Ledford emailed Merrill about a purported $17.5 million Credit Union file with a purchase price of approximately $1.2 million, proposing to buy and resell it within 60-90 days, and offered to split the purchase price three ways among Merrill, Ledford, and the Boulder Group.  Merrill forwarded this message to the Boulder Group.

111.    Ledford provided to the Boulder Group a copy of the purported purchase agreement whereby DeVille, Ledford's company, acquired the $17.5 million Credit Union file, from Vaquero, another entity that Ledford controlled.  At the time, Vaquero did not even exist. It was not until a few weeks later that Ledford created it as a shell entity under his control. Neither Ledford nor Merrill told the Boulder Group that Vaquero was a related entity that Ledford would be creating.

112.    Ledford provided the two different Boulder Group investors and Delmarva, Merrill's company, with Agreements Concerning Acquisition of Portfolios, pursuant to which each investor would contribute approximately $300,000 to the purchase price of the $17.5 million Credit Union debt portfolio in exchange for a 25% stake in the profits upon the portfolio's resale.  DeVille agreed to take title to the file and use its best efforts to resell it to make a profit for all investors, including the Boulder Group investors.

113.    The Boulder Group thereafter sent two wires to DeVille, approximately $300,000 each, to go towards the purchase price of the $17.5 million Credit Union debt portfolio.  Neither Merrill, Delmarva, nor any other of Merrill's entities made a similar wire or deposit.  Moreover, DeVille did not pay Vaquero the $1.2 million purchase price as represented to the Boulder Group.

114.    Instead, DeVille sent about half of the approximately $600,000 it had obtained from the Boulder Group to Ledford's personal account, and used nearly all of the remainder to pay existing investors.

115.    Similarly, in early 2016, Ledford offered to the Boulder Group investments in two debt files that he purportedly planned to acquire from third parties, for approximately $2.8 million and approximately $1.5 million, and then resell.

116.    Instead of acquiring any portfolios from third parties, Ledford directed the fabrication of two debt portfolios from debt files DeVille already owned.  Ledford sent the Boulder Group spreadsheets containing the accounts for the two purportedly newly purchased debt portfolios, stating that "both files look great" and that he was "very confident we can get the sales prices I projected in the write-ups."

117.    The Boulder Group thereafter transferred $900,000 to DeVille.  DeVille did not use the money to purchase any debt portfolios.  Instead, it wired approximately half to Ledford's personal account.  DeVille then used the remainder to pay existing investors, including nearly $100,000 to the Boulder Group, using the Group's own funds to pay purported profits from its prior investments.

118.    In February 2017, Ledford suggested to the Boulder Group that it invest through Centurion, a new company purportedly run by Ledford's family member.  In reality, Ledford controlled Centurion for purposes of its interactions with the Boulder Group.

119.    The Boulder Group has purchased a number of investments from Centurion.  In each case, the information regarding the investment came from Ledford.  Similarly, money used to pay the Boulder Group's purported profits from its investments with Centurion came principally from other investors, including the prior investments made by the Boulder Group.

JA79

120.    In total, the Boulder Group has invested approximately $116 million with Merrill and Ledford and their affiliated entities.  Of that amount, approximately $92.8 million has been repaid to the Boulder Group in the form of purported profits or redemptions that almost entirely consisted of Ponzi-like payments of monies invested by the Boulder Group or other investors. The Boulder Group's investments were procured through material misrepresentations and omissions and deceptive conduct.

> **d.    The New Jersey Group**

121.    Starting in 2017, Merrill and Ledford obtained nearly $6.1 million over the course of three investments made by an investment partnership based in New Jersey (the "New Jersey Group").

122.    As part of Merrill's efforts to convince the New Jersey Group to invest with GCR, in March 2017, a Merrill associate, with Merrill copied, emailed to the New Jersey Group monthly collection reports that Ledford had created, which falsely stated that DeVille had collected more than $1.2 million from a portion of its portfolios in February 2017.

123.    In November 2017, Merrill solicited the New Jersey Group's investment in connection with the purported acquisition of a $63 million Chrysler debt portfolio, with a purported purchase price of approximately $3.7 million. This portfolio was also fraudulently marketed to the Chicago Group, as discussed below.

124.    In reality, DeVille acquired a $60.7 million Chrysler portfolio for just over $1 million.  Merrill thus misrepresented to the New Jersey Group the face value and price of the debt portfolio, as well as failing to disclose that collections from the same portfolio were the basis for another investor's investment.

125.    The New Jersey Group entered into an investment contract with Rhino Group, and Merrill signed as sole member of Rhino Group.  The New Jersey Group agreed to contribute

$2.5 million to acquire the purported debt portfolio, and Rhino Group agreed to contribute

approximately $1.2 million.  Pursuant to the agreement, Rhino Group would retain title to the file

and "attempt to recover funds in the portfolio . . . and … use its best reasonable efforts to

produce a profit for" the New Jersey Group.  The New Jersey Group would be paid a 10% return

on its investment and, after Rhino Group was paid a 10% return for its purported investment,

split pro-rata with Rhino Group any additional profits.  The agreement made clear that the New

Jersey Investors would not "be involved in any day to day or long-term decision making" for

Rhino Group.

     126.    On November 29, 2017, Merrill emailed the New Jersey Group a purported

contract between Santander (which issued and sold Chrysler auto loans) and Rhino Group for the

sale of the purported $63 million Chrysler debt portfolio.  Merrill knew this was false and that

this agreement was fabricated, as Santander did not sell Rhino Group any debt files between June

2015 and May 2018.

     127.    Attached to the same email, Merrill provided to the New Jersey Group a

document purporting to be a "Full Detail Wire Activity Report" for Rhino Group's supposed

PNC bank account ending -4776.  The document stated that, on November 29, 2017, Rhino

Group wired approximately $3.7 million to Santander's bank account to pay for the $63 million

Chrysler debt portfolio.  This document also was fabricated, as there is no Rhino Group PNC

bank account ending in -4776.  Moreover, no other Merrill (or Ledford) controlled entity wired

$3.7 million to Santander in this amount on that day.

     128.    On November 30, 2017, the New Jersey Group wired $2.5 million to Rhino

Capital.  Aside from the approximately $1 million DeVille paid Santander for the actual debt

portfolio, Ledford and Merrill together misappropriated the remainder for their personal benefit

and to repay other investors through Rhino, GCR, Delmarva, DeVille, RW Financial, and Ledford's accounting firm, Ledford & Associates.

129.    Merrill and Ledford employed similar fraudulent tactics in connection with at least two additional investments made by the New Jersey Group.

130.    In total, Defendants obtained approximately $6.1 million from the New Jersey Group, while making payments back to the New Jersey Group of approximately $1.7 million, principally sourced from the New Jersey Group's and other investors' money.  The New Jersey Group's investments were procured through material misrepresentations and omissions and deceptive conduct.

### e.    The Chicago Group

131.    Starting in August 2017, Merrill and Ledford obtained approximately $17.9 million from a group of investors from Chicago (the "Chicago Group").  The Chicago Group invested with Defendants through special purpose vehicles Defendants created and controlled.

132.    To induce investment, Merrill provided the Chicago Group with false collection reports similar to those he had provided the New Jersey Group, described above.

133.     In August 2017, DeVille purchased a debt portfolio from Santander, with a face value of approximately $170 million, for about $2.8 million.

134.    On August 11, 2017, Merrill emailed the Chicago Group regarding investment in a debt portfolio (the "$170M Debt File") being sold by Santander.  Merrill, forwarding documents he received from Ledford—altered only to reference GCR instead of DeVille— represented to the Chicago Group that the $170M Debt File had a total face value of $170,458,705.08 and a purchase price of a little over $10 million.

135.    Defendants did not disclose to the Chicago Group the debt portfolio's actual purchase price of approximately $2.8 million.

30

JA82

136.    The Chicago Group invested with Defendants through SPVs. Merrill created a number of SPVs, including GCR CBL I and GCR CBL III, each an SPV with Merrill as the manager. Merrill's duties as manager included managing the purchase of and collections on any acquired debt portfolios, as well as remitting money to the Chicago Group. GCR is the managing member of GCR CBL I, and Merrill is the managing member of GCR CBL III. The SPVs created as investment vehicles for the Chicago Group were managed exclusively by Merrill.

137.    For its August 2017 investment, the Chicago Group paid approximately $5 million to GCR CBL I and owned 5,000 of its Class B shares. GCR owned 5,000 Class A shares and purported to acquire the $170M Debt File for approximately $10 million. Per the investment agreement, as the holder of Class B units, the Chicago Group was to receive all net returns—after collection expenses, pursuant to a service agreement entered into between the SPVs and DeVille—until a 14% return on contributed capital had been met. Thereafter, all incremental returns were to be paid to GCR equal to the amount distributed to the Chicago Group and, once that occurred, all remaining returns were to be divided pro rata.

138.    On August 17, 2017, Ledford emailed Merrill, attaching what he represented was a signed purchase and sale agreement between GCR and Santander for the purchase of the $170M Debt File. Merrill later sent this agreement to the Chicago Group, though he knew the agreement was a fabrication. The agreement was false because Santander did not sell any debt portfolios to GCR between 2016 and May 2018.

139.    On August 24, 2017, Ledford emailed Merrill regarding the $170M Debt File and informed him that he (Ledford) was "working on the wire sheet now." About 40 minutes later, Ledford sent Merrill an email with the subject line "wire confirmation," attached to which was a

Microsoft Word document named "Treasury Management Client Support Notification 08232017." Ledford authored this document. The document contains a purported confirmation of an approximately $10 million debit from a GCR bank account and a corresponding credit to Santander's bank account. This document was false because no such transaction occurred and both Merrill and Ledford knew it.

140.    On August 25, 2017, the Chicago Group wired approximately $5 million to GCR CBL I's bank account.

141.    A few days later, Merrill transferred most of the approximately $5 million obtained from the Chicago Group to a GCR bank account. He then wired $3.2 million to DeVille.

142.    Merrill used the $1.8 million retained by GCR to purchase exotic cars, including a $950,000 2008 Bugatti Veyron, and a share of an airplane.

143.    Of the $3.2 million of the Chicago Group's money that was wired to DeVille, Ledford transferred $2.9 million to an RW Financial bank account, on which he drew a $2.5 million cashier's check, payable to himself. Ledford then wired the remaining funds in the RW Financial account to JBL Holdings, which funds were then transferred to his personal accounts, including an account held by Ledford's trust, or used for other personal expenditures.

144.    Similarly, in November 2017, Merrill and Ledford obtained an additional approximately $1.8 million from the Chicago Group in connection with Rhino Group's purported acquisition of a purported $63 million Chrysler debt portfolio, the same portfolio in which the New Jersey Group invested. To document this fake purchase, Merrill provided to the Chicago Group a fabricated wire confirmation and purchase agreement between Santander and Rhino.

JA84

145.    On November 30, 2017, the Chicago Group wired approximately $1.8 million to Rhino's bank account.  Along with the $2.5 million from that Rhino received from the New Jersey Group for its investment in the same purported $63 million Chrysler debt portfolio, Rhino transferred approximately $3.8 million to GCR, leaving approximately $500,000 in Rhino's account, which was used by Merrill to purchase a $100,000 cashier's check made out to himself and an approximately $375,000 cashier's check made out to a luxury automobile dealer.

146.    As for the money transferred to GCR, Merrill sent money to the mortgagee on his residence; repaid existing investors; transferred money to DeVille and to Delmarva, the latter of which was then spent at a boutique jewelry store.

147.    Of the money that Merrill transferred to DeVille, Ledford transferred money to his accounting firm, Ledford & Associates, his personal bank accounts, and to RW Financial, which used the money to repay investors.

148.    Merrill and Ledford employed similar fraudulent tactics in connection with at least one additional investment made by the Chicago Group in early 2018.

149.    In total, Defendants obtained approximately $17.9 million from the Chicago Group, while making payments back of approximately $6.5 million, principally using the Chicago Group's own and other investors' money.  The Chicago Group's investments were procured through material misrepresentations and omissions and deceptive conduct.

####     f.     The Bethesda Group

150.    Starting in March 2016, Defendants obtained at least $16.2 million from an entity, based in Bethesda, Maryland, that was formed to pool the funds of individuals seeking to invest with Merrill and his companies (the "Bethesda Group").  The Bethesda Group invested through a credit facility/note structure, repeatedly sending money to Defendants in connection with their purported acquisition of debt portfolios.

33

JA85

151.    On March 6, 2016, Merrill emailed the Bethesda Group documents he had received from Ledford that described two purported debt portfolios: a $19.9 million Alta Colleges debt portfolio (the "$19.9M Debt File") and a $17 million Lincoln Tech debt portfolio (the "$17M Debt File"). These documents represented that GCR would purchase both portfolios directly from the issuer. Merrill and Ledford knew this was not true.

152.    Merrill also sent the Bethesda Group a purchase agreement between GCR and Receivables Portfolio Interchange, Inc. ("RPI"), purportedly documenting GCR's purchase of the $19.9M Debt File from RPI. Defendants knew, and did not disclose to the Bethesda Group, that RPI was an affiliated entity, owned and/or controlled by Ledford.

153.    Ledford used RPI to pretend to sell debt to Merrill-controlled entities and defraud investors. Merrill knew that RPI did not actually acquire or own debt portfolios.

154.    On March 10, 2016, the Bethesda Group transferred $2 million to Delmarva to fund the purchase of the $19.9M Debt File. None of this $2 million was used to purchase the $19.9M Debt File.

155.    On March 21, 2016, the Bethesda Group wired another $1 million to Delmarva to fund the purchase of the $17M Debt File. Delmarva wired the money, plus what remained of the Bethesda Group's initial $2 million investment, to RPI, per the agreement, purportedly for purchase of the $17M Debt File.

156.    Merrill sent the Bethesda Group an email containing an image of a wire confirmation showing that Delmarva had sent RPI the money. However, the same day, RPI wired a little over a $1 million back to Delmarva, leaving a balance of $250,000 at RPI.

157.    Merrill used the money returned to Delmarva to repay other investors and on personal expenses. As to the money retained by RPI, approximately $225,000 was transferred to

34

JA86

entities under the control of Ledford, and $25,000 to his personal bank account.  None of the $1 million invested by the Bethesda Group was used to purchase the $17M Debt File by RPI, DeVille, or any other Ledford or Merrill controlled entity.

158.    Merrill represented to the Bethesda Group that it was the lone external beneficiary of returns to be generated from the $19.9M Debt File and $17M Debt File.  In fact, Ledford and Merrill sold the promise of returns to be generated from accounts underlying the $19.9M Debt File and the $17M Debt File each to at least three other groups of investors.

159.    In August 2016, the Bethesda Group informed Merrill that it would have approximately $930,000 available from investors for the purchase of a debt portfolio. Merrill then emailed Ledford that he "need[ed] another deal for $900k for [Bethesda Group] funds."

160.    Ledford responded by providing Merrill with a portfolio of credit card debt that already the subject of collections for the benefit of another party.

161.    On August 23, 2016, the Bethesda Group transferred $919,000 to Delmarva. Delmarva did not purchase any debt portfolios with the Bethesda Group's money.  Instead, Merrill spent these funds as follows:  $37,500 at a watch and jewelry boutique; nearly $50,000 on private air travel; more than $460,000 on exotic cars, including a 2014 Ferrari F12 Berlinetta; $100,000 to a Las Vegas casino; and the balance to pay commissions, credit card debt, and other investors.

162.    Merrill and Ledford employed similar fraudulent tactics in connection with several additional investments made by the Bethesda Group.  Merrill also "double sold" the same interests in at least seven deals to both the Bethesda Group and another investor.

163.    In total, the Bethesda Group has invested approximately $16.2 million, and has been paid back approximately $6.4 million, principally using the Bethesda Group's and other

JA87

investors' money.  The Bethesda Group's investments were procured through material

misrepresentations and omissions and deceptive conduct.

> **g.    The Virginia Group**

164.    Since at least early 2015, three Northern Virginia-based entities controlled by

members of a Virginia-based family (collectively, the "Virginia Group") invested a total of

approximately $52.8 million with Merrill and Ledford and their companies.

165.    The Virginia Group invested through purchase and sale agreements, purporting to

acquire debt portfolios from DeVille, and servicing agreements, whereby DeVille agreed to

service the debt they purportedly acquired and remit the collections, less a fee, to the Virginia

Group.

166.    The Executive Investment Manager at one of the Virginia Group's affiliated

companies managed the Virginia Group's investments with Merrill and Ledford.  The entities

within the Virginia Group often co-invested in the same portfolios of debt and were provided

separate agreements for each entity documenting its acquisition of a discrete portion of the

overall portfolio.

167.    Merrill represented that he was investing alongside the Virginia Group in at least

one debt portfolio when he did not do so.  Ledford, through DeVille and RW Financial,

misrepresented the source and content, or existence of, debt portfolios offered as investments to

the Virginia Group, and in other instances inflated their purported purchase prices.

168.    For example, on February 24, 2017, Ledford, using his RW Financial email

address, emailed the Virginia Group regarding a proposed investment in a portfolio of Chrysler

auto debt with a principal value of approximately $150 million, which DeVille would acquire for

approximately $9.23 million.   The Virginia Group agreed to fund half of the purported purchase

price and on March 3 and 6, 2017, wired a total of $4.58 million to DeVille. DeVille, by and through Ledford, did not use this money to purchase the debt portfolio as they had promised.

169.    In fact, Santander, which issues and sells Chrysler's auto loans, did not sell anyone a portfolio with a principal value of $150 million in all of 2017. Neither Merrill's nor Ledford's entities paid $9.23 million to anyone during the same timeframe.

170.    Similarly, in June 2017, Ledford, using his RW Financial email address, emailed the Virginia Group regarding "an excellent opportunity" to purchase a $125 million auto loan portfolio direct from Santander, for a purchase price of $7.1 million. Ledford provided to the Virginia Group an asset purchase overview, reflecting the purported portfolio's principal value of $125,714,285.57 (the "$125M Debt File").

171.    The Virginia Group agreed to invest and, on June 7, 2017, wired a total of $3.3 million to DeVille. DeVille did not use this money to purchase any debt portfolios.

172.    Santander did not sell to Defendants or anyone else a portfolio with a principal value of approximately $125 million at any time in 2017.

173.    In fact, Ledford had an RW Financial employee create the $125M Debt File on May 30, 2017, using accounts from a debt portfolio that DeVille had previously purchased from Santander. Ledford instructed this employee: "Please pull a random file ~$125,714,286 from the $355M Santander file we purchased."

174.    Merrill and Ledford employed similar fraudulent tactics in connection with several additional investments made by the Virginia Group, including offering and selling the Virginia Group the same interests in debt portfolios that were also sold to other investors.

JA89

175.    For example, in August 2017, Ledford offered to the Virginia Group an opportunity to invest in the $170M Debt File offered and sold as an investment to the Boulder Group and the Chicago Group, discussed *supra*.

176.    DeVille provided to the Virginia Group trust reports detailing the purported monthly collections on the debt portfolios in which the Virginia Group had invested. Rather than making payments to the Virginia Group from collections as the trust reports reflected, in many instances Merrill, through Delmarva, funded the remittances Ledford paid to the Virginia Group.

177.    For example, on March 11, 2015, Ledford emailed to the Virginia Group the trust reports for February's collections, which showed that DeVille owed a remittance of $73,958.75. That day, Merrill wired $73,958.75 from Delmarva to Ledford's Leddy Bear account. The next day, Ledford wired $73,958.75 from DeVille to the Virginia Group.

178.    In total, Defendants obtained approximately $52.8 million from the Virginia Group, while paying back $22.2 million in the form of purported collection remittances using the Virginia Group's and other investors' money. The Virginia Group's investments were procured through material misrepresentations and omissions and deceptive conduct.

**D.    The Scope of Defendants' Fraud**

179.    Individuals and entities have invested more than $345 million with Defendants based on the misrepresentations, omissions, and deceptive conduct alleged herein. Approximately $197 million has been repaid to investors, in the form of remittances on purported collections, purported profits from flips, interest payments, or redemptions. Thus, out of the $345 million initially invested, investors are still owed at least $148 million in principal.

180.    Approximately 30 entities affiliated with Defendants were involved in the fraud or received proceeds from the fraud. Those entities controlled over 55 different bank accounts.

181.    Defendants' fraudulent scheme continued until the filing of the SEC's complaint and the arrest of Merrill, Ledford, and Jezierski by the criminal authorities.

## II.    DEFENDANTS VIOLATED THE SECURITIES LAWS

182.    The investment agreements, agreements concerning acquisition of portfolio, credit facilities and promissory notes, LLC interests, and other investments offered and sold by Merrill, Ledford, and Entity Defendants (the "Securities") were securities within the meaning of the Securities Act and Exchange Act.

183.    The investments were all in a common enterprise run by Defendants, with the expectation of profits to be derived solely from the efforts of Defendants.  Investors played no role in management or operations of the businesses described herein.

184.    Merrill, Ledford, and Entity Defendants sold the Securities as investments and the purchasers of these instruments invested with the expectation of profit.

185.    Merrill, Ledford, and Entity Defendants sold the Securities to hundreds of individual members of the general public, including those individuals who pooled their money specifically to purchase the Securities.

186.    The Securities are not subject to any other regulatory scheme that significantly reduced the risks inherent in their purchase.

187.    Defendants engaged in the conduct described herein, including the offer and sale of the Securities, by use of the means or instruments of transportation or communication in interstate commerce, the instrumentalities of interstate commerce, and/or by use of the mails.

188.    Merrill—and GCR, Delmarva, and Rhino, by and through Merrill—knowingly made material untrue statements and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

JA91

189.    Ledford—and DeVille and RW Financial, by and through Ledford—knowingly made material untrue statements and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

190.    A reasonable investor would consider the misrepresented facts and omitted information—among other items, misrepresentations and omissions regarding the use of investors' money, including, among other things, using investors' money to pay existing investors and finance Merrill's and Ledford's extravagant lifestyles; the fabricated nature of certain debt portfolios; the fabricated bank wire transfer and confirmation documents; the false collection activity reports; and the sales of the same or overlapping interests in the same debt portfolio—important in deciding whether to purchase the Securities.

191.    The untrue statements of material fact and material omissions described herein were made in the offer or sale and in connection with the purchase or sale of securities.

192.    In connection with the conduct described herein, Defendants acted knowingly or recklessly.  Merrill, Ledford, and Entity Defendants knew or were reckless in not knowing that they were making material misrepresentations and omitting to state material facts necessary to make certain statements not misleading under the circumstances.

193.    Defendants obtained money or property by means of untrue statements of material fact and omissions of material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.  Investors sent money directly to Entity Defendants.  Merrill and Ledford took money for themselves, and Jezierski was paid a portion of the money that Defendants obtained through Fake SCUSA and Fake NLEX by wiring money to his entity CRJ Holdings.

194.    Defendants used devices, schemes, and artifices to defraud investors, and engaged in acts, transactions, practices, or courses of business that operated as a fraud or deceit upon investors.  In addition to the numerous misrepresentations discussed herein, among other things, Defendants created and funneled money through a web of shell entities to disguise sham transactions; fabricated debt portfolios; created fake collections reports, fake wire transfer records, and other falsified due diligence materials; and created companies designed to deceive investors into thinking their investment transactions were being conducted with other legitimate companies.  Merrill and Ledford directed the payment of, and GCR, Delmarva, Rhino, DeVille, and RW Financial each made, Ponzi-like payments, using investor money, to pay existing investors as purported profits and returns of principal.  Jezierski created a parallel set of books to track and hide Defendants' fraudulent scheme.

195.    Non-party entities owned or controlled by Merrill, Ledford, or Jezierski, including K.B. Merrill, GCR CBL I, GCR CBL II, GCR CBL III, GCR CBL IV, GCR Mercer, GCR HCP, FRG, Halo, JBL Holdings, JBL PC, JFC, Leddy Bear, Ledford & Associates, LP, NLEX, RW Capital, RW Credit, RW Debt, RW Fixed, SCUSA, Vaquero, and Centurion, among others, received funds procured through Defendants' fraudulent conduct.

## III.    RELIEF DEFENDANTS BENEFITED FROM THE FRAUD

196.    Both Mrs. Merrill and Mrs. Ledford benefited from their husbands' fraudulent scheme.

197.    Merrill transferred to Mrs. Merrill at least $104,000 that came from investors who were told they were investing in consumer debt portfolios.  Mrs. Merrill did not provide anything of value in exchange for these funds.

198.    Mrs. Merrill is either the owner or co-owner with Merrill of at least three houses purchased using money Merrill obtained from defrauded investors.  These houses include (1) a

Naples, Florida house, titled in the names of Merrill and Mrs. Merrill, which was purchased for $10.5 million and carries a $5 million mortgage; (2) an Easton, Maryland house, titled in the names of Merrill and Mrs. Merrill, which was purchased for $1.3 million and carries no mortgage; and (3) a Towson, Maryland house, titled in Mrs. Merrill's name, which was purchased for $350,000 and carries no mortgage. The money used to purchase these houses came from defrauded investors. Mrs. Merrill did not provide anything of value in exchange for any ownership interest in these houses.

199.    Mrs. Merrill also is in possession of numerous luxury items purchased using money obtained from defrauded investors, including but not limited to jewelry, handbags, wine, artwork, comic books and other collectibles, and electronics. Many of these items are located in the house where Mrs. Merrill is currently living and other properties owned by Merrill and/or Mrs. Merrill. Mrs. Merrill did not provide anything of value in exchange for these items.

200.    Ledford transferred to Mrs. Ledford at least $300,000 obtained from defrauded investors. Mrs. Ledford did not provide anything of value in exchange for these funds.

201.    Mrs. Ledford is in possession of numerous luxury items purchased using money from defrauded investors, including but not limited to jewelry, handbags, and artwork. Mrs. Ledford did not provide anything of value in exchange for these items.

202.    Mrs. Merrill and Mrs. Ledford received the money and other assets described herein as a result of Merrill's and Ledford's material misrepresentations, omissions, and other deceptive acts in connection with their offer and sale of the securities described herein.

203.    Neither Mrs. Merrill nor Mrs. Ledford provided money, goods, services, or anything else of value in exchange for the money or other assets transferred to them by Merrill and/or Ledford.

JA94

204.    These transfers were part, and in furtherance of, the securities law violations alleged herein.  Therefore, Mrs. Merrill and Mrs. Ledford have been unjustly enriched.

## FIRST CLAIM FOR RELIEF
### Violations of Section 17(a) of the Securities Act
### (Against All Defendants)

205.    The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 204 inclusive, as if they were fully set forth herein.

206.    As a result of the conduct alleged herein, Defendants, in the offer or sale of securities, directly or indirectly, by the use of the means or instruments of transportation or communication in interstate commerce, or the mails:

a.    knowingly or recklessly employed devices, schemes, or artifices to defraud;

b.    knowingly, recklessly, or negligently obtained money or property by means of any untrue statements of material fact, or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

c.    knowingly, recklessly, or negligently engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchasers of securities.

207.    By engaging in the foregoing conduct, Defendants violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

## SECOND CLAIM FOR RELIEF
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c) Thereunder
### (Against All Defendants)

208.    The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 204, inclusive, as if they were fully set forth herein.

43

JA95

209.    As a result of the conduct alleged herein, Defendants knowingly or recklessly, in connection with the purchase or sale of securities, directly or indirectly, by use of the means or instrumentality of interstate commerce or of the mails, or a facility of a national securities exchange:

    a.    employed devices, schemes, or artifices to defraud, and

    b.    engaged in acts, practices or courses of business which operated or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

210.    By engaging in the foregoing conduct, Defendants violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(a) and (c) thereunder, 17 C.F.R. § 240.10b-5(a) and (c).

<div align="center">

**THIRD CLAIM FOR RELIEF**
**Violations of Section 10(b) of the Exchange Act and Rule 10b-5(b) Thereunder**
**(Against Defendants Merrill, Ledford, and the Entity Defendants)**

</div>

211.    The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 204, inclusive, as if they were fully set forth herein.

212.    As a result of the conduct alleged herein, Defendants Merrill and Ledford and the Entity Defendants knowingly or recklessly, in connection with the purchase or sale of securities, directly or indirectly, by use of the means or instrumentality of interstate commerce or of the mails, or a facility of a national securities exchange made untrue statements of material fact, or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

213.    By engaging in the foregoing conduct, Defendants Merrill, Ledford, and Entity Defendants violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(b) thereunder, 17 C.F.R. § 240.10b-5(b).

**FOURTH CLAIM FOR RELIEF**
**Equitable Disgorgement of Ill-Gotten Funds**
**(Against Relief Defendants Amanda Merrill and Lalaine Ledford)**

214.    The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 204, inclusive, as if they were fully set forth herein.

215.    Relief Defendant Mrs. Merrill obtained funds and property as a result of the violations of the securities laws by Defendants Merrill and Ledford.

216.    Relief Defendant Mrs. Ledford obtained funds and property as a result of the violations of the securities laws by Defendants Merrill and Ledford.

217.    Relief Defendant Mrs. Merrill obtained the gains described above as part, and in furtherance of, the securities law violations alleged above, under circumstances where it is not just, equitable, or conscionable for her to retain them.

218.    Relief Defendant Mrs. Ledford obtained the gains described above as part, and in furtherance of, the securities law violations alleged above, under circumstances where it is not just, equitable, or conscionable for her to retain them.

219.    Relief Defendant Mrs. Merrill should be required to disgorge all ill-gotten gains which inured to her benefit under the equitable doctrines of disgorgement, unjust enrichment, and/or constructive trust.

220.    Relief Defendant Mrs. Ledford should be required to disgorge all ill-gotten gains which inured to her benefit under the equitable doctrines of disgorgement, unjust enrichment, and/or constructive trust.

JA97

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court enter a final judgment:

    a.    Permanently restraining and enjoining Defendants from violating Section 17(a) of the Securities Act, 15 U.S.C § 77q(a).

    b.    Permanently restraining and enjoining Defendants from violating Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(a) and (c) thereunder, 17 C.F.R § 240.10b-5(a) and (c);

    c.    Permanently restraining and enjoining Defendants Merrill, Ledford, and the Entity Defendants from violating Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(b) thereunder, 17 C.F.R § 240.10b-5(b);

    d.    Ordering Defendants to disgorge any and all ill-gotten gains derived from their unlawful conduct, together with prejudgment interest thereon;

    e.    Ordering Defendants to pay a civil penalty pursuant to Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u-1, and Section 20(d) of the Securities Act, 15 U.S.C. § 77t;

    f.    Ordering Relief Defendants Amanda Merrill and Lalaine Ledford to disgorge all ill-gotten gains to which they do not have legitimate claims that they received as a result of the conduct alleged in the Amended Complaint, together with prejudgment interest thereon;

    g.    Retaining jurisdiction of this action for purposes of enforcing any final judgment and orders; and

    h.    Granting such other and further relief as this Court may deem just and appropriate.

JA98

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Commission hereby

requests a trial by jury.

Dated:  November 6, 2018                    Respectfully submitted,

                                            _____
                                            Jennifer Chun Barry
                                            Mark R. Sylvester
                                            Julia C. Green
                                            Scott A. Thompson
                                            Norman P. Ostrove
                                            SECURITIES AND EXCHANGE COMMISSION
                                            1617 JFK Blvd., Suite 520
                                            Philadelphia, Pennsylvania  19103
                                            (215) 597-3100 (telephone)
                                            (215) 597-2740 (facsimile)
                                            barryj@sec.gov
                                            sylvesterm@sec.gov
                                            greenju@sec.gov

                                            *Attorneys for Plaintiff Securities and*
                                            *Exchange Commission*

JA99

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of November, 2018, I caused a true and correct copy

of the Amended Complaint with exhibit to be served upon the following parties in the manner set

forth below:

**Defendant Cameron R. Jezierski**
Joseph J. Aronica
Duane Morris LLP
505 9th Street, N.W. Suite 1000
Washington, D.C. 20004-2166
JJAronica@duanemorris.com
*Counsel for Defendant Cameron R. Jezierski*
**via ECF**

**Defendant Jay B. Ledford**
Jack Jamison
1509 Main St., #205
Dallas, TX 75201
jack@jackjamisonattorney.com
*Counsel for Defendant Jay B. Ledford*
**via ECF**

and

Joshua R. Treem
Brown Goldstein Levy LLP
120 E Baltimore St., Ste. 1700
Baltimore, MD 21202
jtreem@browngold.com
*Counsel for Defendant Jay B. Ledford*
**via ECF**

**Defendant Kevin B. Merrill**
Chesapeake Detention Facility, #1335278
401 East Madison Street
Baltimore, MD 21202
**via U.S. Mail**

**Defendant Delmarva Capital, LLC**
c/o Gregory S. Milligan, Receiver for Delmarva Capital, LLC

Brian Paul Waagner
Husch Blackwell LLP

JA100

750 17th St NW Ste 900
Washington, DC 20006
*Counsel for Receiver Gregory S. Milligan*
**via ECF**

and

Lynn H. Butler
Husch Blackwell LLP
111 Congress Ave., Ste. 1400
Austin, TX 78701
*Counsel for Receiver Gregory S. Milligan*
**via ECF**

**Defendant DeVille Asset Management LTD**
c/o Gregory S. Milligan, Receiver for DeVille Asset Management LTD

Brian Paul Waagner
Husch Blackwell LLP
750 17th St NW Ste 900
Washington, DC 20006
*Counsel for Receiver Gregory S. Milligan*
**via ECF**

and

Lynn H. Butler
Husch Blackwell LLP
111 Congress Ave., Ste. 1400
Austin, TX 78701
*Counsel for Receiver Gregory S. Milligan*
**via ECF**

**Defendant Global Credit Recovery, LLC**
c/o Gregory S. Milligan, Receiver for Global Credit Recovery, LLC

Brian Paul Waagner
Husch Blackwell LLP
750 17th St NW Ste 900
Washington, DC 20006
*Counsel for Receiver Gregory S. Milligan*
**via ECF**

and

Lynn H. Butler

JA101

Husch Blackwell LLP
111 Congress Ave., Ste. 1400
Austin, TX 78701
*Counsel for Receiver Gregory S. Milligan*
**via ECF**

### Defendant Riverwalk Financial Corporation

c/o Gregory S. Milligan, Receiver for Riverwalk Financial Corporation

Brian Paul Waagner
Husch Blackwell LLP
750 17th St NW Ste 900
Washington, DC 20006
*Counsel for Receiver Gregory S. Milligan*
**via ECF**

and

Lynn H. Butler
Husch Blackwell LLP
111 Congress Ave., Ste. 1400
Austin, TX 78701
*Counsel for Receiver Gregory S. Milligan*
**via ECF**

### Defendant Rhino Capital Group, LLC

c/o Gregory S. Milligan, Receiver for Riverwalk Financial Corporation

Brian Paul Waagner
Husch Blackwell LLP
750 17th St NW Ste 900
Washington, DC 20006
*Counsel for Receiver Gregory S. Milligan*
**via ECF**

and

Lynn H. Butler
Husch Blackwell LLP
111 Congress Ave., Ste. 1400
Austin, TX 78701
*Counsel for Receiver Gregory S. Milligan*
**via ECF**

### Defendant Rhino Capital Holdings, LLC

c/o Gregory S. Milligan, Receiver for Riverwalk Financial Corporation

Brian Paul Waagner
Husch Blackwell LLP
750 17th St NW Ste 900
Washington, DC 20006
*Counsel for Receiver Gregory S. Milligan*
**via ECF**

and

Lynn H. Butler
Husch Blackwell LLP
111 Congress Ave., Ste. 1400
Austin, TX 78701
*Counsel for Receiver Gregory S. Milligan*
**via ECF**

**<u>Intervenor Plaintiff United States of America</u>**
Joyce K. McDonald
Office of the United States Attorney
36 S Charles St., Fourth Floor
Baltimore, MD 21201
Joyce.McDonald@usdoj.gov
*Counsel for Intervenor Plaintiff United States of America*
**via ECF**

/s/ Mark R. Sylvester
Mark R. Sylvester

JA103

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

        v.

KEVIN B. MERRILL, et al.,

        Defendants

Case No. 1:18-cv-02844-RDB

## FIRST AMENDED ORDER APPOINTING TEMPORARY RECEIVER

**WHEREAS** this matter has come before this Court upon Plaintiff Securities and

Exchange Commission's (the "SEC") Motion for a Temporary Restraining Order Freezing

Assets, Appointing a Temporary Receiver, and Granting Other Emergency Relief (Doc. No. 3)

and Receiver Gregory S. Milligan's Motion to Clarify and Modify Receivership Order (Doc. No.

53 );

        **WHEREAS** Defendants and their affiliate entities possess significant assets-the full

nature and extent of which are not currently known to the Court-including but not limited to debt

portfolios, automobiles, jewelry, real estate, and other assets, the value of which should be

preserved during the pendency of this litigation;

        **WHEREAS** the Court finds that, based on the record in these proceedings, the

appointment of a receiver in this action is necessary and appropriate for the purposes of

marshaling and preserving all assets of Defendants Kevin B. Merrill, Jay B. Ledford, Cameron

R. Jezierski, Global Credit Recovery, LLC, Delmarva Capital, LLC, Rhino Capital Holdings,

LLC, Rhino Capital Group, LLC, DeVille Asset Management LTD, Riverwalk Financial

DocID: 4842-8683-4554.3

JA104

Corporation ("Defendants"), and the affiliate entities of Defendants, as described below,

including but not limited to funds fraudulently obtained from investors that are held by the Relief

Defendants Amanda Merrill and Lalaine Ledford (collectively, the "Relief Defendants") and any

and all assets acquired, either directly or indirectly, using such funds;

      **WHEREAS** this Court has subject matter jurisdiction over this action and personal

jurisdiction over Defendants, and venue properly lies in this district;

      **NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED
THAT:**

      1.    This Court hereby takes exclusive jurisdiction and possession of the assets, of

whatever kind and wherever situated, of the following Defendants, and the affiliate entities of

Defendants, including but not limited to: Kevin B. Merrill ("Merrill"), Jay B. Ledford

("Ledford"); Cameron R. Jezierski ("Jezierski"); Global Credit Recovery, LLC; Delmarva

Capital, LLC; Rhino Capital Holdings, LLC; Rhino Capital Group, LLC; DeVille Asset

Management LTD; Riverwalk Financial Corporation; K.B. Merrill Associates; Financial

Reclamation Group LLC; Halo Credit Solutions LLC; JBL Holdings LLC; Jay B. Ledford, P.C.;

the Joseph Finance Company; Leddy Bear LTD; Ledford & Associates, PLLC; King Fischer

LTD d/b/a LP Investments LTD; NLEX, Inc.; Receivables Portfolio Interchange, Inc.; Riverwalk

Capital Investments, Inc.; Riverwalk Credit Solutions, Inc.; Riverwalk Debt Solutions, Inc.;

Riverwalk Fixed Asset Group LLC; SCUSA Financial, Inc.; Vaquero Asset Management, Inc.;

CRJ Holdings LLC; Centurion Capital Corporation; GCR CBL CP I, LLC; GCR CBL CP II,

LLC; GCR CBL CP III, LLC; GCR CBL CP IV, LLC; GCR HCP Holdings 1, LLC; GCR

Mercer Holdings, LLC; the J Trust; and the Kevin B. Merrill Revocable Trust (collectively, the

"Receivership Parties").

DocID: 4842-8683-4554.3

2.    Until further Order of this Court, Gregory S. Milligan, of the firm Harney Management Partners, LLC, is hereby appointed to serve without bond as receiver (the "Receiver") for the estates of the Receivership Parties.

**I.    Asset Freeze**

3.    Except as otherwise specified herein, all assets of Defendants and Receivership Parties (collectively, "Receivership Assets") are frozen until further order of this Court. "Receivership Assets" means assets of any and every kind whatsoever, including without limitation all assets described in this Order, that are: (a) owned, controlled, or held, in whole or in part, by or for the benefit of any of the Receivership Parties; (b) in the actual or constructive possession of any of the Receivership Parties, or other individual or entity acting in concert with any of the Receivership Parties; (c) held by an agent of any of the Receivership Parties, including as a retainer for the agent's provision of services; or (d) owned, controlled, or held, in whole or in part, by, or in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, trust, or other entity directly or indirectly owned, controlled, or held, in whole or in part, by any of the Receivership Parties, including assets that have been transferred to other persons or entities but as to which assets such persons or entities do not have a legitimate claim. For the avoidance of doubt, the "Receivership Assets" include all assets owned, controlled, or held, in whole or in part by, or in the actual or constructive possession of, or otherwise held for the benefit of the J Trust and Kevin B. Merrill Revocable Trust, including the following real properties: (a) 1718 Greenspring Valley Road, Stevenson, MD 21153; (b) 9017 Grove Crest Lane, Las Vegas, NV 89134; and (c) 1650 Cedar Hill, Dallas, TX 75208. The "Receivership Assets" also include funds fraudulently obtained from investors that are held by the Relief Defendants and any and all assets acquired, either directly or indirectly, using such funds, including but not limited to: (i) 1055 Spyglass Lane, Naples, FL 34102; (ii) 27776 Sharp

Road, Easton, MD 21601; and (iii) 531 Hampton Lane, Baltimore, MD 21204. Accordingly, all

persons, institutions, and entities with direct or indirect control over any Receivership Assets-

other than the Receiver or law enforcement officials acting within the course and scope of their

official duties are hereby restrained and enjoined from directly or indirectly transferring, setting

off, receiving, changing, selling, pledging, assigning, liquidating or otherwise disposing of or

withdrawing such Receivership Assets. This freeze shall include, but not be limited to,

Receivership Assets that are on deposit with financial institutions such as banks, brokerage

firms, and mutual funds, or other institutions, including but not limited to casinos.

## II.    General Powers and Duties of Receiver

4.    Except as limited herein, the Receiver shall have all powers, authorities, rights,

and privileges heretofore possessed by the officers, directors, managers, and general and limited

partners of the Receivership Parties under applicable state and federal law, by the governing

charters, by-laws, articles and/or agreements in addition to all powers and authority of a receiver

at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959

and 1692, Fed. R. Civ. P. 66, and this Order, including but not limited to paragraphs 49 and 50 of

this Order.

5.    The trustees, directors, officers, managers, investment advisors, accountants,

attorneys, and other agents of the non-individual Receivership Parties are hereby dismissed and

the powers of any partners, directors, and/or managers are hereby suspended. Such persons and

entities shall have no authority with respect to the Receivership Parties' operations or assets,

except to the extent as hereafter may be expressly granted by the Receiver. This Order, however,

does not dismiss Defendants' attorneys, if any, who file an appearance in this action.

6.    The Receiver shall assume and control the operation of the non-individual

Receivership Parties and shall preserve all of their claims or interests using the powers set forth

DocID: 4842-8683-4554.3

in this Order. The Receiver shall not have the power to bring suits in law or in equity without further Order of this Court except as otherwise authorized in Paragraph 37 this Order. The Receiver may continue and conduct the business of the Receivership Parties in such manner, to such extent and for such duration as the Receiver may deem to be necessary or appropriate, if at all.

7.      No person holding or claiming any position of any sort with any of the non-individual Receivership Parties shall possess any authority to act by or on behalf of any of the non-individual Receivership Parties, unless expressly authorized, in writing, by the Receiver.

8.      Subject to the specific provisions in Sections III through XIV, below, the Receiver shall have the following general powers and duties:

    A.      To use reasonable efforts to determine the nature, location, and value of all property interests of the Receivership Parties, including, but not limited to, monies, funds, securities, credits, investments, savings, options, shares, cash, currencies, checks, accounts, vehicles, boats, equipment, fixtures, effects, goods, chattels, lands, premises, leases, claims, notes, membership interests in any limited liability company, partnership interests, contracts, certificates of title, instruments, inheritances, interests in any trust, art, collectibles, furnishings, jewelry, personal effects, digital currencies, virtual currencies, cryptocurrencies, digital or electronic property, casino accounts, deposits, or chips, rights, and other assets, together with all rents, profits, dividends, interest, or other income attributable thereto, of whatever kind, which the Receivership Parties own, possess, have a beneficial interest in, or control directly or indirectly (the foregoing,

DocID: 4842-8683-4554.3

together with all assets described in this Order collectively may be referred to as the "Receivership Assets" or the "Receivership Estate");

B. To take custody, control, and possession of all Receivership Assets and records relevant thereto from the Receivership Parties;

C. To manage, control, operate, and maintain the Receivership Estate and hold in his possession, custody, and control all Receivership Assets, pending further Order of this Court;

D. To use Receivership Assets for the benefit of the Receivership Estate, making payments and disbursements and incurring expenses as may be necessary or advisable in the ordinary course of business in discharging his duties as Receiver;

E. To take any action which, prior to the entry of this Order, could have been taken by the officers, directors, partners, managers, trustees, and agents of the Receivership Parties, except as limited by this Order;

F. To engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders, or auctioneers;

G. To take such action as necessary and appropriate for the preservation of Receivership Assets or to prevent the dissipation or concealment of Receivership Assets;

H.    To the extent necessary to locate and identify assets, the Receiver is authorized to issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure;

I.    To resist and defend all suits, actions, claims and demands which may now be pending or which may be brought by or asserted against the Receivership Estate; and,

J.    To take such other action as may be approved by this Court.

9.    Unless otherwise limited by this Order, the Receiver is authorized to exercise all equitable powers under applicable law.

10.    The Receiver may delegate to his agents any of the powers of the Receiver granted to him by this Order.

11.    The Receiver may seek further Orders of this Court regarding standing powers of the Receiver, operations of Receivership Parties, and administration of Receivership Assets as may be deemed necessary to conserve the Receivership Assets, secure the best interests of creditors, investors, and other stakeholders of the Receivership Parties, and protect the interests of the Receiver.

**III.    Access to Information**

12.    The individual Receivership Parties and the past and/or present officers, directors, agents, managers, general and limited partners, trustees, attorneys, accountants, and employees of the non-individual Receivership Parties, as well as those acting in their place, including third party vendors storing financial and other business information, as well as email communications, are hereby ordered and directed to preserve and turn over to the Receiver forthwith all paper and electronic information of, and/or relating to, the Receivership Parties and/or all Receivership Assets; such information shall include but not be limited to books, records, documents, accounts,

DocID: 4842-8683-4554.3

all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, details of items deposited, and check registers), client lists, title documents, writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, computer files, databases and other data compilations, including but not limited to records relating to debt portfolios, including but not limited to all information stored using Debtmaster software, electronically stored records and information, including any information stored by third parties (including but not limited to Intuit, Inc.), including those utilizing using cloud-based services" access codes, security codes, passwords, safe deposit keys, combinations, and all other instruments, papers, and electronic data or records of any kind or nature. This does not, however, include any documents or files of Merrill's, Ledford's, or Jezierski's personal attorneys, if any, that are protected by the work-product doctrine and/or attorney-client privilege.

13.    Within ten (10) days of the entry of this Order, the Receivership Parties shall file with the Court and serve upon the Receiver and the SEC a sworn statement, listing: (a) the identity, location, and estimated value of all Receivership Assets, including contact information for the party in possession of all assets of such Receivership Party, held jointly or singly, including without limitation all assets held outside the territory of the United States; (b) all employees (and job titles thereof), other personnel, attorneys, accountants, and any other agents or contractors of the Receivership Parties; and (c) the amount and nature of all liabilities of such Receivership Party, including without limitation the names, addresses, and amounts of claims of all known creditors of the Receivership Parties. Such sworn statement shall include the names, addresses, telephone numbers, facsimile numbers, and e-mail addresses of the holders of any legal, equitable, or beneficial interests in such assets and the names, addresses, telephone

DocID: 4842-8683-4554.3

JA111

numbers, facsimile numbers, and e-mail addresses of any financial institutions or other persons

or entities holding such assets, along with the account numbers and balances. The sworn

statements shall be accurate as of the date of this Order, shall be signed and verified as true and

complete under penalty of perjury.

14.    Within thirty (30) days of the entry of this Order, the Receivership Parties shall

file with the Court and serve upon the Receiver and the SEC a sworn statement and accounting,

with complete documentation, covering the period from January 1, 2013 to the present:

A.    Of all Receivership Assets, wherever located, held by or in the name of

the Receivership Parties, or in which any of them, directly or indirectly,

has or had any beneficial interest, or over which any of them maintained

or maintains and/or exercised or exercises control, including, but not

limited to: (a) all securities, investments, funds, real estate, automobiles,

jewelry, digital assets, including but not limited to any assets contained in

digital assets held at crypto-currency exchanges, and other assets, stating

the location of each; and (b) any and all accounts, including all funds held

in such accounts, with any bank, brokerage, or other financial institution,

or any other institution, including but not limited to casinos, held by, in the

name of, or for the benefit of any of them, directly or indirectly, or over

which any of them maintained or maintains and/or exercised or exercises

any direct or indirect control, or in which any of them had or has a direct

or indirect beneficial interest, including the account statements from each

bank, brokerage, or other financial institution;

B.    Identifying every account at every bank, brokerage, or other financial institution, including but not limited to casinos: (a) over which Receivership Parties have signatory authority; and (b) opened by, in the name of, or for the benefit of, or used by, the Receivership Parties;

C.    Identifying all credit, bank, charge, debit or other deferred payment card issued to or used by each Receivership Party, including but not limited to the issuing institution, the card or account number(s), all persons or entities to which a card was issued and/or with authority to use a card, the balance of each account and/or card as of the most recent billing statement, and all statements for the last twelve months;

D.    Of all assets received by any of Receivership Parties from any person or entity, including the value, location, and disposition of any assets so received;

E.    Of all funds received by the Receivership Parties, and each of them, in any way related, directly or indirectly, to the conduct alleged in the SEC's Complaint. The submission must clearly identify, among other things, all investors, the securities they purchased, the date and amount of their investments, and the current location of such funds;

F.    Of all expenditures exceeding $1,000 made by any of Receivership Parties, including those made on their behalf by any person or entity; and

G.    Of all transfers of assets made by any of Receivership Parties.

DocID: 4842-8683-4554.3

15.     Within thirty (30) days of the entry of this Order, the Receivership Parties shall provide to the Receiver and the Commission copies of the Receivership Parties' federal income tax returns for 2013 through 2017 with all relevant and necessary underlying documentation.

16.     The individual Receivership Parties and the non-individual Receivership Parties' past and/or present officers, directors, agents, attorneys, managers, shareholders, employees, accountants, debtors, creditors, managers and general and limited partners, and other appropriate persons or entities shall answer all questions which the Receiver may put to them and produce all documents as required by the Receiver regarding the business of the Receivership Parties, or any other matter relevant to the operation or administration of the receivership or the collection of funds due to the Receivership Parties. The Receiver maintains and controls the attorney-client privilege for all non-individual Receivership Parties. Nothing in this Order shall operate as or effectuate a waiver of the attorney-client privilege regarding communications between Defendants Merrill, Ledford, and Jezierski and their respective personal attorneys, if any, and such personal attorneys shall not be compelled by this Order to divulge information that would otherwise be protected by the attorney-client privilege.

17.     The Receivership Parties are required to assist the Receiver in fulfilling his duties and obligations. As such, they must respond promptly and truthfully to all requests for information and documents from the Receiver. This cooperation and assistance shall include, but not be limited to: (a) providing any information or documents that the Receiver deems necessary or appropriate to the exercise of the Receiver's authority and the discharge of the Receiver's responsibilities under this Order; (b) providing any keys, including but not limited to physical, digital, and cryptographic keys, codes, device PINs, and passwords, including but not limited to account, encryption, email account, and computer passwords required to access any computer,

electronic file, or telephonic data in any medium; (c) immediately advising all persons who owe money or currency of any kind to the Receivership Parties that all debts should be paid directly to the Receiver; (d) providing full access to all Receivership Assets; and (e) maintaining and not wasting, damaging, disposing of, or transferring in any manner any Receivership Assets.

**IV.    Access to Books, Records, and Accounts**

18.    The Receiver is authorized to take immediate possession of all assets, bank accounts or other financial accounts, books, and records and all other documents or instruments relating to the Receivership Parties. All persons and entities having control, custody, or possession of any Receivership Assets are hereby directed to turn such property, including but not limited to all accounts, over to the Receiver.

19.    The Receivership Parties, as well as their agents, servants, employees, attorneys, any persons acting for or on behalf of the Receivership Parties, including third party vendors of the Receivership Parties, and any persons receiving notice of this Order by personal service, facsimile transmission, or otherwise, having possession of the property, business, books, records, accounts, or assets of the Receivership Parties are hereby directed to deliver the same to the Receiver, his agents, and/or employees.

20.    All banks, brokerage firms, financial institutions, and other persons or entities which have possession, custody, or control of any assets or funds held by, in the name of, or for the benefit of, directly or indirectly, the Receivership Parties that receive actual notice of this Order by personal service, facsimile transmission, or otherwise shall:

A.    Not liquidate, transfer, sell, convey, or otherwise transfer any assets, securities, funds, or accounts in the name of or for the benefit of the Receivership Parties except upon instructions from the Receiver;

DocID: 4842-8683-4554.3

JA115

B.    Not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court;

C.    Within five (5) business days of receipt of that notice, file with the Court and serve on the Receiver and counsel for the SEC a certified statement setting forth, with respect to each such account or other asset, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice; and,

D.    Cooperate expeditiously in providing information and transferring funds, assets, and accounts to the Receiver or at the direction of the Receiver.

## V.    Access to Real and Personal Property

21.    The Receiver is authorized but not directed to take immediate possession of all personal property Receivership Assets, wherever located, including but not limited to electronically stored information, computers, laptops, hard drives, external storage drives, and any other such memory, media or electronic storage devices, books, papers, data processing records, evidence of indebtedness, bank records and accounts, savings records and accounts, brokerage records and accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies, and equipment.

22.    The Receiver is authorized but not directed to take immediate possession of all real property Receivership Assets, wherever located, including but not limited to all ownership and leasehold interests and fixtures. Upon receiving actual notice of this Order by personal service, facsimile transmission, or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from: (a) entering such premises; (b) removing anything

DocID: 4842-8683-4554.3

JA116

from such premises; or, (c) destroying, concealing, or erasing anything on such premises. Notwithstanding the foregoing, the individual Receivership Parties, or any of their respective family members, shall be permitted to continue residing in their respective primary places of residence, until further notice by the Receiver.

23.     In order to execute the express and implied terms of this Order, the Receiver is authorized to change door locks to the premises described above. The Receivership Parties, all other persons in possession or control of Receivership Assets, or any other person acting or purporting to act on their behalf, are ordered not to change the locks in any manner, nor to have duplicate keys made, nor shall they have keys in their possession during the term of the receivership.

24.     The Receiver is authorized to open all mail, other than mail directed to the spouses of individual Defendants, directed to or received by or at the offices or post office boxes of the Receivership Parties, and to inspect all mail opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

25.     Upon the request of the Receiver, the United States Marshal Service, in any judicial district, is hereby ordered to assist the Receiver in carrying out his duties to take possession, custody and control of, or identify the location of, any assets, records, or other materials belonging to the Receivership Estate. In addition, the Receiver is authorized to request similar assistance from any other federal, state, county, or civil law enforcement officer(s) or constable(s) of any jurisdiction.

**VI.     Notice to Third Parties**

26.     The Receiver shall promptly give notice of his appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers, and general and limited

partners of the Receivership Parties, as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

27.    All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest to any Receivership Defendant shall, until further ordered by this Court, pay all such obligations in accordance with the terms thereof to the Receiver, and its receipt for such payments shall have the same force and effect as if the Receivership Defendant had received such payment.

28.    In furtherance of his responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity, or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estate. All government offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver or the SEC.

29.    The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail which is related, directly or indirectly, to the business, operations, or activities of any of the Receivership Parties (the "Receiver's Mail"), including all mail addressed to, or for the benefit of, the Receivership Parties. The Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone other than the Receiver concerning the Receiver's Mail. The Receivership Parties shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver. All personal mail of any individual Receivership Parties, mail addressed to any individual Receivership Defendant's spouse, and/or any mail appearing to contain privileged information, and/or any mail not falling within the mandate of the Receiver,

DocID: 4842-8683-4554.3

shall be released to the named addressee or addressee's attorney by the Receiver. The foregoing instructions shall apply to any proprietor, whether individual or entity, of any private mail box, depository, business or service, or mail courier or delivery service, hired, rented, or used by the Receivership Parties. The Receivership Parties shall not open a new mailbox, or take any steps or make any arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a private mail depository, or courier service.

30.    Subject to payment for services provided, any entity furnishing water, electric, telephone, sewage, garbage, or trash removal services to the Receivership Parties shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver.

## VII.    Injunction Against Interference with Receiver

31.    The Receivership Parties, other persons in possession or control of Receivership Assets,  and all persons, other than law enforcement officials acting within the course and scope of their official duties, receiving notice of this Order by personal service, facsimile, or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

> A.    Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Assets; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Assets;

DocID: 4842-8683-4554.3

B.     Hinder, obstruct or otherwise interfere with the Receiver in the performance of his duties; such prohibited actions include but are not limited to, concealing, destroying, or altering records or information;

C.     Dissipate or otherwise diminish the value of any Receivership Assets; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying any Receivership Assets, enforcing judgments, assessments, or claims against any Receivership Assets or any Receivership Defendant, attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement executed by any Receivership Defendant or which otherwise affects any Receivership Assets; or,

D.     Transact any of the business of the Receivership Parties or transfer any Receivership Assets to anyone other than the Receiver;

E.     Destroy, secret, deface, transfer, delete, or otherwise alter or dispose of any documents of or pertaining to the Receivership Parties or the Receivership Assets and to the extent any such documents are no longer in existence, fail to disclose the nature and contents of such documents and how, when, and by whom such documents were caused to no longer be in existence;

F.     Fail to notify the Receiver of any Receivership Assets, including accounts constituting Receivership Assets held in any name other than the name of a Receivership Defendant, or by any person other than the Receivership

DocID: 4842-8683-4554.3

Parties, or fail to provide any assistance or information requested by the Receiver in connection with obtaining possession, custody, or control of such Receivership Assets;

G.    Refuse to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their powers, duties, or authority under any order of this Court; or

H.    Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estate.

32.    The Receivership Parties shall cooperate with and assist the Receiver in the performance of his duties.

33.    The Receiver shall promptly notify the Court and SEC counsel of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

**VIII.    Stay of Litigation**

34.    As set forth in detail below, the following proceedings, excluding the instant proceeding, all police or regulatory actions, and actions of the SEC related to the above-captioned enforcement action, are stayed upon entry of this Order and until further Order of this Court: All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Assets, wherever located; (c) any of the Receivership Parties, including subsidiaries and partnerships; or, (d) any of the Receivership Parties' past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party

DocID: 4842-8683-4554.3

defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

35.    The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process. All counterparties to agreements and contracts entered into with the Receivership Parties are enjoined from unilaterally terminating such agreements or contracts without order of this Court.

36.    All Ancillary Proceedings not subject to Paragraph 37 below are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court. Further, as to a cause of action accrued or accruing in favor of one or more of the Receivership Parties against a third person or party, or as to any and all claims or causes of action under applicable law that have accrued or are accruing regarding transfers and transactions of fraudulently obtained investor funds (or proceeds thereof) to third parties, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action.

37.    The Court modifies the above-described stay in part and amends this Order to allow the Receiver to continue, in his discretion, the consumer debt collection business of the Receivership Parties under those contracts and agreements that existed on date of the entry of the Order Appointing Temporary Receiver. Specifically, the Court modifies the above-described stay in part and amends this Order to allow the Receiver to file, maintain, and prosecute consumer debt collection civil proceedings in the name of DeVille Asset Management Ltd. and any other Receivership Party pursuant to their service agreements with collection litigation firms, including AACANet, Inc. d/b/a American Alliance of Creditor Attorneys, DRB Financial

DocID: 4842-8683-4554.3

Solutions, LLC, Persolve, Series 2, d/b/a Account Resolution Associates, and such other similar entities. The stay is modified to cover all such agreements that the Receiver decides to continue as part of his duties under the Receivership Order.

## IX.    Managing Assets

38.    The Receiver shall establish one or more custodial accounts at a federally insured bank to receive and hold all cash equivalent Receivership Assets (the "Receivership Funds").

39.    The Receiver's deposit account shall be entitled "Receiver's Account, Estate of [Name of Receivership Defendant]" together with the name of the action, or a title to that effect.

40.    Without further Order of this Court, the Receiver may not liquidate or otherwise dispose of Receivership Assets, including real estate, other than in the ordinary course of business.

41.    The Receiver is authorized to use the Receivership Assets and proceeds thereof to pay debts and expenses of Receivership Parties that (i) have accrued prior to or during the receivership and (ii) in the sole discretion of the receiver are essential or necessary to the operations of the non-individual Receivership Parties.

42.    The Receiver's duties shall include, using reasonable efforts, identifying, marshaling, taking custody of, and preserving the value of the Receivership Assets. Without further Order of this Court, the Receiver's duties shall not include a forensic investigation to identify claimants on or creditors of Receivership Assets or any determination of amounts owed to such parties. Defendants Merrill, Ledford, and Jezierski shall retain responsibility, and the Receiver shall assume no responsibility, for preparing and filing their respective personal income tax returns.

DocID: 4842-8683-4554.3

43.    Upon further Order of this Court, pursuant to such procedures as may be required by this Court and additional authority such as 28 U.S.C. §§ 2001 and 2004, the Receiver will be authorized to sell, and transfer clear title to, all real property in the Receivership Estate.

44.    The Receiver is authorized to take all actions to manage or maintain business operations of the Receivership Estate, including making payments to creditors, employees, and agents of the Receivership Estate and communicating with vendors, investors, governmental and regulatory authorities, and others, as appropriate.

45.    The Receiver shall take all necessary steps to enable the Receivership Funds to obtain and maintain the status of a taxable "Settlement Fund," within the meaning of Section 468B of the Internal Revenue Code and of the regulations, when applicable.

## X.    Bankruptcy Filing

46.    The Receiver may seek an Order of this Court authorizing the Receiver to file voluntary petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code") for the Receivership Parties, or any of them. If a Receivership Defendant is placed in bankruptcy proceedings, the Receiver may become, and may be empowered to operate each of the Receivership Estate as, a debtor in possession. In such a situation, the Receiver shall have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity. Pursuant to Paragraph 4 above, the Receiver is vested with management authority for all non-individual Receivership Parties and may therefore file and manage a Chapter 11 petition.

47.    The provisions of Section VIII above bar any person or entity, other than the Receiver, from placing any of the Receivership Parties in bankruptcy proceedings.

DocID: 4842-8683-4554.3

## XI.    Liability of Receiver

48.    Until further Order of this Court, the Receiver shall not be required to post bond or give an undertaking of any type in connection with his fiduciary obligations in this matter.

49.    The Receiver may choose, engage and employ attorneys, accountants, appraisers, and any other independent contractors and technical specialists, including, but not limited to, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, property managers, brokers, traders, and auctioneers (collectively, "Retained Personnel") as the Receiver deems advisable or necessary in the performance of the Receiver's duties and responsibilities under the authority granted by this Order. The Receiver and his Retained Personnel, acting within scope of such agency, are entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel, including compliance with applicable law governing the collection of debt, nor shall the Receiver or Retained Personnel be liable to anyone for any actions taken or omitted by them except upon a finding by this Court that they acted or failed to act as a result of malfeasance, bad faith, gross negligence, or in reckless disregard of their duties.

50.    This Court shall retain exclusive jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions alleged to have been committed in their representative capacities.

51.    In the event the Receiver decides to resign, the Receiver shall first give written notice to the SEC's counsel of record and the Court of its intention, and the resignation shall not

be effective until the Court appoints a successor. The Receiver shall then follow such instructions as the Court may provide.

52.    The Receiver shall not be personally liable for any liabilities that have accrued or will accrue to the Receivership Estate or the Receivership Parties.

**XII.    Insurance**

53.    Given the urgency to appoint a Receiver, the Court recognizes that the Receiver accepts this appointment without time for independent verification that appropriate insurance is in place on the property or that appropriate liability or other insurance is in place to protect the Receivership Assets and the Receivership Estate. Accordingly, the Court acknowledges that the Receiver has no responsibility or liability until such time as he can confirm that such insurance is in place or acquire the appropriate insurance. The Receiver shall make it a priority to verify or obtain insurance coverage immediately upon this Order Appointing Receiver being entered; however, the SEC, Receivership Parties, and Court acknowledge there may be a gap of time before such insurance may be in place to properly protect the assets of the estate and any employees of the estate, and that the Receiver has no responsibility or liability until such time as he/it has notified the Court by filing a notice that insurance is in place.

54.    Defendants Merrill, Ledford, and Jezierski and Relief Defendants Amanda Merrill and Lalaine Ledford are ordered to immediately provide the Receiver with all available insurance information for both existing and prior insurance policies. This includes all applications, policies, riders, correspondence, endorsements, claims and other information. Merrill, Ledford, and Jezierski are ordered: (1) to advise the insurance agent(s) of this Order in writing, (2) designate all authority over the policies to the Receiver, and (3) take no action with regard to terminating or modifying existing insurance policies.

DocID: 4842-8683-4554.3

55. Any insurance broker, agent, carrier, or underwriter is specifically ordered by the Court to cooperate with the Receiver by timely furnishing the following: (I) copies of all insurance policies including any riders, endorsements and applications with respect to policies related to the Receivership Estate, (2) loss history for five consecutive years or for as long as insurance has been in force if less than five years, (3) premium payment history including current status, and (4) any correspondence with insurance agents, brokers and companies. Policies shall be endorsed by the Defendants naming the Receiver as Named Insured and Loss Payee effective the date of this Order as appropriate to the type of coverage, and evidence of this policy endorsement shall be promptly supplied to the Receiver.

56. The Receiver is hereby authorized to engage insurance brokers and consultants as necessary to properly insure the Receivership Assets.

## XIII. Recommendations and Reports

57. The Receiver is authorized, empowered, and directed to develop a plan for the fair, reasonable, and efficient preservation of assets during the pendency of this litigation (the "Preservation Plan").

58. Within 60 days of the entry date of this Order the Receiver shall file the Preservation Plan in the above-captioned action, with service copies to counsel of record, to allow the Court to evaluate the best course of action for the preservation of assets.

59. Within thirty (30) days after the end of each calendar quarter, the Receiver shall file and serve a full report and accounting of each Receivership Estate (the "Quarterly Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all Receivership Assets, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estate. The first Quarterly Status Report shall be filed and

DocID: 4842-8683-4554.3

JA127

served on or before January 30, 2019, to cover the period from September 13, 2018 through December 31, 2018.

60.   The Quarterly Status Report shall contain the following:

A.   A summary of the operations of the Receiver;

B.   The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

C.   A schedule of all the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership;

D.   A description of all known Receivership Assets, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

E.   A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments)

F.   A list of all known creditors with their addresses and the amounts of their claims;

G.   The status of Creditor Claims Proceedings, after such proceedings have been commenced; and,

DocID: 4842-8683-4554.3

> H. The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

61. On the request of the SEC, the Receiver shall provide the SEC with any documentation that the SEC deems necessary to meet its reporting requirements, that is mandated by statute or Congress, or that is otherwise necessary to further the SEC's mission.

**XIV. Fees, Expenses, and Accountings**

62. Subject to Paragraphs 63-69 immediately below, the Receiver need not obtain Court approval prior to the disbursement of Receivership Funds for expenses in the ordinary course of the administration and operation of the receivership. Further, prior Court approval is not required for payments of applicable federal, state, or local taxes.

63. Subject to Paragraph 64 immediately below, the Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in this Order. With the exception of the retention of counsel to represent him in this matter, the Receiver shall not engage any Retained Personnel without first obtaining an Order of the Court authorizing such engagement.

64. The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estate as described in the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions") agreed to by the Receiver. Such compensation shall require the prior approval of the Court.

65. Throughout the pendency of the receivership, the Receiver and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Receivership Estates (the "Interim Fee Applications"). Interim Fee Applications are to be filed

DocID: 4842-8683-4554.3

by the Receiver and Retained Personnel no more frequently than every 60 days. At least thirty (30) days prior to filing each Interim Fee Application with the Court, the Receiver will serve upon counsel for the SEC a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by SEC staff.

66.    All Interim Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership. At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership.

67.    Interim Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court. The total amounts held back during the course of the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership.

68.    Each Interim Fee Application shall:

A.    Comply with the terms of the Billing Instructions agreed to by the Receiver; and,

B.    Contain representations (in addition to the Certification required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and, (ii) with the exception of the Billing Instructions, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

DocID: 4842-8683-4554.3

JA130

69.    At the close of the Receivership, the Receiver shall submit a Final Accounting, in a format to be provided by SEC staff, as well as the Receiver's final application for compensation and expense reimbursement.

70.    All such fees and expenses of the Receiver, including all amounts due to the Receiver or his counsel, shall be accorded priority to the maximum extent provided by applicable law.

**IT IS SO ORDERED, this _27_ day of _November_, 2018, at Baltimore, Maryland.**

_____

UNITED STATES DISTRICT JUDGE

DocID: 4842-8683-4554.3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | |
| **Plaintiff,** | Case No. 1:18-cv-02844-RDB |
| **v.** | |
| **KEVIN B. MERRILL, et al.,** | |
| **Defendants** | |

## RECEIVER GREGORY S. MILLIGAN'S FIRST QUARTERLY STATUS REPORT FOR THE PERIOD BETWEEN SEPTEMBER 13, 2018 AND DECEMBER 31, 2018

Lynn H. Butler, *pro hac vice*
HUSCH BLACKWELL LLP
111 Congress Avenue, Suite 1400
Austin, Texas 78701
Telephone: (512) 472-5456
Facsimile:  (512) 479-1101

Buffey E. Klein, *pro hac vice*
HUSCH BLACKWELL LLP
2001 Ross Avenue, Suite 2000
Dallas, Texas  75201
Telephone: (214) 999-6100
Facsimile:  (214) 999-6170

Brian P. Waagner, Fed. Bar No. 14954
HUSCH BLACKWELL LLP
750 17th Street, NW, Suite 900
Washington, D.C. 20006
Telephone:  (202) 378-2300
Facsimile:  (202) 378-2318

*Attorneys for Receiver Gregory S. Milligan*

DocID: 4838-5623-9238.1
DocID: 4838-5623-9238.2
DocID: 4832-0195-8278.1

JA132

## TABLE OF CONTENTS

**Page**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | SUMMARY | 3 |
| III. | OVERVIEW OF THE RECEIVER'S ACTIVITIES | 5 |
| | A.  Summary of Assets | 5 |
| |     1.  Business Operations | 5 |
| |     2.  Holding Institutions | 5 |
| |     3.  Real Property | 6 |
| |     4.  Other Property | 6 |
| | B.  Administration and Management | 7 |
| |     1.  Coordination and Conference with Other Parties | 8 |
| |     2.  Businesses Operated in Texas | 8 |
| |     3.  Real Property | 17 |
| |     4.  Vehicles | 21 |
| |     5.  Other Personal Property | 24 |
| |     6.  Insurance | 25 |
| IV. | ESTATE ADMINISTRATION | 25 |
| V. | UNRESOLVED CLAIMS AGAINST RECEIVERSHIP PROPERTY | 26 |
| VI. | ACCRUED ADMINISTRATIVE EXPENSES | 27 |
| VII. | RECEIVER'S ONGOING INVESTIGATION | 27 |
| VIII. | CLAIMS DETERMINATION AND DISTRIBUTION PROCESS | 27 |
| IX. | CONCLUSION | 28 |

DocID: 4838-5623-9238.1
DocID: 4838-5623-9238.2
DocID: 4832-0195-8278.1

i

Gregory S. Milligan (the "Receiver"), the Court-appointed Receiver for the assets of Defendants and affiliated entities, including but not limited to: Kevin B. Merrill ("Merrill"), Jay B. Ledford ("Ledford"); Cameron R. Jezierski ("Jezierski"); Global Credit Recovery, LLC; Delmarva Capital, LLC; Rhino Capital Holdings, LLC; Rhino Capital Group, LLC; DeVille Asset Management LTD; Riverwalk Financial Corporation; K.B. Merrill Associates; Financial Reclamation Group LLC; Halo Credit Solutions LLC; JBL Holdings LLC; Jay B. Ledford, P.C.; the Joseph Finance Company; Leddy Bear LTD; Ledford & Associates, PLLC; King Fischer LTD d/b/a LP Investments LTD; NLEX, Inc.; Receivables Portfolio Interchange, Inc.; Riverwalk Capital Investments, Inc.; Riverwalk Credit Solutions, Inc.; Riverwalk Debt Solutions, Inc.; Riverwalk Fixed Asset Group LLC; SCUSA Financial, Inc.; Vaquero Asset Management, Inc.; CRJ Holdings LLC; Centurion Capital Corporation; GCR CBL CP I, LLC; GCR CBL CP II, LLC; GCR CBL CP III, LLC; GCR CBL CP IV, LLC; GCR HCP Holdings 1, LLC; GCR Mercer Holdings, LLC; the J Trust; and Kevin B. Merrill Revocable Trust (collectively, the "Receivership Parties") and certain assets held by Relief Defendants Amanda Merrill and Lalaine Ledford (the "Relief Defendants") files this First Quarterly Status Report for the Period Between September 13, 2018 and December 31, 2018 (the "Report") in accordance with the First Amended Order Appointing Temporary Receiver dated November 27, 2018 (Dkt. No. 62) (the "First Amended Receivership Order"), and would respectfully show the Court as follows:

## I.    INTRODUCTION

On September 13, 2018, the Securities and Exchange Commission ("SEC") filed a Complaint that initiated this action against Defendants Merrill, Ledford, Jezierski, Global Credit Recovery, LLC, Delmarva Capital, LLC, Rhino Capital Holdings, LLC, Rhino Capital Group, LLC, DeVille Asset Management LTD, and Riverwalk Financial Corporation (collectively, the "Defendants") alleging various securities violations arising from the Defendants' operation of a

1

Ponzi scheme.  The Complaint also includes K.B. Merrill Associates, Financial Reclamation Group LLC, Halo Credit Solutions LLC, JBL Holdings LLC, Jay B. Ledford, P.C., the Joseph Finance Company, Leddy Bear LTD, Ledford & Associates, PLLC, King Fischer LTD d/b/a LP Investments LTD, NLEX, Inc., Receivables Portfolio Interchange, Inc., Riverwalk Capital Investments, Inc., Riverwalk Credit Solutions, Inc., Riverwalk Debt Solutions, Inc., Riverwalk Fixed Asset Group LLC, SCUSA Financial, Inc., Vaquero Asset Management, Inc., CRJ Holdings LLC, Centurion Capital Corporation, GCR CBL CP I, LLC, GCR CBL CP II, LLC, GCR CBL CP III, LLC, GCR CBL CP IV, LLC, GCR HCP Holdings 1, LLC, and GCR Mercer Holdings, LLC as affiliated entities of Defendants that are in possession of funds fraudulently obtained from investors.

On November 6, 2018, the SEC filed an Amended Complaint adding Amanda Merrill and Lalaine Ledford as Relief Defendants in this action.  Amanda Merrill is married to Defendant Kevin B. Merrill, and Lalaine Ledford is married to Defendant Jay B. Ledford.  The SEC alleges the Relief Defendants benefited from their husbands' scheme through transfers of funds fraudulently obtained from investors and assets purchased with such funds.

On September 13, 2018, the Court issued a Temporary Restraining Order Freezing Assets and Granting Other Emergency Relief that, *inter alia*, froze the assets of the Defendants and affiliated entities of Defendants, and enjoined further violations of securities laws by Defendants.

On September 13, 2018, this Court also entered the Order Appointing Temporary Receiver (Dkt. No. 11) (the "Initial Receivership Order") pursuant to which the Court took exclusive jurisdiction and possession of all assets of the Receivership Parties including, but not limited to, all assets that are "(a) owned, controlled, or held, in whole or in part, by or for the benefit of any of the Receivership Parties; (b) in the actual or constructive possession of any of

DocID: 4832-0195-8278.1

the Receivership Parties, or other individual or entity acting in concert with any of the Receivership Parties; (c) held by an agent of any of the Receivership Parties, including as a retainer for the agent's provision of services; or (d) owned, controlled, or held, in whole or in part, by, or in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, trust, or other entity directly or indirectly owned, controlled, or held, in whole or in part, by any of the Receivership Parties, including assets that have been transferred to other persons or entities but as to which assets such persons or entities do not have a legitimate claim" (the "Receivership Assets").  The Court appointed Gregory S. Milligan as Receiver for the Receivership Assets and related records (the "Receivership Estate"), with the goal and purpose of marshaling and preserving the Receivership Assets to maximize the recovery to defrauded investors, as alleged in the Complaint.  The Receivership Order also stayed all civil actions or other proceedings involving the Receivership Assets, other than the Receivership proceedings and any additional charges in the actions brought by the SEC.  On November 27, 2018, the Court entered the First Amended Receivership Order clarifying and modifying the Receivership Parties and the Receiver's authority.

Pursuant to the First Amended Receivership Order, this Report provides information regarding the assets and liabilities of the Receivership Estate, a summary of the Receiver's activities for the period between September 13, 2018 and December 31, 2018 (the "Applicable Period"), and information regarding claims held by and against the Receivership Estate. A schedule of all of the Receiver's receipts and disbursements for the Applicable Period is attached hereto and incorporated herein as **Exhibit A**.

## II.    SUMMARY

This is a complex case involving four operating businesses on the date of filing, nine residential properties located in Maryland, Florida, Texas and Nevada, two commercial office

buildings in Texas owned by the Receivership Parties and two additional commercial office spaces in Texas leased by the Receivership Parties, an extensive list of more than 30 luxury and exotic vehicles, more than $800,000 in deposits to purchase additional exotic cars, a 2018 Formula 350 Crossover Bowrider Port Cruiser, an interest in pre-paid hours on a Gulfstream G200 twin-engine business jet, litigation financing wherein one of the Receivership Parties is the lender, an account receivable for the sale of a Porsche to be paid over a series of installment payments, a membership in a Naples, Florida country club with a $100,000 initiation fee, a whole life insurance policy with a surrender value of approximately $700,000, an equity investment of $1.5 million in an alternative investment management company, retainers and other deposits with professional service firms, and a substantial accumulation of luxury personal property.  The case involves more than 20 banks and other parties upon which demand has been made for the turnover of cash or cash equivalents to the Receiver, with initial asset searches for more than 50 individuals and entities in an attempt to identify and preserve assets of the Receivership Estate.

While the Receiver is not directly involved in the companion criminal case pending before this Court, the administration of this Receivership Estate has required ongoing coordination with the U.S. Attorney's Office Asset Forfeiture Unit and Federal Bureau of Investigation ("FBI") on several matters.  For example, the Receiver has coordinated with the FBI regarding the return of computer servers for three of the four operating businesses that were seized, care and maintenance of certain real property seized by the FBI and ongoing communication regarding additional assets discovered by the Receiver during the Applicable Period.  Further, the Receiver has coordinated the overlapping jurisdiction of the civil and criminal cases as to certain assets to most-efficiently secure the same in a manner that preserves

4

both evidentiary and monetary value, subject to further administration of those assets as subsequently directed by this Court.

## III.    OVERVIEW OF THE RECEIVER'S ACTIVITIES

During the Applicable Period, the Receiver, in coordination with the federal authorities has assumed control, or taken steps to assume control, of the Receivership Assets with the objective of preserving the Receivership Assets to maximize the recovery for the Receivership Estate.

### A.    Summary of Assets

Immediately after his appointment, the Receiver initiated the process of assuming control and management of all property of the Receivership Estate.

### 1.    Business Operations

On the date the Receivership Order was unsealed, the Receivership Estate included four business operations in Texas: (i) DeVille Asset Management Ltd. ("DeVille"); (ii) Riverwalk Credit Solutions, Inc. ("Riverwalk Credit"); (iii) Riverwalk Debt Solutions, Inc. ("Riverwalk Debt"); and (iv) Ledford & Associates, PLLC.  The Receiver continues to investigate the first three businesses and the proper means to monetize their value for the benefit of the Receivership Estate.  During the Applicable Period, the Receiver has worked with senior staff of DeVille, Riverwalk Credit, and Riverwalk Debt to gain further understanding of their business operations to properly assess the businesses' valuations.  Ledford & Associates, PLLC has remained shuttered since the Complaint and Receivership Order were unsealed on September 18, 2018 and has no going-concern value to the Receivership Estate.

### 2.    Holding Institutions

Through telephone calls and written correspondence, the Receiver, by and through counsel of record, notified institutions holding the Receivership Parties' bank, brokerage, and

5

DocID: 4832-0195-8278.1

business accounts ("<u>Holding Institutions</u>") of his appointment as Receiver and of the Court's exclusive control, by and through the Receiver, of the accounts, assets, documents and information in control of the Holding Institutions pertaining to one or more of the Receivership Parties. The Receiver also informed the Holding Institutions that the Receivership Parties' accounts were frozen pursuant to Court Order and requested that the Holding Institutions turn over all related accounts, assets, documents, and information in control of the Holding Institutions. The Holding Institutions have turned over the funds in the Receivership Parties' known accounts, and the Receiver is continuing to follow up with all Holding Institutions who have not yet turned over documents to the Receiver.[1] As of December 31, 2018, the Receivership Estate had approximately $8.2 million of cash on hand in Receivership Estate bank accounts under the sole control of the Receiver.

### 3. Real Property

The Receivership Estate also contains a number of residential and commercial real properties that have been secured by the Receiver, as discussed in greater detail below.

### 4. Other Property

Additionally, there were several personal property items that the Receiver has recovered or identified to date, including:

- <u>Vehicles</u>. The Receivership Estate consists of many high-end vehicles and watercraft. The seized vehicles belonging to the Receivership Estate remain in the possession of the FBI or the U.S. Marshals Service.

- <u>Other Property</u>. The Receivership Estate includes several investments made by the Defendants including, but not limited to: (i) prepaid hours on a Gulfstream Aircraft G200; (ii) an art collection; (iii) a watch collection; (iv) a comic book collection; (v) jewelry; (vi) a litigation financing arrangement; (vii) an equity investment in an alternative investment management company and (viii) a whole life insurance policy. Some of the foregoing investments are of unknown value, and the Receiver is in the

---

[1] The Receiver intends to recover funds from accounts nominally held in the name of the Relief Defendants containing funds that are traceable to the alleged fraud.

DocID: 4832-0195-8278.1

process of determining the value of each investment and the best means to monetize the investments value for the benefit of the Receivership Estate.

- <u>Clawbacks</u>.  The Receivership may hold claims ("Clawbacks") against individuals and entities, in addition to the Relief Defendants, that received gifts, donations, or fraudulent transfers from the Receivership Parties.  These individuals and entities may have received funds from the Receivership Parties derived from Ponzi scheme funds fraudulently obtained from investors.  If and when the Court authorizes the Receiver to pursue such actions, the Receiver will investigate these claims and, where appropriate, make demand for full repayment of the gift, donation, or fraudulent transfer and file suit against the recipients of such transfers, if necessary.

- <u>Clawbacks – Investors who are "Net Winners."</u>  The Receiver may hold claims against investors who withdrew fictitious profits from the Receivership Parties.  An investor's withdrawn profits may be fictitious, for example, if that party received payments in excess of investments.

- <u>Claims against Other Persons or Entities</u>.  The Receiver will investigate, analyze, and collect evidence regarding potential causes of action against other third parties.  Given the more immediate need to secure the tangible Receivership Assets, the Receiver's investigation into this category of assets has been limited to date.

Based upon current available information, which is preliminary and subject to further due diligence, the Receiver team estimates total recoveries from Receivership Assets could range between $40 million and $65 million.[2]  Future quarterly reports will have the benefit of actual recoveries, market data regarding assets yet to be monetized, and more due diligence leading to an increasingly accurate estimate of total Receivership Estate recoveries.

**B.    Administration and Management**

The Receiver's Initial Preservation Plan (the "Preservation Plan") was filed on November 13, 2018.  This Report is filed pursuant to paragraphs 59 and 60 of the First Amended Receivership Order.  The Receiver and his team continue to manage and marshal the Receivership Assets with the goal of maximizing the recovery to the Receivership Estate.

---

[2] These preliminary estimates do not include any potential clawback or fraudulent transfer claims that have not yet been authorized by the Court.

DocID: 4832-0195-8278.1

JA140

The Receivership Estate includes tangible and intangible property, all of which the Receiver has had to investigate, secure, and/or maintain since the unsealing of the Receivership Order on September 18, 2018.  To fulfill his obligations to the Court, the Receiver has undertaken the following tasks during the Applicable Period with respect to the various forms of property in the Receivership Estate.

### 1.    Coordination and Conference with Other Parties

Since being appointed in this case, the Receiver has coordinated extensively with the SEC, U.S. Attorney's Office Asset Forfeiture Unit, and FBI regarding the identification and safeguarding of Receivership Assets.  In an effort to minimize disputes and reach consensus on the maintenance and disposition of Receivership Assets, where possible, the Receiver has corresponded and/or met with criminal counsel for Merrill, criminal counsel for Ledford, civil counsel for Ledford, and criminal and forfeiture counsel for Amanda Merrill, including meetings in Baltimore, Maryland on November 1, 2018 where all counsel engaged as of that date were invited to meet with the Receiver, his counsel, and representatives from the SEC and the U.S. Attorney's Asset Forfeiture Unit.

### 2.    Businesses Operated in Texas

### (a)    DeVille Asset Management Ltd.

### (i)    Overview

Prior to the filing and unsealing of the Complaint, DeVille's operations included the collection of defaulted account receivable portfolios acquired from consumer credit originators, such as credit card issuers, auto loan finance companies, student loan providers, retailers, and other consumer lenders.  DeVille has an in-house debt collection center and a network of collection agencies and attorneys who perform collections on DeVille's behalf.

8

DocID: 4832-0195-8278.1

JA141

DeVille's computer servers were seized by the FBI on September 18, 2018 and not returned to the Receiver and reinstalled for operational purposes until October 18, 2018.  All of DeVille's major systems, including its Debtmaster® debt management platform and telephone and email systems were stored and operated on these servers.  As a result, in-house collection activity was dormant and non-operational for the initial 30 days following the unsealing of the Initial Receivership Order and resumed on October 23, 2018.

Despite those challenges, the Receiver re-established key aspects of the operation before the return of the servers, and completed critical actions to preserve the value in the business and the portfolios including:

- Established daily meetings and action plans with DeVille's management team, including General Counsel, Director of Operations, Director of Collections, Director of Compliance, Controller, and Information Technology Managers;

- Consolidated operations from three sites in Euless, Colleyville, and North Richland Hills, Texas into one site in North Richland Hills, Texas;

- Vacated underutilized leased property in Euless, Texas;

- Re-established operating bank accounts for purposes of receiving previously scheduled collection payments from debtors and from third party agencies, and for making payroll and other disbursements;

- Organized and conducted a meeting with all 100+ employees from DeVille, Riverwalk Debt, and Riverwalk Credit to introduce the Receiver and his team, explain the anticipated process moving forward, and answer any questions they had in an effort to maintain the ability to retain sufficient employees to continue operations;

- Made all regular payroll payments (base pay only) and tax/benefits deductions for employees;

- Executed pre-planned, in-process conversions to a new payroll service provider and a new health care insurance provider;

- Provided periodic electronic updates to employees during the time operations were suspended;

- Enacted a strategic headcount reduction eliminating 14 out of 48 collection positions;

9

DocID: 4832-0195-8278.1

JA142

USCA4 Appeal: 22-2256    Doc: 32        Filed: 03/14/2023      Pg: 148 of 582

- Contacted third party collection firms to ensure ongoing collection efforts;

- Accessed QuickBooks financial data from the cloud and used it to forecast 90-day liquidity and determine the profitability of different operating models;

- Opened up alternate communication channels for DeVille's outside collection agencies and other key stakeholders; and

- Responded to debtors who inquired regarding the indictments and how that affected their debt owed to DeVille, the status of their payment obligations, etc.

After internal investigation and discussion with employees, the Receiver understands the following with respect to DeVille's prior business operations. DeVille's collection business included its in-house collection center and a network of collection agencies. When a new portfolio was acquired by DeVille, the in-house employees would onboard the portfolio into Debtmaster® and perform initial diligence on the portfolio. DeVille in-house collectors typically collected the portfolio for the initial 60 days the loans are owned by DeVille. During this time the DeVille team typically performed data analysis of the portfolio, reported to the debtors the acquisition, and reported to the credit agencies for all "in stat" debt (debt within the statute of limitations to report the debt).

DeVille historically contracted with approximately twelve third-party collection agencies. After the initial collection period by in-house collectors, DeVille management would outsource segments of the acquired portfolios to the appropriate collection agencies based upon established criteria. The fees paid to the contract relationships were a percentage of actual collections and were typically netted from the proceeds paid to DeVille by the agency.

These agencies were grouped into five categories, and DeVille sourced debt to these agencies based upon the agency's expertise and the characteristics of the debt. DeVille's third party collection agencies were actively engaged in the collection process. Unlike DeVille's internal collection center, which was suspended for approximately 30 days following the seizure

DocID: 4832-0195-8278.1

of DeVille's servers, the agencies did not rely on the DeVille Debtmaster® and have been actively collecting the portfolios throughout the Applicable Period.

A core group of DeVille's remaining senior staff has assisted the Receiver in understanding mission-critical processes and operating relationships. This core group located key operational data from sources not seized by the FBI, which the Receiver used to better understand the portfolios and business operations. These proactive efforts mitigated the unavoidable disruption created by the seizure of records and allowed DeVille to restart operations quickly when it reinstalled the servers on October 18, 2018, with almost all collectors back in place by October 24, 2018.

Since September 18, 2018, the Receiver team has included one person onsite for day-to-day supervision of ongoing business activities of the three operating businesses, management of all treasury functions for each such business, and the production of other reporting and analyses to the Receiver regarding these operating entities. This person also manages the Receivership Estate bank accounts, pays all expenses of the Receivership Estate incurred in the ordinary course of business, pays all insurance and maintenance costs for the real properties, transferred or established new utility service for each real property, prepares other required financial reporting, as well as other activities to help administer the Receivership Estate.

During the Applicable Period, the Receiver team, Receiver's counsel, company staff and company in-house counsel have responded to numerous threats and actual termination of key operating relationships, despite language in paragraph 35 of the First Amended Receivership Order providing that, "[a]ll counterparties to agreements and contracts entered into with the Receivership parties are enjoined from unilaterally terminating such agreements or contracts without order of this Court." Such parties have included banks, credit card processors, bonding

DocID: 4832-0195-8278.1

JA144

companies, and other service providers.  To date, the Receiver and his counsel have been able to
amicably resolve each situation without the need and expense of seeking Court intervention, but
these outcomes may vary during the next reporting period.  The attempted cancellations of
bonding and other key operating services are currently identified as the largest risks to the going-
concern businesses.

The Receiver and his counsel have also investigated potential adverse claims to a small
subset of DeVille's total debt portfolio and issued a demand letter to such adverse party.  As of
the date this Report is filed, the Receiver and the adverse party are evaluating settlement options.
Absent a consensual resolution in the best interest of the Receivership Estate, the Receiver will
seek enforcement of the prior orders of this Court and the Receivership Estate's rights to the
subject consumer debt accounts.

Since the Receiver assumed control of the operations of DeVille, Riverwalk Debt, and
Riverwalk Credit, and in consultation with senior staff at each company, combined headcount
has been reduced by approximately 45% with no degradation in the operations of the businesses,
resulting in a substantial and recurring savings to the Receivership Estate each pay period.

The Receiver's review of DeVille's Debtmaster® collection platform indicates the
following in the aggregate (both in-house and out-sourced):

- DeVille owns a number of consumer debt portfolios;
- These portfolios were acquired from consumer credit originators largely consisting of
  auto loan finance companies, credit card issuers, student loan providers, and retailers;
- The aggregate face amount of the portfolios exceeds $5 billion; and
- Each of these portfolios has distinct characteristics in terms of charge off dates, past
  collection activity, and quality/performance.  The Receiver is working on segmenting
  these portfolios based on these characteristics in order to analyze and value them and
  prepare for the due diligence and sale process (as further described below).

During the Applicable Period, the Receiver team has compared available QuickBooks
financial records against 2.5 million debtor accounts in the Debtmaster® collection database,

12

DocID: 4832-0195-8278.1

consisting of approximately 1.1 million individual transactions.    The Receiver team reviewed approximately 320,000 transactions, with varying levels of diligence, in 35 QuickBooks company files to both validate the Debtmaster® collection database activity and to review for anomalous transactions.   The Receiver will continue the analysis of the portfolio data in Debtmaster® to learn more.

### (ii)    Recommended Disposition

During the Applicable Period, the Receiver team assembled data regarding the debt portfolios, executed Non-Disclosure Agreements, and engaged in due diligence discussions with several potential advisors to represent the Receivership Estate in the sale of such portfolios.  The Receiver team also conferred with and considered proposals from potential master servicers which could monetize the current portfolio by holding and collecting the accounts over an extended period of time, if that is ultimately determined to be the path to maximize the value to the Receivership Estate.

To assist the Receiver in making a determination as to which path would maximize the value of the portfolios and operating platform for the Receivership Estate (a sale of the portfolios versus holding and collection over time, the Receiver team conducted research and identified an advisor for such purpose.[3] After completion of this valuation process, the Receiver will make a recommendation to the Court to either engage an advisor/broker to sell the current debt portfolios and debt buying business platform, or engage a master servicer to collect out the current debt portfolios over an extended period of time.

---

[3] Although outside the Applicable Period for this Report, the Receiver anticipates filing his Application for Order Authorizing Retention and Employment of Velocity Portfolio Group, Inc.

DocID: 4832-0195-8278.1

   (b)  **Riverwalk Debt Solutions, Inc. and Riverwalk Credit Solutions, Inc.**

     (i)  **Overview**

Riverwalk Debt purports to provide a fee-based service to assist borrowers by providing financial solutions for student loans, with a focus on federal student loan consolidation and federal student loan forgiveness programs. Riverwalk Credit purports to provide a fee-based credit repair organization that reviews and analyzes its clients' credit profiles and then disputes/repairs inaccurate items.

While Riverwalk Debt and Riverwalk Credit are considered separate entities and have their own taxpayer identification numbers, they function as one company. In their most recent iterations, Riverwalk Debt and Riverwalk Credit have been operating since approximately 2014. During this period, it appears both Riverwalk entities have been regularly operating at a loss, at least in part because Riverwalk Debt changed its business strategy multiple times and Riverwalk Credit has not been operating at full capacity. Since 2017, Riverwalk Debt has operated closer to a break-even level while Riverwalk Credit is still showing a loss. During 2018 Riverwalk Credit completed all its state licensing requirements, which has increased overall revenue levels. However, both companies are essentially operating at a startup level.

Throughout the Applicable Period, the Receiver has worked closely with the Director of Operations and other members of the Riverwalk management team to determine cost-savings measures. These measures have included strategic headcount reduction of approximately 15 employees, as well as the elimination of various other operating costs.

     (ii)  **Recommended Disposition**

The Receiver has been contacted by multiple groups and individuals that have expressed an interest in purchasing Riverwalk Debt and Riverwalk Credit. Further, the Receiver has received one written expression of interest from an individual who wants to serve as a stalking-

DocID: 4832-0195-8278.1

JA147

horse bidder in any court-approved sale process. This individual has significant experience in debt consolidation and student loan consolidation industries, as well as the credit repair industry. The individual and other interested parties understand there is value in the current platform despite its startup posture and weak financial performance.

The Receiver team has facilitated due diligence for the identified potential buyer and anticipates seeking Court approval for a sale of these operations during the first quarter of 2019. Any amount received would provide some recovery to the Receivership Estate, maintain the jobs of the employees, and avoid further costs of administration and liquidation. Any sale would be subject to Court approval with notice of hearing and opportunity for parties-in-interest to be heard.

### (c) Ledford & Associates, PLLC

#### (i) Overview

According to its website, Ledford & Associates, PLLC provided public accounting, financial planning, and other financial services to individual consumers and business entities and a broad array of industries, including individuals, businesses, financial services, healthcare, professionals, retail, wholesale, non-profits, estates, and trusts. Accounting services included bookkeeping, financial statement preparation, payroll preparation, payroll reports, sales tax filings, financial reports, and bill pay. Tax services included federal and state tax return preparation for individuals, partnerships, S-Corporations, corporations, trusts, and non-profit entities, as well as matters involving Texas franchise tax reporting, tax planning, and gifting.

When the civil and criminal cases were unsealed on September 18, 2018, the FBI searched the firm's office location at 2801 Paramount Boulevard, Amarillo, Texas 79109. During that search certain records related to the criminal investigation were seized, including the primary server and other computer media. The revelation of the alleged criminal activity and the

15

DocID: 4832-0195-8278.1

inability to operate the business led to the resignation of the key CPAs on staff required to operate the business. As a result, the business has been shuttered since September 18, 2018.

During the Applicable Period, and after contacting the Texas State Board of Accounting for guidance, the Receiver has worked with a former CPA on staff to facilitate the return of client files to those who have reached out to the Receiver either though the sign posted on the firm's front door or word of mouth in the local community. To date, approximately 200 client files (personal and business) have been returned.

Upon information and belief, the preponderance of the remaining files on hand are for clients who require once-a-year tax filings, as compared to weekly payroll process or monthly sales tax reporting clients, which have already retrieved their files. To facilitate the return of these remaining client files, the Receiver is contracting with a former administrative (non-CPA) staff member to open the office all day, each day for a week during January 2019 for former clients to retrieve their physical files.[4]  Arrangements have also been made with former clients who live outside of the area to have their files mailed to them.

### (ii)    Recommended Disposition

The Receiver will take additional steps to arrange for long-term storage of the remaining business records after the client files are returned and while the building is marketed for sale. The physical and electronic records of Ledford & Associates are anticipated to have significant ongoing value to the Receiver team as they examine the Receivership Parties and Receivership Assets and related financial records maintained by Ledford & Associates.

---

[4] The Receiver mailed a letter to each client with remaining physical files at the firm's Amarillo office location advising that the office will be staffed from 9:00a to 6:00p from January 28 through February 1, 2019 for former clients to retrieve their files. Any electronic files requested by clients will be returned once those files are available to Receiver.

DocID: 4832-0195-8278.1

3.    **Real Property**

(a)    **Overview**

During the pendency of this case, the Receiver has undertaken the review and analysis of various real estate holdings, including both residential and commercial properties located in Maryland, Florida, Texas, and Nevada.  These real properties include:

1. 1848 Circle Road, Towson, MD 21204 – Owned by Kevin Merrill;

2. 1055 Spyglass Lane, Naples, FL 34102 – Owned by Kevin and Amanda Merrill;

3. 27776 Sharp Road, Easton, MD 21601 – Owned by Kevin and Amanda Merrill;

4. 531 Hampton Lane, Towson, MD 21286 – Owned by Amanda Merrill;

5. 3018 Susanne Court, Owings Mills, MD 21117 – Owned by Kevin Merrill;

6. 1718 Greenspring Valley Road, Stevenson, MD 21153 – Owned by Kevin Merrill as Trustee of the Kevin B. Merrill Revocable Trust;

7. 9017 Grove Crest Lane, Las Vegas, NV 89134 – Owned by Hillary R. Badrow as Trustee of the J Trust;

8. 1650 Cedar Hill, Dallas, TX 75208 – Owned by J Trust;

9. 2801 Paramount Boulevard, Amarillo, Texas 79109 – Owned by Jay Ledford.

10. 2308 Cedar Elm Terrace, Westlake 76262 – Owned by Jay Ledford; and

11. 1132 Glade Road, Colleyville, TX 76034 – Owned by King Fisher Ltd.;

Based upon initial information developed by the Receiver with the preliminary assistance of Sotheby's International Realty, ("SIR" or "Sotheby's"), and subject to further investigation and adjustment, the aggregate market value of these properties likely exceeds $20 million.

Currently, the Receiver has identified approximately $6.4 million in mortgage debt and approximately $1 million in Mechanic's and Materialman's ("M&M") liens on properties 1 through 9.  Property 10 is subject to a first priority purchase money lien in an amount exceeding $760,000, as well as judgment liens exceeding $7.0 million.  Property 11 is likewise burdened by judgment liens exceeding $7.0 million.  To prevent any attempted or unauthorized sale or mortgaging of any estate real property, counsel for the Receiver has submitted a *lis pendens* for

DocID: 4832-0195-8278.1

recording in each of the appropriate jurisdictions to give notice of the receivership proceeding so that no adverse action is taken absent the knowledge of the Receiver and this Court.

Given the estimated value of the properties, the "luxury" nature of some, and the geographically diverse locations, the Receiver believes it would be best to utilize a national broker to assist the Receiver in monetizing the real estate assets. Utilizing a single, national broker with one point of contact for these purposes reduces the Receiver's administrative overhead and leverages the broker's local networks to maintain, preserve, and market the assets to achieve the highest and best price.

Soon after appointment, the Receiver approached Sotheby's, a national broker with global advertising reach that is experienced in marketing and selling properties of this caliber, to assist with investigating and maintaining the properties until they can be monetized. To date Sotheby's has provided the Receiver, free of charge and prior to any engagement:

- Brokers Opinion of Price, ("BOP"), for each of the residential properties. These assessments were made based on (i) an examination of the exterior of the properties and (ii) comparable sales in the area. The BOPs were subsequently revised and converted to proposed listing prices after interior inspections were completed.

- Preliminary Title Reports. Prepared by an independent title company, the reports delineate: (i) ownership; (ii) legal description of property, including easements, etc.; (iii) mortgage amounts and mortgagees; and (iv) clouds on the title, e.g. M&M liens and judgements.

- Report on Liens and claims. Prepared by an independent title company, the report provides additional details with respect to the claims against the property, contract amount, parties, payments, and terms.

The Receiver and his counsel will continue their examination of issues related to mortgage liens, vendor liens, judgment liens, and other encumbrances, as well as the validity and enforceability of same. Similarly, multiple properties are currently under renovation and the

DocID: 4832-0195-8278.1

Receiver will make a determination, after consultation with the local Sotheby's agent, about whether to complete any further renovations or sell the property "as is."

Concurrently with these efforts, the Receiver has been gathering information with respect to each of the properties, including but not limited to the following:

- Legal description of the property;
- Owner of record;
- Property characteristics, e.g. improvement square footage, number of bedrooms and bathrooms, size of parcel, original date of construction, construction material, date of acquisition, etc.;
- Photos and/or videos taken by the Receiver or acquired from other sources.
- Payment status of 2017 property taxes;
- Amounts, payees and due dates for 2018 taxes by jurisdiction;
- Appraised values of the properties as listed in the tax records of the relevant jurisdictions;
- Information regarding known mortgage liens, the holder of such liens and the related account number with the mortgage company, information regarding known vendor liens and judgment liens;
- Information regarding the insured status of each property, the name of the carrier and broker, current expiration date and renewal premium amount;
- Estimates of market value from sources other than Sotheby's BOP; and
- Status of on-going renovations, if any.

The Receiver also obtained information from the applicable Defendants' representatives and other third-party sources regarding the identification and transfer of utilities for each property. As of the filing date of this Report, all utility accounts have either been transferred to the Receiver or the Receiver has established new service at the subject properties in the name of the Receivership Estate. Additionally, Sotheby's agents, at no charge to the Receivership Estate, have provided essential assistance to the Receiver given the geographic dispersion of the properties to maintain the properties—i.e., cutting the grass, servicing pools and related equipment, effecting minor repairs, winterizing, etc.—on a reimbursement basis.

In addition to ordinary course investigation, maintenance and supervision, the Receiver, with the assistance of counsel as necessary, has:

19

DocID: 4832-0195-8278.1

- Made insurance premium payments to maintain existing coverages on all applicable policies.

- Determined that the first lien filed of record on the Paramount Road property in Amarillo has been paid in full, and requested the lienholder to file a release of lien in the Randall County deed records. The Receiver has received a copy of the transmittal of the release mailed to Randall County.

- Determined that, in the opinion of the Receiver and his counsel, the second lien filed of record on the Paramount Road property in not valid as the grantor of the lien was not the owner of the property.

- As a result of both determinations above, the Paramount Road property has equity and can be liquidated for the benefit of the Receivership Estate.

- The Paramount Road property also incurred interior water damage due to a faulty roof structure. The Receiver has filed a claim with the insurance carrier, organized access with the adjustor and is awaiting a final determination by the carrier regarding repair or replacement.

- Negotiated an agreement to sell the Cedar Elm Terrace property, subject to total liens exceeding $7.7 million, for $100,000. Absent this sale to a co-judgment debtor on more than $7.0 million of secured debt, the Receiver would abandon this property as burdensome and of no economic benefit to the Receivership Estate.

- Negotiated an agreement to sell the Receivership Estate's 50% interest in the Receivership Party that owns the Glade Road property, subject to total liens exceeding $7.0 million, for $100,000. Absent this sale to a co-judgment debtor on more than $7.0 million of secured debt, the Receiver would abandon this property as burdensome and of no economic benefit to the Receivership Estate.

- Obtained possession of the Circle Road property following seizure of the property by the FBI. The Receiver further secured the property through entry of an Order Granting Receiver's Motion to Enforce Receivership Order and Secure Receivership Assets entered on December 14, 2018 (Dkt. No. 77) [5].

- Conferred with the Sotheby's broker, the general contractor and the general contractor's counsel regarding the potential completion of limited additional renovations at the Grove Crest Lane property in order to maximize the return to the Receivership Estate. This property was nearing the end of a renovation project with a cost that exceeded the initial purchase price for the property.

---

[5] Relief Defendant, Amanda Merrill, who was residing at the Circle Road property when the Complaint was filed, was subsequently arrested and charged with conspiracy to violate and violation of statutes related to the removal of property to prevent seizure, corruptly obstructing, influencing or impeding any official proceeding or attempting to do so, and disobedience or resistance to lawful court orders.

DocID: 4832-0195-8278.1

JA153

- Reviewed the purported M&M Liens on the Grove Crest Lane property to determine they were each filed after the entry of the stay in this case prohibiting such adverse actions against Receivership Assets, and conferred with counsel for the general contractor regarding the same.

**(b)    Recommended Disposition**

The Receiver intends to file a motion to engage Sotheby's to list, market, and sell each of the real properties, save and except Cedar Elm Terrace and Glade Road, as well as other real property that might subsequently become property of the Receivership Estate within the next fourteen days.  The Receiver will then enter into a contract to sell each residential real property, subject to the sale procedures authorized by the Court which will provide all parties-in-interest with an opportunity to be heard as to each proposed sale.

**4.    Vehicles**

**(a)    Overview**

Based upon information from pleadings filed by the federal authorities and/or other third-party sources, current information indicates a substantial automobile and boat fleet with year models ranging from 2008 to 2018 and initial estimated values ranging from approximately $11K (Ford Explorer) to approximately $1.4MM (Pagani Huayra).  This fleet of vehicles[6], specifically identified in pleadings of governmental authorities, is itemized as follows:

- 2014 Lamborghini Aventador Roadster, VIN No. ZHWUR1ZD4ELA02398;
- 2014 Mercedes-Benz S63, VIN No. WDDUG7JB1EA061984;
- 2016 Ferrari 488 Coupe, VIN No. ZFF79ALAXG0214388;
- 2017 Audi R8 5.2 Plus Coupe, VIN No. WUAKBAFX1H7902028;
- 2017 Lamborghini Huracan Convertible, VIN No. ZHWUR2ZF1HLA07683;
- 2017 Land Rover Range Rover, VIN No. SALGS5FE7HA341466;

---

[6] This is a fluid list as the FBI seized a number of vehicles on the day the civil and criminal proceedings were unsealed and have continued to seize additional vehicles during the pendency of this case.  Further, it is the Receiver's information that not all of the vehicles reflected in the Complaint were still owned by or in the possession of the Receivership Parties on September 13, 2018.  The Receiver has not participated in these seizures and does not have a current reconciliation of all seized vehicles.  As of the date of this Report, the Receiver is not in possession of any vehicles.

21

DocID: 4832-0195-8278.1

- 2017 Land Rover Range Rover Sport, VIN No. SALWz2FE6HA145282;
- 2017 Porsche 911 Turbo S, VIN No. WP0AD2A96HS167075;
- 2017 Rolls Royce Dawn Convertible, VIN No. SCA666D57HU107107;
- 2017 Rolls Royce Wraith Coupe, VIN No. SCA665C58HUX86607;
- 2018 McLaren 720S Coupe, VIN No. SBM14DCA9JW001142;
- 2008 Bugatti Veyron, VIN No. VF9SA25C78M795164;
- 2013 Ferrari California Convertible, VIN No. ZFF65TJA7D0195090;
- 2015 BMW M6 Gran Coupe, VIN No. WBS6C9C51EDV73690;
- 2014 Ferrari F12 Berlinetta, VIN No. ZFF674UFA2E0199037;
- 2014 Pagani Huayra, VIN No. ZA9H11RAYYSF76034;
- 2015 Mercedes Benz S63, VIN No. WDDXJ7JB8FA000972;
- 2015 Mercedes Benz S63, VIN No. WDDXJ7JB6FA001781;
- 2017 Cadillac Escalade ESV, VIN No. 1GYS4JKJ7HR194939;
- 2017 Lamborghini Aventador, VIN No. ZHWUT3ZDXHLA05923;
- 2018 Ferrari 488 Spider, VIN No. ZFF80AMA4J0228310;
- 2018 Lamborghini Huracan, VIN No. ZHWUS4ZF6JLA10746;
- 2015 BMW S1000R Motorcycle, VIN No. WB10D210XFZ352440;
- 2015 Harley-Davidson VRSCDX Night Rod, VIN No. 1HD1HHH18FC805081;
- 2018 Formula 350 Crossover Bowrider Port Cruiser, Hull No. TNRD1491C818;
- 2014 Ford F-150, VIN No. 1FTFW1R69EFA85544;
- 2016 Ducati Superbike Motorcycle, VIN No. ZDM14B1W1GB001832;
- 2016 Continental, VIN No. 5NHUVH010GN080677;
- 2015 Polaris Sportsman, VIN No. 4XASEA574FA235601;
- 2015 Bentley Flying Spur, VIN No. SCBET9ZA7FC042592;
- 2018 Chevrolet Silverado, VIN No. 3GCPCREC5JG128390;
- 2012 Nissan Rogue, VIN No. JN8AS5MT1CW285782;
- 2016 Ferrari 488, VIN No. ZFF79ALA3G0217973; and
- 2016 Tesla Model S, VIN No. 5YJSA1E49GF155262.

To preserve and maximize the value of the performance vehicles, the Receiver believes it is imperative they be stored and maintained by knowledgeable individuals. To that end, the Receiver has considered several potential brokers and selected Prestige Motor Car Imports, LLC ("Prestige") to collect, maintain, and manage the liquidation of the vehicles. The Receiver intends to seek authority to engage Prestige, upon separate motion and opportunity for parties-in-interest to be heard, with such engagement terms to include:

- Shipping the vehicles to a single location;
- Showing the cars;
- Storing the cars at no cost;

DocID: 4832-0195-8278.1

JA155

- Promoting and exposing the vehicles on all proper advertising channels;
- Maintenance and repairs (replacing dead batteries, reprogramming keys, etc.); and
- Delivering to eventual buyers.

All costs associated with the cars will be deducted from the ultimate sale price, which will also be subject to an anticipated commission of five percent (5%) or less.

The Receiver has identified and requested refunds from Prestige of two $25,000 deposits (for a total of $50,000) related to two additional Lamborghini vehicles. Additionally, Receiver and Prestige have worked together to obtain the return of a $703,000 deposit placed on a Pagani Huayra.

### (b)     Recommended Disposition

The Receiver anticipates filing his Motion to Approve Procedures for Sale of Automobiles and for Order Authorizing Retention and Employment of Prestige to list, market, and sell all cars that are, or subsequently become, property of the Receivership Estate. Such motion will recommend to the Court a notice-based procedure for the sale of each vehicle (as opposed to a separate motion for each vehicle) that seeks to balance the administrative burden on the Court and Receivership Estate against the desire to provide adequate notice of such sales to all parties-in-interest.

With respect to the 2018 Formula 350 Crossover Bowrider Port Cruiser, the Receiver has negotiated a consignment agreement with a suitable boat broker in Florida to sell the subject vessel. Within fourteen (14) days of the filing of this Report, the Receiver intends to file a motion to engage the identified broker with sale procedures to be approved by the Court to include an opportunity for parties-in-interest to be heard when an acceptable offer is received and presented to the Court. The Receiver has also confirmed current insurance coverage on the

DocID: 4832-0195-8278.1

vessel and investigated the applicability of such coverage while being transported to, and on consignment with, the broker.

### 5.    Other Property

The Receiver, independently and through collaboration with the SEC, FBI, and U.S. Attorney's Office Asset Forfeiture Unit has identified other personal property, including but not limited to: art, collectibles, jewelry, rare wine, watches, luggage, and similar luxury items.  To maximize recovery to the Receivership Estate, the Receiver has researched and identified various consignment and/or auction outlets for monetizing the different classes of personal property.  For the highest-end personal property, the Receiver has identified a specific auction house which is in the process of inspecting and appraising the subject personal property, including property under the custody and control of the FBI.  The Receiver is in the process of finalizing a retention agreement with the auction house and an anticipated motion for approval of the same to be filed with the Court within the next thirty days.  The Receiver team has also identified outlets and sale strategies for the lower-end, yet still luxury goods, which will also be the subject of a retention and sale procedures motion to be filed with the Court within the next thirty days.

The Receivership Assets also include the rights as lender in a litigation finance agreement whereby a Receivership Party loaned $750,000 to a plaintiff in a pending lawsuit.  Upon discovery of this asset, Receiver considered a number of alternatives avenues to sell the Receivership Estate's interest in the subject loan and security agreement.  To prevent a default of the obligations of the Receivership Party under the litigation finance agreement, the Receiver funded the final $130,000 due to the plaintiff.  The terms of the loan and security agreement call for the repayment of the principal amount, interest accrued thereon, and 10% of any recoveries related to the litigation.  On December 12, 2018, the plaintiff received a jury verdict in the

DocID: 4832-0195-8278.1

amount of $20 million.  As of the date of this Report, there are post-verdict motions pending

with the trial court and the applicable appeal period is stayed pending rulings on those motions.

The Receiver team and his counsel are regularly monitoring this matter with plaintiff's counsel.

During the Applicable Period, the Receiver identified a whole life insurance policy as a

Receivership Asset with a surrender value of $694,083.04 and, prior to the filing of this Report,

filed his Motion for Authority to Surrender Whole Life Insurance Policy to Guardian Life

Insurance Company of America (Dkt. No. 95).

**6.      Insurance**

The Receiver has been working to obtain information from the applicable Defendants'

representatives and other third-party sources regarding the identification of all applicable

insurance policies for all property of the Receivership Estate.  Through forwarded mail and other

independent means, the Receiver was able to discover a partial list of insurance carriers and

brokers.  As of the filing of this Report, for each of the real properties owned by the Receivership

Estate, the Receiver has either confirmed the existence of continuing insurance coverage or

acquired new coverage.  Additional insurance needs continue to be evaluated.

**IV.      ESTATE ADMINISTRATION**

Pursuant to the First Amended Receivership Order the Receiver is authorized by the

Court to use Receivership Assets and proceeds thereof to pay debts and expenses of the

Receivership Parties that (i) have accrued prior to or during the receivership and (ii) in the sole

discretion of the receiver are essential or necessary to the operations of the non-individual

Receivership Parties.To facilitate the administration of the Receivership Estate, the Receiver has

established a single Receivership Bank Account into which all bank account turnover payments

and other Receivership Asset liquidation proceeds have been deposited.  Further, as provided for

in the First Amended Receivership Order at paragraph 8(d), the Receiver has used such funds in

25

the Receivership Bank Account for "making payments and disbursements and incurring expenses as may be necessary or advisable in the ordinary course of business for discharging his duties as Receiver." Additionally, the Receiver has maintained and opened new bank accounts specifically for DeVille, Riverwalk Credit, and Riverwalk Debt as necessary to protect or improve the operations of each entity. The financial report at Exhibit A delineates activity between the operating entities and the balance of the Receivership Estate providing a clearer picture of the separate components of the Receivership Estate.

The Receiver has also registered the domain www.Merrill-Ledford.com for his use to communicate with investors and other stakeholders in this case. The website will contain the Initial Preservation Report, each Quarterly Report, and other matters describing the process and progress of the case. The Receiver will also include an "Asset Sales" section where notice of all significant asset sales will be provided. It is anticipated the website will eventually contain information about the approved claims process for investors and other creditors of the Receivership Parties.

**V.    UNRESOLVED CLAIMS AGAINST RECEIVERSHIP PROPERTY**

During the Applicable Period, the Receiver has received some claims against Receivership Assets. At this time, the Receiver continues to investigate those allegations and review any and all evidence provided by such claimants in support of their allegations of ownership of the Receivership Assets. It is anticipated that Parties asserting claims against Receivership Assets will receive notice and an opportunity to object during any potential sale process that is approved by the Court.

Additionally, the Receiver has received numerous contacts from potential investor victims requesting information. The Receiver has provided general status updates and directed

DocID: 4832-0195-8278.1

JA159

such parties to pleadings filed of record in the case, including the Receiver's Initial Preservation Report. After the above-referenced website is operational, inquiries will also be directed there. During the Applicable Period, the Receiver also directed investors to both the SEC and the FBI.

## VI.    ACCRUED ADMINISTRATIVE EXPENSES

During the Applicable Period, the Receivership Estate accrued administrative expenses comprised of professional fees for the services of the Receiver's team and counsel, both of which remained unpaid during the Applicable Period. The Receiver and counsel each filed fee applications for the period of September 18, 2018 through October 31, 2018 on December 13, 2018 (Dkt. 70 and Dkt 71). Receiver and counsel will be filing fee applications requesting additional approval of fees accrued during the period of November 1, 2018 through December 31, 2018 pursuant to the timing provided in the Receiver Order and the SEC requirements. At this time, the total amount of accrued and unpaid administrative expenses[7] as of December 31, 2018 is $661,231.92 for the Receiver and his team, and $447,108.62 for the Receiver's counsel, Husch Blackwell. The Receiver anticipates the Receivership Estate will continue to accrue such administrative expenses going forward with the actual amounts fluctuating commensurate with the activities required to properly administer the Receivership Estate.

## VII.    RECEIVER'S ONGOING INVESTIGATION

The Receiver continues his investigation with the assistance of his counsel, Husch Blackwell LLP. The Receiver will file supplemental reports to the Court for the duration of the Receivership, as required by the Receivership Order.

## VIII.   CLAIMS DETERMINATION AND DISTRIBUTION PROCESS

The Receivership Order states that "without further order of this Court, the Receiver's duties shall not include a forensic investigation to identify claimant on or creditors of

---

[7] These balances include the accrued fees for which fee applications have not yet been finalized and filed.

DocID: 4832-0195-8278.1

JA160

Receivership Assets or any determination of amounts owed to such parties." Receivership Order at ¶ 41. The Receiver believes that the Receivership Estate is the proper venue and mechanism to resolve investor claims and affect distribution pursuant to further Order of this Court. However, the Receiver intends to focus current time and resources on activities that will generate proceeds for the Receivership Estate. Claims determination and distributions to allowed claimants will not occur until later in the case and there is ample time to address these issues at a later date. Additionally, the Receiver would need access to additional investor information before a proposed claim and distribution process can be recommended to the Court.

## IX.    CONCLUSION

Accordingly, the Receiver, Gregory S. Milligan, respectfully submits this First Quarterly Status Report for the Court's consideration.

Respectfully submitted,

*/s/ Lynn H. Butler*
Lynn H. Butler, *pro hac vice*
HUSCH BLACKWELL LLP
111 Congress Ave., Suite 1400
Austin, TX 78701
Tel: (512) 472-5456
Fax: (512) 479-1101
lynn.butler@huschblackwell.com

Brian P. Waagner, Fed. Bar No. 14954
HUSCH BLACKWELL LLP
750 17th Street, NW, Suite 900
Washington, D.C. 20006
Tel:  (202) 378-2300
Fax:  (202) 378-2318
brian.waagner@huschblackwell.com

Buffey E. Klein, *pro hac vice*
HUSCH BLACKWELL LLP
2001 Ross Avenue, Suite 2000
Dallas, Texas  75201
Tel: (214) 999-6100
Fax:  (214) 999-6170

28

JA161

buffey.klein@huschblackwell.com

*Counsel for Receiver Gregory S. Milligan*

29

DocID: 4832-0195-8278.1

## CERTIFICATE OF SERVICE

On January __, 2019, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court for the District of Maryland, using the electronic case filing system of the court.  I hereby certify that I have served all counsel and/or pro se parties of record electronically through the Court's CM/ECF filing system for all parties who have registered to receive electronic service.  Additionally, the foregoing document was served on the following parties not registered for Court's CM/ECF filing system as indicated below:

**Defendant Kevin B. Merrill (via U.S. Mail):**

Kevin B. Merrill
Harford County Detention Center, #1335278
1030 Rock Spring Rd.
Bel Air, MD 21014

**Criminal Counsel for Defendant Kevin B. Merrill (via E-Mail and U.S. Mail):**

Elizabeth Genevieve Oyer
Office of the Federal Public Defender
100 S Charles St Ste 900 Tower II
Baltimore, MD 21201
liz_oyer@fd.org

Maggie Grace
Office of the Federal Public Defender
100 S Charles St, Tower II, 9th Floor
Baltimore, MD 21201
maggie_grace@fd.org

**Criminal Counsel for Defendant Jay B. Ledford (via E-Mail and U.S. Mail):**

Harry J Trainor , Jr
Trainor Billman Bennett and Milko LLP
116 Cathedral St Ste E
Annapolis, MD 21401
htrain@prodigy.net

**Criminal Counsel for Defendant Cameron R. Jezierski (via E-Mail and U.S. Mail):**

Joseph J Aronica
Duane Morris LLP
505 9th St NW Ste 1000
Washington, DC 20004
jjaronica@duanemorris.com

30

DocID: 4832-0195-8278.1

JA163

**Criminal Counsel for Relief Defendant Amanda Merrill (via E-Mail and U.S. Mail):**

David Z Seide
5301 Burling Terrace
Bethesda, MD 20814
seide.david@gmail.com

**Relief Defendant Lalaine Ledford (via U.S. Mail):**

Lalaine Ledford
10512 Courtney Cove Ave.
Las Vegas, NV 89144

/s/ Lynn H. Butler
Lynn H. Butler

31

JA164

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2019 OCT -4  PM 3: 37

CLERK'S OFFICE
AT BALTIMORE

BY_____ DEPUTY

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                              **Plaintiff,**<br><br>        v.<br><br>**KEVIN B. MERRILL, et al.,**<br><br>                              **Defendants.** | Case No. RDB-18-2844 |

[PROPOSED] **ORDER GRANTING MOTION TO AUTHORIZE THE RECEIVER TO
IDENTIFY CLAIMANTS AND CREDITORS AND
PROPOSE A PLAN OF DISTRIBUTION**

Upon consideration of the Securities and Exchange Commission's Motion to Authorize the Receiver to Identify Claimants and Creditors and Propose a Plan of Distribution (the "Motion") and any opposition thereto, it is hereby ORDERED that the Motion is GRANTED.

IT IS FURTHER ORDERED that the First Amended Order Appointing Temporary Receiver (Dkt. 62) (the "Receivership Order") is hereby amended to authorize the Receiver to identify claimants on and creditors of Receivership Assets and to formulate, in consultation with the Securities and Exchange Commission, a proposed plan of initial distribution from the Receivership Estate.

**IT IS SO ORDERED.**

Dated: October **4**, 2019

_____
Honorable Richard D. Bennett
United States District Court Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>KEVIN B. MERRILL, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)   **Case No.: 1:18-cv-02844-RDB**<br>)<br>)<br>)<br>)<br>) |

### RECEIVER GREGORY S. MILLIGAN'S MOTION FOR ORDER SETTING CLAIMS BAR DATE, ESTABLISHING CLAIMS PROCEDURE, AND APPROVING NOTIFICATION PROCESS

Receiver Gregory S. Milligan (the "Receiver") respectfully files this Motion for Order Setting Claims Bar Date, Establishing Claims Procedure, and Approving Notification Process (the "Motion"). In support of this Motion, the Receiver states as follows:

### I.    INTRODUCTION

1.     On September 13, 2018, the Securities and Exchange Commission (the "SEC") filed a Complaint that initiated this action (the "SEC Action") against Defendants Kevin B. Merrill ("Merrill"), Jay B. Ledford ("Ledford"), Cameron R. Jezierski ("Jezierski"), Global Credit Recovery, LLC, Delmarva Capital, LLC, Rhino Capital Holdings, LLC, Rhino Capital Group, LLC, DeVille Asset Management LTD, and Riverwalk Financial Corporation (collectively, the "Defendants") alleging various securities violations arising from the Defendants' operation of a Ponzi scheme that raised more than $345 million from more than 230 individual investors or investor groups to purportedly purchase consumer debt portfolios. *See* Dkt. No. 1. On November 6, 2018, the SEC filed an Amended Complaint adding Amanda Merrill and Lalaine Ledford as Relief Defendants in this action. Amanda Merrill is married to Merrill, and Lalaine Ledford is

HB: 4815-6234-3641.2

married to Ledford. Amanda Merrill and Lalaine Ledford are collectively the "Relief Defendants."
The Relief Defendants benefited from their husbands' scheme through transfers of funds
fraudulently obtained from investors and assets purchased with such funds. The Relief Defendants
have indicated that they will be asserting claims to property and the proceeds from the sale of
property of the Receivership Estate.[1]

      2.     On September 13, 2018, this Court entered the Order Appointing Temporary
Receiver (the "Initial Receivership Order") pursuant to which the Court took exclusive jurisdiction
and possession of all assets of the Defendants and their affiliated entities (collectively, the
"Receivership Parties")[2] and certain assets held by the Relief Defendants including, but not limited
to, all assets that are "(a) owned, controlled, or held, in whole or in part, by or for the benefit of
any of the Receivership Parties; (b) in the actual or constructive possession of any of the
Receivership Parties, or other individual or entity acting in concert with any of the Receivership
Parties; (c) held by an agent of any of the Receivership Parties, including as a retainer for the
agent's provision of services; or (d) owned, controlled, or held, in whole or in part, by, or in the

---

[1] Capitalized terms herein shall have the meaning as used in the Receivership Order (as defined below) unless otherwise noted.

[2] The Receivership Parties are defined in the Receivership Order as: (i) Merrill; (ii) Ledford; (iii) Jezierski; (iv) Global Credit Recovery, LLC; (v) Delmarva Capital, LLC; (vi) Rhino Capital Holdings, LLC; (vii) Rhino Capital Group, LLC; (viii) DeVille Asset Management LTD; (ix) Riverwalk Financial Corporation; (x) K.B. Merrill Associates; (xi) Financial Reclamation Group LLC; (xii) Halo Credit Solutions LLC; (xiii) JBL Holdings LLC; (xiv) Jay B. Ledford, P.C.; (xv) the Joseph Finance Company; (xvi) Leddy Bear LTD; (xvii) Ledford & Associates, PLLC; (xviii) King Fischer LTD d/b/a LP Investments LTD; (xix) NLEX, Inc.; (xx) Receivables Portfolio Interchange, Inc.; (xxi) Riverwalk Capital Investments, Inc.; (xxii) Riverwalk Credit Solutions, Inc.; (xxiii) Riverwalk Debt Solutions, Inc.; (xxiv) Riverwalk Fixed Asset Group LLC; (xxv) SCUSA Financial, Inc.; (xxvi) Vaquero Asset Management, Inc.; (xxvii) CRJ Holdings LLC; (xxviii) Centurion Capital Corporation; (xxix) GCR CBL CP I, LLC; (xxx) GCR CBL CP II, LLC; (xxxi) GCR CBL CP III, LLC; (xxxii) GCR CBL CP IV, LLC; (xxxiii) GCR HCP Holdings 1, LLC; (xxxiv) GCR Mercer Holdings, LLC; (xxxv) the J Trust; and (xxxvi) the Kevin B. Merrill Revocable Living Trust. *See* Dkt. No. 62 at ¶ 1.

HB: 4815-6234-3641.2

actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, trust, or other entity directly or indirectly owned, controlled, or held, in whole or in part, by any of the Receivership Parties, including assets that have been transferred to other persons or entities but as to which assets such persons or entities do not have a legitimate claim" (the "Receivership Assets"). *See* Dkt. No. 11 at 3. On November 27, 2018, the Court entered the First Amended Order Appointing Temporary Receiver (the "Amended Receivership Order") (the Initial Receivership Order and Amended Receivership Order are collectively, the "Receivership Order") clarifying and modifying the Receivership Parties and the Receiver's authority. *See* Dkt. No. 62.

3.    The Court appointed Gregory S. Milligan as the Receiver for the Receivership Assets and Receivership Parties (the "Receivership Estate") with the goal and purpose of marshaling and preserving the Receivership Assets to maximize the recovery to defrauded investors. Since being appointed, the Receiver has coordinated extensively with the SEC, U.S. Attorney's Office (the "U.S. Attorney"), the U.S. Marshals Service, and the Federal Bureau of Investigation (the "FBI") regarding the identification and safeguarding of Receivership Assets. The Receiver also operated the following businesses located in Texas while he explored the best method to maximize their value for the benefit of the Receivership Estate: (i) DeVille Asset Management Ltd. ("DeVille"); (ii) Riverwalk Credit Repair, Inc. ("Riverwalk Credit"); and (iii) Riverwalk Debt Solutions, Inc. ("Riverwalk Debt") (Riverwalk Credit and Riverwalk Debt are collectively, "Riverwalk"). Since his appointment, the Receiver has obtained Court approval to liquidate substantially all of the Receivership Assets that were owned or held in the name of the Receivership Parties, and the Receiver will continue to seek authority to liquidate the remaining Receivership Assets. The Receivership Estate has accumulated approximately $56.2 million in cash as of December 31, 2020 from sale proceeds of Receivership Assets and business income of

HB: 4815-6234-3641.2

DeVille and Riverwalk for an eventual distribution to defrauded investors and other creditors of the Receivership Parties following the claims procedure proposed in this Motion (the "Claims Procedure").

4.    The Claims Procedure is intended to incorporate the prior submissions from defrauded investors and the analysis completed by the FBI, U.S. Attorney, and SEC, which includes the information contained in the restitution claim forms and victim impact statements submitted by defrauded investors in the related criminal case (the "Criminal Action") to this SEC Action.  *See* Criminal Action, Case No. 18-cr-00465-RDB.  As detailed below, the Receiver intends to send each Known Investor (as defined below) an individualized schedule with a proposed claim amount based on each Known Investor's transfers to and from the Receivership Parties.  If the Known Investor agrees with the proposed claim amount, the Known Investor will simply sign and return the schedule and the claim will be allowed in that amount.  If the Known Investor disputes any transactions or the amount of the proposed claim, the Known Investor can submit documents and information to support the Known Investor's alleged claim.  To the extent the Known Investor has received any Compensation Payment (defined below) to compensate them, in whole or in part, for the losses sustained in the Defendants' fraudulent scheme, the Known Investor must disclose the payment or recovery to be included in the calculation of the claim amount.  The process will maintain anonymity for the Known Investors who wish to remain anonymous through use of randomly assigned investor numbers, redactions, and motions to seal any public filings.

5.    The Claims Procedure will also allow potentially unknown investors ("Unknown Investors") to submit a claim, along with sufficient documents and information for the Receiver to verify the legitimacy of the alleged claim.  As part of the process, the Receiver will publish notice

HB: 4815-6234-3641.2

JA169

of the Claims Procedure on his website, www.Merrill-Ledford.com and in national and regional publications intended to reach any potential unknown claimants ("Unknown Creditors")[3] who may have invested or done business with one of the Receivership Parties.

6.    The Claims Procedure will also allow the Relief Defendants to assert claims to property of the Receivership Estate or proceeds from the sale of property that was within the Receivership Estate.  However, the ultimate resolution of the Relief Defendants' alleged claims will not be resolved until after a judgment is entered in this SEC Action with respect to the SEC's claims against each of the Relief Defendants.

7.    The proposed Claims Procedure will also provide an opportunity for other general unsecured or trade creditors to submit a claim to the extent they believe one exists against one of the Receivership Parties.

8.    If the Receiver disputes a claim, the proposed Claims Procedure allows the Claimant to supplement with additional documents and information to substantiate the claim.  If the Receiver still disputes the claim after receiving the supplement, the proposed Claims Procedure allows for an efficient resolution of claim disputes while still maintaining anonymity for Claimants who wish to remain anonymous.  The proposed Claims Procedure maintains the Court's discretion to request additional briefing, set hearings, and issue rulings with respect to the allowance or disallowance of claims.

## II.    BACKGROUND AND CREDITORS

### A.    The Ponzi Scheme.

9.    As more fully alleged by the SEC in its Amended Complaint, the Defendants

---

[3] The Known Investors, Other Creditors, Unknown Investors, Unknown Creditors, and Relief Defendants are collectively the "Claimants."

HB: 4815-6234-3641.2

JA170

operated a Ponzi-like scheme that involved, among other things, securities offerings rife with misrepresentations, fake debt, forged signatures, fabricated wire transfers, the movement of millions of dollars into personal accounts, and an elaborate scheme wherein the Defendants offered and sold investments in the same (and often fictitious) debt and/or debt portfolios, to multiple victims.  The Defendants pled guilty to various counts and were sentenced to varying prison terms in the Criminal Action.  The Defendants also agreed to entry of consent judgments in this SEC Action that established liability on the claims brought by the SEC.

10.     In addition, the SEC has brought claims against the Relief Defendants in this SEC Action alleging they benefited from their husbands' fraudulent scheme by receiving proceeds of the fraud for which they have no legitimate claim.  *See* Dkt. No. 50.  On July 31, 2020, Amanda Merrill filed a motion to dismiss and for partial summary judgment on the claims asserted against her (the "Motion to Dismiss").  *See* Dkt. No. 327.  The SEC opposes Amanda Merrill's Motion to Dismiss.  *See* Dkt. No. 335.  As of the date of the filing of this Motion, Amanda Merrill's Motion to Dismiss remains pending.  In addition, Lalaine Ledford has failed to appear and file an answer or Rule 12 motion with respect to the claims being brought against her, and the Clerk of Court has entered an Order of Default.  *See* Dkt. No. 389.

11.     The Receiver and his attorneys have reviewed available documentation and information regarding the investment and business activity associated with the Receivership Parties and have reached a number of preliminary conclusions with regard to potential Claimants, as more fully described below.  The potential Claimants fall within one of the following categories under this proposed Claims Procedure: (i) Known Investors[4] (as defined below); (ii) Unknown Investors; (iii) Other Creditors (as defined below); and (iv) Relief Defendants.  The Receiver does

---

[4] Known Investors include individual investors and Investment Entities (as defined below).

HB: 4815-6234-3641.2

not believe that the ultimate recovery by the Receiver in this SEC Action will be sufficient to return the full amount of principal contributions to the defrauded investors and payment of all claims of Other Creditors of the Receivership Estate.

**B.    Known Investors.**

12.    On October 4, 2019, this Court entered the Order Granting Motion to Authorize Receiver to Identify Claimants and Creditors and Propose a Plan of Distribution.  *See* Dkt. No. 222.  On November 18, 2019, this Court entered an Order in the Criminal Action that authorized the U.S. Attorney to share Victim Financial Information[5] (as defined in the Order) with the Receiver for purposes of developing a proposed claims procedure and plan of distribution.  *See* Dkt. No. 187 in the Criminal Action, Case No. 18-cr-00465-RDB.  Since entry of these Orders, the Receiver has worked extensively with the SEC, U.S. Attorney, and the FBI regarding the identification of investor victims and the quantification of their claims against the Receivership Estate.

13.    The Receiver has concluded that there exists a limited number of known individual investors or pooled investor groups (the "<u>Known Investors</u>") who made investments with one of the Receivership Parties or were identified as victims in the Criminal Action.  Of the Known Investors, there were fifty-nine (59) corporate entities or pooled investor groups (*i.e.*, not individual investors) (the "<u>Investment Entities</u>") which made investments with one of the Receivership Parties.  Thirty-five (35) of the Investment Entities are either wholly owned by a single individual investor, closely held entities owned by family members, or owned by 3-4

---

[5] In connection with the sentencing proceedings in the Criminal Action, the U.S. Attorney communicated with victims of the Defendants' scheme to defraud and asked each to complete a Victim Impact Statement and a Restitution Claim Form, which have now been shared with the Receiver.  *See* Dkt. No. 186 at ¶ 2 in Case No. 18-cr-00465-RDB.  However, as discussed more fully below, not all investors completed a Victim Impact Statement or a Restitution Claim Form.

HB: 4815-6234-3641.2

JA172

individual business partners.[6]  The remaining twenty-four (24) Investment Entities are pooled

investor groups that have up to dozens of unrelated, individual investors within them that are

actively managed investment vehicles.  Except as noted below with respect to the Bethesda Group,

each Investment Entity will be treated as a single Known Investor for purposes of the proposed

Claims Procedure.

14.      Investment Entities must certify to the Receiver that: (i) the Investment Entity has

maintained its legal status as an active entity; (ii) the Investment Entity is authorized to submit

claims and receive distributions on behalf of the individual investors within it that invested with

the Investment Entity; and (iii) the Investment Entity will distribute any interim and final

distribution to the individual investors within it in accordance with any Court-authorized

distribution plan.  The Receiver anticipates that, pursuant to an order of this Court, each Investment

Entity will be responsible for any interim and final distribution to the individual investors within

the Investment Entity.[7]  However, individual investors within one group of Investment Entities,

referred to in the Amended Complaint as the "Bethesda Group," have sued its organizer, Gary

Day.  In *Connaughton et al. v. Day*, No. 461362V, previously pending in the Circuit Court for

Montgomery County in the State of Maryland, the Bethesda Group investors allege that Gary Day

and his related entities breached fiduciary duties, failed to conduct due diligence on the

---

[6] Some of the Investment Entities include individuals who signed an investor agreement (or other similar document) with a Receivership Party in their individual capacity but funded the investment from an account in the name of a corporate entity.  The reverse is also true.  Some of the Investment Entities include corporate entities that signed an investor agreement (or other similar document) with a Receivership Party but funded the investment from an account in the name of an individual. The Receiver's communications with these Investment Entities will be sent to both the individual and corporate entity for the avoidance of doubt.

[7] Certain Investment Entities have had a receiver appointed in conjunction with separate state-court securities actions.  The court-appointed receiver of these Investment Entities will be treated as the fund organizer or responsible party for purposes of this proposed Claims Procedure and any ultimate distributions.

HB: 4815-6234-3641.2

JA173

Receivership Parties, and misrepresented their technical expertise in these types of investments. Due to this litigation, each individual investor within the Bethesda Group will be a Known Investor and will be treated in this Claims Procedure as though he or she had invested directly with a Receivership Party.

15.     As part of the Criminal Action, the FBI and U.S. Attorney spent hundreds of hours preparing their analysis to trace investor transactions and the net position of Known Investors, and that analysis has been reviewed by the SEC.  The Receiver has tested a random sampling of such analysis and has confirmed its accuracy but, for purposes of efficiency and maximizing the eventual return to creditors, the Receiver has not and will not repeat the same process in full that has already been completed by the FBI and U.S. Attorney.  To recreate the FBI and U.S. Attorney's analysis from scratch would cost the Receivership Estate tens of thousands of dollars that, in the Receiver's opinion, is unnecessary given the thoroughness of the analysis prepared by the FBI and U.S. Attorney.  The FBI and U.S. Attorney's comprehensive and tested analysis has been accepted by the Receiver as the starting point of this proposed Claims Procedure, and the claim determinations reached by the FBI and U.S. Attorney will serve as the initial claim amount for each Known Investor.[8]

16.     As described in more detail below, each Known Investor must confirm the accuracy of the proposed claim amount or correct any errors or omissions in the calculation of the proposed claim amount.  In addition, certain Known Investors have received payments including, but not limited to, settlements in separate litigation, recoveries paid by state-court receivers, and other

---

[8] The claim amount for each Known Investor may be adjusted slightly from the criminal restitution proceedings based on additional investigation and information as discussed more fully in this Motion.  Any adjustments will be noted in the communications the Known Investor receives from the Receiver as part of this proposed Claims Procedure.

HB: 4815-6234-3641.2

payments to victims (these payments are referred to herein as "Compensation Payments"). Known Investors will be required to disclose to the Receiver the Known Investors' receipt of any Compensation Payments. In addition, Known Investors will have an ongoing duty to disclose to the Receiver any future Compensation Payments that they may receive after the submission of this schedule to the Receiver. If the Receiver determines that a Known Investor has failed to disclose a Compensation Payment, the Known Investor may lose their right to participate in any ultimate distribution in this SEC Action or any anticipated distribution. To the extent the Receiver discovers an undisclosed Compensation Payment after a distribution is made in this SEC Action, the Known Investor may be required to return the full amount of any distribution received in this SEC Action.

17.    Based on the Receiver's review of the above analysis, the books and records of the Receivership Parties, documents provided by the SEC, U.S. Attorney, and the FBI, documents provided in response to subpoenas, and information provided to the Receiver directly from investors of the Receivership Parties (the "Relevant Documents"), the Receiver is presently aware of three-hundred and twenty-five (325) Known Investors. The Receiver has not been in contact with each Known Investor, but the Receiver does have the last known contact information for each Known Investor from the restitution claim process in the Criminal Action and the information obtained by the Receiver in this SEC Action.

18.    As part of the proposed Claims Procedure detailed in this Motion, the Receiver will contact each Known Investor to confirm the amount of each Known Investor's claim. Additionally, the Receiver will contact individuals, to the extent contact information is available, within Investment Entities to provide notice that any potential claim will be administered through

HB: 4815-6234-3641.2

JA175

the Investment Entity.[9]  These efforts will provide the individuals notice of the Claims Procedure and the opportunity to engage and coordinate with the organizer, manager, or responsible party for their Investment Entity to ensure the accuracy of claim amounts.

19.    As part of the proposed Claims Procedure, each Known Investor will be assigned a unique and confidential investor number to maintain privacy,[10] thereby facilitating the necessary transmission of sensitive information by and between the parties and the Court.  The unique and confidential investor numbers will be used in lieu of individuals and entities' names due to the sensitive financial information associated with their investments.  If a Known Investor does not want to maintain anonymity, the Known Investor will not be precluded from using the Known Investor's name (rather than their assigned number) during the Claims Procedure and in any filings with the Court in the SEC Action.

20.    The Receiver has analyzed the Relevant Documents and has derived preliminary conclusions concerning the investment activity attributable to each Known Investor.  The majority of the Known Investors made contributions in excess of the total sum of disbursements they received from the Receivership Parties in connection with their investments, resulting in a net loss. Through his review of the Relevant Documents, the Receiver is presently aware of approximately two-hundred and six (206) such Known Investors who suffered net losses.  These Known Investors—as well as other potential and currently Unknown Investors who suffered a net loss—

---

[9] Individual investor's contact information was collected by the Receiver from the Investment Entities through voluntary productions and formal subpoena responses.  Foreign privacy laws prevented the Receiver from obtaining contact information for individual investors within one pooled investor group.

[10] The identities and investment amounts of each Known Investor have been filed and maintained under seal in the Criminal Action to protect sensitive financial information.  The Claims Procedure proposed by the Receiver in this Motion is designed to maintain the privacy of Known Investors who wish to remain anonymous.

HB: 4815-6234-3641.2

may have claims against the Receivership Estate in the amount of the net loss they incurred in connection with their investment(s) (the "Investor Creditors"). Such claims will be considered by the Receiver for purposes of calculating future distributions.[11]

21.    One Known Investor received disbursements from the Receivership Parties in the exact amount of the Known Investor's contribution (the "Net-Neutral Investor"), which means the Receiver does not believe this Net-Neutral Investor will have a claim against the Receivership Estate. The Receiver has determined that the remaining one-hundred and eighteen (118) Known Investors received disbursements from the Receivership Parties in excess of the total sum of their contributions (the "Net-Winner Investors"). The Receiver does not believe these Net-Winner Investors possess claims against the Receivership Estate and may themselves be subject to claims by the Receivership Estate. However, as part of the Claims Procedure proposed in this Motion, each Net-Neutral Investor and Net-Winner Investor will have an opportunity to participate in the Claims Procedure and provide sufficient documentation to support any such investor's belief that they suffered a loss and should be considered an Investor Creditor in this SEC Action.

**C.    Other Creditors.**

22.    Through his review of the Relevant Documents, the Receiver has also identified potential general unsecured creditors, trade creditors, and other categories of creditors (collectively, the "Other Creditors") who may have claims against the Receivership Estate.[12]

---

[11] The Receiver is still evaluating proposed distribution calculations and methodologies, which will be informed by the final approved list of claims of Investor Creditors, Relief Defendants, and Other Creditors. The Receiver will file a separate motion to establish distribution procedures, which the Receiver anticipates will occur after completion of the Claims Procedure.

[12] While there were some secured creditors with liens on certain Receivership Assets when this SEC Action was filed, those secured creditors have been paid in full upon the sale of each asset, thereby extinguishing all known liens on Receivership Assets. To the extent an asset has not yet been sold, the Receiver anticipates that the sale of such asset will extinguish the secured debt. Accordingly, the Claims Procedure proposed in this Motion does not contain a class for secured

HB: 4815-6234-3641.2

JA177

However, due to the nature of DeVille and Riverwalk's ongoing business operations (*i.e.*, high-volume consumer debt collection and credit repair), the full extent and identities of potential Other Creditors who may have claims against the Receivership Estate remain unknown to the Receiver at this time.  For purposes of this Motion, the Receiver intends to include as Other Creditors all remaining known creditors and potential creditors of the Receivership Parties who are not Known Investors, excluding the Relief Defendants, which includes but is not limited to: (i) lenders and credit card companies; (ii) suppliers, vendors, and others doing business with a Receivership Party; (iii) persons or entities who the Receiver has reason to believe may file or have filed lawsuits against a Receivership Party; and (iv) applicable regulatory and taxing authorities in each jurisdiction in which debt collection or credit repair was known to have occurred on behalf of DeVille, Riverwalk, or any other Receivership Party.

23.    Upon information and belief, the Receivership Parties conducted business operations in Texas and Maryland and may have Other Creditors in other locations throughout the United States.  Other Creditors who have contacted the Receiver have been directed to the Receivership Estate website, located at www.Merrill-Ledford.com, which the Receiver has maintained and updated with relevant and required information regarding asset sales and other matters related to the case.

### III.    RELIEF REQUESTED

24.    The Receiver requests that this Court enter an Order (i) setting the claims bar date, (ii) establishing the Claims Procedure, including a notice and dispute resolution process, and (iii) approving the attendant notification process, as set forth in this Motion.  The Receiver believes

---

creditors because the Receiver is not aware of any potential secured creditors who are expected to participate in the Claims Procedure.

HB: 4815-6234-3641.2

that the establishment of the foregoing will provide for the orderly, efficient, and equitable administration of all claims while avoiding confusion, delay, and unnecessary expense.

**A.    The Claims Bar Date.**

25.    The Receiver requests entry of an Order requiring all persons and entities, including, without limitation, investors, lenders, former employees, state and federal authorities and regulators, and creditors of the Receivership Parties with potential claims and/or demands against the Receivership Parties, whether due or not due, contingent, unliquidated, or otherwise, to submit their claims to the Receiver in the format described in this Motion within ninety (90) days of the date of entry of the Order requested in this Motion (the "Claims Bar Date").  The Receiver believes that setting the Claims Bar Date ninety (90) days from the date of entry of an Order will allow Claimants sufficient time to dispute, confirm, or submit their claims.  Notices of the Claims Bar Date and procedure, discussed below, will be sent within thirty (30) days following the entry of the Order.  The Notices will be published immediately on the Receiver's website, www.Merrill-Ledford.com, following entry of the Order granting this Motion.  Further, the Receiver requests that such Order declare that any person or entity failing to dispute, confirm, or submit their claim to the Receiver on or before the Claims Bar Date shall be barred from asserting claims against the Receivership Estate and: (i) in the case of Investor Creditors, shall waive all rights to dispute the Receiver's determination of their claims; (ii) in the case of Net-Neutral Investor and Net-Winner Investors, shall waive all rights to dispute the Receiver's determination that they lack claims; (iii) in the case of Relief Defendants, shall waive any right to assert claims of any kind whatsoever against the Receivership Estate and/or the Receivership Assets; (iv) in the case of Other Creditors, shall waive any right to assert claims of any kind whatsoever against the Receivership Estate; and (v) in the case of Unknown Investors or unknown Other Creditors, shall

14

JA179

waive any right to assert claims of any kind whatsoever against the Receivership Estate. A notice, submission, or dispute under this Claims Procedure will be deemed timely: (i) if sent by U.S. Mail, Federal Express, UPS, or any other similar delivery service, postmarked on or before the Claims Bar Date or other applicable deadline; or (ii) if sent by e-mail or website submission, transmitted on or before the Claims Bar Date or other applicable deadline.

**B.     The Claims Procedure.**

        **i.     Notification Process.**

26.     Because the Receiver is aware of the identities and has last known addresses for substantially all of the Known Investors, the Relief Defendants, and many Other Creditors, but cannot be certain that additional creditors to the Receivership Estate do not exist beyond those of whom he is currently aware, the Receiver proposes notice in the following forms: (i) direct mail via certified and regular U.S. mail and e-mail; (ii) website publication; and (iii) newspaper publication.

27.     As set forth in detail below, the Receiver proposes to direct mail to each Known Investor, Relief Defendant, and known Other Creditor a Notice of Claims Procedure and the Claims Bar Date (the "Notice"). The Receiver will also direct mail and e-mail a copy of this Motion to each Known Investor, Relief Defendant, known Other Creditor, and by ECF notice for any counsel who appeared on behalf of Relief Defendants. This correspondence will be sent via certified and regular U.S. mail and e-mail to each Known Investor, Relief Defendant, and Other Creditor. The Receiver believes that this is a cost-effective and reliable means to ensure that known potential creditors receive the necessary information regarding this Motion and their potential claim.

28.     In addition to direct mailing, the Receiver proposes to continue to use his website,

<div align="center">15</div>

<div align="center">JA180</div>

www.Merrill-Ledford.com, as a resource for reaching potential creditors. On his website, the Receiver publishes information and keeps all interested parties informed on pertinent filings with the Court and substantial events affecting the Receivership Estate.[13]  Upon filing this Motion, the Receiver will publish a copy of the Motion on his website for all potential creditors to review and object to the Claims Procedure proposed in this Motion. Immediately after the date of entry of the Order requested in this Motion, the Receiver will publish the Notices, the Claims Bar Date, and the Claim Form on his website, along with a copy of the Court's Order proposed in this Motion. The Motion, the Notices, the Claims Bar Date, the Claim Form, and the Court's Order proposed in this Motion will remain on the Receiver's website for a period of at least thirty (30) consecutive days.

29.    Finally, the Receiver proposes to reach any additional unknown creditors via national and targeted regional newspaper publication. Upon information and belief, the creditors of the Receivership Estate are located throughout the United States. Due to space limitations and cost concerns, the Receiver proposes to publish notice of the Claims Bar Date, along with information on how to contact the Receiver and submit a claim (the "Newspaper Publication"), substantially in the form as that attached hereto as **Exhibit A**. Because there is no known concentration of creditors in a specific area and all are spread throughout the United States, the Receiver proposes to run the Newspaper Publication on one day, for two consecutive weeks, in a publication of general circulation, such as *USA Today* or *The Wall Street Journal*. In addition, the Receiver proposes to run the Newspaper Publication on one day, for two consecutive weeks, in a

---

[13] During the pendency of the SEC Action, when contacted by investors inquiring about the claims procedure, the Receiver has consistently advised that once this Court approved such procedures, all relevant information would be published on the specific "Claims Process" page of the estate website at www.Merrill-Ledford.com/Claims-Process/.

HB: 4815-6234-3641.2

publication of regional circulation targeted to areas of business operations or significant asset purchases, including Dallas-Fort Worth, Baltimore, and Las Vegas.  The proposed Newspaper Publication is more than the United States would provide in a forfeiture case.  The Receiver believes such notice is the most cost-efficient way to reach any potential creditors who may not have otherwise received notice of this SEC Action and the appointment of the Receiver over the Receivership Parties.

           **a.**      **Known Investors.**

30.      The Known Investors will receive a Notice sent by U.S. Mail and e-mail[14] that will be substantially in the form attached hereto as **Exhibit B** (the "<u>Investor Notice</u>").[15]  The Investor Notice will explain the Claims Procedure and will be accompanied by a personalized and detailed transaction schedule that sets forth the Receiver's preliminary determination of each Known Investor's net claim amount (the "<u>Transaction Schedule</u>"). The Transaction Schedule will be substantially in the form attached hereto as **Exhibit C**.  To the extent Investment Entities will be treated as a single Known Investor, the individuals within the Investment Entities will receive a letter (the "<u>Letter</u>") sent by U.S. Mail notifying them that their potential claim will be administered by the Investment Entity in the Claims Procedure.  The Letter will be substantially in the form attached hereto as **Exhibit D**.

31.      The Known Investors will be asked to review the Transaction Schedule for the accuracy of the net claim amount (the "<u>Net Transaction</u>").  If a Known Investor agrees with each

---

[14] On February 5, 2021, the Receiver filed the Motion for Order Authorizing Retention, Employment, and Compensation of Bankruptcy Management Solutions Inc. d/b/a Stretto as Claims Agent (the "<u>Stretto Motion</u>").  *See* Dkt. No. 393.  On February 9, 2021, the Court granted the Stretto Motion.  *See* Dkt. No. 394.  The exhibits attached to this Motion will be sent to their recipients by Stretto as claims agent for the Receiver.

[15] The Notices and other exhibits attached to this Motion are subject to non-substantive modifications prior to their mailing to the potential Claimants.

HB: 4815-6234-3641.2

JA182

of the transactions on the Transaction Schedule and the amount of the Net Transaction, the Known Investor will need to sign and return the Transaction Schedule, and the Net Transaction amount included therein will be deemed to be the amount of that Known Investor's allowed claim, or lack thereof, for purposes of any interim or final distribution process approved by the Court.  If the Known Investor disputes the accuracy of the Transaction Schedule, the Known Investor will be required to indicate on the schedule the amount the Known Investor believes the claim to be and return the revised Transaction Schedule, along with any relevant supporting documentation.  If a Known Investor has received Compensation Payments that are not identified in the Transaction Schedule, the Known Investor will be required to update the Transaction Schedule to identify any payments it has received.  If a Known Investor fails to disclose their receipt of Compensation Payments, the Known Investor may waive his or her right to participate in any ultimate distribution in this SEC Action.  To the extent the Receiver discovers an undisclosed Compensation Payment after a distribution is made in this SEC Action, the Known Investor may be required to return the full amount of any distribution received in this SEC Action.  Known Investors will need to submit their signed Transaction Schedules to the Receiver by U.S. mail, e-mail, or by upload to the Receiver's website on or before the Claims Bar Date (the "Investor Response").

32.    Additionally, because the Receiver cannot conclusively determine that there are no additional Investor Creditors of whom he is presently unaware, the Receiver proposes to continue to publish on his website, www.Merrill-Ledford.com, the form Investor Notice and a claim form for any potential investor to print and complete (the "Claim Form").  The Claim Form will be substantially in the form attached hereto as **Exhibit E**.  Any Investor Creditors who do not receive an Investor Notice because they are unknown to the Receiver may submit a claim by filling out and submitting a Claim Form attaching all supporting documentation, provided it is submitted to

HB: 4815-6234-3641.2

the Receiver by U.S. mail, e-mail, or by upload to the Receiver's website on or before the Claims Bar Date.  A timely submitted claim form from a previously unknown Investor Creditor will be deemed an Investor Response for purposes of the Claims Procedure proposed in this Motion.

### b.    Other Creditors.

33.    Because there exist numerous potential Other Creditors of whom the Receiver is aware but whose potential claim amounts remain unknown to him at this time, the known Other Creditors will receive a Notice that will be substantially in the form attached hereto as **Exhibit F** (the "Other Creditor Notice") and will be accompanied by a Claim Form to be completed by the Other Creditor.  Other Creditors will be required to review the Other Creditor Notice and return to the Receiver a completed Claim Form, along with any relevant supporting documentation, by U.S. mail, e-mail, or by upload to the Receiver's website on or before the Claims Bar Date (the "Other Creditor Response").

34.    Additionally, because of the Receiver's belief that there may exist further potential Other Creditors of the Receivership Estate of which he is currently unaware, the Receiver proposes to publish on his website the Other Creditor Notice and Claim Form for potential Other Creditors to complete and submit to the Receiver.  Other Creditor claims shall be deemed submitted upon its completion and timely submission of the Claim Form to the Receiver by U.S. mail, e-mail, or by upload to the Receiver's website on or before the Claims Bar Date.  Should the Other Creditor fail to submit a Claim Form on or before the Claims Bar Date, the Other Creditor will be deemed to have no allowed claim for purposes of any interim or final distribution process approved by the Court.

### c.    Relief Defendants.

35.    The Relief Defendants will receive a Notice that will be substantially in the form

HB: 4815-6234-3641.2

attached hereto as **Exhibit G** (the "Relief Defendant Notice") and will be accompanied by a Claim Form to be completed by the Relief Defendant.  Relief Defendants will be required to review the Relief Defendant Notice and return to the Receiver a completed Claim Form, along with any relevant supporting documentation, by U.S. mail, e-mail, or by upload to the Receiver's website on or before the Claims Bar Date (the "Relief Defendant Response").

36.    A Relief Defendant's claim will be deemed submitted upon the completion and submission of the Claim Form to the Receiver on or before the Claims Bar Date.  If a Relief Defendant fails to submit a Claim Form on or before the Claims Bar Date, the Relief Defendant will be deemed to have no allowed claim for purposes of any interim or final distribution process approved by the Court.  The resolution of a Relief Defendant's timely submitted claims will not occur until after a judgment is entered in this SEC Action as to the Relief Defendant.  If a judgment is entered against a Relief Defendant, entry of the judgment will trigger the timing of deadlines as detailed in the following section for such Relief Defendant's claim.

**ii.    Dispute Resolution Process.**

37.    Within the thirty (30) days immediately following the Claims Bar Date, the Receiver will review each Investor Response and Other Creditor Response from each Known Investor, Other Creditor, Unknown Investor, and Unknown Creditor and reply with his determination of each Claimant's proposed claim amount (the "Receiver's Reply").    The Receiver's Reply will be sent within thirty (30) days immediately following the Claims Bar Date and will be sent by the same method each of the Investor Responses and Other Creditor Responses were submitted to the Receiver (*i.e.*, U.S. Mail or e-mail).  For a Known Investor who disputes any transaction and/or the Net Transaction amount, the Receiver's Reply will state whether he agrees with or disputes the sum claimed by the Known Investor and the basis for his determination.

HB: 4815-6234-3641.2

JA185

For Other Creditors and previously unknown Investor Creditors who may submit a claim via the Claim Form, the Receiver's Reply will state whether he agrees with or disputes the amount of the claim and the basis for his determination.

38.    With respect to the Relief Defendant Responses, the Receiver's Reply will be served within thirty (30) days immediately following entry of the judgment as to the SEC's claims against a Relief Defendant and will be sent by the same method the Relief Defendant Response was submitted to the Receiver (*i.e.*, U.S. Mail or e-mail).  The Receiver's Reply will state whether he agrees with or disputes the property or sum claimed by the Relief Defendant and the basis for his determination.

39.    If the Receiver's Reply disputes, in whole or in part, the claim as set forth in the Investor Response, Other Creditor Response, or Relief Defendant Response the Claimant will be provided an opportunity to supplement their claim (the "Supplement") within twenty-one (21) days of the postmark or transmission date of the Receiver's Reply.  If the Claimant fails to submit a Supplement to their claim within the time permitted or, if after reviewing the Supplement the Receiver still disputes the claim, in whole or in part, the Receiver will file a regularly noticed motion with this Court in accordance with Local Rule 105 of the United States District Court for the District of Maryland setting out his objection(s) to the claim(s) and will serve the motion on the Claimant via certified mail and first class mail.  The Receiver shall have the discretion to consolidate similar objections into one omnibus filing.  The written motion will contain copies of the original Notice, the Claimant's Response, the Receiver's Reply, and the Claimant's Supplement for efficiency and to maintain investor anonymity.  Nothing will preclude the Claimant from filing a written response to the Receiver's motion.

21

40.     After the expiration of the response and reply periods under Local Rule 105, this Court will make a final determination as to the disputed claims.  The Court will have the discretion to set additional discovery, briefing and/or hearing, and schedule mandatory settlement conferences as the Court deems necessary.  All claims approved by the Receiver and all claims over which this Court has made a final determination in accordance with the foregoing Objection Process shall be final and will establish conclusively the amount of each claimant's allowed claim, which shall be taken into account in formulating and executing any interim or final distribution process to be approved by the Court at a later date.

41.     The Receiver shall also have authority to compromise and settle any claim set forth by a Claimant without further Order of this Court where the value of the claim, the amount discounted, or the amount given up by the Receivership Estate is equal to or less than $25,000. The Receiver shall file periodic reports reflecting any settlements or compromises equal to or less than $25,000.  The Receiver shall file a motion seeking Court approval of any compromise or settlement of a claim exceeding $25,000.  Any objection or opposition to a motion seeking Court approval of any compromise or settlement of a claim shall be filed within fourteen (14) days of the date the Receiver's motion is filed.  If no party objects to or opposes the motion to compromise or settle a claim, the Receiver shall file a notice of no objection to the proposed compromise or settlement.

## IV.     CONCLUSION

WHEREFORE, the Receiver respectfully requests that this Court grant this Motion and enter an Order (i) setting the Claims Bar Date, (ii) establishing the Claims Procedure, (iii) approving the attendant notification process, and (iv) granting such other relief as the Court deems proper.

HB: 4815-6234-3641.2

JA187

Respectfully Submitted,

*/s/Lynn H. Butler*
Lynn H. Butler, *pro hac vice*
HUSCH BLACKWELL LLP
111 Congress Ave., Suite 1400
Austin, TX 78701
Tel: (512) 472-5456
Fax: (512) 479-1101
lynn.butler@huschblackwell.com

Buffey E. Klein, *pro hac vice*
HUSCH BLACKWELL LLP
2001 Ross Avenue, Suite 2000
Dallas, Texas 75201
Tel: (214) 999-6100
Fax: (214) 999-6170
buffey.klein@huschblackwell.com

Brian P. Waagner, Fed. Bar No. 14954
HUSCH BLACKWELL LLP
750 17th Street, NW, Suite 900
Washington, D.C. 20006
Tel: (202) 378-2300
Fax: (202) 378-2318
brian.waagner@huschblackwell.com

*Counsel for Receiver Gregory S. Milligan*

23

JA188

<u>**CERTIFICATE OF SERVICE**</u>

On February 9, 2021, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court for the District of Maryland, using the electronic case filing system of the court.  I hereby certify that I have served all counsel and/or pro se parties of record electronically through the Court's CM/ECF filing system for all parties who have registered to receive electronic service.  Additionally, the foregoing document was served on the following parties not registered for Court's CM/ECF filing system as indicated below:

**Defendant Kevin B. Merrill (via U.S. Mail):**

Kevin B. Merrill, #64274-037
FCI Allenwood Low
Federal Correctional Institution
P.O. Box 1000
White Deer, PA 17887

**Defendant Jay B. Ledford (via U.S. Mail):**

Jay B. Ledford, #55055-048
FCI Safford
Federal Correctional Institution
P.O. Box 9000
Safford, AZ 85548

**Criminal Counsel for Defendant Kevin B. Merrill (via E-Mail and U.S. Mail):**

Elizabeth Genevieve Oyer
Office of the Federal Public Defender
100 S Charles St Ste 900 Tower II
Baltimore, MD 21201
liz_oyer@fd.org

Maggie Grace
Office of the Federal Public Defender
100 S Charles St, Tower II, 9th Floor
Baltimore, MD 21201
maggie_grace@fd.org

**Criminal Counsel for Defendant Jay B. Ledford (via E-Mail and U.S. Mail):**

Harry J Trainor, Jr
Trainor Billman Bennett and Milko LLP
116 Cathedral St Ste E
Annapolis, MD 21401
htrain@prodigy.net

24

JA189

**Criminal Counsel for Defendant Cameron R. Jezierski (via E-Mail and U.S. Mail):**

Joseph J Aronica
Duane Morris LLP
505 9th St NW Ste 1000
Washington, DC 20004
jjaronica@duanemorris.com

**Criminal Counsel for Relief Defendant Amanda Merrill (via E-Mail and U.S. Mail):**

Addy R. Schmitt
Ian Herbert
Miller & Chevalier Chartered
900 16th St NW
Washington, DC 20006
aschmitt@milchev.com
iherbert@milchev.com

**Lalaine Ledford (via U.S. Mail):**

Lalaine Ledford
10512 Courtney Cove Ave.
Las Vegas, NV 89144

Lalaine Ledford
2381 Carnegie Hall Street
Las Vegas, NV 89135
lalainebarretto@yahoo.com

**Baltimore County Office of Law (via E-Mail and U.S. Mail):**

Susan B. Dubin
Baltimore County Office of Law
400 Washington Avenue
Towson, Maryland 21204
sdubin@baltimorecountymd.gov

**Dundalk United Methodist Church (U.S. Mail):**

Dundalk United Methodist Church
c/o Edward F. Mathus
6903 Mornington Road
Baltimore, Maryland 21222

HB: 4815-6234-3641.2

JA190

**Lienholders, Tax Assessors, and Other Interested Parties (U.S. Mail):**

Florida Community Bank, N.A.
2325 Vanderbilt Beach Road
Naples, Florida 34109

Mortgage Electronic Registration Systems, Inc.
PO Box 2026
Flint, Michigan 48501-2026

Collier County, Florida Tax Assessor
3291 Tamiami Trail East
Naples, Florida 34112

Maryland Department of Assessments & Taxation
301 W. Preston Street
Baltimore, Maryland 21201-2395

Branch Banking and Trust Company,
A North Carolina Banking Corporation
PO Box 1290
Whiteville, North Carolina 28472

Talbot County, Maryland Finance Office
Talbot County Courthouse
11 North Washington Street, Suite 9
Easton, Maryland 21601

HSBC Bank USA, National Association, as trustee of
J.P. Morgan Alternative Loan Trust 2006-A5
c/o Howard n. Bierman, Trustee
c/o Select Portfolio Servicing, Inc.
3815 Southwest Temple
Salt Lake City, Utah 84115

Clark County, Nevada Tax Assessor
500 S. Grand Central Parkway
Las Vegas, Nevada 89155

First Financial Bank, N.A. Southlake
3205 E. Hwy. 114
PO Box 92840
Southlake, Texas 76092

HB: 4815-6234-3641.2

JA191

Hunter Kelsey of Texas, LLC
4131 Spicewood Springs Road, Bldg. J-1A
Austin, Texas 78759

Frost Bank, f/k/a The Frost National Bank
c/o Michael J. Quilling
Quilling, Selander Lownds, Winslett & Moser, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201

The City of Colleyville, Texas
c/o Victoria W. Thomas
Nichols, Jackson, Dilard, Hager & Smith, L.L.P.
1800 Lincoln Plaza
500 North Akard
Dallas, Texas 75201

Tarrant County, Texas Tax Assessor
100 E. Weatherford
Fort Worth, Texas 76196

J Trust
c/o Hillary RE. Badrow, Trustee
2801 Paramount Boulevard
Amarillo, Texas 79109

Dallas Central Appraisal District
2949 N. Stemmons Freeway
Dallas, Texas 75247-6195

Bozeman West
PO Box 1970
15632 West Main Street
Bozeman, Montana 59771-1970

Neil A. Patel
5308 Burgandy Court
Colleyville, Texas 76034

TIB – The Independent BankersBank
350 Phelps Court, Suite 200
PO Box 560528i
Dallas, Texas 75356-0528

HB: 4815-6234-3641.2

JA192

Wachovia Mortgage, FSB
PO Box 659548
San Antonio, Texas 78265-9548

Denton County Tax Assessor
1505 E. McKinney Street
Denton, Texas 76209-4525

Potter County, Texas Tax Assessor
900 South Polk, Suite 106
Amarillo, Texas 79101

Wells Fargo Home Mortgage
P.O. Box 10335
Des Moines, IA 50306

Albertelli Law
Attn: Coury M. Jacocks
2201 W. Royal Lane, Suite 155
Irving, TX 75063

Samual I. White, P.C.
5040 Corporate Woods Drive, Suite 120
Virginia Beach, VA 23462

Stephen D. Graeff
Dunlap Bennett & Ludwig
8300 Boone Boulevard, #550
Vienna, VA  22182

**All Known Investors and known Other Creditors (via E-Mail and U.S. Mail)**

*/s/ Lynn H. Butler*
Lynn H. Butler

HB: 4815-6234-3641.2

JA193

# EXHIBIT B

HB: 4841-0584-4663.7

# INVESTOR NOTICE OF CLAIMS
# PROCEDURE AND CLAIMS BAR DATE

**Merrill-Ledford Claims**
**c/o Stretto**
**8269 E. 23rd Avenue, Suite 275**
**Denver, CO 80238**

**Website: www.Merrill-Ledford.com/Claims-Process/**
**E-Mail: TeamMerrillLedford@stretto.com**

RE:   *Securities and Exchange Commission v. Kevin B. Merrill, Jay B. Ledford, et al.*
      **United States District Court for the District of Maryland**
      **Civil Action No. 18-cv-02844-RDB**

<u>**IMPORTANT NOTICE**</u>

Dear Victim Investor:

This is an important notification from the Court-appointed Receiver, Gregory S. Milligan (the "<u>Receiver</u>"), in the civil action that was filed on September 13, 2018 (the "<u>SEC Action</u>").[1]

You may have previously furnished information regarding your investments made, monies returned, and losses suffered to the U.S. Attorney's Office and FBI for the related criminal case, *United States v. Kevin B. Merrill, Jay B. Ledford,* and others.  Criminal Case No. RDB-18-0465. Even if you previously provided investment information, you must review and verify or dispute the Receiver's numbers, which are provided as Attachment B.

The Court appointed the Receiver[2] to investigate, marshal, and preserve all assets and interests (the "<u>Receivership Estate</u>") of the people and entities subject to the Receivership Order (the "<u>Receivership Parties</u>")[3] for the benefit of the defrauded investors and other creditors of the

---

[1] For information regarding the receivership in the SEC Action, please visit www.Merrill-Ledford.com.

[2] The Court appointed the Receiver pursuant to the First Amended Order Appointing Temporary Receiver (Dkt. No. 62) (the "<u>Receivership Order</u>"), a copy of which has been published on the Receiver's website and is available at https://merrill-ledford.com/wp-content/uploads/2019/01/First-Amended-Order-Appointing-Receiver-11.27.18.pdf.

[3] The Receivership Parties are defined in the Receivership Order as: (i) Kevin B. Merrill; (ii) Jay B. Ledford; (iii) Jezierski; (iv) Global Credit Recovery, LLC; (v) Delmarva Capital, LLC; (vi) Rhino Capital Holdings, LLC; (vii) Rhino Capital Group, LLC; (viii) DeVille Asset Management LTD; (ix) Riverwalk Financial Corporation; (x) K.B. Merrill Associates; (xi) Financial Reclamation Group LLC; (xii) Halo Credit Solutions LLC; (xiii) JBL Holdings LLC; (xiv) Jay B. Ledford, P.C.; (xv) the Joseph Finance Company; (xvi) Leddy Bear LTD; (xvii) Ledford & Associates, PLLC; (xviii) King Fischer LTD d/b/a LP Investments LTD; (xix) NLEX, Inc.; (xx) Receivables Portfolio Interchange, Inc.; (xxi) Riverwalk Capital Investments, Inc.; (xxii) Riverwalk Credit Solutions, Inc.; (xxiii) Riverwalk Debt Solutions, Inc.; (xxiv) Riverwalk Fixed Asset Group LLC; (xxv) SCUSA Financial, Inc.; (xxvi) Vaquero Asset Management, Inc.; (xxvii) CRJ Holdings LLC; (xxviii) Centurion Capital Corporation; (xxix) GCR CBL CP I, LLC; (xxx) GCR CBL CP II, LLC; (xxxi) GCR CBL CP III, LLC; (xxxii) GCR CBL CP IV, LLC; (xxxiii) GCR HCP

HB: 4841-0584-4663.7

Receivership Estate. As of December 31, 2020, the Receiver has recovered approximately $56.2 million that will be available for an ultimate distribution to defrauded investors and other creditors following this Claims Procedure and a future Plan of Distribution. Based upon current available information, which is preliminary and subject to further due diligence, the Receiver estimates total recoveries from Receivership Assets could range between $55 million and $65 million.

On [**DATE**], the Court in the SEC Action issued an Order Setting Claims Bar Date, Establishing Claims Procedure, and Approving Notification Process (Dkt. No. [**DKT. NO.**]) (the "Order"). This Order applies to all known investors who invested with any of the Receivership Parties. If you are receiving this notice by mail or e-mail from the Receiver, a copy of the Court's Order is included as **Attachment A** for your notice and review. A copy of the Order is also available at www.Merrill-Ledford.com.

**In accordance with the Court-approved claims procedure, this letter serves as notice of the Receiver's preliminary determination of your claim, if any, against the Receivership Estate.**

**EVEN IF YOU HAVE PREVIOUSLY PROVIDED INFORMATION IN THE CRIMINAL CASE, YOU MUST RESPOND TO THIS NOTICE ON OR BEFORE [**CLAIMS BAR DATE**].**

## I.    KNOWN INVESTORS

**IF YOU ARE RECEIVING THIS NOTICE DIRECTLY FROM THE RECEIVER**, it means that the Receiver has concluded that you invested with a Receivership Party. Enclosed with this notice is **Attachment B**, a schedule that identifies whether the Receiver has preliminarily concluded that you have a claim against the Receivership Estate.

If your total investments exceed the total amount of disbursements you received from the Receivership Parties, you will have a claim against the Receivership Estate. If the total amount of disbursements you received from the Receivership Parties exceed your total investments, then you do not have a claim against the Receivership Estate and your claim amount is identified as $0. **You may dispute the amount on Attachment B or the conclusion that you do not have a claim.** Instructions for disputing the Receiver's preliminary conclusion are below.

Attachment B sets forth the transaction activity of your investment(s) with the Receivership Parties (the "Schedule"). The starting point for Attachment B were the investment and disbursement calculations made by the FBI to support the restitution order in the criminal case. If there has been no change from your loss calculation in the criminal case, that fact is noted on Attachment B. If there has been a change from your loss calculation, that fact is noted on Attachment B.

---

Holdings 1, LLC; (xxxiv) GCR Mercer Holdings, LLC; (xxxv) the J Trust; and (xxxvi) the Kevin B. Merrill Revocable Living Trust. *See* Receivership Order, Dkt. No. 62 at ¶ 1.

HB: 4841-0584-4663.7

Attachment B contains the "<u>Net Transaction</u>" amount.  The Net Transaction sums your total investments minus disbursements paid to you, and the "net" number is the amount of your claim, if any, against the Receivership Estate.

Please review Attachment B and any other relevant information and/or documentation that you may have in your possession.  With respect to each transfer identified in your Attachment B, please designate in the space provided whether you confirm or dispute the Receiver's conclusion.  Please include any comments that you may have in the corresponding space on Attachment B.

**WHETHER YOU ACCEPT OR DISPUTE THE RECEIVER'S CONCLUSION AS TO THE NET TRANSACTION AND/OR ANY PARTICULAR TRANSACTION, YOU MUST SIGN AND RETURN YOUR ATTACHMENT B TO**

**Merrill-Ledford Claims**
**c/o Stretto**
**8269 E. 23rd Avenue, Suite 275**
**Denver, CO 80238**
**OR**
**E-Mail: TeamMerrillLedford@stretto.com**

 **prior to [\*\*CLAIMS BAR DATE\*\*].**

A self-addressed envelope has been provided for the return of your Attachment B, but you may also submit your Attachment B and any other information by email or a tracked delivery method (e.g., UPS, FedEx).  To the extent you dispute or disagree with any portion of the Schedule, please provide all information and documentation in support of your position when returning your Schedule.

**RECEIPT OF OTHER COMPENSATION**

If you have received payments from any source to compensate you for the losses sustained in the Defendants' fraudulent scheme, you must disclose all payments received to date.  If in the future, after you have submitted your claim, you receive any payments, you must disclose those payments, too.  The payments include, but are not limited to, settlements in separate litigation and recoveries by state-court receivers which have been paid to you.  If you have sold or transferred your claim to any other person or entity, you must disclose that fact as well.

If you fail to disclose your receipt of a payment, you may waive your right to participate in any ultimate distribution in this SEC Action.  To the extent the Receiver discovers an undisclosed payment after a distribution is made in this SEC Action, you will be required to return the full amount of any distribution received in this SEC Action.

YOUR SIGNED ATTACHMENT B MUST BE RECEIVED AT THE ADDRESS OR E-MAIL ADDRESS LISTED ABOVE, POSTMARKED OR E-MAILED ON OR BEFORE [**CLAIMS BAR DATE**].

HB: 4841-0584-4663.7

JA197

### RESOLUTION OF DISPUTED AMOUNTS

Your confirmation of the Net Transaction on Attachment B will be the amount of your claim against the Receivership Estate. If you dispute or disagree with any of the transactions on Attachment B, your dispute will be subject to further review in accordance with the Court-approved claims procedure as detailed in the Order. The Receiver will review any documentation and/or information provided in support of a disputed position and notify you whether the Receiver accepts or disputes your disputed position on or before [**30 DAYS AFTER CLAIMS BAR DATE**]. If the Receiver accepts your disputed position, your claim against the Receivership will be adjusted accordingly and no further action will be required.

If the Receiver disputes your position, you will be provided an additional twenty-one (21) days from the postmark or transmission date of the Receiver's notice to provide supplemental documentation as to any disputed transactions. If you fail to supplement your claim within the time permitted, or if after providing supplemental documentation the Receiver continues to dispute your claim, the Receiver will file a motion with the Court, which will be provided to you, seeking a final determination of your claim.

## II.    UNKNOWN INVESTORS

**IF YOU HAVE NOT RECEIVED THIS NOTICE IN THE MAIL FROM THE RECEIVER**, but have learned about this procedure in some other way, the Receiver has **NO** record of your potential claim. You must complete the Claim Form that you can obtain at www.Merrill-Ledford.com or by contacting the Receiver by submitting an email inquiry at www.Merrill-Ledford.com/Contact/ or TeamMerrillLedford@stretto.com.

You must return the completed Claim Form with all supporting documentation and information requested to the Receiver

**Merrill-Ledford Claims**
**c/o Stretto**
**8269 E. 23rd Avenue, Suite 275**
**Denver, CO 80238**
**OR**
**E-Mail: TeamMerrillLedford@stretto.com**

at the above address on or before [**CLAIMS BAR DATE**]. IN ORDER FOR YOUR CLAIM TO BE CONSIDERED, THE RECEIVER MUST RECEIVE THE FULLY COMPLETED CLAIM FORM AND DOCUMENTATION, POSTMARKED OR EMAILED ON OR BEFORE [**CLAIMS BAR DATE**].

HB: 4841-0584-4663.7

JA198

### III.    PLAN OF DISTRIBUTION

**NOTE: YOU MAY NOT RECEIVE THE FULL AMOUNT OF YOUR ALLOWED CLAIM FROM THE RECEIVERSHIP ESTATE.**

Your claim represents the amount of your loss which will be taken into account in a future interim or final distribution process to be approved by the Court. The distribution procedure and methodology will be determined by the Court at a later date. The Receiver will mail and e-mail all known investors a copy of the proposed Plan of Distribution and will publish a copy on the Receiver's website: www.Merrill-Ledford.com. If you do not have regular access to the internet, please send a request for direct notice to the Receiver's address or E-Mail.

Investors and other parties in interest will have an opportunity to review the proposed Plan of Distribution and file responses and objections with the Court.

Finally, please be advised that the notice provided here relates solely to the claim regarding your investment and does not affect the Receiver's right to pursue other claims, including claims for the return of fictitious profits in excess of an investor's principal investment, which right is expressly reserved.

Thank you for your attention to and cooperation with this matter.

/s/Lynn H. Butler
Lynn H. Butler, *pro hac vice*
Husch Blackwell LLP
111 Congress Ave., Suite 1400
Austin, TX 78701
Tel: (512) 472-5456
Fax: (512) 479-1101
lynn.butler@huschblackwell.com

Buffey E. Klein, *pro hac vice*
Husch Blackwell LLP
2001 Ross Avenue, Suite 2000
Dallas, Texas 75201
Tel: (214) 999-6100
Fax: (214) 999-6170
buffey.klein@huschblackwell.com

*Counsel for Receiver Gregory S. Milligan*

HB: 4841-0584-4663.7

# EXHIBIT C

HB: 4836-4984-5687.2

Case 1:18-cv-02844-RDB   Document 395-3   Filed 02/09/21   Page 2 of 3

**Attachment B – Schedule**

**Investor Information**

Smith, John (Investor Number - ##)
123 Main Street
Baltimore, MD 12345

| | Transaction Information | | | | Investor Verification | | |
|---|---|---|---|---|---|---|---|
| **Date** | **Transaction Type** | **Reference Number** | **Contribution** | **Withdrawal** | **Confirm** | **Reject** | **Comments** |
| 4/3/2015 | Wire Transfer | | $ 500,000.00 | | | | |
| 5/4/2015 | Check | 1234 | $ 25,000.00 | | | | |
| 11/14/2017 | Wire Transfer | | | $ 75,000.00 | | | |
| 4/30/2018 | Check | 9876 | | $ 100,000.00 | | | |
| **Totals** | | | $ 525,000.00 | $ 175,000.00 | | | |
| **Net Transactions Gain/(Loss)** | | | ($350,000.00) | | | | |
| **Claim Amount:** | | | **$350,000.00** | | | | |

I further state that I have / have not (CIRCLE ONE) received payments or funds from another source for the losses that I sustained as a result of the above investments. Such recoveries or funds may include, but are not limited to, settlements in separate litigation, recoveries paid by state-court receivers, and other payments to victims (these payments are referred to herein as "Compensation Payments"). Failure to disclose Compensation Payments on this form may result in you losing your right to participate in any ultimate distribution in this SEC Action. In addition, please be advised that you have an ongoing duty to disclose to the Receiver any future Compensation Payments that you may receive after the submission of this schedule.

HB: 4836-4984-5687.2

JA201

Case 1:18-cv-02844-RDB   Document 395-3   Filed 02/09/21   Page 3 of 3

**Attachment B – Schedule**

If you have received payments or funds from another source, please complete the following for each payment you received.  If you did not receive payments or funds from another source, you can leave the chart below blank.  Please attach additional pages if the space provided below is insufficient to identify all Compensation Payments that you have received.

| Payor | Date of Payment | Amount of Payment | Reason for Payment |
|-------|-----------------|-------------------|--------------------|
|       |                 |                   |                    |
|       |                 |                   |                    |

[To be included for Investment Entities:  As _____ (title) for [Investment Entity], I hereby certify that:  (i) [Investment Entity] has maintained its legal status as an active entity; (ii) [Investment Entity] is authorized to submit claims and receive distributions on behalf of the individual investors within it that invested with [Investment Entity]; and (iii) [Investment Entity] will distribute any interim and final distribution to the individual investors within it in accordance with any Court-authorized distribution plan.]

I declare, pursuant to 28 U.S.C. § 1746 and under penalty of perjury, that the information contained herein is true and correct.

Executed on _____, 2021.

_____
**Signature**

HB: 4836-4984-5687.2

JA202

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) |
| Plaintiff, | ) ) ) |
| v. | ) )    Case No.: 1:18-cv-02844-RDB |
| KEVIN B. MERRILL, et al., | ) ) ) |
| Defendants. | ) ) |

## ORDER GRANTING RECEIVER GREGORY S. MILLIGAN'S MOTION FOR ORDER SETTING CLAIMS BAR DATE, ESTABLISHING CLAIMS PROCEDURE, AND APPROVING NOTIFICATION PROCESS

This matter is before the Court on the Motion for Order Setting Claims Bar Date, Establishing Claims Procedure, and Approving Notification Process filed by the Receiver Gregory S. Milligan (the "Motion") (Dkt. 394). The Court, having considered the Motion and the information submitted in support, responses or objections, if any, the arguments of counsel, and the pleadings on file finds that the Motion should be, and hereby is, GRANTED.

IT IS ORDERED that:

1. Claims Bar Date. The Court establishes     May 20, 2021     at 11:59 p.m. Eastern Standard Time, which is a date no earlier than ninety (90) days from the date of this Order, as the deadline ("Claims Bar Date") for:

    a. Known Investors[1] to return their completed and signed Transaction Schedule under penalty of perjury, together with any supporting documentation to Gregory S. Milligan, Receiver, either via U.S. Mail to Merrill-Ledford Claims, c/o Stretto, 8269 E. 23rd Avenue, Suite 275, Denver, CO 80238, or via E-Mail to TeamMerrillLedford@stretto.com.

    b. Relief Defendants, Other Creditors, Unknown Creditors, Unknown Investors, and Unknown Investor Creditors to return their completed and signed Claim

---

[1] Capitalized terms in this Order refer to the defined terms in the Motion unless otherwise noted.

1

Form with all supporting documentation to Gregory S. Milligan, Receiver, either via U.S. Mail to Merrill-Ledford Claims, c/o Stretto, 8269 E. 23rd Avenue, Suite 275, Denver, CO 80238, or via E-Mail to TeamMerrillLedford@stretto.com.

2.    The Claims Procedure, including the Newspaper Publication, the Investor Notice, the Transaction Schedule, the Letter for individuals within Investment Entities or Pooled Investor Groups, the Claim Form, the Other Creditor Notice, and the Relief Defendant Notice attached to the Motion as Exhibits A-G, respectively, are approved in substantially the same form as included with the Motion.  Exhibits A-G are collectively the "Notices."

3.    All persons or entities who believe they are owed money by, or are entitled to a distribution from, the Receivership Estate must submit a completed Transaction Schedule or Claim Form by the Bar Date in accordance with the instructions on the Transaction Schedule or Claim Form.

4.    Method of Notice.  The Receiver must serve all Known Investors, Relief Defendants, and Other Creditors with any papers required by this Order by certified and regular U.S. Mail and e-mail.  If a Known Investor, Relief Defendant, or Other Creditor is represented by counsel and that counsel has appeared in this SEC Action, the represented party will also be served via ECF notice or E-Mail.

5.    Except for filings made with the Court in this SEC Action, whenever an action is required to be taken pursuant to this Order by mail or E-Mail, the action will be deemed timely: (i) if sent by U.S. Mail, Federal Express, UPS, or any other similar delivery service, if it is postmarked on or before the applicable deadline; or (ii) if sent by E-Mail or website submission, transmitted on or before the applicable deadline.

6.    Notice by Publication.  The Receiver must publish the Newspaper Publication on one day, for two consecutive weeks, in (i) a publication of general circulation, such as *USA Today* or

2

*The Wall Street Journal*, and (ii) a publication of regional circulation in Dallas-Fort Worth, Baltimore, and Las Vegas.  The Receiver must also publish the Motion, this Order, the Notices, the Claims Bar Date, and the Claim Form on his website, www.Merrill-Ledford.com (the "Receiver's Website") for at least thirty (30) consecutive days.

   7. Procedure for Submitting Claims.

  **Known Investors:**  All Known Investors must review their Transaction Schedule.  If the Known Investor agrees with the information on the Transaction Schedule, the Known Investor must sign and return the Transaction Schedule and the Net Transaction amount included therein will be deemed to be the amount of that Known Investor's claim.  If the Known Investor disputes the accuracy of any information on the Transaction Schedule, the Known Investor must indicate on the Transaction Schedule the amount the Known Investor believes the claim to be and return the Revised Transaction Schedule with all relevant supporting documentation.  Each Known Investor must also disclose whether they have received any payment to compensate him, her, or it, in whole or in part, for the losses sustained in the Defendants' fraudulent scheme that is at issue in this SEC Action (the "Compensation Payments").  Known Investors shall have an ongoing duty to disclose to the Receiver any future Compensation Payments that they may receive after their submission of the Transaction Schedule to the Receiver.  If a Known Investor does not identify a Compensation Payment, the Known Investor may waive the Known Investor's right to participate in any interim, final, or other distribution in this SEC Action.  A Known Investor may also be required to return the full amount of any distribution received in this SEC Action if it is determined that, after the Known Investor received a Compensation Payment, the Known Investor failed to disclose a Compensation Payment to the Receiver.  Known Investors must return the Transaction Schedule and any required supporting documentation to the Receiver via U.S. Mail to Merrill-Ledford Claims, c/o Stretto, 8269 E. 23rd

<center>3</center>

<center>JA205</center>

Avenue, Suite 275, Denver, CO 80238, or via E-Mail to TeamMerrillLedford@stretto.com on or before the Claims Bar Date.

**Other Creditors:**  Other Creditors must review the Other Creditor Notice.  Other Creditors must submit a claim by completing the Claim Form and submitting it with all supporting documentation to the Receiver via U.S. Mail to Merrill-Ledford Claims, c/o Stretto, 8269 E. 23rd Avenue, Suite 275, Denver, CO 80238, or via E-Mail to TeamMerrillLedford@stretto.com on or before the Claims Bar Date.

**Unknown Investors & Unknown Creditors**:  For individuals or entities who believe they have a claim against the Receivership Estate but whose information is unknown to the Receiver and do not receive a Transaction Schedule or Claim Form, the individual or entity may access a Claim Form on the Receiver's website, www.Merrill-Ledford.com.  The individual or entity must submit a claim by completing the Claim Form and submitting it with all supporting documentation to the Receiver via U.S. Mail  to Merrill-Ledford Claims, c/o Stretto, 8269 E. 23rd Avenue, Suite 275, Denver, CO 80238, or via E-Mail to TeamMerrillLedford@stretto.com on or before the Claims Bar Date.

**Relief Defendants**:  Relief Defendants must review the Relief Defendant Notice.  To submit a claim, Relief Defendants must complete the Claim Form and submit it with all supporting documentation to the Receiver via U.S. Mail to Merrill-Ledford Claims, c/o Stretto, 8269 E. 23rd Avenue, Suite 275, Denver, CO 80238, or via E-Mail to TeamMerrillLedford@stretto.com on or before the Claims Bar Date.

8.    Failure to Submit a Transaction Schedule (Known Investors) or Claim Form (All Others).  If a Known Investor fails to timely submit a Transaction Schedule or if an Other Creditor, Unknown Investor, Unknown Creditor, or Relief Defendant fails to timely submit a Claim Form, the Known Investor, Other Creditor, Unknown Investor, Unknown Creditor, or Relief Defendant

4

(collectively the "<u>Claimants</u>") will waive any claim against the Receivership Estate and will be forever barred and estopped from asserting any such claims against the Receivership Estate. The Claimants will further be deemed to have no allowed claim for purposes of any interim or final distribution in this SEC Action, and the Receivership Estate will be discharged from any and all indebtedness or liability with respect to any claim the Claimant could have submitted. If a Claimant fails to timely submit a Transaction Schedule or Claim Form on or before the Claims Bar Date, the Receiver is not obligated to continue providing Notices to the Claimant.

  9. <u>Receiver's Claims Review & Claimants' Supplementation</u>. The Receiver is directed to review each received Transaction Schedule and Claim Form submitted by the Claimants within thirty (30) days of the Claims Bar Date. If a Known Investor disputed the Receiver's Transaction Schedule, the Receiver must reply to the Known Investor within thirty (30) days of the Claims Bar Date to advise whether he agrees with or disputes the sum claimed by the Known Investor and the basis for his determination. For Unknown Investors, Other Creditors, and Unknown Claimants, the Receiver's reply must be served within thirty (30) days of the Claims Bar Date and must state whether he agrees with or disputes the amount of the claim and the basis for his determination. For Relief Defendants, the Receiver's reply will state whether he agrees with or disputes the property or sum claimed by the Relief Defendant and his basis for his determination. The Receiver's reply to the Relief Defendants' Claim Forms will be due thirty (30) days immediately following the entry of a final judgment as to the SEC's claims against that Relief Defendant.

  If the Receiver's Reply disputes, in whole or in part, the claim as set forth in the Known Creditor's Transaction Schedule or the Claim Form, the Claimant has twenty-one (21) days of the postmark or transmission date of the Receiver's Reply to supplement their claim (the "<u>Supplement</u>"). If the Claimant fails to timely submit a Supplement or, if after reviewing the Supplement the Receiver still disputes the claim, in whole or in part, the Receiver may file a regularly noticed motion

<div align="center">5</div>

<div align="center">JA207</div>

with this Court in accordance with Local Rule 105 of the United States District Court for the District of Maryland setting out his objection(s) to the claim(s) and will serve the motion on the Claimant via certified mail and first class mail.  The Receiver shall have the discretion to consolidate similar objections into one omnibus filing.  There is no deadline by which the Receiver must file a motion with this Court pursuant to this paragraph.

10.  <u>Court Resolution of Claims</u>.  If the Receiver elects to file a motion pursuant to paragraph 9 of this Order, the Claimant may respond to the Motion pursuant to the Local Rules for the United States District Court for the District of Maryland.  After the expiration of the response and reply periods under the Local Rules, this Court will make a final determination as to the disputed claims.  All claims approved by the Receiver and all claims over which this Court makes a final determination in accordance with this paragraph will be final and will establish the amount of each Claimant's allowed claim.

Before the Receiver files a motion pursuant to paragraph 9 of this Order, no discovery, motion practice, or other litigation relating to the claim shall occur unless the Claimant and the Receiver consent.  If the Claimant or the Receiver wish to take discovery and the other does not consent, either may file a motion with the Court requesting the Court determine whether to allow discovery to resolve the claim.  The Court further retains the discretion to set a briefing schedule, to set hearings, or to schedule mandatory settlement conferences to resolve claims.

11.  <u>Consent to Jurisdiction</u>.  Claimants consent to the jurisdiction of this Court upon submission of a Transaction Schedule or Claim Form.  The Claimants' submission of a Transaction Schedule or Claim Form constitutes the Claimant's agreement to be bound by the Court's decisions, including without limitation, a determination as to the extent, validity, priority, and amount of any claim asserted against the Receivership Estate.  The submission of a Transaction Form or Claim Form shall further be deemed consent to be bound by the decisions of this Court as to the

6

JA208

classification, treatment, and payment of the Claim upon this Court's approved distribution plan.

12.   Authority to Compromise and Settle.  The Receiver has authority to compromise and settle any claim set forth by a Claimant without further Order of this Court where the value of the claim, the amount discounted, or the amount given up by the Receivership Estate is equal to or less than $25,000.  The Receiver shall file a motion seeking Court approval of any compromise or settlement of a claim exceeding $25,000.  Any objection or opposition to a motion seeking Court approval of any compromise or settlement of a claim shall be filed within fourteen (14) days of the date the Receiver's motion is filed.  If no party objects to or opposes the motion to compromise or settle a claim, the Receiver shall file a notice of no objection to the proposed compromise or settlement.  All Claimants are directed to cooperate with the Receiver to the maximum extent possible to achieve a swift resolution of disputes concerning Claims without the need for determination by the Court.

13.   Reservation of Rights.  Nothing herein shall prejudice or limit any right of the Receiver to dispute, or assert offsets or defenses to, the extent, validity, or priority, of any amounts asserted in any Claim Form or Transaction Schedule, including but not limited to the manner in which investments may be aggregated and claims classified, treated, and paid under this Court's approved distribution plan.  Nothing contained herein is intended to preclude or limit the Receiver from objecting to any claim on any grounds.

IT IS SO ORDERED, this ___10th___ day of _____February_____, 2021.

_____
/s/
_____
HON. RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE

7

HB: 4831-2951-0618.2

JA209

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No.: 1:18-cv-0284 4-RDB** |
| **v.** ) | |
| ) | |
| **KEVIN B. MERRILL, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## RECEIVER GREGORY S. MILLIGAN'S MOTION FOR ORDER APPROVING DISTRIBUTION PLAN AND INTERIM DISTRIBUTION

Receiver Gregory S. Milligan (the "Receiver"), in consultation with the Securities and Exchange Commission (the "SEC"), respectfully files this Motion for Order Approving Distribution Plan and Interim Distribution (the "Motion"). In support of this Motion, the Receiver states as follows:

## I.    INTRODUCTION

**A.    The SEC Action and the Receiver's Liquidation Efforts.**

1.    The SEC initiated this action (the "SEC Action") on September 13, 2018 when it filed suit against Defendants Kevin B. Merrill ("Merrill"), Jay B. Ledford ("Ledford"), Cameron R. Jezierski ("Jezierski"), Global Credit Recovery, LLC, Delmarva Capital, LLC, Rhino Capital Holdings, LLC, Rhino Capital Group, LLC, DeVille Asset Management LTD, and Riverwalk Financial Corporation (collectively, the "Defendants") asserting claims against the Defendants for violating the Securities Act of 1933 and the Securities Exchange Act of 1934 based on their operation of a Ponzi scheme that raised more than $345 million from more than 230 individual investors or investor groups to purportedly purchase consumer debt portfolios. *See* Dkt. No. 1. Merrill, Ledford, and Jezierski each consented to entry of partial judgments against them in the SEC Action. *See* Dkt.

No. 181 (Judgment as to Jezierksi), Dkt. No. 196 (Judgment as to Ledford), and Dkt. No. 211 (Judgment as to Merrill).

2.      On September 13, 2018, the Court appointed the Receiver to marshal and preserve the assets of the Defendants and their affiliate entities, which collectively are referred to as the Receivership Parties.[1]  *See* Dkt. No. 11 at 1.  On November 27, 2018, the Court entered a First Amended Order Appointing Temporary Receiver that further confirmed the Receiver's rights, duties, and obligations.  *See* Dkt. No. 62.  On September 14, 2021, the Court entered a Second Amended Order Appointing Temporary Receiver (the "Receivership Order") that further confirmed the Receiver's rights, duties, and obligations.  *See* Dkt. No. 484.

3.      Since the Receiver was appointed, he has undertaken significant efforts to identify the assets of the Receivership Parties, including monies, funds, securities, investments, cash, accounts, vehicles, equipment, real estate, art, collectibles, jewelry, casino accounts, bonds, and any other assets of value.  In his initial preservation plan, the Receiver detailed the various assets of the Receivership Parties that he had identified within the first sixty days of his appointment, which included eleven real estate assets, thirty-four vehicles, an interest in an aircraft, fine art, watches, and other jewelry, along with their recommended disposition.  *See* Dkt. No. 54.

---

[1] The Receivership Parties are: Merrill, Ledford; Jezierski; Global Credit Recovery, LLC; Delmarva Capital, LLC; Rhino Capital Holdings, LLC; Rhino Capital Group, LLC; DeVille Asset Management LTD; Riverwalk Financial Corporation; K.B. Merrill Associates; Financial Reclamation Group LLC; Halo Credit Solutions LLC; JBL Holdings LLC; Jay B. Ledford, P.C.; the Joseph Finance Company; Leddy Bear LTD; Ledford & Associates, PLLC; King Fischer LTD d/b/a LP Investments LTD; NLEX, Inc.; Receivables Portfolio Interchange, Inc.; Riverwalk Capital Investments, Inc.; Riverwalk Credit Solutions, Inc.; Riverwalk Debt Solutions, Inc.; Riverwalk Fixed Asset Group LLC; SCUSA Financial, Inc.; Vaquero Asset Management, Inc.; CRJ Holdings LLC; Centurion Capital Corporation; GCR CBL CP I, LLC; GCR CBL CP II, LLC; GCR CBL CP III, LLC; GCR CBL CP IV, LLC; GCR HCP Holdings 1, LLC; GCR Mercer Holdings, LLC; the J Trust; and the Kevin B. Merrill Revocable Trust.  *See* Receivership Order, Dkt. No. 484 at 2-3.

HB: 4824-3798-5531.11

4.      Throughout the course of the SEC Action and pursuant to approval from this Court, the Receiver has diligently worked to market and sell the assets of the Receivership Parties with the goal of maximizing the cash available for distribution to those who have claims against the Receivership Parties.

5.      The Receiver also operated DeVille Asset Management, Ltd ("DeVille"), Riverwalk Credit Solutions, Inc., and Riverwalk Debt Solutions, Inc. until the entities' assets were sold.  The Receiver's operation of these entities generated cash for the Receivership Estate.

6.      The Receiver has liquidated most of the physical assets of the Receivership Parties. However, the Receiver still intends to liquidate certain additional assets, including real property in Texas, art, collectibles, jewelry, watches, and other luxury items.  The Receiver also intends to investigate and pursue claims and litigation against third parties, which could increase the assets available for distribution.  *See* Dkt. No. 484.

7.      As of September 30, 2021, the Receivership Estate had $59,339,909.87 in cash.  *See* Dkt. No. 497.

**B.      The Fraud.**

8.      Merrill, Ledford, and Jezierski each pled guilty to conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 in the related criminal action styled *United States of America v. Kevin B. Merrill, et al.*, Case No. 18-cr-00465-RDB, filed in the United States District Court for the District of Maryland (the "Criminal Action").[2]  *See* Plea Agreements in Criminal Action, Case No. 1:18-cr-00465-RDB, Dkt. Nos. 76, 81, and 87.  In addition, Ledford pled guilty to committing

---

[2] On December 11, 2018, a criminal complaint was also filed against Relief Defendant Amanda Merrill ("Amanda Merrill") for conspiracy to: (i) obstruct, influence, or impede the Criminal Action; and (ii) disobey or resist lawful Orders of the Court in the Criminal Action.  *See* Criminal Complaint, Case No. 1:18-cr-00465-RDB, Dkt. No. 5.  Amanda Merrill is Defendant Kevin Merrill's spouse.

aggravated identity theft and a money-laundering transaction in excess of $10,000.00. *See id.*, Dkt. No. 87 at 1. Merrill pled guilty to committing wire fraud. *See id.*, Dkt. No. 81 at 1.

9.    In connection with their pleas, Merrill and Ledford agreed, among other things, that "there was a scheme and artifice to defraud and to obtain money and property from investors by materially false and fraudulent pretenses, representations, and promises using interstate wire communications as alleged in the Indictment." *Id.*, Dkt. No. 87 at 1; *see also id.*, Dkt. No. 81 at 1.

10.    Ledford and Merrill further agreed that from 2013-2018, their scheme to "defraud took in over $394 million" from investors. *Id.*, Dkt. No. 81-1 at 15; Dkt. No. 87-1 at 12. Ledford and Merrill "used investor funds to pay out promised returns to other investors and to misrepresent those payouts as funds from the sales of portfolios." *Id.*, Dkt. No. 87-1 at 9; Dkt. No. 81-1 at 7. They also "diverted investors' funds and collections for their own personal benefit." *Id.*, Dkt. No. 87-1 at 11; Dkt. No. 81-1 at 14. They returned $248 million to the investors they defrauded during the course of the Ponzi scheme. *Id.*, Dkt. No. 81-1 at 15.

**C.    The Claims Process.**

11.    In February 2021, the Receiver filed a Motion for Order Setting Claims Bar Date, Establishing Claims Procedure, and Approving Notification Process to provide a process through which claims could be asserted against the Receivership Estate (the "Claims Procedure Motion"). *See* Dkt. 394. The Court granted the Claims Procedure Motion on February 10, 2021, and entered its Order Setting Claims Bar Date, Establishing Claims Procedure, and Approving Notification Process (the "Claims Procedure"). *See* Dkt. No. 396. Pursuant to the Claims Procedure, any Known Investors,[3] Relief Defendants, Other Creditors, Unknown Creditors, and Unknown Investor

---

[3] Capitalized terms herein shall have the same meaning as those defined in the Claims Procedure unless otherwise noted.

Creditors were directed to submit any claims they had against any of the Receivership Parties by May 20, 2021 (the "Claims Bar Date"). *See id.* The Claims Procedure provided procedures through which the Receiver could contest any claim and allowed the Claimant to subsequently supplement the claim. The Claims Procedure similarly provided a procedure through which the Court could resolve any disputed claims. *See id.*

12.    The Claims Bar Date has now passed, and the Receiver has been working diligently to resolve disputed claims. A total of 274 claims were submitted, which included 219 claims submitted by Known Investors, 1 claim submitted by a Relief Defendant, and 54 claims submitted by Other Creditors, individuals within Investment Entities, and/or Unknown Investors (collectively, the "Claimants"). The Receiver objected to and/or requested that 83 Claimants supplement or withdraw their claims. Following resolution of this process, there are 238 undisputed and allowed claims totaling $166,022,249.69, and there are 36 disputed claims that are the subject of the Receiver's Omnibus Objection to Claims (Dkt. No. 503) (the "Claims Objections"). The disputed claims include 8 Known Investor claims for a total amount of $8,672,556.83 and 28 Other Creditor claims for a total amount of $2,811,799.26.

## II.    REQUESTED RELIEF

13.    The Receiver has liquidated the majority of the assets of the Receivership Parties, and the amount of the claims to be asserted against the Receivership Parties is substantially certain. The Receiver believes it is ripe to move the Court to enter an Order approving a distribution plan and an interim distribution to certain Claimants. As detailed below, the Receiver's proposed distribution plan contains or provides for the following: (1) five classes of Claimants based on their relationship to the Receivership Estate and the subordination of insider (Class 5) claims; (2) netting of investments and recoveries from third parties; (3) a rising tide distribution methodology

HB: 4824-3798-5531.11

for Class 4 Claimants; and (4) the pooling of all assets of the Receivership Parties for distribution. After reserving sufficient funds to pay Claimants in Classes 1-3 and claims of Relief Defendants to assets in dispute, the Receivership Estate holds approximately $50 million. By this Motion, the Receiver seeks to make an interim distribution of this net amount to Class 4 Claimants. Distribution payments to Claimants whose Class 4 Claims remain in dispute will be escrowed pending Court resolution, and then paid to the disputing Claimant or included in subsequent distributions to allowed Claimants, as appropriate.

**A.     Legal Standard.**

14.     A "district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *S.E.C. v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986) (internal quotations omitted). Its selection of a distribution plan is reviewed for an abuse of discretion, and appellate scrutiny is narrow given the district court's broad equitable powers. *S.E.C. v. Quan*, 870 F.3d 754, 761 (8th Cir. 2017). "The primary job of the district court is to ensure that the proposed plan of distribution is fair and reasonable." *Id.* (internal quotations omitted); *see also S.E.C. v. Torchia*, 922 F.3d 1307, 1311 (11th Cir. 2019) ("The goal of such receiverships is to grant fair relief to as many investors as possible."); *see also S.E.C. v. Parish*, No. 2:07-cv-00919, 2010 WL 5394736, at *5 (D.S.C. Feb. 10, 2010) ("The court has power to approve any plan so long as it is fair and reasonable.") (internal quotations omitted).

**B.     Classes of Claimants and Subordination of Insider Claims.**

15.     The Receiver proposes dividing Claimants into five different classes. The proposed classes are:

Class 1:     Administrative Professional Fees and Claims: to be paid in full up to the allowed amount of the claims.

Class 2:     Priority Claims: to be paid in full up to the allowed amount of the claims.

HB: 4824-3798-5531.11

JA215

Class 3:        Secured Claims: to be paid in full to the extent of the value of the collateral, with any deficiency to be paid as a Class 4b general unsecured claim.

Class 4a:       Investor Claims: to be paid along with Class 4b pursuant to the rising tide methodology after Classes 1, 2, and 3 are paid in full or after sufficient assets are reserved for payment in full of Class 1, 2, and 3 Claimants.

Class 4b:       General Unsecured Claims: to be paid along with Class 4a pursuant to the rising tide methodology after Classes 1, 2, and 3 are paid in full or after sufficient assets are reserved for payment in full of Class 1, 2, and 3 Claimants.[4]

Class 5:        Insider Claims: to be paid *pro rata* after Classes 1, 2, 3, and 4 are paid in full.[5]

16.     The Receiver proposes that allowed Class 1 Claimants recover the full amount of their claims upon approval of interim and final fee applications by the Court, as applicable. Among the professionals who fall into Class 1 are: (1) the Receiver and the company that employs him; (2) the Receiver's attorneys; and (3) professionals the Receiver has employed pursuant to the terms of the Receivership Order and other Orders entered by the Court, including Sotheby's International Realty, Inc., Heritage Auctioneers & Galleries, Inc., Prestige Motor Car Imports, LLC, BDO USA, LLC, Velocity Investments, LLC, FLS Auction, Inc., Garnet Capital Advisors, LLC, and BK Management Solutions d/b/a Stretto. Upon motion by the Receiver, input from the SEC, and Order of the Court, Class 1 Claimants have been paid periodically throughout the course of the SEC Action from either the proceeds of the sale of the Receivership Asset(s) from which they were retained to sell or from the cash on hand with the Receiver. Class 1 Claimants will continue to

---

[4] Class 4a and Class 4b are collectively referred to as Class 4.

[5] Class 5 Claimants will not receive a distribution pursuant to this Motion, and the Receiver does not, at this time, believe there will be sufficient funds collected to make any payments to Class 5 Claimants. If sufficient funds are collected to pay Class 5 Claimants, the Receiver will, at that time, make a recommendation to the Court as to the most equitable *pro rata* methodology to be used with respect to those Claimants.

HB: 4824-3798-5531.11

seek payment by this process and be paid upon Court Order; the Receiver is not proposing any change to the procedure for the payment of Class 1 Claimants.

17.    The Receiver proposes that allowed Class 2 Claimants shall be paid in full.  Class 2 Claimants shall include tax liabilities of the Receivership Estate at the federal level and state taxes necessary to the sale of assets of the Receivership Estate, if any, which are discussed in greater detail below.

18.    The Receiver proposes that allowed Class 3 Claimants shall similarly be paid in full up to the value of their respective collateral.  Class 3 Claimants shall include mortgagees and other secured creditors, including any homeowners' association and local taxing entities for real property taxes.  The Receiver proposes that Class 3 Claimants be paid in full out of sale proceeds of their respective collateral before any Claimants in Class 4 receive proceeds from the sale of any property secured by a valid lien of a Class 3 Claimant.  To the extent Class 3 Claimants are not paid in full out of the sale of their respective collateral, any deficiency claim shall be deemed a Class 4b claim.

19.    The Receiver proposes that Class 4a Claimants shall include Known Investors and Unknown Investors.  As discussed in more detail below, the Receiver proposes that allowed Class 4a Claimants, along with allowed Class 4b Claimants, be paid pursuant to the rising tide methodology.  At this time, the Receiver does not believe that allowed Class 4a Claimants will be paid the full amount of their claim.

20.    The Receiver proposes that Class 4b Claimants shall include general unsecured creditors that are not Known Investors or Unknown Investors.  The general unsecured creditors in Class 4b shall include individuals or entities who have claims against a Receivership Party that have been reduced to a judgment or are the subject of pending litigation, amounts owed pursuant

HB: 4824-3798-5531.11

to a contract, or other debts owed by a Receivership Party. As discussed in more detail below, the Receiver proposes that allowed Class 4b Claimants be paid along with allowed Class 4a Claimants pursuant to the rising tide methodology. At this time, the Receiver does not believe that allowed Class 4b Claimants will be paid the full amount of their claim.

21.     The Receiver finally proposes that a final Class 5 be created that includes insiders of the Receivership Parties who have submitted claims against the Receivership Estate, provided, however, that with the exception of Amanda Merrill, no Defendant in this SEC Action or the Criminal Action will qualify as a Class 5 insider Claimant or otherwise be eligible to receive a distribution in this SEC Action. Insiders shall include family members, employees, officers, directors, shareholders, members, or owners of any Receivership Party along with the spouses, children, or relatives of any such person, or any individual or their spouse who received a commission, finders fees, or other compensation from a Receivership Party for their role in the fraud. The Receiver proposes that any individual or entity falling within this category who has submitted a claim that is allowed by the Receiver be paid *pro rata* only after Class 1, 2, 3, and 4 Claimants have been paid in full. At this time, the Receiver does not anticipate having sufficient funds to make payments to Class 5 Claimants.

22.     The Receiver believes subordination of Class 5 Claimants is fair and reasonable. In equitable receiverships, Courts have subordinated the claims of insiders or outright denied their right to a distribution on the grounds they are not similarly situated to other investors or victims. As equity is equity, it is inequitable to allow employees or others who participated in the Ponzi scheme or should have been aware of the fraudulent conduct at issue to recover a distribution. *See S.E.C. v. Byers*, 637 F.Supp.2d 166, 173, 184 (S.D.N.Y. 2009) (collecting cases).

23.     Of the individuals who submitted claims by the Bar Date, the Receiver has identified

7 Claimants who should be treated as insiders.  These are: (1) I-0117, (2) I-0181, (3) I-0239, (4) I-

0268, (5) I-0125, (6) I-0104, and (7) I-0189.[6]

  a. I-0117 is an insider because I-0117 was an owner and employee of Ledford &
Associates, PLLC, served on the Board of Directors for Riverwalk Financial
Corp, and was an owner and employee of VIP Capital, the trustee of J Trust.

  b. I-0181 is an insider because I-0181 received commissions, finder's fees, or other
compensation from Merrill, Ledford, and/or other Receivership Parties as part of
securing other individuals or entities to invest with Receivership Parties.

  c. I-0239 is an insider because I-0239 received commissions, finder's fees, or other
compensation from Merrill, Ledford, and/or other Receivership Parties as part of
securing other individuals or entities to invest with Receivership Parties.

  d. I-0268 is an insider because I-0268 received commissions, finder's fees, or other
compensation from Merrill, Ledford, and/or other Receivership Parties as part of
securing other individuals or entities to invest with Receivership Parties.

---

[6] Amanda Merrill is Defendant Kevin Merrill's spouse and submitted a claim prior to the Bar Date.
*See* Amanda Merrill Claim Form, Dkt. No. 445-1.  The Receiver interprets Amanda Merrill's
"claim" as an assertion of ownership over the property identified in her claim form.  To the extent
Amanda Merrill is successful in her claims and defenses in this SEC Action, her separate property
is not property of the Receivership Estate available to satisfy claims of Claimants.  However, to
the extent the property identified in Amanda Merrill's claim is property of the Receivership Estate
available for distribution to Claimants, the Receiver proposes to classify her claim as a Class 5
claim because she is married to Defendant Kevin Merrill. Because Amanda was not charged with
the underlying fraud in either the SEC action or the Criminal Action, the Receiver does not believe
her exclusion from Class 5 would be appropriate.

HB: 4824-3798-5531.11

e.  I-0125 is an insider because I-0125 received commissions, finder's fees, or other compensation from Merrill, Ledford, and/or other Receivership Parties as part of securing other individuals or entities to invest with Receivership Parties.

f.  I-0104 is an insider because I-0104 is an in-law of Defendant Kevin Merrill.

g.  I-0189 is an insider because I-0189 is the spouse of an individual who received commissions, finder's fees, or other compensation or fees from a Receivership Party.

## C.  The Settlements and Other Compensation at Issue.

24.    The Receiver further proposes that that any payments or funds that Class 4 Claimants received to compensate them for losses sustained as a part of the Class 4 Claimant's investment or business dealings with Receivership Parties be factored in when determining the Claimant's claim amount.  "[I]t is appropriate for the Receiver to consider amounts received by investors in settlement of their claims with third parties in determining those investors' claim amounts for purposes of making distributions . . ." *Parish*, 2010 WL 5394736, at *9; *see also S.E.C. v. McGinn, Smith & Co, Inc.*, No. 1:10-cv-457, 2016 WL 6459795, at *3 (N.D.N.Y. Oct. 31, 2016) ("In attempting to equalize recovery among investors, the [settlement] reduction ensures that no one investor recovers a disproportionate percentage of their allowed claim after considering all sources of recovery.  As equality is equity.") (internal quotations omitted).  If the Receiver did not do so, "investors who obtained third-party recoveries would stand to receive distributions in this case that were not proportional to their actual losses."  *Parish*, 2010 WL 5394736, at *9 (citing *S.E.C. v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005)).

25.    The Claims Procedure required Claimants to disclose any compensation they received based on their losses in this Ponzi scheme.  A total of 38 Claimants received a combined

$2,882,787.66 in recoveries that compensated them for their losses in the Defendants' Ponzi scheme. As discussed below in the context of the rising tide methodology, the Receiver proposes treating these recoveries as pre-Receivership withdrawals rather than a dollar-for-dollar reduction from their claim amount as it appropriately balances the desire to equalize recovery among Claimants.

26.     There are at least three different ways outside of this SEC Action in which Class 4 Claimants received payments to compensate them for the losses they sustained as a result of the Ponzi scheme.  Some Class 4 Claimants settled a lawsuit in which they sued a non-Receivership Party for fraudulent misrepresentations the non-Receivership Party made to induce them to invest with the Receivership Parties.  These Class 4 Claimants received settlement payments that are directly related to the losses that comprise their claim amounts in this SEC Action.  Other Class 4 Claimants received payments from an unregistered broker who charged certain Claimants a percentage of their account balances each time they took a distribution from their investment with the Receivership Parties.  Later, by agreement, the broker returned those payments to the Class 4 Claimants, thereby partially compensating those Class 4 Claimants for the losses they sustained as a result of the Ponzi scheme.  Finally, other Class 4 Claimants received insurance proceeds to compensate them for the losses they sustained as a result of the Ponzi scheme.  Treating settlements and other similar recoveries as pre-Receivership withdrawals ensures all Class 4 Claimants are treated equally with respect to the total recovery of their principal investments.

**D.     Netting of Investments is Appropriate.**

27.     The Receiver's recommended distribution plan also requests the Court allow the Receiver to net investments where a person invested with a Receivership Party in multiple capacities. For example, there are some individuals who invested directly with a Receivership Party and also through a pooled fund who invested with a Receivership Party.  A person may have incurred a loss

on their investment individually but received a profit based on their investment in the pooled fund. In such instances, like settlements and other recoveries, the Receiver proposes that the individual's net winnings in the pooled fund be treated as a pre-Receivership withdrawal from their direct investment to ensure that Class 4 Claimants are treated identically with respect to the total recovery of their principal investments.

28.    In addition, there are individuals who received a profit on their direct investment with a Receivership Party but incurred a loss based on their investment in a pooled fund.   In such instances, the Receiver proposes that the individual's net winnings be treated as a pre-Receivership withdrawal by the pooled fund, with an adjustment made by the pooled fund to ensure the individual does not participate in any distribution unless and until the rising tide reaches their loss after factoring in the net winnings from their direct investment.   Treating net winnings in direct investments as pre-Receivership withdrawals for pooled funds ensures all Class 4 Claimants are treated identically with respect to the total recovery of their principal investments.

**E.**    **A $50 Million Interim Distribution to Class 4 Claimants is Appropriate.**

29.    As of September 30, 2021, the Receiver has available cash on hand totaling $59.3 million.  *See* Dkt. No. 497.  The Receiver requests authority to make an interim distribution of $50 million to allowed Class 4 Claimants at this time.  Specifically, the Receiver requests authority to pay or reserve funds as follows:

a.    Class 1 Claimants: The Receiver has paid and will continue to pay allowed Class 1 Claimants as their fees become due and payable as authorized by Orders of the Court. The Receiver has reserved funds for this purpose.

b.    Class 2 Claimants: The Receiver has paid and will continue to pay the allowed Class 2 Claimants in full when due.  The Receiver does not intend to make an interim

distribution to Class 2 Claimants pursuant to this Motion but has reserved funds for any potential liabilities.

c.    Class 3 Claimants: Allowed Class 3 Claimants will be paid from the sales of the real properties that secure their claim.

d.    Class 4 Claimants: The Receiver will pay each allowed Class 4 Claimant based on the rising tide methodology described in greater detail below.  The Receiver proposes a total interim distribution of $50 million to allowed Class 4 Claimants, which, for the avoidance of doubt, includes both Class 4a and Class 4b Claimants.

e.    Class 5 Claimants: These Claimants are not entitled to a distribution until allowed Class 4 Claimants are paid in full.  Allowed Class 4 Claimants will not be paid in full by the proposed interim distribution, and, therefore, there will be no distribution to any Class 5 Claimants.

30.    The Receiver believes an interim distribution of $50,000,000 to allowed Class 4 Claimants in accordance with the plan set forth above is fair and reasonable, and appropriate at this time.  After making a $50,000,000 interim distribution, the Receiver will still have $9,339,909.87 of cash on hand as reserves for Class 1-3 Claimants, assets disputed by Relief Defendants, and future distributions, which will be supplemented by additional collections, through sales of the remaining assets, and third-party (including claw-back) recoveries and litigation.  Distribution payments to Claimants whose Class 4 Claim remains in dispute will be escrowed pending Court resolution, and then paid to the disputing Claimant or included in subsequent distributions, as appropriate.  *See* Claims Objections.

31.    The remaining cash on hand is sufficient to pay any claim on disputed assets, including Amanda Merrill's claim in full in the event the Court determines she is entitled to 100%

of the net sale proceeds of the two real properties identified in her claim that have been sold by the Receiver: (i) $5,486,183.33 for 1055 Spyglass Lane, Naples, FL 34102; and (ii) $808,364.53 for 27776 Sharp Road, Easton, MD 21601. *See* Amanda Merrill Claim Form, Dkt. No. 445-1 at 19. The remaining property claimed by the Relief Defendants has not been liquidated and, therefore, could be turned over to satisfy their claims.

32.     The Receiver does not believe, after consultation with BDO, there is any tax liability to the Receivership Parties or the Receivership Estate for the $59.3 million in available cash on hand as of September 30, 2021. Thus, the Receiver is not reserving any funds to satisfy potential tax liabilities of the Receivership Parties or the Receivership Estate to Class 2 Claimants.

33.     Accordingly, the Receiver believes an interim distribution of $50 million is appropriate and requests authority to make an interim distribution of $50 million to Class 4 Claimants. If and when the Receiver collects additional funds through sales of the remaining assets and claw-back litigation, the Receiver will propose to the Court another interim, or a final, distribution.

**F.     The Court should Adopt a Rising Tide Distribution for Class 4 Claimants.**

     *i.     Distribution methods.*

34.     There are three distribution methods that are often considered in equitable receiverships. These are: (i) rising tide; (ii) net investment or net loss; and (iii) last statement method. The rising tide method is the "most commonly used (and juridically approved) for apportioning receivership assets." *S.E.C. v. Huber*, 702 F.3d 903, 906 (7th Cir. 2012). The Receiver has concluded, as more fully detailed below, that the rising tide method is the most equitable in this case as it equalizes the lowest percentage return victims of the Ponzi scheme recover on their investment

and it provides the greatest recoveries for the largest number of Claimants.  The Receiver therefore requests the Court approve its use here.

35.    The rising tide method uses the distribution process to equalize the percentage return each allowed Claimant receives on their loss with the Receivership Parties.   Under the rising tide method, an investor's pre-receivership withdrawals are considered a part of the overall distributions received by an investor.  As such, the investor's pre-receivership withdrawals for Class 4a Claimants are credited dollar-for-dollar from the principal amount they invested with the Receivership Parties. *Huber*, 702 F.3d at 903.  For non-investor claims (*i.e.*, Class 4b general unsecured claims), and assuming there has been no recovery, the claim is treated as a 100% loss so that general unsecured claims are paid *pro rata* with investor Claimants who lost 100% of their principal investment.  This methodology ensures each allowed Claimant receives the same minimum recovery before any allowed Claimant who received pre-receivership withdrawals receives a distribution.  As the rising tide recovery percentage reaches allowed Claimants who received pre-receivership withdrawals, those allowed Claimants begin sharing in *pro rata* distributions until the next allowed Claimant in the rising tide is reached and is added to the *pro rata* distributions.  This methodology results in those investors who received the largest pre-receivership withdrawals (on a percentage basis) potentially not receiving any distribution.

36.    Under the net loss or net investment method, recoveries are considered as an offset to the claim amount, as opposed to a pre-receivership recovery, and investors receive a *pro rata* distribution based on their claim amount compared to the total amount of all allowed claims in the case. *U.S. Commodity Futures Trading Comm'n v. Lake Shore Asset Mgmt. Ltd.*, 2010 WL 960362, at *9 (N.D. Ill. Mar. 15, 2010).  In other words, a pre-receivership withdrawal would only reduce an investor's claim amount, not their eligibility to receive a distribution as is the case under the rising

HB: 4824-3798-5531.11

tide methodology.  This methodology would pay all Class 4 Claimants on a *pro rata* basis based on the dollar amount of their claim compared to the total dollar amount of all Claimants.

37.    Under the last statement method, an investor's claim amount is determined by taking the value of their investment as of the last investor statement.  *In re Bernard L. Madoff Invs. Secs. LLC*, No. 15-CV-01151, 2016 WL 183492, at *1 (S.D.N.Y. 2016).  Courts have rejected the use of the last statement method when statements are based on fictitious profits as this method has "the absurd effect of treating fictitious and arbitrarily assigned paper profits as real and would give legal effect to [the Ponzi scheme's] machinations."  *In re Bernard L. Madoff Invs. Secs., LLC*, 779 F.3d 74, 78 (2d Cir. 2015).  Here, the last statement method should be rejected as a distribution method because its use would similarly have the "absurd effect" of giving legal effect to the Defendants' fraud as many of the investments were based on fake consumer debt portfolios, or investments that never existed in the first place.  **Exhibit A**, Declaration of Greg Milligan ¶ 8.  Further, the Defendants did not consistently provide account statements, so it would be entirely inequitable to adopt a distribution plan based on inconsistent statements.  Ex. A, Decl. of G. Milligan ¶ 8.

*ii.    Rising tide versus net loss.*

38.    The Seventh Circuit in *SEC v. Huber* provided two useful charts copied below to illustrate the differences between the net loss (or net investment) and rising tide methodologies.  In the Seventh Circuit's example, the Court assumed that investors A, B, and C each invested $150,000 in the Ponzi scheme.  Investor A withdrew $60,000 before the scheme collapsed, Investor B withdrew $30,000 before the scheme collapsed, and Investor C withdrew nothing.  Thus, Investor A lost $90,000, Investor B lost $120,000, and Investor C lost $150,000.  The Seventh Circuit then assumed that the Receiver had $60,000 to distribute.  Applying the net loss method, Investors A, B, and C would each receive 1/6 of their loss as there was a total of $60,000 in assets and $360,000 in

losses, *i.e.* $60,000/ ($90,000 + $120,000 + $150,000).  In other words, Investor A would receive

$15,000, Investor B would receive $20,000, and Investor C would receive $25,000.  Despite each

investor investing the same amount in the Ponzi scheme, Investor A will have only lost $75,000,

Investor B will have lost $100,000, and Investor C would have lost $125,000.



*See SEC v. Huber*, 702 F.3d at 904-06.

39.     Under the rising tide methodology, however, pre-receivership withdrawals are

considered in determining whether an investor is entitled to a distribution, and if so, in what amount.

Using the example in *Huber*, the Receiver has $60,000 in assets to distribute.  Because Investor A

has already received $60,000 pre-receivership, it would not recover anything.  The $60,000 would

be distributed between Investors B and C to bring their distributions as close as possible to the

amount Investor A received pre-receivership.  Because Investor C had not received anything on its

investment, it would first be entitled to $30,000 so that Investors B and C will have both received

$30,000.  The remaining $30,000 would be shared equally between Investors B and C.  Thus,

Investor B would receive a $15,000 distribution and Investor C would receive an additional $15,000

for a total distribution of $45,000.  The following chart from *SEC v. Huber* illustrates the effect of

the same $60,000 distribution under the rising tide methodology. These charts show that the rising tide methodology has the ability to neutralize the worst losses amongst the victims of the defrauded investors; whereas the net loss methodology can favor investors who made pre-Receivership withdrawals.



*See SEC v. Huber*, 702 F.3d at 904-06.

40. Another way to compare the amount investors receive under the net loss methodology vs. the rising tide methodology is to consider the percentage of each investor's loss. Using the same *SEC v. Huber* example above, Investor A lost 60% of its investment pre-receivership, Investor B lost 80%, and Investor C lost 100%. All three investors will receive distributions under the net loss methodology, with Investor A going from a 60% loss pre-receivership to a 50% loss, Investor B going from an 80% loss to a 67% loss, and Investor C going from a 100% loss a 83% loss. Under the rising tide methodology, Investor B will not receive a distribution until Investor C's loss percentage reaches 80%, and Investor A will not receive a distribution until Investor B's and Investor's C's loss percentage reaches 60%. Because Investor B and Investor C's loss percentage reached only 70%, Investor A in the example above will not receive a distribution under the rising

tide methodology. Once again, the rising tide methodology seeks to treat all similarly situated investors the same by using the distribution process to equalize the losses suffered by the victims throughout the entire Ponzi scheme by not favoring those who received larger pre-receivership withdrawals earlier in the Ponzi scheme. The rising tide methodology favors investors who lost the highest percentage of their principal investment and ensures the most-harmed investors receive distributions before those who lost a lower percentage of their principal investment.

> iii.    *Pooling of Assets is Appropriate and the Rising Tide Distribution Methodology Results in a More Equitable Result for Class 4 Claimants.*

41.    Some Courts have held that to apply a rising tide or pro rata methodology, the Court must find that "a pooling and pro rata distribution, as opposed to the tracing of assets, [is] appropriate." *S.E.C. v. Capital Consultants, LLC*, 397 F.3d 733, 747 (9th Cir. 2005). Tracing of assets has been rejected when determining how to distribute assets to similarly situated innocent investors in a fraud scheme as tracing promotes unequal and inequitable treatment of investors who are otherwise similarly situated. *U.S. v. Real Property located at 13328 and 13324 State Highway 75 N.*, 89 F.3d 551, 553-54 (9th Cir. 1996) (collecting cases). Here, for the same reasons the last statement methodology should not be used, the Court should find that a pooling and pro rata distribution is appropriate as the Receivership Parties commingled investors' funds and as there is no equitable reason to allow certain investors to recover more than others simply based on fictious returns. Ex. A, Decl. of G. Milligan ¶ 8.

42.    The Receiver believes the rising tide is the most equitable distribution methodology for the Class 4 Claimants in this SEC Action. With respect to investors, after factoring in settlements and other recoveries, 201 investors incurred a loss on their investment with the Receivership Parties.[7]

---

[7] The following analysis is based on the assumption that the Court overrules all remaining objections to claims that have been filed by the Receiver, except for claims of individuals who are

Ex. A, Decl. of G. Milligan ¶ 9.  The majority of the investors—160—lost 50% or more of their

principal investment with 73 investors losing 100% of their investment.  *Id.* ¶ 9.  In addition, 16

allowed Class 4b general unsecured creditors will be deemed to have lost 100% of their claim.[8]  *Id.*

¶ 9.  The following bar graph illustrates the distribution of allowed Class 4's losses.



43.    If the Court adopts a rising tide methodology and assuming a $50,000,000

distribution to Class 4, 176 allowed Claimants would receive a distribution increasing the lowest

recovery from 0.0 % to 48.86%.  41 allowed Claimants would not receive a distribution as they

already recovered at least 48.86% of their principal investment.  *Id.* ¶ 10.  Attached as **Exhibit B** is

the distribution schedule for what each allowed Class 4 Claimant would receive under the rising tide

---

purely duplicative of the pooled group they invested through, which are not included in the
distribution calculations contained in this Motion.  It is not anticipated that the resolution of these
objections would have a material effect on whether to adopt the rising tide or net loss method.

[8] As noted above, the Class 4b Claimants have no recoveries and, accordingly, they are treated as
Claimants who lost 100% of their Claim.

methodology compared to the net loss methodology with the proposed $50,000,000 interim distribution.[9]

44.    If the Court were to adopt the net loss method, all allowed Claimants would receive a distribution; however, it would be at the cost of the allowed Claimants who sustained a 100% loss. Instead of these Claimants recovering 48.86% of their principal under rising tide methodology, the lowest recovery would drop to 28.17% under the net loss methodology.  *Id.* ¶ 11; *see also* Ex. B. Accordingly, the allowed Claimants who lost everything would suffer at the expense of the investors who received distributions pre-Receivership.

45.    The rising tide is also a more equitable distribution methodology to apply here as 147 allowed Claimants would recover more under a rising tide methodology than net loss, assuming a $50,000,000 distribution.  *Id.* ¶ 12.  Only 70 allowed Claimants would receive a higher recovery under the net loss methodology.  *Id.* ¶ 12.

46.    Accordingly, the Receiver recommends the Court adopt a rising tide methodology as (1) it equalizes the lowest percentage return victims of the Ponzi scheme recover on their investment, (2) more allowed Claimants will receive a greater distribution using rising tide methodology, and (3) it raises the lowest percentage of recovery from 28.17% to 48.86% with a $50,000,000 distribution when compared against the net loss methodology.

**G.    Other Relief.**

47.    To be eligible for a distribution payment, the Receiver requests the Court enter an Order that the allowed Claimant be required to provide the Receiver with a completed and signed W-9 on the most recent form, which will be mailed and/or emailed to each allowed Claimant and is

---

[9] To preserve anonymity, investors will be referred to by their investor number that was provided by Stretto to each Claimant.  Other Creditors have also been assigned a number beginning with "O."

HB: 4824-3798-5531.11

also available at https://www.irs.gov/pub/irs-pdf/fw9.pdf.  The Receiver will cause a check to be issued to the allowed Claimant by the 15th day of the month following 30 days after the Receiver's receipt of the properly completed W-9, and the Court's entry of an Order authorizing a $50,000,000.00 distribution.

48.    The Receiver further proposes that the allowed Claimant have 90 days from the date the check is issued to negotiate the payment.  To the extent the distribution is not negotiated within 90 days from the date of the check, then such check and distribution shall be canceled, and the underlying funds will remain in the Receivership Estate for distribution to other allowed Claimants in this SEC Action pursuant to the priority established by the Plan or as otherwise ordered by this Court.

49.    The Receiver further requests the Court find that the Receivership Estate, comprised of funds held and/or recovered by the Receiver, is a qualified settlement fund as required by the Receivership Order.  *See* Dkt. No. 484 at 22, ¶ 45.  Specifically, 26 C.F.R. § 1.468B-1 states that a fund, account, or trust is a qualified settlement fund if:

(1)    It is established pursuant to an order of, or is approved by, the United States, any state (including the District of Columbia), territory, possession, or political subdivision thereof, or any agency or instrumentality (including a court of law) of any of the foregoing and is subject to the continuing jurisdiction of that governmental authority;

(2)    It is established to resolve or satisfy one or more contested or uncontested claims that have resulted or may result from an event (or related series of events) that has occurred and that has given rise to at least one claim asserting liability—

(i)    Under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (hereinafter referred to as CERCLA), as amended, 42 U.S.C. 9601 et seq.; or

(ii)    Arising out of a tort, breach of contract, or violation of law; or

(iii)    Designated by the Commissioner in a revenue ruling or revenue procedure; and

(3)    The fund, account, or trust is a trust under applicable state law, or its assets are otherwise segregated from other assets of the transferor (and related persons).

26 C.F.R. § 1.468B-1(c).

50.    Here, the Receiver was appointed and the Receivership Estate created pursuant to an Order of this Court, and the Receiver was ordered to "take all necessary steps to enable the Receivership Funds to obtain and maintain the status of a taxable 'Settlement Fund,' within the meaning of Section 468B of the Internal Revenue Code and of the regulations, when applicable." Dkt. No. 484 at 22, ¶ 45.  The Receivership Estate was established to resolve and/or satisfy the contested and uncontested claims of defrauded investors and creditors of the Receivership Parties arising out of the violations of law, as further set forth in this SEC Action and the Criminal Action. The Receiver maintains the assets of the Receivership Estate; they are no longer under the control of the Defendants or their related persons.  Accordingly, the Receiver requests that the Court enter an Order that all distributions made pursuant to the proposed distribution plan will be treated as distributions from a qualified settlement fund.

### III.    CONCLUSION

The Receiver, Gregory S. Milligan, respectfully requests that the Court grant this Motion and enter an Order approving the distribution plan as outlined above, authorizing a $50 million interim distribution to allowed Class 4 Claimants, granting the additional relief requested in this Motion, and for any other further relief which the Court deems proper and just.

HB: 4824-3798-5531.11

Respectfully Submitted,

/s/ Lynn H. Butler
Lynn H. Butler, *pro hac vice*
Jameson J. Watts, *pro hac vice*
HUSCH BLACKWELL LLP
111 Congress Ave., Suite 1400
Austin, TX 78701
Tel: (512) 472-5456
Fax: (512) 479-1101
lynn.butler@huschblackwell.com
jameson.watts@huschblackwell.com

Buffey E. Klein, *pro hac vice*
HUSCH BLACKWELL LLP
1900 N. Pearl Street, Suite 1800
Dallas, Texas 75201
Tel: (214) 999-6100
Fax: (214) 999-6170
buffey.klein@huschblackwell.com

Brian P. Waagner, Fed. Bar No. 14954
HUSCH BLACKWELL LLP
750 17th Street, NW, Suite 900
Washington, D.C. 20006
Tel: (202) 378-2300
Fax: (202) 378-2318
brian.waagner@huschblackwell.com

**COUNSEL FOR RECEIVER**
**GREGORY S. MILLIGAN**

HB: 4824-3798-5531.11

JA234

## <u>CERTIFICATE OF SERVICE</u>

On November 17, 2021, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court for the District of Maryland, using the electronic case filing system of the court.  I hereby certify that I have served all counsel and/or pro se parties of record electronically through the Court's CM/ECF filing system for all parties who have registered to receive electronic service.  Additionally, the foregoing document was served on the following parties not registered for Court's CM/ECF filing system as indicated below:

**Defendant Kevin B. Merrill (via U.S. Mail):**

Kevin B. Merrill, #64274-037
FCI Allenwood Low
Federal Correctional Institution
P.O. Box 1000
White Deer, PA 17887

**Defendant Jay B. Ledford (via U.S. Mail):**

Jay B. Ledford, #55055-048
FCI Safford
Federal Correctional Institution
P.O. Box 9000
Safford, AZ 85548

**Criminal Counsel for Defendant Kevin B. Merrill (via E-Mail and U.S. Mail):**

Elizabeth Genevieve Oyer
Office of the Federal Public Defender
100 S Charles St Ste 900 Tower II
Baltimore, MD 21201
liz_oyer@fd.org

Maggie Grace
Office of the Federal Public Defender
100 S Charles St, Tower II, 9th Floor
Baltimore, MD 21201
maggie_grace@fd.org

**Criminal Counsel for Defendant Jay B. Ledford (via E-Mail and U.S. Mail):**

Harry J Trainor , Jr
Trainor Billman Bennett and Milko LLP
116 Cathedral St Ste E
Annapolis, MD 21401
htrain@prodigy.net

HB: 4824-3798-5531.11

**Criminal Counsel for Defendant Cameron R. Jezierski (via E-Mail and U.S. Mail):**

Joseph J Aronica
Duane Morris LLP
505 9th St NW Ste 1000
Washington, DC 20004
jjaronica@duanemorris.com

**Criminal Counsel for Relief Defendant Amanda Merrill (via E-Mail and U.S. Mail):**

Addy R. Schmitt
Ian Herbert
Miller & Chevalier Chartered
900 16th St NW
Washington, DC 20006
aschmitt@milchev.com
iherbert@milchev.com

**Baltimore County Office of Law (via E-Mail and U.S. Mail):**

Susan B. Dubin
Baltimore County Office of Law
400 Washington Avenue
Towson, Maryland 21204
sdubin@baltimorecountymd.gov

**Dundalk United Methodist Church (U.S. Mail):**

Dundalk United Methodist Church
c/o Edward F. Mathus
6903 Mornington Road
Baltimore, Maryland 21222

**Lienholders, Tax Assessors, and Other Interested Parties (U.S. Mail):**

Florida Community Bank, N.A.
2325 Vanderbilt Beach Road
Naples, Florida 34109

Mortgage Electronic Registration Systems, Inc.
PO Box 2026
Flint, Michigan 48501-2026

Collier County, Florida Tax Assessor
3291 Tamiami Trail East
Naples, Florida 34112

HB: 4824-3798-5531.11

JA236

Maryland Department of Assessments & Taxation
301 W. Preston Street
Baltimore, Maryland 21201-2395

Branch Banking and Trust Company,
A North Carolina Banking Corporation
PO Box 1290
Whiteville, North Carolina 28472

Talbot County, Maryland Finance Office
Talbot County Courthouse
11 North Washington Street, Suite 9
Easton, Maryland 21601

HSBC Bank USA, National Association, as trustee of
J.P. Morgan Alternative Loan Trust 2006-A5
c/o Howard n. Bierman, Trustee
c/o Select Portfolio Servicing, Inc.
3815 Southwest Temple
Salt Lake City, Utah 84115

Clark County, Nevada Tax Assessor
500 S. Grand Central Parkway
Las Vegas, Nevada 89155

First Financial Bank, N.A. Southlake
3205 E. Hwy. 114
PO Box 92840
Southlake, Texas 76092

Hunter Kelsey of Texas, LLC
4131 Spicewood Springs Road, Bldg. J-1A
Austin, Texas 78759

Frost Bank, f/k/a The Frost National Bank
c/o Michael J. Quilling
Quilling, Selander Lownds, Winslett & Moser, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201

The City of Colleyville, Texas
c/o Victoria W. Thomas
Nichols, Jackson, Dilard, Hager & Smith, L.L.P.
1800 Lincoln Plaza
500 North Akard
Dallas, Texas 75201

HB: 4824-3798-5531.11

JA237

Tarrant County, Texas Tax Assessor
100 E. Weatherford
Fort Worth, Texas 76196

J Trust
c/o Hillary RE. Badrow, Trustee
2801 Paramount Boulevard
Amarillo, Texas 79109

Dallas Central Appraisal District
2949 N. Stemmons Freeway
Dallas, Texas 75247-6195

Bozeman West
PO Box 1970
15632 West Main Street
Bozeman, Montana 59771-1970

Neil A. Patel
5308 Burgandy Court
Colleyville, Texas 76034

TIB – The Independent BankersBank
350 Phelps Court, Suite 200
PO Box 560528i
Dallas, Texas 75356-0528

Wachovia Mortgage, FSB
PO Box 659548
San Antonio, Texas 78265-9548

Denton County Tax Assessor
1505 E. McKinney Street
Denton, Texas 76209-4525

Potter County, Texas Tax Assessor
900 South Polk, Suite 106
Amarillo, Texas 79101

Wells Fargo Home Mortgage
P.O. Box 10335
Des Moines, IA 50306

HB: 4824-3798-5531.11

JA238

Albertelli Law
Attn: Coury M. Jacocks
2201 W. Royal Lane, Suite 155
Irving, TX 75063

Samual I. White, P.C.
5040 Corporate Woods Drive, Suite 120
Virginia Beach, VA 23462

Stephen D. Graeff
Dunlap Bennett & Ludwig
8300 Boone Boulevard, #550
Vienna, VA  22182

Kenneth C. Grace
Lash Wilcox & Grace PL
2202 West Shore Blvd.; Suite 200
Tampa, FL 33607

**All Known Investors and known Other Creditors (via U.S. Mail)**


*/s/ Lynn H. Butler*
Lynn H. Butler

JA239

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | **Case No.: 1:18-cv-02844-RDB** |
| | ) | |
| **KEVIN B. MERRILL, et al.,** | ) | |
| | ) | |
| *Defendants.* | ) | |

_____

**DECLARATION OF GREGORY S. MILLIGAN IN SUPPORT OF RECEIVER'S MOTION
FOR ORDER APPROVING DISTRIBUTION PLAN AND INTERIM DISTRIBUTION**

Gregory S. Milligan declares, under 28 U.S.C. § 1746 and under penalty of perjury, that

the following is true and correct:

1.   My name is Gregory S. Milligan and I am of sound mind and capable of making this Declaration.  I have personal knowledge of the facts stated herein and they are true and correct.  I make this Declaration in support of the Motion for Order Approving Distribution Plan and Interim Distribution (the "Distribution Plan").

2.   I am an Executive Vice President of HMP Advisory Holdings, LLC, d/b/a Harney Partners and a Certified Turnaround Professional.

3.   On September 13, 2018, the Court entered the Order Appointing Temporary Receiver (Dkt. No. 11) that appointed me as the Receiver for the estates of the Receivership Parties in the civil action styled *Securities and Exchange Commission v. Kevin B. Merrill, et al.*, Case No.: 1:18-cv-02844-RDB pending in the United States District Court for the District of Maryland.  On November 27, 2018, the Court entered the First Amended Order Appointing Temporary Receiver (Dkt. No. 62) that further clarified my rights, duties and obligations.  On September 14, 2021, the Court entered the Second Amended Order Appointing Temporary Receiver (Dkt. No. 484) (the "Receivership Order") that further confirmed my rights, duties, and obligations.

4.   On October 4, 2019, the Court entered an Order granting me authority to identify claimants and creditors of the Receivership Estate and to propose a plan of distribution.  *See* Dkt. No. 222.  On February 10, 2021, the Court entered an Order granting my Motion for Order Setting Claims Bar Date, Establishing Claims Procedure, and Approving Notification Process (the "Claims Procedure").  *See* Dkt. No. 396.

1

JA241

5.      Pursuant to the Claims Procedure, any Known Investors,[1] Relief Defendants, Other Creditors, Unknown Creditors, and Unknown Investor Creditors were directed to submit any claims they had against any of the Receivership Parties by May 20, 2021 (the "Claims Bar Date").  *See id*.  The Claims Procedure provided procedures through which I could contest any claim and allowed the claimant to subsequently supplement the claim.  The Claims Procedure similarly provided a procedure through which the Court could resolve any disputed claims.  *See id*.

6.      The Claims Bar Date has now passed, and I have been working diligently to resolve disputed claims.  A total of 274 claims were submitted, which included 219 claims submitted by Known Investors, 1 claim submitted by a Relief Defendant, and 54 claims submitted by Other Creditors, individuals within Investment Entities, and/or Unknown Investors (collectively, the "Claimants").  Through counsel, I objected to and/or requested that 83 Claimants supplement or withdraw their claims.  Following resolution of this process, there are 238 undisputed and allowed claims totaling $166,022,249.69, and there are 36 disputed claims subject to the Omnibus Objection to Claims (Dkt. No. 503) (the "Claims Objections").  The disputed claims include 8 Known Investor claims for a total amount of $8,672,556.83 and 28 Other Creditor claims for a total amount of $2,811,799.26.

7.      I am aware and knowledgeable of the three primary distribution methodologies utilized in receivership cases similar to this SEC Action.  These methodologies are: (i) rising tide; (ii) net investment or net loss; and (iii) last statement method.

8.      The last statement method should be rejected as a distribution method in this SEC Action because its use would have the absurd effect of giving legal effect to the Defendants' fraud as many of the investments were based on fake consumer debt portfolios, or investments that never existed in the first place.  Further, the Defendants did not consistently provide account statements, so it would be entirely inequitable to adopt a distribution plan based on inconsistent statements.  For the same reasons the last statement methodology should not be used, the Court should find that a pooling and rising tide distribution is appropriate because the Receivership Parties commingled investors' funds and there is no equitable reason to allow certain investors to recover more than others simply based on fictitious statements.

9.      As between the rising tide and net investment methodologies, I believe the rising tide is the most equitable distribution methodology for the Class 4 Claimants in this SEC Action.  With respect to investors, after factoring in settlements and other recoveries, 201 investors incurred a loss on their investment with the Receivership Parties.  The majority of the investors—160—lost 50% or more of their principal investment with 73 investors losing 100% of their investment.  In addition, 16 allowed Class 4b general unsecured creditors will be deemed to have lost 100% of their claim.

---

[1] Capitalized terms herein shall have the same meaning as those defined in the Claims Procedure unless otherwise noted.

HB: 4864-8598-5028.1

JA242

10.  If the Court adopts a rising tide methodology and assuming a $50,000,000 distribution to Class 4, 176 allowed Claimants would receive a distribution increasing the lowest recovery from 0.0 % to 48.86%.  41 allowed Claimants would not receive a distribution as they already recovered at least 48.86% of their principal investment.  Attached as Exhibit B to the Distribution Plan is the distribution schedule for what each allowed Class 4 Claimant would receive under the rising tide methodology compared to the net loss methodology with the proposed $50,000,000 interim distribution.

11.  If the Court were to adopt the net loss method, all allowed Claimants would receive a distribution; however, it would be at the cost of the allowed Claimants who sustained a 100% loss.  Instead of these Claimants recovering 48.86% of their principal under rising tide methodology, the lowest recovery would drop to 28.17% under the net loss methodology.  Thus, the allowed Claimants who lost everything would suffer at the expense of the investors who received distributions pre-Receivership.

12.  The rising tide is also a more equitable distribution methodology to apply in this SEC Action as 147 allowed Claimants would recover more under a rising tide methodology than net loss, assuming a $50,000,000 distribution.  Only 70 allowed Claimants would receive a higher recovery under the net loss methodology.

13.  Accordingly, I recommend the Court adopt a rising tide methodology as (1) it equalizes the lowest percentage return victims of the Ponzi scheme recover on their investment, (2) more allowed Claimants will receive a greater distribution using rising tide methodology, and (3) it raises the lowest percentage of recovery from 28.17% to 48.86% with a $50,000,000 distribution when compared against the net loss methodology.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 17 , 2021.

_____
GREGORY S. MILLIGAN

3

HB: 4864-8598-5028.1

JA243

# EXHIBIT B

| Investor Code | Allowed Claim | % Loss | Current Recovery | Initial Distribution Rising Tide | Recovery in Rising Tide | Initial Distribution Net Loss | Recovery in Net Loss |
|---|---|---|---|---|---|---|---|
| **Class 4a** | | | | | | | |
| I-0277 | $ 200,000.00 | -100.0% | 0.00% | $ 97,720.47 | 48.86% | $ 56,335.93 | 28.17% |
| I-0200 | $ 50,000.00 | -100.0% | 0.00% | $ 24,430.12 | 48.86% | $ 14,083.98 | 28.17% |
| I-0180 | $ 100,000.00 | -100.0% | 0.00% | $ 48,860.23 | 48.86% | $ 28,167.97 | 28.17% |
| I-0011 | $ 1,000,000.00 | -100.0% | 0.00% | $ 488,602.33 | 48.86% | $ 281,679.66 | 28.17% |
| I-0217 | $ 150,000.00 | -100.0% | 0.00% | $ 73,290.35 | 48.86% | $ 42,251.95 | 28.17% |
| I-0017 | $ 2,603,473.75 | -100.0% | 0.00% | $ 1,272,063.34 | 48.86% | $ 733,345.60 | 28.17% |
| I-0324 | $ 1,140,000.00 | -100.0% | 0.00% | $ 557,006.66 | 48.86% | $ 321,114.81 | 28.17% |
| I-0020 | $ 500,047.95 | -100.0% | 0.00% | $ 244,324.59 | 48.86% | $ 140,853.34 | 28.17% |
| I-0192 | $ 150,000.00 | -100.0% | 0.00% | $ 73,290.35 | 48.86% | $ 42,251.95 | 28.17% |
| I-0029 | $ 60,000.00 | -100.0% | 0.00% | $ 29,316.14 | 48.86% | $ 16,900.78 | 28.17% |
| I-0207 | $ 200,000.00 | -100.0% | 0.00% | $ 97,720.47 | 48.86% | $ 56,335.93 | 28.17% |
| I-0037 | $ 142,300.00 | -100.0% | 0.00% | $ 69,528.11 | 48.86% | $ 40,083.02 | 28.17% |
| I-0241 | $ 100,000.00 | -100.0% | 0.00% | $ 48,860.23 | 48.86% | $ 28,167.97 | 28.17% |
| I-0045 | $ 50,000.00 | -100.0% | 0.00% | $ 24,430.12 | 48.86% | $ 14,083.98 | 28.17% |
| I-0305 | $ 70,000.00 | -100.0% | 0.00% | $ 34,202.16 | 48.86% | $ 19,717.58 | 28.17% |
| I-0049 | $ 200,000.00 | -100.0% | 0.00% | $ 97,720.47 | 48.86% | $ 56,335.93 | 28.17% |
| I-0400 | $ 50,000.00 | -100.0% | 0.00% | $ 24,430.12 | 48.86% | $ 14,083.98 | 28.17% |
| I-0053 | $ 250,000.00 | -100.0% | 0.00% | $ 122,150.58 | 48.86% | $ 70,419.91 | 28.17% |
| I-0190 | $ 50,000.00 | -100.0% | 0.00% | $ 24,430.12 | 48.86% | $ 14,083.98 | 28.17% |
| I-0056 | $ 50,000.00 | -100.0% | 0.00% | $ 24,430.12 | 48.86% | $ 14,083.98 | 28.17% |
| I-0198 | $ 50,000.00 | -100.0% | 0.00% | $ 24,430.12 | 48.86% | $ 14,083.98 | 28.17% |
| I-0057 | $ 4,200,000.00 | -100.0% | 0.00% | $ 2,052,129.78 | 48.86% | $ 1,183,054.56 | 28.17% |
| I-0202 | $ 650,000.00 | -100.0% | 0.00% | $ 317,591.51 | 48.86% | $ 183,091.78 | 28.17% |
| I-0064 | $ 194,044.43 | -100.0% | 0.00% | $ 94,810.56 | 48.86% | $ 54,658.37 | 28.17% |
| I-0210 | $ 605,000.00 | -100.0% | 0.00% | $ 295,604.41 | 48.86% | $ 170,416.19 | 28.17% |
| I-0065 | $ 70,000.00 | -100.0% | 0.00% | $ 34,202.16 | 48.86% | $ 19,717.58 | 28.17% |
| I-0223 | $ 50,000.00 | -100.0% | 0.00% | $ 24,430.12 | 48.86% | $ 14,083.98 | 28.17% |
| I-0072 | $ 45,000.00 | -100.0% | 0.00% | $ 21,987.10 | 48.86% | $ 12,675.58 | 28.17% |
| I-0244 | $ 800,000.00 | -100.0% | 0.00% | $ 390,881.86 | 48.86% | $ 225,343.73 | 28.17% |
| I-0075 | $ 400,000.00 | -100.0% | 0.00% | $ 195,440.93 | 48.86% | $ 112,671.86 | 28.17% |
| I-0303 | $ 434,078.00 | -100.0% | 0.00% | $ 212,091.52 | 48.86% | $ 122,270.94 | 28.17% |
| I-0079 | $ 800,000.00 | -100.0% | 0.00% | $ 390,881.86 | 48.86% | $ 225,343.73 | 28.17% |
| I-0317 | $ 10,000.00 | -100.0% | 0.00% | $ 4,886.02 | 48.86% | $ 2,816.80 | 28.17% |
| I-0080 | $ 557,000.00 | -100.0% | 0.00% | $ 272,151.50 | 48.86% | $ 156,895.57 | 28.17% |
| I-0166 | $ 60,000.00 | -100.0% | 0.00% | $ 29,316.14 | 48.86% | $ 16,900.78 | 28.17% |
| I-0085 | $ 50,000.00 | -100.0% | 0.00% | $ 24,430.12 | 48.86% | $ 14,083.98 | 28.17% |
| I-0176 | $ 100,000.00 | -100.0% | 0.00% | $ 48,860.23 | 48.86% | $ 28,167.97 | 28.17% |
| I-0087 | $ 16,906.26 | -100.0% | 0.00% | $ 8,260.44 | 48.86% | $ 4,762.15 | 28.17% |
| I-0182 | $ 251,767.33 | -100.0% | 0.00% | $ 123,014.10 | 48.86% | $ 70,917.74 | 28.17% |
| I-0092 | $ 100,000.00 | -100.0% | 0.00% | $ 48,860.23 | 48.86% | $ 28,167.97 | 28.17% |
| I-0191 | $ 35,000.00 | -100.0% | 0.00% | $ 17,101.08 | 48.86% | $ 9,858.79 | 28.17% |
| I-0093 | $ 270,000.00 | -100.0% | 0.00% | $ 131,922.63 | 48.86% | $ 76,053.51 | 28.17% |
| I-0196 | $ 254,664.19 | -100.0% | 0.00% | $ 124,429.52 | 48.86% | $ 71,733.72 | 28.17% |
| I-0103 | $ 30,000.00 | -100.0% | 0.00% | $ 14,658.07 | 48.86% | $ 8,450.39 | 28.17% |
| I-0199 | $ 50,000.00 | -100.0% | 0.00% | $ 24,430.12 | 48.86% | $ 14,083.98 | 28.17% |
| I-0107 | $ 400,000.00 | -100.0% | 0.00% | $ 195,440.93 | 48.86% | $ 112,671.86 | 28.17% |
| I-0201 | $ 100,000.00 | -100.0% | 0.00% | $ 48,860.23 | 48.86% | $ 28,167.97 | 28.17% |
| I-0112 | $ 500,000.00 | -100.0% | 0.00% | $ 244,301.16 | 48.86% | $ 140,839.83 | 28.17% |
| I-0205 | $ 110,000.00 | -100.0% | 0.00% | $ 53,746.26 | 48.86% | $ 30,984.76 | 28.17% |
| I-0115 | $ 400,000.00 | -100.0% | 0.00% | $ 195,440.93 | 48.86% | $ 112,671.86 | 28.17% |
| I-0209 | $ 40,000.00 | -100.0% | 0.00% | $ 19,544.09 | 48.86% | $ 11,267.19 | 28.17% |
| I-0116 | $ 500,000.00 | -100.0% | 0.00% | $ 244,301.16 | 48.86% | $ 140,839.83 | 28.17% |
| I-0216 | $ 50,000.00 | -100.0% | 0.00% | $ 24,430.12 | 48.86% | $ 14,083.98 | 28.17% |
| I-0124 | $ 100,000.00 | -100.0% | 0.00% | $ 48,860.23 | 48.86% | $ 28,167.97 | 28.17% |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| I-0222 | $ | 125,000.00 | -100.0% | 0.00% | $ | 61,075.29 | 48.86% | $ | 35,209.96 | 28.17% |
| I-0126 | $ | 100,000.00 | -100.0% | 0.00% | $ | 48,860.23 | 48.86% | $ | 28,167.97 | 28.17% |
| I-0231 | $ | 100,000.00 | -100.0% | 0.00% | $ | 48,860.23 | 48.86% | $ | 28,167.97 | 28.17% |
| I-0130 | $ | 400,000.00 | -100.0% | 0.00% | $ | 195,440.93 | 48.86% | $ | 112,671.86 | 28.17% |
| I-0243 | $ | 1,300,000.00 | -100.0% | 0.00% | $ | 635,183.03 | 48.86% | $ | 366,183.56 | 28.17% |
| I-0131 | $ | 25,000.00 | -100.0% | 0.00% | $ | 12,215.06 | 48.86% | $ | 7,041.99 | 28.17% |
| I-0249 | $ | 25,000.00 | -100.0% | 0.00% | $ | 12,215.06 | 48.86% | $ | 7,041.99 | 28.17% |
| I-0134 | $ | 450,000.00 | -100.0% | 0.00% | $ | 219,871.05 | 48.86% | $ | 126,755.85 | 28.17% |
| I-0278 | $ | 200,000.00 | -100.0% | 0.00% | $ | 97,720.47 | 48.86% | $ | 56,335.93 | 28.17% |
| I-0140 | $ | 250,000.00 | -100.0% | 0.00% | $ | 122,150.58 | 48.86% | $ | 70,419.91 | 28.17% |
| I-0304 | $ | 6,777.61 | -100.0% | 0.00% | $ | 3,311.56 | 48.86% | $ | 1,909.11 | 28.17% |
| I-0143 | $ | 200,000.00 | -100.0% | 0.00% | $ | 97,720.47 | 48.86% | $ | 56,335.93 | 28.17% |
| I-0316 | $ | 10,000.00 | -100.0% | 0.00% | $ | 4,886.02 | 48.86% | $ | 2,816.80 | 28.17% |
| I-0149 | $ | 100,000.00 | -100.0% | 0.00% | $ | 48,860.23 | 48.86% | $ | 28,167.97 | 28.17% |
| I-0318 | $ | 110,000.00 | -100.0% | 0.00% | $ | 53,746.26 | 48.86% | $ | 30,984.76 | 28.17% |
| I-0152 | $ | 2,000,000.00 | -100.0% | 0.00% | $ | 977,204.66 | 48.86% | $ | 563,359.32 | 28.17% |
| I-0325 | $ | 2,923,630.00 | -100.0% | 0.00% | $ | 1,428,492.43 | 48.86% | $ | 823,527.10 | 28.17% |
| I-0154 | $ | 253,000.00 | -100.0% | 0.00% | $ | 123,616.39 | 48.86% | $ | 71,264.95 | 28.17% |
| I-0168 | $ | 25,000.00 | -100.0% | 0.00% | $ | 12,215.06 | 48.86% | $ | 7,041.99 | 28.17% |
| I-0161 | $ | 27,315.81 | -98.1% | 1.94% | $ | 13,070.86 | 48.86% | $ | 7,694.31 | 29.56% |
| I-0170 | $ | 1,219,964.38 | -97.6% | 2.40% | $ | 580,717.29 | 48.86% | $ | 343,639.15 | 29.89% |
| I-0062 | $ | 435,000.00 | -96.7% | 3.33% | $ | 204,871.05 | 48.86% | $ | 122,530.65 | 30.56% |
| I-0185 | $ | 120,572.91 | -96.5% | 3.54% | $ | 56,648.20 | 48.86% | $ | 33,962.94 | 30.71% |
| I-0076 | $ | 24,114.58 | -96.5% | 3.54% | $ | 11,329.64 | 48.86% | $ | 6,792.59 | 30.71% |
| I-0242 | $ | 671,884.00 | -96.0% | 4.02% | $ | 313,905.63 | 48.86% | $ | 189,256.06 | 31.05% |
| I-0033 | $ | 237,875.00 | -95.2% | 4.85% | $ | 110,025.58 | 48.86% | $ | 67,004.55 | 31.65% |
| I-0010 | $ | 8,040,784.69 | -95.0% | 4.98% | $ | 3,713,085.23 | 48.86% | $ | 2,264,925.48 | 31.75% |
| I-0197 | $ | 237,500.00 | -95.0% | 5.00% | $ | 109,650.58 | 48.86% | $ | 66,898.92 | 31.76% |
| I-0018 | $ | 9,335,864.14 | -93.4% | 6.64% | $ | 4,221,887.43 | 48.86% | $ | 2,629,723.02 | 32.94% |
| I-0183 | $ | 92,500.00 | -92.5% | 7.50% | $ | 41,360.23 | 48.86% | $ | 26,055.37 | 33.56% |
| I-0188 | $ | 355,804.17 | -92.4% | 7.58% | $ | 158,916.07 | 48.86% | $ | 100,222.80 | 33.62% |
| I-0038 | $ | 22,810.10 | -91.2% | 8.76% | $ | 10,025.16 | 48.86% | $ | 6,425.14 | 34.46% |
| I-0001 | $ | 9,581,199.43 | -91.0% | 8.97% | $ | 4,198,299.72 | 48.86% | $ | 2,698,828.98 | 34.61% |
| I-0043 | $ | 44,936.57 | -89.9% | 10.13% | $ | 19,366.69 | 48.86% | $ | 12,657.72 | 35.44% |
| I-0274 | $ | 415,646.55 | -89.8% | 10.25% | $ | 178,814.22 | 48.86% | $ | 117,079.18 | 35.53% |
| I-0302 | $ | 371,400.00 | -89.2% | 10.81% | $ | 158,454.01 | 48.86% | $ | 104,615.82 | 35.93% |
| I-0311 | $ | 110,891.35 | -88.7% | 11.29% | $ | 46,966.64 | 48.86% | $ | 31,235.84 | 36.28% |
| I-0054 | $ | 86,935.16 | -86.9% | 13.06% | $ | 35,795.39 | 48.86% | $ | 24,487.87 | 37.55% |
| I-0232 | $ | 21,610.02 | -86.4% | 13.56% | $ | 8,825.08 | 48.86% | $ | 6,087.10 | 37.91% |
| I-0290 | $ | 690,000.00 | -86.3% | 13.75% | $ | 280,881.86 | 48.86% | $ | 194,358.96 | 38.04% |
| I-0162 | $ | 409,864.13 | -86.2% | 13.75% | $ | 166,750.24 | 48.86% | $ | 115,394.05 | 38.05% |
| I-0256 | $ | 217,000.00 | -86.1% | 13.89% | $ | 88,127.79 | 48.86% | $ | 61,124.49 | 38.14% |
| I-0235 | $ | 874,282.78 | -85.6% | 14.41% | $ | 351,929.04 | 48.86% | $ | 246,267.67 | 38.52% |
| I-0073 | $ | 242,852.30 | -84.2% | 15.76% | $ | 95,424.38 | 48.86% | $ | 68,406.55 | 39.49% |
| I-0146 | $ | 210,601.39 | -84.2% | 15.76% | $ | 82,751.97 | 48.86% | $ | 59,322.13 | 39.49% |
| I-0090 | $ | 821,548.35 | -84.2% | 15.76% | $ | 322,812.42 | 48.86% | $ | 231,413.46 | 39.49% |
| I-0118 | $ | 83,750.00 | -83.8% | 16.25% | $ | 32,610.23 | 48.86% | $ | 23,590.67 | 39.84% |
| I-0229 | $ | 146,014.74 | -83.4% | 16.56% | $ | 56,520.15 | 48.86% | $ | 41,129.38 | 40.07% |
| I-0298 | $ | 62,562.16 | -83.4% | 16.58% | $ | 24,207.33 | 48.86% | $ | 17,622.49 | 40.08% |
| I-0074 | $ | 833,489.23 | -83.3% | 16.65% | $ | 322,091.56 | 48.86% | $ | 234,776.96 | 40.13% |
| I-0195 | $ | 210,122.23 | -82.8% | 17.23% | $ | 80,303.01 | 48.86% | $ | 59,187.16 | 40.54% |
| I-0022 | $ | 11,498,134.06 | -82.6% | 17.43% | $ | 4,376,833.00 | 48.86% | $ | 3,238,790.47 | 40.69% |
| I-0105 | $ | 577,019.22 | -82.4% | 17.57% | $ | 219,040.85 | 48.86% | $ | 162,534.58 | 40.79% |
| I-0177 | $ | 410,672.71 | -82.1% | 17.87% | $ | 154,973.87 | 48.86% | $ | 115,678.15 | 41.00% |
| I-0088 | $ | 927,321.49 | -82.1% | 17.94% | $ | 349,442.12 | 48.86% | $ | 261,207.60 | 41.05% |
| I-0245 | $ | 1,380,000.00 | -81.2% | 18.82% | $ | 510,623.96 | 48.86% | $ | 388,717.93 | 41.69% |
| I-0063 | $ | 825,500.84 | -81.1% | 18.86% | $ | 305,197.72 | 48.86% | $ | 232,526.79 | 41.72% |
| I-0259 | $ | 722,000.00 | -80.2% | 19.78% | $ | 261,742.10 | 48.86% | $ | 203,372.71 | 42.37% |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| I-0163 | $ | 19,932.94 | -79.7% | 20.27% | $ | 7,148.00 | 48.86% | $ | 5,614.70 | 42.73% |
| I-0128 | $ | 737,210.16 | -79.7% | 20.30% | $ | 264,167.31 | 48.86% | $ | 207,657.11 | 42.75% |
| I-0051 | $ | 199,193.81 | -79.7% | 20.32% | $ | 71,344.39 | 48.86% | $ | 56,108.84 | 42.77% |
| I-0081 | $ | 1,067,500.00 | -79.3% | 20.72% | $ | 378,903.04 | 48.86% | $ | 300,693.03 | 43.05% |
| I-0300 | $ | 157,417.94 | -78.7% | 21.29% | $ | 55,138.41 | 48.86% | $ | 44,341.43 | 43.46% |
| I-0218 | $ | 15,754.39 | -76.9% | 23.15% | $ | 5,270.74 | 48.86% | $ | 4,437.69 | 44.80% |
| I-0094 | $ | 34,467.41 | -76.6% | 23.41% | $ | 11,454.51 | 48.86% | $ | 9,708.77 | 44.98% |
| I-0113 | $ | 7,208,995.71 | -76.3% | 23.69% | $ | 2,377,541.15 | 48.86% | $ | 2,030,627.45 | 45.19% |
| I-0322 | $ | 18,995.44 | -76.0% | 24.02% | $ | 6,210.50 | 48.86% | $ | 5,350.63 | 45.42% |
| I-0114 | $ | 18,995.44 | -76.0% | 24.02% | $ | 6,210.50 | 48.86% | $ | 5,350.63 | 45.42% |
| I-0220 | $ | 15,196.22 | -76.0% | 24.02% | $ | 4,968.27 | 48.86% | $ | 4,280.47 | 45.42% |
| I-0247 | $ | 187,858.94 | -75.1% | 24.86% | $ | 60,009.52 | 48.86% | $ | 52,916.04 | 46.02% |
| I-0276 | $ | 741,316.88 | -74.1% | 25.87% | $ | 229,919.21 | 48.86% | $ | 208,813.89 | 46.75% |
| I-0301 | $ | 368,430.61 | -73.7% | 26.31% | $ | 112,731.77 | 48.86% | $ | 103,779.41 | 47.07% |
| I-0016 | $ | 22,057,590.55 | -73.5% | 26.47% | $ | 6,715,660.26 | 48.86% | $ | 6,213,174.56 | 47.19% |
| I-0089 | $ | 727,634.62 | -72.8% | 27.24% | $ | 216,236.95 | 48.86% | $ | 204,959.87 | 47.73% |
| I-0233 | $ | 29,590.53 | -72.2% | 27.83% | $ | 8,623.23 | 48.86% | $ | 8,335.05 | 48.16% |
| I-0312 | $ | 77,896.77 | -72.1% | 27.86% | $ | 22,675.03 | 48.86% | $ | 21,941.94 | 48.18% |
| I-0137 | $ | 142,766.73 | -71.4% | 28.62% | $ | 40,487.20 | 48.86% | $ | 40,214.48 | 48.72% |
| I-0238 | $ | 710,185.38 | -71.0% | 28.98% | $ | 198,787.71 | 48.86% | $ | 200,044.77 | 48.99% |
| I-0024 | $ | 174,793.00 | -69.9% | 30.08% | $ | 46,943.58 | 48.86% | $ | 49,235.63 | 49.78% |
| I-0120 | $ | 19,791.61 | -69.9% | 30.09% | $ | 5,313.73 | 48.86% | $ | 5,574.89 | 49.78% |
| I-0041 | $ | 521,162.89 | -69.5% | 30.51% | $ | 137,614.64 | 48.86% | $ | 146,800.98 | 50.09% |
| I-0178 | $ | 99,121.51 | -69.3% | 30.68% | $ | 25,991.64 | 48.86% | $ | 27,920.51 | 50.21% |
| I-0035 | $ | 34,626.75 | -69.3% | 30.75% | $ | 9,056.87 | 48.86% | $ | 9,753.65 | 50.25% |
| I-0194 | $ | 81,948.56 | -69.2% | 30.79% | $ | 21,398.09 | 48.86% | $ | 23,083.24 | 50.28% |
| I-0135 | $ | 759,254.03 | -69.0% | 30.98% | $ | 196,716.59 | 48.86% | $ | 213,866.42 | 50.42% |
| I-0106 | $ | 16,878.81 | -67.5% | 32.48% | $ | 4,093.87 | 48.86% | $ | 4,754.42 | 51.50% |
| I-0225 | $ | 13,430.17 | -67.2% | 32.85% | $ | 3,202.22 | 48.86% | $ | 3,783.01 | 51.76% |
| I-0127 | $ | 1,342,338.16 | -67.1% | 32.88% | $ | 319,542.82 | 48.86% | $ | 378,109.35 | 51.79% |
| I-0246 | $ | 200,000.00 | -66.7% | 33.33% | $ | 46,580.70 | 48.86% | $ | 56,335.93 | 52.11% |
| I-0320 | $ | 49,746.00 | -66.3% | 33.67% | $ | 11,391.17 | 48.86% | $ | 14,012.44 | 52.36% |
| I-0141 | $ | 5,989,900.96 | -65.8% | 34.20% | $ | 1,334,365.02 | 48.86% | $ | 1,687,233.25 | 52.74% |
| I-0291 | $ | 621,524.09 | -64.3% | 35.69% | $ | 127,245.92 | 48.86% | $ | 175,070.69 | 53.81% |
| I-0284 | $ | 32,113.41 | -64.2% | 35.77% | $ | 6,543.53 | 48.86% | $ | 9,045.69 | 53.86% |
| I-0265 | $ | 637,500.00 | -63.8% | 36.25% | $ | 126,102.33 | 48.86% | $ | 179,570.78 | 54.21% |
| I-0203 | $ | 703,000.00 | -63.7% | 36.26% | $ | 138,928.37 | 48.86% | $ | 198,020.80 | 54.22% |
| I-0285 | $ | 62,813.09 | -62.8% | 37.19% | $ | 11,673.32 | 48.86% | $ | 17,693.17 | 54.88% |
| I-0257 | $ | 96,000.00 | -61.9% | 38.06% | $ | 16,733.36 | 48.86% | $ | 27,041.25 | 55.51% |
| I-0308 | $ | 898,631.66 | -60.8% | 39.23% | $ | 142,421.79 | 48.86% | $ | 253,126.26 | 56.35% |
| I-0297 | $ | 55,000.00 | -55.0% | 45.00% | $ | 3,860.23 | 48.86% | $ | 15,492.38 | 60.49% |
| I-0227 | $ | 54,545.43 | -54.5% | 45.45% | $ | 3,405.66 | 48.86% | $ | 15,364.34 | 60.82% |
| I-0226 | $ | 26,495.59 | -53.0% | 47.01% | $ | 925.71 | 48.86% | $ | 7,463.27 | 61.94% |
| I-0058 | $ | 77,996.64 | -52.0% | 48.00% | $ | 1,286.99 | 48.86% | $ | 21,970.07 | 62.65% |
| I-0164 | $ | 5,186.96 | -51.9% | 48.13% | $ | 72.98 | 48.86% | $ | 1,461.06 | 62.74% |
| I-0281 | $ | 12,967.39 | -51.9% | 48.13% | $ | 182.45 | 48.86% | $ | 3,652.65 | 62.74% |
| I-0282 | $ | 12,967.39 | -51.9% | 48.13% | $ | 182.45 | 48.86% | $ | 3,652.65 | 62.74% |
| I-0215 | $ | 51,260.00 | -51.3% | 48.74% | $ | 120.23 | 48.86% | $ | 14,438.90 | 63.18% |
| I-0019 | $ | 10,826,757.31 | -48.6% | 51.39% | $ | - | 51.39% | $ | 3,049,677.30 | 65.08% |
| I-0122 | $ | 1,255,954.72 | -48.3% | 51.69% | $ | - | 51.69% | $ | 353,776.90 | 65.30% |
| I-0068 | $ | 30,750.00 | -48.0% | 51.95% | $ | - | 51.95% | $ | 8,661.65 | 65.49% |
| I-0184 | $ | 95,910.36 | -48.0% | 52.04% | $ | - | 52.04% | $ | 27,016.00 | 65.55% |
| I-0009 | $ | 1,215,511.78 | -46.6% | 53.44% | $ | - | 53.44% | $ | 342,384.94 | 66.55% |
| I-0224 | $ | 32,584.56 | -43.4% | 56.55% | $ | - | 56.55% | $ | 9,178.41 | 68.79% |
| I-0048 | $ | 13,822.82 | -43.1% | 56.94% | $ | - | 56.94% | $ | 3,893.61 | 69.07% |
| I-0084 | $ | 53,556.27 | -42.0% | 57.98% | $ | - | 57.98% | $ | 15,085.71 | 69.82% |
| I-0236 | $ | 311,190.29 | -41.6% | 58.41% | $ | - | 58.41% | $ | 87,655.97 | 70.12% |
| I-0012 | $ | 6,051,618.47 | -40.2% | 59.84% | $ | - | 59.84% | $ | 1,704,617.82 | 71.15% |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| I-0021 | $ 7,930,298.35 | -39.9% | 60.10% | $ - | 60.10% | $ 2,233,803.73 | 71.34% |
| I-0055 | $ 256,929.84 | -39.5% | 60.47% | $ - | 60.47% | $ 72,371.91 | 71.61% |
| I-0272 | $ 9,417.84 | -37.7% | 62.33% | $ - | 62.33% | $ 2,652.81 | 72.94% |
| I-0286 | $ 46,364.20 | -37.2% | 62.76% | $ - | 62.76% | $ 13,059.85 | 73.25% |
| I-0050 | $ 36,454.86 | -36.5% | 63.55% | $ - | 63.55% | $ 10,268.59 | 73.81% |
| I-0071 | $ 216,183.96 | -36.0% | 63.97% | $ - | 63.97% | $ 60,894.62 | 74.12% |
| I-0240 | $ 71,200.00 | -35.6% | 64.40% | $ - | 64.40% | $ 20,055.59 | 74.43% |
| I-0047 | $ 444,208.20 | -34.2% | 65.83% | $ - | 65.83% | $ 125,124.41 | 75.46% |
| I-0321 | $ 99,782.98 | -33.3% | 66.74% | $ - | 66.74% | $ 28,106.84 | 76.11% |
| I-0097 | $ 47,160.00 | -26.9% | 73.05% | $ - | 73.05% | $ 13,284.01 | 80.64% |
| I-0258 | $ 50,000.00 | -25.0% | 75.00% | $ - | 75.00% | $ 14,083.98 | 82.04% |
| I-0121 | $ 100,000.00 | -25.0% | 75.00% | $ - | 75.00% | $ 28,167.97 | 82.04% |
| I-0193 | $ 12,188.66 | -24.4% | 75.62% | $ - | 75.62% | $ 3,433.30 | 82.49% |
| I-0263 | $ 72,515.71 | -24.3% | 75.69% | $ - | 75.69% | $ 20,426.20 | 82.54% |
| I-0036 | $ 7,000.00 | -23.3% | 76.67% | $ - | 76.67% | $ 1,971.76 | 83.24% |
| I-0271 | $ 66,010.00 | -22.0% | 78.00% | $ - | 78.00% | $ 18,593.67 | 84.19% |
| I-0052 | $ 4,181,572.65 | -19.9% | 80.09% | $ - | 80.09% | $ 1,177,863.95 | 85.70% |
| I-0008 | $ 311,490.37 | -16.8% | 83.16% | $ - | 83.16% | $ 87,740.50 | 87.91% |
| I-0178 | $ 864,050.00 | -16.3% | 83.70% | $ - | 83.70% | $ 243,385.31 | 88.29% |
| I-0014 | $ 12,951,718.55 | -14.7% | 85.31% | $ - | 85.31% | $ 3,648,235.65 | 89.45% |
| I-0147 | $ 448,381.20 | -10.7% | 89.30% | $ - | 89.30% | $ 126,299.86 | 92.31% |
| I-0150 | $ 61,255.00 | -7.2% | 92.79% | $ - | 92.79% | $ 17,254.29 | 94.82% |
| I-0204 | $ 66,479.27 | -5.9% | 94.14% | $ - | 94.14% | $ 18,725.86 | 95.79% |
| I-0139 | $ 271,240.00 | -5.8% | 94.17% | $ - | 94.17% | $ 76,402.79 | 95.81% |
| I-0248 | $ 10,322.50 | -5.7% | 94.27% | $ - | 94.27% | $ 2,907.64 | 95.88% |
| I-0111 | $ 42,584.44 | -5.0% | 94.99% | $ - | 94.99% | $ 11,995.17 | 96.40% |
| I-0319 | $ 69,478.83 | -5.0% | 95.04% | $ - | 95.04% | $ 19,570.77 | 96.44% |
| I-0292 | $ 31,321.50 | -3.7% | 96.34% | $ - | 96.34% | $ 8,822.63 | 97.37% |
| I-0213 | $ 6,783.95 | -3.6% | 96.44% | $ - | 96.44% | $ 1,910.90 | 97.44% |
| I-0208 | $ 8,430.00 | -2.4% | 97.59% | $ - | 97.59% | $ 2,374.56 | 98.27% |
| I-0323 | $ 343.18 | -0.1% | 99.89% | $ - | 99.89% | $ 96.67 | 99.92% |

| Class 4b | | | | | | | |
|---|---|---|---|---|---|---|---|
| O-0001 | $ 25,619.73 | -100.0% | 0.00% | 12,517.86 | 48.86% | 7,216.56 | 28.17% |
| O-0002 | $ 37,082.51 | -100.0% | 0.00% | 18,118.60 | 48.86% | 10,445.39 | 28.17% |
| O-0006 | $ 202,017.00 | -100.0% | 0.00% | 98,705.98 | 48.86% | 56,904.08 | 28.17% |
| O-0007 | $ 39,600.00 | -100.0% | 0.00% | 19,348.65 | 48.86% | 11,154.51 | 28.17% |
| O-0008 | $ 3,500.00 | -100.0% | 0.00% | 1,710.11 | 48.86% | 985.88 | 28.17% |
| O-0009 | $ 5,000.00 | -100.0% | 0.00% | 2,443.01 | 48.86% | 1,408.40 | 28.17% |
| O-0010 | $ 69,138.34 | -100.0% | 0.00% | 33,781.15 | 48.86% | 19,474.86 | 28.17% |
| O-0011 | $ 24,853.00 | -100.0% | 0.00% | 12,143.23 | 48.86% | 7,000.58 | 28.17% |
| O-0012 | $ 5,036.00 | -100.0% | 0.00% | 2,460.60 | 48.86% | 1,418.54 | 28.17% |
| O-0013 | $ 8,500.00 | -100.0% | 0.00% | 4,153.12 | 48.86% | 2,394.28 | 28.17% |
| O-0014 | $ 19,500.00 | -100.0% | 0.00% | 9,527.75 | 48.86% | 5,492.75 | 28.17% |
| O-0015 | $ 18,000.00 | -100.0% | 0.00% | 8,794.84 | 48.86% | 5,070.23 | 28.17% |
| O-0016 | $ 18,000.00 | -100.0% | 0.00% | 8,794.84 | 48.86% | 5,070.23 | 28.17% |
| O-0017 | $ 20,500.00 | -100.0% | 0.00% | 10,016.35 | 48.86% | 5,774.43 | 28.17% |
| O-0018 | $ 4,490.83 | -100.0% | 0.00% | 2,194.23 | 48.86% | 1,264.98 | 28.17% |
| O-0019 | $ 539,187.17 | -100.0% | 0.00% | 263,448.11 | 48.86% | 151,878.06 | 28.17% |

JA248

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| v. | Case No. 1-18-cv-02844-RDB |
| KEVIN B. MERRILL et al., | |
| Defendants. | |

<u>**OBJECTIONS OF INVESTORS CCWB ASSET INVESTMENTS, LLC, EBC ASSET INVESTMENT, INC., AND M.C. DEAN, INC. TO THE RECEIVER'S MOTION FOR ORDER APPROVING DISTRIBUTION PLAN AND INTERIM DISTRIBUTION**</u>

CCWB Asset Investments, LLC ("CCWB"), EBC Asset Investment, Inc. ("EBC") and M.C. Dean, Inc. ("M.C. Dean") (collectively, "Investors"), by counsel, object to the Receiver's Motion for Order Approving Distribution Plan and Interim Distribution. Specifically, Investors object to the Receiver's method of calculating their Current Recoveries by including withdrawals that are reinvested in the Ponzi Scheme as pre-Receivership distributions.

<u>**Introduction**</u>

On November 17, 2021, the Receiver filed his Motion disclosing and seeking approval of his plan to make an interim distribution (Dkt. 504), to be determined by the application of the Rising Tide method. That method attempts to equalize the distributions made to all victims by first making distributions to those victims who received little or no return on their investments. Under Rising Tide, "withdrawals are considered part of the distribution received by an investor and so are subtracted from the amount of the receivership assets to which he would be entitled had there been no withdrawals." *S.E.C. v. Huber*, 702 F.3d 905 (7th Cir. 2012).

JA249

The determination of whether an investor has previously recovered a percentage of its investment by taking pre-Receivership withdrawals from the Defendants is therefore critical to the equitable application of the Rising Tide method and calculation of each investor's share of the proposed interim distribution. Those investors who have taken withdrawals are considered to have recovered a percentage of their investment, referred to by the Receiver as a "Current Recovery," thus reducing or eliminating entirely the amount they would be eligible to receive from the interim distribution had they not taken any withdrawals. *However*, when an investor reinvests the withdrawals - in other words, puts the withdrawn money back into the Ponzi Scheme[1] - those withdrawals should not be considered as pre-Receivership distributions resulting in a Current Recovery by the investor. Yet, that is what the Receiver has done to reach the conclusion that CCWB and EBC should not receive any of the proposed Interim Distribution and that M.C. Dean should receive substantially less than it otherwise would have been entitled to.

Although CCWB, EBC and M.C. Dean took withdrawals, they retained only a small portion of those withdrawals and reinvested the rest with the Defendants. Thus, contrary to the Receiver's finding that CCWB, EBC and M.C. Dean have recovered 51.39%, 60.19% and 17.43%, respectively, of their investments, they have in fact recovered only 2.5%, 5.9% and 0.04% of their investments, and should not be deprived of interim distributions based on artificially inflated recoveries. Equity and case law relied on by the Receiver require that for the purpose of determining the Investors' Current Recovery, payments received from and reinvested with Defendants be treated as though they were rescinded, i.e., never received in the first place.

---

[1] A withdrawal from a Ponzi Scheme, in which no investor has actual profits, is a withdrawal from the investor's principal, or capital, investment. If the investor retains the withdrawal, it has recovered a portion of its capital investment. When an investor "reinvests" the withdrawal, it is simply replacing a portion of the withdrawn capital. *Huber*, 702 F.3d at 907.

2

JA250

Yet the Receiver, ignoring the very authority that he cites in support of his Motion as well as economic reality, has unfairly and improperly included all withdrawals by Investors, whether reinvested or not, in calculating their Current Recoveries. If the Receiver's plan is approved, CCWB, EBC and M.C. Dean will be wrongly deprived of millions of dollars.

The Receiver's proposal burdens Investors with artificially inflated recoveries and relies on those inflated recoveries to eliminate or reduce the distributions to which they are entitled. Applying Rising Tide in that way is grossly unfair, forces CCWB, EBC and M.C. Dean to subsidize distributions to the other investors, and is contrary to the Receiver's stated intent to "equalize[] the lowest percentage return victims of the Ponzi scheme recover on their investment." Receiver's Motion for Order Approving Interim Distribution ("Receiver's Motion"), at ¶ 34.

Accordingly, CCWB, EBC and M.C. Dean, Inc., by counsel, submit the following objections to the Receiver's Motion.

## FACTUAL BACKGROUND

1.    The Declaration of Eric Dean, the Manager of CCWB, EBC and M.C. Dean, who supervised the assembly of the financial records provided to the Receiver, is attached hereto and incorporated by reference.

2.    In June 2020 and August 2020, counsel for Investors provided the Receiver with bank statements and wire confirmations showing all transactions with the Defendants, tax documents and organizational documents, and spreadsheets reflecting the information contained in those documents and the losses suffered by each investing entity. After reviewing the documents, the Receiver prepared Transaction Statements netting the payments to and from the

3

JA251

Defendants, to arrive at the amount of the loss sustained by each investor. For CCWB, the loss is $10,826,512; for EBC, the loss is $7,939,381; and for M.C. Dean the loss is $11,498,134.[2]

**CCWB**

3.    CCWB made no other investments while investing with the Defendants and did not make any distributions to its members once it started investing with Defendants. Eric Dean Decl., ¶ 4.

4.    CCWB invested capital totaling $11,100,374, made withdrawals and reinvested all of the money withdrawn from Defendants except for $273,862, which it retained. Thus, CCWB recovered 2.5% of its principal investment and sustained a loss of $10,826,512. Eric Dean Decl., ¶ 4.

5.    An initial distribution of $5,149,780 would raise CCWB's current recovery from 2.5% to the 48.86% recovery established by the Receiver. Eric Dean Decl., Ex. D.  The Receiver proposes that CCWB receive no initial distribution based on his determination that CCWB has already recovered 51.39% of its investment, thereby exceeding the proposed 48.86%, Receiver Mot., Ex. B.

6.    Despite the fact that CCWB retained only $273,862 of its withdrawals, reinvested the rest with defendants, and lost 97.5% of its principal investment, the Receiver determined that CCWB recovered 51.39% of its investment by counting the total amount withdrawn and reinvested with Defendants as a recovery by CCWB.

---

[2] There are very slight, insignificant variances between the Receiver's loss calculations and the losses noted on the spreadsheets for CCWB and EBC. Eric Dean Decl., at n.1 and Exhibits A, B and C. The spreadsheets that appear as exhibits to the Eric Dean Declaration are in pdf format but can be submitted in Excel if necessary.

**EBC**

7.     EBC made no other investments while investing with the Defendants and did not make any distributions to its members once it started investing with Defendants. Eric Dean Decl. ¶ 4.

8.     EBC invested capital totaling $8,428,415 and reinvested all of the money withdrawn from Defendants except for $498,034, which it retained.  Thus, EBC recovered 5.9% of its principal investment and sustained a loss of $7,939,381. Eric Dean Dec., ¶ 4.

9.     An initial distribution of $3,620,000 would raise EBC's current recovery from 5.9% to the 48.86% established by the Receiver. Eric Dean Decl. Ex. D.  The Receiver currently proposes that EBC receive no initial distribution based on his determination that EBC has already recovered 60.10% of its investment, thereby exceeding the proposed 48.86%. Receiver Mot., Ex. B

10.     Despite the fact that EBC retained only $498,034 of its withdrawals, reinvested the rest with defendants, and lost 94.1% of its principal investment, the Receiver determined that EBC recovered 60.10% of its investment by counting the total amount withdrawn and reinvested with Defendants as a recovery by EBC.

**M.C. Dean**

11.     M.C. Dean made no other investments while investing with the Defendants and did not make any distributions to its members once it started investing with Defendants. Eric Dean Decl. ¶ 4.

12.    M.C. Dean invested capital totaling $11,548,134 and reinvested all of the money withdrawn from Defendants except for $50,000, which it retained.  Thus, M.C. Dean recovered 0.4% of its principal investment and sustained a loss of $11,498,134. Eric Dean Dec., ¶ 4.

13.    An initial distribution of $5,592,418 would raise M.C. Dean's current recovery from 0.4% to the 48.86% established by the Receiver. Eric Dean Decl., Ex. D.  The Receiver currently proposes that M.C. Dean receive an initial distribution of $4,376,833 based on his determination that M.C. Dean has already recovered 17.43% of its investment. Receiver Mot., Ex. B.

14.    Despite the fact that M.C. Dean retained only $50,000 of its withdrawals, reinvested the rest with Defendants, and lost 99.6% of its investment, the Receiver determined that M.C. Dean recovered 17.43% of its investment by counting the total amount withdrawn and reinvested with Defendants as a recovery by M.C. Dean.

## **OBJECTIONS**

15.    The Receiver relies extensively on *S.E.C. v. Huber*, 702 F.3d 903 (7th Cir. 2012), as support for his Motion, particularly in explaining how pre-receivership withdrawals should be treated under the Rising Tide method:

> Under the Rising Tide method, an investor's pre-receivership withdrawals are considered part of the overall distributions received by an investor. As such, the investor's pre-receivership withdrawals for Class 4a Claimants are credited dollar for dollar from the principal amount they invested with the Receivership Parties.

Receiver Mot., ¶ 35, citing *Huber*, 702 F.3d at 903 ("[W]ithdrawals are considered part of the distribution received by an investor and so are subtracted from the amount of the receivership assets to which he would be entitled had there been no withdrawals.").  As the *Huber* court notes, pre-receivership withdawals are treated this way because "[i]nvestors who have made

6

JA254

withdrawals will tend to be better off when the Ponzi scheme collapses than investors who have

made no withdrawals because the former lose less than they would have lost had they not drawn

down their investment." *Id*. at 907.  *See also Sec. & Exch. Comm'n v. Callahan*, 193 F. Supp. 3d

177, 199 (E.D.N.Y. 2016) ("[T]he 'rising tide' approach . . . prevents an investor who previously

received funds as a withdrawal from benefitting at the expense of other investors in the scheme

who did not receive any withdrawals and therefore, lost the entire amount of their investment.")

(citing *Huber,* 702 F.3d at 906); *In re The Vaughan Co., Realtors*, 543 B.R. 325, 337 (Bankr.

D.N.M. 2015) ("The rising tide method is designed so early investors do not receive a windfall

from later investors' money, and later investors are not penalized based on the timing of their

investments").

16.    As *Huber* and the other cases cited make abundantly clear,  a pre-receivership

withdrawal should be considered as a recovery by the withdrawing investor of a portion of his

principal investment and thus part of the overall distribution, *when the withdrawal benefits the*

*investor at the expense of other investors who did not benefit from withdrawals*. That occurs

when the investor retains the withdrawal.  *See U.S. Commodity Futures Trading Comm'n v.*

*Wilson*, No. 11-CV-1651-GPC-BLM, 2013 WL 3776902, at *3 (S.D. Cal. July 17, 2013) ("The

Rising Tide method prevents a customer who previously received funds as withdrawals from

benefitting at the expense of other investors by retaining the benefit of the full amount of his

withdrawal plus a distribution calculated on the basis of net funds invested"); *Commodity*

*Futures Trading Comm'n v. Equity Fin. Grp., Inc.*, No. CIV.04-1512 RBK AMD, 2005 WL

2143975, at *24–25 (D.N.J. Sept. 2, 2005), report and recommendation adopted *sub nom.*

*Commodity Futures Trading Comm'n v. Equity Fin. Grp., LLC*, No. CIV.04-1512(RBK), 2005

WL 2864783 (D.N.J. Oct. 26, 2005) ("Under this method, investors are permitted to retain

7

JA255

previously received funds, but those withdrawals will be credited against the investors' respective pro rata shares calculated based on the full amounts invested")

17.      *But that is not the case with withdrawals that are reinvested in the Ponzi scheme.* The investor receives no benefit from a withdrawal that is returned to the Ponzi scheme, let alone a "windfall" from other investors' money. He is in the same place as if he had never made the withdrawal.  In fact, when the withdrawal is reinvested, it becomes available for withdrawal by other investors.

18.      Here, CCWB, EBC and M.C. Dean received no benefit at the expense of any other investor from the withdrawals they reinvested with Defendants. They benefitted only from the relatively small withdrawals they retained and therefore should receive distributions based on their having recovered the portion of their principal investments reflected by those small withdrawals. In the case of CCWB, that requires increasing its initial distribution from $0 to $5,149,780; in the case of EBC, that requires increasing its initial distribution from $0 to $3,620,090; in the case of M.C. Dean, that requires increasing its initial distribution from $4,376,833 to $5,592,418. *See* Eric Dean Decl., Ex. D.

19.      The Court in *Huber* addressed this very issue, concluding that an investor who reinvests his withdrawal has received no benefit from it and is in no better position than if he had taken no withdrawal.  For that reason, the pre-receivership withdrawals that are reinvested should be considered as rescinded and not counted against that investor when determining his distribution under the Rising Tide method:

> We are given pause, however, by the situation of an investor who having withdrawn some money from the Ponzi scheme then reinvests it. Suppose he had initially invested $150,000 and then, shortly after withdrawing $50,000, he reinvested it, thus restoring his balance to $150,000, all of which he lost when the scheme collapsed. Under the rising tide method he would be credited with having invested $200,000 ($150,000 plus $50,000)

8

JA256

and having recouped a quarter of that amount by his withdrawal, and thus would receive a reduced share of recovered assets compared to a person who had invested $150,000 and lost it without any interim withdrawals. *We can't see why those two investors should be treated differently*, as would be obvious if the withdrawal and reinvestment had occurred on successive days. *In cases of withdrawal followed by reinvestment, the investor's maximum balance in the Ponzi scheme ($150,000 in our example) should be treated as his investment; the withdrawals, having in effect been rescinded, should be ignored.*

*Huber*, 702 F.3d at 907 (emphasis added). Other courts have noted the inequity of treating pre-receivership withdrawals that are reinvested as a recovery by the investor:

However, the situation becomes more complicated when the investor withdraws his money from the Ponzi scheme and then reinvests that money back into the Ponzi scheme. In such a situation, the positive effect on the investor of withdrawing his money from the scheme is erased because he re-invested the money he took out back into the scheme and therefore, ended up losing the same amount of money that he would have lost had he decided not take his money out in the first instance. For this reason, some courts have refused to reduce an investor's claim against the receivership estate if the investor withdrew money from the scheme and then reinvested it or rolled it back into the scheme.

*Sec. & Exch. Comm'n v. Callahan*, 193 F. Supp. 3d 177, 195–96 (E.D.N.Y. 2016) (citing *Huber*, 702 F.3d at 907). Simply put, a withdrawal that is returned to the Ponzi scheme is not a recovery and should not be used to diminish an investor's fair share of a distribution.

20.    Per the *Huber* analysis, CCWB is no better off than an investor with a principal investment of $11,100,374 who withdrew $273,862. The Receiver would consider that investor to have a current recovery of 2.5%.  CCWB should be treated no differently. EBC is no better off than an investor with a principal investment of $8,428,415 who withdrew $498,034. The Receiver would consider that investor to have a current recovery of 5.9%. EBC should be treated no differently. M.C. Dean is no better off than an investor with a principal investment of

9

JA257

$11,548,124 who withdrew $50,000. The Receiver would consider that investor to have a current recovery of 0.04%. M.C. Dean should be treated no differently.[3]

21.    Alternatively, if the Receiver's method of calculating the Current Recoveries for CCWB, EBC and M.C. Dean is deemed permissible under the Rising Tide method, then Investors object to the Receiver's selection of the Rising Tide method rather than the Net Loss Method to determine Initial Distributions, as application of the Rising Tide method in this way is unfair and inequitable to Investors and all other victims who have reinvested withdrawals.

## CONCLUSION

Withdrawals by the Investors that are reinvested in the Ponzi Scheme should not be included in the calculation of the Investors' Current Recoveries. Equity and the authority relied on by the Receiver require the Receiver to recalculate their Current Recoveries by dividing the total of withdrawals retained by each Investor by that Investor's principal investment.

Respectfully submitted,

Dated:    January 3, 2022    /s/ Robert F. Muse

Robert F. Muse
Ronald Kovner
Rachel Clattenburg
**LEVY FIRESTONE MUSE LLP**
1701 K St. NW, Suite 350

---

[3] On a number of the occasions, Defendants advised Mr. Dean that one or more of the Investors had payments coming and the manager instructed the Defendants not to send the payment, but to simply apply the payment to the investor's account. Eric Dean Decl., ¶ 4 n.2. The Receiver correctly did not treat those amounts as pre-Receiver withdrawals. Yet there is no relevant difference between an amount that was paid to an Investor and reinvested with Defendants, and an amount that was simply added to the Investor's account without making the round trip from Defendants to the Investor and back to the Defendants. In each case, the Investor is left in the same position and has received no benefit.

10

JA258

Washington, DC 20005
Tel: (202) 845-3215
Fax: (202) 595-8253
rmuse@levyfirestone.com
rk@levyfirestone.com
rmc@levyfirestone.com

*Counsel for Claimants*

### CERTIFICATE OF SERVICE

I certify that on January 3, 2022, I served the foregoing Motion using CM/ECF, which served a copy on counsel of record.

_____/s_Robert F. Muse_____

11

JA259

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>            Plaintiff,<br><br>    v.<br><br>KEVIN B. MERRILL et al.,<br><br>            Defendants. | Case No. 1-18-cv-02844-RDB |

**DECLARATION OF ERIC DEAN IN SUPPORT OF OBJECTIONS OF INVESTORS CCWB ASSET INVESTMENTS, LLC, EBC ASSET INVESTMENT, INC., AND M.C. DEAN, INC. TO THE RECEIVER'S MOTION FOR ORDER APPROVING DISTRIBUTION PLAN AND INTERIM DISTRIBUTION**

Eric Dean declares, under 28 U.S.C. § 1746 and under penalty of perjury, that the following is true and correct:

1. My name is Eric Dean. I am of sound mind and capable of making this Declaration. The facts stated herein are true and accurate to the best of my knowledge and belief.

2. I am the Manager of CCWB Asset Investments, LLC ("CCWB"), EBC Asset Investment, Inc. ("EBC"), and Dean Capital Investments, LLC, the wholly owned subsidiary of M. C. Dean, Inc. that invested with defendants ("M.C. Dean"). At my direction and under my supervision, Scott Brody, the controller of M.C. Dean, Inc., and others, assembled financial records for CCWB, EBC and M.C. Dean, including bank statements and wire confirmations supporting the outgoing and incoming transactions with Defendants, tax documents and organizational documents, and the creation of cash flow spreadsheets

1

JA260

reflecting the information contained in those documents. Those records and spreadsheets were submitted to the Receiver on June 2, 2020.

3.  The Receiver provided CCWB, EBC and M.C. Dean with Transaction Statements netting the payments to and from the Defendants, to arrive at the amount of the loss sustained by each investor.[1]

4.  The documentation submitted to the Receiver, including particularly the spreadsheets for CCWB, EBC and M.C. Dean attached as Exhibits A, B and C to this Declaration,[2] and the Receiver's Transaction Statements with the noted minor variances, show the following:

**CCWB**

- CCWB made no other investments while investing with the Defendants. CCWB did not make any distributions to its members once it started investing with the Defendants.

- CCWB invested capital totaling $11,100,374 with Defendants. CCWB took withdrawals while it was investing with Defendant and reinvested the entire amount of those withdrawals with Defendants, except for $273,862, which it retained and appears on the spreadsheet as Net Cash.

- CCWB's loss, determined by subtracting the retained Net Cash from total capital invested, is $10,826,512.

---

[1] There are slight variances between the loss indicated on the spreadsheets and the loss indicated on the Transaction Statements for CCWB and EBC. The variance is $245 for CCWB, and $83 for EBC. The variances are not significant. There is no variance with respect to M.C. Dean.
[2] The spreadsheets for CCWB, EBC and M.C. Dean also include substantial amounts that the Defendants purported to add to their investments but were not actually transmitted to CCWB, EBC or M.C. Dean.  Those amounts are not relevant here.

2

- The Net Cash retained by CCWB from the withdrawals represents a 2.5% recovery of the principal investment by CCWB with Defendants.

**EBC**

- EBC made no other investments while investing with the Defendants. EBC did not make any distributions to its stockholders once it started investing with the Defendants.

- EBC invested capital totaling $8,428,415 with Defendants. EBC took withdrawals while it was investing with Defendant and reinvested the entire amount of those withdrawals with Defendants, except for $498,034, which it retained and appears on the spreadsheet as Net Cash.

- EBC's loss, determined by subtracting the retained Net Cash from total capital invested, is $7,939,381.

- The Net Cash retained by EBC from the withdrawals represents a 5.9% recovery of the principal investment by EBC with Defendants.

**M.C. Dean**

- M.C. Dean made no other investments while investing with the Defendants. M.C. Dean did not make any distributions to its stockholders once it started investing with the Defendants.

- M.C. Dean invested capital totaling $11,548,134 with Defendants. M.C. Dean took withdrawals while it was investing with Defendant and reinvested the entire amount of those withdrawals with Defendants, except for $50,000, which it retained and appears on the spreadsheet as Net Cash.

3

- M.C. Dean's loss, determined by subtracting the retained Net Cash from total capital invested, is $11,498,134

- The Net Cash retained by M.C. Dean from the withdrawals represents a 0.4% recovery of the principal investment by ECB with Defendants.

5.  A chart depicting the foregoing analysis is attached as Exhibit D to this Declaration.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed this 30 day of December, 2021

Eric Dean

5

**EXHIBIT A**

CCWB Asset Investment, LLC
Cash Flow / Capital Reconciliation

| Transaction Date | Wire Reference Number | Investment | A Total Capital from Members | B CCWB Investments | C Net Collections | D(A-B+C) Net Cash | A-D Loss |
|---|---|---|---|---|---|---|---|
| Opening Balance at start of Deville activ... | | | 2,252,160 | | | | |
| 1/9/15 | 2015010900015341 | 750,109 | | 750,109 | - | | |
| 2/11/15 | 013038 | - | - | | 25,927 | | |
| 3/12/15 | 2015031200007115 | 1,690,064 | - | 1,690,064 | - | | |
| 3/12/15 | 005059 | - | - | | 73,959 | | |
| 4/14/15 | 014820 | - | - | | 134,216 | | |
| 5/15/15 | 019749 | - | - | | 116,592 | | |
| 6/8/15 | 2015060800013412 | 599,987 | - | 599,987 | - | | |
| 6/8/15 | 009517 | - | - | | 127,373 | | |
| 7/13/15 | 013480 | - | - | | 128,737 | | |
| 7/29/15 | 2015072900006258 | 500,028 | - | 500,028 | 130,275 | no deposit - cash reinvested per column I | |
| 9/18/15 | 015311 | - | - | | 132,248 | | |
| 10/21/15 | 008197 | - | - | | 137,425 | | |
| 11/23/15 | 009001 | - | - | | 145,139 | | |
| 11/24/15 | 2015112400002652 | 521,647 | - | 521,647 | - | | |
| 12/16/15 | 015730 | - | - | | 145,929 | | |
| Summary of 2015 Non-Deville Related A... | | | 982,861 | | | | |
| 1/20/16 | 013726 | - | - | | 150,255 | | |
| 2/4/16 | 2016020400013760 | 450,000 | - | 532,976 | - | | |
| 2/25/16 | 003674 | 82,976 | - | | 124,375 | | |
| 3/22/16 | 2016032200013950 | 280,169 | - | 280,169 | 237,778 | no deposit - cash reinvested per column I | |
| 4/27/16 | 2016042700002654 | 566,412 | - | 566,412 | 247,590 | no deposit - cash reinvested per column I | |
| 5/18/16 | 008224 | - | - | | 261,282 | | |
| 6/28/16 | 001373 | - | - | | 273,539 | | |
| 7/27/16 | 010525 | - | - | | 263,448 | | |
| 7/29/16 | 2016072900016991 | 899,990 | - | 899,990 | - | | |
| 8/26/16 | 008566 | - | - | | 255,746 | | |
| 9/28/16 | 014170 | - | - | | 269,702 | | |
| 10/28/16 | 020406 | - | - | | 281,803 | | |
| 11/29/16 | 001513 | - | - | | 259,143 | | |
| 12/23/16 | 001639 | - | - | | 241,891 | | |
| Summary of 2016 Non-Deville Related A... | | | 866,934 | | | | |
| 1/13/17 | 2017010300015150 | 1,500,467 | - | 1,500,467 | - | | |
| 1/27/17 | 001447 | - | - | | 232,102 | | |
| 2/27/17 | 011335 | - | - | | 351,445 | | |
| 3/3/17 | 2017030300012490 | 1,002,542 | - | 1,002,542 | - | | |
| 3/27/18 | 001677 | - | - | | 425,028 | | |

Case 1:18-cv-02844-RDB   Document 558-2   Filed 01/03/22   Page 3 of 4

| Date | Reference | | | | | Notes |
|---|---|---|---|---|---|---|
| 4/28/17 | 012730 | - | - | - | 427,003 | |
| 5/26/17 | 015098 | - | - | - | 442,890 | |
| 6/7/17 | 2017060700006209 | 1,500,000 | - | 1,500,000 | - | |
| 6/30/17 | 002011 | - | - | - | 445,232 | |
| 7/24/17 | 006103 | - | - | - | 417,711 | |
| 8/10/17 | 2017081000013719 | 1,000,012 | - | 1,400,012 | - | |
| 8/28/17 | 008106 | 400,000 | - | - | 4,780 | |
| 9/20/17 | 009158 | | 1,000,000 | | | |
| 9/21/17 | 005165 | | 1,000,000 | | | |
| 9/21/17 | 007756 | | 1,000,000 | | | |
| 9/21/17 | N/A - sent directly to Deville | | 1,000,000 | | | $1M funded directly to Deville for pool purchases, so did not pass through bank CCWB bank account. |
| 9/21/17 | 2017092100015640 | 6,200,000 | - | 6,200,000 | 416,597 | no deposit - cash reinvested per column I. Per above, $1M funded directly to Deville for pool purchases, so only $4,783,403 was wired from the CCWB bank account. |
| 10/23/17 | 013574 | 579,958 | - | 579,958 | 449,785 | |
| 10/27/17 | 2017102700003801 | - | - | - | - | |
| 11/21/17 | 008411 | - | - | - | 513,217 | |
| 12/13/17 | 2017121300007857 | 513,217 | - | 1,050,037 | - | |
| 12/29/17 | 002019 | 536,820 | 2,283,455 | - | 9,128 | |
| Summary of 2017 Non-Deville Related A | | | | | | |
| 1/30/18 | 011021 | - | - | - | 489,041 | |
| 2/28/18 | 012822 | - | - | - | 1,062,397 | |
| 3/8/18 | 2018030800014536 | 2,854,032 | - | 2,854,032 | 1,204,045 | no deposit - cash reinvested per column I |
| 4/27/18 | 021776 | - | - | - | 1,368,942 | |
| 5/10/18 | 2018051000010551 | 1,399,903 | - | 2,774,903 | - | |
| 5/31/18 | 025907 | 1,375,000 | - | - | 1,648 | |
| 6/18/18 | | | | | - | |
| 7/20/18 | 018830 | - | - | - | 1,257,866 | |
| 8/3/18 | 2018080300004316 | 1,861,955 | - | 1,861,955 | 1,301,569 | no deposit - cash reinvested per column I |
| 8/7/18 | 2018080300007468 | 1,140,817 | 714,964 | 1,140,817 | - | |
| Summary of 2018 Non-Deville Related A | | 28,206,103 | 11,100,374 | 28,206,103 | 17,379,591 | |

Return of Capital   2.5%   273,862   10,826,512

JA267




REDACTED

**EXHIBIT B**

**EBC Asset Investments Inc**
**Cash Flow / Capital Reconciliation**

| Transaction Date | Wire Reference Number | Investment | A Total Capital from Stockholders | B EBC Investments | C Net Collections | D (A - B + C) Net Cash | A - D Loss |
|---|---|---|---|---|---|---|---|
| Opening Balance at start of Deville activity | | | 314,110 | | | | |
| 3/12/15 | 2015031200007037 | 309,886 | - | 309,886 | - | | |
| 14/04/2015 | 014826 | - | - | - | 10,015 | | |
| 15/05/2015 | 017516 | - | - | - | 10,436 | | |
| 5/27/15 | 2015052701000012967 | 567,959 | - | 567,959 | - | | |
| 6/1/15 | 2015060100003970 | 471,589 | - | 471,589 | - | | |
| 6/8/15 | 2015060800013499 | 2,400,538 | - | 2,400,538 | - | | |
| 08/06/2015 | 009518 | - | - | - | 12,265 | | |
| 13/07/2015 | 013489 | - | - | - | 77,482 | | |
| 7/29/15 | 2015072900006362 | 120,000 | - | 250,000 | 5,155 | | |
| 14/08/2015 | 017536 | 130,000 | - | - | 146,293 | | |
| 18/09/2015 | 015286 | - | - | - | 160,476 | | |
| 21/10/2015 | 008224 | - | - | - | | | |
| 11/24/15 | 2015112400002820 | 521,647 | - | 521,647 | 153,941 | | |
| 20/11/2015 | 017637 | - | - | - | 149,980 | | |
| 12/17/15 | 015773 | - | - | - | | | |
| Summary of 2015 Non-Deville Related Activi | | | 3,561,135 | | | | |
| 20/01/2015 | 013735 | - | - | - | 151,220 | | |
| 2/5/16 | 2016020400003043 | 450,000 | - | 532,975 | - | | |
| 25/02/2016 | 003668 | 82,976 | - | - | 224,156 | | |
| 3/22/16 | 2016032200013865 | 280,842 | - | 280,842 | 276,908 | no deposit - cash reinvested per column I | |
| 4/27/16 | 2016042700002712 | 304,991 | - | 304,991 | 292,036 | no deposit - cash reinvested per column I | |
| 18/05/2016 | 008221 | - | - | - | 304,388 | | |
| 28/06/2016 | 001372 | - | - | - | 299,450 | | |
| 7/29/16 | 2016072900016805 | 900,014 | - | 900,014 | - | | |
| 27/07/2016 | 010564 | - | - | - | 268,855 | | |
| 26/08/2016 | 008613 | - | - | - | 266,359 | | |
| 28/09/2016 | 014114 | - | - | - | 276,330 | | |
| 31/10/2016 | 014033 | - | - | - | 282,252 | | |
| 29/11/2016 | 008291 | - | - | - | 261,871 | | |
| 23/12/2016 | 001628 | - | - | - | 246,293 | | |
| Summary of 2016 Non-Deville Related Activi | | | 165,108 | | | | |
| 1/2/17 | 015258 | 1,499,999 | - | 1,499,999 | - | | |
| 27/01/2017 | 001448 | - | - | - | 232,817 | | |
| 2/27/17 | 011399 | - | - | - | 361,749 | | |

| Date | Account | | | | | Note |
|---|---|---|---|---|---|---|
| 3/3/17 | 20170303000015656 | 2,180,000 | - | 3,582,693 | - | |
| 3/6/17 | 20170303000003908 | 1,402,693 | - | - | - | |
| 3/30/17 | 005293 | - | - | - | 531,465 | |
| 4/28/17 | 018512 | - | - | - | 560,214 | |
| 5/26/17 | 016979 | - | - | - | 592,171 | |
| 6/7/17 | 20170607000005204 | 1,800,000 | - | 1,800,000 | - | |
| 30/06/2017 | 024581 | - | - | - | 649,320 | |
| 7/24/2017 | 006158 and '006237 | - | - | - | 606,261 | |
| 8/10/17 | 20170810000013570 | 1,100,000 | - | 1,700,000 | - | |
| 8/28/17 | 008126 | 600,000 | - | - | 313 | no deposit - cash reinvested per column l |
| 9/21/17 | 20170921000015780 | 1,100,000 | - | 1,100,000 | 618,971 | |
| 10/27/17 | 20171027000003833 | 724,510 | - | 724,510 | - | |
| 10/24/17 | 001392 | - | - | - | 664,544 | |
| 11/21/17 | 015026 | - | - | - | 539,031 | |
| 12/14/17 | 20171213000007955 | 539,031 | - | 1,087,719 | 1,692 | |
| 12/29/17 | 002020 | 548,688 | - | - | | |
| 03/03/2017 | 012418 | | 1,500,000 | | | |
| 03/03/2017 | Miscellaneous Credit | | 1,500,000 | | | |
| Summary of 2017 Non-Deville Related Activi | | | 1,048,281 | | | |
| 1/31/18 | 011048 | - | - | - | 459,122 | |
| 28/02/2018 | 012809 | - | - | - | 967,037 | |
| 3/8/18 | 20180308000014700 | 2,199,994 | - | 2,199,994 | - | |
| 3/8/18 | | - | - | - | (86) | no deposit - cash reinvested per column l |
| 27/04/2018 | 021633 | 1,113,000 | - | 1,113,000 | 1,332,383 | |
| 5/10/18 | 20180510000010469 | 1,250,085 | - | 2,590,085 | - | |
| 6/1/18 | 002068 | 1,340,000 | - | - | 913 | |
| 6/18/18 | | - | - | - | - | |
| 7/20/18 | 018856 | - | - | - | 1,222,343 | no deposit - cash reinvested per column l |
| 8/3/18 | 20180803000007405 | 1,355,709 | - | 1,355,709 | - | |
| 8/3/18 | 20180803000004458 | 830,151 | - | 830,151 | - | |
| Summary of 2018 Non-Deville Related Activi | | | 339,781 | | | |
| | | 26,124,301 | $ 8,428,415 | 26,124,300 | $ 18,193,918 | |

**Return of Capital on Deville pools**

7,930,382

498,034

5.9%

REDACTED

**EXHIBIT C**

Case 1:18-cv-02844-RDB   Document 558-4   Filed 01/03/22   Page 2 of 3

**Dean Capital Investments**
**Cash Flow / Capital Reconciliation**

| Transaction Date | Wire Reference Number | Investment | A Capital from Stockholders | B DCI Investments | C Net Collections | D (A-B+C) Net Cash | A-D Loss |
|---|---|---|---|---|---|---|---|
| 10/08/2017 | 17081080875 | 2,140,001 | 2,140,001 | 2,140,001 | | | |
| 21/09/2017 | 170921342941 | 272,493 | 272,493 | 272,493 | | | |
| 21/09/2017 | 170921343007 | 451,649 | 451,649 | 451,649 | | | |
| 21/09/2017 | 170921342978 | 1,799,858 | 1,799,858 | 1,799,858 | | | |
| 27/10/2017 | 17102754523 | 1,899,906 | 1,899,906 | 1,899,906 | | | |
| 27/10/2017 | 17102754566 | 3,530,101 | 3,530,101 | 3,530,101 | | | |
| 31/10/2017 | 17103786358 | - | | - | 79,630 | | |
| 21/11/2017 | 17112102511 | - | | - | 127,381 | | |
| 13/12/2017 | 17121340741239 | 342,275 | | 342,275 | 219,102 | | |
| 29/01/2018 | 180129773284 | - | | - | 201,663 | | |
| 28/02/2018 | 180228115987 | - | | - | 494,283 | | |
| 07/03/2018 | 180307205893 | - | 1,500,000 | - | - | | |
| 09/03/2018 | 180309112820 | - | (45,875) not | | | | |
| 08/03/2018 | 180308229452 | 2,776,824 | 2,776,824 | 2,776,824 | 592,916 | | |
| 27/04/2018 | 180427816916 | - | | - | 705,699 | | |
| 10/05/2018 | 180510959430 | 1,515,000 | 1,515,000 | 1,515,000 | 815,266 | | |
| 7/20/2018 | 180720793170 | | | | 814,910 | | |
| 03/08/2018 | 180803950321 | 634,614 | | 634,614 | | | |
| 03/08/2018 | 180803950363 | 1,036,028 | | 1,036,028 | 849,767 | | |
| | | **16,398,750** | **11,548,134** | **16,398,750** | **4,900,616** | **50,000** | **11,498,134** |

Return of Capital 0.4%

Entity Structure:
 Dean Capital Investments, LLC is 100% owned by M.C. Dean, Inc.

REDACTED

REDACTED

JA273



**EXHIBIT D**

EXHIBIT D

**CCWB**

| | | |
|---|---|---|
| Total Capital from Members | | 11,100,374 |
| Return to Investors per Distribution Plan | | 48.86% |
| Total Return | | 5,423,643 |
| Actual Return | 2.5% | 273,862 |
| Balance Due to Investor | | **5,149,780** |

**EBC**

| | | |
|---|---|---|
| Total Capital from Stockholders | | 8,428,415 |
| Return to Investors per Distribution Plan | | 48.86% |
| Total Return | | 4,118,124 |
| Actual Return | 5.9% | 498,034 |
| Balance Due to Investor | | **3,620,090** |

**MC Dean**

| | | |
|---|---|---|
| Total Capital from Stockholders | | 11,548,134 |
| Return to Investors per Distribution Plan | | 48.86% |
| Total Return | | 5,642,418 |
| Actual Return | 0.4% | 50,000 |
| Balance Due to Investor | | **5,592,418** |

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,　　　　　　Plaintiff,　v.　KEVIN B. MERRILL et al.,　　　　　　Defendants. | Case No. 1-18-cv-02844-RDB |

**OBJECTION OF THE *CONNAUGHTON* OBJECTORS TO THE RECEIVER'S MOTION FOR ORDER APPROVING DISTRIBUTION PLAN AND INTERIM DISTRIBUTION**

Claimants Jeffrey J. Connaughton, Tony Davis, Barbara Louderback, Rochelle Katz, Scott D. Oser, Ojas Patel, Pulin Patel, Dhaval Shukla and Nishant Shukla ("Objectors," the "Named Objectors" or the "*Connaughton* Objectors") through undersigned counsel, respectfully submit this objection to the Receiver's Motion for Order Approving Distribution Plan and Interim Distribution (Dkt. No. 504) ("the Motion"). For the reasons stated below, the Motion should be denied to the extent it imposes an offset, or at least a dollar-for-dollar offset, of recoveries obtained by investors from collateral sources outside of the Receivership.

**I.　　Introduction**

This objection concerns the Receiver's proposed treatment of the prior receipt by claimants of recoveries from third parties. Just to be clear, we use the term "third parties" to refer to persons who are *not* "Receivership Parties." For example, the *Connaughton* Objectors, along with certain other investors (collectively, "the *Connaughton* Plaintiffs") were plaintiffs in a civil action (the *Connaughton* Action) brought against one of the "feeder funds" (the persons identified in the Receiver's complaint as the "Bethesda Group") who solicited and procured

JA277

investors who would invest in the Receivership Parties. The *Connaughton* Action settled for an amount of money that is confidential, although the amounts of funds distributed to the *Connaughton* Plaintiffs was provided (under cover of the operative confidentiality agreement in this action) to the Receiver.

In his moving papers, the Receiver indicates that there are a total of 38 claimants (presumably including the 15 *Connaughton* Plaintiffs) who have received distributions from litigation against third parties, and that these distributions total $2,882,787.66. Motion, ¶ 25. We refer to this cohort of 38 claimants as the "Collateral Recovery Cohort."

We do not know the specific details about the other twenty-three (23) members of this group. We asked the Receiver for their identities and information about their claims. The Receiver refused our request. But we assume, since the Receiver describes their recoveries as having been from against third parties, that they were from persons who are not affiliated with Defendants Merrill, Ledford or Jezierski, or otherwise defined as Receivership Parties.

In his moving papers, the Receiver indicates that he has "factored" in the receipt of said distributions in determining the amount he intends to distribute to claimants. Motion, ¶ 25.

This is an understatement. The Receiver has done more than merely "factor" in these prior distributions. Rather, he proposes, in effect to confiscate them in their entirety.

The Receiver has treated distributions from third party settlements the same as he has treated distributions from the underlying Ponzi scheme. This has a particularly harsh effect under the "rising tide" calculation method proposed by the Receiver. Under this method, the Receiver proposes to bring each investor claimant up to the point of having *received back* 48.86% of total aggregate investments, rather than calculating distributions based on "net loss," which would result in claimants receiving approximately 28.1% of their net loss (regardless of

the amounts of back-and-forth cash flows).

The Receiver's proposed treatment of third party recoveries the same as Ponzi Scheme distributions, will result, for all intents and purposes, in a dollar-for-dollar reduction in what the claimant will receive. If a claimant, for example, had already received $100,000 in a third party settlement, the amount of the claimant's distribution will be effectively reduced by $100,000. Nine (9) of the fifteen (15) *Connaughton* Plaintiffs will receive *nothing* under the Receiver's proposed distribution, and the remaining six (6) will receive a total of approximately $6,500. The *Connaughton* Plaintiffs collectively had a net loss (prior to third party settlement distributions) of approximately $1.25 million. *See* Exhibit A (depicting the Receiver's proposed distribution, highlighted in yellow in Column A, as well as other possible outcomes that are explored below).

While the Receiver does not intend to literally confiscate the full amount of payments received by claimants from third party settlements (*e.g.,* to attach their bank accounts), his proposal to implement a 100% offset (we refer to an offset to factor in third party recoveries as a "Collateral Recovery Offset") has precisely the same effect. This completely eliminates any incentive for any claimant to pursue third parties, ever, much less to reward them for their efforts.

We recognize, as noted by the Receiver, that hard choices have to be made when limited resources need to be allocated among persons who are all faultless victims of a criminal scheme, and that concepts of "fairness" and "equity" should inform this process.

The central questions presented is whether persons who took the initiative to recover from sources outside the Receivership should be rewarded for their initiative, and whether defrauded investors be incented to improve their plight in difficult circumstances. Or, should

they be punished, and the fruits of their labor and initiative confiscated in full. The answer is clear – there must be a sufficient reward to pursue third party recoveries, and such recoveries should not be confiscated. There should not be any Collateral Recovery Offset, or, alternatively, if there is one, it must be sufficiently modest so as not to punish the Collateral Recovery Cohort, and to provide sufficient incentive to defrauded investors to take the proper initiatives in the future.

**II.     Argument**

### A. The Receiver Should Not Consider Third Party Recoveries at All

Obviously, in the vast majority of litigation contexts, there simply is no such offset implemented when distributing limited assets to classes of persons who have been harmed by specific defendants.

The guiding background black letter rule is the collateral source rule, applicable both under federal and Maryland law, pursuant to which, a litigant's recovery against Defendant B is not reduced merely because the litigant previously effected a recovery against Defendant (or, say Insurer) A. *Sloas v. CSX Transp. Inc.,* 616 F.3d 380, 389 (4th Cir.2010) (quoting *United States v. Price,* 288 F.2d 448, 449–50 (4th Cir.1961)). (The "collateral source rule holds that 'compensation from a collateral source should be disregarded in assessing tort damages'"). *Accord, e.g., Norfolk Southern Ry. Corp. v. Tiller*, 179 Md. App. 318, 327 (2008) (noting recognition of the doctrine since at least 1899); *Debbas v. Nelson*, 389 Md. 364, 378 n.3 (2003) (In Maryland, the collateral source rule "permits an injured person to recover the full amount of his or her provable damages, regardless of the amount of compensation which the person has received for his injuries from sources unrelated to the tortfeasor").

This principle guides distributions in the vast majority of litigation contexts.

In the federal securities class action context, for example, it is axiomatic that class

members filing claim forms are not asked whether they also obtained recoveries (say, against an investment bank or broker they dealt with, but who were not named as defendants in the class proceeding) from outside of the class action settlement.[1]

In the bankruptcy context, too, courts regularly hold that creditors' claims are "not affected by third-party payments" so long as those payments do not create a double recovery. *In re Del Biaggio*, 496 B.R. 600, 603 (Bankr. N.D. Cal. 2012) (citing *Invanhoe Bldg. & Loan v. Orr*, 295 U.S. 243 (1935)). Any rights of unsecured creditors "to payment from third parties … entitle them to a disproportionate recovery compared to other creditors of the same class (up to a full recovery)." *In re Journal Register Co.*, 407 B.R. 520, 533 (Bankr. S.D.N.Y. 2009). The objective of that policy is to "value *equality of treatment* by the debtor's estate *above equality of overall outcomes* among creditors having different rights against third parties." *Del Biaggio*, 496 B.R. at 604. Honoring that equitable principle properly incentivizes claimants to increase their overall outcome by actively seeking recovery from sources beyond the receivership estate.

Receiverships do not require a different set of rules.

Notably, in *Securities & Exchange Commission v. Credit Bancorp, Ltd.,* 290 F. Supp. 2d 418 (S.D.N.Y. 2003), an SEC receivership, the court rejected the argument, asserted by certain objectors, that a Collateral Recovery Offset was needed:

> As to the objection that some customers are "double-dipping" because they may be compensated from the Receivership estate as well as from insurance policies or collateral lawsuits, the Receiver has argued that he []
>> did not want to eliminate the incentive for any customer to obtain compensation from sources other than the Receivership. To deduct from a customer's distribution under the Plan any amounts received from collateral sources *would have eliminated any incentive for customers to seek compensation from such sources*. Benefits for all customers taken as a whole are maximized if customers are encouraged to seek compensation from other sources.

---

[1] The undersigned have a combined 60 years' experience in securities class actions, including settlement administration.

JA281

> Letter from Receiver to Court, dated October 29, 2003. The Receiver further notes that
> neither the Greers nor Interbanc will be "worse off if other customers do not have their
> distributions reduced due to recoveries from other sources." *Id.* Accordingly, no
> modification in the Plan is needed to account for collateral recoveries.

290 F. Supp. 2d at 424 (emphasis added).  In that proceeding, the receiver, and the court,

properly rejected an offset because it would wrongfully remove incentives from injured investors

to pursue third party recoveries.

    If the Court were to reject any Collateral Recovery Offset, as in *Credit Bancorp*,  and to

treat, the fifteen (15) *Connaughton* Plaintiffs on the same terms as other claimants, they would

collectively receive distributions *slightly in excess of $400,000*, as compared with the proposed

*$6,500* distribution the Receiver proposes.  *See* Column G (shaded purple) in Exhibit A,

depicting the zero offset outcome, using a rising tide distribution.

    The Receiver suggests that we should discard the collateral loss rule because we are in

the Never-Neverland land of equity, and equity is just different.  "Equality is equity," the

Receiver proclaims, Motion, ¶ 24 (quoting *S.E.C. v. McGinn, Smith & Co, Inc.*, 2016 WL

6459795, at *3 (N.D.N.Y. Oct. 31, 2016)) (*"McGinn Smith"*), as he strives for "equality."

    To be clear, the Receiver is certainly not talking about equality *within* the Receivership.

In fact, he is unapologetically planning on acting in an *unequal* matter within the receivership

(through the vastly different treatment of classes of claimants with substantially the same

investment losses) to achieve some measure of equality of outcome in the world *outside* the

receivership.  But is it really the proper function of a receiver to make people more equal in the

outside world?  If so, then why not also have claimants submit their tax returns and provide for

"needs testing?"  Or perhaps submit questionnaires relating to their ethnicity, national origin and

gender identity so that the Receiver can help traditionally disadvantaged constituencies?  While

the Receiver's idea of promoting *equality of result* may be well-intentioned, it is contrary to his

mission, and his responsibility to treat creditors equally and fairly within the scope of his receivership. The Receiver's job is to manage assets and distribute them to creditors, not to make the world a better place.

The Receiver cites cases in which courts have approved Collateral Recovery Offsets. Motion, at ¶ 24. But the devil is in the details, and these cases do *not*, for the reasons discussed in more detail below, support the draconian 100% offset proposed here, as the details, and facts, tell a much more nuanced story.

In summary, any Collateral Recovery Offset, is inequitable, unequal, and should be rejected. It requires that the Collateral Recovery Cohort to donate to the receivership estate the fruits of their labor in partially recovering their losses. Rather than place all of their eggs in one basket by relying solely on the Receiver's diligence in recovering funds, investors in the Collateral Recovery Cohort were responsibly proactive and spent their own time, effort, and legal costs to further mitigate their damages. Penalizing them by forcing them to share their success with the those who provided no assistance would create a perverse incentive for future fraud victims to get a free ride on the coattails of their more ambitious fellow victims.

### B. Alternatively, the Receiver Should Modify the Distribution So as to Reasonably "Factor" Third Party Recoveries Without Confiscating Them Completely and Voiding Any Incentive for Investors to Pursue Third Parties

Alternatively, if the Court is inclined to approve a Collateral Recovery Offset, it should be considerably less severe than the 100% version presently proposed.

With respect to the range of possible outcomes for the *Connaughton* Plaintiffs,[2] there is a broad range of possibilities between the (approximately) $6,500 distribution proposed by the Receiver, and an (approximately) $400,000 distribution that would occur if the Collateral

---

[2] Presumably, the same could be said for the other members of the Collateral Recovery Cohort.

Recovery Cohort were treated the same as other claimants (in a "rising tide" distribution with no Collateral Recovery Offset). The undersigned have attempted to explore these possibilities with the Receiver, who, thus far, appears not to be interested.

The cases cited by the Receiver provide guidance as to other possible outcomes.

### 1. *Capital Consultants*

We start with *SEC v. Capital Consultants, LLC*, 397 F.3d 733 (9th Cir. 2005), a leading case on this issue, and the only appellate decision cited by the Receiver. While the receiver in *Capital Consultants* did propose, and the district court and circuit court both approved, a Collateral Recovery Offset, the one that was approved barely resembles the one proposed in this receivership.

Notably, the receiver in *Capital Consultants*, like the Receiver here, initially proposed a 100% Collateral Recovery Offset. After objections were filed by capable and well-financed counsel, on behalf of two union pension funds, the receiver made rather substantial modifications to the proposed offset:

1. The offset was only at 50% of the amount of the collateral recoveries, not 100%

2. The collateral recoveries (or, more precisely, 50% of the amount of the collateral recoveries) would be deducted from the total aggregate amount invested (treated as money that "never went in"), rather than treated as money invested and received back – an important distinction, particularly if a "rising tide" methodology is used.

3. *Capital Consultants* involved a "net loss"[3] (rather than "rising tide") distribution calculation, which is generally more favorable for those who have received collateral recoveries if there is a substantial Collateral Recovery Offset.

---

[3] While we are *not* arguing for a "net loss" distribution for the entire pool of investor claimants, the Court undoubtedly could, in order to mitigate the harshness of the Collateral Recovery Offset, direct that the Collateral Recovery Cohort receive, as an alternative minimum, what they would have received under a "net loss" distribution.

The relevant provision of the final distribution plan in *Capital Consultants* provided, in pertinent part, that "to the extent the client obtains or has obtained any Third Party Recoveries, 50% of those amounts shall also be treated as Money-out and *deducted from the total Money-in"* (emphasis added). *See* Order Approving Second Amended Distribution Plan, *SEC v. Capital Consultants, LLC.*, Civ. No. 3:00-cv-01290-KI (D. Ore. Feb. 28, 2003) (attached hereto as Exhibit B), at 7. *See also Capital Consultants*, 397 F.3d at 737 n.5 (reciting the foregoing provision from the distribution plan).

While the Ninth Circuit approved the implementation of the foregoing offset, it did so only after concluding that "clients still have an incentive to pursue third-party claims, and are still rewarded for their efforts, or their decision to purchase insurance, since only half of any third-party recovery is deducted from the client's net loss claim." 397 F.3d at 740.

If the Court generally followed *Capital Consultants– i.e.,* to the extent of implementing a 50% offset and treating collateral recoveries as "deducted from the total Money-in," the *Connaughton* Plaintiffs would receive a distribution of approximately $268,000. *See* Exh. A Column D (shaded green).[4] This is a very substantial discount from $400,000, but not so draconian an offset so as to deter future third-party claims in analogous circumstances, or to punish claimants who took the initiative to pursue other sources of recovery.

### 2. *Parish*

In *S.E.C. v. Parish*, 2010 WL 5394736 (D.S.C. Feb. 10, 2010), the Receiver initially proposed a Collateral Recovery Offset substantially identical to the one proposed in this action – a 100% offset effected by treating collateral recoveries as money in and money out (as opposed

---

[4] In fact, if the Court followed *Capital Consultants* to the letter (50% offset, deduction from money-in, *and* affording the Collateral Recovery Cohort an alternative minimum distribution based on "net loss"), the *Connaughton* Plaintiffs would receive a distribution of approximately $392,000. *See* Exh. A Column F (shaded gray).

to "no money in") in a "rising tide" receivership distribution.  Certain objectors filed objections

to the offset (as well as objections related to other issues).

The receiver subsequently modified the plan of distribution, so as to treat collateral

recoveries as "no money in."  The following discussion recounts the proceedings:

> At the hearing on the Motion to Approve Claim Schedules, *the Receiver's counsel advised the Court that the Receiver agrees with the objecting investors that it will be more equitable to treat third-party recoveries as reductions from investors' Allowed Actual Investments instead of as Allowed Amounts Previously Received*. On the basis of this recommendation, objecting investor Steven L. Smith withdrew his objection to the Receiver's motion. The other objecting investors did not present oral arguments at the hearing; however, the court believes that the concerns raised in their objections are appropriately addressed by the Receiver's new recommendation.

2010 WL 5394736, at *10. As noted by the court, this tweak in the distribution plan seems to

have been enough to placate the objectors in *Parish*, one of whom withdrew his objections, and

the others of whom simply disappeared and failed to show up at the hearing.

The *Parish* court, in the face of the relatively feeble resistance offered by the objectors,

did not closely analyze whether the minor modification made by the receiver would actually be

sufficient so as not to be confiscatory, and so as not to remove incentives to pursue third party

recoveries.  These concerns were nowhere on the court's radar screen.  To the contrary,  the

*Parish* opinion reflects an outright hostility toward litigious fraud victims:

> Indeed, an investor who recovered *all* of his losses from a third-party would stand to collect a double recovery by also receiving a distribution payment in this case, *... thereby creating an incentive for the type of detrimental "race to the courthouse"* ...(emphasis added)

2010 WL 5394736, at *9.  First, the threat of a "double recovery" is almost invariably a

bogeyman, as it would be in this proceeding, and there simply is no such threat here, and it is not

particularly likely that there was such a threat in *Parish* either.  Second, and most importantly,

the court's characterization of third party litigation as "detrimental" speaks volumes about the

punitive and confiscatory intentions of the court and the receiver.  Finally, the notion that

investors who pursue *third parties* are "racing" the receiver to the courthouse is, by definition,

simply wrong.  Investors who pursue third parties are going to *an entirely different courthouse*,

suing entirely different defendants, and are not competing with the receiver for the same assets.

If anything, they are broadening the pool of recoverable assets available.

Although we would hardly recommend that the Court follow the outcome in *Parish*, it

would be a somewhat less draconian result than the offset presently proposed by the Receiver.  If

the Court were to follow *Parish* (100% offset, but counted as "no money in," in a rising tide

distribution), the *Connaughton* Plaintiffs would collectively receive approximately $138,000, or

approximately one third of the recovery they would receive if treated as other claimants.  *See*

Exh. A, Column B (shaded pink).  Some, however, would still receive nothing at all.

This type of result is simply not sufficient to preserve an adequate incentive to pursue

third party recoveries.  Litigation is stressful enough as it is, and the rewards questionable

enough.  Cases almost invariably settle for substantially less than 100% of damages.  Then

typical litigants can expect to pay one third (or more) of their aggregate recovery to their

lawyers, and have even more deducted as expenses.  If, after all of that, two-thirds of their *net*

recovery is essentially confiscated in a collateral proceeding, what exactly is the point of taking

the initiative to be a litigant?

### 3.  *McGinn Smith*

Finally, we briefly discuss *McGinn Smith*, *supra*, a 2016 decision from the Northern

District of New York.  In *McGinn Smith*, the court did ultimately approve a 100% Collateral

Recovery Offset.  As in *Parish*, the court appears to express no concern about the impact of such

an offset on the incentive to pursue third party claims.  But, notably, in *McGinn Smith*, the Court

employed the "net loss" distribution calculation method.  2016 WL 6459795, at *2 ("The

Receiver calculated the amount of each investor's claim according to the net investment method"). *See also* Motion, at ¶ 36 (discussing the "net loss" or "net investment method"). As discussed above, if a substantial Collateral Recovery Offset is implemented, the "net loss" method will typically result in a much less draconian impact on the Collateral Recovery Cohort. If the *Connaughton* Plaintiffs were permitted to recover, as an alternative minimum recovery, what they would recover under the "net loss" or "net investment" calculation, as in *McGinn Smith*, they would collectively recover approximately $200,000. *See* Exh. A, Column C (shaded blue). This would be approximately 50% of what they would recover with *no* Collateral Recovery Offset using the "rising tide" method.

## III.    Conclusion

For the reasons stated above, the *Connaughton* Objectors respectfully pray that the Court deny the Receiver's motion to the extent it provides for a Collateral Recovery Offset, or, alternatively, to the extent that it provides for a Collateral Recovery Offset that is confiscatory and that eliminates meaningful incentives to pursue third party recoveries.

Dated: January 3, 2022

**CUNEO GILBERT & LADUCA, LLP**

/s/ *Monica Miller*
JONATHAN W. CUNEO
MONICA MILLER, Bar No. 19220
4725 Wisconsin Ave NW, Suite 200
Washington, D.C. 20002
Telephone: (202) 789-3960
E-mail: jonc@cuneolaw.com
            monica@cuneolaw.com

*Counsel for the Connaughton Objectors*

## CERTIFICATE OF SERVICE

I hereby certify that counsel for all parties were served through the Court's Electronic Case Filing System on January 3, 2022.

/s/ *Monica Miller*
Monica Miller

# EXHIBIT B

USCA4 Appeal: 22-2256    Doc: 32    Filed: 03/14/2023    Pg: 296 of 582

Case 3:00-cv-01290-KI    Document 1592    Filed 02/28/03    Page 1 of 21
Case 1:18-cv-02844-RDB    Document 559-2    Filed 01/03/22    Page 2 of 22

**David L. Osias** (California State Bar No. 091287)
E-mail: dosias@allenmatkins.com
**Jeffrey R. Patterson** (California State Bar No. 126148)
E-mail: jpatterson@allenmatkins.com
**Loraine L. Pedowitz** (California State Bar No. 120614)
E-mail: lpedowitz@allenmatkins.com
ALLEN MATKINS LECK GAMBLE & MALLORY LLP
501 West Broadway, Ninth Floor
San Diego, California 92101-3577
Telephone: (619) 233-1155
Facsimile: (619) 233-1158

**Paul B. George** (Oregon State Bar No. 99009)
E-mail: georp@foster.com
**Carter M. Mann** (Oregon State Bar No. 96089)
E-mail: mannc@foster.com
FOSTER PEPPER & SHEFELMAN LLP
101 S.W. Main Street, 15th Floor
Portland, Oregon 97204-3223
Telephone: (503) 221-0607
Facsimile: (503) 221-1510

Attorneys for Receiver Thomas F. Lennon

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>               Plaintiff,<br><br>    vs.<br><br>CAPITAL CONSULTANTS, LLC, f/k/a CAPITAL CONSULTANTS, INC., JEFFREY L. GRAYSON and BARCLAY GRAYSON,<br><br>            Defendants. | Case No. CV 00-1290-KI<br><br>**ORDER IMPLEMENTING APPROVED SECOND AMENDED DISTRIBUTION PLAN**<br><br>Judge: Hon. Garr M. King |

On November 22, 2002, at 9:00 a.m., in Courtroom 9A, the Court heard the Motion of

Thomas F. Lennon, Receiver ("Receiver") for an Order Approving the Receiver's Proposed

Distribution Plan. David L. Osias of Allen Matkins Leck Gamble & Mallory LLP appeared on

behalf of the Receiver. Other appearances were as noted on the record. On December 5, 2002,

ORDER IMPLEMENTING APPROVED SECOND
AMENDED DISTRIBUTION PLAN
570400.01/SD

**ORIGINAL**

Page 1

USCA4 Appeal: 22-2256    Doc: 32    Filed: 03/14/2023    Pg: 297 of 582

Case 3:00-cv-01290-KI    Document 1592    Filed 02/28/03    Page 2 of 21
Case 1:18-cv-02844-RDB    Document 559-2    Filed 01/03/22    Page 3 of 22

the Court issued its Opinion and Order granting the Receiver's motion and instructing the

Receiver to prepare an Order implementing the Plan in accordance with the Opinion and Order.

On December 23, 2002, after a lengthy meet and confer process, the Receiver submitted his

proposed Order as instructed.  Thereafter, certain parties filed various objections to the form of

the order and/or motions for reconsideration/clarification of the Court's Opinion and Order.

After another lengthy meet and confer process that did not resolve the remaining disputes, on

February 28, 2003, at 11:00 a.m., the Court heard the following motions and objections

(collectively referred to herein as the "Objections"):

      1.  American Funeral Plaintiffs' Objections to Receiver's Proposed Tracing Exception

Procedure and Form of Order Re Proposed Distribution Plan;

      2.  Motion for Reconsideration by the Oregon Laborers-Employers Defined Benefit

Pension Plan, the Oregon Laborers-Employers Health and Welfare Plan, and the Oregon

Laborers-Employers Defined Contribution Trust Fund or, in the Alternative, Objections to the

Receiver's Proposed Order Implementing the Distribution Plan; and

      3.  Motion for Reconsideration and Clarification of the Opinion and Order Granting the

Receiver's Motion to Approve Receiver's Distribution Plan as Modified or, in the Alternative,

Objections to the Receiver's Proposed Order Granting Receiver's Motion to Approve Distribution

Plan, filed by certain members of the former plaintiffs' consortium in the related litigation.

      At the February 28, 2003 hearing, David L. Osias of Allen Matkins Leck Gamble &

Mallory LLP appeared on behalf of the Receiver.  Other appearances were as noted on the

record.  After consideration of the above-referenced Objections, the Receiver's responses thereto,

and other responses and replies filed by the various parties, the Court finds and orders as follows:

      The Court finds that the Receiver's Motion was duly noticed;

      The Court finds that the actions proposed to be taken by the Receiver in connection with

the proposed Distribution Plan as amended are reasonable and within the Receiver's sound

business discretion, and in the best interests of the CCL receivership estate;

ORDER IMPLEMENTING APPROVED SECOND                                            Page 2
AMENDED DISTRIBUTION PLAN
570400.01/SD

JA292

USCA4 Appeal: 22-2256   Doc: 32   Filed: 03/14/2023   Pg: 298 of 582

Case 3:00-cv-01290-KI   Document 1592   Filed 02/28/03   Page 3 of 21
Case 1:18-cv-02844-RDB   Document 559-2   Filed 01/03/22   Page 4 of 22

The Court finds that, but for the further modifications to the Distribution Plan proposed by the Receiver in response to the Objections and as described in below and/or in the Plan, the Objections are overruled.

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1.    Pursuant to and for the reasons set forth in the Court's Opinion and Order, filed December 5, 2002, and the Court's comments made on the record at the February 28, 2003 hearing, the Court approves the Receiver's Second Amended Distribution Plan ("Plan"), a copy of which is attached hereto as Exhibit "A."

2.    The Receiver shall provide notice of entry of this Order to all creditors of the Capital Consultants estate substantially in the form attached hereto as Exhibit "B" (the "Notice").

**Tracing Exception**

3.    The Notice shall provide that within 30 days of service of the Notice, any investor creditor which asserts that it qualifies for the tracing exception to the Plan's pro rata distribution scheme, and is willing to forego any share of the settlement proceeds from the Related Litigation, must make such election by giving written notice of such election, directly or through its counsel, to the Receiver.

4.    Within 20 days after making such election, the creditor, directly or through its counsel, shall file with the Court and serve on the Receiver's counsel all written evidence and any affidavits or sworn declarations on which the creditor intends to rely to prove the following:

(a) that the client instructed CCL to make specific investments;

(b) that CCL complied with those instructions; and

(c) that CCL did not have or exercise any discretion in moving that creditor's money between investments.

In its submission, the creditor shall also include its contention as to the traced value of its investments and any evidence in support of that contention.

5.    Within 20 days of receiving such evidence, the Receiver must file any written evidence and affidavits or sworn declarations in opposition.

ORDER IMPLEMENTING APPROVED SECOND
AMENDED DISTRIBUTION PLAN                                                    Page 3
570400.01/SD

JA293

USCA4 Appeal: 22-2256    Doc: 32       Filed: 03/14/2023    Pg: 299 of 582

Case 3:00-cv-01290-KI   Document 1592   Filed 02/28/03   Page 4 of 21
Case 1:18-cv-02844-RDB   Document 559-2   Filed 01/03/22   Page 5 of 22

6.      This Court will review the submitted evidence, and in accordance with the Summary Procedures Order previously entered in the case, the Court may rule on the tracing exception claim without further hearing or, if necessary, schedule a telephonic status conference to consider whether further evidence or oral argument is necessary and identify other procedures for a prompt, economic and fair resolution of the dispute.

**Claim Amounts**

7.      In conjunction with the Notice, the Receiver shall provide to each investor creditor a statement and back-up documentation supporting the Receiver's calculation of that creditor's claim in amount and as a relative percentage in the receivership estate, based on the approved "money-in/money-out" approach.

**Post-Receivership Management Fees**

8.      In conjunction with the Notice, the Receiver shall also provide to each investor creditor a statement of the Receiver's calculation of the amount that the creditor paid in post-receivership management fees, which amount unless disputed, shall be used to adjust the payment of the dividend to that creditor, pursuant to section IV.H. of the Plan.

**Dispute Resolution**

9.      If any investor creditor disputes the Receiver's calculation of that creditor's money-in/money-out claim amount and/or the reported amount of post-receivership management fees, then within 30 days of the Notice, the creditor shall submit to the Receiver's counsel a written statement of the creditor's calculations of its claim amount and/or the amount if paid in post-receivership management fees and any evidence in support thereof. The Receiver and the creditor shall then meet and confer in an attempt to resolve any dispute regarding these calculations. If the parties cannot resolve the dispute between themselves, they may submit the dispute to the Court for resolution. The Court will resolve the dispute in accordance with the Summary Procedures Order previously entered in this case, with or without further briefing, argument or hearing, at the Court's discretion.

ORDER IMPLEMENTING APPROVED SECOND
AMENDED DISTRIBUTION PLAN                                            Page 4
570400.01/SD

USCA4 Appeal: 22-2256    Doc: 32    Filed: 03/14/2023    Pg: 300 of 582

Case 3:00-cv-01290-KI    Document 1592    Filed 02/28/03    Page 5 of 21
Case 1:18-cv-02844-RDB    Document 559-2    Filed 01/03/22    Page 6 of 22

**Pending Real Estate Issues**

10.     In its Opinion and Order, filed December 5, 2003, the Court identified that on the record presently before it, the Court could not yet determine whether three specific real estate assets, i.e., One Technology Center, Two Technology Center and Crimson Corners Shopping Center, should be considered part of the receivership estate for purposes of the Plan. The Court has requested further submissions on this issue from the Receiver and certain investor creditors. The Court's decision on these issues will be the subject of a separate Order.

**Plan Implementation**

11.     The Receiver is ordered to proceed to finalize claim amounts, determine dividend amounts and distribute the estate's assets to creditors of the estate as expeditiously as reasonably practicable, pursuant to the terms of the Plan and this Order. Based on the delay associated with resolving the Objections, the Receiver now estimates that he will be in a position to distribute the first partial dividends to creditors by the end of May 2003.. The Receiver is directed to advise the Court if that time estimate will be materially delayed.

**IT IS SO ORDERED.**

Dated: _2/28/03_                         _____
                                         GARR M. KING, JUDGE
                                         UNITED STATES DISTRICT COURT

Submitted by:

ALLEN MATKINS LECK GAMBLE
 & MALLORY LLP

By: _____
    JEFFREY R. PATTERSON
    CA BAR NO. 126148
    Attorneys for Thomas F. Lennon,
    Receiver for Capital Consultants, LLC

ORDER IMPLEMENTING APPROVED SECOND
AMENDED DISTRIBUTION PLAN                                     Page 5
570400.01/SD

JA295

USCA4 Appeal: 22-2256    Doc: 32    Filed: 03/14/2023    Pg: 301 of 582

Case 3:00-cv-01290-KI    Document 1592    Filed 02/28/03    Page 6 of 21
Case 1:18-cv-02844-RDB    Document 559-2    Filed 01/03/22    Page 7 of 22

**David L. Osias** (California State Bar No. 091287)
E-mail: dosias@allenmatkins.com
**Jeffrey R. Patterson** (California State Bar No. 126148)
E-mail: jpatterson@allenmatkins.com
**Loraine L. Pedowitz** (California State Bar No. 120614)
E-mail: lpedowitz@allenmatkins.com
ALLEN MATKINS LECK GAMBLE & MALLORY LLP
501 West Broadway, Ninth Floor
San Diego, California 92101-3577
Telephone: (619) 233-1155
Facsimile: (619) 233-1158

**Paul B. George** (Oregon State Bar No. 99009)
E-mail: georp@foster.com
**Carter M. Mann** (Oregon State Bar No. 96089)
E-mail: mannc@foster.com
FOSTER PEPPER & SHEFELMAN LLP
101 S.W. Main Street, 15th Floor
Portland, Oregon 97204-3223
Telephone: (503) 221-0607
Facsimile: (503) 221-1510

Attorneys for Receiver Thomas F. Lennon

## UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

| | |
|---|---|
| ELAINE L. CHAO, Secretary of the United States Department of Labor, | Case No. CV 00-1291-KI |
| Plaintiff, | **SECOND AMENDED DISTRIBUTION PLAN** |
| vs. | |
| CAPITAL CONSULTANTS, LLC, f/k/a CAPITAL CONSULTANTS, INC., JEFFREY L. GRAYSON and BARCLAY GRAYSON, | Date:  February 28, 2002<br>Time:  11:00 a.m.<br>Dept:  9A<br>Judge:  Hon. Garr M. King |
| Defendants. | |

JA296

USCA4 Appeal: 22-2256    Doc: 32    Filed: 03/14/2023    Pg: 302 of 582

Case 3:00-cv-01290-KI    Document 1592    Filed 02/28/03    Page 7 of 21
Case 1:18-cv-02844-RDB    Document 559-2    Filed 01/03/22    Page 8 of 22

## I.    INTRODUCTION

This Second Amended Distribution Plan ("Plan"),[1] will determine how claims against the Receivership Estate are calculated, and how those claims are treated.  Further information about the background of these Receivership Cases is contained in the Memorandum of Points and Authorities in Support of the Motion to Approve Receiver's Distribution Plan, the Declarations of Thomas F. Lennon, Gayle M. Case, and Christopher R. Barclay filed in support of the Distribution Plan and the Appendix of Exhibits.[2]

## II.    DEFINITIONS

Unless the context otherwise requires, the following terms have the following meanings when used in their capitalized forms in the Plan.  Such meanings are equally applicable to both the singular and plural forms of the terms.

**Administrative Claims**.  Claims arising from post Receivership Date activities such as services rendered by the Receiver and for the Receiver by attorneys and accountants, goods and services provided by vendors such as equipment lessors post Receivership Date, and litigation claimants who prevail on any claim that they were damaged by the post Receivership Date conduct of the Receiver.

**Allowed Claim**.  Any Claim for which (a) a proof of claim or request for payment was timely and properly filed; (b) a proof of claim or request for payment was deemed timely and properly filed by the Court; or (c) such Claim has been allowed or deemed allowed pursuant to the entry of a Final Order of the Court; and in any such case, as to which no objection to the allowance thereof has been brought by the Receiver, or as to which any objection has been determined by a Final Order of the Court.  Unless otherwise specified herein or by order of the

---

[1]    Capitalized terms are sometimes used before they are defined.  Consult the Definitions section.

[2]    In the event of any conflict or inconsistency between the terms of the Distribution Plan as described in any of the supporting documents and the terms set out in the Distribution Plan, the Distribution Plan controls.

SECOND AMENDED DISTRIBUTION PLAN                                    Page 2
573441.01/SD

USCA4 Appeal: 22-2256    Doc: 32    Filed: 03/14/2023    Pg: 303 of 582

Case 3:00-cv-01290-KI    Document 1592    Filed 02/28/03    Page 8 of 21
Case 1:18-cv-02844-RDB    Document 559-2    Filed 01/03/22    Page 9 of 22

Court, "Allowed Claim," shall not, for purposes of computation of Distributions under the Plan, include any of those items disallowed in the Order Granting Omnibus Objection to Claims.

**Borrower Excess Claims.**  Claims asserted by CCL borrowers or guarantors against CCL in excess of the outstanding balance of the loans as of the Portfolio Sale cut off date, September 15, 2001, as more particularly described in the Overbid Contract attached to the Order Approving Receiver's Sale of Certain Private Investment Assets at Auction and Payment of Break-up Fee, entered January 24, 2002.

**BOW Allowed Secured Claim.**  The secured claim held by Bank of the West, as defined by the Settlement Agreement with Bank of the West approved by the Court on September 28, 2001, in the amount of $1,560,227.46, of which approximately $445,000 remains unpaid as of August 1, 2002.

**CCL.**  Capital Consultants, LLC, fka Capital Consultants, Inc.

**CCL Business Assets.**  Those assets owned by CCL as of the Receivership Date, including its interest in the Capital Center Limited Partnership, certain notes receivable, and miscellaneous furniture and equipment.

**Claim.**  A claim against CCL including, (a) any right to payment from CCL whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from CCL whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**Client Claim.**  A claim held by a CCL client whose funds were invested in the Private Investment Portfolio, as calculated on a Money-in/Money-out basis and which has become an Allowed Claim.

**Court.**  United States District Court for the District of Oregon.

**Distribution Plan or Plan.**  This Second Amended Distribution Plan.

JA298

USCA4 Appeal: 22-2256     Doc: 32     Filed: 03/14/2023     Pg: 304 of 582

Case 3:00-cv-01290-KI   Document 1592   Filed 02/28/03   Page 9 of 21
Case 1:18-cv-02844-RDB   Document 559-2   Filed 01/03/22   Page 10 of 22

**Estate** or **Receivership Estate**.  All assets including all claims, causes of action, or rights of recovery held by the Receiver, CCL, or any trust, partnership, joint venture, or other entity controlled by CCL or the Receiver.

**Final Order**.  An order, judgment or decree (or any revision, modification, and/or amendment thereof) of the Court which has not been reversed, set aside or stayed and as to which the time to appeal, to petition for certiorari or for rehearing, or to move for relief, to amend or alter, or to make additional findings of fact has expired and as to which no appeal, petition for certiorari or rehearing, or other proceedings for relief, to amend or alter, or make additional findings of fact shall then be pending.

**Grayson Assets**.  Those assets recovered and to be recovered from Jeffrey Grayson and Barclay Grayson, including $500,000 in cash and assets recovered from Barclay Grayson pursuant to a settlement agreement approved by the Court on March 28, 2002, and $720,000 recovered to date from Jeffrey Grayson from proceeds from his Carmel house, his interest in the proceeds of the sale of Capital Center and other assets.

**Money-in/Money-out**.  As defined in Article III, E.

**Non-client Claim Fund**.  A $2.5 million fund out of which all claims other than Administrative Claims and Client Claims will be paid.  The Non-client Claim Fund will be funded, after payment of Administrative Claims, from the same sources used to pay Administrative Claims, excluding Settlement Proceeds.

**Post Receivership Management Fees**.  Amounts billed by the Receiver to Clients for the management of the Private Investment Portfolio after the Receivership Date.

**Pre Receivership Management Fees**.  Amounts billed by CCL to Clients for the management of their investments before the Receivership Date.

**Private Investment Liquidation Proceeds**.  The proceeds obtained by the Receiver from the disposition of the assets comprising the Private Investment Portfolio.

SECOND AMENDED DISTRIBUTION PLAN                                      Page 4
573441.01/SD

JA299

USCA4 Appeal: 22-2256    Doc: 32    Filed: 03/14/2023    Pg: 305 of 582

Case 3:00-cv-01290-KI    Document 1592    Filed 02/28/03    Page 10 of 21
Case 1:18-cv-02844-RDB    Document 559-2    Filed 01/03/22    Page 11 of 22

**Private Investment Portfolio.** All CCL's non-public investment vehicles, including unsecured loans and loans secured by real estate and non-real estate collateral, real estate ownership, and unregistered stock or membership interests as of the Receivership Date.

**Reallocated Post Receivership Management Fee.** The Post Receivership Management Fees divided by the value of the Private Investment Liquidation Proceeds, multiplied by the distribution to be made on each Client Claim.

**Receiver.** Thomas F. Lennon, or any successor appointed by the Court.

**Receivership Action or Receivership Cases.** That certain litigation, pending in the Court, known as *Securities and Exchange Commission v. Capital Consultants, LLC, f/k/a Capital Consultants, Inc., Jeffrey L. Grayson, and Barclay Grayson*, Case No. CV 00 –1290-KI, and the companion case known as *Elaine Chao, Secretary of the Department of Labor v .Capital Consultants, LLC, f/k/a Capital Consultants, Inc., Jeffrey L. Grayson, and Barclay Grayson*, Case No. CV 00 –1290-KI the Honorable Garr M. King, District Judge, presiding.

**Receivership Date.** September 21, 2000, the date on which the Receiver was appointed.

**Receivership Recoveries.** Those amounts recovered by the Receiver from the pursuit of fraudulent transfer or preference claims, disallowed or assigned proofs of claim, or other amounts not resulting from the Related Litigation and Mediation or the Private Investment Liquidation Proceeds.

**Related Litigation and Mediation.** Those claims and lawsuits referred to mediation by order of the Court entered January 16, 2001, and those lawsuits initiated by the Receiver for recovery of damages from CCL's service providers.

**Residual Assets.** Any Receivership assets other than Settlement Proceeds and Private Investment Portfolio Proceeds that remain after the payment of Administrative Claims and operational expenses of the Receivership Estate.

**Settlement Proceeds.** Those amounts recovered by settlement or judgment enforcement from the defendants and potential defendants in the Related Litigation and Mediation after deduction of actual attorneys' fees and costs incurred by CCL clients solely in relation to the

SECOND AMENDED DISTRIBUTION PLAN                                    Page 5
573441.01/SD

JA300

USCA4 Appeal: 22-2256    Doc: 32    Filed: 03/14/2023    Pg: 306 of 582

Case 3:00-cv-01290-KI    Document 1592    Filed 02/28/03    Page 11 of 21
Case 1:18-cv-02844-RDB    Document 559-2    Filed 01/03/22    Page 12 of 22

creation of the Settlement Funds, and allowed by the Court pursuant to the same application procedure used for the Administrative Claims of the Receiver and his professionals.

**Third Party Recoveries.** Recoveries, other than Settlement Proceeds, obtained by or for the benefit of CCL Clients, from sources other than the Receivership Estate, including claims asserted against third parties, for damages incurred in connection with the Clients' investments with CCL.

**Trade Claims.** Claims asserted by vendors and service providers for goods and services rendered to CCL prior to the Receivership Date, including unsecured loans or other advances made to CCL.

## III.    TREATMENT OF CLAIMS

### A.    Administrative Claims

With the exception noted below, administrative claimants with Allowed Claims will be paid in full first from the following sources in order of priority: Grayson Assets, Receivership Recoveries, Post Receivership Management Fees, CCL Business Assets, Settlement Proceeds. Fees and Expenses incurred by the Receiver in connection with his participation in the Related Litigation and Mediation, subject to Court approval for reasonableness, will be paid first from the Settlement Proceeds.

### B.    BOW Allowed Secured Claim

Payments to BOW, including past and future payments totaling $1,560,227.46 will be paid from the Non-client Claim Fund.

### C.    Trade Claims

Trade Claims that are determined to be Allowed Claims, together with Borrower Excess Claims, if any, determined to be Allowed Claims, will be paid pro rata, after payment in full of the BOW Allowed Secured Claim, from the Non-client Claim Fund.

JA301

USCA4 Appeal: 22-2256    Doc: 32    Filed: 03/14/2023    Pg: 307 of 582

Case 3:00-cv-01290-KI    Document 1592    Filed 02/28/03    Page 12 of 21
Case 1:18-cv-02844-RDB    Document 559-2    Filed 01/03/22    Page 13 of 22

D.    **Borrower Excess Claims**

Borrower Excess Claims that are determined to be Allowed Claims, together with allowed Trade Claims, will be paid pro rata, after payment in full of the BOW Allowed Secured Claim, from the Non-client Claim Fund.

E.    **Client Claims**

With the exception noted below, Client Claims will be paid pro rata from the Private Investment Liquidation Proceeds, the Settlement Proceeds, and Residual Assets.  Distributions will be made on Allowed Client Claims on a Money-in/Money-out basis calculated as follows:

The total of the cost value of the client's Private Investment Portfolio investments as of January 1, 1996, if any, together with all funds and non-cash assets paid by the client to CCL for the funding of any asset in the Private Investment Portfolio or the payment of Pre Receivership Management Fees from January 1, 1996 though September 21, 2000 ("Money-in"), *less* all principal paydowns, interest payments, or other payments in funds, securities or other property credited to the client's account as a result of its investment in the Private Investment Portfolio from January 1, 1996 through September 21, 2000 ("Money-out").  In addition, to the extent the client obtains or has obtained any Third Party Recoveries, 50% of those amounts shall also be treated as Money-out and deducted from the total Money-in.

As a condition to the receipt of an initial distribution and as a condition to any subsequent distributions, and in order to permit the Receiver to monitor Third Party Recoveries and adjust the amount of a Client's Claim, within 30 days of approval of a Distribution Plan by the Court, and each 6-month period thereafter until the date the Receivership Case is otherwise ready to close, each CCL investor creditor must submit to the Receiver, with a copy to the Department of Labor; a sworn statement setting forth:

JA302

USCA4 Appeal: 22-2256   Doc: 32   Filed: 03/14/2023   Pg: 308 of 582

Case 3:00-cv-01290-KI   Document 1592   Filed 02/28/03   Page 13 of 21
Case 1:18-cv-02844-RDB   Document 559-2   Filed 01/03/22   Page 14 of 22

a)   Amount, identity and coverage information for applicable insurance;

b)   Name, address and services provided by third party advisors to the client during the five years prior to the Receivership Date;

c)   Steps taken to investigate, demand and recover losses from insurers or third party advisors.

Tracing Exception:  If a CCL client can present evidence that (1) it instructed CCL to invest in specific investments; (2) CCL complied with those instructions; and (3) CCL did not have and did not exercise any discretion in moving that client's money between investments, that client will have an option to receive a distribution from the proceeds of only those specific investments, based on a traced/asset value, using its Receivership Date principal balance in those investments as it Claim amount.  If the client chooses to receive a distribution based on the traced/asset value, the client will not receive any distribution from the Settlement Proceeds.  The client must make the election within 30 days after Notice by the Receiver of entry of the Court's Order Implementing this Plan.

## IV.   DISTRIBUTIONS

### F.   Interim Distributions

The Receiver shall make first interim distributions under the Plan as soon as is practicable, but in all events, no later than 60 days after a Final Order is entered by the Court approving the Distribution Plan.  Subsequent interim distributions shall be made, subject to the discretion of the Receiver, when material amounts are available to distribute.

### G.   Reserves

In making interim distributions, the Receiver shall reserve for the following contingencies:

1.   Disputed claim amounts.  In making interim distributions, the Receiver shall set appropriate reserves to allow a pro rata distribution to be made on the full

JA303

USCA4 Appeal: 22-2256     Doc: 32     Filed: 03/14/2023     Pg: 309 of 582

Case 3:00-cv-01290-KI   Document 1592   Filed 02/28/03   Page 14 of 21
Case 1:18-cv-02844-RDB   Document 559-2   Filed 01/03/22   Page 15 of 22

amount of a disputed claim until the allowed amount of such claim is finally
determined.

2.      Third Party Recoveries:  The Receiver shall establish a reserve, in his *[handwritten: and subject to]*

reasonable discretion in the amount of ~~at least~~ 15% of the estimated dividend of *[handwritten: or other amount, subject to judicial review]*

each Client Claim until the final distributions are made in order to make

adjustments to the final distribution in the event the client obtains any Third Party

Recoveries.  As each investor creditor demonstrates that it has exhausted its

potential claims for Third-Party  Recoveries, the Receiver will release that

creditor's percentage interest in the holdback account.  At the close of the case, the

Receiver will disburse the remainder of the holdback account according to the

unpaid dividends as finally calculated on that date.  There will be no limitation on

the amount a client may recover against third parties.  However, if, prior to the

close of the case, a Client obtains third-party recoveries in such an amount that

the dividends it has already received from the receivership estate exceed those it

would be entitled to based on its adjusted claim amount (after deducting 50% of

net third-party recoveries), then the Client will be required to return the amount of

the overpayment to the Receiver for redistribution to other Clients.

3.      Administrative Claims and Operating Costs:  The Receiver shall also estimate

the administrative and operational expenses associated with fully administering

the Receivership Estate and set appropriate reserves to cover those expenses.

**H.**      <u>**Adjustments to Distributions**</u>

For each Allowed Client Claim, the Receiver shall calculate the Reallocated Post

Receivership Management Fee for that Client, subtract from that amount the actual Post

Receivership Management Fees paid by the Client, and deduct any amounts owed or credit any

amounts overpaid, in making the distribution.

In addition, the Receiver shall adjust the distributions to those Clients that received

Interim Distributions of Real Estate as provided for in the Order Granting Receiver's Motion

SECOND AMENDED DISTRIBUTION PLAN                                          Page 9
573441.01/SD

JA304

USCA4 Appeal: 22-2256    Doc: 32    Filed: 03/14/2023    Pg: 310 of 582

Case 3:00-cv-01290-KI    Document 1592    Filed 02/28/03    Page 15 of 21
Case 1:18-cv-02844-RDB    Document 559-2    Filed 01/03/22    Page 16 of 22

Under Summary Procedures Order to Approve Process for Interim Distribution of Certain

Receivership Real Estate Assets entered October 12, 2001.

 **I.**   **Final Distributions**

 At such time as all Receivership Assets have been fully administered, all Claims have

been resolved by Final Order of the Court, and after approval of a final report and accounting,

the Receiver shall make a final distribution.

 **J.**   **Distribution of Unclaimed Property**

 Any distribution of cash under the Plan which is unclaimed after six (6) months following

the date of distribution shall be forfeited, and such distribution together with all interest earned

thereon and shall become part of the Residual Assets.

## V.   RETENTION OF JURISDICTION

 The Court shall have and retain exclusive jurisdiction of matters arising out of, and

related to the Receivership Action and the Distribution Plan, and the Related Litigation and

Mediation for, among other things, the following purposes:

 1. To consider any modification of this Plan.

 2. To hear and determine pursuant to the Summary Procedure Order all

objections or other disputes with respect to Claims.

 3. To protect the property of the Receivership Estate from adverse Claims or

interference inconsistent with the Plan.

 4. To consider any modifications of the Plan, to cure any defect or omission, or

reconcile any inconsistency in the Plan or any order of the Court.

 5. To issue such orders in aid of execution of the Plan as may be necessary and

appropriate.

 6. To hear and determine all applications for compensation and reimbursement

of expenses of professionals.

JA305

USCA4 Appeal: 22-2256    Doc: 32    Filed: 03/14/2023    Pg: 311 of 582

Case 3:00-cv-01290-KI   Document 1592   Filed 02/28/03   Page 16 of 21
Case 1:18-cv-02844-RDB   Document 559-2   Filed 01/03/22   Page 17 of 22

7.   To hear and determine all litigation, causes of action and all controversies, suits and disputes that may arise in connection with the interpretation, implementation or enforcement of this Plan.

8.   To recover all assets of the Receivership Estate, wherever located.

9.   To enter a Final Decree closing the Receivership Action and discharging the Receiver.

## VI.    MISCELLANEOUS PROVISIONS

The Plan supersedes all prior discussions, understandings, agreements, and documents pertaining or relating to any subject matter of the Plan.  The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner shall affect the provisions or interpretation(s) of the Plan.  All notices, requests and demands to or upon the Receiver to be effective shall be in writing (including, without limitation, by telex or facsimile transmission) addressed as follows:

Thomas F. Lennon
United States District Court Receiver
Capital Consultants, LLC
2300 SW First Avenue, Suite 100
Portland, OR 97201

with a copy to:
David L. Osias, Esq./Jeffrey R. Patterson, Esq.
Allen Matkins Leck Gamble & Mallory LLP
501 West Broadway, Ninth Floor
San Diego, California 92101-3577

Dated: February 14, 2003

Jeffrey R. Patterson
California State Bar No. 126148
(619) 233-1155
Attorney for Receiver Thomas F. Lennon

SECOND AMENDED DISTRIBUTION PLAN
573441.01/SD

Page 11

USCA4 Appeal: 22-2256    Doc: 32    Filed: 03/14/2023    Pg: 312 of 582

Case 3:00-cv-01290-KI    Document 1592    Filed 02/28/03    Page 17 of 21
Case 1:18-cv-02844-RDB    Document 559-2    Filed 01/03/22    Page 18 of 22

## NOTICE OF ORDER APPROVING DISTRIBUTION PLAN AND RELATED PROCEDURES

On December 5, 2002, the Court issued its Opinion and Order on the Receiver's proposed Distribution Plan (the "Plan"). The opinion directed the Receiver's counsel to prepare an order implementing the Plan. On _____, 2003, the Court entered that order, entitled, Order Implementing Approved Second Amended Distribution Plan (the "Plan Order"). Both the Opinion and the Plan Order are available for review on CCL's website at http://www.capitalconsultantsllc.com.

*Pursuant to the Plan Order, you are receiving this notice which contains important deadlines regarding the claim allowance and distribution process under the Plan. Please review this notice carefully and note the deadlines for taking certain actions.*

### CLAIM ALLOWANCE INFORMATION

### A. NON-INVESTOR CREDITORS

Pursuant to the Receiver's Objection to Specific Claims the claim amounts of non-investor creditors of CCL were determined. Pursuant to the Opinion and Plan Order non-investor creditors will paid pro rata from the Non-client Claim Fund of $2.5 million, after payment in full of the secured Bank of the West claim of $1,631,000. At the time of this notice all non-administrative, non-investor claims have been resolved and total of approximately $2.5 million. The Receiver anticipates making distributions to non-investor creditors by the end of May 2003. *The balance of the information in this notice relates to Investor Creditors only.*

### B. INVESTOR CREDITORS

Pursuant to the Opinion and Plan Order, the Court adopted the Receiver's proposal for calculating the claims of CCL investors on a money-in/money-out basis. Attached to this notice

570486.02/SD
L5260-026/2-27-03/jrp/ap

JA307

USCA4 Appeal: 22-2256    Doc: 32    Filed: 03/14/2023    Pg: 313 of 582

Case 3:00-cv-01290-KI    Document 1592    Filed 02/28/03    Page 18 of 21
Case 1:18-cv-02844-RDB    Document 559-2    Filed 01/03/22    Page 19 of 22

is a summary of the money-in/money-out calculation for your account in amount and as a relative percentage in the receivership estate, and cash ledger reports maintained by CCL and used to arrive at the calculation. The final allowed claim amount will be further adjusted to deduct 50% of any third party recoveries as discussed below. The summary also reflects the amount of post-receivership management fees you have paid according to CCL's records. The post receivership management fee amount is provided as that figure will be used to adjust the ultimate dividend amount as described in section IV.H. of the Plan.

If you agree with the money-in/money-out calculation and the amount of post receivership management fees paid, you do not need to respond to this notice *in that regard.* If, however, you dispute either the claim calculation or the management fees amount, you must submit to the Receiver's counsel, at the address indicated below a statement of your calculation of the claim amount or post receivership management fees and any evidence in support thereof. *STATEMENTS DISPUTING THE CLAIM CALCULATION OR POST RECEIVERSHIP MANAGEMENT FEES MUST BE SUBMITTED TO RECEIVERS' COUNSEL BY APRIL____, 2003.* The Receiver's counsel will then contact you or your counsel, as appropriate, in an effort to resolve any dispute over claim calculation or management fees. If the parties cannot resolve the dispute, it will be submitted to the Court for resolution. The Court will resolve the dispute in a summary procedure, with or without further hearing, at the Court's discretion.

### THIRD PARTY RECOVERY INFORMATION

Pursuant to the Opinion and Plan Order, fifty percent of any recoveries, net of legal expenses, obtained by CCL clients from third parties for damages incurred in connection with the Clients' investments with CCL will be deducted from the otherwise allowed amount of their

JA308

USCA4 Appeal: 22-2256    Doc: 32    Filed: 03/14/2023    Pg: 314 of 582

Case 3:00-cv-01290-KI    Document 1592    Filed 02/28/03    Page 19 of 21
Case 1:18-cv-02844-RDB    Document 559-2    Filed 01/03/22    Page 20 of 22

claim. These third party recoveries do not include amounts recovered in settlement of the Related Litigation, pursuant to the settlements approved by the Court on June 22, 2002 (the "Settlement Proceeds"). In order for the Receiver to monitor third party recoveries, it is a condition to the receipt of an initial distribution and a condition to any subsequent distributions, that *each CCL investor creditor must submit to the Receiver, BY APRIL ___, 2003,*[1] *a sworn statement setting forth the following*:

> *(a) the amount, identity and coverage information for any applicable insurance;*

> *(b) the name, address and services provided by any third party advisors to the client during the five years prior to the Receivership Date;*

> *(c) steps taken to investigate, demand and recover losses from insurers or third party advisors;*

> *(d) Any agreements for and/or the gross amount of any actual third party recoveries received or to be received; and*

> *(e) The amount of any legal expenses incurred in obtaining any third party recoveries.*

> *In addition, each client must submit an updated statement containing the same information each six month period thereafter, or October ___, 2003, April ___, 2004, etc., until such time as the Receivership case is otherwise ready to close.*

## APPLICATIONS FOR ATTORNEYS' FEES AND COSTS INCURRED IN RELATION TO THE CREATION OF SETTLEMENT FUNDS

Any CCL client that incurred attorneys' fees or costs that relate to the creation of the Settlement Funds may apply to the Court to have those attorneys' fees paid from the Settlement

---

[1]    If you are a CCL client governed by the provisions of ERISA, you must also submit a copy of your statement to the Department of Labor in care of Stacey Elias, U.S. Department of Labor, Plan Benefits Security Division, P.O. Box 1914, Washington, D.C. 20013-1914.

JA309

USCA4 Appeal: 22-2256    Doc: 32    Filed: 03/14/2023    Pg: 315 of 582

Case 3:00-cv-01290-KI    Document 1592    Filed 02/28/03    Page 20 of 21
Case 1:18-cv-02844-RDB    Document 559-2    Filed 01/03/22    Page 21 of 22

Funds.  In order to apply to the Court, those clients must submit to the Receiver **BY APRIL ___,**

**2003**, a notice of their intent to apply, including the amounts sought to be reimbursed and

detailed backup supporting same.

### TRACING EXCEPTION

The Plan provides a limited tracing exception to pro rata distribution for those clients

who so elect and qualify as described below.  If you elect to assert the tracing exception and

successfully demonstrate that you qualify for the exception, you will forego any distributions

from the Settlement Proceeds and, instead, will receive only the traced value of your investment

as determined by the Court.  *IF YOU ELECT TO ASSERT THE TRACING EXCEPTION,*

*YOU  MUST PROVIDE WRITTEN NOTICE OF YOUR ELECTION TO COUNSEL FOR*

*THE RECEIVER AT THE ADDRESS INDICATED BELOW BY APRIL ___, 2003.  WITHIN*

*TWENTY (20) DAYS AFTER MAKING THAT ELECTION, YOU MUST ALSO FILE WITH*

*THE COURT AND SERVE ON THE RECEIVER'S COUNSEL ALL WRITTEN EVIDENCE*

*AND ANY AFFIDAVITS OR SWORN DECLARATIONS UNDER PENALTY OF PERJURY*

*ON WHICH YOU INTEND TO RELY TO PROVE THE FOLLOWING:*

*(a) that you instructed CCL to make specific investments;*

*(b) that CCL complied with those instructions; and*

*(c) that CCL did not have or exercise any discretion in moving your money between*

*investments.*

*In addition, you must include in you submission your contention as to the traced value*

*of your investments and any evidence on which you rely to support your contention.*  After

reviewing the evidence, the court may rule on the tracing exception claim without further hearing

JA310

USCA4 Appeal: 22-2256    Doc: 32    Filed: 03/14/2023    Pg: 316 of 582

Case 3:00-cv-01290-KI   Document 1592   Filed 02/28/03   Page 21 of 21
Case 1:18-cv-02844-RDB   Document 559-2   Filed 01/03/22   Page 22 of 22

or, if necessary, schedule a telephonic status conference to consider whether further evidence or oral argument are necessary.

All submissions required under this notice to be sent to Receiver's counsel should be mailed to:

> Allen Matkins Leck Gamble and Mallory, LLP
> 501 West Broadway, Suite 900
> San Diego, CA 92101
> Attn: David L. Osias/Jeffrey R. Patterson

Dated: _____          _____
                                                David L. Osias (CA Bar No. 91287)
                                                Jeffrey R. Patterson (CA Bar No. 126148
                                                Allen Matkins Leck Gamble & Mallory LLP
                                                Attorneys for Thomas F. Lennon,
                                                Receiver for Capital Consultants, LLC

JA311

# CORRECTED EXHIBIT A

Case 1:18-cv-02844-RDB   Document 563-1   Filed 01/05/22   Page 2 of 2

| | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| | Receiver's Proposed Distribution | Parish (set off treated as no money in) | (Alternative) Net Loss Distribution (McGinn Smith) | Setoff treated as no money in | Credit Bancorp | Capital Consultants | No Offset |
| Setoff amount | 100% | 100% | 100% | 50% | None | 50% | None |
| Distribution calc. method | Rising Tide | Rising Tide | Net Loss | Rising Tide | Net Loss | Net Loss | Rising Tide |
| Objector 1 | $0 | $ 0.00 | $ 60,894.62 | $ 37,063.03 | $ 108,238.84 | $ 84,493.27 | $ 78,351.59 |
| Objector 2 | $0 | $ 31,055.18 | $ 27,016.00 | $ 48,933.33 | $ 47,514.71 | $ 37,232.76 | $ 66,811.48 |
| Objector 3 | $ 1,286.99 | $ 32,500.26 | $ 21,970.07 | $ 47,411.26 | $ 39,068.07 | $ 30,492.56 | $ 62,322.26 |
| Objector 4 | $ 3,405.66 | $ 25,234.06 | $ 15,364.34 | $ 35,661.78 | $ 27,321.49 | $ 21,324.38 | $ 46,089.50 |
| Objector 5 | $ 925.71 | $ 11,528.91 | $ 7,463.27 | $ 16,594.20 | $ 13,271.49 | $ 10,358.37 | $ 21,659.50 |
| Objector 6 | $0 | $ 7,275.64 | $ 9,178.41 | $ 13,507.86 | $ 16,324.72 | $ 12,740.49 | $ 19,740.08 |
| Objector 7 | $ 182.45 | $ 5,371.83 | $ 3,652.65 | $ 7,850.88 | $ 6,495.29 | $ 5,069.56 | $ 10,329.92 |
| Objector 8 | $ 182.45 | $ 5,371.83 | $ 3,652.65 | $ 7,850.88 | $ 6,495.29 | $ 5,069.56 | $ 10,329.92 |
| Objector 9 | $ 72.98 | $ 2,148.74 | $ 1,461.06 | $ 3,140.35 | $ 2,598.12 | $ 2,027.83 | $ 4,131.97 |
| Connaughton Objectors Subtotal | $6,056.24 | $120,486.46 | $150,653.07 | $218,013.57 | $267,328.01 | $208,808.78 | $319,766.22 |
| Connaughton Plaintiffs Total | $6,056.24 | $137,756.57 | $202,638.64 | $267,839.84 | $352,879.91 | $275,581.90 | $402,244.85 |

JA313

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,           ) | |
| ) | |
| **Plaintiff,**     ) | |
| ) | **Case No.: 1:18-cv-02844-RDB** |
| **v.**     ) | |
| ) | |
| **KEVIN B. MERRILL, et al.,**     ) | |
| ) | |
| **Defendants.**     ) | |

## RECEIVER GREGORY S. MILLIGAN'S REPLY TO OBJECTIONS OF INVESTORS CCWB ASSET INVESTMENTS, LLC, EBC ASSET INVESTMENT, INC., AND M.C. DEAN, INC. TO THE RECEIVER'S MOTION FOR ORDER APPROVING DISTRIBUTION PLAN AND INTERIM DISTRIBUTION

Receiver Gregory S. Milligan (the "Receiver") respectfully files his Reply to Investors CCWB Asset Investments, LLC ("CCWB"), EBC Asset Investment, Inc. ("EBC"), and M.C. Dean, Inc.'s ("M.C. Dean") (collectively, the "Dean Investors") Objections to the Receiver's Motion for Order Approving Distribution Plan and Interim Distribution (the "Objection") (Dkt. 558). The Receiver requests that the Court deny the Dean Investors' Objection and find that the distribution plan laid out in the Receiver's Motion for Order Approving Distribution Plan and Interim Distribution (Dkt. 504) (the "Distribution Plan") appropriately calculates the pre-Receivership recovery of the Dean Investors pursuant to the rising tide methodology. In support thereof, the Receiver would respectfully show the Court as follows:

### I.    PRELIMINARY STATEMENT

In their Objection, the Dean Investors improperly request that the Court require the Receiver to recalculate the pre-Receivership recovery amounts of the Dean Investors and implement an administratively difficult, if not impossible, distribution method not adopted by any

HB: 4889-2919-9883.5

other court to date. The recovery amounts within the current Distribution Plan are calculated based on transaction schedules that were already approved by the Dean Investors during the Claims Procedure in early 2021. As such, this request is simply an attempt to litigate an already agreed upon issue and improve their recovery to the detriment of other claimants. The Court should not allow this tactic and should overrule the Dean Investors' Objection to the Distribution Plan.

Moreover, utilizing the "maximum balance" approach as requested in the Objection would be extremely difficult from an administrative perspective, would require extensive time and resources that would further diminish the limited assets of the Receivership Estate, and is prone to inaccuracies as evidenced by the Dean Investors' own calculations. Utilizing the maximum balance approach would only reduce the overall recovery of all creditors and lead to inequitable and inaccurate distributions. As such, the Court should deny the Dean Investors' Objection to the Distribution Plan.

## II.    BACKGROUND

1.    On February 10, 2021, the Court entered its Order Setting Claims Bar Date, Establishing Claims Procedure, and Approving Notification Process (Dkt. No. 396) that approved the Receiver's Motion for Order Setting Claims Bar Date, Establishing Claims Procedure, and Approving Notification Process (Dkt. No. 395) (the "Claims Procedure"). Pursuant to the Claims Procedure, any Known Investors, Relief Defendants, Other Creditors, Unknown Creditors, Unknown Investor Creditors, as those terms are defined in the Claims Procedure, were required to submit any claims they had against any of the Receivership Parties by May 20, 2021. *See* Dkt. No. 395. The Claims Procedure provided procedures through which the Receiver could contest any claim and allowed the claimant to subsequently supplement their claim. *See id.* The Claims

HB: 4889-2919-9883.5

JA315

Procedure similarly provided a procedure through which the Court could resolve any disputed claims.  *See id.*

2.      On March 12, 2021, Stretto mailed and emailed Investor Notice of Claims Procedure and Claims Bar Date letters (the "Notices") to all known investors, including CCWB, EBC, and M.C. Dean, pursuant to the Claims Procedure.  *See* Decl. of Robert Klamser attached as **Exhibit A**, at ¶ 3 (the "Klamser Decl." or "Klamser Declaration").  The Notices included individualized transactions schedules for each investor claimant that detailed the dates and amounts of each investment and any distribution they received from a Receivership Party prior to the filing of this SEC Action (the "Transaction Schedules").  *See id.*  Each of the Transaction Schedules included a unique identifier that allowed the claimant to confirm or reject specific transactions and the total claim amount through an online portal created and maintained by Stretto. *See id.*  The online portal required claimants to review the same Transaction Schedule printed on the Notice, and allowed claimants to add additional, proposed transactions to their schedule if appropriate.  The total claim amount was displayed above the confirmation check box that stated: "I declare, pursuant to 28 U.S.C. 1746 and under penalty of perjury, that the information contained herein is true and correct." Claimants were required to check that box and type in their name as confirmation prior to submitting their claim.  *See id.*

3.      The Notices and Transactions Schedules for CCWB, EBC, and M.C. Dean were mailed and emailed to their counsel, Levy Firestone Muse, LLP, c/o Ronald Kovner, 1701 K Street, NW, Suite 350, Washington, DC 20006.  *See id.*  The CCWB Transaction Schedule is attached as **Exhibit 1** to the Klamser Declaration.  *Id.*  The EBC Transaction Schedule is attached as **Exhibit 2** to the Klamser Declaration.  *Id.*  The M.C. Dean Transaction Schedule is attached as **Exhibit 3** to the Klamser Declaration.  *Id.*

HB: 4889-2919-9883.5

JA316

4.     On March 24, 2021, Eric Dean submitted each of the Dean Investors' claims to Stretto through Stretto's online portal and confirmed the accuracy of the investments and withdrawals within their respective Transaction Schedules. *See id. at* ¶ 6. Specifically, CCWB confirmed that it invested a total of $22,273,700.48 and received payments from the Receivership Parties totaling $11,446,943.17 over the course of 57 transactions between January 2015 and August 2018. *See id.* EBC confirmed that it invested a total of $19,875,917.11 and received payments from the Receivership Parties totaling $11,945,618.76 over the course of 58 transactions between March 2015 and August 2018. *See id.* M.C. Dean confirmed that it invested a total of $13,925,173.05 and received payments from the Receivership Parties totaling $2,427,038.99 over the course of 19 transactions between August 2017 and August 2018. *See id.* No changes or comments were made by Eric Dean to any of the Dean Investors' Transaction Schedules. *See id.* It is important to note that the distributions to the Dean Investors were cash distributions to their bank account and not merely paper profits on statements from the Receivership Parties. *See id.*

5.     On November 17, 2021, the Receiver filed the proposed Distribution Plan and recommended a rising tide distribution methodology. Now, after having already confirmed the amounts of their investments, withdrawals, and total claim amounts that were detailed in the Transaction Schedules, the Dean Investors filed their Objection requesting that their investments and withdrawals be treated differently and their recovery be recalculated.

### III.     ARGUMENT & AUTHORITIES

**A.     The Dean Investors' Objection should have been addressed during the Claims Procedure.**

6.     During the Claims Procedure, the Dean Investors were provided ample opportunity to dispute their Transaction Schedules or make comments that withdrawals and subsequent investments should have been recharacterized as reinvestments of the same principal. However,

HB: 4889-2919-9883.5

JA317

the Dean Investors made no such disputes or comments. The Objection filed at this late stage is merely an attempt to re-trade the Dean Investors' already approved claim calculation.

7.    As part of the Claims Procedure, the Transaction Schedules provided an opportunity for the Dean Investors to confirm or reject that each transaction occurred, as well as provided the Dean Investors the opportunity to comment on each transaction. *Id.* Each Transaction Schedule also included a unique identifier that allowed the Dean Investors to record these notes through an online portal created and maintained by Stretto. *See* Klamser Decl., ¶ 4. The online portal then required claimants to check a box that states "I agree with the amount on my form" prior to submitting their claim. *Id.*

8.    Each of the Dean Investors submitted their claims and confirmed the accuracy of their Transaction Schedules without any dispute or comments asserting that their investments should be recharacterized as reinvestments of the same principal. *See* Klamser Decl., ¶ 6. As the rising tide methodology is the "most commonly used (and judicially approved) for apportioning receivership assets," the Dean Investors could reasonably infer that their approved totals would be used in calculating a rising tide recovery, and still they chose to approve their Transaction Schedules with no comment. *S.E.C. v. Huber,* 702 F.3d 903, 906 (7th Cir. 2012). Choosing to now dispute the characterization of the transactions on their Transaction Schedules is merely an attempt to inequitably improve their recovery almost a year after the issue should have been addressed. This issue was decided by agreement during the Claims Procedure, and as such should not be relitigated in the context of approving the Distribution Plan.

**B.    The maximum balance approach proposed by the Dean Investors has not been adopted by any court to date and would lead to inequitable and inaccurate recoveries.**

9.    The primary goal of a district court and receiver in establishing a distribution plan is to set a plan that is fair, equitable, and treats victims in factually similar cases equally. *S.E.C.*

HB: 4889-2919-9883.5

JA318

*v. Quan*, 870 F.3d 754, 761 (8th Cir. 2017) ("'[T]he primary job of the district court is to ensure that the proposed plan of distribution is fair and reasonable.'") (citing *S.E.C. v. Wealth Mgmt. LLC,* 628 F.3d 323, 332 (7th Cir. 2010)); *S.E.C. v. Torchia*, 922 F.3d 1307, 1311 (11th Cir. 2019) ("The goal of such receiverships is to grant fair relief to as many investors as possible."); *S.E.C. v. Cap. Consultants*, 397 F.3d 733, 738-39 (9th Cir. 2005). Of the three most common receivership distribution methodologies—the rising tide, net investment/net loss, or last statement—the Receiver has determined that in this case, the rising tide methodology will lead to the most equitable recovery for all claimants. *S.E.C. v. Huber,* 702 F.3d 903, 906 (7th Cir. 2012); *In re Bernard L. Madoff Invs. Secs. LLC*, No. 15-CV-01151, 2016 WL 183492, at *1 (S.D.N.Y. 2016). This is because the rising tide methodology will equalize the recovery of victims who saw the lowest withdrawals over the course of the Ponzi scheme and provide the greatest recovery for the most claimants. *See* Dkt. 504. In their Objection, the Dean Investors propose that this Court instead adopt what the Court in *Huber* labeled the "maximum balance" approach. However, this approach exists merely as dicta in the *Huber* case, has not been subsequently adopted by any other court, and it would lead to an inequitable recovery for many claimants.

10.     The Objection details that in applying the rising tide methodology, when an investor makes a withdrawal and then subsequently reinvests the capital, that withdrawal should not be considered a pre-Receivership distribution, an approach which the *Huber* Court labels the "maximum balance" approach to the rising tide methodology. Dkt. 558, ¶19; *S.E.C. v. Huber,* 702 F.3d at 907-08. In dicta, the *Huber* Court observes that applying the rising tide method to reinvested capital poses challenges and that using an investor's maximum balance might be an alternative option. The court also declined to address the issue, stating that it "[couldn't] find any discussion in case law or commentary regarding this 'maximum balance' approach" and that it

HB: 4889-2919-9883.5

"needn't pursue the issue." *Id.* Additionally, the maximum balance approach to the rising tide methodology has not been subsequently adopted in any other court. As such, this is not an accepted distribution methodology in equity receivership cases and should not be adopted by the Court in this SEC Action.

11.    Further, applying the maximum balance approach in this case would be very administratively difficult and would likely lead to inaccurate and inequitable distributions to all creditors. The principals of equity require that if the maximum balance approach is applied to CCWB, EBC, and M.C. Dean, this same approach must be applied to all similarly situated creditors who withdrew cash and made a subsequent investment. For each of these investors, discovery would be necessary to identify and obtain the pertinent bank records for both the investor and the receivership parties dating back to the first investment. A forensic review of these records would then be necessary to attempt to track where the withdrawn and then comingled cash had been spent or reinvested. The Receiver has identified approximately 65 other investors who withdrew cash and made subsequent investments similar to CCWB, EBC, and M.C. Dean. As such, this process would need to be replicated 65 different times, which would take a significant investment of time and fees, would unnecessarily drain estate assets, and would be unlikely to significantly change the recovery of most claimants. Additionally, due to complications with tracking comingled cash as an asset, it would be difficult to know with certainty that the calculation of the maximum investment was correct. This potential for inaccuracy and the significant depletion of resources this exercise would require would lead to inequitable and reduced recoveries for all creditors.

**C.    The maximum balance approach is so administratively difficult that even the Dean Investors have inaccuracies in the calculations submitted with their Objection.**

12.    The Receiver has taken the time to assess the Declaration of Eric Dean, the calculations submitted by the Dean Investors along with the Objection, and the bank records of the

HB: 4889-2919-9883.5

JA320

Dean Investors dating back to their first investments, and has determined that there are several inaccuracies in the Dean Investors' calculations of the amounts of their alleged reinvestments under the maximum balance approach. The propensity for errors even when the returns are calculated by the claimants themselves shows how administratively difficult this approach would be if adopted for all similarly situated creditors.

13.    Dean's Declaration alleges that CCWB made no other investments or distributions once CCWB began investing with the Receivership Parties, and as such, it was clear that CCWB reinvested all withdrawals with the Receivership Parties except for $273,862, which was retained. *See* Decl. of Eric Dean, ¶ 4 (the "Dean Decl." or "Dean Declaration"). However, the transactions within CCWB's bank account ("CCWB's Account") reveals that throughout the time CCWB was investing with and withdrawing from the Receivership Parties, additional transactions with other entities were occurring and being comingled with the funds from Receivership Party transactions. *See* Decl. of Erik White attached hereto as **Exhibit B** (the "White Decl." or "White Declaration"). From January 2015 to August 2018 there were 57 cash transactions made between CCWB's Account and the Receivership Parties, including 21 investments totaling $22,273,700.48, and 36 distributions from the Receivership Parties totaling $11,446,943.17. White Decl., ¶ 5. However, there were delays between withdrawals and subsequent investments, sometimes lasting up to 4 months, all while transactions with non-Receivership Parties continued to occur. *Id.* These non-Receivership transactions included continued returns from investments made prior to 2015, credit card payments, tax payments, intercompany transfers and receipts from affiliates, such as EBC, and at least one $54,559 payment to Eric Dean. *Id.* From January 2015 to August 2018, there was approximately $9,383,478 in receipts from non-Receivership Parties and $683,370 in disbursements to non-Receivership Parties out of CCWB's Account. *Id.* Due to the multiple

HB: 4889-2919-9883.5

JA321

sources of cash receipts into CCWB's Account, the delays between distributions and subsequent investments in the Receivership Parties, and the fungibility of cash, it is not possible to be certain that the subsequent investments were made with the cash received from Receivership Party distributions, making it impossible to accurately apply the maximum balance approach with any certainty. *Id.* The only numbers the Court can be certain of are that CCWB invested $22,273,700.48 into the Receivership Parties, and that CCWB received $11,446,943.17 in distributions, representing a 51.39% recovery rather than the 5.9% recovery represented in Dean's Declaration. Dean Decl. ¶ 4; White Decl. ¶ 5.

14.    Likewise, the Dean Declaration alleges that EBC made no other investments and no distributions to its stockholders once it began investing with the Receivership Parties in March of 2015. Dean Decl., ¶ 4. It also alleges that EBC made a total investment of $8,428,415 with the Receivership Parties and reinvested that total amount, except for $498,034, with the Receivership Parties. *Id.* However, throughout the time that EBC was investing with the Receivership Parties, March 2015 to August 2018, there were also transactions with non-Receivership Parties in EBC's bank accounts ("EBC's Accounts"). White Decl., ¶ 6. From March 2015 to August 2018, there were 58 cash transactions made between EBC and the Receivership Parties, including 22 investments totaling $19,875,917.11, and 36 distributions from the Receivership Parties totaling $11,945,618.76. *Id.* However, the delays between withdrawals from and subsequent investments in the Receivership Parties lasted up to 4 months in certain instances. *Id.* During these delays, transactions with other non-Receivership entities continued to occur, including the receipt of returns from investments made prior to 2015, credit card payments, tax payments, intercompany transfers including an approximate $691,000 transfer to CCWB, and returns to stockholders, including more than $1 million in distributions to Eric Dean, Bill Dean, and Casey Dean. *Id.*

HB: 4889-2919-9883.5

JA322

Additionally, $500,000 was invested in the Receivership Parties in the name of DECA Asset Investment, LLC from EBC's Accounts.  *Id.*  From January 2015 to August 2018, there was approximately $13,148,334 in receipts from non-Receivership Parties and $5,032,146 in disbursements to non-Receivership Parties out of EBC's Accounts, contrary to the Dean Investors' allegation that only $498,034 was withdrawn and not reinvested with the Receivership Parties.  *Id.* Attached as **Exhibit 1** to the White Declaration is the redacted bank reconciliation report for a single month, September 2016, that EBC provided to the Receiver, which illustrates how voluminous the transactions were for this entity and how complex it would be to determine whether subsequent investments were reinvestments of the same cash or new cash from other sources and to provide evidence of distributions to stockholders.  Due to the ongoing transactions with non-Receivership entities, the comingling of those funds with funds from Receivership Party transactions, delays between withdrawals from and reinvestment in Receivership Parties, and the fungibility of cash, it is impossible to be certain that funds withdrawn from the Receivership Parties were actually the funds used for subsequent investments.  *Id.*  As such, the only numbers the Court can know with certainty are that EBC invested $19,875,917.11 into the Receivership Parties and received $11,945,618.76 in distributions from Receivership Parties, representing a 60.19% recovery rather than the 5.9% recovery represented in Dean's Declaration.  Dean Decl. ¶ 4; White Decl. ¶ 6.

15.    Regarding M.C. Dean, Dean's Declaration alleges that M.C. Dean made no other investments or distributions to its stockholders during the period in which it was investing with the Receivership Parties.  Dean Decl. ¶ 4.  M.C. Dean made its initial investment from an unknown bank account, but subsequently M.C. Dean maintained two bank accounts (collectively, "M.C. Dean's Accounts") solely for the purpose of receiving distributions from and making subsequent

HB: 4889-2919-9883.5

investments with the Receivership Parties. White Decl. ¶ 7. As such, it is clearer which subsequently invested funds were made from Receivership Party distributions. *Id.* However, equity requires that in calculating the recovery of M.C. Dean, the distribution methodology should be the same as is necessary with all other claimants—the rising tide methodology. Under the rising tide methodology, M.C. Dean made $13,925,173 in investments and received $2,427,039 in distributions from the Receivership Parties, representing a 17.43% recovery.

16.    As shown by the errors made in the Dean Investors' calculations of their own recoveries, the uncertainties inherent in that analysis, and the amount of time and resources required to analyze the recovery of only these three investors under the maximum balance approach, it is clear that using this approach would only further drain the estate of its limited resources and lead to inequitable and inaccurate recoveries for claimants.

## IV.    CONCLUSION

The Receiver should not be required to recalculate the recovery amounts of CCWB Asset Investments, LLC, EBC Asset Investment, Inc., and M.C. Dean, Inc. under the Distribution Plan or alter the distribution methodology utilized in the Distribution Plan because: (i) the Dean Investors had ample opportunity to dispute their Transaction Schedules during the Claims Procedure and instead affirmatively confirmed the Transaction Schedules were accurate; (ii) the recovery amounts in the Distribution Plan are already calculated according to the most equitable method, the rising tide methodology; and (iii) the maximum balance approach proposed by the Dean Investors is so administratively difficult that even the Dean Investors had errors in their calculations.

WHEREFORE, the Receiver respectfully requests that the Court: (i) overrule the Dean Investors' Objection; (ii) deny all relief requested in the Dean Investors' Objection; and (iii) any

HB: 4889-2919-9883.5

JA324

other relief which the Court deems just and equitable.

Dated: January 31, 2022                    Respectfully Submitted,

                                           /s/ Lynn H. Butler
                                           Lynn H.  Butler, *pro hac vice*
                                           Jameson J.  Watts, *pro hac vice*
                                           HUSCH BLACKWELL LLP
                                           111 Congress Ave., Suite 1400
                                           Austin, TX 78701
                                           Tel: (512) 472-5456
                                           Fax: (512) 479-1101
                                           lynn.butler@huschblackwell.com
                                           jameson.watts@huschblackwell.com

                                           Buffey E.  Klein, *pro hac vice*
                                           HUSCH BLACKWELL LLP
                                           1900 N.  Pearl Street, Suite 1800
                                           Dallas, Texas 75201
                                           Tel: (214) 999-6100
                                           Fax: (214) 999-6170
                                           buffey.klein@huschblackwell.com

                                           Brian P.  Waagner, Fed.  Bar No.  14954
                                           HUSCH BLACKWELL LLP
                                           750 17th Street, NW, Suite 900
                                           Washington, D.C.  20006
                                           Tel: (202) 378-2300
                                           Fax: (202) 378-2318
                                           brian.waagner@huschblackwell.com

                                           **COUNSEL FOR RECEIVER**
                                           **GREGORY S.  MILLIGAN**

HB: 4889-2919-9883.5

JA325

## CERTIFICATE OF SERVICE

On January 31, 2022, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court for the District of Maryland, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically through the Court's CM/ECF filing system for all parties who have registered to receive electronic service. Additionally, the foregoing document was served on the following parties not registered for Court's CM/ECF filing system as indicated below:

**Defendant Kevin B. Merrill (via U.S. Mail):**

Kevin B. Merrill, #64274-037
FCI Allenwood Low
Federal Correctional Institution
P.O. Box 1000
White Deer, PA 17887

**Defendant Jay B. Ledford (via U.S. Mail):**

Jay B. Ledford, #55055-048
FCI Safford
Federal Correctional Institution
P.O. Box 9000
Safford, AZ 85548

**Criminal Counsel for Defendant Kevin B. Merrill (via E-Mail and U.S. Mail):**

Elizabeth Genevieve Oyer
Office of the Federal Public Defender
100 S Charles St Ste 900 Tower II
Baltimore, MD 21201
liz_oyer@fd.org

Maggie Grace
Office of the Federal Public Defender
100 S Charles St, Tower II, 9th Floor
Baltimore, MD 21201
maggie_grace@fd.org

**Criminal Counsel for Defendant Jay B. Ledford (via E-Mail and U.S. Mail):**

Harry J Trainor , Jr
Trainor Billman Bennett and Milko LLP
116 Cathedral St Ste E
Annapolis, MD 21401
htrain@prodigy.net

13

HB: 4889-2919-9883.5

**Criminal Counsel for Defendant Cameron R. Jezierski (via E-Mail and U.S. Mail):**

Joseph J Aronica
Duane Morris LLP
505 9th St NW Ste 1000
Washington, DC 20004
jjaronica@duanemorris.com

**Criminal Counsel for Relief Defendant Amanda Merrill (via E-Mail and U.S. Mail):**

Addy R. Schmitt
Ian Herbert
Miller & Chevalier Chartered
900 16th St NW
Washington, DC 20006
aschmitt@milchev.com
iherbert@milchev.com

**Baltimore County Office of Law (via E-Mail and U.S. Mail):**

Susan B. Dubin
Baltimore County Office of Law
400 Washington Avenue
Towson, Maryland 21204
sdubin@baltimorecountymd.gov

**Dundalk United Methodist Church (U.S. Mail):**

Dundalk United Methodist Church
c/o Edward F. Mathus
6903 Mornington Road
Baltimore, Maryland 21222

**Lienholders, Tax Assessors, and Other Interested Parties (U.S. Mail):**
Florida Community Bank, N.A.
2325 Vanderbilt Beach Road
Naples, Florida 34109

Mortgage Electronic Registration Systems, Inc.
PO Box 2026
Flint, Michigan 48501-2026

Collier County, Florida Tax Assessor
3291 Tamiami Trail East
Naples, Florida 34112

14

HB: 4889-2919-9883.5

JA327

Maryland Department of Assessments & Taxation
301 W.  Preston Street
Baltimore, Maryland 21201-2395

Branch Banking and Trust Company,
A North Carolina Banking Corporation
PO Box 1290
Whiteville, North Carolina 28472

Talbot County, Maryland Finance Office
Talbot County Courthouse
11 North Washington Street, Suite 9
Easton, Maryland 21601

HSBC Bank USA, National Association, as trustee of
J.P.  Morgan Alternative Loan Trust 2006-A5
c/o Howard n.  Bierman, Trustee
c/o Select Portfolio Servicing, Inc.
3815 Southwest Temple
Salt Lake City, Utah 84115

Clark County, Nevada Tax Assessor
500 S.  Grand Central Parkway
Las Vegas, Nevada 89155

First Financial Bank, N.A.  Southlake
3205 E.  Hwy.  114
PO Box 92840
Southlake, Texas 76092

Hunter Kelsey of Texas, LLC
4131 Spicewood Springs Road, Bldg.  J-1A
Austin, Texas 78759

Frost Bank, f/k/a The Frost National Bank
c/o Michael J.  Quilling
Quilling, Selander Lownds, Winslett & Moser, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201

The City of Colleyville, Texas
c/o Victoria W.  Thomas
Nichols, Jackson, Dilard, Hager & Smith, L.L.P.
1800 Lincoln Plaza
500 North Akard
Dallas, Texas 75201

15

JA328

Tarrant County, Texas Tax Assessor
100 E.  Weatherford
Fort Worth, Texas 76196

J Trust
c/o Hillary RE.  Badrow, Trustee
2801 Paramount Boulevard
Amarillo, Texas 79109

Dallas Central Appraisal District
2949 N.  Stemmons Freeway
Dallas, Texas 75247-6195

Bozeman West
PO Box 1970
15632 West Main Street
Bozeman, Montana 59771-1970

Neil A.  Patel
5308 Burgandy Court
Colleyville, Texas 76034

TIB – The Independent BankersBank
350 Phelps Court, Suite 200
PO Box 560528i
Dallas, Texas 75356-0528

Wachovia Mortgage, FSB
PO Box 659548
San Antonio, Texas 78265-9548

Denton County Tax Assessor
1505 E.  McKinney Street
Denton, Texas 76209-4525

Potter County, Texas Tax Assessor
900 South Polk, Suite 106
Amarillo, Texas 79101

Wells Fargo Home Mortgage
P.O.  Box 10335
Des Moines, IA 50306

HB: 4889-2919-9883.5

JA329

Albertelli Law
Attn: Coury M. Jacocks
2201 W. Royal Lane, Suite 155
Irving, TX 75063

Samual I. White, P.C.
5040 Corporate Woods Drive, Suite 120
Virginia Beach, VA 23462

Stephen D. Graeff
Dunlap Bennett & Ludwig
8300 Boone Boulevard, #550
Vienna, VA 22182

Kenneth C. Grace
Lash Wilcox & Grace PL
2202 West Shore Blvd.; Suite 200
Tampa, FL 33607

/s/ Lynn H. Butler
Lynn H. Butler

HB: 4889-2919-9883.5

JA330

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## NORTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) |
| KEVIN B. MERRILL, et al., | ) |
| | ) |
| *Defendants.* | ) |

Case No.: 1:18-cv-02844-RDB

---

### DECLARATION OF ROBERT KLAMSER IN SUPPORT OF
### RECEIVER GREGORY S. MILLIGAN'S REPLY TO OBJECTIONS OF INVESTORS
### CCWB ASSET INVESTMENTS, LLC, EBC ASSET INVESTMENT, INC., AND M.C.
### DEAN, INC. TO THE RECEIVER'S MOTION FOR ORDER APPROVING
### DISTRIBUTION PLAN AND INTERIM DISTRIBUTION

I, Robert Klamser, declare under 28 U.S.C. § 1746 and under penalty of perjury as follows:

1.  I am a Senior Managing Director of Bankruptcy Management Solutions Inc. d/b/a Stretto ("Stretto"), and maintain an office at 8269 E. 23rd Avenue, Suite 275, Denver, CO 80238.

2.  The facts set forth herein are true and correct and based upon my personal knowledge.

3.  I make this affirmation in support of the Reply (the "Reply") filed by the Receiver Gregory S. Milligan (the "Receiver") to the Objection of Investors CCWB Asset Investments, LLC, EBC Asset Investment, Inc., and M.C. Dean, Inc. (Dkt. No. 558) (the "Objections") to the Receiver's Motion for Order Approving Distribution Plan and Interim Distribution (Dkt. No. 504) (the "Distribution Plan").

4.  On March 12, 2021, Stretto mailed Investor Notice of Claims Procedure and Claims Bar Date letters to all known investors (the "Notices") pursuant to the Court-approved claims procedure, which included individualized transaction schedules for each claimant (the "Transaction Schedules"). Each of the Transaction Schedules included a unique identifier that allowed the claimant to confirm or reject specific transactions and the claim amount through an online portal created and maintained by Stretto. The online portal required claimants to review the same Transaction Schedule printed on the Notice, and allowed claimants to add additional, proposed transactions to their schedule if appropriate. The total claim amount was displayed above the confirmation check box that stated: "I declare, pursuant to 28 U.S.C. 1746 and under penalty of perjury, that the information contained herein is true and correct." Claimants were required to check that box and type in their

JA332

name as confirmation prior to submitting their claim.

5.    The Notices and Transactions Schedules for CCWB Asset Investments, LLC ("CCWB"), EBC Asset Investment, Inc. ("EBC"), and MC Dean Inc. ("MC Dean") were mailed and emailed to their counsel, Levy Firestone Muse, LLP, c/o Ronald Kovner, 1701 K Street, NW, Suite 350, Washington, DC 20006.  A true and correct copy of CCWB's Transaction Schedule is attached as **Exhibit 1**.  A true and correct copy of EBC's Transaction Schedule is attached as **Exhibit 2**.  A true and correct copy of MC Dean's Transaction Schedule is attached as **Exhibit 3**.

6.    On March 24, 2021, CCWB, EBC, and MC Dean each submitted their claims to Stretto and confirmed the accuracy of each of their Transaction Schedules without providing any comments or rejecting any transactions or amounts.  The person who signed each claim submission for CCWB, EBC, and MC was "Eric Dean, Manager."

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on January 31, 2022.

_____
ROBERT KLAMSER

HB: 4839-8987-5162.4

JA333

# EXHIBIT 1

Case 1:18-cv-02844-RDB   Document 584-1   Filed 01/31/22   Page 5 of 19

ClaimCode: **I-0019(57)**

**Attachment B – Schedule**

**Investor Information**

**CCWB Asset Investments, LLC**
LEVY FIRESTONE MUSE, LLP,
C/O RONALD KOVNER
1701 K STREET, NW, SUITE 350
WASHINGTON, DC 20006

## Transaction Information (57)

| Date | Payment Method | Reference Number | Amount of Investment | Amount Paid to You | Confirm | Reject | Comments |
|------|----------------|------------------|---------------------|--------------------|---------|--------|----------|
| 1/9/2015 | Wire Transfer | | 750,108.51 | | | | |
| 2/11/2015 | Wire Transfer | | | (25,927.34) | | | |
| 3/12/2015 | Wire Transfer | | 1,690,063.53 | | | | |
| 3/12/2015 | Wire Transfer | | | (73,958.75) | | | |
| 4/14/2015 | Wire Transfer | | | (134,216.44) | | | |
| 5/15/2015 | Wire Transfer | | | (116,592.20) | | | |
| 6/8/2015 | Wire Transfer | | 599,987.04 | | | | |
| 6/8/2015 | Wire Transfer | | | (127,373.42) | | | |
| 7/13/2015 | Wire Transfer | | | (128,737.17) | | | |
| 7/29/2015 | Wire Transfer | | 370,000.00 | | | | |
| 9/18/2015 | Wire Transfer | | | (132,247.87) | | | |
| 10/21/2015 | Wire Transfer | | | (137,424.20) | | | |
| 11/23/2015 | Wire Transfer | | | (145,138.69) | | | |

**Investor Verification**

JA335

ClaimCode: **I-0019(57)**

| Date | Type | Amount | Amount |
|------|------|--------|--------|
| 11/24/2015 | Wire Transfer | 521,647.00 | |
| 12/16/2015 | Wire Transfer | | (145,928.75) |
| 1/20/2016 | Wire Transfer | | (150,255.07) |
| 2/4/2016 | Wire Transfer | 450,000.00 | |
| 2/25/2016 | Wire Transfer | | (124,375.08) |
| 3/22/2016 | Wire Transfer | 42,391.13 | |
| 4/27/2016 | Wire Transfer | 318,821.65 | |
| 5/18/2016 | Wire Transfer | | (261,281.87) |
| 6/28/2016 | Wire Transfer | | (273,539.20) |
| 7/27/2016 | Wire Transfer | | (263,447.99) |
| 7/29/2016 | Wire Transfer | 899,989.74 | |
| 8/26/2016 | Wire Transfer | | (255,746.07) |
| 9/28/2016 | Wire Transfer | | (269,701.98) |
| 10/28/2016 | Wire Transfer | | (281,803.11) |
| 11/29/2016 | Wire Transfer | | (259,142.67) |
| 12/23/2016 | Wire Transfer | | (241,890.58) |
| 1/3/2017 | Wire Transfer | 1,500,466.64 | |
| 1/27/2017 | Wire Transfer | | (232,102.46) |
| 2/27/2017 | Wire Transfer | | (351,445.45) |
| 3/3/2017 | Wire Transfer | 1,002,542.05 | |
| 3/27/2017 | Wire Transfer | | (425,027.54) |

ClaimCode: **I-0019(57)**

| Date | Type | Credit | Debit |
|---|---|---|---|
| 4/28/2017 | Wire Transfer | | (427,002.62) |
| 5/26/2017 | Wire Transfer | | (442,889.79) |
| 6/7/2017 | Wire Transfer | 1,500,000.03 | |
| 6/30/2017 | Wire Transfer | | (445,231.83) |
| 7/24/2017 | Wire Transfer | | (417,711.28) |
| 8/10/2017 | Wire Transfer | 1,000,012.30 | |
| 8/28/2017 | Wire Transfer | | (4,780.46) |
| 9/21/2017 | Wire Transfer | 4,783,403.39 | |
| 9/22/2017 | Wire Transfer | 1,000,000.00 | |
| 10/23/2017 | Wire Transfer | | (449,784.56) |
| 10/30/2017 | Wire Transfer | 579,957.81 | |
| 11/21/2017 | Wire Transfer | | (513,217.00) |
| 12/14/2017 | Wire Transfer | 513,216.99 | |
| 12/29/2017 | Wire Transfer | | (9,128.16) |
| 1/30/2018 | Wire Transfer | | (489,040.71) |
| 2/28/2018 | Wire Transfer | | (1,062,397.46) |
| 3/8/2018 | Wire Transfer | 1,649,986.88 | |
| 4/27/2018 | Wire Transfer | | (1,368,941.70) |
| 5/10/2018 | Wire Transfer | 1,399,902.88 | |
| 5/31/2018 | Wire Transfer | | (1,648.15) |
| 7/20/2018 | Wire Transfer | | (1,257,865.55) |

ClaimCode: I-0019(57)

| | | | |
|---|---|---|---|
| 8/3/2018 | Wire Transfer | 560,386.07 | |
| 8/3/2018 | Wire Transfer | 1,140,816.84 | |

**Totals** $22,273,700.48   $11,446,943.17

**Net Transactions Gain/(loss)** ($10,826,757.31)

**Claim Amount:** $10,826,757.31

I further state that I have / have not (**CIRCLE ONE**) received payments or funds from another source for the losses that I sustained as a result of the above investments. Such recoveries or funds may include, but are not limited to, settlements in separate litigation, recoveries paid by state-court receivers, and other payments to victims (these payments are referred to herein as "Compensation Payments"). Failure to disclose Compensation Payments on this form may result in you losing your right to participate in ny ultimate distribution in this SEC Action. In addition, please be advised that you have an ongoing duty to disclose to the Receiver any future Compensation Payments that you may receive after the submission of this schedule.

JA338

ClaimCode: I-0019(57)

**Attachment B – Schedule**

**Investor Information**

**CCWB Asset Investments, LLC**
LEVY FIRESTONE MUSE, LLP,
C/O RONALD KOVNER
1701 K STREET, NW, SUITE 350
WASHINGTON, DC 20006

If you have received payments or funds from another source, please complete the following for each payment you received. If you did not receive payments or funds from another source, you can leave the chart below blank. Please attach additional pages if the space provided below is insufficient to identify all Compensation Payments that you have have received.

| Payor | Date of Payment | Amount of Payment | Reason for Payment |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

There has been no change to your loss calculation from the restitution claim process in the criminal action

I, _____ (title) for CCWB Asset Investments, LLC, I hereby certify that: (i) CCWB Asset Investments, LLC has maintained its legal status as an active entity; (ii) [Investment Entity] is authorized to submit claims and receive distributions on behalf of the individual investors within it that invested with CCWB Asset Investments, LLC; and (iii) CCWB Asset Investments, LLC will distribute any interim and final distribution to the individual investors within it in accordance with any Court-authorized distribution plan.

I declare, pursuant to 28 U.S.C. § 1746 and under penalty of perjury, that the information contained herein is true and correct.

Executed on _____, 2021

_____
**Signature**

_____
**Printed Name**

_____
**Title**

JA339

# EXHIBIT 2

ClaimCode: **I-0021(58)**

**Attachment B – Schedule**

**Investor Information**

**EBC Asset Investment Inc.**
LEVY FIRESTONE MUSE, LLP,
C/O RONALD KOVNER
1701 K STREET, NW, SUITE 350
WASHINGTON, DC 20006

**Transaction Information (58)**

**Investor Verification**

| Date | Payment Method | Reference Number | Amount of Investment | Amount Paid to You | Confirm | Reject | Comments |
|---|---|---|---|---|---|---|---|
| 3/12/2015 | Wire Transfer | | 309,886.00 | | | | |
| 4/14/2015 | Wire Transfer | | | (10,014.83) | | | |
| 5/15/2015 | Wire Transfer | | | (10,436.44) | | | |
| 5/27/2015 | Wire Transfer | | 567,959.00 | | | | |
| 6/1/2015 | Wire Transfer | | 471,589.50 | | | | |
| 6/8/2015 | Wire Transfer | | 2,400,538.84 | | | | |
| 6/8/2015 | Wire Transfer | | | (12,264.89) | | | |
| 7/13/2015 | Wire Transfer | | | (77,481.64) | | | |
| 7/29/2015 | Wire Transfer | | 120,000.00 | | | | |
| 8/14/2015 | Wire Transfer | | | (5,154.36) | | | |
| 9/18/2015 | Wire Transfer | | | (146,292.90) | | | |
| 10/21/2015 | Wire Transfer | | | (160,475.85) | | | |
| 11/20/2015 | Wire Transfer | | | (153,941.07) | | | |

JA341

ClaimCode: **I-0021(58)**

| Date | Type | Amount | Amount |
|---|---|---|---|
| 11/24/2015 | Wire Transfer | 521,647.00 | |
| 12/16/2015 | Wire Transfer | | (149,979.79) |
| 1/20/2016 | Wire Transfer | | (151,219.67) |
| 2/5/2016 | Wire Transfer | 450,000.00 | |
| 2/25/2016 | Wire Transfer | | (141,181.29) |
| 3/22/2016 | Wire Transfer | 3,934.31 | |
| 4/27/2016 | Wire Transfer | 12,954.72 | |
| 5/18/2016 | Wire Transfer | | (304,388.19) |
| 6/28/2016 | Wire Transfer | | (299,449.78) |
| 7/27/2016 | Wire Transfer | | (268,855.15) |
| 7/29/2016 | Wire Transfer | 900,014.43 | |
| 8/26/2016 | Wire Transfer | | (266,359.23) |
| 9/28/2016 | Wire Transfer | | (276,330.40) |
| 10/31/2016 | Wire Transfer | | (282,252.26) |
| 11/29/2016 | Wire Transfer | | (261,870.82) |
| 12/23/2016 | Wire Transfer | | (246,293.00) |
| 1/3/2017 | Wire Transfer | 1,499,999.75 | |
| 1/27/2017 | Wire Transfer | | (232,816.57) |
| 2/27/2017 | Wire Transfer | | (361,749.37) |
| 3/3/2017 | Wire Transfer | 2,180,000.00 | |
| 3/6/2017 | Wire Transfer | 1,402,693.97 | |

JA342

ClaimCode: **I-002(58)**

| Date | Type | | Amount |
|---|---|---|---|
| 3/28/2017 | Wire Transfer | | (531,465.15) |
| 4/28/2017 | Wire Transfer | | (560,214.32) |
| 5/26/2017 | Wire Transfer | | (592,171.41) |
| 6/7/2017 | Wire Transfer | 1,800,000.08 | |
| 6/30/2017 | Wire Transfer | | (649,319.60) |
| 7/24/2017 | Wire Transfer | | (300,000.00) |
| 7/24/2017 | Wire Transfer | | (306,261.37) |
| 8/10/2017 | Wire Transfer | 1,099,999.97 | |
| 8/28/2017 | Wire Transfer | | (313.42) |
| 9/21/2017 | Wire Transfer | 481,028.88 | |
| 10/24/2017 | Wire Transfer | | (664,543.64) |
| 10/30/2017 | Wire Transfer | 724,509.59 | |
| 11/21/2017 | Wire Transfer | | (539,030.51) |
| 12/14/2017 | Wire Transfer | 539,030.97 | |
| 12/29/2017 | Wire Transfer | | (1,692.37) |
| 1/30/2018 | Wire Transfer | | (459,122.49) |
| 2/28/2018 | Wire Transfer | | (967,036.95) |
| 3/8/2018 | Wire Transfer | 2,199,994.02 | |
| 4/27/2018 | Wire Transfer | | (1,332,383.98) |
| 5/10/2018 | Wire Transfer | 1,250,084.64 | |
| 6/1/2018 | Wire Transfer | | (912.75) |

JA343

ClaimCode: I-0021(58)

| | | |
|---|---|---|
| 7/20/2018 | Wire Transfer | (1,222,343.30) |
| 8/3/2018 | Wire Transfer | 109,900.75 |
| 8/3/2018 | Wire Transfer | 830,150.69 |

| | | |
|---|---|---|
| **Totals** | $19,875,917.11 | $11,945,618.76 |
| **Net Transactions Gain/(loss)** | ($7,930,298.35) | |
| **Claim Amount:** | $7,930,298.35 | |

I further state that I have / have not (**CIRCLE ONE**) received payments or funds from another source for the losses that I sustained as a result of the above investments. Such recoveries or funds may include, but are not limited to, settlements in separate litigation, recoveries paid by state-court receivers, and other payments to victims (these payments are referred to herein as "Compensation Payments"). Failure to disclose Compensation Payments on this form may result in you losing your right to participate in ny ultimate distribution in this SEC Action. In addition, please be advised that you have an ongoing duty to disclose to the Receiver any future Compensation Payments that you may receive after the submission of this schedule.

JA344

Case 1:18-cv-02844-RDB   Document 584-1   Filed 01/31/22   Page 15 of 19

ClaimCode: **I-0021(58)**

**Attachment B – Schedule**

**Investor Information**

**EBC Asset Investment Inc.**
LEVY FIRESTONE MUSE, LLP,
C/O RONALD KOVNER
1701 K STREET, NW, SUITE 350
WASHINGTON, DC 20006

If you have received payments or funds from another source, please complete the following for each payment you received. If you did not receive payments or funds from another source, you can leave the chart below blank. Please attach additional pages if the space provided below is insufficient to identify all Compensation Payments that you have received.

| Payor | Date of Payment | Amount of Payment | Reason for Payment |
|-------|-----------------|-------------------|--------------------|
|       |                 |                   |                    |
|       |                 |                   |                    |
|       |                 |                   |                    |

There has been no change to your loss calculation from the restitution claim process in the criminal action

As _____ (title) for EBC Asset Investment Inc., I hereby certify that: (i) EBC Asset Investment Inc. has maintained its legal status as an active entity; (ii) [Investment Entity] is authorized to submit claims and receive distributions on behalf of the individual investors within it that invested with EBC Asset Investment Inc.; and (iii) EBC Asset Investment Inc. will distribute any interim and final distribution to the individual investors within it in accordance with any Court-authorized distribution plan.

I declare, pursuant to 28 U.S.C. § 1746 and under penalty of perjury, that the information contained herein is true and correct.

Executed on _____, 2021

_____
**Signature**

_____
**Printed Name**

_____
**Title**

JA345

# EXHIBIT 3

ClaimCode: **I-0022(19)**

**Attachment B – Schedule**

**Investor Information**

**MC Dean Inc.**
LEVY FIRESTONE MUSE, LLP,
C/O RONALD KOVNER
1701 K STREET, NW, SUITE 350
WASHINGTON, DC 20006

**Transaction Information (19)**

| Date | Payment Method | Reference Number | Amount of Investment | Amount Paid to You | Confirm | Reject | Comments |
|------|----------------|------------------|----------------------|--------------------|---------| -------|----------|
| 8/10/2017 | Wire Transfer | | 2,140,001.22 | | | | |
| 9/21/2017 | Wire Transfer | | 1,799,857.54 | | | | |
| 9/21/2017 | Wire Transfer | | 451,648.98 | | | | |
| 9/21/2017 | Wire Transfer | | 272,493.49 | | | | |
| 10/27/2017 | Wire Transfer | | 3,530,100.95 | | | | |
| 10/27/2017 | Wire Transfer | | 1,899,906.39 | | | | |
| 10/31/2017 | Wire Transfer | | | (79,630.32) | | | |
| 11/21/2017 | Wire Transfer | | | (127,380.71) | | | |
| 12/13/2017 | Wire Transfer | | 126,380.98 | | | | |
| 12/29/2017 | Wire Transfer | | | (3,207.36) | | | |
| 1/29/2018 | Wire Transfer | | | (201,662.70) | | | |
| 2/28/2018 | Wire Transfer | | | (494,283.25) | | | |
| 3/8/2018 | Wire Transfer | | 2,183,907.83 | | | | |

**Investor Verification**

JA347

Case 1:18-cv-02844-RDB   Document 584-1   Filed 01/31/22   Page 18 of 19

ClaimCode: I-0022(19)

| Date | Type | | |
|---|---|---|---|
| 4/27/2018 | Wire Transfer | | (705,699.06) |
| 5/10/2018 | Wire Transfer | 700,000.08 | |
| 6/1/2018 | Wire Transfer | | (265.70) |
| 7/20/2018 | Wire Transfer | | (814,909.89) |
| 8/3/2018 | Wire Transfer | 186,261.51 | |
| 8/3/2018 | Wire Transfer | 634,614.08 | |

| | | |
|---|---|---|
| Totals | $13,925,173.05 | $2,427,038.99 |

| Net Transactions Gain/(loss) | ($11,498,134.06) |
|---|---|

| Claim Amount: | $11,498,134.06 |
|---|---|

I further state that I have / have not (**CIRCLE ONE**) received payments or funds from another source for the losses that I sustained as a result of the above investments. Such recoveries or funds may include, but are not limited to, settlements in separate litigation, recoveries paid by state-court receivers, and other payments to victims (these payments are referred to herein as "Compensation Payments"). Failure to disclose Compensation Payments on this form may result in you losing your right to participate in ny ultimate distribution in this SEC Action. In addition, please be advised that you have an ongoing duty to disclose to the Receiver any future Compensation Payments that you may receive after the submission of this schedule.

JA348

ClaimCode: **I-0022(19)**

**Attachment B – Schedule**

**Investor Information**

**MC Dean Inc.**
LEVY FIRESTONE MUSE, LLP,
C/O RONALD KOVNER
1701 K STREET, NW, SUITE 350
WASHINGTON, DC 20006

If you have received payments or funds from another source, please complete the following for each payment you received. If you did not receive payments or funds from another source, you can leave the chart below blank. Please attach additional pages if the space provided below is insufficient to identify all Compensation Payments that you have received.

| Payor | Date of Payment | Amount of Payment | Reason for Payment |
|-------|-----------------|-------------------|--------------------|
|       |                 |                   |                    |
|       |                 |                   |                    |
|       |                 |                   |                    |

There has been no change to your loss calculation from the restitution claim process in the criminal action

As _____ (title) for MC Dean Inc., I hereby certify that: (i) MC Dean Inc. has maintained its legal status as an active entity; (ii) [Investment Entity] is authorized to submit claims and receive distributions on behalf of the individual investors within it that invested with MC Dean Inc.; and (iii) MC Dean Inc. will distribute any interim and final distribution to the individual investors within it in accordance with any Court-authorized distribution plan.

I declare, pursuant to 28 U.S.C. § 1746 and under penalty of perjury, that the information contained herein is true and correct.

Executed on _____, 2021

_____
**Signature**

_____
**Printed Name**

_____
**Title**

JA349

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE** | ) | |
| **COMMISSION,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | **Case No.: 1:18-cv-02844-RDB** |
| | ) | |
| **KEVIN B.  MERRILL, et al.,** | ) | |
| | ) | |
| *Defendants*. | ) | |

**DECLARATION OF ERIK WHITE IN SUPPORT OF**
**RECEIVER GREGORY S. MILLIGAN'S REPLY TO OBJECTIONS OF INVESTORS**
**CCWB ASSET INVESTMENTS, LLC, EBC ASSET INVESTMENT, INC., AND M.C.**
**DEAN, INC. TO THE RECEIVER'S MOTION FOR ORDER APPROVING**
**DISTRIBUTION PLAN AND INTERIM DISTRIBUTION**

I, Erik White, declare under 28 U.S.C. § 1746 and under penalty of perjury, that the

following is true and correct:

1.      My name is Erik White, and I am of sound mind and capable of making this Declaration.
        I have personal knowledge of the facts stated herein and they are true and correct.

2.      I am a Managing Director at HMP Advisory Holdings, LLC d/b/a Harney Partners
        ("Harney") and operate under the direction and supervision of the Gregory S.  Milligan
        who was appointed as the Receiver (the "Receiver") for the estates of the Receivership
        Parties in the civil action styled *Securities and Exchange Commission v. Kevin B. Merrill,
        et al.*, Case No. 1:18-cv-02844-RDB pending in the United States District Court for the
        District of Maryland (the "SEC Action").

3.      I received a Bachelor of Science in engineering from Princeton University in 2005, and a
        Masters in Business Administration from the University of Michigan in 2012.  I am a
        certified insolvency and restructuring adviser.  I have over fourteen years of experience in
        corporate finance, business restructuring, forensic consulting, and asset management.

4.      I make this affirmation in support of the Reply (the "Reply") filed by the Receiver to the
        Objections of Investors CCWB Asset Investments, LLC, EBC Asset Investment, Inc., and
        M.C. Dean, Inc.  (Dkt.  No.  558) (the "Objection") to the Receiver's Motion for Order
        Approving Distribution Plan and Interim Distribution (Dkt.  No.  504) (the "Distribution

1

JA351

Plan").

5.    I have reviewed the bank records for CCWB Asset Investments, LLC ("CCWB"), EBC Asset Investment, Inc. ("EBC"), and M.C. Dean, Inc. ("M.C. Dean") (collectively, the "Dean Investors") from 2015 to August / September 2018, as provided by the Dean Investors, and compared them against the bank records of the Receivership Parties, as well as the Declaration by Eric Dean ("Dean's Declaration") and calculations submitted with the Dean Investors' Objection.

6.    CCWB maintained a single bank account ("CCWB's Account") that comingled funds and transactions from investments and distributions with Receivership Parties with funds and transactions with non-Receivership Parties.  CCWB's first investment transaction with the Receivership Parties occurred in January of 2015, and their last investment transaction with the Receivership Parties was in August of 2018.  From January 2015 to August 2018, there were 57 cash transactions made between CCWB's Account and the Receivership Parties, including 21 investments totaling $22,273,700.48, and 36 distributions from the Receivership Parties totaling $11,446,943.17.  There were intervals of up to 4 months between CCWB receiving distributions from the Receivership Parties and CCWB's subsequent investments, during which time transactions with non-Receivership Parties continued to occur.  These additional transactions with non-Receivership Parties include, but are not limited to, investment returns from investments made prior to 2015, credit card payments, tax payments, transfers to and from other Dean Investors entities, and at least one payment made to Eric Dean for approximately $54,559.  From January 2015 to August 2018, receipts from these non-Receivership Party transactions totaled approximately $9,383,478, and disbursements to non-Receivership Parties totaled approximately $683,370.  The Dean's Declaration and associated calculation does incorporate these non-Receivership Party transactions in aggregate amounts for each year between 2015 and 2018. However, in doing so, it overly simplifies the situation and obscures the number and nature of the transactions. Due to alternative sources of cash receipts within this account, delays between receiving cash from the Receivership Parties and CCWB's next investment with the Receivership Parties, and the fungibility of cash, it is not certain that subsequent, ongoing investments with the Receivership Parties were made with cash received from prior distributions from the Receivership Parties.  As such, all that is ascertainable for certain is that CCWB invested $22,273,700.48 with the Receivership Parties and received $11,446,943.17 in distributions from Receivership Parties, representing a 51.39% recovery.

7.    EBC also maintained bank accounts ("EBC's Accounts") that comingled funds from transactions with both Receivership Party entities and non-Receivership Parties.  From March 2015 to August 2018, there were 58 cash transactions made between EBC and the Receivership Parties, including 22 investments totaling $19,875,917.11, and 36 distributions from the Receivership Parties totaling $11,945,618.76.  There were intervals of up to 4 months between EBC receiving distributions from the Receivership Parties and EBC's subsequent investments in the Receivership Parties, during which time, transactions with non-Receivership Parties continued to occur.  These additional transactions include, but are not limited to, investment returns from investments made prior to 2015, credit card

HB: 4856-0679-0155.4

payments, tax payments, transfers to and from other Dean Investors entities including an approximate $691,000 transfer to CCWB, and payments to stockholders, including more than $1 million in distributions to Eric Dean, Bill Dean, and Casey Dean. From January 2015 to August 2018, there was approximately $13,148,334 in receipts from non-Receivership Parties and $5,032,146 in disbursements to non-Receivership Parties out of EBC's Accounts, contrary to the Dean Investors' allegation that only $498,034 was withdrawn and not reinvested with the Receivership Parties. Transactions with the Receivership Parties also include a $500,000 investment on behalf of "DECA". The Dean's Declaration and associated calculation does incorporate these non-Receivership Party transactions in aggregate amounts for each year between 2015 and 2018. However, in doing so, it overly simplifies the situation and obscures the number and nature of the transactions. Attached as **Exhibit 1** is the bank reconciliation report for a single month, September 2016, that EBC provided to the Receiver to illustrate how voluminous the transactions were for this entity and how complex it would be to determine whether subsequent investments were reinvestments of the same cash or new cash from other sources and to provide evidence of distributions to stockholders. Due to the comingling of funds from multiple sources, delays in subsequent investments, and the fungibility of cash, it is not clear that subsequent investments made in the Receivership Parties were made with the same funds disbursed from Receivership Parties. As such, all that is ascertainable for certain is that EBC invested $19,875,917.11 into the Receivership Parties and received $11,945,618.76 in distributions from Receivership Parties, representing a 60.19% recovery.

8.      From August 2017 to August 2018, M.C. Dean invested a total of $13,925,173 in the Receivership Parties and received a total of $2,427,039 in distributions from the Receivership Parties. M.C. Dean's initial approximately $10 million dollar investment came from a bank account where the supporting bank statements were not provided to the Receiver, but subsequently, M.C. Dean maintained two bank accounts solely (except for one approximately $45,876 transaction) for the purpose of receiving disbursement and making subsequent investments in the Receivership Parties (the "M.C. Dean Accounts"). As such, it is clearer which subsequently invested funds were made from Receivership Party distributions. However, applying the same rising tide methodology as utilized for all other claimants results in M.C. Dean making $13,925,173 in investments and receiving $2,427,039 in distributions from the Receivership Parties, representing a 17.43% recovery.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on January 31, 2022.

_Eherks White_

_____
ERIK WHITE

3

JA353

# EXHIBIT 1

# EXHIBIT 1

# Reconciliation Summary

**SunTrust Bank #6777, Period Ending 09/30/2016**

|  | Sep 30, 16 |
|---|---|
| **Beginning Balance** | 295,654.89 |
| **Cleared Transactions** |  |
| **Checks and Payments - 15 items** | -43,015.68 |
| **Deposits and Credits - 33 items** | 460,877.97 |
| **Total Cleared Transactions** | 417,862.29 |
| **Cleared Balance** | **713,517.18** |
| **Uncleared Transactions** |  |
| **Checks and Payments - 12 items** | -13,313.85 |
| **Deposits and Credits - 8 items** | 3,987.59 |
| **Total Uncleared Transactions** | -9,326.26 |
| **Register Balance as of 09/30/2016** | **704,190.92** |
| **New Transactions** |  |
| **Checks and Payments - 1 item** | -3,080.00 |
| **Total New Transactions** | -3,080.00 |
| **Ending Balance** | **701,110.92** |

JA356

# Reconciliation Detail
### SunTrust Bank #6777, Period Ending 09/30/2016

| Type | Date | Num | Name | Clr | Amount | Balance |
|------|------|-----|------|-----|--------|---------|
| **Beginning Balance** | | | | | | 295,654.89 |
|   **Cleared Transactions** | | | | | | |
|     **Checks and Payments - 15 items** | | | | | | |
| Check | 08/22/2016 | 2086 | Kevin W Harper Inv… | X | -2,228.65 | -2,228.65 |
| Check | 09/02/2016 | 2088 | M.C. Dean, Inc. | X | -1,581.00 | -3,809.65 |
| Check | 09/02/2016 | ACH | Chase | X | -1,493.87 | -5,303.52 |
| Check | 09/02/2016 | ACH | Authorize.Net | X | -20.00 | -5,323.52 |
| Check | 09/06/2016 | 2087 | Crystal Ball Inc. | X | -3,220.00 | -8,543.52 |
| Check | 09/09/2016 | ACH | Casey Dean | X | -10,000.00 | -18,543.52 |
| Check | 09/09/2016 | ACH | Eric Dean | X | -10,000.00 | -28,543.52 |
| Check | 09/09/2016 | ACH | Bill Dean | X | -10,000.00 | -38,543.52 |
| Check | 09/09/2016 | ACH | Suntrust bank | X | -10.00 | -38,553.52 |
| Check | 09/09/2016 | ACH | Suntrust bank | X | -10.00 | -38,563.52 |
| Check | 09/09/2016 | ACH | Suntrust bank | X | -10.00 | -38,573.52 |
| Check | 09/15/2016 | 2089 | M.C. Dean, Inc. | X | -2,329.46 | -40,902.98 |
| Check | 09/15/2016 | 2090 | Georgia Departmen… | X | -150.00 | -41,052.98 |
| Check | 09/20/2016 | 2091 | Kevin W Harper Inv… | X | -1,902.70 | -42,955.68 |
| Check | 09/21/2016 | ACH | Suntrust bank | X | -60.00 | -43,015.68 |
|     Total Checks and Payments | | | | | -43,015.68 | -43,015.68 |
|     **Deposits and Credits - 33 items** | | | | | | |
| Payment | 09/06/2016 | 2397… | 06060011 Lloyd C. … | X | 234.26 | 234.26 |
| Payment | 09/06/2016 | 313978 | 06050005 Steven S… | X | 300.55 | 534.81 |
| Payment | 09/06/2016 | 4383… | 06010021 Brown, J… | X | 385.00 | 919.81 |
| Payment | 09/06/2016 | 7398 | 06070024 M & E IN… | X | 400.00 | 1,319.81 |
| Payment | 09/06/2016 | 1048 | 06070005 BRYAN … | X | 567.70 | 1,887.51 |
| Payment | 09/06/2016 | 1473 | 06070022 MICHAE… | X | 600.00 | 2,487.51 |
| Payment | 09/12/2016 | 2342 | 06060004 Marcie D… | X | 250.00 | 2,737.51 |
| Payment | 09/12/2016 | 0040… | 06070023 L S WIN… | X | 380.00 | 3,117.51 |
| Payment | 09/12/2016 | 0399… | 06060005 Garvin L… | X | 558.00 | 3,675.51 |
| Payment | 09/12/2016 | 512 | 06050028 Stannie … | X | 750.00 | 4,425.51 |
| Payment | 09/14/2016 | 1571 | 06070007 ARLIE G … | X | 625.00 | 5,050.51 |
| Payment | 09/16/2016 | 7953 | 06040001 Jim Benn… | X | 1,000.00 | 6,050.51 |
| Payment | 09/16/2016 | 1202… | 06050015 Spyros T… | X | 163,722.70 | 169,773.21 |
| Payment | 09/19/2016 | 562 | 06070001 WILLIAM… | X | 426.44 | 170,199.65 |
| Payment | 09/19/2016 | 2430… | 06060009 Diana Pri… | X | 521.00 | 170,720.65 |
| Payment | 09/19/2016 | 2237 | 06050055 Gloria M… | X | 620.00 | 171,340.65 |
| Deposit | 09/20/2016 | | | X | 6,000.00 | 177,340.65 |
| Payment | 09/21/2016 | ACH | 06070003 STEPHE… | X | 200.00 | 177,540.65 |
| Payment | 09/21/2016 | ACH | 06010050 G&H Plu… | X | 250.00 | 177,790.65 |
| Payment | 09/21/2016 | ACH | 06050031 Deana B… | X | 250.56 | 178,041.21 |
| Payment | 09/21/2016 | ACH | 06010058 JPC Lear… | X | 265.00 | 178,306.21 |
| Payment | 09/21/2016 | WIRE | 06030005 Julio Enri… | X | 530.00 | 178,836.21 |
| Payment | 09/21/2016 | ACH | 06060014 Scott M. … | X | 661.04 | 179,497.25 |
| Payment | 09/21/2016 | ACH | 06030002 Thomas … | X | 703.00 | 180,200.25 |
| Payment | 09/22/2016 | 1419 | 06070051 KEVIN D… | X | 151.62 | 180,351.87 |
| Payment | 09/22/2016 | 2565 | 06070004 FLORA J… | X | 465.00 | 180,816.87 |
| Payment | 09/26/2016 | 107 | 06070008 THOMA… | X | 270.00 | 181,086.87 |
| Payment | 09/26/2016 | 314330 | 06050005 Steven S… | X | 300.55 | 181,387.42 |
| Payment | 09/26/2016 | 314096 | 06050005 Steven S… | X | 300.55 | 181,687.97 |
| Payment | 09/26/2016 | 891 | 06070041 CHARLE… | X | 3,000.00 | 184,687.97 |
| Payment | 09/30/2016 | ACH-… | 06070018 STEVE F… | X | 390.00 | 185,077.97 |
| Payment | 09/30/2016 | ACH-… | 06060007 Maria Mu… | X | 800.00 | 185,877.97 |
| Deposit | 09/30/2016 | | | X | 275,000.00 | 460,877.97 |
|     Total Deposits and Credits | | | | | 460,877.97 | 460,877.97 |
|   Total Cleared Transactions | | | | | 417,862.29 | 417,862.29 |
| **Cleared Balance** | | | | | 417,862.29 | 713,517.18 |
|   **Uncleared Transactions** | | | | | | |
|     **Checks and Payments - 12 items** | | | | | | |
| Check | 04/01/2011 | 1242 … | BS & A Software | | -2.00 | -2.00 |
| Check | 12/31/2011 | | CCWB Asset Invest… | | -4,450.00 | -4,452.00 |
| Check | 02/04/2015 | 1948-… | Moore & Reese, LLC | | -244.31 | -4,696.31 |
| Check | 03/20/2015 | 1965-… | Oklahoma COunty … | | -33.00 | -4,729.31 |
| Check | 04/16/2015 | 1980 | Pierce County Auditor | | -10.00 | -4,739.31 |
| Check | 07/16/2015 | 2008 | Iredell Register of D… | | -26.00 | -4,765.31 |
| Check | 07/16/2015 | 2007 | Iredell Register of D… | | -26.00 | -4,791.31 |
| Check | 11/09/2015 | 2033 | Records Department | | -220.00 | -5,011.31 |
| Check | 12/14/2015 | 2050 | Broad and Cassel A… | | -112.50 | -5,123.81 |
| Check | 05/16/2016 | 2067-… | Crystal Ball Inc. | | -6,300.00 | -11,423.81 |
| Check | 05/16/2016 | 2069-… | Oakland County Re… | | -17.00 | -11,440.81 |
| Check | 09/27/2016 | 2092 | Cunningham, Mach… | | -1,873.04 | -13,313.85 |
|     Total Checks and Payments | | | | | -13,313.85 | -13,313.85 |

JA357

# Reconciliation Detail
## SunTrust Bank #6777, Period Ending 09/30/2016

| Type | Date | Num | Name | Clr | Amount | Balance |
|------|------|-----|------|-----|--------|---------|
| **Deposits and Credits - 8 items** | | | | | | |
| Payment | 05/06/2011 | 3099 | 06050004 Mark A. ... | | 639.92 | 639.92 |
| General Journal | 01/31/2012 | ADJ | | | 1,028.67 | 1,668.59 |
| Payment | 11/01/2015 | 2986 ... | 06070023 L S WIN... | | 338.00 | 2,006.59 |
| Payment | 11/01/2015 | 2991 ... | 06070023 L S WIN... | | 338.00 | 2,344.59 |
| Payment | 11/01/2015 | 3028 ... | 06070023 L S WIN... | | 338.00 | 2,682.59 |
| Payment | 11/01/2015 | 3022 ... | 06070023 L S WIN... | | 338.00 | 3,020.59 |
| Payment | 11/01/2015 | 4021 ... | 06050034 Martha C... | | 450.00 | 3,470.59 |
| Payment | 11/01/2015 | 1385 ... | 06050022 Wesley ... | | 517.00 | 3,987.59 |
| Total Deposits and Credits | | | | | 3,987.59 | 3,987.59 |
| Total Uncleared Transactions | | | | | -9,326.26 | -9,326.26 |
| Register Balance as of 09/30/2016 | | | | | 408,536.03 | 704,190.92 |
| **New Transactions** | | | | | | |
| **Checks and Payments - 1 item** | | | | | | |
| Check | 10/01/2016 | 2093 | Crystal Ball Inc. | | -3,080.00 | -3,080.00 |
| Total Checks and Payments | | | | | -3,080.00 | -3,080.00 |
| Total New Transactions | | | | | -3,080.00 | -3,080.00 |
| **Ending Balance** | | | | | **405,456.03** | **701,110.92** |

JA358



SUNTRUST BANK
PO BOX 305183
NASHVILLE TN 37230-5183

Page 1 of 3
36/E00/0175/0 /72
█████████6777
09/30/2016
0000

# Account Statement

EBC ASSET INVESTMENT INC
22980 INDIAN CREEK DR STE 300
STERLING VA 20166-6737

Questions? Please call
1-800-786-8787

WE ARE MAKING CHANGES TO THE POSTING ORDER PROCESS FOR YOUR DEPOSIT ACCOUNT.
AN INSERT OUTLINING THESE CHANGES IS INCLUDED WITH THIS PAPER STATEMENT OR WILL
BE SENT BY MAIL IF YOU RECEIVE AN ELECTRONIC STATEMENT.

## Account Summary

| Account Type | Account Number | Statement Period |
|---|---|---|
| PRIMARY BUSINESS CHECKING | █████6777 | 09/01/2016 - 09/30/2016 |

| Description | Amount | Description | Amount |
|---|---|---|---|
| Beginning Balance | $295,654.89 | Average Balance | $362,133.58 |
| Deposits/Credits | $460,877.97 | Average Collected Balance | $339,765.98 |
| Checks | $11,411.81 | Number of Days in Statement Period | 30 |
| Withdrawals/Debits | $31,603.87 | | |
| Ending Balance | $713,517.18 | | |

## Deposits/Credits

| Date | Amount | Serial # | | Date | Amount | Serial # | |
|---|---|---|---|---|---|---|---|
| 09/06 | 1,619.26 | | ONLINE | 09/16 | 164,722.70 | | ONLINE |
| 09/09 | 868.25 | | ONLINE | 09/19 | 1,567.44 | | ONLINE |
| 09/13 | 1,938.00 | | ONLINE | 09/22 | 616.62 | | ONLINE |
| 09/15 | 625.00 | | ONLINE | 09/26 | 3,871.10 | | ONLINE |
| 09/20 | 6,000.00 | | ONLINE BANKING TRANSFER FROM 0175 | | | ███6629 | |
| 09/21 | 2,859.60 | | ONLINE BANKING TRANSFER FROM 0175 | | | ███7922 | |
| 09/30 | 1,190.00 | | ONLINE BANKING TRANSFER FROM 0175 | | | ███7922 | |
| 09/30 | 275,000.00 | | ONLINE BANKING TRANSFER FROM 0175 | | | ███6629 | |

Deposits/Credits:  12                Total Items Deposited: 22

## Checks

| Check Number | Amount | Date Paid | Check Number | Amount | Date Paid | Check Number | Amount | Date Paid |
|---|---|---|---|---|---|---|---|---|
| 2086 | 2,228.65 | 09/01 | 2088 | 1,581.00 | 09/13 | 2090 | 150.00 | 09/22 |
| 2087 | 3,220.00 | 09/06 | 2089 | 2,329.46 | 09/21 | 2091 | 1,902.70 | 09/28 |

Checks: 6

## Withdrawals/Debits

| Date Paid | Amount | Serial # | Description |
|---|---|---|---|
| 09/02 | 20.00 | | *ELECTRONIC/ACH DEBIT* |
| | | | AUTHNET GATEWAY    BILLING    91846512 |
| 09/06 | 1,493.87 | | *ELECTRONIC/ACH DEBIT* |
| | | | CHASE                CPAY      2756452440 |
| 09/06 | 10.00 | | INTERNAL TRANSFER WIRE DR FEE TRN #005777 |
| 09/06 | 10.00 | | INTERNAL TRANSFER WIRE DR FEE TRN #005821 |
| 09/06 | 10.00 | | INTERNAL TRANSFER WIRE DR FEE TRN #005841 |
| 09/06 | 10,000.00 | | INTERNAL TRANSFER WIRE DR TRN #005777 |
| 09/06 | 10,000.00 | | INTERNAL TRANSFER WIRE DR TRN #005821 |
| 09/06 | 10,000.00 | | INTERNAL TRANSFER WIRE DR TRN #005841 |
| 09/21 | 60.00 | | ACCOUNT ANALYSIS FEE |

Withdrawals/Debits: 9

219539                          Member FDIC                 Continued on next page

JA359

SUNTRUST BANK
PO BOX 305183
NASHVILLE TN 37230-5183

36/E00/0175/0 /72
████████6777
09/30/2016



# Account Statement

| Balance Activity History | Date | Balance | Collected Balance | Date | Balance | Collected Balance |
|---|---|---|---|---|---|---|
| | 09/01 | 293,426.24 | 293,026.24 | 09/16 | 426,854.58 | 263,132.58 |
| | 09/02 | 293,406.24 | 293,006.24 | 09/19 | 426,422.02 | 263,753.02 |
| | 09/06 | 260,281.63 | 259,262.63 | 09/20 | 434,422.02 | 433,475.02 |
| | 09/07 | 260,281.63 | 259,896.63 | 09/21 | 434,892.16 | 434,892.16 |
| | 09/08 | 260,281.63 | 260,281.63 | 09/22 | 435,358.78 | 434,742.78 |
| | 09/09 | 261,149.88 | 260,281.88 | 09/23 | 435,358.78 | 435,358.78 |
| | 09/12 | 261,149.88 | 261,149.88 | 09/26 | 439,229.88 | 435,358.88 |
| | 09/13 | 261,506.88 | 259,568.88 | 09/27 | 439,229.88 | 439,229.88 |
| | 09/14 | 261,506.88 | 260,318.88 | 09/28 | 437,327.18 | 437,327.18 |
| | 09/15 | 262,131.88 | 261,506.88 | 09/30 | 713,517.18 | 713,517.18 |

**To change your address, please call 1-800-SUNTRUST (1-800-786-8787). Business clients call 1-800-752-2515**

**Complete this section to balance this statement to your transaction register.**

Month _____     Year _____

**Bank Balance** Shown on statement          $ _____

**Add (+)**
Deposits not shown on this
statement (if any).                          $ _____
                                             _____
                            **Total (+)**    $ _____
**Subtract (-)**
Checks and other items outstanding but not paid on this statement (if any).

| | $ | | | $ |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

                            **Total (-)**    $ _____
                            **Balance**      $ _____

**Your Transaction Register Balance**           $ _____

**Add (+)**
Other credits shown on
this statement but not
in transaction register.                        $ _____

**Add (+)**
Interest paid (for use in balancing interest-bearing
accounts only).
                            **Total (+)**       $ _____

**Subtract (-)** Other debits shown on this statement
but not in transaction register.

| Service Fees (if any) | $ |
|---|---|
| | |

                            **Total (-)**       $ _____
                            **Balance**         $ _____

These balances should agree ⬆

**In Case Of Errors Or Questions About Your Electronic Transfers (ETF)**
Telephone us at 800.447.8994, Option 1 or write us at SunTrust Bank, Attention: Fraud Assistance Center, P.O. Box 4418, Mail Code GA-MT-0413, Atlanta, GA 30302 as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared. (1) Tell us your name and account number (if any), (2) Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information. (3) Tell us the dollar amount of the suspected error. We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error so that you will have the use of the money during the time it takes us to complete our investigation.

JA360



SUNTRUST BANK
PO BOX 305183
NASHVILLE TN 37230-5183

Page 3 of 3
36/E00/0175/0 /72
6777
09/30/2016



## Account Statement

---



Ck # 2086    09/01    $2,228.65



Ck # 2087    09/06    $3,220.00



Ck # 2088    09/13    $1,581.00



Ck # 2089    09/21    $2,329.46



Ck # 2090    09/22    $150.00



Ck # 2091    09/28    $1,902.70

SUNTRUST BANK
PO BOX 305183
NASHVILLE TN 37230-5183

Page 1 of 2
36/E00/0175/0 /72
██████6777
09/30/2016

# SunTrust

## Account Statement

EBC ASSET INVESTMENT INC
22980 INDIAN CREEK DR STE 300
STERLING VA 20166-6737

Questions? Please call
1-800-786-8787

WE ARE MAKING CHANGES TO THE POSTING ORDER PROCESS FOR YOUR DEPOSIT ACCOUNT.
AN INSERT OUTLINING THESE CHANGES IS INCLUDED WITH THIS PAPER STATEMENT OR WILL
BE SENT BY MAIL IF YOU RECEIVE AN ELECTRONIC STATEMENT.

| Account Summary | Account Type | Account Number | | Statement Period |
|---|---|---|---|---|
| | PRIMARY BUSINESS CHECKING | ████6777 | | 09/01/2016 - 09/30/2016 |

| Description | Amount | Description | Amount |
|---|---|---|---|
| Beginning Balance | $295,654.89 | Average Balance | $362,133.58 |
| Deposits/Credits | $460,877.97 | Average Collected Balance | $339,765.98 |
| Checks | $11,411.81 | Number of Days in Statement Period | 30 |
| Withdrawals/Debits | $31,603.87 | | |
| Ending Balance | $713,517.18 | | |

43,015.68

**Deposits/Credits**

| Date | Amount | Serial # | | Date | Amount | Serial # | |
|---|---|---|---|---|---|---|---|
| 09/06 | 1,619.26 | | ONLINE | 09/16 | 164,722.70 | | ONLINE |
| 09/09 | 868.25 | | ONLINE | 09/19 | 1,567.44 | | ONLINE |
| 09/13 | 1,938.00 | | ONLINE | 09/22 | 616.62 | | ONLINE |
| 09/15 | 625.00 | | ONLINE | 09/26 | 3,871.10 | | ONLINE |
| 09/20 | 6,000.00 | | ONLINE BANKING TRANSFER FROM 0175 | | | | 6629 |
| 09/21 | 2,859.60 | | ONLINE BANKING TRANSFER FROM 0175 | | | | 7922 |
| 09/30 | 1,190.00 | | ONLINE BANKING TRANSFER FROM 0175 | | | | 7922 |
| 09/30 | 275,000.00 | Pool | ONLINE BANKING TRANSFER FROM 0175 | | | | 6629 |

Deposits/Credits: 12          Total Items Deposited: 22

**Checks**

| Check Number | Amount | Date Paid | Check Number | Amount | Date Paid | Check Number | Amount | Date Paid |
|---|---|---|---|---|---|---|---|---|
| 2086 | 2,228.65 | 09/01 | 2088 | 1,581.00 | 09/13 | 2090 | 150.00 | 09/22 |
| 2087 | 3,220.00 | 09/06 | 2089 | 2,329.46 | 09/21 | 2091 | 1,902.70 | 09/28 |

Checks: 6

**Withdrawals/Debits**

| Date Paid | Amount | Serial # | Description |
|---|---|---|---|
| 09/02 | 20.00 | | *ELECTRONIC/ACH DEBIT* |
| | | | AUTHNET GATEWAY   BILLING      91846512 |
| 09/06 | 1,493.87 | | *ELECTRONIC/ACH DEBIT* |
| | | | CHASE           EPAY        2756452440 |
| 09/06 | 10.00 | ED | INTERNAL TRANSFER WIRE DR FEE TRN #005777 |
| 09/06 | 10.00 | WCD | INTERNAL TRANSFER WIRE DR FEE TRN #005821 |
| 09/06 | 10.00 | | INTERNAL TRANSFER WIRE DR FEE TRN #005841 |
| 09/06 | 10,000.00 | ED | INTERNAL TRANSFER WIRE DR TRN #005777 |
| 09/06 | 10,000.00 | | INTERNAL TRANSFER WIRE DR TRN #005821 |
| 09/06 | 10,000.00 | WCD | INTERNAL TRANSFER WIRE DR TRN #005841 |
| 09/21 | 60.00 | WCD | ACCOUNT ANALYSIS FEE |

Withdrawals/Debits: 9

463171                       Member FDIC              Continued on next page

JA362

```
SUNTRUST BANK                                    Page 2 of 2
PO BOX 305183                                    36/E00/0175/0 /72
NASHVILLE TN 37230-5183                          ████████6777
                                                 09/30/2016
```

**SUNTRUST**

## Account Statement

| Balance Activity History | Date | Balance | Collected Balance | Date | Balance | Collected Balance |
|---|---|---|---|---|---|---|
| | 09/01 | 293,426.24 | 293,026.24 | 09/16 | 426,854.58 | 263,132.58 |
| | 09/02 | 293,406.24 | 293,006.24 | 09/19 | 428,422.02 | 263,753.02 |
| | 09/06 | 260,281.63 | 259,262.63 | 09/20 | 434,422.02 | 433,475.02 |
| | 09/07 | 260,281.63 | 259,896.63 | 09/21 | 434,892.16 | 434,892.16 |
| | 09/08 | 260,281.63 | 260,281.63 | 09/22 | 435,358.78 | 434,742.78 |
| | 09/09 | 261,149.88 | 260,281.88 | 09/23 | 435,358.78 | 435,358.78 |
| | 09/12 | 261,149.88 | 261,149.88 | 09/26 | 439,229.88 | 435,358.88 |
| | 09/13 | 261,506.88 | 259,568.88 | 09/27 | 439,229.88 | 439,229.88 |
| | 09/14 | 261,506.88 | 260,318.88 | 09/28 | 437,327.18 | 437,327.18 |
| | 09/15 | 262,131.88 | 261,506.88 | 09/30 | 713,517.18 | 713,517.18 |

463172                          Member FDIC

JA363

Case 1:18-cv-02844-RDB   Document 584-2   Filed 01/31/22   Page 15 of 85



Close Window    Print Screen

# View Transaction Printable View

| | |
|---|---|
| **Account:** | Primary Business Checking - ***************7922 |
| **Transaction:** | Debit |
| **Date/Time Cleared:** | 09/21/2016 00:00 |
| **Amount:** | $(2,859.60) |
| **Date/Time Initiated:** | 09/21/2016 00:00 |
| **FI Reference Number:** | b28f59ffa8484dab9b0506956f5c06a6 |
| **Description:** | Online Trnsfr Pymt 09-21 17:20 |

JA364

| Client Acc# | Trans Date | Amount | Credit | Pay Method |
|---|---|---|---|---|
| ████0003 | 8/30/2016 | $200.00 | $200.00 | ACH-CCWB |
| ████0005 | 9/1/2016 | $530.00 | $1,857.50 | ACH-CCWB |
| ████0058 | 9/1/2016 | $265.00 | $1,857.50 | ACH-CCWB |
| ████0002 | 9/5/2016 | $703.00 | $3,247.98 | ACH-CCWB |
| ████0014 | 9/7/2016 | $661.04 | $661.04 | ACH-CCWB |
| ████0031 | 9/15/2016 | $250.56 | $1,191.38 | ACH-CCWB |
| ████0050 | 9/15/2016 | $250.00 | $1,191.38 | ACH-CCWB |

**TRANSFER NEEDED FOR**    $2,859.60    **FROM CCWB TO EBC**

USCA4 Appeal: 22-2256     Doc: 32     Filed: 03/14/2023     Pg: 371 of 582

Case 1:18-cv-02844-RDB    Document 584-2    Filed 01/31/22    Page 17 of 85



Close Window    Print Screen

# View Transaction Printable View

|  |  |
|---|---|
| **Account:** | Primary Business Checking - **************7922 |
| **Transaction:** | Debit |
| **Date/Time Cleared:** | 09/30/2016 00:00 |
| **Amount:** | $(1,190.00) |
| **Date/Time Initiated:** | 09/30/2016 00:00 |
| **FI Reference Number:** | 9a448d4e142f44f48f0dcd1c76f090d9 |
| **Description:** | Online Trnsfr Pymt 09-30 10:52 |

JA366

| Client Acc# | Trans Date | Amount | Credit | Pay Method |
|---|---|---|---|---|
| ■0007 | 9/24/2016 | $800.00 | $800.00 | ACH-CCWB |
| ■0018 | 9/21/2016 | $390.00 | $690.00 | ACH-CCWB |

**TRANSFER NEEDED FOR** $1,190.00 **FROM CCWB TO EBC**

Transaction Activity Printable View

| Date | Transaction Description | Transaction Number | Debit (-) | Credit (+) | Balance |
|------|------------------------|--------------------|-----------|------------|---------|
| 09/28/2016 | Credit ELECTRONIC/ACH CREDIT BKCD PROCESSING DEPOSIT | 0 | | $350.00 | **$455,350.74** |
| 09/27/2016 | Debit with image CHECK | 4013 | $120.00 | | **$455,000.74** |
| 09/27/2016 | Credit ELECTRONIC/ACH CREDIT BKCD PROCESSING DEPOSIT | 0 | | $709.99 | **$455,120.74** |
| 09/27/2016 | Credit ELECTRONIC/ACH CREDIT CCWB ASSET INVES ACH SETTLE | 0 | | $690.00 | **$454,410.75** |
| 09/26/2016 | Credit with image ONLINE CHECK DEPOSIT | 0 | | $2,753.75 | **$453,720.75** |
| 09/26/2016 | Credit ELECTRONIC/ACH CREDIT CCWB ASSET INVES ACH SETTLE | 0 | | $800.00 | **$450,967.00** |
| 09/23/2016 | Credit with image ONLINE CHECK DEPOSIT | 0 | | $1,000.00 | **$450,167.00** |
| 09/23/2016 | Credit ELECTRONIC/ACH CREDIT CCWB ASSET INVES ACH SETTLE | 0 | | $750.00 | **$449,167.00** |
| 09/22/2016 | Credit ELECTRONIC/ACH CREDIT CCWB ASSET INVES ACH SETTLE | 0 | | $1,479.52 | **$448,417.00** |
| 09/22/2016 | Credit with image ONLINE CHECK DEPOSIT | 0 | | $167.87 | **$446,937.48** |
| 09/21/2016 | Debit ONLINE BANKING TRANSFER TO 0175 ▇▇▇▇5777 | 0 | $2,859.60 | | **$446,769.61** |
| 09/21/2016 | Debit with image CHECK | 4012 | $2,329.46 | | **$449,629.21** |
| 09/21/2016 | Debit ACCOUNT ANALYSIS FEE | 0 | $5.00 | | **$451,958.67** |
| 09/21/2016 | Credit ELECTRONIC/ACH CREDIT BKCD PROCESSING DEPOSIT | 0 | | $791.00 | **$451,963.67** |
| 09/21/2016 | Credit ELECTRONIC/ACH CREDIT CCWB ASSET INVES ACH SETTLE | 0 | | $606.00 | **$451,172.67** |
| 09/20/2016 | Credit ONLINE BANKING TRANSFER CREDIT FROM 0175 ▇▇▇▇6629 | 0 | | $4,000.00 | **$450,566.67** |
| 09/20/2016 | Credit ELECTRONIC/ACH CREDIT CCWB ASSET INVES ACH SETTLE | 0 | | $1,191.38 | **$446,566.67** |
| 09/19/2016 | Credit with image ONLINE CHECK DEPOSIT | 0 | | $1,015.96 | **$445,375.29** |
| 09/19/2016 | Credit ELECTRONIC/ACH CREDIT CCWB ASSET INVES ACH SETTLE | 0 | | $287.91 | **$444,359.33** |

JA368

Chase Online - Make a Payment - Confirmation                    Page 1 of 1

*AP*
*FROM CCWB*
*EBC*
*CD*  } *detail attached*
*ED*  } *Please save for*
       *each AP*



**CHASE** ⬤

## Make a Payment

✅ **You've successfully made this payment.**

**Credit card:** All Accounts
...0657

**Payment amount:** $1,493.87

**Pay from:** SUNTRUST BANK (...6777)   *EBC*

**Payment due:** 09/04/2016

**Payment date:** 09/02/2016

**Transaction number:** 2756452440 ☑

✅ **You've successfully made this payment.**

**Credit card:** All Accounts
...0657

**Payment amount:** $608.61

**Pay from:** SUNTRUST BANK (...7922)   *CCWB*

**Payment due:** 09/04/2016

**Payment date:** 09/01/2016

**Transaction number:** 2756450983 ☑

✅ **You've successfully made this payment.**

**Credit card:** All Accounts
...0657

**Payment amount:** $2,413.20

**Pay from:** SunTrust Bank (...1969)   *CD*

**Payment due:** 09/04/2016

**Payment date:** 09/03/2016

**Transaction number:** 2756454140 ☑

✅ **You've successfully made this payment.**

**Credit card:** All Accounts
...0657

**Payment amount:** $1,231.92

**Pay from:** SUNTRUST BANK (...7427)   *ED*

**Payment due:** 09/04/2016

**Payment date:** 08/31/2016

**Transaction number:** 2756449740 ☑

JA369

**BUSINESS CARD STATEMENT**

Case 1:16-cv-02844-RDB Document 584-2 Filed 01/31/22 Page 1 of 85

Manage your account online: | Customer Service: | Mobile: Visit chase.com for the mobile browser

## ACCOUNT SUMMARY

Account Number: ███████0657

| | |
|---|---|
| Previous Balance | $6,962.08 |
| Payment, Credits | -$6,962.08 |
| Purchases | +$5,747.60 |
| Cash Advances | $0.00 |
| Balance Transfers | $0.00 |
| Fees Charged | $0.00 |
| Interest Charged | $0.00 |
| New Balance | $5,747.60 |

| | |
|---|---|
| Opening/Closing Date | 07/11/16 - 08/10/16 |
| Revolving Credit Amount | $23,000 |
| Available Credit | $17,252 |
| Cash Access Line | $4,600 |
| Available for Cash | $4,600 |

| | |
|---|---|
| Past Due Amount | $0.00 |
| Balance over the Credit Access Line | $0.00 |

## PAYMENT INFORMATION

| | |
|---|---|
| New Balance | $5,747.60 |
| Payment Due Date | 09/04/16 |
| Minimum Payment Due | $57.00 |

**Late Payment Warning:** If we do not receive your minimum payment by the due date, you may have to pay up to a $39 late fee.

**Minimum Payment Warning:** Enroll in Auto-Pay and avoid missing a payment. To enroll, call the number on the back of your card or go to the web site listed above.

## CHASE ULTIMATE REWARDS® SUMMARY

| | |
|---|---|
| Previous points balance | 549,606 |
| + 1 Point per $1 earned on all purchases | 5,748 |
| = Total points available for redemption | 555,354 |

*[handwritten: CD - $2,413.20]*
*[handwritten: CCWD - 608.61]*
*[handwritten: EB - $1,231.92]*
*[handwritten: EBC - 1,493.87]*

## ACCOUNT ACTIVITY

| Date of Transaction | Merchant Name or Transaction Description | $ Amount |
|---|---|---|
| 07/26 | Payment Thank You - Web | -3,865.58 |
| 07/27 | Payment Thank You - Web | -1,955.99 |
| 07/28 | Payment Thank You - Web | -1,140.51 |
| 07/12 | AT&T*BILL PAYMENT 800-331-0500 TX | 391.09 |
| 07/14 | J2 EFAX SERVICES 323-817-3205 CA | 16.95 |
| 07/19 | Experian *CreditReport 866-5827269 CA | 19.95 |
| 07/20 | AMERICAN AIR0012383244547 FORT WORTH TX | 402.20 |
| | 081516 1 S   DCA   SRQ | |
| | 2 W   SRQ   DCA | |
| 07/21 | EZPASS VIRGINI00200022 703-3917630 VA | 225.00 |
| 07/20 | AMERICAN AIR0012383244542 FORT WORTH TX | 402.20 |
| | 081516 1 S   DCA   SRQ | |
| | 2 W   SRQ   DCA | |
| 07/20 | AMERICAN AIR0012383244543 FORT WORTH TX | 402.20 |
| | 081516 1 S   DCA   SRQ | |
| | 2 W   SRQ   DCA | |
| 07/20 | AMERICAN AIR0012383244544 FORT WORTH TX | 402.20 |
| | 081516 1 S   DCA   SRQ | |
| | 2 W   SRQ   DCA | |

*[handwritten: CCW 195.54 / EBC 190.44]*
*[handwritten: ← 225.00 — EDC]*
*[handwritten: PERSONAL to be paid by CD]*

JA370



DA11242015

You may make payments electronically through our website or by one of our above listed customer service telephone numbers. If we receive your completed payment request through one of these channels by 8 p.m. Eastern Time, we will credit your payment as of that day. If we receive your request after 8 p.m. Eastern Time, we will credit your payment as of the next calendar day. If you specify a future date in your request we will credit your payment as of that day.

For all other payments or for any payment type above for which you do not follow our payment instructions, crediting of your payments may be delayed for up to 5 days.

**Account Information Reported to Credit Bureaus:** We may report information about your Account to credit bureaus. Late payments, missed payments or other defaults on your Account may be reflected in your credit report. If you think we have reported inaccurate information to a credit bureau, you may write to us at the Inquiries address shown on this statement.

**Notice About Electronic Check Conversion:** When you pay by check, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution. Call the Customer Service number on this statement if you have questions about electronic check collection or do not want your payments collected electronically.

**Conditional Payments:** Any payment check or other form of payment that you send us for less than the full balance due that is marked "paid in full" or contains a similar notation, or that you otherwise tender in full satisfaction of a disputed amount, must be sent to Card Services, P.O. Box 15049, Wilmington, DE 19850-5049. We reserve all our rights regarding these payments (e.g., if it is determined there is no valid dispute

balance method (including new transactions). To figure your periodic interest charges for each billing cycle when a monthly periodic rate(s) applies, we use the average daily balance method (including new transactions). For an explanation of either method, and questions about a particular interest charge calculation on your statement, please call us at the toll free customer service phone number listed above.

We calculate periodic interest charges, using the applicable periodic rates shown on this statement, separately for each feature (e.g., balance transfer checks and cash advance checks ("check transaction"), purchases, balance transfers, cash advances, promotional balances or overdraft advances). These calculations may combine different categories with the same periodic rates. Variable rates will vary with the market based on the Prime Rate (or such index described in your Account Agreement). There is a transaction fee for each balance transfer, cash advance, or check transaction, in the amounts stated in your Account Agreement, as it may be amended. There is a foreign transaction fee of 3% of the U.S. dollar amount of any foreign transaction (or such amount described in your Account Agreement).

**Interest Accrual**

We accrue periodic interest charges on a transaction, fee or interest charge from the date it is added to your daily balance until payment in full is received on your account.

**Payment Allocation**

When you make a payment, generally, we first apply your minimum payment to the balance on your monthly statement with the lowest APR. Any payment above your minimum payment would generally then be applied to the balance on your monthly statement with the highest APR first. If you do not pay your balance in full each month, you may not be able to avoid interest charges on new purchases.

4246315170570657000057000057476000000006

ink. from CHASE
P.O. BOX 15123
WILMINGTON, DE
19850-5123

Get updates on the go
Log on to chase.com/alerts

| | |
|---|---|
| **Payment Due Date:** | **09/04/16** |
| **New Balance:** | **$5,747.60** |
| **Minimum Payment:** | **$57.00** |

**Account number:** [redacted] **0657**

$ ____________________ Amount Enclosed

Make your check payable to: Chase Card Services

18345 BEX Z 22316 C

ERIC C DEAN
EBC ASSET INVESTMENT ,IN
PO BOX 196
STERLING VA 20167-0196

CARDMEMBER SERVICE
PO BOX 1423
CHARLOTTE NC 28201-1423

⑆500016028⑆1595170570657O⑈

**BUSINESS CARD STATEMENT**

| | |
|---|---|
| Manage your account online: www.chase.com/mil | Customer Service: 1-800-... | Mobile: Visit chase.com on your mobile browser |

## ACCOUNT ACTIVITY                    (CONTINUED)

| Date of Transaction | Merchant Name or Transaction Description | $ Amount |
|---|---|---|
| 07/20 | AMERICAN AIR0012383244545 FORT WORTH TX | 402.20 |
| | 081516 1 S        DCA       SRQ | |
| | 2 W             SRQ       DCA | |
| 07/20 | AMERICAN AIR0012383244546 FORT WORTH TX | 402.20 |
| | 081516 1 S        DCA       SRQ | |
| | 2 W             SRQ       DCA | |
| 07/22 | PAYPAL *ITUNESSTORE 402-935-7733 CA | .99 |
| 07/25 | J2 *EVOICE 866-761-8109 CA | 39.80 |
| 07/25 | COGI, INC. 805-6244374 CA | 29.95 |
| 07/26 | VERIZON*RECURRING PAY 800-VERIZON PA | 222.01 |
| 07/26 | GEEKSQUADPLAN 00015784 800-4335778 MN | 10.99 |
| 07/26 | EZPASS VIRGINI00200022 703-3917630 VA | 145.00 |
| 08/01 | GOOGLE *SVCSAPPS_ericd cc@google.com CA | 4.16 |
| 08/02 | GOOGLE *SVCSAPPS_cryst cc@google.com CA | 4.16 |
| 08/03 | GOOGLE *SVCSAPPS_ebcas cc@google.com CA | 20.50 |
| 08/03 | USA*SNACK SODA VENDING RUTHER GLEN VA | 2.65 |
| 08/02 | USPS POSTAGE (INTERNET) MOUNTAIN VIEW CA | 25.00 |
| 08/03 | Amazon web services aws.amazon.co WA | 70.14 |
| 08/03 | USA*SNACK SODA VENDING RUTHER GLEN VA | 2.00 |
| 08/06 | RIVER CREEK CCACCOUNT 703-779-2022 VA | 386.10 |
| 08/05 | GREAT WOLF WILLIAMSBG WILLIAMSBURG VA | 734.58 |
| 08/06 | Amazon web services aws.amazon.co WA | 41.10 |
| 08/07 | IN *THE INTERPROSE CORPOR 360-6043532 WA | 786.34 |
| 08/09 | WEB*NETWORKSOLUTIONS 888-642-9675 FL | 155.94 |
| | ERIC C DEAN | |
| | TRANSACTIONS THIS CYCLE (CARD 0657)  -$1,214.48 | |
| | INCLUDING PAYMENTS RECEIVED | |

| 2016 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2016 | $39.00 |
| Total interest charged in 2016 | $572.43 |

Year-to-date totals do not reflect any fee or interest refunds
you may have received.

## INTEREST CHARGES

Your **Annual Percentage Rate (APR)** is the annual interest rate on your account.

| Balance Type | Annual Percentage Rate (APR) | Balance Subject To Interest Rate | Interest Charges |
|---|---|---|---|
| **PURCHASES** | | | |
| Purchases | 15.49% (v) | -0- | -0- |
| **CASH ADVANCES** | | | |
| Cash Advances | 19.49% (v) | -0- | -0- |
| **BALANCE TRANSFERS** | | | |
| Balance Transfer | 15.49% (v) | -0- | -0- |

'v) = Variable Rate                                    **31 Days in Billing Period**

...se see Information About Your Account section for the Calculation of Balance Subject to Interest Rate, Annual Renewal Notice, How to ... Interest on Purchases, and other important information, as applicable.

JA372

July 28, 2016
SunTrust Bank

Please process a wire transfer from Checking Account # █████ 1969 in the amount
of $ 2,951.57 needs be completed as soon as possible.

The information on the wire is as follows:

<div align="center">

SunTrust Bank
**For credit to the account of:**
EBC Asset Investment,Inc
Account # █████ 6629

Memo:
</div>

reimbursement for the travel cost to Sarasota that paid by EBC's CC by Eric – see email

Thank you for your prompt attention to this matter. Please call Alyona Bragg at 571-262-
8346 if you should have any questions or need any additional information.

Best regards,

Marion Casey Dean

<div align="center">

**JA373**

</div>

**Alyona Bragg**

| | |
|---|---|
| **From:** | Casey Dean |
| **Sent:** | Wednesday, July 27, 2016 5:40 PM |
| **To:** | Alyona Bragg |
| **Subject:** | RE: Travel Expense Reimbursement - Flight/Car to Sarasota -$2,951.57 |

Yes
I am also paying for Lauren.
Don't have that yet

**From:** Alyona Bragg
**Sent:** Wednesday, July 27, 2016 2:48 PM
**To:** Casey Dean
**Subject:** Travel Expense Reimbursement - Flight/Car to Sarasota -$2,951.57

Hello Casey
I got email from Laura with info about reimbursement the cost for Eric's family travel to your estate in Sarasota . The total  travel cost is $2,951.57. Details are below.
By chance , please advise if you would like me to proceed with these travel expenses  reimbursement  from your account . Thank you

*Thanks much ,*

*Alyona L. Bragg*
*Executive  Investment Manager*

**M.C.Dean, INC.**
**22980 Indian Creek Drive, Suite 300**
**Dulles, Virginia 20166**
☎**Phone:  571-262-8346**
📠**Fax :    703-463-2680**
📧**email :** Alyona.Bragg@mcdean.com

**From:** Laura Dean [mailto:laura@ebcassetinvestment.com]
**Sent:** Wednesday, July 27, 2016 2:36 PM
**To:** Alyona Bragg
**Cc:** FWD_Eric Dean
**Subject:** Expense Reimbursement - Flight/Car

Good afternoon Aly,

Below you will find the travel expenses for our trip to Sarasota for reimbursement.

Thank you,
Laura



1

JA374

# eTicket Itinerary & Receipt Confirmation

Ticket Issued: Jul 20, 2016

## Eric Dean,

Thank you for choosing American Airlines / American Eagle, a member of the **one**world® Alliance. Below are your itinerary and receipt for the ticket(s) purchased. Please print and retain this document for use throughout your trip.

You may check in and obtain your boarding pass for U.S. domestic electronic tickets within 24 hours of your flight time online at AA.com by using www.aa.com/checkin or at a Self-Service Check-In machine at the airport. Check-in options may be found at www.aa.com/options. For information regarding American Airlines checked baggage policies, please visit www.aa.com/baggageinfo.

To receive updated flight status notifications, please visit www.aa.com/notifications.

**For faster check-in at the airport, scan the barcode below at any AA Self-Service machine.**

You must present a government-issued photo ID and either your boarding pass or a priority verification card at the security screening checkpoint.

You can now Manage Your Reservation on aa.com, where you can check in and purchase additional items to customize your journey. A variety of seating options are also available for purchase to enhance your travel with features such as convenient front of cabin location, extra legroom and early boarding.

 Book a hotel »
Book a car »

 Remind me to Uber »
Buy trip insurance »





2

JA375

Record Locator **AIHUMC** 

## Itinerary

| Carrier | Flight # | Departing | Arriving | Fare Code |
|---------|----------|-----------|----------|-----------|
| American | 5332 | WASHINGTON REAGAN MON 15AUG 8:45 PM | SARASOTA/BRADENTN 11:06 PM | S |

OPERATED BY PSA AIRLINES AS AMERICAN EAGLE

| | | | | |
|---------|----------|-----------|----------|-----------|
| Laura Dean | | Economy | | Food For Purchase |
| Eric Dean | | Economy | | Food For Purchase |
| Chd ▮ Dean Chd | | Economy | | Food For Purchase |
| Chd ▮ Dean Chd | | Economy | | Food For Purchase |
| Luz Fiallega | | Economy | | Food For Purchase |
| Julie Jin | | Economy | | Food For Purchase |

| Carrier | Flight # | Departing | Arriving | Fare Code |
|---------|----------|-----------|----------|-----------|
| American | 5067 | SARASOTA/BRADENTN SUN 21AUG 8:45 AM | WASHINGTON REAGAN 11:00 AM | W |

OPERATED BY PSA AIRLINES AS AMERICAN EAGLE

| | | | | |
|---------|----------|-----------|----------|-----------|
| Laura Dean | | Economy | | Food For Purchase |
| Eric Dean | | Economy | | Food For Purchase |
| Chd ▮ Dean Chd | | Economy | | Food For Purchase |
| Chd ▮ Dean Chd | | Economy | | Food For Purchase |
| Luz Fiallega | | Economy | | Food For Purchase |
| Julie Jin | | Economy | | Food For Purchase |

## Receipt

| Passenger | Ticket # | Fare-USD | Taxes and Carrier-Imposed Fees | Ticket Total |
|-----------|----------|----------|-------------------------------|--------------|
| Laura Dean | 0012383244542 | 347.90 | 54.30 | 402.20 |
| Eric Dean | 0012383244543 | 347.90 | 54.30 | 402.20 |
| Chd ▮ Dean Chd | 0012383244544 | 347.90 | 54.30 | 402.20 |
| Chd ▮ Dean Chd | 0012383244545 | 347.90 | 54.30 | 402.20 |
| Luz Fiallega | 0012383244546 | 347.90 | 54.30 | 402.20 |
| Julie Jin | 0012383244547 | 347.90 | 54.30 | 402.20 |

3

JA376

| Visa XXXXXXXXXXXXX0657 | $ 2413.20 |
| --- | --- |

## Your Reservation   Modify this reservation

### Pick-up & Return

**Pick-up**
Mon, Aug 15, 2016 08:00 PM
Sarasota Intl Arpt (SRQ)
6000 Airport Cir
Sarasota FL 34243 US

**Return**
Sun, Aug 21, 2016 12:00 PM
Sarasota Intl Arpt (SRQ)
6000 Airport Cir
Sarasota FL 34243 US

### Your Vehicle & Add-Ons



**Car Summary**
Fullsize SUV
Chevy Tahoe or similar
Cruise Control
Power Windows
Automatic Transmission
Air Conditioning
Power Door Locks

**Your Options**
Child Safety Seat

### Your Rate

**Rates & Charges**
1 Week(s) @375.50
UNLIMITED MILEAGE
1 Child Safety Seat

4

JA377

**Alyona Bragg**

| | |
|---|---|
| **From:** | Eric Dean <eric@ebcassetinvestment.com> |
| **Sent:** | Thursday, July 28, 2016 10:19 AM |
| **To:** | Alyona Bragg |
| **Subject:** | Re: Travel Expense Reimbursement - Flight/Car  to Sarasota -$2,951.57 |

Oh..we used EBC cc

Best,
Eric Dean

On Jul 28, 2016, at 9:52 AM, Alyona Bragg <Alyona.Bragg@mcdean.com> wrote:

> Yes, What  your account do you want me to put reimbursement  for it ?
>
> *Thanks much ,*
> *Alyona L. Bragg*
>
> **From:** Eric Dean [mailto:eric@ebcassetinvestment.com]
> **Sent:** Thursday, July 28, 2016 9:51 AM
> **To:** Alyona Bragg
> **Subject:** Re: Travel Expense Reimbursement - Flight/Car to Sarasota -$2,951.57
>
> Dad is paying
>
> Best,
> Eric Dean
>
> On Jul 28, 2016, at 8:41 AM, Alyona Bragg <Alyona.Bragg@mcdean.com> wrote:
>
>> Hi Eric,
>>  DO you want me to put reimbursement for the travel  to Sarasota on your SunTrust
>> account or another one with capital bank ?
>>
>> *Thanks much ,*
>> *Alyona L. Bragg*
>> *Executive  Investment Manager*
>>
>>  **M.C.Dean, INC.**
>> **22980 Indian Creek Drive, Suite 300**
>> **Dulles, Virginia 20166**
>> ☎**Phone:  571-262-8346**
>> **Fax :    703-463-2680**
>> **email : Alyona.Bragg@mcdean.com**
>>
>>
>> **From:** Laura Dean [mailto:laura@ebcassetinvestment.com]
>> **Sent:** Wednesday, July 27, 2016 2:36 PM
>> **To:** Alyona Bragg
>> **Cc:** FWD_Eric Dean
>> **Subject:** Expense Reimbursement - Flight/Car

1

JA378

# EBC Asset Investment, Inc

September 6, 2016

SunTrust Bank

Please process a wire transfer from Checking Account #███████6777 in the amount of $ 10,000.00 . Transfer needs be completed as soon as possible.

The information on the wire is as follows:

SunTrust Bank
**For credit to the account of:**
Marion Casey Dean
Account # ██████1969

MEMO: Distribution for Eric request

Thank you for your prompt attention to this matter. Please call Alyona Bragg at 571-262-8346 if you should have any questions or need any additional information.

Best regards,

Eric  Dean

5841

JA379

**Alyona Bragg**

| | |
|---|---|
| **From:** | Alyona Bragg |
| **Sent:** | Tuesday, September 06, 2016 9:17 AM |
| **To:** | 'Eric Dean' |
| **Subject:** | Distribution to your account on 10K  from EBC was completed to proceed with payment to Lynn . Another SHD got 10K from EBC evently as well. Thanks |

*Thanks much ,*

*Alyona L. Bragg*
*Executive  Investment Manager*

 **M.C.Dean, INC.**
**22980 Indian Creek Drive, Suite 300**
**Dulles, Virginia 20166**
☎**Phone: 571-262-8346**
📠**Fax :    703-463-2680**
📧 email : Alyona.Bragg@mcdean.com



1

JA380

**Alyona Bragg**

**Subject:**                    distro


-----Original Message-----
From: Eric Dean [mailto:eric@ebcassetinvestment.com]
Sent: Sunday, July 03, 2016 1:28 PM
To: Alyona Bragg
Subject: Re: Bill's expenses

Yes please.  $10k should cover expenses... ██████got braces this month 8-)

On 7/3/16 1:26 PM, Alyona Bragg wrote:
> Ok , do you want me to do it monthly as of now until your further notice ?
>
> Sent from my iPhone
>
>> On Jul 3, 2016, at 1:24 PM, Eric Dean <eric@ebcassetinvestment.com> wrote:
>>
>> I just need to cover Lynn's check and my Amex. It will vary
>> between$5k and $10k
>>
>>> On 7/3/16 1:23 PM, Alyona Bragg wrote:
>>> Hi Eric ,
>>> Understood . How much of distribution do you want to proceed  to you and partners from EBC ?
>>> Thanks
>>> Alyona
>>>
>>> Sent from my iPhone
>>>
>>>> On Jul 3, 2016, at 12:15 PM, Eric Dean <eric@ebcassetinvestment.com> wrote:
>>>>
>>>> Aly
>>>>
>>>> If Bill wants to draw upon his capital basis in EBC and return it (or not) that's fine, just treat it as such.
>>>>
>>>> I will not be returning it so I have to treat as a distro with
>>>> dollar for dollar to partners
>>>>
>>>> Best,
>>>> Eric Dean
>>> _____
>>>
>>> LEGAL DISCLAIMER: M.C. Dean, Inc. and its subsidiaries considers this e-mail and any files transmitted with it to be
protected, proprietary or privileged information intended solely for the use of the named recipient(s). Any disclosure of
this material or the information contained herein, in whole or in part, to anyone outside of the intended recipient or
affiliates is strictly prohibited. M. C. Dean, Inc. accepts no liability for the content of this e-mail or for the consequences
of any actions taken on the basis of the information contained in it, unless that information is subsequently confirmed in
writing. Employees of M.C. Dean, Inc. are instructed not to infringe on any rights of the recipient; any such

1

JA381

communication violates company policy. If you are not the intended recipient, any disclosure, copying, distribution, or action taken or omitted in reliance on this information is strictly prohibited by M.C. Dean, Inc.; please notify the sender immediately by return e-mail, delete this communication and destroy all copies.
>>
>> --
>> In accordance with 15 U.S.C. 1692e (11), please be advised that the
>> purpose of this letter is to collect a debt, and any information
>> obtained from you will be used for that purpose.
>> ********************************************************************
>> **** This email and any files attached with it are confidential and
>> intended solely for the use of the individual or entity to whom they
>> are addressed.
>> If you have received this email in error, please contact us at the
>> number provided above or email eric@ebcassetinvestment.com
>> ********************************************************************
>> ****
>>
>>
> _____
>
> LEGAL DISCLAIMER: M.C. Dean, Inc. and its subsidiaries considers this e-mail and any files transmitted with it to be protected, proprietary or privileged information intended solely for the use of the named recipient(s). Any disclosure of this material or the information contained herein, in whole or in part, to anyone outside of the intended recipient or affiliates is strictly prohibited. M. C. Dean, Inc. accepts no liability for the content of this e-mail or for the consequences of any actions taken on the basis of the information contained in it, unless that information is subsequently confirmed in writing. Employees of M.C. Dean, Inc. are instructed not to infringe on any rights of the recipient; any such communication violates company policy. If you are not the intended recipient, any disclosure, copying, distribution, or action taken or omitted in reliance on this information is strictly prohibited by M.C. Dean, Inc.; please notify the sender immediately by return e-mail, delete this communication and destroy all copies.


--
In accordance with 15 U.S.C. 1692e (11), please be advised that the purpose of this letter is to collect a debt, and any information obtained from you will be used for that purpose.

********************************************************************
This email and any files attached with it are confidential and intended solely for the use of the individual or entity to whom they are addressed.
If you have received this email in error, please contact us at the number provided above or email eric@ebcassetinvestment.com
********************************************************************

2

JA382

# EBC Asset Investment, Inc

September 6, 2016

Please process a Wire Transfer from checking Account # ███████6777

in the amount of $10,000.00Transfer needs be completed as soon as possible.

The information on the wire is as follows:

Bank Name
SunTrust Bank

**For credit to the account of:**
**Account Name**
**William H Dean**
████████0979

Memo :  Distributions per Eric request

Thank you for your prompt attention to this matter. Please call Alyona Bragg at 571-262-8346 if you should have any questions or need any additional information.

Best regards,

Eric  Dean

5821

**Alyona Bragg**

| | |
|---|---|
| **From:** | Alyona Bragg |
| **Sent:** | Tuesday, September 06, 2016 9:17 AM |
| **To:** | 'Eric Dean' |
| **Subject:** | Distribution to your account on 10K  from EBC was completed to proceed with payment to Lynn . Another SHD got 10K from EBC evently as well. Thanks |

*Thanks much ,*

*Alyona L. Bragg*
*Executive  Investment Manager*

 M.C.Dean, INC.
**22980 Indian Creek Drive, Suite 300**
**Dulles, Virginia 20166**
☎**Phone:  571-262-8346**
🖷**Fax :     703-463-2680**
✆ **email : Alyona.Bragg@mcdean.com**



1

JA384

**Alyona Bragg**

**Subject:**                    distro


-----Original Message-----
From: Eric Dean [mailto:eric@ebcassetinvestment.com]
Sent: Sunday, July 03, 2016 1:28 PM
To: Alyona Bragg
Subject: Re: Bill's expenses

Yes please.  $10k should cover expenses...█████ got braces this month 8-)

On 7/3/16 1:26 PM, Alyona Bragg wrote:
> Ok , do you want me to do it monthly as of now until your further notice ?
>
> Sent from my iPhone
>
>> On Jul 3, 2016, at 1:24 PM, Eric Dean <eric@ebcassetinvestment.com> wrote:
>>
>> I just need to cover Lynn's check and my Amex. It will vary
>> between$5k and $10k
>>
>>> On 7/3/16 1:23 PM, Alyona Bragg wrote:
>>> Hi Eric ,
>>> Understood . How much of distribution do you want to proceed  to you and partners from EBC ?
>>> Thanks
>>> Alyona
>>>
>>> Sent from my iPhone
>>>
>>>> On Jul 3, 2016, at 12:15 PM, Eric Dean <eric@ebcassetinvestment.com> wrote:
>>>>
>>>> Aly
>>>>
>>>> If Bill wants to draw upon his capital basis in EBC and return it (or not) that's fine, just treat it as such.
>>>>
>>>> I will not be returning it so I have to treat as a distro with
>>>> dollar for dollar to partners
>>>>
>>>> Best,
>>>> Eric Dean
>>> _____
>>>
>>> LEGAL DISCLAIMER: M.C. Dean, Inc. and its subsidiaries considers this e-mail and any files transmitted with it to be
protected, proprietary or privileged information intended solely for the use of the named recipient(s). Any disclosure of
this material or the information contained herein, in whole or in part, to anyone outside of the intended recipient or
affiliates is strictly prohibited. M. C. Dean, Inc. accepts no liability for the content of this e-mail or for the consequences
of any actions taken on the basis of the information contained in it, unless that information is subsequently confirmed in
writing. Employees of M.C. Dean, Inc. are instructed not to infringe on any rights of the recipient; any such

1

communication violates company policy. If you are not the intended recipient, any disclosure, copying, distribution, or action taken or omitted in reliance on this information is strictly prohibited by M.C. Dean, Inc.; please notify the sender immediately by return e-mail, delete this communication and destroy all copies.
>>
>> --
>> In accordance with 15 U.S.C. 1692e (11), please be advised that the
>> purpose of this letter is to collect a debt, and any information
>> obtained from you will be used for that purpose.
>> ***********************************************************************
>> **** This email and any files attached with it are confidential and
>> intended solely for the use of the individual or entity to whom they
>> are addressed.
>> If you have received this email in error, please contact us at the
>> number provided above or email eric@ebcassetinvestment.com
>> ***********************************************************************
>> ****
>>
>>
> _____
>
> LEGAL DISCLAIMER: M.C. Dean, Inc. and its subsidiaries considers this e-mail and any files transmitted with it to be protected, proprietary or privileged information intended solely for the use of the named recipient(s). Any disclosure of this material or the information contained herein, in whole or in part, to anyone outside of the intended recipient or affiliates is strictly prohibited. M. C. Dean, Inc. accepts no liability for the content of this e-mail or for the consequences of any actions taken on the basis of the information contained in it, unless that information is subsequently confirmed in writing. Employees of M.C. Dean, Inc. are instructed not to infringe on any rights of the recipient; any such communication violates company policy. If you are not the intended recipient, any disclosure, copying, distribution, or action taken or omitted in reliance on this information is strictly prohibited by M.C. Dean, Inc.; please notify the sender immediately by return e-mail, delete this communication and destroy all copies.


--
In accordance with 15 U.S.C. 1692e (11), please be advised that the purpose of this letter is to collect a debt, and any information obtained from you will be used for that purpose.

***********************************************************************
This email and any files attached with it are confidential and intended solely for the use of the individual or entity to whom they are addressed.
If you have received this email in error, please contact us at the number provided above or email eric@ebcassetinvestment.com
***********************************************************************

2

JA386

# EBC Asset Investment, Inc

September 6, 2016

SunTrust Bank

Please process a wire transfer from my checking account #██████6777 in the amount of 10,000.00 . The transfer needs be completed as soon as possible.

The information on the wire is as follows:

Suntrust Banks

ABA:

**For credit to the account of:**
Eric Casey Dean
Account #██████7427

Memo:  Distribution per Eric request

Thank you for your prompt attention to this matter. Please call Alyona Bragg at 571-262-8346 if you should have any questions or need any additional information.

Best regards,

Eric Dean

*5777*

JA387

**Alyona Bragg**

| | |
|---|---|
| **From:** | Alyona Bragg |
| **Sent:** | Tuesday, September 06, 2016 9:17 AM |
| **To:** | 'Eric Dean' |
| **Subject:** | Distribution to your account on 10K  from EBC was completed to proceed with payment to Lynn . Another SHD got 10K from EBC evently as well. Thanks |

*Thanks much ,*

*Alyona L. Bragg*
*Executive  Investment Manager*

 **M.C.Dean, INC.**
**22980 Indian Creek Drive, Suite 300**
**Dulles, Virginia 20166**
☎**Phone: 571-262-8346**
📠**Fax :    703-463-2680**
✎ **email : Alyona.Bragg@medean.com**



1

JA388

**Alyona Bragg**

**Subject:**                    distro

-----Original Message-----
From: Eric Dean [mailto:eric@ebcassetinvestment.com]
Sent: Sunday, July 03, 2016 1:28 PM
To: Alyona Bragg
Subject: Re: Bill's expenses

Yes please.  $10k should cover expenses... █████ got braces this month 8-)

On 7/3/16 1:26 PM, Alyona Bragg wrote:
> Ok , do you want me to do it monthly as of now until your further notice ?
>
> Sent from my iPhone
>
>> On Jul 3, 2016, at 1:24 PM, Eric Dean <eric@ebcassetinvestment.com> wrote:
>>
>> I just need to cover Lynn's check and my Amex. It will vary
>> between$5k and $10k
>>
>>> On 7/3/16 1:23 PM, Alyona Bragg wrote:
>>> Hi Eric ,
>>> Understood . How much of distribution do you want to proceed  to you and partners from EBC ?
>>> Thanks
>>> Alyona
>>>
>>> Sent from my iPhone
>>>
>>>> On Jul 3, 2016, at 12:15 PM, Eric Dean <eric@ebcassetinvestment.com> wrote:
>>>>
>>>> Aly
>>>>
>>>> If Bill wants to draw upon his capital basis in EBC and return it (or not) that's fine, just treat it as such.
>>>>
>>>> I will not be returning it so I have to treat as a distro with
>>>> dollar for dollar to partners
>>>>
>>>> Best,
>>>> Eric Dean
>>> _____
>>>
>>> LEGAL DISCLAIMER: M.C. Dean, Inc. and its subsidiaries considers this e-mail and any files transmitted with it to be protected, proprietary or privileged information intended solely for the use of the named recipient(s). Any disclosure of this material or the information contained herein, in whole or in part, to anyone outside of the intended recipient or affiliates is strictly prohibited. M. C. Dean, Inc. accepts no liability for the content of this e-mail or for the consequences of any actions taken on the basis of the information contained in it, unless that information is subsequently confirmed in writing. Employees of M.C. Dean, Inc. are instructed not to infringe on any rights of the recipient; any such

1

JA389

communication violates company policy. If you are not the intended recipient, any disclosure, copying, distribution, or action taken or omitted in reliance on this information is strictly prohibited by M.C. Dean, Inc.; please notify the sender immediately by return e-mail, delete this communication and destroy all copies.

>>
>> --
>> In accordance with 15 U.S.C. 1692e (11), please be advised that the
>> purpose of this letter is to collect a debt, and any information
>> obtained from you will be used for that purpose.
>> *********************************************************************
>> **** This email and any files attached with it are confidential and
>> intended solely for the use of the individual or entity to whom they
>> are addressed.
>> If you have received this email in error, please contact us at the
>> number provided above or email eric@ebcassetinvestment.com
>> *********************************************************************
>> ****
>>
>>
> _____
>
> LEGAL DISCLAIMER: M.C. Dean, Inc. and its subsidiaries considers this e-mail and any files transmitted with it to be protected, proprietary or privileged information intended solely for the use of the named recipient(s). Any disclosure of this material or the information contained herein, in whole or in part, to anyone outside of the intended recipient or affiliates is strictly prohibited. M. C. Dean, Inc. accepts no liability for the content of this e-mail or for the consequences of any actions taken on the basis of the information contained in it, unless that information is subsequently confirmed in writing. Employees of M.C. Dean, Inc. are instructed not to infringe on any rights of the recipient; any such communication violates company policy. If you are not the intended recipient, any disclosure, copying, distribution, or action taken or omitted in reliance on this information is strictly prohibited by M.C. Dean, Inc.; please notify the sender immediately by return e-mail, delete this communication and destroy all copies.


--
In accordance with 15 U.S.C. 1692e (11), please be advised that the purpose of this letter is to collect a debt, and any information obtained from you will be used for that purpose.

*********************************************************************
This email and any files attached with it are confidential and intended solely for the use of the individual or entity to whom they are addressed.
If you have received this email in error, please contact us at the number provided above or email eric@ebcassetinvestment.com
*********************************************************************

2

JA390

## Image Deposit Items Detail Report - Customer: EBC Asset Investment Inc, Deposit: 001037

**Report Settings**

| | |
|---|---|
| Sort Criteria: | Sequence |
| Filtered Fields: | |

**Amount/Item Totals**

| | |
|---|---|
| Total Number of Items: | 5 |
| Total Amount of Deposit: | 1619.26 USD |

**Report Details**

| | | | |
|---|---|---|---|
| Location: | 22461 Shaw Rd | Status: | Received |
| Account Number: | *********6777 - EBC Asset Investment Inc | Transferred by: | 5AL661BR |
| Assigned to: | 5AL661BR | Sent Date and Time: | Sep 06, 2016 02:21 PM |
| Create Date and Time: | Sep 06, 2016 02:20 PM | Received Date and Time: | Sep 06, 2016 02:21 PM |

| Sequence | Item Type | Serial | Routing Transit | Account | T/C | Amount ($) |
|---|---|---|---|---|---|---|
| | Virtual Credit Item | | 510001751 | 6777 | | 1,619.26 |
| 1 | Personal Check | | 053100465 | 3378 | 1473 | 600.00 |
| 2 | Personal Check | | 000008002 | 0116 | | 234.26 |
| 3 | Business Check | 007398 | 053012728 | 5336 | | 400.00 |
| 4 | Business Check | 4383468 | 043301627 | 2143 | | 385.00 |

JA391



JA392

**Deposit Item List - 001037**

(Customer: EBC Asset Investment Inc, Location: 22461 Shaw Rd)

**Deposit Information (Received)**

| Declared amount ($): | 1,619,26 | Current amount ($): | 1,619,26 | Balancing difference ($): | 0.00 |
|---|---|---|---|---|---|

**Scanned Items (5)**

| Errors | Tasks | Item Type | Post Amount ($) | Sequence | Account | Routing Transit |
|---|---|---|---|---|---|---|
| | | Virtual Credit Item | 1,619,26 | | ███████5777 | 510001751 |
| | | Personal Check | 600,00 | 1 | ████5378 | 053110465 |
| | | Personal Check | 234,26 | 2 | █████0116 | 000008002 |
| | | Business Check | 400,00 | 3 | ████5336 | 053012728 |
| | | Business Check | 385,00 | 4 | ████2143 | 043301627 |

< Previous **1** Next >     All **5** **10** **20** **50**     Showing: 1 - 5 of 5



Edit Item - 2

Personal Check ▼

| 000008002 | ████████116 | | 234,26 | |
|---|---|---|---|---|
| Routing Transit | Account | T/C | Amount ($) | Aux on us |

JA393

**Deposit Item List - 001037**

(Customer: EBC Asset Investment Inc, Location: 22461 Shaw Rd)

**Deposit Information (Received)**

| Declared amount ($): | 1,619,26 | Current amount ($): | 1,619,26 | Balancing difference ($): | 0,00 |
|---|---|---|---|---|---|

**Scanned Items (5)**

| Errors | Tasks | Item Type | Post Amount ($) | Sequence | Account | Routing Transit |
|---|---|---|---|---|---|---|
| | | Virtual Credit Item | 1,619,26 | | 777 | 510001751 |
| | | Personal Check | 600,00 | 1 | 378 | 053100465 |
| | | Personal Check | 234,26 | 2 | 116 | 000008002 |
| | | Business Check | 400,00 | 3 | 336 | 053012728 |
| | | Business Check | 385,00 | 4 | 143 | 043301627 |

< Previous 1 Next >     All  5  10  20  50                    Showing: 1 - 5 of 5



Edit Item - 3

Business Check

| 007398 | 053012728 | 336 | | 400,00 | |
|---|---|---|---|---|---|
| Serial | Routing Transit | Account | T/C | Amount ($) | Aux on us |

JA394

**Deposit Item List - 001037**

(Customer: EBC Asset Investment Inc, Location: 22461 Shaw Rd)

**Deposit Information (Received)**

| Declared amount ($): | 1,619,26 | Current amount ($): | 1,619,26 | Balancing difference ($): | 0,00 |
|---|---|---|---|---|---|

**Scanned Items (5)**

| Errors | Tasks | Item Type | Post Amount ($) | Sequence | Account | Routing Transit |
|---|---|---|---|---|---|---|
| | | Virtual Credit Item | 1,619,26 | | ███████3777 | 510001751 |
| | | Personal Check | 600,00 | 1 | ███████3378 | 053100465 |
| | | Personal Check | 234,26 | 2 | ███████0116 | 000008002 |
| | | Business Check | 400,00 | 3 | ███████5336 | 053012728 |
| | | Business Check | 385,00 | 4 | ███████2143 | 043301627 |

| < Previous 1 Next > | All 5 10 20 50 | | | | Showing: 1 - 5 of 5 |
|---|---|---|---|---|---|



JA395

Passport Web Edition



## Image Deposit Items Detail Report - Customer: EBC Asset Investment Inc, Deposit: 001040

| Report Settings | | Amount/Item Totals | |
|---|---|---|---|
| Sort Criteria: | Sequence | Total Number of Items: | 3 |
| Filtered Fields: | | Total Amount of Deposit: | 868.25 USD |

**Report Details**

| Location: | 22461 Shaw Rd | Status: | Received |
|---|---|---|---|
| Account Number: | *********6777 - EBC Asset Investment Inc | Transferred by: | 5AL661BR |
| Assigned to: | 5AL661BR | Sent Date and Time: | Sep 09, 2016 02:51 PM |
| Create Date and Time: | Sep 09, 2016 02:50 PM | Received Date and Time: | Sep 09, 2016 02:51 PM |

| Sequence | Item Type | Serial | Routing Transit | Account | T/C | Amount ($) |
|---|---|---|---|---|---|---|
| | Virtual Credit Item | | 510001751 | 6777 | | 868.25 |
| 1 | Personal Check | | 253177049 | 5888 | 1048 | 567.70 |
| 2 | Business Check | 313978 | 065400153 | 4258 | | 300.55 |

JA396

| Agency Account # | ■705 | Name | **Shelby, Steven** | Current Balance | **$33,291.83** | Client Account # | ■0005 | Status | **GRN** | |

### Batch Closed

#### Batch Options

| Identifier ▲ | EBC-20160914-ED-3701545 | Receiver ▲ | ( Owner :) |
| Location ▲ | ( EBCAI :) | Role | ( Administrator :) |
| Payment Destination ▲ | ( Check / Cash :) | Expected Count | 0 |
| Expected Amount | $ 0.00 | | |

**Reopen** **Deposit**

#### Summary

| Create Date | 09/14/2016 | Closed Date | 09/14/2016 |
| Deposit Date | | Expected | () |

| | Items | Total | Commission | Forwarded Commission | Legal Commission | Service Fees | Fees |
|---|---|---|---|---|---|---|---|
| Pending | 2 | $868.25 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Totals | 2 | $868.25 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

| | Items | Total | Commission | Forwarded Commission | Legal Commission | Service Fees | Fees |
|---|---|---|---|---|---|---|---|
| Totals | 0 | $0.00 | | | | | |

#### Transactions

| Trans Date | Agency Account # | Status | Amount | Created By |
|---|---|---|---|---|
| 09/09/2016 12:00 AM | ■312 | PENDING | $567.70 | Eric Dean admin (admin) |
| 09/09/2016 12:00 AM | ■705 | PENDING | $300.55 | Eric Dean admin (admin) |

1 to 2 of 2     Page 1   ▼   15 rows   ▼

#### Adjustments

| Agency Account # | Bucket | Operator | Type | Amount | Commission Amount | Owing Adj Reason |
|---|---|---|---|---|---|---|
| | | | | $0.00 | $0.00 | |

No Records Found     Page 1   ▼   15 rows   ▼

| Create Date | 09/14/2016 08:12:35 AM | Created By | Eric Dean admin (admin) |
| Last Updated | 09/14/2016 08:14:56 AM | Last Updated By | Eric Dean admin (admin) |
| TransactionBatch ID | 3701545 | | |

JA397

**Image Deposit Items Detail Report - Customer: EBC Asset Investment Inc, Deposit: 001040**

| Report Settings | | Amount/Item Totals | |
| --- | --- | --- | --- |
| Sort Criteria: | Sequence | Total Number of Items: | 3 |
| Filtered Fields: | | Total Amount of Deposit: | 868.25 USD |

| Report Details | | | |
| --- | --- | --- | --- |
| Location: | 22461 Shaw Rd | Status: | Received |
| Account Number: | *********6777 - EBC Asset Investment Inc | Transferred by: | 5AL661BR |
| Assigned to: | 5AL661BR | Sent Date and Time: | Sep 09, 2016 02:51 PM |
| Create Date and Time: | Sep 09, 2016 02:50 PM | Received Date and Time: | Sep 09, 2016 02:51 PM |

| Sequence | Item Type | Serial | Routing Transit | Account | T/C | Amount ($) |
| --- | --- | --- | --- | --- | --- | --- |
| | Virtual Credit Item | | 510001751 | ▆6777 | | 868.25 |
| 1 | Personal Check | | 253177049 | ▆5888 | 1048 | 567.70 |
| 2 | Business Check | 313978 | 065400153 | ▆4258 | | 300.55 |



## Image Deposit Items Detail Report - Customer: EBC Asset Investment Inc, Deposit: 001040

**Report Settings**

| Sort Criteria: | Sequence |
|---|---|
| Filtered Fields: | |

**Amount/Item Totals**

| Total Number of Items: | 3 |
|---|---|
| Total Amount of Deposit: | 868.25 USD |

**Report Details**

| Location: | 22461 Shaw Rd | Status: | Received |
|---|---|---|---|
| Account Number: | *********6777 - EBC Asset Investment Inc | Transferred by: | 5AL661BR |
| Assigned to: | 5AL661BR | Sent Date and Time: | Sep 09, 2016 02:51 PM |
| Create Date and Time: | Sep 09, 2016 02:50 PM | Received Date and Time: | Sep 09, 2016 02:51 PM |

| Sequence | Item Type | Serial | Routing Transit | Account | T/C | Amount ($) |
|---|---|---|---|---|---|---|
| | Virtual Credit Item | | 510001751 | 6777 | | 868.25 |
| 1 | Personal Check | | 253177049 | 5888 | 1048 | 567.70 |
| 2 | Business Check | 313978 | 065400153 | 4258 | | 300.55 |



JA399

9/13/2016

Passport Web Edition



## Image Deposit Items Detail Report - Customer: EBC Asset Investment Inc, Deposit: 001042

### Report Settings

| | |
|---|---|
| Sort Criteria: | Sequence |
| Filtered Fields: | |

### Amount/Item Totals

| | |
|---|---|
| Total Number of Items: | 5 |
| Total Amount of Deposit: | 1938.00 USD |

### Report Details

| | | | |
|---|---|---|---|
| Location: | 22461 Shaw Rd | Status: | Received |
| Account Number: | *********6777 - EBC Asset Investment Inc | Transferred by: | 5AL661BR |
| Assigned to: | 5AL661BR | Sent Date and Time: | Sep 13, 2016 08:55 AM |
| Create Date and Time: | Sep 13, 2016 08:54 AM | Received Date and Time: | Sep 13, 2016 08:55 AM |

| Sequence | Item Type | Serial | Routing Transit | Account | T/C | Amount ($) |
|---|---|---|---|---|---|---|
| | Virtual Credit Item | | 510001751 | 6777 | | 1,938.00 |
| 1 | Personal Check | | 244077556 | 7334 | 2342 | 250.00 |
| 2 | Business Check | 0040625158 | 041203824 | 582 | | 380.00 |
| 3 | Business Check | 0039975604 | 041203824 | 582 | | 558.00 |
| 4 | Personal Check | | 053102586 | 8385 | 00512 | 750.00 |

JA400

EBCAI Open Batch    **Case 1:18-cv-02844-RDB   Document 584-2   Filed 01/31/22   Page 52 of 85**    9/13/16, 2:35 PM

| Agency Account # | ■670 | Name | **Gibson, Stannie M** | Current Balance | **$36,571.55** | Client Account # | ■028 | Status | **MOD** |

### ▲ Batch Closed

**Batch Options**

| | | | |
|---|---|---|---|
| Identifier ▲ | EBC-20160913-ED-3701193 | Receiver ▲ | ( Owner : ) |
| Location ▲ | ( EBCAI : ) | Role | ( Administrator : ) |
| Payment Destination ▲ | ( Check / Cash : ) | Expected Count | 0 |
| Expected Amount | $ 0.00 | | |
| | Reopen  Deposit | | |

**Summary**

| | | | |
|---|---|---|---|
| Create Date | 09/13/2016 | Closed Date | 09/13/2016 |
| Deposit Date | | Expected | () |

| | Items | Total | Commission | Forwarded Commission | Legal Commission | Service Fees | Fees |
|---|---|---|---|---|---|---|---|
| Pending | 4 | $1,938.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| *Totals* | 4 | $1,938.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

| | Items | Total | Commission | Forwarded Commission | Legal Commission | Service Fees | Fees |
|---|---|---|---|---|---|---|---|
| *Totals* | 0 | $0.00 | | | | | |

**Transactions**

| Trans Date | Agency Account # | Status | Amount | Created By |
|---|---|---|---|---|
| 09/12/2016 12:00 AM | ████2169 | PENDING | $250.00 | Eric Dean admin (admin) |
| 09/12/2016 12:00 AM | 1330 | PENDING | $380.00 | Eric Dean admin (admin) |
| 09/12/2016 12:00 AM | 2167 | PENDING | $558.00 | Eric Dean admin (admin) |
| 09/12/2016 12:00 AM | ████5670 | PENDING | $750.00 | Eric Dean admin (admin) |

1 to 4 of 4   Page 1 ▼ 15 rows ▼   New

**Adjustments**

| Agency Account # | Bucket | Operator | Type | Amount | Commission Amount | Owing Adj Reason |
|---|---|---|---|---|---|---|
| | | | | $0.00 | $0.00 | |

No Records Found   Page 1 ▼ 15 rows ▼   New

| | | | |
|---|---|---|---|
| Create Date | 09/13/2016 11:31:47 AM | Created By | Eric Dean admin (admin) |
| Last Updated | 09/13/2016 11:35:13 AM | Last Updated By | Eric Dean admin (admin) |
| Transaction Batch ID | 3701193 | | |

JA401

9/13/2016

Passport Web Edition



## Image Deposit Items Detail Report - Customer: EBC Asset Investment Inc, Deposit: 001042

### Report Settings

| | |
|---|---|
| Sort Criteria: | Sequence |
| Filtered Fields: | |

### Amount/Item Totals

| | |
|---|---|
| Total Number of Items: | 5 |
| Total Amount of Deposit: | 1938.00 USD |

### Report Details

| | | | |
|---|---|---|---|
| Location: | 22461 Shaw Rd | Status: | Received |
| Account Number: | *********6777 - EBC Asset Investment Inc | Transferred by: | 5AL661BR |
| Assigned to: | 5AL661BR | Sent Date and Time: | Sep 13, 2016 08:55 AM |
| Create Date and Time: | Sep 13, 2016 08:54 AM | Received Date and Time: | Sep 13, 2016 08:55 AM |

| Sequence | Item Type | Serial | Routing Transit | Account | T/C | Amount ($) |
|---|---|---|---|---|---|---|
| | Virtual Credit Item | | 510001751 | | | 1,938.00 |
| 1 | Personal Check | | 244077556 | 7334 | 2342 | 250.00 |
| 2 | Business Check | 0040625158 | 041203824 | 1582 | | 380.00 |
| 3 | Business Check | 0039975604 | 041203824 | 1582 | | 558.00 |
| 4 | Personal Check | | 053102586 | 3385 | 00512 | 750.00 |



https://businessonlinecheckdeposit.suntrust.com/CPWECompletion/ShowDepositReport.faces?depositId=0

1/1

JA402



## Image Deposit Items Detail Report - Customer: EBC Asset Investment Inc, Deposit: 001042

**Report Settings**

| | |
|---|---|
| Sort Criteria: | Sequence |
| Filtered Fields: | |

**Amount/Item Totals**

| | |
|---|---|
| Total Number of Items: | 5 |
| Total Amount of Deposit: | 1938.00 USD |

**Report Details**

| | | | |
|---|---|---|---|
| Location: | 22461 Shaw Rd | Status: | Received |
| Account Number: | *********6777 - EBC Asset Investment Inc | Transferred by: | 5AL661BR |
| Assigned to: | 5AL661BR | Sent Date and Time: | Sep 13, 2016 08:55 AM |
| Create Date and Time: | Sep 13, 2016 08:54 AM | Received Date and Time: | Sep 13, 2016 08:55 AM |

| Sequence | Item Type | Serial | Routing Transit | Account | T/C | Amount ($) |
|---|---|---|---|---|---|---|
| | Virtual Credit Item | | 510001751 | 6777 | | 1,938.00 |
| 1 | Personal Check | | 244077556 | 7334 | 2342 | 250.00 |
| 2 | Business Check | 0040625158 | 041203824 | 1582 | | 380.00 |
| 3 | Business Check | 0039975604 | 041203824 | 1582 | | 558.00 |
| 4 | Personal Check | | 053102586 | 3385 | 00512 | 750.00 |



JA403

9/13/2016

Passport Web Edition



## Image Deposit Items Detail Report - Customer: EBC Asset Investment Inc, Deposit: 001042

### Report Settings

| Sort Criteria: | Sequence |
|---|---|
| Filtered Fields: | |

### Amount/Item Totals

| Total Number of Items: | 5 |
|---|---|
| Total Amount of Deposit: | 1938.00 USD |

### Report Details

| | | | |
|---|---|---|---|
| Location: | 22461 Shaw Rd | Status: | Received |
| Account Number: | *********6777 - EBC Asset Investment Inc | Transferred by: | 5AL661BR |
| Assigned to: | 5AL661BR | Sent Date and Time: | Sep 13, 2016 08:55 AM |
| Create Date and Time: | Sep 13, 2016 08:54 AM | Received Date and Time: | Sep 13, 2016 08:55 AM |

| Sequence | Item Type | Serial | Routing Transit | Account | T/C | Amount ($) |
|---|---|---|---|---|---|---|
| | Virtual Credit Item | | 510001751 | 6777 | | 1,938.00 |
| 1 | Personal Check | | 244077556 | 7334 | 2342 | 250.00 |
| 2 | Business Check | 0040625158 | 041203824 | 1582 | | 380.00 |
| 3 | Business Check | 0039975604 | 041203824 | 1582 | | 558.00 |
| 4 | Personal Check | | 053102586 | 3385 | 00512 | 750.00 |



JA404



## Image Deposit Items Detail Report - Customer: EBC Asset Investment Inc, Deposit: 001042

**Report Settings**

| | |
|---|---|
| Sort Criteria: | Sequence |
| Filtered Fields: | |

**Amount/Item Totals**

| | |
|---|---|
| Total Number of Items: | 5 |
| Total Amount of Deposit: | 1938.00 USD |

**Report Details**

| | | | |
|---|---|---|---|
| Location: | 22461 Shaw Rd | Status: | Received |
| Account Number: | *********6777 - EBC Asset Investment Inc | Transferred by: | 5AL661BR |
| Assigned to: | 5AL661BR | Sent Date and Time: | Sep 13, 2016 08:55 AM |
| Create Date and Time: | Sep 13, 2016 08:54 AM | Received Date and Time: | Sep 13, 2016 08:55 AM |

| Sequence | Item Type | Serial | Routing Transit | Account | T/C | Amount ($) |
|---|---|---|---|---|---|---|
| | Virtual Credit Item | | 510001751 | 6777 | | 1,938.00 |
| 1 | Personal Check | | 244077556 | 7334 | 2342 | 250.00 |
| 2 | Business Check | 0040625158 | 041203824 | 1582 | | 380.00 |
| 3 | Business Check | 0039975604 | 041203824 | 1582 | | 558.00 |
| 4 | Personal Check | | 053102586 | 3385 | 00512 | 750.00 |



JA405

## Image Deposit Items Detail Report - Customer: EBC Asset Investment Inc, Deposit: 001044

| Report Settings | | Amount/Item Totals | |
|---|---|---|---|
| Sort Criteria: | Sequence | Total Number of Items: | 2 |
| Filtered Fields: | | Total Amount of Deposit: | 625.00 USD |

**Report Details**

| | | | |
|---|---|---|---|
| Location: | 22461 Shaw Rd | Status: | Received |
| Account Number: | *********6777 - EBC Asset Investment Inc | Transferred by: | 5AL661BR |
| Assigned to: | 5AL661BR | Sent Date and Time: | Sep 15, 2016 01:46 PM |
| Create Date and Time: | Sep 15, 2016 01:45 PM | Received Date and Time: | Sep 15, 2016 01:46 PM |

| Sequence | Item Type | Serial | Routing Transit | Account | T/C | Amount ($) |
|---|---|---|---|---|---|---|
| | Virtual Credit Item | | 510001751 | ███6777 | | 625.00 |
| 1 | Personal Check | | 053102117 | ███9345 | 1571 | 625.00 |



JA406

USCA4 Appeal: 22-2256    Doc: 32    Filed: 03/14/2023    Pg: 412 of 582

| Agency Account # | 1314 | Name | **Bullis, Arlie G** | | Current Balance | **$23,203.90** | | Client Account # | 0007 | | Status | **ACT** | |

### Batch Closed

**Batch Options**

| Identifier | EBC-20160919-ED-3703485 | Receiver | | Owner | |
|---|---|---|---|---|---|
| Location | EBCAI | Role | | Administrator | |
| Payment Destination | Check / Cash | Expected Count | 0 | | |
| Expected Amount | $     0.00 | | | | |

Reopen   Deposit

**Summary**

| Create Date | 09/19/2016 | | | Closed Date | | 09/19/2016 |
|---|---|---|---|---|---|---|
| Deposit Date | | | | Expected | | () |

| | Items | Total | Commission | Forwarded Commission | Legal Commission | Service Fees | Fees |
|---|---|---|---|---|---|---|---|
| Pending | 1 | $625.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Totals | 1 | $625.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

| | Items | Total | Commission | Forwarded Commission | Legal Commission | Service Fees | Fees |
|---|---|---|---|---|---|---|---|
| Totals | 0 | $0.00 | | | | | |

**Transactions**

| Trans Date | Agency Account # | Status | Amount | Created By |
|---|---|---|---|---|
| 09/14/2016 12:00 AM | 1314 | PENDING | $625.00 | Eric Dean admin (admin) |

1 to 1 of 1    Page 1 ▼   15 rows ▼    New

**Adjustments**

| Agency Account # | Bucket | Operator | Type | Amount | Commission Amount | Owing Adj Reason |
|---|---|---|---|---|---|---|
| | | | | $0.00 | $0.00 | |

No Records Found    Page 1 ▼   15 rows ▼    New

| Create Date | 09/19/2016 09:06:04 AM | Created By | Eric Dean admin (admin) |
|---|---|---|---|
| Last Updated | 09/19/2016 11:14:58 AM | Last Updated By | Eric Dean admin (admin) |
| TransactionBatch ID | 3703485 | | |

JA407

## Image Deposit Items Detail Report - Customer: EBC Asset Investment Inc, Deposit: 001044

| Report Settings | | Amount/Item Totals | |
|---|---|---|---|
| Sort Criteria: | Sequence | Total Number of Items: | 2 |
| Filtered Fields: | | Total Amount of Deposit: | 625.00 USD |

| Report Details | | | |
|---|---|---|---|
| Location: | 22461 Shaw Rd | Status: | Received |
| Account Number: | ********6777 - EBC Asset Investment Inc | Transferred by: | 5AL661BR |
| Assigned to: | 5AL661BR | Sent Date and Time: | Sep 15, 2016 01:46 PM |
| Create Date and Time: | Sep 15, 2016 01:45 PM | Received Date and Time: | Sep 15, 2016 01:46 PM |

| Sequence | Item Type | Serial | Routing Transit | Account | T/C | Amount ($) |
|---|---|---|---|---|---|---|
| | Virtual Credit Item | | 510001751 | 6777 | | 625.00 |
| 1 | Personal Check | | 053102117 | 9345 | 1571 | 625.00 |



JA408

## Image Deposit Items Detail Report - Customer: EBC Asset Investment Inc, Deposit: 001046

| Report Settings | | Amount/Item Totals | |
|---|---|---|---|
| Sort Criteria: | Sequence | Total Number of Items: | 3 |
| Filtered Fields: | | Total Amount of Deposit: | 164722.70 USD |

| Report Details | | | |
|---|---|---|---|
| Location: | 22461 Shaw Rd | Status: | Received |
| Account Number: | *********6777 - EBC Asset Investment Inc | Transferred by: | 5AL661BR |
| Assigned to: | 5AL661BR | Sent Date and Time: | Sep 16, 2016 01:45 PM |
| Create Date and Time: | Sep 16, 2016 01:43 PM | Received Date and Time: | Sep 16, 2016 01:45 PM |

| Sequence | Item Type | Serial | Routing Transit | Account | T/C | Amount ($) |
|---|---|---|---|---|---|---|
| | Virtual Credit Item | | 510001751 | 6777 | | 164,722.70 |
| 1 | Business Check | 00007953 | 063102152 | 7781 | | 1,000.00 |
| 2 | Business Check | 120222962 | 122241255 | 0000 | | 163,722.70 |

JA409

| Agency Account # | ██5685 | Name | Bakis, Spyroe T | Current Balance | $250,920.17 | Client Account # | ██015 | Status | FCL | |

### Batch Closed

**Batch Options**

| Identifier ▲ | 20160918-ED-3703266-EBC | Receiver ▲ | ( Owner   : ) |
| Location ▲ | ( EBCAI  : ) | Role | ( Administrator    : ) |
| Payment Destination ▲ | ( Check / Cash    : ) | Expected Count | 0 |
| Expected Amount | $    0.00 | | |

[Reopen]  [Deposit]

**Summary**

| Create Date | 09/18/2016 | Closed Date | 09/19/2016 |
| Deposit Date | | Expected | () |

| | Items | Total | Commission | Forwarded Commission | Legal Commission | Service Fees | Fees |
|---|---|---|---|---|---|---|---|
| Pending | 2 | $163,722.70 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Totals | 2 | $163,722.70 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

| | Items | Total | Commission | Forwarded Commission | Legal Commission | Service Fees | Fees |
|---|---|---|---|---|---|---|---|
| Totals | 0 | $0.00 | | | | | |

**Transactions**

| Trans Date | / | Agency Account # | Status | Amount | Created By |
|---|---|---|---|---|---|
| 09/16/2016 12:00 AM | | ██68S | PENDING | $84,786.81 | Eric Dean admin (admin) |
| 09/16/2016 12:00 AM | | ██685 | PENDING | $78,935.89 | Eric Dean admin (admin) |

| 1 to 2 of 2 | Page 1 ▼ | 15 rows ▼ | | | |

**Adjustments**

| Agency Account | Bucket | Operator | Type | Amount | Commission Amount | Owing Adj Reason |
|---|---|---|---|---|---|---|
| | | | | $0.00 | $0.00 | |

| No Records Found | Page 1 ▼ | 15 rows ▼ | | | |

| Create Date | 09/18/2016 09:12:20 AM | Created By | Eric Dean admin (admin) |
| Last Updated | 09/19/2016 09:06:21 AM | Last Updated By | Eric Dean admin (admin) |
| Transaction/Batch ID | 3703266 | | |

JA410

| Agency Account # | 8406 | Name | Bennett, Jim | | Current Balance | $1,216,078.55 | | Client Account # | 0001 | | Status | JMT |

### Batch Closed

**Batch Options**

| Identifier | EBC-20160919-ED-3703500 | Receiver | ( Owner : ) |
| Location | ( EBCAI : ) | Role | ( Administrator : ) |
| Payment Destination | ( Check / Cash : ) | Expected Count | 0 |
| Expected Amount | $         0.00 | | |
| | Reopen   Deposit | | |

**Summary**

| Create Date | 09/19/2016 | Closed Date | 09/19/2016 |
| Deposit Date | | Expected | () |

| | Items | Total | Commission | Forwarded Commission | Legal Commission | Service Fees | Fees |
|---|---|---|---|---|---|---|---|
| Pending | 1 | $1,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Totals | 1 | $1,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

| | Items | Total | Commission | Forwarded Commission | Legal Commission | Service Fees | Fees |
|---|---|---|---|---|---|---|---|
| Totals | 0 | $0.00 | | | | | |

**Transactions**

| Trans Date | Agency Account # | Status | Amount | Created By |
|---|---|---|---|---|
| 09/16/2016 12:00 AM | 8406 | PENDING | $1,000.00 | Eric Dean admin (admin) |

1 to 1 of 1     Page 1   ▼   15 rows   ▼     New

**Adjustments**

| Agency Account # | Bucket | Operator | Type | Amount | Commission Amount | Owing Adj Reason |
|---|---|---|---|---|---|---|
| | | | | $0.00 | $0.00 | |

No Records Found     Page 1   ▼   15 rows   ▼     New

| Create Date | 09/19/2016 11:23:31 AM | Created By | Eric Dean admin (admin) |
| Last Updated | 09/19/2016 11:24:21 AM | Last Updated By | Eric Dean admin (admin) |
| TransactionBatch ID | 3703500 | | |

JA411

## Image Deposit Items Detail Report - Customer: EBC Asset Investment Inc, Deposit: 001046

**Report Settings**

| | | **Amount/Item Totals** | |
|---|---|---|---|
| Sort Criteria: | Sequence | Total Number of Items: | 3 |
| Filtered Fields: | | Total Amount of Deposit: | 164722.70 USD |

**Report Details**

| | | | |
|---|---|---|---|
| Location: | 22461 Shaw Rd | Status: | Received |
| Account Number: | *********6777 - EBC Asset Investment Inc | Transferred by: | 5AL661BR |
| Assigned to: | 5AL661BR | Sent Date and Time: | Sep 16, 2016 01:45 PM |
| Create Date and Time: | Sep 16, 2016 01:43 PM | Received Date and Time: | Sep 16, 2016 01:45 PM |

| Sequence | Item Type | Serial | Routing Transit | Account | T/C | Amount ($) |
|---|---|---|---|---|---|---|
| | Virtual Credit Item | | 510001751 | ▮6777 | | 164,722.70 |
| 1 | Business Check | 00007953 | 063102152 | ▮7781 | | 1,000.00 |
| 2 | Business Check | 120222962 | 122241255 | ▮0000 | | 163,722.70 |

ORIGINAL DOCUMENT IS PRINTED ON CHEMICAL REACTIVE PAPER & HAS A MICROPRINTED BORDER



*First American Title Company*
30 North LaSalle Street, Suite 2220
Chicago, IL 60602
(312)750-6780

PR. 17001
Ofc. 10100 (120)

FILE NO. C-2777256

First American Trust, FSB -
5 First American Way
Santa Ana CA 92707

**120222962**

90-4125/1222

Date 9/15/2016

PAY     ***********$163,722.70***********

**DOLLARS**     $******163,722.70

Escrow Trust Bank Account
Void After 180 Days

Re:

TO THE ORDER OF     EBC Asset Investment Inc.

▮0015

SEP 11 5 2016

_MM^cCread_

THE FACE OF THIS DOCUMENT INCLUDES A HIDDEN WORD - DO NOT CASH IF THE WORD VOID IS VISIBLE

⑈▮ 296 2⑈ ⑆▮ 1255⑈ ▮ 0000⑈

First American Title Company, Chicago
PR. 17001 Ofc. 10100 (120)   (KC/KC)

CHECK NO.   120222962

| DATE: 9/15/2016 | FILE NO. C-2777256 | SETTLEMENT DATE: 9/15/2016 | CHECK AMOUNT: $163,722.70 |
|---|---|---|---|

BUYER: Wilson
Property Address: 300 North State Street, Unit 3405, Chicago, IL 60654
Lot: 3405 Unit: 3405

SELLER:   NBD Trust Company of Illinois, as Trustee under the provisions of a trust agreem

**Payoff Loan Charges**

Charge Details:
Principal Balance:          163722.70

Re:

**Image Deposit Items Detail Report - Customer: EBC Asset Investment Inc, Deposit: 001046**

| Report Settings | | Amount/Item Totals | |
|---|---|---|---|
| Sort Criteria: | Sequence | Total Number of Items: | 3 |
| Filtered Fields: | | Total Amount of Deposit: | 164722.70 USD |

**Report Details**

| | | | |
|---|---|---|---|
| Location: | 22461 Shaw Rd | Status: | Received |
| Account Number: | *********6777 - EBC Asset Investment Inc | Transferred by: | 5AL661BR |
| Assigned to: | 5AL661BR | Sent Date and Time: | Sep 16, 2016 01:45 PM |
| Create Date and Time: | Sep 16, 2016 01:43 PM | Received Date and Time: | Sep 16, 2016 01:45 PM |

| Sequence | Item Type | Serial | Routing Transit | Account | T/C | Amount ($) |
|---|---|---|---|---|---|---|
| | Virtual Credit Item | | 510001751 | 6777 | | 164,722.70 |
| 1 | Business Check | 00007953 | 063102152 | 7781 | | 1,000.00 |
| 2 | Business Check | 120222962 | 122241255 | 0000 | | 163,722.70 |



7953

JIM BENNETT'S
PROPERTY ACCOUNT
P.O. BOX 13205
TALLAHASSEE, FL 32317-3205
(850) 878-3178

SunTrust
63-215-631          ACH RT 061000104

SEP 1 6 2016

EXACTLY ONE THOUSAND DOLLARS

DATE          AMOUNT

08/31/2016          *******$1,000.00

EBC Asset Investment, Inc.
22980 Indian Creek Drive
Suite 130
Sterling VA 20166

AUTHORIZED SIGNATURE

⑈00007953⑈  ⑆      2152⑆      6778⑈⑈

JA413

First American Title Company, Chicago

| DATE: 9/15/2016 | FILE NO. C-2777256 | | SETTLEMENT DATE: 9/15/2016 | CHECK AMOUNT: $163,722.70 |
|---|---|---|---|---|

BUYER: Wilson

SELLER: NBD Trust Company of Illinois, as Trustee under the provisions of a trust agreem

Property Address: 300 North State Street, Unit 3405, Chicago, IL 60654
Lot: 3405 Unit: 3405

Payoff Loan Charges                                          Re:

Charge Details:
Principal Balance:                163722.70

Thank you for doing business with First American Title Company

ORIGINAL DOCUMENT IS PRINTED ON CHEMICAL REACTIVE PAPER & HAS A MICROPRINTED BORDER

**First American Title Company**
30 North LaSalle Street, Suite 2220
Chicago, IL 60602
(312)750-6780

PR. 17001
Ofc. 10100 (120)

FILE NO. C-2777256

First American Trust, FSB -
5 First American Way
Santa Ana CA 92707

120222962
90-4125/1222

Date 9/15/2016

PAY          ***********$163,722.70***********

Re:

TO THE
ORDER
OF          EBC Asset Investment Inc.

DOLLARS          $******163,722.70

Escrow Trust Bank Account
Void After 180 Days

MM^cCreach

THE FACE OF THIS DOCUMENT INCLUDES A HIDDEN WORD - DO NOT CASH IF THE WORD VOID IS VISIBLE

⑈120222962⑈ ⑆ 255⑈ 0000⑈

JA414

**KEVIN W. HARPER INVESTMENTS, INC.**
3000 SMOOT ROAD, SUITE A
SMOOT, WV 24977

PH: 304-392-6902
FAX: 304-392-6903
TOLL FREE: 877-392-6902

tjenkins.kwhinvest@frontier.com

September 14, 2016

Spyro Bakis
5818 W Dempster St
Morton Grove, IL 60053

RE: Our Account Number ████0015

Please let this letter stand as proof that EBC Asset Investment, agrees to
release their lien on the property at 300 North State St, Unit 3405, Chicago, IL
upon receiving $163,722.70 in good and available funds. This amount is good
through September 22nd, 2016. Please remit the funds directly to EBC Asset
Investment at the following address: 22980 Indian Creek Dr, Suite 130,
Sterling, VA 20166

If you need any further assistance, do not hesitate to contact me at (877)
392-6902.

Sincerely,

Thomas Jenkins
Account Officer
Kevin W. Harper Investments, Inc.
Servicer for EBC Asset Investment

JA415

| American Land Title Association | ALTA Settlement Statement - Combined Adopted 05-01-2015 |
|---|---|

| | |
|---|---|
| File No: C-2777256<br>Printed: 09/15/2016, 11:30 AM<br>Officer/Escrow Officer: Katherine<br>Casey/KC<br>Settlement Location:<br>30 North LaSalle Street, Suite 2220,<br>Chicago, IL 60602 | **First American Title Company**<br><br>30 North LaSalle Street, Suite 2220 • Chicago, IL 60602<br>Phone: (312)750-6780  Fax: (866)563-2766<br>**Final Settlement Statement**<br><br>First American |

Property Address:  300 North State Street, Unit 3405, Chicago, IL 60654
Buyer:  Keith L. Wilson
Seller:  NBD Trust Company of Illinois, as Trustee under the provisions of a trust agreem
Lender:  Evolve Bank & Trust
Settlement Date: 09/15/2016
Disbursement Date: 09/15/2016

| Seller | | Description | Buyer | |
|---|---|---|---|---|
| Debit | Credit | | Debit | Credit |
| | | **Financial** | | |
| | 210,000.00 | Sale Price | 210,000.00 | |
| | | Loan Amount - Evolve Bank & Trust | | 189,000.00 |
| | | Total Deposit/Earnest Money | | 1,000.00 |
| | | Disbursed as Proceeds ($0.00) | | |
| 1,000.00 | | Excess Deposit | | |
| | | | | |
| | | **Prorations/Adjustments** | | |
| | 210.70 | Association Dues  09/15/16 to 09/30/16  @$0.00/mo | 210.70 | |
| 2,969.55 | | County Taxes  01/01/16 to 09/14/16  @$0.00/yr | | 2,969.55 |
| | | | | |
| | | **Loan Charges** | | |
| | | Loan Charges to Evolve Bank & Trust | | |
| | | Prepaid Interest  09/15/16 to 10/01/16  @$24.281300/day | 388.50 | |
| | | Underwriting Fee | 450.00 | |
| | | Processing Fee                              POC-L $472.50 | 47.50 | |
| | | Admin Fee | 450.00 | |
| | | MERS Fee | 11.95 | |
| | | Appraisal Fee  to Triserv              POC-B $435.00 | | |
| | | Credit Report  to CBCInnovis | 45.00 | |
| | | Flood Certification  to CBCInnovis | 6.00 | |
| | | Flood Life of Loan  to CBCInnovis | 9.00 | |
| | | | | |
| | | **Impounds** | | |
| | | Aggregate Adjustment | | 352.58 |
| | | Homeowner's Insurance  4 mo(s) @$33.08/mo | 132.32 | |
| | | County Property Taxes  4 mo(s) @$319.50/mo | 1,278.00 | |
| | | Flood Insurance  3 mo(s) @$35.95/mo | 107.85 | |

This is a summary of the closing transaction prepared by First American Title Company. This document is not intended to replace the
Closing Disclosure form.

Copyright 2015 American Land Title Association.
All rights reserved

File # C-2777256
Printed on 09/15/2016 at 11:30 AM

JA416

| Seller | | Description | Buyer | |
|---|---|---|---|---|
| Debit | Credit | | Debit | Credit |
| | | | | |
| | | **Title Charges & Escrow / Settlement Charges** | | |
| 1,620.00 | | Title - Owner's Title Insurance (optional)<br>Owner's Policy  to First American Title Company | | |
| | | Title - Lender's Policy<br>Loan Policy  to First American Title Company | 500.00 | |
| | | Title - [ALTA 4.1-06 ] Condominium<br>[ALTA 4.1-06 ] Condominium  to First American Title Company | 180.00 | |
| | | Title - [ALTA 8.1-06 ] Environmental Protection Lien<br>[ALTA 8.1-06 ] Environmental Protection Lien  to First American Title Company | 180.00 | |
| | | Title - Closing Protection Coverage-Buyer<br>Closing Protection Coverage-Buyer  to First American Title Company | 25.00 | |
| | | Title - Closing Protection Coverage-Lender<br>Closing Protection Coverage-Lender  to First American Title Company | 25.00 | |
| 50.00 | | Title - Closing Protection Coverage-Seller<br>Closing Protection Coverage-Seller  to First American Title Company | | |
| | | Title - State of IL Loan Policy Fee<br>State of IL Loan Policy Fee  to First American Title Company | 3.00 | |
| 3.00 | | Title - State of IL Owner's Policy Fee<br>State of IL Owner's Policy Fee  to First American Title Company | | |
| | | Title - PLDP Compliance Processing Charge<br>PLDP Compliance Processing Charge  to First American Title Company | 50.00 | |
| | | Title - Settlement Fee<br>Settlement/Closing Fees  to First American Title Company | 1,250.00 | |
| 4,091.22 | | County Property Taxes 2015 1st & 2nd Installment  to Cook County Collector | | |
| | | Title - Chain of Title<br>Chain of Title  to First American Title Company | 250.00 | |
| 75.00 | | Title - Chicago Water Process and Payment Service Fee<br>Chicago Water Process and Payment Service Fee  to First American Title Company | | |
| 125.00 | | Title - Commitment Update Search<br>Commitment Update Search  to First American Title Company | | |
| | | Title - Policy Update Search<br>Policy Update Search  to First American Title Company | 125.00 | |
| 40.00 | | Title - Service/Handling Wire Transfer Fee<br>Service/Handling Wire Transfer Fee  to First American Title Company | | |
| 50.00 | | Title - Tax Payment Service Fee<br>Tax Payment Service Fee  to First American Title Company | | |
| | | Agent compensation as part of total              POC  $1,537.00<br>premium  to Mark D. Wetterquist | | |
| | | | | |
| | | **Commission** | | |
| 4,550.00 | | Real Estate Commission  to Remax Cityview | | |
| 4,950.00 | | Real Estate Commission  to Dream Town Realty | | |
| | | | | |
| | | **Government Recording and Transfer Charges** | | |
| | | Record Deed<br>Deed  to First American Title Company | 54.00 | |
| | | Record First Deed of Trust/Mortgage<br>Mortgage  to Cook County Recorder of Deeds | 80.00 | |
| 50.00 | | Release  to First American Title Company | | |
| 210.00 | | State Documentary Transfer Tax | | |

This is a summary of the closing transaction prepared by First American Title Company. This document is not intended to replace the Closing Disclosure form.

Copyright 2015 American Land Title Association.<br>All rights reserved

File # C-2777256<br>Printed on 09/15/2016 at 11:30 AM

JA417

| Seller Debit | Seller Credit | Description | Buyer Debit | Buyer Credit |
|---|---|---|---|---|
| | | State Transfer Tax  to First American Title Company | | |
| 630.00 | | City Documentary Transfer Tax | 1,575.00 | |
| | | City Transfer Tax  to First American Title Company | | |
| 105.00 | | County Documentary Transfer Tax | | |
| | | County Transfer Tax  to First American Title Company | | |
| | | | | |
| | | **Payoff(s)** | | |
| | | Lender: EBC Asset Investment Inc. | | |
| 163,722.70 | | Principal Balance  to EBC Asset Investment Inc. | | |
| | | | | |
| | | **Miscellaneous** | | |
| | | Attorney Fee  to Jeffrey Sanchez | 675.00 | |
| 1,300.00 | | Attorney Fee  to Mark D. Wetterquist | | |
| 21,334.23 | | Association Dues  to Marina Towers Condominium Association | | |
| | | Homeowner's Insurance Premium  to Allstate Insurance Company | 397.00 | |
| 50.00 | | Water Cert  to City of Chicago Dept. of Water | | |
| 3,285.00 | | Past Due Land Trust Fees  to Chicago Title Land Trust | | |
| | | | | |
| | | **Subtotals** | | |
| | | Due From Buyer | | 25,183.69 |
| | | Due From/To Seller | | |
| 210,210.70 | 210,210.70 | **Totals** | 218,505.82 | 218,505.82 |

Our wire instructions do not change.  If you receive an email or other communication that appears to be from us and contains revised wiring instructions, you should consider it suspect and you must call our office at an independently verified phone number.  Do not inquire with the sender.

**Acknowledgement**
We/I have carefully reviewed the ALTA Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the ALTA Settlement Statement.  We/I authorize First American Title Company  to cause the funds to be disbursed in accordance with this statement.

Seller(s) _Signed: Waters by his attorney in fact Mark___

NBD Trust Company of Illinois, as Trustee under the provisions of a trust agreement dated the 10th day of July, 1992, known as Trust Number 1302-CH

Buyer(s) _Signed___

Keith L. Wilson

This is a summary of the closing transaction prepared by First American Title Company. This document is not intended to replace the Closing Disclosure form.

Copyright 2015 American Land Title Association.
All rights reserved

File # C-2777256
Printed on 09/15/2016 at 11:30 AM

JA418

Escrow Officer: Katherine Casey

This is a summary of the closing transaction prepared by First American Title Company. This document is not intended to replace the
Closing Disclosure form.

Copyright 2015 American Land Title Association.
All rights reserved

File # C-2777256
Printed on 09/15/2016 at 11:30 AM

JA419

9/19/2016

Passport Web Edition

## Image Deposit Items Detail Report - Customer: EBC Asset Investment Inc, Deposit: 001048

| Report Settings | | Amount/Item Totals | |
|---|---|---|---|
| Sort Criteria: | Sequence | Total Number of Items: | 4 |
| Filtered Fields: | | Total Amount of Deposit: | 1567.44 USD |

**Report Details**

| | | | |
|---|---|---|---|
| Location: | 22461 Shaw Rd | Status: | Received |
| Account Number: | *********6777 - EBC Asset Investment Inc | Transferred by: | 5AL661BR |
| Assigned to: | 5AL661BR | Sent Date and Time: | Sep 19, 2016 01:28 PM |
| Create Date and Time: | Sep 19, 2016 01:26 PM | Received Date and Time: | |

| Sequence | Item Type | Serial | Routing Transit | Account | T/C | Amount ($) |
|---|---|---|---|---|---|---|
| | Virtual Credit Item | | 510001751 | 6777 | | 1,567.44 |
| 1 | Business Check | 2430744362 | 075901480 | 1067 | | 521.00 |
| 2 | Personal Check | | 021201383 | 4266 | 0562 | 426.44 |
| 3 | Personal Check | | 064000046 | 2263 | 2237 | 620.00 |

JA420

EBCAI Open Batch           9/20/16, 1:31 PM

| Agency Account # ███ 3614 | Name **Holt, Gloria M** | Current Balance **$18,584.24** | Client Account # ███ 0088 | Status **ACT** |

### Batch Options

| Identifier ▲ | EBC-20160920-ED-3703795 | Receiver ▲ | Owner |
| Location ▲ | EBCAI | Role | Administrator |
| Payment Destination ▲ | Check / Cash | Expected Count | 0 |
| Expected Amount | $      0.00 | | |
| | Close  Void | | |

### Summary

| Create Date | 09/2016 | Closed Date | |
| Deposit Date | | Expected | () |

| | Items | Total | Commission | Forwarded Commission | Legal Commission | Service Fees | Fees |
|---|---|---|---|---|---|---|---|
| Pending | 3 | $1,567.44 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Totals | 3 | $1,567.44 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

| | Items | Total | Commission | Forwarded Commission | Legal Commission | Service Fees | Fees |
|---|---|---|---|---|---|---|---|
| Totals | 0 | $0.00 | | | | | |

### Transactions

| Trans Date | Agency Account # | Status | Amount | Created By |
|---|---|---|---|---|
| 09/19/2016 12:00 AM | ███2129 | PENDING | $521.00 | Eric Dean admin (admin) |
| 09/19/2016 12:00 AM | ███308 | PENDING | $426.44 | Eric Dean admin (admin) |
| 09/19/2016 12:00 AM | ███3614 | PENDING | $620.00 | Eric Dean admin (admin) |

1 to 3 of 3      Page 1 ▼  15 rows ▼      New

### Adjustments

| Agency Account # | Bucket | Operator | Type | Amount | Commission Amount | Owing Adj Reason |
|---|---|---|---|---|---|---|
| | | | | $0.00 | $0.00 | |

No Records Found      Page 1 ▼  15 rows ▼      New

| Create Date | 09/20/2016 10:25:44 AM | Created By | Eric Dean admin (admin) |
| Last Updated | 09/20/2016 10:31:06 AM | Last Updated By | Eric Dean admin (admin) |
| TransactionBatch ID | 3703795 | | |

JA421

## Image Deposit Items Detail Report - Customer: EBC Asset Investment Inc, Deposit: 001048

**Report Settings**

| Sort Criteria: | Sequence |
| Filtered Fields: | |

**Amount/Item Totals**

| Total Number of Items: | 4 |
| Total Amount of Deposit: | 1567.44 USD |

**Report Details**

| Location: | 22461 Shaw Rd | Status: | Received |
| Account Number: | *********6777 - EBC Asset Investment Inc | Transferred by: | 5AL661BR |
| Assigned to: | 5AL661BR | Sent Date and Time: | Sep 19, 2016 01:28 PM |
| Create Date and Time: | Sep 19, 2016 01:26 PM | Received Date and Time: | |

| Sequence | Item Type | Serial | Routing Transit | Account | T/C | Amount ($) |
|---|---|---|---|---|---|---|
| | Virtual Credit Item | | 510001751 | 6777 | | 1,567.44 |
| 1 | Business Check | 2430744362 | 075901480 | 1067 | | 521.00 |
| 2 | Personal Check | | 021201383 | 4266 | 0562 | 426.44 |
| 3 | Personal Check | | 064000046 | 2263 | 2237 | 620.00 |

JA422

## Image Deposit Items Detail Report - Customer: EBC Asset Investment Inc, Deposit: 001048

### Report Settings

| Sort Criteria: | Sequence |
|---|---|
| Filtered Fields: | |

### Amount/Item Totals

| Total Number of Items: | 4 |
|---|---|
| Total Amount of Deposit: | 1567.44 USD |

### Report Details

| Location: | 22461 Shaw Rd | Status: | Received |
|---|---|---|---|
| Account Number: | *********6777 - EBC Asset Investment Inc | Transferred by: | 5AL661BR |
| Assigned to: | 5AL661BR | Sent Date and Time: | Sep 19, 2016 01:28 PM |
| Create Date and Time: | Sep 19, 2016 01:26 PM | Received Date and Time: | |

| Sequence | Item Type | Serial | Routing Transit | Account | T/C | Amount ($) |
|---|---|---|---|---|---|---|
| | Virtual Credit Item | | 510001751 | | | 1,567.44 |
| 1 | Business Check | 2430744362 | 075901480 | | | 521.00 |
| 2 | Personal Check | | 021201383 | | 0562 | 426.44 |
| 3 | Personal Check | | 064000046 | | 2237 | 620.00 |



William Albornoz
Emmie Albornoz
███████0001

| Payment Remitted | |
|---|---|
| Due Date | $ |
| | 9/15/2016 |

PLEASE REFER TO YOUR LOAN DOCUMENTS FOR APPLICABILITY OF LATE CHARGES AND OTHER FEES

PLEASE REMIT TO:
EBC ASSET INVESTMENT, INC
22980 INDIAN CREEK DRIVE, STE 130
STERLING, VIRGINIA 20166

JA423

## Image Deposit Items Detail Report - Customer: EBC Asset Investment Inc, Deposit: 001048

**Report Settings**

| | |
|---|---|
| Sort Criteria: | Sequence |
| Filtered Fields: | |

**Amount/Item Totals**

| | |
|---|---|
| Total Number of Items: | 4 |
| Total Amount of Deposit: | 1567.44 USD |

**Report Details**

| | | | |
|---|---|---|---|
| Location: | 22461 Shaw Rd | Status: | Received |
| Account Number: | *********6777 - EBC Asset Investment Inc | Transferred by: | 5AL661BR |
| Assigned to: | 5AL661BR | Sent Date and Time: | Sep 19, 2016 01:28 PM |
| Create Date and Time: | Sep 19, 2016 01:26 PM | Received Date and Time: | |

| Sequence | Item Type | Serial | Routing Transit | Account | T/C | Amount ($) |
|---|---|---|---|---|---|---|
| | Virtual Credit Item | | 510001751 | 6777 | | 1,567.44 |
| 1 | Business Check | 2430744362 | 075901480 | 1067 | | 521.00 |
| 2 | Personal Check | | 021201383 | 4266 | 0562 | 426.44 |
| 3 | Personal Check | | 064000046 | 2263 | 2237 | 620.00 |

BILL PAYMENT PROCESSING CENTER

FIRST-CLASS MAIL
PRESORTED
U.S. POSTAGE

THE BACK OF THIS CHECK CONTAINS A SECURITY MARK - DO NOT ACCEPT WITHOUT HOLDING AT AN ANGLE TO VERIFY SECURITY MARK.

Please Post to Account: 0009

DIANA PRIEBE
1119 S. 30TH STREET
SOUTH BEND, IN 46615

Metavante Corporation
P.O. Box 7236
Sioux Falls, SD 57117-7236
payee.maintenance@billpaymentservices.com
1-877-346-5272

Payable through
BMO HARRIS BANK, NA
ANTIGO, WI

2-680
70

2430744362

September 15, 2016

**PAY** Five Hundred Twenty One and 00/100 Dollars

SEP 1 9 2016

$ *********521.00

VOID 90 DAYS AFTER ISSUE
PAYELECTRONIC.COM

TO THE
ORDER OF
#CSP010008BAC319#  47698393
EBC ASSET INVESTMENT, INC
22980 INDIAN CREEK DR STE 130
STERLING VA 20166-6734

SEP 1 9 2016

Security
Features
Details on
Back

THIS IS A BILL PAYMENT DRAFT WHICH IS DRAWN BY
METAVANTE CORPORATION WITHOUT RECOURSE.

Memo:

⑈ 2430744362 ⑈    ⑆ 1480⑆    ⑈ 06 7⑈



## Image Deposit Items Detail Report - Customer: EBC Asset Investment Inc, Deposit: 001050

**Report Settings**

| | |
|---|---|
| Sort Criteria: | Sequence |
| Filtered Fields: | |

**Amount/Item Totals**

| | |
|---|---|
| Total Number of Items: | 3 |
| Total Amount of Deposit: | 616.62 USD |

**Report Details**

| | | | |
|---|---|---|---|
| Location: | 22461 Shaw Rd | Status: | Received |
| Account Number: | *********6777 - EBC Asset Investment Inc | Transferred by: | 5AL661BR |
| Assigned to: | 5AL661BR | Sent Date and Time: | Sep 22, 2016 11:32 AM |
| Create Date and Time: | Sep 22, 2016 11:31 AM | Received Date and Time: | Sep 22, 2016 11:32 AM |

| Sequence | Item Type | Serial | Routing Transit | Account | T/C | Amount ($) |
|---|---|---|---|---|---|---|
| | Virtual Credit Item | | 510001751 | 6777 | | 616.62 |
| 1 | Personal Check | | 253171676 | 1961 | 2565 | 465.00 |
| 2 | Personal Check | | 053102117 | 0726 | 1419 | 151.62 |

JA425



JA426



9/22/2016

## Image Deposit Items Detail Report - Customer: EBC Asset Investment Inc, Deposit: 001050

### Report Settings

| | |
|---|---|
| Sort Criteria: | Sequence |
| Filtered Fields: | |

### Amount/Item Totals

| | |
|---|---|
| Total Number of Items: | 3 |
| Total Amount of Deposit: | 616.62 USD |

### Report Details

| | | | |
|---|---|---|---|
| Location: | 22461 Shaw Rd | Status: | Received |
| Account Number: | *********6777 - EBC Asset Investment Inc | Transferred by: | 5AL661BR |
| Assigned to: | 5AL661BR | Sent Date and Time: | Sep 22, 2016 11:32 AM |
| Create Date and Time: | Sep 22, 2016 11:31 AM | Received Date and Time: | Sep 22, 2016 11:32 AM |

| Sequence | Item Type | Serial | Routing Transit | Account | T/C | Amount ($) |
|---|---|---|---|---|---|---|
| | Virtual Credit Item | | 510001751 | 6777 | | 616.62 |
| 1 | Personal Check | | 253171676 | 1961 | 2565 | 465.00 |
| 2 | Personal Check | | 053102117 | 0726 | 1419 | 151.62 |

Kevin Weaver
3294 Congo Rd.
Wilkesboro, NC 28697

GREENSBORO NC 274
PIEDMONT TRIAD AREA
19 SEP 2016 PM 7 L

KEVIN DUANE WEAVER
3294 CONGO ROAD
WILKESBORO, NC 28697

1419
66-211/531

SEP 2 2 2016   Sept 19 16   Date

Pay to the Order of   EBC Asset   $ 151.62

One hundred fifty one — 62/100   Dollars

**YADKIN** BANK   NORTH WILKESBORO, NC 28659

For   0051 Sept Pymt   Glenn Hart

JA427

**Image Deposit Items Detail Re**port - Customer: **EBC Asset Investment Inc,** Deposit: 001050

**Report Settings**

| | Amount/Item Totals | |
|---|---|---|
| Sort Criteria: | Screen | |
| Filtered Fields: | | |

**Amount/Item Totals**

| | |
|---|---|
| Total Number of Items: | 3 |
| Total Amount of Deposit: | 616.62 USD |

**Report Details**

| | | | |
|---|---|---|---|
| Location: | 22461 Shaw Rd | Status: | Received |
| Account Number: | *********6777 - EBC Asset Investment Inc | Transferred by: | 5AL661BR |
| Assigned to: | 5AL661BR | Sent Date and Time: | Sep 22, 2016 11:32 AM |
| Create Date and Time: | Sep 22, 2016 11:31 AM | Received Date and Time: | Sep 22, 2016 11:32 AM |

| Sequence | Item Type | Serial | Routing Transit | Account | T/C | Amount ($) |
|---|---|---|---|---|---|---|
| | Virtual Credit Item | | 510001751 | 6777 | | 616.62 |
| 1 | Personal Check | | 253171676 | 1961 | 2565 | 465.00 |
| 2 | Personal Check | | 053102117 | 0726 | 1419 | 151.62 |



JA428

9/26/2016                                              Passport Web Edition

## Image Deposit Items Detail Report - Customer: EBC Asset Investment Inc, Deposit: 001053

| Report Settings | | Amount/Item Totals | |
|---|---|---|---|
| Sort Criteria: | Sequence | Total Number of Items: | 5 |
| Filtered Fields: | | Total Amount of Deposit: | 3871.10 USD |

| Report Details | | | |
|---|---|---|---|
| Location: | 22461 Shaw Rd | Status: | Received |
| Account Number: | *********6777 - EBC Asset Investment Inc | Transferred by: | 5AL661BR |
| Assigned to: | 5AL661BR | Sent Date and Time: | Sep 26, 2016 02:29 PM |
| Create Date and Time: | Sep 26, 2016 02:28 PM | Received Date and Time: | Sep 26, 2016 02:29 PM |

| Sequence | Item Type | Serial | Routing Transit | Account | T/C | Amount ($) |
|---|---|---|---|---|---|---|
| | Virtual Credit Item | | 510001751 | 6777 | | 3,871.10 |
| 1 | Personal Check | | 253177049 | 0776 | 0107 | 270.00 |
| 2 | Personal Check | | 053101121 | 6831 | 00891 | 3,000.00 |
| 3 | Business Check | 314096 | 065400153 | 4258 | | 300.55 |
| 4 | Business Check | 314330 | 065400153 | 4258 | | 300.55 |

https://businessonlinecheckdeposit.suntrust.com/CPWECompletion/ShowDepositReport.faces?depositId=0                                1/1

JA429

| Agency Account # | ▇▇▇705 | Name | Shelby, Steven | Current Balance | **$32,808.75** | Client Account # | ▇▇▇0005 | Status | **GRN** | |

### Batch Closed

#### Batch Options

| | | | |
|---|---|---|---|
| Identifier ▲ | EBC-20160927-ED-3706313 | Receiver ▲ | Owner |
| Location ▲ | EBCAI | Role | Administrator |
| Payment Destination ▲ | Check / Cash | Expected Count | 0 |
| Expected Amount | $    0.00 | | |

Reopen  Deposit

#### Summary

| | | | |
|---|---|---|---|
| Create Date | 09/27/2016 | Closed Date | 09/27/2016 |
| Deposit Date | | Expected | () |

| | Items | Total | Commission | Forwarded Commission | Legal Commission | Service Fees | Fees |
|---|---|---|---|---|---|---|---|
| Pending | 4 | $3,871.10 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Totals | 4 | $3,871.10 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

| | Items | Total | Commission | Forwarded Commission | Legal Commission | Service Fees | Fees |
|---|---|---|---|---|---|---|---|
| Totals | 0 | $0.00 | | | | | |

#### Transactions

| Trans Date | Agency Account # | Status | Amount | Created By |
|---|---|---|---|---|
| 09/26/2016 12:00 AM | ██1315 | PENDING | $270.00 | Eric Dean admin (admin) |
| 09/26/2016 12:00 AM | ██1348 | PENDING | $3,000.00 | Eric Dean admin (admin) |
| 09/26/2016 12:00 AM | ██5705 | PENDING | $300.55 | Eric Dean admin (admin) |
| 09/26/2016 12:00 AM | ██5705 | PENDING | $300.55 | Eric Dean admin (admin) |

1 to 4 of 4    Page 1 ▼ 15 rows ▼    Menu

#### Adjustments

| Agency Account # | Bucket | Operator | Type | Amount | Commission Amount | Owing Adj Reason |
|---|---|---|---|---|---|---|
| No Records Found | | | | $0.00 | $0.00 | |

Page 1 ▼ 15 rows ▼    Menu

| | | | |
|---|---|---|---|
| Create Date | 09/27/2016 07:09:20 AM | Created By | Eric Dean admin (admin) |
| Last Updated | 09/27/2016 07:14:22 AM | Last Updated By | Eric Dean admin (admin) |
| TransactionBatch ID | 3706313 | | |

JA430

3/2016

## Image Deposit Items Detail Report - Customer: EBC Asset Investment Inc, Deposit: 001053

| Report Settings | | Amount/Item Totals | |
|---|---|---|---|
| Sort Criteria: | Sequence | Total Number of Items: | 5 |
| Filtered Fields: | | Total Amount of Deposit: | 3871.10 USD |

| Report Details | | | |
|---|---|---|---|
| Location: | 22461 Shaw Rd | Status: | Received |
| Account Number: | *********6777 - EBC Asset Investment Inc | Transferred by: | 5AL661BR |
| Assigned to: | 5AL661BR | Sent Date and Time: | Sep 26, 2016 02:29 PM |
| Create Date and Time: | Sep 26, 2016 02:28 PM | Received Date and Time: | Sep 26, 2016 02:29 PM |

| Sequence | Item Type | Serial | Routing Transit | Account | T/C | Amount ($) |
|---|---|---|---|---|---|---|
| | Virtual Credit Item | | 510001751 | 6777 | | 3,871.10 |
| 1 | Personal Check | | 253177049 | 0776 | 0107 | 270.00 |
| 2 | Personal Check | | 053101121 | 6831 | 00891 | 3,000.00 |
| 3 | Business Check | 314096 | 065400153 | 4258 | | 300.55 |
| 4 | Business Check | 314330 | 065400153 | 4258 | | 300.55 |

THE FACE OF THIS DOCUMENT HAS A VOID PANTOGRAPH FEATURE AND MICROPRINTING

314330

Whitney Bank

84-15
654

NEWMAN, MATHIS, BRADY & SPEDALE
A PROFESSIONAL LAW CORPORATION
433 METAIRIE ROAD, STE. 600
METAIRIE, LOUISIANA 70005

SEP 2 6 2016

09/20/16

$300.55

Three Hundred and 55/100 Dollars                    DOLLARS $

NOT VALID AFTER 90 DAYS

PAY

SPECIAL TRUST ACCOUNT

TO THE ORDER OF
E.B.C. Asset Investment, Inc.
22980 Indian Creek Dr. Suite 130
Sterling, VA 20166-6734

ORIGINAL CHECK IS PRINTED ON CHEMICAL REACTIVE PAPER WHICH CONTAINS A WATERMARK

⑈314330⑈ ⑆░░░░0153⑆ ░░░4258⑈

https://businessonlinecheckdeposit.suntrust.com/CPWECompletion/ShowDepositReport.faces?depositId=0

JA431

Passport Web Edition

## Image Deposit Items Detail Report - Customer: EBC Asset Investment Inc, Deposit: 001053

**Report Settings**

| | |
|---|---|
| Sort Criteria: | Sequence |
| Filtered Fields: | |

**Amount/Item Totals**

| | |
|---|---|
| Total Number of Items: | 5 |
| Total Amount of Deposit: | 3871.10 USD |

**Report Details**

| | | | |
|---|---|---|---|
| Location: | 22461 Shaw Rd | Status: | Received |
| Account Number: | *********6777 - EBC Asset Investment Inc | Transferred by: | 5AL661BR |
| Assigned to: | 5AL661BR | Sent Date and Time: | Sep 26, 2016 02:29 PM |
| Create Date and Time: | Sep 26, 2016 02:28 PM | Received Date and Time: | Sep 26, 2016 02:29 PM |

| Sequence | Item Type | Serial | Routing Transit | Account | T/C | Amount ($) |
|---|---|---|---|---|---|---|
| | Virtual Credit Item | | 510001751 | 6777 | | 3,871.10 |
| 1 | Personal Check | | 253177049 | 0776 | 0107 | 270.00 |
| 2 | Personal Check | | 053101121 | 6831 | 00891 | 3,000.00 |
| 3 | Business Check | 314096 | 065400153 | 4258 | | 300.55 |
| 4 | Business Check | 314330 | 065400153 | 4258 | | 300.55 |

THE FACE OF THIS DOCUMENT HAS A VOID PANTOGRAPH FEATURE AND MICROPRINTING

NEWMAN, MATHIS, BRADY & SPEDALE
A PROFESSIONAL LAW CORPORATION
433 METAIRIE ROAD, STE. 600
METAIRIE, LOUISIANA 70005

Whitney Bank

314096

84-15
654

SEP 2 6 2016

09/08/16

PAY Three Hundred and 55/100 Dollars

$300.55

DOLLARS $

NOT VALID AFTER 90 DAYS

TO THE ORDER OF

E.B.C. Asset Investment, Inc.
22980 Indian Creek Dr. Suite 130
Sterling, VA 20166-6734

0005

SPECIAL TRUST ACCOUNT

ORIGINAL CHECK IS PRINTED ON CHEMICAL REACTIVE PAPER WHICH CONTAINS A WATERMARK

⑈314096⑈  ⑆  0153⑈  ⑈ 258⑈

https://businessonlinecheckdeposit.suntrust.com/CPWECompletion/ShowDepositReport.faces?depositId=0

JA432

'16

mage Deposit Items Detail Report - Customer: EBC Asset Investment Inc, Deposit: 001053

**Report Settings**

| Sort Criteria: | Sequence |
| Filtered Fields: | |

**Amount/Item Totals**

| Total Number of Items: | 5 |
| Total Amount of Deposit: | 3871.10 USD |

**Report Details**

| Location: | 22461 Shaw Rd | Status: | Received |
| Account Number: | *********6777 - EBC Asset Investment Inc | Transferred by: | 5AL661BR |
| Assigned to: | 5AL661BR | Sent Date and Time: | Sep 26, 2016 02:29 PM |
| Create Date and Time: | Sep 26, 2016 02:28 PM | Received Date and Time: | Sep 26, 2016 02:29 PM |

| Sequence | Item Type | Serial | Routing Transit | Account | T/C | Amount ($) |
|---|---|---|---|---|---|---|
| | Virtual Credit Item | | 510001751 | 6777 | | 3,871.10 |
| 1 | Personal Check | | 253177049 | 0776 | 0107 | 270.00 |
| 2 | Personal Check | | 053101121 | 6831 | 00891 | 3,000.00 |
| 3 | Business Check | 314096 | 065400153 | 4258 | | 300.55 |
| 4 | Business Check | 314330 | 065400153 | 4258 | | 300.55 |



JA433

9/26/2016

Passport Web Edition

## Image Deposit Items Detail Report - Customer: EBC Asset Investment Inc, Deposit: 001053

**Report Settings**

| | |
|---|---|
| Sort Criteria: | Sequence |
| Filtered Fields: | |

**Amount/Item Totals**

| | |
|---|---|
| Total Number of Items: | 5 |
| Total Amount of Deposit: | 3871.10 USD |

**Report Details**

| | | | |
|---|---|---|---|
| Location: | 22461 Shaw Rd | Status: | Received |
| Account Number: | *********6777 - EBC Asset Investment Inc | Transferred by: | 5AL661BR |
| Assigned to: | 5AL661BR | Sent Date and Time: | Sep 26, 2016 02:29 PM |
| Create Date and Time: | Sep 26, 2016 02:28 PM | Received Date and Time: | Sep 26, 2016 02:29 PM |

| Sequence | Item Type | Serial | Routing Transit | Account | T/C | Amount ($) |
|---|---|---|---|---|---|---|
| | Virtual Credit Item | | 510001751 | 6777 | | 3,871.10 |
| 1 | Personal Check | | 253177049 | 0776 | 0107 | 270.00 |
| 2 | Personal Check | | 053101121 | 6831 | 00891 | 3,000.00 |
| 3 | Business Check | 314096 | 065400153 | 4258 | | 300.55 |
| 4 | Business Check | 314330 | 065400153 | 4258 | | 300.55 |



ps://businessonlinecheckdeposit.suntrust.com/CPWECompletion/ShowDepositReport.faces

1/1

JA434

**EXHIBIT 1**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>KEVIN B. MERRILL et al.,<br><br>　　　　　Defendants. | Case No. 1-18-cv-02844-RDB |

## SURREPLY OF INVESTORS CCWB ASSET INVESTMENTS, LLC, EBC ASSET INVESTMENT, INC., AND M.C. DEAN, INC. TO THE RECEIVER'S REPLY TO OBJECTIONS TO THE RECEIVER'S MOTION FOR ORDER APPROVING DISTRIBUTION PLAN AND INTERIM DISTRIBUTION

CCWB Asset Investments, LLC ("CCWB"), EBC Asset Investment, Inc. ("EBC") and

M.C. Dean, Inc. ("M.C. Dean") (collectively, "Investors"), by counsel, hereby submit this

Surreply to the Receiver's Reply to their Objections to the Receiver's proposed distribution.

First, it is preposterous to claim—as the Receiver does—that simply by verifying the

accuracy of the transaction amounts and the stated loss in each Transaction Schedule, the

Investors were agreeing to how those transactions would be treated in a distribution plan that

would not even be disclosed for another six months.  Investors carefully followed the

instructions in completing the Transaction Schedules, which required only that they verify or

dispute the accuracy of the listed transactions and the amount of the claim against the Receiver

Estate. Contrary to the Receiver's unreasonable and self-serving view of the instructions to

Investors governing completion of the Transaction Schedules, those instructions did not require

or even suggest that if the Investors determined that the transactions and loss amounts were

1

JA436

accurate, they should nevertheless take it upon themselves to instruct the Receiver on how they wanted the transactions to be treated in some future, undisclosed distribution plan.

Second, to the extent the Receiver asks this Court to disallow the Objections because, he claims, he was not informed of the Investors' position that they reinvested withdrawals until after he revealed his distribution plan, he is wrong. In correspondence dated June 2, 2020, the Investors did, in fact, inform the Receiver that withdrawals were reinvested with the Receivership parties.

Third, the Receiver's complaint that the method set forth in *S.E.C. v. Huber*, 702 F.3d 905 (7th Cir. 2012)*, whereby reinvested withdrawals are treated as though they were rescinded, is "administratively difficult" is not a basis for denying Investors their fair share of the distribution. Indeed, the Receiver's argument amounts to a claim that because it would be more work for the Receiver to use the *Huber* method, then Investors should not be treated equitably.

The Receiver's arguments are indicative of the inequitable manner in which the Receiver has carried out the claims process here. Throughout, the Investors have fully cooperated and provided all of the information the Receiver requested. Indeed, the financial information upon which the Receiver now bases his claim of administrative difficulty was provided to him well over a year ago. Yet until the Receiver's recently filed Reply Brief, the Receiver has never informed the Investors that he was having trouble determining the amount reinvested because of "commingling" and "delays," Reply ¶¶ 14, 15. Rather than wait until his Reply brief, the Receiver could and should have given the Investors notice of his concerns or made a request for additional information much earlier in the process to allow them a meaningful opportunity to contest his calculation of current recovery.

JA437

Finally, it is important to underscore that the Investors have a large stake in this inquiry, having sustained approximately 20% of the total losses of Known Investors.  Equity requires due consideration of this fact, as a failure to calculate their Current Recoveries correctly results in a far greater impact on them that it might on investors with smaller losses.

I.      **Investors Were Not Required—and There Was No Reason for Them—to Dispute the Transactions Schedules or Provide in them the Factual Basis for Their Hypothetical Objections to an Undisclosed Distribution Plan**

The Receiver wants this Court to disallow the Investors' Objections because, he claims, the Investors were required but failed to state in their responses to the Transaction Schedules that withdrawals listed on the Schedules were reinvested with the Receivership Parties. Not so. The Investors fully completed the Transactions Schedules as instructed. They carefully reviewed the Court's February 10, 2021 Order Granting Receiver Gregory S. Milligan's Motion for Order Setting Claims Bar Date, Establishing Claims Procedure, and Approving Notification Process (Dkt. 396) ("Claims Procedure Order") requiring Known Investors to complete the Transaction Schedules, the instructions provided by the Receiver for completion of the Transaction Schedules, and the Transaction Schedules.  None of those documents imposed any requirement that Investors, in addition to verifying the accuracy of each transaction and the loss calculation, must also state their position that transactions should be considered reinvestments of withdrawals for the purpose of applying a distribution method that would not even be disclosed for another 6 months.

The Court was clear in its Claims Procedure Order about the purpose of the Transaction Schedules and what the Known Investors were required to do in completing them:

> All Known Investors must review their Transaction Schedule. If the Known Investor agrees with the information on the Transaction Schedule, the Known Investor must sign and return the Transaction Schedule and the Net Transaction amount included therein will be deemed to be the amount of that Known Investor's claim. *If the Known*

JA438

> *Investor disputes the accuracy of any information on the Transaction Schedule, the Known Investor must indicate on the Transaction Schedule the amount the Known Investor believes the claim to be* and return the Revised Transaction Schedule with all relevant supporting documentation. Each Known Investor must also disclose whether they have received any payment to compensate him, her, or it, in whole or in part, for the losses sustained in the Defendants' fraudulent scheme that is at issue in this SEC Action.

Claims Procedure Order, Dkt. 396, at 3 (emphasis added).  It is clear from the Order that the purpose of the Transaction Schedules is to have the Known Investor either verify or dispute the amount of the claim.[1] The Order did not require anything more of Investors, let alone an explanation of how they thought the transactions should be treated when the Receiver eventually decided on a distribution plan.

Pursuant to that Claims Procedure Order, on March 12, 2021, the Claims Manager, Stretto, sent Investors the Investor Notice of Claims Procedure and Claims Bar Date (Ex. C). The Investor Notice attached the Transaction Schedules as Exhibit B and contained the following explanations and instructions:

> [Y]ou must review and verify or dispute the Receiver's numbers which are provided in Attachment B

> You may dispute the amount on Attachment B or the conclusion that you do not have a claim

> Attachment B sets forth the transaction activity of your investment(s) with the Receivership Parties. . .

> Please review Attachment B and any other relevant information and/or documentation that you may have in your possession. With respect to each transfer identified in your Attachment B, please designate in the space provided whether you confirm or dispute the Receiver's conclusion. Please include any comments you may have in the corresponding space on Attachment B.

> Your confirmation of the Net Transaction on Attachment B will be the amount of your claim against the Receivership Estate. If you dispute or disagree with any of the

---

[1] Investors were also required to state on the Transaction Schedules whether they received compensation for their losses from any other source. They did not.

JA439

transactions on Attachment B, your dispute will be subject to further review in
accordance with the Court-approved claims procedure as detailed in the Order.

As instructed, the Investors reviewed the dates and amounts of each transaction listed on
the Transaction Schedules. They were accurate, and the Net Transaction was accurate. The
Investors' manager verified the information and submitted the verified Schedules to the
Receiver. Under any reasonable, fair and common sense reading of the Court's Order and the
Receiver's instructions, nothing more was required of the Investors in completing the Schedules.
The Order and the Receiver's instructions contain no indication that the Investors were supposed
to "infer" what distribution plan the Receiver would propose six months later, and based on that,
provide comments as to how their investments "should be recharacterized," as the Receiver now
claims. Receiver Reply (Dkt. 584) at ¶ 8.

When, six months later, the Receiver finally announced an interim distribution, the
method he intended to apply, and how he would determine the Current Recovery and interim
distribution for each Known Investor, *see* Dkt. 504, the Investors carefully reviewed the
proposals and, believing that their Current Recoveries were not properly calculated, promptly
contacted the Receiver to discuss the basis for their objections and the possibility of a resolution.

The Investors acted in good faith in completing the Transaction Schedules and promptly
providing all information when requested by the Receiver. They have at all times justifiably
relied on the obligation of the Receiver to treat all investors, including them, fairly. The
Transaction Schedules should not be misused as a "gotcha" mechanism to deny them the
distributions to which they are entitled.

II.     **Investors Informed the Receiver of their Position that Withdrawals Were Reinvested with Receivership Parties Long Before He Announced a Distribution Plan**

The Receiver's argument also fails because he cannot claim that he was not informed by Investors of their position that withdrawals were reinvested with the Receivership Parties until after he disclosed his distribution plan. *See* Receiver Reply ¶¶ 6, 8. In correspondence dated June 2, 2020, counsel for the Investors provided substantial financial information and supporting documents to the Receiver, including the following statements: [2]

EBC received a total of $18,193,918 from Deville Asset Management, all of which was *reinvested* with Deville Asset Management and lost

CCWB received a total of $17,379,591 from Deville Asset Management, all of which was *reinvested* with Deville Asset Management and lost.

DCI received a total of $4,900,616 from Deville Asset Management, all of which was *reinvested* with Deville Asset Management and lost.

In that correspondence, Investors offered to provide any further information or documents the Receiver felt he needed to evaluate the Investors' claims. In fact, the Receiver did subsequently request additional financial information and it was promptly provided.

III.    **Investors Should Not be Deprived of the Distributions to Which They are Entitled Because of Administrative Difficulty**

The basis for the Investors' Objections is the failure of the Receiver to follow the *Huber* court's direction as to how reinvested withdrawals should be treated when calculating Investors' Current Recoveries, i.e., the extent to which pre-Receivership withdrawals should offset an investor's claim against the Receivership estate, under the Rising Tide method. *Huber* states that "[i]n cases of withdrawal followed by reinvestment, the investor's maximum balance in the Ponzi scheme ($150,000 in our example) should be treated as his investment; *the withdrawals,*

---

[2]  Investors subsequently adjusted these statements to reflect small amounts of retained cash.

*having in effect been rescinded, should be ignored.*" *Id.*, 702 F.3d at 907 (emphasis added). So, if

an investor reinvests all that he has withdrawn, he would have a Current Recovery of 0%,

entitling him to a full share of the Interim Distribution. If, as is more common in the real world,

an investor reinvests most but not all of the money he has withdrawn, only the amount

withdrawn and not reinvested would be included in the calculation of his Current Recovery.[3]

The Receiver is asking the Court to disregard the fair and reasonable method of dealing

with reinvestments set forth in *Huber* and disallow the Investors' Objections because the

maximum balance approach of the *Huber* decision would be "administratively difficult" to

apply. Reply at 7. This amounts to arbitrarily benefiting investors who did not reinvest funds at

the expense of those who did, because treating them similarly would be more "administratively

difficult." The Receiver cites no authority for the proposition that administrative difficulty is a

valid reason to abandon the most equitable way of determining Investors Current Recoveries.

Indeed, there is no doubt that in a Ponzi Scheme as elaborate and complex as this, there are

numerous complications the Receiver must overcome to complete his task. This is but one of

them.

The Receiver does not dispute that Investors made no other investments while investing

with the Receivership Parties, Dean Decl. (Dkt. 558-1) ¶ 4, or that most of the withdrawals were

reinvested with the Receivership Parties. Thus, "the positive effect on the [I]nvestor[s] of

withdrawing [their] money from the scheme is erased because [they] re-invested the money

---

[3] None of the investors in *Huber* argued for this treatment. It is notable, then, that the Court took
it upon itself to carve out this manner of treating withdrawals that are reinvested. The Court
clearly foresaw that treating reinvested withdrawals as part of an investor's recovery would be
inequitable and provided future Receivers with the appropriate way to treat such withdrawals
when applying the Rising Tide method so as to avoid treating those investors unfairly in
comparison to other investors.

JA442

[they] took out back into the scheme and therefore, ended up losing the same amount of money that [they] would have lost had he decided not take [their] money out in the first instance." *Sec. & Exch. Comm'n v. Callahan*, 193 F. Supp. 3d 177, 195–96 (E.D.N.Y. 2016) (citing *Huber*, 702 F.3d at 907).  For that reason, amounts reinvested by Investors should not be counted against them as pre-Receivership distributions resulting in Current Recoveries that deny CCWB and EBC any distribution whatsoever and deprive M.C. Dean of millions of dollars.

The Receiver's primary difficulty appears to be in determining whether distributions and disbursements from accounts with commingled funds were made with funds withdrawn from Receivership Parties or with funds from other sources.[4] Investors are eager to provide the Receiver with whatever information or documentation he thinks he needs to resolve that issue. But there is no doubt that the Current Recoveries determined by the Receiver for CCWB (51.39%), EBC (60.19%) and M.C. Dean (17.43%) are artificially inflated and wrong.  As confirmed in the attached Second Declaration of Eric Dean, Manager of CCWB, EBC, and M.C. Dean, even if  all disbursements from CCWB[5] and all distributions and disbursements from EBC are deemed as having been made with funds withdrawn from Receivership Parties and thus included in calculating their Current Recoveries – a "worst case" scenario for Investors – the revised Current Recoveries are substantially lower than those proposed by the Receiver - 7.43% for CCWB and 39.33% for EBC.  *See* Decl. of E. Dean.

---

[4] The Receiver acknowledges that M.C. Dean did not make any distributions or disbursements and that he does not have any difficulty in determining what funds were reinvested by M.C. Dean.  Reply at ¶15. In that case, the Current Recovery for M.C. Dean should be 0.4% as explained in the Investor's Objections, at ¶12. (Dkt. 558).

[5] CCWB did not make any distributions to stockholders.

8

JA443

**IV.    CONCLUSION**

The Receiver is making unreasonable and self-serving arguments, exalting form over substance and ignoring economic reality in an effort to persuade the Court to approve a plan that would result in an inequitable distribution to some of the most aggrieved investors. If the artificially inflated Current Recoveries are not corrected, the Investors will become victims once again.

The Investors respectfully request that the Court sustain their objections and order the Receiver to recalculate the Investors' Current Recoveries, excluding amounts that have been withdrawn and reinvested from the calculation of their Current Recoveries. If the Court determines that the Receiver should not bear that additional administrative burden, then Investors request that the Court order the Receiver to recalculate the Investors' Current Recoveries using the "worst case scenario" described above: by treating the total net distributions and expenses of CCWB and EBC as pre-Receivership distributions and the balance of withdrawals as having been reinvested, such that CCWB's current recovery is approximately 7.5% and EBC's is approximately 39.3%.

Respectfully submitted,

Dated: February 16, 2022

*/s/ Robert F. Muse*_____
Robert F. Muse
Rachel Clattenburg
Ronald Kovner
**LEVY FIRESTONE MUSE LLP**
1701 K St. NW, Suite 350
Washington, DC 20005
Tel: (202) 845-3215
Fax: (202) 595-8253
rmuse@levyfirestone.com
rmc@levyfirestone.com
rk@levyfirestone.com

*Counsel for Investors*

9

JA444

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>          Plaintiff,<br><br>     v.<br><br>KEVIN B. MERRILL et al.,<br><br>          Defendants. | Case No. 1-18-cv-02844-RDB |

### SECOND DECLARATION OF ERIC DEAN IN SUPPORT OF SURREPLY OF INVESTORS CCWB ASSET INVESTMENTS, LLC, EBC ASSET INVESTMENT, INC., AND M.C. DEAN, INC. TO THE RECEIVER'S REPLY TO OBJECTIONS TO THE RECEIVER'S MOTION FOR ORDER APPROVING DISTRIBUTION PLAN AND INTERIM DISTRIBUTION

Eric Dean declares, under 28 U.S.C. § 1746 and under penalty of perjury, that the following is true and correct:

1. My name is Eric Dean. I am of sound mind and capable of making this Declaration. The facts stated herein are true and accurate to the best of my knowledge and belief.

2. I am the Manager of CCWB Asset Investments, LLC ("CCWB"), EBC Asset Investment, Inc. ("EBC"), and Dean Capital Investments, LLC, the wholly owned subsidiary of M. C. Dean, Inc. that invested with defendants ("M.C. Dean"). At my direction and under my supervision, Scott Brody, the controller of M.C. Dean, Inc., and others, compiled spreadsheets reflecting distributions made and expenses paid by CCWB during the period of investing with the Receivership Parties (Deville), attached as Exhibit A, and distributions made and expenses paid by EBC during the period of investing with the Receivership Parties (Deville), attached as Exhibit B.

1

JA445

3.  The total net distributions made and expenses paid by CCWB during the period of
    investing with the Receivership Parties is $551,414 (Ex. A).

4.  The total net distributions made and expenses paid by EBC during the period of investing
    with the Receivership Parties is $2,817,269 (Ex. B).

5.  Exhibit A also includes disbursements made by CCWB after it stopped investing with the
    Receivership Parties. Those amounts are excluded from the net distributions and
    expenses but are included as part of the $273,862 in retained cash described in my
    Declaration submitted with the Objections to the Receiver's Motion (Dkt. No. 558-1,
    ¶ 4).

6.  Exhibits A and B also include amounts reflecting collection fees charged by the
    Receivership Parties.  Those amounts are excluded from the net distributions and
    expenses because they do not reflect separate transactions but rather were simply
    deducted by the Receivership Parties when withdrawals were made.

7.  If one assumes, for purposes of the Objections, that all of the net distributions and
    expenses were paid by CCWB using funds withdrawn from the Receivership Parties, then
    CCWB's Current Recovery would be 7.43%. That percentage is arrived at by dividing
    the sum of the net distributions and expenses and retained cash ($551,414 + $273,862) by
    the total capital invested ($11,100,374).

8.  If one assumes that all of the net distributions and expenses were paid by EBC using
    funds withdrawn from the Receivership Parties, then EBC's Current Recovery would be
    39.33%. That percentage is arrived at by dividing the sum of the net distributions and
    expenses and retained cash ($2,817,269 + $498,034) by the total capital invested
    ($8,428,415).

2

JA446

9. I am ready and willing to promptly provide all information and documentation requested
   by the Receiver, as I have done since the inception of the Receivership.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed this 5 day of February 2022

Eric Dean

3

JA447

# EXHIBIT A

Case 1:18-cv-02844-RDB   Document 592-3   Filed 02/16/22   Page 2 of 2

**CCWB Distributions and Expenses** (Other than those paid to Deville)

| | 2015 Total | 2015 Prior to Deville | 2015 During Deville | 2016 | 2017 | 2018 Total | 2018 After Deville | 2018 During Deville | Total |
|---|---|---|---|---|---|---|---|---|---|
| SCHEDULE M-2 - LINE 6A - CASH DISTRIBUTIONS | | | | | | | | | |
| CASH DISTRIBUTIONS | 10,792 | | 10,792 | 2,319 | | 36,700 | - | 36,700 | 49,811 |
| | | | | | | | | | |
| LINE 20 - PAGE 1 - OTHER DEDUCTIONS | | | | | | | | | |
| AMORTIZATION | | | | 190 | | | | | 190 |
| BANK FEES | 187 | | 187 | 187 | 187 | 187 | | 187 | 748 |
| MANAGEMENT FEE | 686 | | 686 | 3,194 | 826 | 50 | | 50 | 4,756 |
| DUES & SUBSCRIPTIONS | 54,559 | | 54,559 | 26,838 | 9,000 | 9,000 | | 9,000 | 99,397 |
| INSURANCE EXPENSE | 4,580 | | 4,580 | 2,930 | 440 | 679 | | 679 | 8,629 |
| TELEPHONE EXPENSE | 2,838 | | 2,838 | 5,029 | 47 | 248 | | 248 | 8,162 |
| OFFICE SUPPLIES | 2,275 | | 2,275 | 1,389 | 3,311 | 2,258 | | 2,258 | 9,233 |
| COLLECTION COSTS | - | | - | 1,384,780 | 2,606,400 | - | | - | 3,991,180 |
| LEGAL AND PROFESSIONAL FEES | 124,005 | | 124,005 | 105,816 | 34,978 | 79,319 | 36,025 | 43,294 | 308,093 |
| SECTION 481(A) | | | | 2,676 | | | | | 2,676 |
| FINANCIAL SERVICES | | | | | | 57,084 | 4,124 | 52,960 | 52,960 |
| AUTOMOBILE EXPENSE | | | | | 26 | | | | 26 |
| LINE 14 - PAGE 1 - TAXES | | | | | | | | | |
| TAXES & LICENSES | 120 | | 120 | 150 | | 198 | | 198 | 468 |
| SCHEDULE K - LINE 18C - NONDEDUCTIBLE EXPENSES | | | | | | | | | |
| PENALTY | | | - | 148 | | 9,541 | | 9,541 | 9,689 |
| | | | | | | | | | |
| **Total Distributions and Expenses** | 200,042 | - | 200,042 | 1,535,646 | 2,655,215 | 195,264 | 40,149 | 155,115 | 4,546,018 |
| Less Non-Cash Tax Return Expenses | 187 | | 187 | 2,863 | 187 | 187 | | 187 | 3,424 |
| Less Collection/Services Fees Paid to Deville | - | | - | 1,384,780 | 2,606,400 | - | | - | 3,991,180 |
| Less Expenses clearly only related to other investments | | | | | | | | | |
| **Net Distributions and Expenses** | 199,855 | - | 199,855 | 148,003 | 48,628 | 195,077 | 40,149 | 154,928 | 551,414 |

JA449

**EXHIBIT B**

**EBC Distributions and Expenses** (Other than those paid to Deville)

| | 2015 Total | 2015 Prior to Deville | 2015 During Deville | 2016 | 2017 | 2018 Total | 2018 After Deville | 2018 During Deville | Total |
|---|---|---|---|---|---|---|---|---|---|
| **SCHEDULE K - LINE 16D - DISTRIBUTIONS** | | | | | | | | | |
| DISTRIBUTIONS | - | - | - | 315,000 | 727,800 | 655,652 | 295,296 | 360,356 | 1,403,156 |
| | | | | | | | | | |
| **LINE 19 - PAGE 1 - OTHER DEDUCTIONS** | | | | | | | | | |
| BANK CHARGES | 3,000 | | 3,000 | 3,372 | 3,271 | 2,807 | | 2,807 | 12,450 |
| MANAGEMENT FEE | | | | 9,487 | | | | | 9,487 |
| DUES & SUBSCRIPTIONS | 7,821 | | 7,821 | 9,487 | 18,182 | 11,632 | | 11,632 | 38,016 |
| INSURANCE EXPENSE | 2,257 | | 2,257 | 381 | 1,800 | 1,855 | | 1,855 | 14,591 |
| TELEPHONE EXPENSE | 3,495 | | 3,495 | 8,679 | 4,541 | 4,778 | | 4,778 | 12,814 |
| COLLECTION SERVICES | | | - | | | 64,579 | | 64,579 | 64,837 |
| OFFICE EXPENSE | 3,749 | | 3,749 | 258 | 1,824 | 3,354 | | 3,354 | 8,927 |
| FINANCIAL SERVICES | | | - | | | - | | - | 6,584 |
| TRAVEL, MEALS, AND ENTERTAINMENT | 4,319 | | 4,319 | 6,584 | | - | | - | 5,696 |
| AUTOMOBILE EXPENSE | 2,045 | | 2,045 | 1,377 | 1,170 | - | | - | 3,619 |
| POSTAGE AND DELIVERY | 383 | | 383 | 404 | 329 | 94 | | 94 | 1,249,764 |
| LEGAL AND PROFESSIONAL FEES - COLLECTIO | 163,443 | | 163,443 | 1,248,958 | 3,304,325 | 49,703 | | 49,703 | 3,520,810 |
| BUSINESS LICENSES & PERMITS | 1,896 | | 1,896 | 3,339 | 3,959 | 100 | | 100 | 7,380 |
| COMPUTER EXPENSES | 109 | | 109 | 1,425 | | - | | - | 1,923 |
| CREDIT CARD COLLECTION FEES | 2,978 | | 2,978 | 1,814 | 2 | 40 | | 40 | 3,020 |
| TRAVEL | | | | | 3,946 | 7,060 | | 7,060 | 11,006 |
| | | | | | | | | | |
| **LINE 12 - TAXES** | | | | | | | | | |
| TAXES & LICENSES | | | - | | | 8,554 | - | | 798 |
| STATE TAXES | 489 | | 489 | 309 | | | | | 489 |
| PROPERTY TAXES | | | - | | 49 | | | | 49 |
| | | | | | | | | | |
| **SCHEDULE K - 16C - NONDEDUCTIBLE EXPENSES** | | | | | | | | | |
| FINES AND PENALTIES | | | - | | | 1,182 | | | - |
| | | | | | | | | | |
| **SCHEDULE K - LINE 12A - CHARITABLE CONTRIBUTIONS** | | | | | | | | | |
| DONATIONS | | | - | | 27,500 | | | - | 27,500 |

JA451

Case 1:18-cv-02844-RDB　Document 592-4　Filed 02/16/22　Page 3 of 3

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Total Distributions and Expenses** | 195,984 | - | 195,984 | 1,601,387 | 4,098,698 | 811,390 | 506,358 | 6,402,916 |
| Less Collection/Services Fees Paid to Devill | 163,443 | - | 163,443 | 1,248,958 | 3,304,325 | 114,282 | - | 114,282 | 3,585,647 |
| Less Expenses clearly only related to other investments | | | | | | | |
| **Net Distributions and Expenses** | 32,541 | - | 32,541 | 352,429 | 794,373 | 697,108 | 392,076 | - | 2,817,269 |

JA452

**EXHIBIT C**

Online Login:
Password: Case 1:18-cv-02844-RDB    Document 592-5    Filed 02/16/22    Page 2 of 6

# INVESTOR NOTICE OF CLAIMS
# PROCEDURE AND CLAIMS BAR DATE

**Merrill-Ledford Claims**
**c/o Stretto**
**8269 E. 23rd Avenue, Suite 275**
**Denver, CO 80238**

**Website: www.Merrill-Ledford.com/Claims-Process/**
**E-Mail: TeamMerrillLedford@Stretto.com**

RE:    *Securities and Exchange Commission v. Kevin B. Merrill, Jay B. Ledford, et al.*
      **United States District Court for the District of Maryland**
      **Civil Action No. 18-cv-02844-RDB**

## IMPORTANT NOTICE

Dear Victim Investor:

This is an important notification from the Court-appointed Receiver, Gregory S. Milligan (the "Receiver"), in the civil action that was filed on September 13, 2018 (the "SEC Action").[1]

You may have previously furnished information regarding your investments made, monies returned, and losses suffered to the U.S. Attorney's Office and FBI for the related criminal case, *United States v. Kevin B. Merrill, Jay B. Ledford,* and others. Criminal Case No. RDB-18-0465. Even if you previously provided investment information, you must review and verify or dispute the Receiver's numbers, which are provided as **Attachment B**.

The Court appointed the Receiver[2] to investigate, marshal, and preserve all assets and interests (the "Receivership Estate") of the people and entities subject to the Receivership Order (the "Receivership Parties")[3] for the benefit of the defrauded investors and other creditors of the

---

[1] For information regarding the receivership in the SEC Action, please visit www.Merrill-Ledford.com.

[2] The Court appointed the Receiver pursuant to the First Amended Order Appointing Temporary Receiver (Dkt. No. 62) (the "Receivership Order"), a copy of which has been published on the Receiver's website and is available at www.Merrill-Ledford.com/wp-content/uploads/2019/01/First-Amended-Order-Appointing-Receiver-11.27.18.pdf.

[3] The Receivership Parties are defined in the Receivership Order as: (i) Kevin B. Merrill; (ii) Jay B. Ledford; (iii) Jezierski; (iv) Global Credit Recovery, LLC; (v) Delmarva Capital, LLC; (vi) Rhino Capital Holdings, LLC; (vii) Rhino Capital Group, LLC; (viii) DeVille Asset Management LTD; (ix) Riverwalk Financial Corporation; (x) K.B. Merrill Associates; (xi) Financial Reclamation Group LLC; (xii) Halo Credit Solutions LLC; (xiii) JBL Holdings LLC; (xiv) Jay B. Ledford, P.C.; (xv) the Joseph Finance Company; (xvi) Leddy Bear LTD; (xvii) Ledford & Associates, PLLC; (xviii) King Fischer LTD d/b/a LP Investments LTD; (xix) NLEX, Inc.; (xx) Receivables Portfolio Interchange, Inc.; (xxi) Riverwalk Capital Investments, Inc.; (xxii) Riverwalk Credit Solutions, Inc.; (xxiii) Riverwalk Debt Solutions, Inc.; (xxiv) Riverwalk Fixed Asset Group LLC; (xxv) SCUSA Financial, Inc.; (xxvi) Vaquero Asset Management, Inc.; (xxvii) CRJ Holdings LLC; (xxviii) Centurion Capital Corporation; (xxix) GCR CBL CP I, LLC; (xxx) GCR CBL CP II, LLC; (xxxi) GCR CBL CP III, LLC; (xxxii) GCR CBL CP IV, LLC; (xxxiii) GCR HCP

HB: 4834-2180-2464.1

JA454

Online Login:
Password:

Receivership Estate.  As of December 31, 2020, the Receiver has recovered approximately $56.2 million that will be available for an ultimate distribution to defrauded investors and other creditors following this Claims Procedure and a future Plan of Distribution.  Based upon current available information, which is preliminary and subject to further due diligence, the Receiver estimates total recoveries from Receivership Assets could range between $55 million and $65 million.

On February 10, 2021, the Court in the SEC Action issued an Order Setting Claims Bar Date, Establishing Claims Procedure, and Approving Notification Process (Dkt. No. 396) (the "Order").  This Order applies to all known investors who invested with any of the Receivership Parties.  If you are receiving this notice by mail or e-mail from the Receiver, a copy of the Court's Order is included as **Attachment A** for your notice and review.  A copy of the Order is also available at  www.Merrill-Ledford.com/wp-content/uploads/2021/02/Order-Granting-Receivers-Motion-for-Order-Setting-Claims-Bar-Date-Establishing-Claims-Procedure-and-Approving-Notification-Process-Doc-396.pdf.

**In accordance with the Court-approved claims procedure, this letter serves as notice of the Receiver's preliminary determination of your claim, if any, against the Receivership Estate.**

**EVEN IF YOU HAVE PREVIOUSLY PROVIDED INFORMATION IN THE CRIMINAL CASE, <u>YOU MUST RESPOND TO THIS NOTICE ON OR BEFORE MAY 20, 2021.</u>**

## I.    KNOWN INVESTORS

**IF YOU ARE RECEIVING THIS NOTICE DIRECTLY FROM THE RECEIVER**, it means that the Receiver has concluded that you invested with a Receivership Party.  Enclosed with this notice is Attachment B, a schedule that identifies whether the Receiver has preliminarily concluded that you have a claim against the Receivership Estate.

If your total investments exceed the total amount of disbursements you received from the Receivership Parties, you will have a claim against the Receivership Estate.  If the total amount of disbursements you received from the Receivership Parties exceed your total investments, then you do not have a claim against the Receivership Estate and your claim amount is identified as $0.  **You may dispute the amount on Attachment B or the conclusion that you do not have a claim.** Instructions for disputing the Receiver's preliminary conclusion are below.

Attachment B sets forth the transaction activity of your investment(s) with the Receivership Parties. The starting point for Attachment B were the investment and disbursement calculations made by the FBI to support the restitution order in the criminal case.  If there has been no change from your loss calculation in the criminal case, that fact is noted on Attachment B.  If there has been a change from your loss calculation in the criminal case, that fact is noted on Attachment B.

---

Holdings 1, LLC; (xxxiv) GCR Mercer Holdings, LLC; (xxxv) the J Trust; and (xxxvi) the Kevin B. Merrill Revocable Living Trust.  *See* Receivership Order, Dkt. No. 62 at ¶ 1.

HB: 4834-2180-2464.1

Online Login:
Password:

Attachment B contains the "<u>Net Transaction</u>" amount. The Net Transaction sums your total investments minus disbursements paid to you, and the "net" number is the amount of your claim, if any, against the Receivership Estate.

Please review Attachment B and any other relevant information and/or documentation that you may have in your possession. With respect to each transfer identified in your Attachment B, please designate in the space provided whether you confirm or dispute the Receiver's conclusion. Please include any comments that you may have in the corresponding space on Attachment B.

**WHETHER YOU ACCEPT OR DISPUTE THE RECEIVER'S CONCLUSION AS TO THE NET TRANSACTION AND/OR ANY PARTICULAR TRANSACTION, YOU MUST SIGN AND RETURN YOUR ATTACHMENT B TO**

<div align="center">

**Merrill-Ledford Claims**
**c/o Stretto**
**8269 E. 23rd Avenue, Suite 275**
**Denver, CO 80238**
**or**
**E-Mail: TeamMerrillLedford@Stretto.com**
**or**
**Website: https://cases.stretto.com/merrill-ledford**

</div>

 **prior to <u>May 20, 2021</u>.**

A self-addressed envelope has been provided for the return of your Attachment B, but you may also submit your Attachment B and any other information by e-mail, website submission, or a tracked delivery method (e.g., UPS, FedEx). To the extent you dispute or disagree with any portion of the Attachment B, please provide all information and documentation in support of your position when returning your Attachment B.

**RECEIPT OF OTHER COMPENSATION**

If you have received payments from any source to compensate you for the losses sustained in the Defendants' fraudulent scheme, you must disclose all payments received to date. If in the future, after you have submitted your claim, you receive any payments, you must disclose those payments, too. The payments include, but are not limited to, settlements in separate litigation and recoveries by state-court receivers which have been paid to you. If you have sold or transferred your claim to any other person or entity, you must disclose that fact as well.

If you fail to disclose your receipt of a payment, you may waive your right to participate in any ultimate distribution in this SEC Action. To the extent the Receiver discovers an undisclosed payment after a distribution is made in this SEC Action, you will be required to return the full amount of any distribution received in this SEC Action.

YOUR SIGNED ATTACHMENT B MUST BE RECEIVED AT THE ADDRESS, E-MAIL ADDRESS, OR WEBSITE LISTED ABOVE, POSTMARKED, E-MAILED, OR SUBMITTED ON OR BEFORE **MAY 20, 2021**.

HB: 4834-2180-2464.1

<div align="center">

**JA456**

</div>

Online Login:
Password:

## RESOLUTION OF DISPUTED AMOUNTS

Your confirmation of the Net Transaction on Attachment B will be the amount of your claim against the Receivership Estate. If you dispute or disagree with any of the transactions on Attachment B, your dispute will be subject to further review in accordance with the Court-approved claims procedure as detailed in the Order. The Receiver will review any documentation and/or information provided in support of a disputed position and notify you whether the Receiver accepts or disputes your disputed position on or before June 19, 2021. If the Receiver accepts your disputed position, your claim against the Receivership will be adjusted accordingly and no further action will be required.

If the Receiver disputes your position, you will be provided an additional twenty-one (21) days from the postmark or transmission date of the Receiver's notice to provide supplemental documentation as to any disputed transactions. If you fail to supplement your claim within the time permitted, or if after providing supplemental documentation the Receiver continues to dispute your claim, the Receiver will file a motion with the Court, which will be provided to you, seeking a final determination of your claim.

## II.     UNKNOWN INVESTORS

**IF YOU HAVE NOT RECEIVED THIS NOTICE IN THE MAIL FROM THE RECEIVER** but have learned about this procedure in some other way, the Receiver has **NO** record of your potential claim. You must complete the Claim Form that you can obtain at www.Merrill-Ledford.com/Claims-Process/ or by contacting the Receiver by submitting an e-mail inquiry at www.Merrill-Ledford.com/Contact/ or TeamMerrillLedford@Stretto.com.

You must return the completed Claim Form with all supporting documentation and information requested to the Receiver

**Merrill-Ledford Claims**
**c/o Stretto**
**8269 E. 23rd Avenue, Suite 275**
**Denver, CO 80238**
**or**
**E-Mail: TeamMerrillLedford@stretto.com**
**or**
**Website: https://cases.stretto.com/merrill-ledford**

at the above address, e-mail, or website on or before **May 20, 2021**. IN ORDER FOR YOUR CLAIM TO BE CONSIDERED, THE RECEIVER MUST RECEIVE THE FULLY COMPLETED CLAIM FORM AND DOCUMENTATION, POSTMARKED, E-MAILED, OR SUBMITTED ON OR BEFORE **MAY 20, 2021**.

HB: 4834-2180-2464.1

JA457

Online Login:
Password:

### III.    PLAN OF DISTRIBUTION

**NOTE: YOU MAY NOT RECEIVE THE FULL AMOUNT OF YOUR ALLOWED CLAIM FROM THE RECEIVERSHIP ESTATE.**

Your claim represents the amount of your loss which will be taken into account in a future interim or final distribution process to be approved by the Court.  The distribution procedure and methodology will be determined by the Court at a later date.  The Receiver will mail and e-mail all known investors a copy of the proposed Plan of Distribution and will publish a copy on the Receiver's website: www.Merrill-Ledford.com.  If you do not have regular access to the internet, please send a request for direct notice to the Receiver's address or e-mail.

Investors and other parties in interest will have an opportunity to review the proposed Plan of Distribution and file responses and objections with the Court.

Finally, please be advised that the notice provided here relates solely to the claim regarding your investment and does not affect the Receiver's right to pursue other claims, including claims for the return of fictitious profits in excess of an investor's principal investment, which right is expressly reserved.

Thank you for your attention to and cooperation with this matter.

*/s/Lynn H. Butler*

Lynn H. Butler, *pro hac vice*
HUSCH BLACKWELL LLP
111 Congress Ave., Suite 1400
Austin, TX 78701
Tel: (512) 472-5456
Fax: (512) 479-1101
lynn.butler@huschblackwell.com

Buffey E. Klein, *pro hac vice*
HUSCH BLACKWELL LLP
2001 Ross Avenue, Suite 2000
Dallas, Texas 75201
Tel: (214) 999-6100
Fax: (214) 999-6170
buffey.klein@huschblackwell.com

*Counsel for Receiver Gregory S. Milligan*

HB: 4834-2180-2464.1

```
 1              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MARYLAND
 2                        NORTHERN DIVISION

 3
       SECURITIES AND EXCHANGE     )
 4     COMMISSION,                 )
                  Plaintiff,       )   CASE NO.  1:18-cv-02844-RDB
 5                                 )
                  vs.              )
 6                                 )
       KEVIN B. MERRILL, et al.,   )
 7              Defendants.        )
       _____    )
 8
                         TUESDAY, NOVEMBER 15, 2022
 9                            Courtroom 5D
                           Baltimore, Maryland
10
                       TRANSCRIPT OF PROCEEDINGS
11                         MOTIONS HEARING
                 BEFORE THE HONORABLE RICHARD D. BENNETT
12

13     For the Plaintiff SEC:

14     John T. Crutchlow, Esquire
       Catherine Pappas, Esquire
15     Julia C. Green, Esquire
        Securities and Exchange Commission
16      1617 JFK Blvd, Suite 520
        Philadelphia, PA 19103
17
       For the Intervenor Plaintiff:
18
       John Truex Chung, Esquire
19     Joyce K. McDonald, Esquire
        United States Attorney's Office
20      36 South Charles Street, 4th Floor
        Baltimore, MD 21201
21     _____

22        (Computer-aided Transcription of Stenotype Notes)

23                        Reported by:
                       Amanda L. Longmore, RPR
24               Federal Official Court Reporter
                  101 W. Lombard Street, 4th Floor
25                 Baltimore, Maryland  21201
                          410-962-4474
```

JA459

2

```
 1     APPEARANCES, CONTINUED:

 2
       For the Defendant Amanda Merrill:
 3
       Robert Biddle, Esquire
 4      Nathans and Biddle, LLP
        120 East Baltimore Street, Suite 1800
 5      Baltimore, MD 21202

 6     For the Claimant Dean Group:

 7     Robert F. Muse, Esquire
       Rachel M. Clattenburg, Esquire
 8      Levy Firestone Muse, LLP
        900 17th Street NW, Suite 1200
 9      Washington, DC 20006

10     For the Claimant Connaughton Group:

11     Monica E. Miller, Esquire
        Cuneo Gilbert and LaDuca
12      4725 Wisconsin Avenue NW, Suite 200
        Washington, DC 20016
13
       For the Claimant Iwona Howley:
14
       Sam Della Fera, Jr., Esquire
15      Chiesa Shahinian and Giantomasi, PC
        One Boland Drive
16      West Orange, NJ 07052

17     For the Intervenor:

18     David G. Lim, Esquire (Via Telephone)
        Massachusetts Attorney General's Office
19      One Ashburton Place, 18th Floor
        Boston, MA 02108
20
       For the Receiver:
21
       Buffey Klein, Esquire
22     Jameson J. Watts, Esquire
       Lynn H. Butler, Esquire (Via Telephone)
23      Husch Blackwell, LLP
        1900 North Pearl, Suite 1800
24      Dallas, TX 75201

25
```

JA460

Motions Hearing - 11/15/22

1              **P R O C E E D I N G S**

2                    **(11:20 a.m.)**

3              THE COURT:  This is calling the case of Securities

4     and Exchange Commission versus Merrill, et al., Civil Number

5     RDB-18-2844.  This is a motions hearing with respect to certain

6     motions that remain pending and a little bit of housekeeping

7     and trying to get distribution started, this case obviously

8     being in the aftermath of the criminal prosecution and pleas of

9     guilty by three and then ultimately four defendants here in

10    this matter.

11             So I would note that some of the counsel are

12    participating here by telephone telephonically, and that is

13    fine.  It's my understanding that Sam Della Fera from New

14    Jersey is attending via telephone on behalf of the claimant,

15    Iwona Howley.

16             Mr. Fera, are you on the line?

17             MR. DELLA FERA:  I am, Your Honor, and thank you for

18    the accommodation.

19             THE COURT:  No problem.  Good morning to you.

20             And on behalf of the Intervenor, Massachusetts

21    Attorney General's Office, we have David Lim, an Assistant

22    Attorney General for the State of Massachusetts calling in from

23    Boston.

24             Mr. Lim, are you on the line, sir?

25             MR. LIM:  Yes, I am, Your Honor.  Thank you for your

Amanda L. Longmore, RPR - Federal Official Court Reporter

JA461

1    accommodation.

2            THE COURT:  That's quite all right.  And then we have

3    lawyers from Husch Blackwell in Austin, Texas, who are on the

4    line for the Receiver Gregory Milligan.  And I believe Lynn

5    Butler, you are attending by telephone, correct?

6            MR. BUTLER:  Yes, Your Honor, Lynn Butler on behalf

7    of Greg Milligan and, again, I appreciate the accommodation.

8            THE COURT:  That's fine.  So with that, Ms. Buffey

9    Klein and Jameson Watts, they are here in court here as well.

10           MS. KLEIN:  Yes, Your Honor.

11           THE COURT:  It's nice to have you all.  So you have

12   made the trip here.  Welcome.  Nice to have you.  We will be

13   going over this in a minute.

14           With that, I would note as to those persons in the

15   courtroom, the masking policies of this court have previously

16   required that masks were to be worn in all public areas of the

17   courtroom with exception -- in the courthouse, rather, with the

18   exception of in the courtroom.  Those policies have now been

19   modified so that the wearing of masks is now optional for all

20   persons in public areas of the courthouse.

21           And with respect to the courtroom, the masks are to

22   be worn in the discretion of the presiding judge, with the

23   exception of those who have been fully vaccinated and they do

24   not need to wear their mask.  So it is still in a state of flux

25   so what I'm doing now is that I'm requesting that those who are

JA462

Motions Hearing - 11/15/22

```
1    in the courtroom, if they are not really in the back there,
2    although I see there's some counsel here, if you have been
3    fully vaccinated you can take your mask off as long as you stay
4    sufficiently spaced, as far as I'm concerned, and I'll inquire
5    on the vaccination status of everybody as we proceed.
6              The record will reflect that I'm up here on the bench
7    behind a wall of Plexiglass and I have been fully vaccinated
8    and double-boosted and tested negative within the last five
9    weeks.  So I'm not wearing a mask so I will inquire of the
10   vaccination status.
11             So we have with us quite a few people.  We have got
12   Ms. Maldeis, my courtroom deputy, is very efficient but even
13   she said, Judge, I have this schedule across the board for you
14   so you're going to have to make sure I can look at it here.
15             So let's just go step by step.  First of all, here on
16   behalf of the Plaintiff Securities and Exchange Commission.
17             MR. CRUTCHLOW:  Good morning, Your Honor.  John
18   Crutchlow for the SEC, and I'm here with two of my colleagues.
19             MS. GREEN:  Good morning, Your Honor.  Julia Green
20   from the SEC.
21             THE COURT:  Welcome.  Nice to see you.
22             MS. PAPPAS:  Good morning, Your Honor.  Cathy Pappas,
23   from the SEC.
24             THE COURT:  Nice to see you.  And all three of you
25   have been fully vaccinated?
```

JA463

Motions Hearing - 11/15/22

```
 1              MS. PAPPAS:  We have.

 2              MR. CRUTCHLOW:  Yes, Your Honor.

 3              THE COURT:  If keep your mask off, you know, when you

 4    speak -- you don't have to but you are free to keep your mask

 5    off if you so choose.  So thank you for you all being there.

 6              And then in the next row here we have with us, as I

 7    understand -- you all may be seated for a moment -- if I can

 8    just see who else is here, we have immediately behind you there

 9    is, I gather, Ms. Monica Miller.  I'm sorry, immediately behind

10    you, it's a little bit unclear, I apologize, immediately behind

11    you are then Ms. Klein and Mr. Watts from Husch Blackwell in

12    Austin, Texas.  Nice to have you all here.  And you all are

13    fully vaccinated as well?

14              MR. WATTS:  Yes, Your Honor.

15              MS. KLEIN:  Yes, Your Honor.

16              THE COURT:  That's fine.  So thank you very much.

17              And furthermore, then in the second row we have --

18    let me just go through who is here as I check off the list.  On

19    behalf of, again, I think covering -- starting to look here in

20    terms of the plaintiffs here.  In the next row, who is here?

21    I'll have to just check through.  I've got my chart here.  It's

22    a little bit confusing.

23              Right there, your name is?  I'm sorry.  You are

24    Monica Miller and you are an attorney here on behalf of the

25    claimant Jeffrey Connaughton, correct?
```

JA464

Motions Hearing - 11/15/22

```
 1              MS. MILLER:  Mr. Connaughton and eight other
 2     objectors, that's right, Your Honor.
 3              THE COURT:  I'm sorry, I can't hear you.
 4              MS. MILLER:  Mr. Connaughton and eight other
 5     objectors, nine objectors I represent.
 6              THE COURT:  All right.  Thank you very much.  Yes,
 7     sir, you are?  You can be seated.
 8              MR. BOCKIN:  Greg Bockin for the SEC.  Nice to see
 9     you again.
10              THE COURT:  Yes, Mr. Bockin, nice to see you again.
11     And you don't have a seat here at the table with the SEC; is
12     that right?
13              MR. BOCKIN:  I'm just supervising today, Your Honor,
14     but thank you.
15              THE COURT:  That's always dangerous for the
16     supervisor to be at the backs of people, Mr. Bockin, but that's
17     fine.  It's nice to have you here.  Welcome.
18              And on behalf of -- from the US Attorney's Office
19     here who is appearing?
20              MR. CHUNG:  John Truex Chung.
21              THE COURT:  Yes.  Hold on one second here, please.
22     John Chung and Joyce McDonald and --
23              MS. MCDONALD:  Yes.  Good morning, Your Honor.
24              THE COURT:  Good morning to you.  And Mr. Manchak,
25     you're here as well, is that right?
```

JA465

Motions Hearing - 11/15/22

```
 1            MR. MANCHAK:  I'm here, Your Honor, but I'm with the

 2   Securities and Exchange Commission now but I'm in a nonspeaking

 3   observing-only role.

 4            THE COURT:  Okay.  But you are here on behalf of the

 5   Securities and Exchange Commission?

 6            MR. MANCHAK:  Yes, Your Honor, working with the

 7   Securities and Exchange Commission.

 8            THE COURT:  You're still with the US Attorney's

 9   Office, are you not?

10            MR. MANCHAK:  No, no, no.

11            THE COURT:  You've now made the move.

12            MR. MANCHAK:  I made the move, Your Honor.

13            THE COURT:  I saw a limousine out front.  I guess

14   that must have been yours.  (Laughter.)

15            We're laughing here.  You didn't get that kind of

16   service in the US Attorney's Office, did you, Mr. Manchak?

17            MR. MANCHAK:  Not at all.

18            THE COURT:  You're moving up in the world.  Okay.

19   It's nice to have you.  You all may be seated.  If you've

20   identified yourselves, you may be seated.  And yes, sir?

21            MR. MILLIGAN:  Good morning, Your Honor.  Greg

22   Milligan, the Receiver.

23            THE COURT:  Yes.  Hold on one second, please.  Let me

24   look here.  Yes, the Receiver Mr. Milligan.  You are a very

25   important person here.  Nice to have you here, sir.
```

JA466

Motions Hearing - 11/15/22

1                MR. MILLIGAN:  Thank you, Your Honor.
2                THE COURT:  Why don't you make sure you stay right --
3       quick access to me.  (Laughter.)
4                And yes, behind you right there?
5                MR. WHITE:  Good morning, Your Honor.  Erik White
6       with Harney Partners on behalf of the Receiver.
7                THE COURT:  Yes.  It's nice to have you here,
8       Mr. White, as well.  Nice to see you.
9                So with that, on behalf of the defendant, Amanda
10      Merrill?
11               MR. BIDDLE:  Yes.  Good morning, Your Honor.  Robert
12      Biddle, Nathans Law.
13               THE COURT:  Yes, Mr. Biddle.  Nice to see you as
14      always, and good morning to you, Ms. Merrill.  Nice to see you.
15      Have you been fully vaccinated?
16               MS. MERRILL:  No, sir.
17               THE COURT:  Okay.  Then you should keep your mask up
18      at all times here.  Thank you very much.
19               Yes, sir, on behalf of CCWB Assets Investments?
20               MR. MUSE:  Your Honor, my name is Bob Muse.
21               THE COURT:  Yes, Mr. Muse.
22               MR. MUSE:  And with my partner Rachel Clattenburg
23      who's next to me.  We are sitting here fully vaccinated and we
24      are representing for purposes of this hearing three investors,
25      CCWB, ECB, and M.C. Dean.

JA467

Motions Hearing - 11/15/22

```
 1              THE COURT:  Hold on just one second.  I have in my
 2     chart here but just make sure I've got it down.  Hold on here.
 3     And you came over here from Washington today which means you
 4     had a longer trip than the people from Austin, Texas, actually.
 5              MR. MUSE:  And I didn't have a limousine.
 6              THE COURT:  No, you didn't, and that's fine.  I think
 7     you can get from Austin, Texas to Baltimore by way of Southwest
 8     quicker than you can drive from Washington to Baltimore.
 9     (Laughter.)
10              MR. MUSE:  Thank you, sir.
11              THE COURT:  You may have had the longest.  And you
12     are representing CCWB Asset Investments, as well as ECB Asset
13     Investment, as well as M.C. Dean, Inc., essentially known as
14     the Virginia Group, correct?
15              MR. MUSE:  That's correct, and they are all under the
16     heading of the Dean Investors per the SEC complaint.
17              THE COURT:  Yes, okay.  The Dean Investors, okay.
18     Thank you.  I'll make a note of that.
19              Okay.  So with that, let me just tell you my thought
20     about how to approach this today.  My goal is to clarify
21     exactly what we can immediately distribute.  We have got 50
22     million dollars sitting and it has been drifting for a while.
23     We have got some objections and some issues we need to deal
24     with, and I apologize if this has drifted a little too long.
25     And certainly let the record reflect that I'm conscious of the
```

Amanda L. Longmore, RPR - Federal Official Court Reporter

JA468

Motions Hearing - 11/15/22

1    need for the victims of this clear Ponzi scheme and fraud to

2    get money.  But we have been sort of waiting for some things to

3    crystallize and perhaps we have waited a tad too long but we

4    are going to get moving on this.

5          So Mr. Milligan, one of the things that's going to be

6    accomplished today is you are definitely going to be permitted

7    to send some money out the door to some claimants as far as I'm

8    concerned, and I start with that strong premise and I want

9    everyone to understand that.  That doesn't mean we don't

10   recognize some of the issues and some money may need to stay

11   back in the pot, so to speak, until we decide how it's

12   distributed, but hopefully by the end of this hearing, and we

13   are going to make sure that some money is distributed out to

14   some of the victims of the fraud.

15         What I would like to do initially is we essentially

16   have before us four pending motions, and I think one of them I

17   think can be clarified very quickly but we have, to my

18   knowledge, and they have been pending for a while, obviously,

19   we have the four pending motions that I see before us here are

20   the Defendant Amanda Merrill's motion for Order of

21   Determination of Jury Trial Right, Paper Number 446; then

22   Defendant Amanda Merrill's Motion for Determination of Burden

23   of Proof and related matters, Paper 460; and then we have the

24   Receiver Gregory Milligan's Omnibus Objection to Claims, Paper

25   Number 503; and then we have Paper Number 504, the Receiver

JA469

Motions Hearing - 11/15/22

1    Gregory Milligan's Motion for Order Approving Distribution Plan

2    and Interim Distribution.

3            And I would note certainly in that regard we have the

4    issue here, for example, as to the claimant investors, Virginia

5    Group represented by Mr. Muse and Ms. Clattenburg, with respect

6    to any calculation method and we are going to be addressing

7    that as well.  And we have other issues of other claimants,

8    some of whom are not represented -- are represented but are not

9    present or attending here today.

10           What I propose to do is I would like to first just

11   address the matter of Amanda Merrill and the status here and

12   what is still before the Court, and particularly in terms of

13   any contention as to a right of a jury trial.  And then we will

14   then move away from Ms. Merrill fairly quickly as to that

15   issue.  We will still have the matter of her personal property

16   issue, Mr. Biddle, but we will come back to that later in the

17   hearing.

18           And I would then like to go to the issues as to the

19   objection to claims and distribution and then come back to

20   Amanda Merrill with respect to the personal property issue.  It

21   occurs to me that the personal property issue would not

22   necessarily necessitate the attendance of all the lawyers here

23   on that matter.  We can just zero in on that and give it

24   whatever time is needed.  And I'm not giving that short trip,

25   Mr. Biddle, but I think that's something we can come back to

JA470

Motions Hearing - 11/15/22

1    and whatever time it takes it takes, and that's what I'm

2    approaching today.

3            Is there any objection from the point of view of the

4    SEC on that proposal, doing it in that fashion?

5            MR. CRUTCHLOW:  No objection, Your Honor.

6            THE COURT:  Mr. Biddle, from your point of view?

7            MR. BIDDLE:  No, and I can address fairly --

8            THE COURT:  Well, we will address one quick issue.

9            Mr. Muse, that sound good to you?

10           MR. MUSE:  Yes, Your Honor.  That's fine.

11           THE COURT:  Because once we do that and we get to the

12   matter of the personal property and the items, I don't know

13   that you need to continue to -- you know, I never want to

14   prevent lawyers from billing their time.  (Laughter.)

15           We're laughing.  I've learned never get in the way of

16   that.  That's fine.  But I think there's some that need no

17   longer be in attendance, my point is, once we get to that

18   residual issue as to Ms. Merrill, the SEC lawyers, and

19   Mr. Biddle can do their thing.

20           Mr. Biddle, I'm not really sure if I'm clear on where

21   we are on this right to a jury trial, if there was ever one in

22   the first place.  Are you still contending that there is a

23   right to a jury trial as to your client on some of these

24   matters?

25           MR. BIDDLE:  Well, we are, Your Honor, but I'm going

Motions Hearing - 11/15/22

```
 1    to submit.  I'm not going to argue the law.
 2              THE COURT:  Okay.  That's fine.  I'm glad you are
 3    submitting because I'm going to rule on it here right now, so
 4    we will deal with that.
 5              MR. BIDDLE:  Please do.
 6              THE COURT:  So thank you.  Essentially on that issue,
 7    Paper Number 446, Amanda Merrill has argued that the
 8    disgorgement of her property is essentially an unjust
 9    enrichment claim which necessitates a right to a jury trial
10    under the Seventh Amendment to the US Constitution.  And
11    Ms. Merrill has subsequently stated in a separate motion
12    seeking the standard for the burden of proof that perhaps once
13    the Court rules on the merits of the claims the need for either
14    a bench or a jury trial will be avoided.
15              I have already ruled on the burden of proof for the
16    three categories, the ill-gotten funds as a result of the Ponzi
17    scheme perpetuated by Ms. Merrill's husband and as to which she
18    has a criminal conviction as to obstruction of justice in the
19    aftermath of that; and secondly, the real estate proceeds and
20    the personal property.
21              I have already ruled against Ms. Merrill finding her
22    liable for the ill-gotten funds and the real estate proceeds,
23    and the only remaining issue to be adjudicated is the personal
24    property issue.  And I have already determined that the SEC has
25    proven a *prima facie* case of disgorgement of personal property
```

JA472

Motions Hearing - 11/15/22

1    against Ms. Merrill, and the burden has since shifted to

2    Ms. Merrill to prove that she procured that personal property

3    using her own funds and that will be the issue before me here

4    today.

5            With respect to the matter of jury trial, Ms. Merrill

6    is not entitled to a jury trial, and the record will be clear

7    on that and I will issue a written opinion to that effect.

8    There is literally no support for the suggestion that she's

9    entitled to a jury trial, and I can find none in terms of the

10   jurisprudence on this question.

11           The SEC has noted that disgorgement is permissible,

12   is a permissible form of equitable relief and there is no right

13   to a jury trial on equitable claims, and the Supreme Court has

14   specifically held that disgorgement is a remedy founded in

15   equity as the Supreme Court most recently addressed in the *Liu*

16   case, *Liu versus SEC*, a 2020 Supreme Court opinion at 140

17   Supreme Court Reporter 1936.  Because, quite simply, where a

18   claim is founded in equitable relief, there is no right to a

19   jury trial.

20           While the Seventh Amendment to the Constitution

21   guarantees a jury trial in cases of common law, there are no

22   constitutional revisions, guarantees, or indeed any requirement

23   that jury trials be had in equity, and indeed it prohibits jury

24   trials in equity in that fashion.  And I believe there's clear

25   authority for that proposition with respect to the Fourth

JA473

Motions Hearing - 11/15/22

```
 1    Circuit opinion in *Vodusek*, V-o-d-u-s-e-k, *versus Bayliner*
 2    *Marine Corp*, 71 F.3d 148, a Fourth Circuit opinion in 1995.
 3    But more specifically, this almost identical issue has been
 4    presented in the Sixth Circuit in the case of *SEC versus*
 5    *Bravata*, B-r-a-v-a-t-a, 3 F. Supp. 3d 638, an opinion of the
 6    United States District Court for the Eastern District of
 7    Michigan in 2014, and then was essentially affirmed by the
 8    Sixth Circuit in 636 Federal Appendix 277 finding that relief
 9    defendants in this kind of disgorgement action have no right to
10    a jury trial in disgorgement claims and that's what is really
11    involved here is a disgorgement claim, quite simply.
12              Further authority noting that there is no entitlement
13    to a jury trial in this matter would be the Second Circuit
14    opinion at *SEC versus Commonwealth Chemical Securities*, 574
15    F.2d 90, a 1978 opinion of the Second Circuit; *SEC versus Rind*,
16    R-i-n-d, 991 F.2d 1486, a Ninth Circuit opinion in 1993.
17              And as far as I'm concerned, the question is quite
18    clear, there is no right to a jury trial on this matter and her
19    motion seeking one in Paper Number 446 shall be denied and I
20    will do that by very separate -- a brief memorandum order
21    noting that there is no right to a jury trial here.
22              What does still remain is the matter of adjudication
23    as to personal property, and I have reviewed her petition and I
24    have reviewed the SEC's response in Paper Number 621 and we
25    will be getting back to that later in these proceedings.
```

Amanda L. Longmore, RPR - Federal Official Court Reporter

JA474

Motions Hearing - 11/15/22

```
 1              So with that, what I would like to do now is just
 2    essentially focus in on the matter of the Receiver Gregory
 3    Milligan's objection to any claims.  And I will need to have
 4    some clarification here, but essentially there are objection to
 5    some 36 claims and perhaps, as I look here, it would be helpful
 6    I think if I just sort of summarized where we are from the
 7    procedural posture as to these before I hear from counsel and
 8    specifically address some of these issues that have been raised
 9    and specifically the objections by certain claimants here
10    including not only the Virginia Group but also Iwona Howley
11    here who is represented -- I'm looking here.
12              THE CLERK:  They are on the phone.
13              THE COURT:  I'm sorry, I'm having trouble reading the
14    chart here.  I apologize.
15              THE CLERK:  Your Honor, they are on the phone.  For
16    Ms. Howley, it's Mr. Della Fera.
17              MR. DELLA FERA:  Mr. Della Fera, Your Honor.
18              THE COURT:  Thank you, Ms. Maldeis.
19              Let me just summarize, if I can, first of all where
20    we are procedurally on this.
21              MS. KLEIN:  Your Honor --
22              THE COURT:  Yes?
23              MS. KLEIN:  Might we -- were planning to switch spots
24    so that the Receiver's team is front row and answer your
25    questions.
```

JA475

Motions Hearing - 11/15/22

```
 1                THE COURT:  Go right ahead, Ms. Klein.  That's fine.
 2                MS. KLEIN:  Thank you, Your Honor.
 3                THE COURT:  Thank you very much.  Essentially, just
 4      so we are quite clear, it is very clear for all the persons
 5      here, let me just sort of summarize in a nutshell, which is
 6      always dangerous for my court reporter as quickly as I can go
 7      sometimes.  So, Amanda, if I go too quickly, just throw your
 8      hand up.
 9                Essentially, the posture of this case presently is
10      that in September of 2018, a grand jury in this district
11      returned an indictment charging the defendants Kevin B.
12      Merrill, JB Ledford, and Cameron Jezierski, which is spelled
13      J-e-z-i-e-r-s-k-i, with numerous counts including wire fraud,
14      identity theft, and money laundering in Criminal Number
15      RDB-18-0465.
16                And then there was a Superseding Indictment returned
17      by the grand jury adding an additional defendant, Ms. Amanda
18      Merrill, with conspiracy to obstruct justice in light of steps
19      that she took in the aftermath.  There was no accusation that
20      she was part of the initial fraud but the accusation was that
21      she conspired to obstruct justice in the aftermath of those
22      charges.
23                Ultimately, all of those individuals, including
24      Ms. Merrill who is here in court, pled guilty to a massive
25      Ponzi scheme that some said would approach Bernie Madoff if it
```

JA476

1    had gone on longer.  And Ms. Merrill ultimately pled guilty and

2    all four of these defendants were sentenced by this Court.

3           On September the 13th, 2018, immediately in the

4    aftermath of the first indictment that was returned by a

5    Federal Grand Jury in this district, the Securities and

6    Exchange Commission filed a complaint alleging that Kevin

7    Merrill, Jay Ledford, and Cameron Jezierski raised more than

8    345 million dollars from over 230 investors to purportedly

9    purchase consumer debt portfolios.  And essentially the SEC has

10   alleged that from at least 2013 to 2018, this Ponzi scheme

11   involved, among other things, security offerings rife with

12   misrepresentations, fake debt, forged signatures, fabricated

13   wire transfers, and the movement of millions of dollars into

14   personal accounts in an elaborate scheme wherein the defendants

15   offered and sold investments and the same debt and/or debt

16   portfolios to multiple victims.  And then an Amended Complaint

17   was filed in November of 2018 by the Securities and Exchange

18   Commission.

19          Obviously, this has been a highly litigated case.

20   There are over 700 entries on the docket sheet.  And

21   essentially, most recently, I had a telephone conference on

22   November 1st of this month to verify the status of pending

23   motions and scheduled this motions hearing two weeks

24   thereafter, which is today, in the hopes that interim

25   distributions may be made to victims as soon as possible.

JA477

 1          As of September 30 of this year, the receivership

 2    estate holds approximately 63.4 million dollars in cash and

 3    proposes an interim distribution of 50 million dollars, and the

 4    Receiver Gregory Milligan has filed a summary of the case as

 5    directed by this Court and the defendant Amanda Merrill has

 6    since filed her own supplementation to that summary.

 7          And those summaries not only address the motions to

 8    be heard but also touch on the disposition of certain matters

 9    here.  Ms. Merrill has raised an issue as to her own owed

10    restitution and we will be addressing that later in these

11    proceedings as well and we will be addressing the matter of her

12    personal property interest.

13          So what is before me is the matter of a plan of

14    distribution to the extent to which there can be some general

15    agreement as to how much money can be immediately distributed

16    to the victims.  And so in that regard, I would note that

17    essentially some of these matters have been previously

18    addressed by me but I'll be glad to hear first from the SEC on

19    this matter and then, Mr. Muse, I'll be glad to hear from you

20    just in terms of an opening statement, if you'd like, just

21    generally in terms of the posture.  You don't need to make an

22    opening statement if you don't want to, Ms. Klein, but I'll be

23    glad to hear from you on behalf of the Receiver.

24          MS. KLEIN:  Thank you, Your Honor.  Generally, as

25    you've noted, the Receiver filed its proposed plan of

JA478

1   distribution toward the end of 2021, and subsequent to that

2   proposed plan there were some objections that were raised.  I

3   think notably there were very few objections.

4        THE COURT:  As I understand it, there are only really

5   essentially 36 claimants that are make something type of --

6   there are 36 claims to the estate in terms of certain

7   complaints, objections to it; is that right?

8        MS. KLEIN:  So we have pending, Your Honor, an

9   Omnibus Claims Objection Motion and within that claims motion,

10  which is on the agenda for today as well, we have resolved

11  those claims which we received a response -- those claims

12  objections to which we received responses.

13       THE COURT:  Okay.

14       MS. KLEIN:  And that includes three settlements that

15  Your Honor has already approved.

16       THE COURT:  Yes.

17       MS. KLEIN:  So what that would do, and to the extent

18  that the Court would like to hear more on that, Mr. Watts is

19  prepared to review the Omnibus Claims Objection Motion, but

20  that one is ripe for your -- there are no further objections to

21  be resolved by the Court in that motion, and so that motion is

22  ripe for the Court to render a decision with no further

23  discussion today.

24       What is still remaining for the Court to consider

25  today is obviously the Dean Group, who Mr. Muse is here on

Motions Hearing - 11/15/22

 1    behalf of today, and --

 2            THE COURT:  Which is the Dean Group or the Virginia

 3    Group, essentially.

 4            MS. KLEIN:  We've referred to them as the Virginia

 5    Group throughout, and so however Mr. Muse would like to refer

 6    to them I'm happy to do so.

 7            THE COURT:  Sure.  So I suspect Mr. Dean is --

 8    somebody from the Dean Group has paid for that privilege, so

 9    that's fine.  (Laughter.)

10            MS. KLEIN:  I'm certain that's true.

11            And the issue with regard to that, from the

12    Receiver's perspective, this group had made -- filed its claims

13    and subsequently the Receiver reviewed the claim.  The plan of

14    distribution was proposed.  In response to that plan of

15    distribution, an objection was received which said that we had

16    calculated the claim amount incorrectly and that, in fact, the

17    Receiver should have utilized what is called in some cases the

18    Maximum Balance Test.

19            And Your Honor, we'll get into it as we get to that

20    motion and there is evidence in the record for the Court to

21    also review.  We have witnesses here to provide additional

22    testimony to the extent necessary.

23            But Your Honor, after review and the Court -- well,

24    the Receiver has asked the Court to approve a distribution

25    method which is referred to as the Rising Tide as opposed to

Motions Hearing - 11/15/22

1    the Maximum Balance method proposed by Mr. Muse's clients.  The

2    Receiver has proposed and continues to submit that is the most

3    equitable and fair plan.

4          Similarly, we have the Connaughton Group objectors

5    that are represented here today by Ms. Miller, and the

6    objection to that is also not necessarily in the Rising Tide

7    methodology but in how the claim itself is calculated.

8          THE COURT:  In which that's the one that relates to

9    third-party settlements that have been enjoyed or for which --

10         MS. KLEIN:  That have been received.

11         THE COURT:  -- Mr. Connaughton and others have, it's

12   alleged, to have benefitted in terms of third-party settlements

13   or lawsuits as to other professionals or whatever, correct?

14         MS. KLEIN:  That's correct.  That's correct.  So in

15   substance, those are the objections that we still have to

16   resolve.  So whereas the methodology that the Receiver has

17   proposed is the Rising Tide, it's really the claim amount and

18   how each of these objectors fit within that plan is what is to

19   be decided by the Court from the Receiver's perspective.

20         With regard to the objections that had been raised by

21   Ms. Merrill, the ultimate result of what that objection is is

22   going to rely -- is going to really depend upon how the SEC

23   case is resolved.  And --

24         THE COURT:  And also, I would note as opposed to the

25   Dean Group and in terms of the matter of the calculation and

Motions Hearing - 11/15/22

 1    the Connaughton Group -- I will say the Connaughton Group in

 2    terms of how third-party settlements will be treated, then you

 3    have Mr. Fera's client who is attending from New Jersey in

 4    terms of Ms. Howley, and as to that, it had to do with her

 5    husband's involvement and what that status does or does not

 6    indicate, correct?

 7            MS. KLEIN:  That's correct.  And I think similarly to

 8    Ms. Merrill's claim, Ms. Howley's claim, those have been

 9    classified as -- classified insider claims and would be

10    subordinated so that the amount of the claim itself wasn't

11    objected to but it's the subordination of that claim so that

12    they would be paid out at the end of any distribution to the

13    extent there are funds that would satisfy victim claims outside

14    of Class 4.

15            THE COURT:  Ms. Klein, let me ask you something.  It

16    seems to me that on these issues, just preliminarily, it seems

17    to me that it probably will be helpful to try to quantify what

18    the variance is because to the extent that I rule, let's say

19    hypothetically in favor of the SEC, those individuals have a

20    right to take an appeal to the Fourth Circuit on that

21    calculation.  So we have to -- I think we ought to at least be

22    able to come -- apart from the legal issues, we should at least

23    be able to come to an agreement as to the implications as to

24    Mr. Connaughton and his group represented here by Ms. Miller or

25    Mr. or Ms. Howley represented by Mr. Fera, or the Dean Group

JA482

Motions Hearing - 11/15/22

1   represented by Mr. Muse and Ms. Clattenburg.  It seems to me we
2   should probably come to some ballpark agreement as to what that
3   amount of money is in dispute, which would remain with the
4   Receiver and could not be distributed in the event that the
5   Fourth Circuit hypothetically, you know, has the audacity to
6   say I'm wrong about something, which they don't do often but
7   they've -- we're laughing here -- done in the past.
8           Does that sound like a reasonable approach to take
9   here today?
10          MS. KLEIN:  Absolutely, Your Honor.
11          THE COURT:  Mr. Muse, for you, I think we will get
12  there, but does it not make sense to try to quantify what you
13  think the variance is, up or down, then the SEC can appeal if I
14  rule in your favor, but that would just have to stay parked in
15  the fund until it's resolved assuming there's an appeal.  Does
16  that sound workable to you?
17          MR. MUSE:  If I may, Your Honor.
18          THE COURT:  Sure.
19          MR. MUSE:  In my opening statement in a moment, I
20  think I can incorporate that perspective and we'll agree to it,
21  I think.
22          THE COURT:  That's fine.  And, Ms. Miller, from your
23  point of view would that make sense, would you think, from the
24  point of view of the Connaughton Group?
25          MS. MILLER:  Yes, Your Honor.  I'd note that the

Motions Hearing - 11/15/22

```
 1    reserve could be set aside that's sufficiently large to
 2    accommodate all possibilities.
 3              THE COURT:  It seems like a statement of the obvious,
 4    but it's sort of gotten buried in all these papers, sort of a
 5    big picture is what we are dealing with here and we can put
 6    that aside.  And, Mr. Della Fera, I think you would agree with
 7    that as well on behalf of Ms. Howley?
 8              MR. DELLA FERA:  I think that's a reasonable
 9    approach, Your Honor.
10              THE COURT:  Okay.  Good.  So at some point I hope we
11    will be able to quantify what the variance is, the disagreement
12    is so that we then make sure that that money is set aside.
13              So, Mr. Watts, you want to be heard on that as well?
14    Do you think that makes sense?  I mean, I sense you may be
15    crunching the numbers on some of these things.  Is that right?
16              MR. WATTS:  Mr. White is actually the one who
17    crunches the numbers, and we have run them preliminarily so I
18    can --
19              THE COURT:  Okay.  So usually the person farthest out
20    from the speaking role has done the most work on these issues.
21    (Laughter.)  That's how it usually works.  And I want
22    Ms. Clattenburg to know I've noticed that as well, so that's
23    the way it works.  Okay.
24              MS. KLEIN:  We are prepared to review that with the
25    Court and provide a --
```

Motions Hearing – 11/15/22

```
 1          THE COURT:  Okay.  We will get there in a little bit.
 2   I'm just saying.  Okay.  Well, thank you, Ms. Klein.
 3          And with that, Mr. Muse, we are going to hear from
 4   you or Ms. Miller or Mr. Fera, any initial comments you want to
 5   make in that regard.
 6          MR. MUSE:  Thank you.  Again, Your Honor, for the
 7   record, my name is Bob Muse and with Ms. Clattenburg, I am
 8   representing the SEC complaint I believe refers to as the Dean
 9   Investors, also known as the Virginia Group, also known as the
10   three entities we're going to discuss today, pointedly CCWB,
11   ECB, and M.C. Dean.
12          Your Honor, as an initial matter, because I think
13   what you're trying to do is set some parameters here, we
14   believe that there are numerous areas in which there is
15   agreement but we have fundamental disagreements with regard to
16   elements that go into what I think bifurcate to some degree the
17   arguments.
18          One is the nature of how the investments occurred,
19   the actual circumstances of how the Deans invested, who they
20   were, and those require, you know, numbers and a very focused
21   sense of detail.  And I will confess in my foggy state I get
22   lost in those numbers to which I have my own brilliant
23   mathematician next to me, Ms. Clattenburg.
24          Having said that, Your Honor, I would say that
25   today's hearing is really an effort to give a profile to what
```

Motions Hearing - 11/15/22

1    the parameters should be.  As I said, we agree with numerous

2    things.  We agree that Rising Tide as a methodology works.

3    Rising Tide as in their papers is not a problem except when

4    they stop short of coming up with what is the problem, mainly

5    withdrawals were reinvested to the point that my client has

6    lost 30 million dollars, in that range.

7           And let me, so that I don't sort of find myself

8    having to back pedal on each of these, these numbers actually

9    have a lot of fluidity to them but the big numbers are not

10    problematic.  And I would suggest to the Court today that it's

11    not significant for purposes of what you must decide, namely

12    how was the funds properly calculated.  Specifically, the Dean

13    Investors object to the Receiver's methodology of

14    calculating -- or the method of calculating the current

15    recovery under Rising Tide by including withdrawals that are

16    then reinvested as part of the Ponzi -- in the Ponzi scheme as

17    part of how reach the pre-receivership distribution.

18           In essence, Your Honor, the circumstances are that

19    Dean put in through his three groups -- and it's a

20    family-related group.  M.C. Dean, I should say, it's a major

21    national, international electrical corporation.  You'll see

22    their trucks around the city at different points and they have

23    over the past 70 years as a Virginia corporation established a

24    big presence in the world of -- the electrical world.  And the

25    number of people that are involved in this, the investors are

JA486

Motions Hearing - 11/15/22

 1    quite limited.  I think altogether maybe six individuals and

 2    the three entities.

 3          So the circumstances of who they are and how they

 4    came to be is noteworthy in the sense that it's always useful

 5    to have some context as to who is in play here.  But I do want

 6    to underscore the fact that these entities that they have were

 7    specifically set up.  These were specially created vehicles,

 8    the three entities I mentioned.  CCWB is a pool fund registered

 9    in Florida; ECB is a pool fund registered in Virginia; and M.C.

10    Dean is part of the Dean Capital Investment, which is part of

11    the Dean Company.  All but the --

12          THE COURT:  And these three entities essentially

13    involve six people?

14          MR. MUSE:  I think altogether six.  They are family

15    members.  Certainly there's Eric Dean, there's Billy Dean, and

16    there's Casey Dean, the founder of the company.  And then two

17    or three other investors and those are their initials.  But I

18    don't think that's of moment in terms of -- because all of them

19    were part of this investment and they were set up to basically

20    engage in what turned out to be a fraudulent off-the-charts

21    Ponzi scheme.  And because the Court has had full engagement

22    with that, one doesn't have to go back over this, but every

23    claimant here basically was flimflammed.  Every claimant was,

24    basically.  And one of the key aspects of this, and I want to

25    go into this in detail when I speak, is that there was a full

JA487

Motions Hearing - 11/15/22

 1    awareness from day one from the time Bob Hur's spoken, made a

 2    presentation at the press conference, that the reinvestment of

 3    funds, not atypical, were part of the Ponzi scheme.  And I will

 4    be curious to hear how Ms. Klein will sort of present that and

 5    how the circumstances of the reinvestment should be looked

 6    because this is going to come down, Your Honor, to in many

 7    respects one case, one case as sort of a programmatic approach

 8    to what's involved, mainly the *Huber* case.

 9              And as the Court looks at that, you will see I

10    believe quite pointedly and I'm sure you've looked at it,

11    because it's their case, it's a case they use to sanction,

12    endorse, promote Rising Tide as a fair and equitable approach.

13    But that case stops at a certain point and this is how Judge

14    Posner gets into it.  I'm not going to stop except to say we

15    have given pause, however, by the situation of an investor who,

16    having withdrawn some funds from the money from the Ponzi

17    scheme, then reinvested.  In other words, in that matter there

18    was a recognition by one of the premiere jurists of our times

19    that the reinvestment of these funds have to be fully looked at

20    if you're going to achieve what is going to be the critical

21    sort of point of reference for the Court, a fair and equitable

22    distribution.

23              Because, as you mentioned in connection with another

24    matter just a bit earlier, Judge, this is an equitable

25    proceeding.  And I would suggest respectfully of the Receiver

Motions Hearing - 11/15/22

 1    who's here in the courtroom today, I would suggest that they
 2    get hung up on a mechanistic approach that follow kind of
 3    leaningly *Huber* words.  But what do we do with these investors
 4    who put the money back in?  And indeed there are others.  We, I
 5    believe, are the only objectors on this basis, and we're the
 6    objectors because in essence the Deans -- the Dean Investors
 7    lost approximately 30 million.
 8         But the Supreme Court as a profile of what equity
 9    courts must do says you employ equity here to meet new
10    situations that demand equitable intervention and to accord all
11    the relief necessary to correct particular injustices.  And I
12    will be having an opportunity to hear from Ms. Klein about how
13    the equity was employed here, but we will be asking the
14    Court -- we will be asking the Court to invoke equity because
15    it's the only guiding principle.  When someone is getting -- we
16    were trying to come up with the right word yesterday, how do
17    you say this, and we kept going, this guy's getting screwed and
18    we see it -- that's not a good word to use in the federal
19    courts.
20         THE COURT:  I don't believe Judge Posner used that
21    one, either.
22         MR. MUSE:  No, he didn't, but he was -- they were
23    flimflammed, they were misled, and they lost this money, no
24    less than any other investor.  And Posner makes a very good
25    point.  I mean, he said if this money was the next day, in

JA489

Motions Hearing - 11/15/22

```
 1    other words, get it back, no one would even think of that.
 2    That's in these critical two paragraphs that begin with the
 3    words I just had.  And I'll come back to that, but our approach
 4    is to say, Your Honor, we can come up with -- we will argue,
 5    and Ms. Clattenburg will take the Court through the actual
 6    movements, the movements of money per the charts pursuant to
 7    information that is generally derived from the Receiver.
 8              I'm a little concerned about the idea of calling
 9    witnesses today because that wasn't in the Court's bailiwick.
10              THE COURT:  No, I know.
11              MR. MUSE:  I don't think that's really the direction
12    we should go in, but certainly clarification from anyone is
13    useful, we would be happy to.
14              And by the way, just to finish off, what I believe
15    happens is per what the Court suggested introducing, and that
16    is you have to figure out how do we make distributions.  And
17    believe me, my client who stands to get something even on their
18    plan wants distributions.  But today I think if we could come
19    up with a protocol which is, okay, we agree, because everyone
20    does, maybe the Court disagrees, but we agree Rising Tide
21    works; however, we say, Rising Tide has to be reconsidered in
22    light of precisely the condition and circumstance that said --
23    that Judge Posner said.  What do you do with funds that have
24    been withdrawn but then reinvested.  And that's the approach
25    and the perspective we'll be offering the Court today.  Thank
```

Motions Hearing - 11/15/22

```
1    you.
2              THE COURT:  Just if I can, we are going to hear more
3    from you in a little while, Mr. Muse, but to the extent there
4    are -- the matter of withdrawing of money and then reinvesting
5    the money back in the Ponzi scheme, what is your contention
6    ultimately as to how many people did that?
7              MR. MUSE:  Well, it's three entities were --
8              THE COURT:  We're not talking about general, I
9    just --
10             MR. MUSE:  Oh, I believe in the papers of the
11   Receiver they say 65 individuals to numbers that we don't know
12   about were employed.  There was a reference there was 65 other
13   potential reinvestors.  But I think, not to shortcut that,
14   Judge, they have not made claims here and I don't know where
15   they stand in terms of how -- their positions.  They apparently
16   have not made that a point of contention.  We have to because
17   so much is involved.
18             THE COURT:  Thank you, Mr. Muse.
19             Ms. Miller, I'll be glad to hear from you on behalf
20   of the Connaughton Group.  I think you're going to need to come
21   forward here and sit in the front row and use that podium here.
22   Between the Plexiglass there and the Plexiglass here and you
23   being in the back of the courtroom, it's a little bit difficult
24   for me so you are going to need to come forward.  I'll be glad
25   to hear your comments on this, as well as then I'll give
```

JA491

Motions Hearing - 11/15/22

1    Mr. Fera an opportunity on this as well.

2            MS. MILLER:  Sure, Your Honor.  Just as a point of

3    procedure, do you just want an introduction here, an opening

4    statement?

5            THE COURT:  Just a summary, just an overall summary

6    on this.

7            MS. MILLER:  Okay.  I'll just give you a summary,

8    Your Honor.

9            THE COURT:  Sure, from your point of view.  Because

10   with respect to the Connaughton Group, it has to do with the

11   matter of distributions in third-party settlements and

12   essentially those that have been in the plan distribution, they

13   have been considered in terms of what distribution should come

14   to the Connaughton Group in light of the third-party

15   settlements, essentially, correct?  Essentially that those

16   distributions being reduced to some extent by third-party

17   settlements; is that right?

18           MS. MILLER:  I would say it's a vast understatement

19   to say they've been considered.  Under the Receiver's plan and

20   distribution, they will be confiscated in their entirety in

21   effect, and I can explain why when it's the appropriate time.

22           And just to be clear, I represent nine objectors who

23   previously, along with six other investors, brought an action,

24   again, 15 plaintiffs in State Court in Montgomery County,

25   Maryland.  And this concerned the feeder fund that is described

JA492

Motions Hearing - 11/15/22

1   in the SEC's complaint as the Bethesda Group.

2          And the 15 clients I had in the prior litigation are

3   presumably 15 of the 38 claimants that the SEC indicates have

4   received distributions from third-party sources.  And I

5   emphasize that is presumably a snapshot taken when the SEC

6   filed -- or when the Receiver filed his papers in November of

7   2021 and they have changed since then.  But whatever relief my

8   clients may obtain here in their capacity as objectors would

9   also presumably apply to the entire cohort of claimants who

10  received third-party distributions.

11          THE COURT:  Well, let me just, so I can clarify, but

12  as I understand it, your group, the Connaughton Group, those

13  claimants, they are among nine of the 36, is that right, as to

14  which there are objections?

15          MS. MILLER:  The Connaughton objectors are nine of

16  what were identified as 38 members of this cohort of persons

17  who received third-party recovery as of a year ago.

18          THE COURT:  But as I understand it, as to those, they

19  have benefitted from third-party settlements, correct?

20          MS. MILLER:  That's correct, Your Honor.

21          THE COURT:  Okay.  But you are saying to whatever

22  extent they have benefitted from third-party settlements, that

23  has been deducted from the proposed distribution to them.

24          MS. MILLER:  Deducted 100 cents on the dollar.

25          THE COURT:  So the money has actually been seized.

Motions Hearing - 11/15/22

```
 1              MS. MILLER:  In effect, not literally.

 2              THE COURT:  Just it's very simple.  I always tell my

 3    law clerks, when you speak to a jury you got to explain

 4    something in two minutes so somebody can understand.

 5              MS. MILLER:  Sure.

 6              THE COURT:  It's very simple.  A lawyer or someone

 7    puts an investor into the Merrill Group which turns out to be a

 8    total fraud and the person suffers as a result.  So then they

 9    turn and they sue the lawyer or the financial advisor and they

10    get what I would call a third-party settlement saying you've

11    committed malpractice, I get a settlement from you.  I gather

12    that's the kind of third-party settlement we are talking about.

13    Am I correct or wrong about that?

14              MS. MILLER:  Partially correct, Your Honor.

15              THE COURT:  Well, then we go to the next step, then.

16    Partially correct means it's correct.  So you have someone that

17    sues a professional saying you put me into -- I mean, when I

18    was in private practice I dealt with this on referral from

19    another law firm because a lawyer in that firm put somebody

20    into an investment and they were potentially going to be sued

21    because it turned out to be a fraud.  So ultimately there would

22    be a settlement with that professional and that's what

23    I concede to be the third-party settlements as to which the

24    Connaughton Group is addressing.  Am I generally correct on

25    that?
```

Motions Hearing - 11/15/22

1          MS. MILLER:  Well, I'd say you're half correct as to

2    the Connaughton Group.  We did sue some professionals but we

3    also sued the principals of the feeder fund.

4          THE COURT:  Okay.  That's fine.  Okay.

5          MS. MILLER:  And I can't speak to who the other 23

6    members of that cohort --

7          THE COURT:  That's fine.  Just for lay terminology,

8    that is what we are talking about here is that to the extent,

9    as I understand it, if I'm wrong Ms. Klein or Mr. Watts can

10   correct me, as I understand it as to what I'll call the

11   Connaughton objections, it has to do with third-party

12   settlements in whatever form and it's your client -- you feel

13   your clients are then having their distributions reduced to

14   some degree because of those and you think that's unfair.

15         MS. MILLER:  I think it's unfair to have it reduced,

16   yes, Your Honor.  Certainly particularly unfair to have it

17   reduced in the precise manner the Receiver has.

18         THE COURT:  I understand.  And that's what I

19   understand.  Why don't you sit in the front row there in case

20   you have to take the podium there.

21         MS. MILLER:  Sure.

22         THE COURT:  Okay.  Ms. Klein or Mr. Watts, have I

23   generally in one or two sentences, correct me, underscored what

24   the Connaughton objections are?  They are third-party

25   settlements of whatever degree.  As to whomever, I don't really

JA495

Motions Hearing - 11/15/22

1   have to worry about, but there was some third-party settlements

2   and some recovery by some of those claimants earlier, correct?

3           MS. KLEIN:  Yes, that's absolutely correct, Your

4   Honor.  There were third-party recoveries.  The basis of those

5   recoveries varied.

6           THE COURT:  Okay.  And the point is that to that

7   extent you have -- I think it's been noted that in a Ninth

8   Circuit case, the Ninth Circuit held that the Court is allowed

9   to reduce a judgment to reflect the amount that a plaintiff or

10  claimant has already received from another party in another

11  proceeding, essentially.  Hypothetically a lawsuit against a

12  lawyer who puts somebody into that investment or investment

13  advisor has been sued and has settled and given them some

14  money.

15          MS. KLEIN:  To the extent that those recoveries

16  helped to defray or diminish the losses that they experienced,

17  yes, that's correct.

18          THE COURT:  And from the SEC's point of view, any

19  distribution is reduced by that amount, essentially.

20          MS. KLEIN:  Any claim amount would be reduced --

21          THE COURT:  Is reduced by that, okay.  I understand.

22          MS. KLEIN:  -- by that.

23          THE COURT:  Thank you.  So with that, I think lastly

24  on this point in terms of summarizing where we are as to these

25  claimants, Mr. Fera, I'll be glad to hear from you on behalf of

JA496

Motions Hearing - 11/15/22

1    Ms. Howley, if I'm pronouncing her name correctly.

2         MR. DELLA FERA:  Yes, Ms. Howley, Your Honor.  Good

3    afternoon.  Sam Della Fera, Chiesa Shahinian and Giantomasi,

4    for Ms. Howley.

5         Your Honor, for her part, Ms. Howley has no objection

6    whatsoever to the Receiver's proposed Rising Tide distribution

7    methodology.  That's the good news.

8         The bad news is that the dispute remains relating to

9    the proposed subordination of Ms. Howley's claim as Ms. Klein

10   referenced which effectively denied the claim because, as the

11   Receiver admits in his motion papers, the subordination of

12   Class 5 claimants, and that's the class to which the Receiver

13   proposes to subordinate Ms. Howley's claim, is not anticipated

14   to receive any distribution, whether it be Rising Tide or some

15   other methodology.

16        So the proposed subordination of Ms. Howley's claim

17   will effectively deny that claim.  And the subordination, Your

18   Honor, is based on the allegation that Ms. Howley and/or her

19   husband, Jack Howley, John Howley, are insiders of GCR and

20   Ms. Howley disputes that characterization of either her or her

21   spouse as an insider and submits that the Receiver has failed

22   to provide this court with sufficient proof to substantiate

23   that conclusion.

24        And so that essentially is the sum and substance of

25   Ms. Howley's objection to the proposed subordination and

Motions Hearing - 11/15/22

```
 1    distribution.
 2             THE COURT:  And that subordination is also based
 3    upon, as I understand it, the determination by the Receiver
 4    Mr. Milligan that your client has not established that the
 5    funds that were invested -- the joint banking account of both
 6    Ms. Howley and her husband were her own separate assets.
 7    That's also the basis of it; is that correct?
 8             MR. DELLA FERA:  Ms. Klein will have to speak for the
 9    Receiver, but that certainly has been raised as an issue by the
10    Receiver in response to Ms. Howley's objection, that's correct,
11    Your Honor.
12             THE COURT:  Okay.  With that, then, thank you very
13    much.  I think that's helped to at least lay some of the
14    framework or guardrails I think, as Mr. Muse said.  So from
15    there I think we are ready to focus in on this.
16             So with that, Ms. Klein and Mr. Watts, I'll be glad
17    to hear from you in greater detail here.
18             MS. KLEIN:  And Your Honor, which would you like to
19    take up first?  To start with the --
20             THE COURT:  Let's go with the Dean Group first, I
21    think, the same order as I just heard from them.
22             MS. KLEIN:  Your Honor, as we heard from Mr. Muse,
23    the case that they have focused in on in their objection and in
24    the effort that they've made to describe to the Court what
25    would be better is this case that was out of Illinois' Seventh
```

Motions Hearing - 11/15/22

1    Circuit, the *Huber* case, *SEC v. Huber*.  And that case was --

2    let's see, I have it here, Your Honor.  But the case was

3    decided in 2012, so about 10 years ago.  And within this case,

4    the Court looked at a number of different possible distribution

5    approaches for the Court to approve.  And the issue was Rising

6    Tide or what they refer to as net investment.

7            And these methods are different, obviously.  The

8    Rising Tide method is what is proposed here in which we've

9    all -- I don't believe there's dispute that it is a favored

10   method and it's certainly one that we continue to support and

11   there's no real objection to a Rising Tide methodology.  But

12   the Rising Tide, what it does is it brings -- the Rising Tide

13   is designed to bring those lowest investors up to a level

14   before other investors are allowed to participate in

15   recoveries.

16           So the Rising Tide is simply that.  It pulls

17   everybody up to an equal level and then at that point others

18   who would participate, who had already gotten recoveries at

19   this level then can participate in the recoveries.  So it has

20   been favored by courts because it is one that addresses losses

21   at the very lowest level.

22           The issues that we've heard and that we'll hear in

23   more detail, I'm certain, from Mr. Muse and his colleague, it's

24   whether or not the withdrawals, whether or not to determine

25   where on that Rising Tide these Dean -- the Dean Group,

Motions Hearing - 11/15/22

 1    Virginia Group claimants should fall.  Where should they fall.

 2    Should they be, you know, at Level X or should they be at a

 3    much lower level so that they would participate earlier in the

 4    recovery process.

 5           The focus that the -- that Mr. Muse's clients and

 6    Mr. Muse has put on *Huber* I think is to some degree misplaced.

 7    What *Huber* says is that the Rising Tide is the methodology

 8    that's accepted and that the judge can see in certain

 9    circumstances where you could have a -- where these withdrawals

10    could be considered reinvestments and not count so that it

11    would just be a rollover.  There could be circumstances in

12    which that might be acceptable.

13           They didn't find it in this case, in the *Huber* case.

14    And, in fact, this whole idea of a Maximum Balance where you

15    just treat those withdrawals as rollovers like they never came

16    out of the scheme, that's never been approved.  This is all

17    *dicta* and continues to be *dicta* 10 years later.  But what he

18    said and what Posner said in this case was that he could

19    foresee circumstances where that would be appropriate.  And

20    what the argument is today is that you're looking at a case

21    where those circumstances are present and I would submit to you

22    as we have in our papers and in the declarations and in the

23    detailed analysis of the bank statements that we did receive, I

24    would submit that this isn't the circumstance.  In fact --

25           THE COURT:  And no disrespect to Judge Posner who's

JA500

Motions Hearing - 11/15/22

1    now retired, I believe, actually appeared as a lawyer in one of

2    the cases here in this court.  Now, with all due respect to

3    Judge Posner, this is *dicta* in his opinion, correct?

4              MS. KLEIN:  It's absolutely *dicta*.  It's not

5    controlling on the Court and it hasn't actually been adopted by

6    any court.

7              THE COURT:  To my knowledge, I could be wrong, I

8    don't know of any great jurisprudence that's followed as *dicta*

9    in that regard.  Has there been?

10             MS. KLEIN:  There has been none that we've been able

11   to identify in the 10 years.

12             THE COURT:  That may be on the failure to other

13   judges; it may be because of the unworkability of his formula.

14             MS. KLEIN:  I think what it is, Your Honor, and this

15   is something that would go into the analysis that was made both

16   before and after this was raised by Mr. Muse is that the

17   difficulty in meeting that example that was *dicta* in this case

18   is very high.  And what we have and what, you know, you'll see

19   as evidence that's in the record here that supports that.  We

20   have bank statements that include -- this isn't a clean -- two

21   of the three that have objected, there was a fourth entity that

22   did not object.  That fourth entity is fine with what's been

23   proposed.  The three entities that have objected, two of them,

24   Your Honor, you will see were not simply taking withdrawals and

25   rolling it back in.  They were, in fact, doing things that were

Motions Hearing - 11/15/22

1    identified as concerns.  They were paying taxes, they were

2    using those -- they were sending the distributions out to

3    members.  There were columns and columns of transactions.  And

4    what has been proposed here by these objectors is that the

5    Receiver comb through to determine exactly what should be

6    considered a direct rollover reinvestment.

7           So what's happened, Your Honor, in this particular

8    case, is that the Deans invested a tremendous amount of money.

9    That's undisputed.

10          THE COURT:  And they withdrew some of the money and

11   apparently haven't withdrawn some.  They put some of that money

12   back in again.

13          MS. KLEIN:  They did, but in the interim they paid

14   taxes, they paid credit cards, they used those funds and they

15   had the benefit of access to the funds that other victims

16   didn't.  And that temporal space in between receiving these

17   large distributions back from the Ponzi scheme, utilizing funds

18   at their discretion, and then determining to reinvest funds at

19   some point later is not what the *dicta* in *Huber* proposes.

20   That's not what they are saying would be a case in which you

21   should consider it to simply a reinvestment vehicle.  Because

22   that's not what happened in two of the largest objectors in

23   this case.  And to the extent that the declarations that were

24   in support identify all of these transactions, if there are any

25   questions, like I said, we have people here who analyzed it.

Motions Hearing - 11/15/22

```
1              THE COURT:  No, I understand.
2              MS. KLEIN:  But I think that primarily, the job of
3     the Court from the Receiver's perspective is to review these
4     proposed plans and to determine what is equitable and fair.
5     And it's an abuse of discretion standard.  And I think that in
6     this instance, as has been noted, there are a number of
7     investors of victims who made deposit -- you know, made
8     investments, received some distribution back.  Because that's
9     the way Ponzis grow is they send money back to get more people
10    to invest.  That's how they grow.  They have to show that money
11    coming back and certainly there was a tremendous amount of
12    money going back to the Deans over time.
13             Certainly a large percentage eventually went back
14    into the Ponzi scheme.  Some of it didn't get the opportunity
15    to come back out because the scheme, you know, it collapsed.
16    But the issue that is here is in order to identify what exactly
17    would meet that definition of a reinvestment, the Receiver
18    would be required to trace all those transactions and then make
19    a subjective judgment call on what actually were funds that
20    legitimately were reinvested.  And not only would they be
21    required to do it for these three entities, but the Receiver
22    and his team would be required to go out to others similarly
23    situated potentially and not only look at the Receiver's
24    records but request detailed records of those accounts so that
25    it could be determined what actually was a reinvestment.
```

Motions Hearing – 11/15/22

```
 1    Because equitable means that you have to determine a process
 2    and then apply it equally across all similarly situated.  And
 3    it was discounted heavily in the response and in the sur-reply
 4    to, in this instance, that administrative burden.  Not only
 5    would it be timely, costly, but the results are inconclusive as
 6    to what might change.  Your Honor --
 7               THE COURT:  As I understand it from the point of view
 8    of the Receiver, the position that's been presented by Mr. Muse
 9    on behalf of the Dean claimants or the Dean Group is
10    essentially that this would require a Net Loss methodology,
11    which is really impossible, that in terms of, as I understand,
12    the Rising Tide methodology has tried to allow more claimants
13    to receive a greater distribution to magnify the number of
14    people who get funds back essentially, correct?
15               MS. KLEIN:  That's absolutely correct, Your Honor.
16    And if we were to --
17               THE COURT:  I mean, quite frankly, it seems clear to
18    me, so the record is clear for purposes of the Fourth Circuit,
19    a Net Loss methodology, the people who could best meet those
20    criteria are the people who invested the funds.  I mean, to try
21    to have the Receiver get into a Net Loss methodology, I don't
22    see how it possibly works, quite frankly.
23               MS. KLEIN:  And I think that to your point, that the
24    goal of this plan and the goal of the Receiver is to make
25    certain that the largest number of investors have the most
```

Motions Hearing - 11/15/22

```
1    recovery possible.
2            THE COURT:  Basically equalized the lowest investors
3    as well in terms of distribution.
4            MS. KLEIN:  That's exactly correct.
5            THE COURT:  Okay.  All right.  Thank you, Ms. Klein.
6    Thank you very much.
7            Mr. Muse, I'll be glad to hear from you now on this.
8            MR. MUSE:  Thank you, Your Honor.
9            THE COURT:  Am I correct, and with no disrespect to
10   Judge Posner who is now retired, I don't see any -- heard of
11   jurisprudence who's followed his dissent.  Not his dissent, his
12   *dicta*.
13           MR. MUSE:  Yes.
14           THE COURT:  Am I correct on that or not?
15           MR. MUSE:  You are.  We've searched cases.  But
16   honestly and respectfully, because you've been sitting looking
17   at cases more than anyone in this courtroom.
18           THE COURT:  I don't know about that.
19           MR. MUSE:  The notion of *dicta* is sort of a red
20   herring.  The reality is that this is subsumed, must
21   necessarily be under the heading of what's fair and equitable.
22           THE COURT:  Right, sure.
23           MR. MUSE:  And so when we hear it's *dicta* and it's
24   got no precedential value, quite frankly, that misses the
25   point.  Judge Posner is saying, wait a minute, you know, it's
```

JA505

Motions Hearing - 11/15/22

```
 1    not like there's a canon of cases like you might have, let's
 2    say, with civil rights or you might have with suppression
 3    hearings in a criminal case or slip-and-fall.  There's no body
 4    of law, range of things that are implicated here are really
 5    reasonably, thankfully, a minimal amount of cases.
 6             But when one says, wait a minute, we've got to pause
 7    and ask the question what happens when somebody reinvests the
 8    money, he says -- and this is where equity kicked in -- and by
 9    the way, I may reference the Supreme Court's decision in
10    Holland versus Florida, which is at 560 US 631, speaks to the
11    very factors that you've been employing for years as a federal
12    judge, how to dispense equity.
13             And it says you've got to be aware of circumstances
14    that come in.  And what Ms. Klein is doing as she is speaking
15    to what is a commendable goal, how to get the most people the
16    most, it basically drives right by what happened to the Deans
17    because, for instance -- and Ms. Clattenburg, if we could have
18    a moment to show you.
19             THE COURT:  Sure.  Go right ahead.
20             MR. MUSE:  We'll show you that the flow of -- you
21    know, what's the essential truism of financial crime cases,
22    follow the money, right?  Follow the money and what did happen
23    here.
24             THE COURT:  I understand.  Your point is that your
25    clients the Dean Group recovered far less of their investments
```

JA506

1    than the Receiver's accounted for, essentially.

2            MR. MUSE:  They had, Your Honor --

3            THE COURT:  And Ms. Klein has noted that we have to

4    look at what was done in the interim with some of these funds,

5    which I'll be glad to -- you can present it with a chart here

6    if you'd like.

7            MR. MUSE:  Yes, but as a matter of presentation,

8    what's missing from this presentation is this sort of somewhat

9    changing perspective that the Receiver is bringing.  When they

10   first objected, we filed our objections, said, hey, wait a

11   minute, you've got to look at these funds.  And there were

12   three entities and the amounts in and out were the matter of

13   much discussion.  Reinvestment was an essential part of this

14   whole scam, the whole thing.

15           When Ms. McDonald, we -- our clients met with the

16   Government early on.  We met with Joyce McDonald and Marty

17   Clarke and others and they had agents present, I believe, and

18   we gave them the profile that showed what Dean did.  It was

19   reinvesting funds.  The nature of these entities was designed

20   to work within the main, the fraudulent groups, the

21   receivership groups that were in play, the three individual

22   defendants and then the myriad of groups.  And what Eric Dean

23   did was he would receive money, sometimes the moneys would be

24   effectively, hey, we're making a distribution.  This is not in

25   the simplistic fashion of either their brief money in, money

1    out.  This is a complex scheme.  The very nature of the scheme

2    is in some respects today being used to penalize.  My client

3    was being seduced and lured like everyone in a Ponzi scheme and

4    a big element of that is reinvestment.  Now, the concept of

5    reinvestment --

6            THE COURT:  If I can, Mr. Muse, I don't mean to

7    interrupt you.

8            MR. MUSE:  Please.

9            THE COURT:  But I've been accused of having a hot

10    bench, and most time most lawyers like the fact that I have a

11    hot bench because I let them -- put myself out there, tell you

12    what I'm thinking so you can respond.

13            MR. MUSE:  Yes, sir.

14            THE COURT:  And earlier in my career having

15    prosecuted these cases and, in fact, represented some people on

16    the other side of the aisle that are jammed up on these things,

17    this goes step by step here.  When your client reinvests and

18    takes money out of a Ponzi scheme, Ms. McDonald very eloquently

19    and correctly noted in the criminal case that the Ponzi scheme

20    gets bigger and bigger.  It feeds itself and it almost -- you

21    can't turn it off because it gets bigger and bigger and bigger.

22            I can take judicial notice of the fact that the only

23    way that Madoff was ever discovered ultimately was he finally

24    just couldn't do it anymore because it got bigger and bigger

25    and said it's over, I just can't, it's like a gargantuan thing

Motions Hearing - 11/15/22

 1    that grows and the reason it grows is because more and more

 2    people want to put money in and the returns keep coming and it

 3    gets bigger and bigger.  It just engulfs everyone.

 4              What I'm focusing on here is to the extent that you

 5    focused upon the fact that you're contesting the calculation

 6    amount because even though you initially withdrew certain money

 7    you then reinvested the money back and you think that

 8    essentially your clients have recovered less of their

 9    investments than is being accounted for.  And my question to

10    you is is that Ms. Klein has noted the use of some funds when

11    there was money pulled out.

12              MR. MUSE:  Right.

13              THE COURT:  But not all of it was reinvested back.

14    Some of it was utilized to whatever degree in perfectly good

15    faith whether to pay expenses, taxes, business costs or

16    whatever, some money was utilized for personal purposes,

17    correct?  Not every penny --

18              MR. MUSE:  Correct.

19              THE COURT:  -- was reinvested back, correct?

20              MR. MUSE:  Your Honor --

21              THE COURT:  Is that not correct or not?

22              MR. MUSE:  Not every penny was.

23              THE COURT:  Okay.  And so to the extent the Dean

24    Group, not every penny is being reinvested back.

25              MR. MUSE:  Right.

JA509

Motions Hearing - 11/15/22

```
 1              THE COURT:  Then to that extent, to the extent that
 2    the Dean Group benefitted to some extent by money coming to
 3    them, these six individuals, these three entities, there is a
 4    benefit, there is a flow that came back to them as a result,
 5    correct?  Why not?
 6              MR. MUSE:  I guess, yes, Your Honor.  And just to
 7    give context, for example, we'll be putting a chart or two
 8    before you in a moment if it's okay that speaks to CCWB, one of
 9    the three enterprises.  I believe there's approximately 11
10    million invested.  About 600,000 comes back on their numbers.
11    240 are our numbers, 240,000.  So --
12              THE COURT:  And I just -- what I'm trying to do,
13    there is a figure that has been addressed by the Receiver to
14    the extent that there's some money that's taken out.  I
15    understand that some of the money went back into the Ponzi
16    scheme to Merrill and his crew, but there's some that came out
17    to be utilized for whatever purposes and to that extent there
18    was a benefit and a return from being in the Ponzi scheme; is
19    that not correct?
20              MR. MUSE:  That's correct in the profile you just
21    gave, Your Honor.  That is correct.
22              THE COURT:  Okay.  And in fairness to your group, I'm
23    not criticizing them, and that's true in all manners.  That's
24    why in these cases you ultimately deal with just horrendous, I
25    guess the phrase would be clawback issues, including
```

JA510

Motions Hearing - 11/15/22

1   philanthropic gifts to institutions and suddenly we have to

2   claw back and get some of the money back.  People can have the

3   most valid reasons for pulling the money out and doing other

4   things, but to the extent that money -- unless 100 cents on the

5   dollars is reinvested back, there has to be some calculation of

6   benefit, is there not, Mr. Muse, benefit to the -- that enures

7   to the Dean Group of some sort, whether it's paying taxes,

8   covering overhead, whatever it is?

9            MR. MUSE:  Fair enough.  That's correct.

10           THE COURT:  Okay.

11           MR. MUSE:  Yes.  That's correct.  But it also then

12   has to go to a little bit -- and there were two dimensions to

13   this.  One is how did that scheme work because it's not like

14   they did a withdrawal.  Funds would be sent, sometimes they

15   would call it a Q1 or do you just want to leave it in.  But if

16   you look at the numbers and I just gave you an example with

17   regard to CCWB, approximately 11 million is in and all but

18   600,000 is back.

19           The idea that the Deans who have set up these

20   entities and were using these entities exclusively almost

21   for -- and I say almost because I don't want to get jumped on

22   because they find one transaction which is *de minimus*, quite

23   frankly, in the analysis.  But what I am concerned about, Your

24   Honor, is their somewhat, respectfully, cavalier attitude about

25   the concept of precedent and how this matter is *dicta*.  No.

JA511

Motions Hearing - 11/15/22

1    Judge Posner is not speaking to a particular case.  He's saying
2    there's a bigger principle out there.  And they talk about it
3    ultimately it gets reduced to two words, Maximum Balance.
4    There are ways this Court can compute, and Ms. Clattenburg will
5    stand to the podium in a moment and just show this, but I think
6    you have to look at the role of the Receiver here vis-à-vis
7    Dean in this context.
8         We submit they made their presentation last November,
9    about a year ago next week.  We responded promptly and said
10   wait a minute, you know, we can agree with Rising Tide, you
11   know, you're not counting the circumstances of reinvestment.
12   Their response, and it sort of should be looked at because they
13   have not considered the reality of Rising Tide vis-à-vis this
14   profile.  Their response is, well, you should have put all
15   these in earlier statements.  You didn't.  And we said, what
16   are you talking about?  Reinvestment has been front and center.
17   In fact, there's a letter that we have dated June 2nd, 2020,
18   from Ms. Klein herself in which we say all of the funds were
19   reinvested.
20        Now, why is that important?  It's important because
21   there's a lot of backhoeing going on here with the Receiver.
22   They quite frankly missed it and now they say to you in their
23   second argument but this would be administratively difficult,
24   and I'm thinking to myself, wait a minute, if you're the
25   largest investor and the response is, hey, you're going to have

JA512

1    to pay the price because it's administratively difficult, we

2    say not so.  My colleague will take you through that.

3          In one of the things that I am a bit concerned about

4    is as we come up with a possibility of reserving funds and

5    holding them, I am concerned with the reality that this has

6    been around for a year through, we can say no one's fault, but

7    that's, you know, the nature of objections, the very nature of

8    objections under the order you set and the nature of objections

9    in every situation where there's going to be an effort to

10    evaluate such a scam and such a defrauding the public where

11    there is a Receiver, all of it has, when there are objections,

12    to some degree everything moves, different funds.

13          And they say administratively difficult.  I know that

14    they have a range of people who are brilliant forensic people.

15    They got Mr. White in the courtroom.  Mr. Milligan's here.

16    That's their job, and there's an algorithm I'm sure that kicks

17    in with this.  This is not so difficult.  But when we have the

18    "sky is falling" perspective being offered in their papers and

19    even now, I'm saying that, wait a minute, my client who may

20    have put approximately 20 percent and, again, I'm not bound to

21    the numbers but it's millions of dollars, he's going to get

22    nothing on their profile with regard to these particular

23    entities because they say reinvestment doesn't count.  And they

24    know because that was the pronouncement of Mr. Hur earlier on,

25    the SEC when we met with Ms. McDonald, and most importantly and

Motions Hearing - 11/15/22

```
1    pointedly when counsel sends us a letter on June 2nd, 2020,
2    what happened to the funds and we say they're reinvested, and
3    their first response to the papers, if you look at them, Judge,
4    is you held back on this.  They say it's a tactic by us.  It's
5    a preposterous profile of what occurred.  And I say to you that
6    because the sort of "sky is falling" perspective of the
7    Receiver is just utterly unfair to my particular client.
8              THE COURT:  Well, I understand your argument here and
9    I think I can cut to the core of this ultimately.  We don't
10   have a whole lot of time for Ms. Clattenburg to have a
11   25-minute tour, but I'm glad to see how you want to crunch
12   these numbers.  Let me just ask you in regards to a specific
13   question, how many distributions did the Dean Group get from
14   the Merrill Group?
15             MR. MUSE:  Your Honor, these are all in the
16   transaction papers and we don't disagree --
17             THE COURT:  We're measuring papers in this case by
18   the ton, not by the pound back in chambers, Mr. Muse.  Just
19   tell me, I mean, how many transactions did -- how many
20   distributions did the Dean Group get from the Merrill Group?
21             MR. MUSE:  Let me give you an example, if I could,
22   Judge, because there's a sheet that talks about the
23   transactions.
24             THE COURT:  I'm just asking --
25             MR. MUSE:  The point is --
```

JA514

Motions Hearing - 11/15/22

1          THE COURT:  -- were there 100, were there 10?

2          MR. MUSE:  I think there were hundreds.  It was just

3     scores and scores of them.  Money in, money out, and then back.

4          THE COURT:  A lot of activity.

5          MR. MUSE:  Absolutely.  It was activity and that was

6     the scam and that's my concern.

7          Okay.  So I stand corrected, there were 21 investors

8     totaling 22 million dollars and 36 distributions.  I'm talking

9     about CCWB.

10         THE COURT:  36 distributions over what?

11         MR. MUSE:  Totaling 11 million and change.

12         THE COURT:  Okay.  36 distributions that came from

13    the Merrill Group back to the Dean Group, your group.

14         MR. MUSE:  No.

15         THE COURT:  Okay.  Over what period of time again?

16         MR. MUSE:  I think they started on -- it ended in

17    before -- I'm not sure.

18         THE COURT:  2018?

19         MR. MUSE:  I think 2015 to 2018, I believe.

20         THE COURT:  Ms. Klein, do you have just a ball -- I

21    need to how many times the Merrill Group sent money back to the

22    Dean Group.

23         MS. KLEIN:  So that's one entity, the 36.  The other

24    entity I think had similar transactions back and forth.

25         THE COURT:  That's as to which entity, the 36?

JA515

Motions Hearing - 11/15/22

```
 1              MR. MUSE:  CCWB.

 2              THE COURT:  And there were another 36 to ECB and

 3      another 36 to M.C. Dean?

 4              MS. KLEIN:  I think the M.C. Dean was not as active.

 5      The M.C. Dean was not as active.  It was more a direct

 6      in-and-out type of entity.

 7              THE COURT:  Can the SEC speak to how many of these

 8      groups had that frequency more than or less than?  How is this

 9      activity compared with other groups from your point of view?

10              MS. KLEIN:  So there are approximately 65, 63 that we

11      have some information on where there were back-and-forth

12      investments.

13              THE COURT:  It consisted of investment quick

14      distributions, in and out, in and out essentially.

15              MS. KLEIN:  And I would note those are not all quick

16      in and out, in and out.

17              THE COURT:  Yes, Mr. Muse?

18              MR. MUSE:  Yeah, that last point's important because

19      the nature of the fraud was to sell these debts and send the

20      money and that's how it would be sent to Dean.

21              THE COURT:  I recall that.  I understand.

22              MR. MUSE:  Yeah, okay.

23              THE COURT:  With that, Ms. Klein -- let me just hear

24      from Ms. Clattenburg in terms of -- yes, Ms. Klein?  I'm sorry.

25              MS. KLEIN:  I was just going to say in terms of
```

JA516

Motions Hearing - 11/15/22

```
1    volume, these two entities, CCWB and ECB, are two of the top
2    five volume distribution receivers.
3              THE COURT:  Right, in terms of activity with the
4    Merrill Group?
5              MS. KLEIN:  That's correct, in dollar amount.
6              THE COURT:  Ms. Clattenburg, I'll be glad to -- if
7    you want to just crunch some numbers, you have got 10 minutes
8    or so.
9              MS. CLATTENBURG:  Yes.  Do you mind if I approach?
10             THE COURT:  We've got the easel up.  That's fine.
11             MS. CLATTENBURG:  We have a packet of these charts
12   that we are going to submit as an exhibit.  I think it's
13   already been marked.
14             THE COURT:  That's fine.  This will be an exhibit for
15   the Claimant CCWB Asset Investments.  We will treat this as
16   essentially Defendant's Exhibit -- or Claimant's Exhibit
17   Number 1.
18             MR. MUSE:  Your Honor, for the record, would be 1-A
19   through each page.  There are five.
20             MS. CLATTENBURG:  Four.
21             MR. MUSE:  Four.
22             THE COURT:  Go ahead, Ms. Clattenburg.  I'll be glad
23   to hear from you.
24             MS. CLATTENBURG:  Do you have a copy?
25             THE COURT:  I think it better if I just -- you're
```

JA517

Motions Hearing - 11/15/22

1    going to put this up on an easel?

2            MS. CLATTENBURG:  Yes, I am.

3            THE COURT:  Maybe I better read a copy of it.  I

4    can't read that.  That's why we have these TV monitors here.

5    It actually works better with the TV monitors.

6            MR. MUSE:  Here's a copy that's been submitted to the

7    Court and we'd ask for the record to be marked as a Dean

8    exhibit.

9            THE COURT:  Thank you.

10           MS. CLATTENBURG:  So I just want to walk through

11   first what the Receiver has proposed as a distribution plan for

12   these three entities.  This is from the Receiver's motion,

13   Exhibit B.  I've just excerpted the three objectors here.

14           What this chart does not include, the Receiver's

15   motion, Exhibit B does not include principal invested, amounts

16   of withdrawals, or amounts of reinvestments.  So we don't

17   dispute the allowed claim.

18           This is the highlighted column is the issue here,

19   it's the current recovery, it's the amount that the Receiver

20   says they have recovered as compared to what they have -- they

21   invested.  And as you can see, I'm going to take as an example

22   CCWB.  The Receiver says that CCWB has recovered 51.39 percent,

23   and I'm going to show you why that calculation is wrong,

24   seriously unfair.  Because it treats reinvestments as

25   withdrawals that they retained.  And I'm also going to explain

JA518

Motions Hearing - 11/15/22

1  why this is not administratively difficult to figure out.

2         So first I'm going to show you the Receiver's method

3  and why this is incorrect and very unfair to these investors.

4  So what I'm using here are all the Receiver's numbers.  These

5  come from -- the 22 million and the 11 million come from the

6  transaction schedules that we approved.  We don't dispute

7  those.

8         So there are two things to keep in mind here:  First

9  is that these are the Receiver's numbers; and second, that

10  CCWB, like the other Dean investors, did not invest with any

11  other entities during this time.  The money that they invested

12  only went to the Ponzi scheme.  And that's important because

13  that means that the money that left CCWB either had to go to

14  the Ponzi scheme or went out as disbursements which the

15  Receiver was speaking about like for taxes, and this is the

16  Receiver's number for disbursements.  Total received for CCWB,

17  680,000.  That's it.

18         So let me show you how the Receiver calculates this.

19  The Receiver says 22 million in, 11 million withdrawn, and so

20  if 11 million was withdrawn and retained, which is what the

21  Receiver is saying in assuming treating CCWB as having

22  benefitted from 11 million, we would expect a balance, an

23  ending balance in CCWB to be close to that.  Instead it's

24  around 100,000 and the only disbursements were 680,000.

25         So the Receiver's method is treating CCWB as

JA519

Motions Hearing - 11/15/22

1    recovering 11 million even though the Receiver's own numbers
2    acknowledge that CCWB didn't recover anywhere near that and
3    lost -- there's still missing 11 million.  So this calculation
4    here the way that the Receiver calculated percent recovery is
5    they said, you know, they recovered and retained 11 million
6    divided by 22 million, that's 51.39 percent.

7           When actually the amount CCWB retained is -- we'll
8    accept the Receiver's number, accept 680,000, accept whatever
9    this small ending balance is.  They actually only recovered
10   800-some-thousand.  So this missing 10 million is not a mystery
11   where it is.  That was already invested and lost, and the
12   Receiver can't deny that.  Their own numbers show that that
13   money had to have gone back into the Ponzi scheme and been
14   lost.

15          So let me show you now how this works under the *Huber*
16   method, which is not a different method.  It's the way to treat
17   reinvestments under the Rising Tide method.  We don't dispute
18   the Rising Tide method.

19          So let's look at the *Huber* method.  And again, these
20   are numbers that Receiver doesn't dispute.  So CCWB invested as
21   principal around 11 million, withdrew a little over 11 of that
22   amount, 11.5-ish, and then reinvested substantially all of
23   that.  And let's accept, we'll agree with the Receiver, there
24   was some amount of disbursement, the Receiver says 680,000,
25   fine.  They recovered 680,000 plus some small amount here as an

JA520

Motions Hearing - 11/15/22

1    ending balance.

2          That means when you calculate current recovery using

3    the Receiver's numbers, they retained, you know, some --

4    something around 800,000 using these numbers, which is if you

5    divide that up by the amount of principal they invested, that's

6    a seven percent actual return.  And let me just show you a

7    little bit more on that.

8          So for CCWB, this is the last page, during the period

9    while investing with the receivership parties, they made no

10   investments with anyone else, they invested capital totaling

11   11.1 million, they received withdrawals and reinvested all of

12   that save for some small amount, we have a small discrepancy

13   there but let's just take the Receiver's number here, worst

14   case 680,000.  So using the Receiver's own numbers, you divide

15   that 680,000 divided by the principal invested, and that leaves

16   them with a worst-case six percent recovery as compared to what

17   the Receiver is doing which is treating them as having

18   recovered 51 percent.

19         And in money terms using the 48.86 number they have

20   in their current distribution plan, that amounts to about 4.74

21   million.  So CCWB here is being bilked millions of dollars by

22   the plan by this erroneous calculation by the Receiver.  And I

23   want to point out this is not administratively difficult

24   because we can accept the Receiver's number here.  The Receiver

25   doesn't have to trace which of the 680,000 came from the Ponzi

Motions Hearing - 11/15/22

 1    scheme and which didn't.  We'll just say okay, that came from

 2    the Ponzi scheme.  Treat it as a recovery.

 3            All you need are two numbers:  the amount recovered,

 4    which counts against us, which is this, say, 680,000, and the

 5    amount invested which is 11.1 million-ish.  And you just divide

 6    680 divided by 11.1 and you have the correct current recovery

 7    of these investors.

 8            So these charts illustrate why these calculations are

 9    seriously unfair here and we ask that the Court direct the

10    Receiver to calculate current recovery by treating the

11    withdrawals that were reinvested as rescinded and then taking

12    the actual amount that was retained and recovered and dividing

13    it by the Maximum Balance in the Ponzi scheme, which is the

14    amount of principal that each one put into the Ponzi scheme.

15            And let me just see if I have anything else I wanted

16    to add.  I just wanted to clarify, yes, the *Huber* case did not

17    say that this did not apply.  I think the Receiver said

18    something along those lines.  What actually happened in *Huber*

19    was no one had raised this objection even though there were

20    objectors to whom it could apply.  So the Court said since no

21    one has objected to this, we're not going to apply it but we

22    note this is a big area of concern where entities that have

23    reinvested could be treated inequitably.

24            Thank you, Your Honor.

25            THE COURT:  All right.  Thank you, Ms. Clattenburg.

JA522

Motions Hearing - 11/15/22

```
1              All right.  Let me just -- Mr. Muse, let me just ask
2      you something here and I'll give time for any response by the
3      SEC and then we will see if there's anything further, then I'll
4      take this under advisement.
5              I note that this submission you've presented here,
6      just correct me if I'm wrong, with respect to CCWB making no
7      investments with anyone else, is that also true for ECB Asset
8      and M.C. Dean?
9              MR. MUSE:  That is correct, Your Honor.
10             THE COURT:  Okay.  And so what we are really talking
11     about is the distributions and reinvestment of CCWB, not ECB
12     Asset or M.C. Dean?
13             MR. MUSE:  Today that's the profile we've given the
14     Court but, again, my understanding is that today you set the
15     guardrails, parameters and then we can say how do these numbers
16     get computed.
17             THE COURT:  Well, I'm just trying to answer the
18     factual matter.  It's a factual matter with respect to just
19     trying to -- because I have a few questions to ask and I want
20     to make sure I understand the factual presentation.  From the
21     point of view of your three clients, what the SEC has called
22     the Virginia Group and you refer to as the Dean Group --
23             MR. MUSE:  Yes, sir.
24             THE COURT:  -- is there a similar calculation that
25     you are proffering as to ECB Asset and M.C. Dean?
```

JA523

Motions Hearing - 11/15/22

```
1            MR. MUSE:  Variations of it, and the numbers are

2      different and the amounts are different and even the

3      percentages in some degree are different.  We have not -- Dean

4      in the second declaration in our sur-reply identifies those

5      numbers.

6            THE COURT:  All right.  And is it true that ECB Asset

7      and M.C. Dean also, as with CCWB, made no investments with

8      anyone else?

9            MR. MUSE:  That is correct, Your Honor, and I believe

10     it's undisputed.

11           THE COURT:  One of the great things about being a

12     judge, Mr. Muse, I've found after years of being a trial lawyer

13     is you spend your entire career of 30 years never asking a

14     "why" question.  You know, first-year, second-year law students

15     learn never ask a "why" question.  Sometimes you make a mistake

16     your second or third year out but as a judge you get to ask

17     "why" questions all the time.

18           Why?  Why was it that your clients are apparently

19     among the most active five and why was it that your clients

20     invested no money with anyone else other than what turned out

21     to be a Ponzi scheme?  Now, I think the answer is quite obvious

22     to me and you can dissuade me of it.  Because you were getting

23     incredible returns.

24           MR. MUSE:  Your Honor, that is exactly how a Ponzi

25     scheme --
```

JA524

Motions Hearing - 11/15/22

```
1              THE COURT:  That's exactly right.  That's my point.
2              MR. MUSE:  That's exactly how they were defrauded.
3              THE COURT:  Well, no, wait a minute.  Wait a minute.
4     That's exactly my point.  My point is this one of the things
5     that's consistent in Ponzi schemes is you get some investors
6     who are willing to put some money into the Bernie Madoffs of
7     the world, but they don't just totally rely upon a Bernie
8     Madoff or a Kevin Merrill, and they may get burned.  And you
9     have others with they are very active and are investors.
10             To me, the most telling thing about your exhibit
11    here, and that's why I asked the question, is that there were
12    no investments with anyone else.  And I suspect the reason
13    there's no investments by your clients with anyone else is
14    because they were getting pretty great returns.  But the
15    problem is, it's like they say, it's too good to be true.  In
16    the case of Ponzi schemes, it is too good to be true.
17             MR. MUSE:  And here is exactly the point because that
18    is a view that almost says, hey, you have been pulled into
19    this, you bought into the scam, you were flimflammed and you
20    kept doing it.  That is true with every one, every single one
21    of these investors to whatever degree.  And certainly as we are
22    looking at the 65 that are in the wings, that's true.  But
23    here's the reality, Judge.  That profile, if it were looked at
24    as a negative perspective, and I'm not hearing that from you,
25    you're just asking why, the question --
```

Motions Hearing - 11/15/22

```
 1              THE COURT:  No, I understand.  The reason I ask a
 2     "why" question, it's what happens in these schemes.
 3              MR. MUSE:  Yeah.
 4              THE COURT:  Without question.  I'm not attributing
 5     any illegality to your clients or complicity.  What I'm saying
 6     is that to the extent that you are posing this calculation upon
 7     the Receiver and you are noting that you're not getting the
 8     credit for the fact that you reinvested this money and that
 9     your client's harm has been minimized, the reason I asked the
10     why question was because your clients obviously took a great
11     risk here for something that at some point had to appear to be
12     too good to be true.  In fact, it was too good to be true.
13              MR. MUSE:  I got to respectfully --
14              THE COURT:  That's okay.  That's why I'm throwing it
15     out there to give you a chance to respond.
16              MR. MUSE:  Look, and first, these are sophisticated
17     investors.  But secondly, as a matter of the investment, you
18     look and you do your due diligence and you see something, and
19     what made this Ponzi scheme work and what made Madoff work and
20     made all these others work is that there's a really insidious
21     scheme behind it.
22              And respectfully, Judge, to the extent that there's
23     any perspective that you're -- any part of your perspective
24     says, hey, too good to be true, you should have been smarter
25     about this, not so.  That's what people do when they invest.
```

JA526

Motions Hearing - 11/15/22

1    And I would also just with one little perspective on this, when

2    you say a withdrawal, there's a process here that goes to the

3    very scam itself which is buying and selling these loans.  And

4    there is a timeline.  That's the nature of the investment

5    itself.  So it begets an opportunity when you say reinvestment,

6    Ms. Clattenburg's bottom-line numbers is the only way to look

7    at this once you conclude that they were devoting these

8    entities to the engagement with these fraudsters and CCWB had

9    the money in and money out, and at the end, they're left with

10   very little, nothing.

11        And so that is -- that's a fraud which should not

12   beget a perspective that they should have known better.  No.

13   They're now paying another price if that is indeed the

14   perspective.  And I don't hear the Court saying that --

15        THE COURT:  Well, no, I understand.  I'm giving you

16   an opportunity to respond to me.  To me it's a very telling

17   fact that they invested no money with anybody other than the

18   Merrill Group.

19        MR. MUSE:  But they are investing through -- I mean,

20   this is, again, a company that's well-to-do, and that is

21   certainly not something that's held against -- I mean, because

22   many people in this are looking for good investments.  They

23   simply have to be part of that world where they invest money

24   and they do well.  But that they're getting a fraud visited

25   upon them of a magnitude that's bigger than anyone else has to

Amanda L. Longmore, RPR - Federal Official Court Reporter

JA527

Motions Hearing - 11/15/22

1    be central to the Court's analysis.

2         THE COURT:  I understand.  Thank you, Mr. Muse.  If

3    you could just finish that up and go on to the next claimants

4    here before lunch and we will take a break.

5         Ms. Klein, I'll be glad to hear from you or Mr. Watts

6    in response to that in terms of these numbers are being thrown

7    out.  Go ahead.

8         MS. KLEIN:  Well, I understand the math that was

9    shared with the Court or at least the presentation.  I did want

10   to address a couple of things that I feel like put this into

11   perspective.  So especially with regard to CCWB's and I think

12   that it's likely that we see this one as an example as opposed

13   to EBC is because EBC changed dramatically from the objection

14   to the sur-reply, as you may have noted in the affidavit -- or

15   the declaration that was in support.  They allege in the

16   initial objection that EBC, you know, had a seven percent

17   recovery and then in the subsequent when it went up to 39.3

18   percent.

19        I think that what this is indicative of substantively

20   is that making these judgment calls on what could be classified

21   as a pure reinvestment when you have, in fact, and this is in

22   the papers and Mr. White's declaration, from January 2015 to

23   August 2018, in the CCWB's bank account records there were 57

24   cash transactions made between that account and the

25   receivership parties, including 21 investments which did total

Motions Hearing - 11/15/22

1    22 million dollars, and 36 distributions from the receivership

2    parties which totaled 11 million 446.  However --

3              THE COURT:  So in a period of eight months there was

4    an 11-million-dollar return on a 22-million-dollar investment.

5              MS. KLEIN:  Exactly.  And then we have --

6              THE COURT:  Which was a 50 percent return in a period

7    of eight months.

8              MS. KLEIN:  In a period of three years, in a period

9    of three years from January 2015 to August of 2018.

10             THE COURT:  I'm sorry.

11             MS. KLEIN:  Yeah.  But what you would see within

12   those transactions was sometimes upwards of four months or

13   more, you have this period of time where those funds come back

14   and they are sitting there, they are being utilized, other

15   money is being deposited into that account from sources that we

16   have no visibility from, and then those funds are being sent

17   back at some point in some amount that's not identical.

18   Sometimes it's more, sometimes it's less than the distribution

19   received.

20             So what is being purported here, understanding what

21   the presentation is and, again, we're not looking at EBC

22   because it's a much different analysis, but I think that what

23   you see is that anybody is going to have to make a judgment

24   call on what equates to that reinvestment.  So what the

25   Receiver has done is developed a distribution or an analysis

JA529

1    that is objective, that can be done objectively without having

2    to dive into the details to make these subjective decisions.

3              THE COURT:  I understand.

4              MS. KLEIN:  Because when you have a subjective test,

5    then you cannot equitably apply it across the board.

6              THE COURT:  I understand your argument.  Thank you

7    very much, Ms. Klein.

8              We are going to break for about 45 minutes for lunch,

9    starting at a quarter of two.  And my goal is we've got to

10   finish within two hours this afternoon.  We have dealt now with

11   the Dean Group.  The one thing I would suggest is that it would

12   be helpful if you and Mr. Muse can agree what the variance is

13   in terms of what the figure is in terms of a variance just

14   during the lunch break.

15             I mean, my point is is that to the extent if I rule

16   in favor of the SEC's position and make this determination as

17   opposed to what Mr. Muse is proffering or vice versa, what is

18   the variance here that we should ensure stays in the account

19   pending an appeal to the Fourth Circuit on that issue.  Does

20   that sound fair to the SEC?

21             MS. KLEIN:  Absolutely.

22             THE COURT:  Mr. Muse, fair to you?

23             MR. MUSE:  Yes, just because it envelops a lot of

24   factors.  We said at the beginning, and I think the Court,

25   maybe Ms. Klein saw it the same way, these numbers change with

Motions Hearing - 11/15/22

1    each entity and no question CCWB has a different profile, not

2    entirely, but the numbers can be computed.  And what we

3    looking -- I guess the Court is saying show me where -- how

4    this may shake down in terms of funds having to be withheld or

5    not.  We can give you our -- we actually have those numbers.

6           THE COURT:  Well, you can give it to me after lunch.

7    What I'm just trying to suggest is that I understand the legal

8    arguments, I'll be ruling, I promise you we are going to rule

9    within the next two or three weeks on these as quickly as we

10   can because I want to get this thing moving and get

11   distributions out, but the point is, in fairness to your

12   client, if I don't rule in your favor, Mr. Muse, I'm trying to

13   see, quantify what the figure is so that we in fairness to your

14   client don't have money distributed that doesn't allow for if

15   I'm reversed by the Fourth Circuit with respect to your

16   argument.  I'm trying to make sure there is money that's still

17   sitting in the account that allows for that type of

18   distribution.

19          So whatever the delta is between these two positions,

20   you all can tell me what it is and we can just, you know, that

21   will be helpful.  I don't think that requires any massive

22   algebraic equation.  Just give me some ballpark figure of what

23   the delta is between the SEC's position and your position and

24   we will just quantify that.

25          MR. MUSE:  And because this matter's in flow, maybe

JA531

Motions Hearing - 11/15/22

```
 1   the SEC is going to take an appeal to the Fourth Circuit
 2   because of the perspective --
 3            THE COURT:  Well, if I rule in your favor, that's
 4   exactly what I said.  My point is, all the things aren't
 5   looking great for you right now, Mr. Muse, okay?  You never
 6   know.  (Laughter.)
 7            We've got a lot of people across the county waiting
 8   until all the returns are in here, and so I mean, my point is
 9   is that I just think we can quantify what the figure is, what
10   the delta is because I'm trying to make sure we allow as much
11   money as possible to go out.  It's a 50-million-dollar
12   distribution.  Right now I see we have 64 million dollars.
13            Ms. Klein, off the top of my head, we have 64 million
14   dollars and you are proposing 50 million go out to the
15   claimants and we have a 14-million-dollar delta.  I'm trying to
16   make sure the 14-million-dollar delta does pay respect to your
17   client.  If that's not enough of a delta, then I need to know
18   that in terms of what I approve going out.  That's in fairness
19   to your client if I don't rule in your favor.
20            MS. KLEIN:  I think that absolutely we can develop a
21   reserve.
22            THE COURT:  I don't need to have exact.  You don't
23   have to crunch it to the dollars and cents.  Just give me a
24   ballpark figure that I can -- in fairness so I can calculate if
25   that's how I rule.
```

JA532

1              Now, with that, Mr. Muse, you are welcome to stay for

2      after lunch but my point is that I think we are going to be

3      finished with the Dean Group as to this and we are ready to

4      move as to the Connaughton Group and then in Mr. Howley and

5      Ms. Howley's claim and we're going to be back to Ms. Merrill.

6      That's what we are going to be doing this afternoon.  So you

7      are welcome to stay but I don't know that you have to.  It's up

8      to you.

9              MR. MUSE:  I would only offer one last observation

10     about where Ms. Klein was.  She said that as they try to figure

11     out what to do and how difficult.  I think she said they're

12     going to have to make judgments.  The problem with that profile

13     what she just offered is that they didn't.  They simply

14     ignored.  They are assuming what they are setting up -- or

15     should be setting up to prove does withdrawals that get

16     reinvested have to be made, appropriate accommodated to.  They

17     are just assuming across the board it's not.

18             THE COURT:  I understand.  I think I've crystallized

19     enough of where we are.  I got the whole gist of it.

20             MR. MUSE:  Thank you.

21             THE COURT:  But again, you're welcome to come back

22     but I don't know that you need to in terms of expenses for your

23     client, and anything after 4 o'clock for you is going to entail

24     much more traffic.  As bad as it is, it's even worse after 4

25     o'clock.

JA533

Motions Hearing - 11/15/22

```
 1              MR. MUSE:  You had me in DC where my firm is, but I
 2      moved to Baltimore four years ago.
 3              THE COURT:  Oh, did you?
 4              MR. MUSE:  Yeah.  No one's getting billed for this
 5      time.
 6              THE COURT:  Well, don't ever say that, Mr. Muse.
 7      Don't ever make a promise you can't live up to when you say no
 8      one's being billed for it.  (Laughter.)  Yes?
 9              MS. PAPPAS:  Your Honor, Cathy Pappas for SEC.  Just
10      one point of clarification.  The Receiver is an arm of the
11      Court independent of the SEC.  The SEC is here and we do
12      support the Receiver's position, and if you want to hear from
13      us, we're happy to talk.
14              THE COURT:  You don't need to on this.  I'm sorry, I
15      misspoke.  The Receiver.
16              MS. PAPPAS:  No problem.
17              THE COURT:  Okay.  With that, we're going to take a
18      now 40-minute break, starting promptly at a quarter of two.  So
19      with that, we stand in recess until quarter of two.
20              (A recess was taken from 1:03 to 1:54 p.m.)
21              THE COURT:  With that, I think that we're next -- and
22      Mr. Muse, I see you are still with us so it's nice to have you
23      here.  (Laughter.)
24              MS. KLEIN:  In order to address this, we have had an
25      opportunity to discuss in the hallway.
```

Motions Hearing - 11/15/22

```
 1              THE COURT:  Just what the delta is, so to speak.

 2              MS. KLEIN:  Yes.  And Your Honor, we have two

 3    potential avenues.  Should we reserve an amount to address

 4    potential claims of those folks that are here and I've had an

 5    opportunity also to speak with Mr. Biddle what that number

 6    would need to be.  So if we were to reserve that amount in

 7    order to go ahead and get an interim distribution approved, we

 8    believe that that interim distribution number could be no more

 9    than 40 million.

10              THE COURT:  Okay.

11              MS. KLEIN:  In the event, and this is where we come

12    to the bump in the road essentially, is that there are these

13    other claimants that potentially are in similar situation as

14    the Virginia Group.  They've not made an appearance here nor

15    objected to their treatment currently, but the issue then

16    becomes is it equitable to apply this same type of methodology

17    to their claim.  So that opens up a much bigger --

18              THE COURT:  I don't intend to do that.

19              MS. KLEIN:  -- potential, which would mean we could

20    only distribute about 20 million.

21              THE COURT:  No, I don't intend to do that.  I'm not

22    going to have this be captive in terms of distribution to

23    claimants on some legal theories that may or may not have any

24    validity, some that may or may not have some question.  I'm

25    certainly willing to find and I don't find that the legal
```

JA535

Motions Hearing - 11/15/22

1    argument has any legal merit and allow it to be submitted to

2    the Fourth Circuit by people who've retained counsel and

3    appeared here in court and have dealt with it, but I'm not

4    going to have this distribution be held captive to people who

5    decide when they are going to come along the way and make the

6    choice.  The clock is running on them and I have very little

7    sympathy or patience for that, quite frankly.  So I'm not

8    inclined to do that.  I'm not.  So we are looking at at least

9    40 million that's going to go out to people pretty quickly, and

10   we'll see.

11          I'm more comfortable, quite frankly, with doing this

12   on a different basis, not a lump sum.  The arguments with

13   respect to the Dean claimants are different than with respect

14   to the Connaughton claimants and with respect Ms. Howley and

15   also totally different with respect to Ms. Merrill.

16   Ms. Merrill is -- the last of many claims is Ms. Merrill are

17   just personal property items, and I'm not inclined to put them

18   in one big lump, quite frankly.

19          It's up to the Receiver how you want to approach

20   this, but I'm prepared to deal with this pretty quickly on

21   these different categories.  But as to the Dean claimants, I

22   understand what the argument is and I'm going to rule on this

23   certainly within the next week.  If we don't get it done by

24   Thanksgiving, certainly by the end of the month.  And so I need

25   a delta as to that.  Can you give me a delta as to the Dean

```
 1   Group?  I'll deal with these individually, group by group.

 2           MS. KLEIN:  Yes.  Group by group I think we would

 3   need to increase the reserve by nine million.

 4           THE COURT:  Nine million.  Do you agree with that,

 5   Mr. Muse?

 6           MR. MUSE:  Yes, Your Honor.  And if I may, Buffey and

 7   I had an opportunity to speak at the break and we heard this.

 8   And so I agree with the Court's proposal.  Let me just offer

 9   one perspective and I'll be out of here in the next five

10   minutes.

11           THE COURT:  Sure.  Don't ever limit yourself to time,

12   Mr. Muse.

13           MR. MUSE:  I'll keep going.

14           THE COURT:  Lawyers are not known for keeping very

15   accurate time in more ways than one, Mr. Muse.

16           MR. MUSE:  Your Honor, here's -- in broad strokes,

17   everyone agrees that the goal here is equity.  Everyone agrees

18   it's fairness.  Let me offer a proposal.

19           The Receiver's appointed by the Court.  That

20   perspective is to be developed for a presentation to the Court.

21   But whether you agree with it or not, whether you agree that

22   Huber has no decisive value, whether it's dicta, whether it's

23   precedent, whatever you agree, Judge Posner is speaking to a

24   broader issue which is how do you get to fairness.  And so that

25   much allows us to say, I don't believe it can be rejected, that
```

Motions Hearing - 11/15/22

```
1   Eric Dean and his investors are going to get an unfair result
2   if somehow you say that --
3           THE COURT:  I understand.
4           MR. MUSE:  But as I say it, because this is business,
5   it is business, you move on, I would propose that the Court
6   issue an order directing the parties, us and the Receiver, to
7   try to see if we can't have some meaningful discussions,
8   settlement discussions to resolve this because that's always in
9   the ambit and it would --
10          THE COURT:  I don't need to have an issued order as
11  to that, Mr. Muse.  You can all decide to do that or not and I
12  can tell you that today is Tuesday, November the 15th, and I'm
13  very much inclined to try to get this done, get an opinion out
14  on this by next Tuesday, November 22nd.  But recognizing the
15  push before the Thanksgiving weekend, I recognize that maybe
16  the opinion wouldn't quite get out by Thanksgiving, although I
17  think it will.
18          So my view is that I'm going to make every effort to
19  get an opinion out on this by next Tuesday, November 22nd, so
20  you have a week to see if you all -- and believe me, anytime
21  between now and then if you all think you come to an agreement
22  as to the delta, jus tell me and that's what we're dealing with
23  as to the delta.  But we have agreement one way or the other, I
24  don't care, but I've got to get this moving.
25          MR. MUSE:  And it's within the range of the Court,
```

Motions Hearing – 11/15/22

```
1    and I understand you have your own perspective on how you give

2    orders so I'm not going to sneak into that role.

3              THE COURT:  No, I'm just saying, you all can do what

4    you want to do.  You are talking about a total agreement as to

5    all your objections or just what the delta should be?

6              MR. MUSE:  No, no, no, no, just to total agreement

7    for everything.  No, we agree with the delta.  That's fine.

8              THE COURT:  That's fine.  I guess my point is is

9    that, you know, this thing's been dragging on for a while and

10   the buck stops with me.  I need to push this along more quickly

11   perhaps than I have and I'm in the saddle on this now and we

12   are going to move.  And the simple fact of the matter is is

13   that I'm not inclined to hold up on an opinion that I'm

14   drafting on these matters and then be told, well, it didn't

15   work out.

16             I just experienced a heavy matter within the last

17   month from Chicago counsel making every effort, and sure enough

18   I got a three-sentence letter, well, we couldn't make it work.

19   So that delayed my schedule and opinion for about a month.

20   Well, I'm not going to put my law clerks through that so I'm

21   going to issue an opinion by next Monday -- next Tuesday,

22   November 22nd, do my best so we get it done well before the

23   Wednesday before Thanksgiving.  So if you all think you can

24   work it out, fine, but we are going to push accordingly.  You

25   know, that's where we are.  And so I'd urge you to do that over
```

Amanda L. Longmore, RPR – Federal Official Court Reporter

Motions Hearing - 11/15/22

```
 1    the next week, but I'm not going to issue an order as to a time
 2    frame to get back to me.
 3              MR. MUSE:  It's obvious --
 4              THE COURT:  Just what I'm saying, next Tuesday it
 5    will be moot because I'm going to issue an opinion.  So if you
 6    reach a resolution in the next seven days over it, that is
 7    perfectly fine and I'll abide by the agreement.  Otherwise,
 8    I'll rule accordingly up, down, and people can preserve their
 9    rights to the Fourth Circuit on that.  And I've got the delta
10    with respect to the Dean claimants and that's fine and that's
11    the delta I'll factor in in terms of the ultimate order for
12    distribution that I've factored in nine million as a delta as
13    to the Dean claimants.
14              MR. MUSE:  Very good.  Thank you, Your Honor.
15              THE COURT:  Thank you very much, Mr. Muse, and safe
16    travels.  It's nice having you here.  Nice to see you.
17              MR. MUSE:  See you.  Thank you, sir.
18              THE COURT:  All right.  With that, we are now going
19    to address the matter of the claimants Jeffrey Connaughton, et
20    al, known as the Connaughton claimants, C-o-n-n-a-u-g-h-t-o-n,
21    for purposes of Ms. Longmore, the court reporter.  And they
22    relate to the matter of the treatment of distributions from
23    third-party settlements.  And as to that, Ms. Miller, I'll be
24    glad to hear from you.
25              MS. MILLER:  Thank you, Your Honor.  Before I talk
```

JA540

Motions Hearing - 11/15/22

1    about Receiverships, I think it's worth considering what the

2    background rule is in other litigation contexts.

3            As I'm sure the Court is well aware, the Collateral

4    Source Rule provides that litigants are not limited as to what

5    they can recover based on what they might have recovered from

6    another source or from the same set of transactions.  That is

7    well-settled common law in Maryland, as well as under federal

8    law.

9            The rule is the same in bankruptcy courts.  When

10   you're in a bankruptcy proceeding and you file a claim, your

11   claim is not reduced by whatever you might have recovered from

12   somebody else who is not one of the bankrupts.  Well-settled

13   law, it was cited in our papers.

14           Certainly true in the context of securities class

15   actions, something I've been doing for the last 30 years.  We

16   don't ask claimants on the claim form how much money you've

17   gotten from other places.  That's not how the world works in

18   almost any type of litigation context.

19           Why should it be different in a receivership?  Well,

20   the Receiver suggests that it's different because the basis for

21   the Collateral Source Rule is so as not to benefit a

22   tortfeasor, i.e. a bad guy.  And here unfortunately the reality

23   is it's a bit of a zero sum game and innocent investors will

24   pay the costs in some sense if one group is favored as opposed

25   to another, right?  This money isn't coming from the bad guys

JA541

```
 1    at this point.  But the same thing would certainly hold true in
 2    bankruptcy court which is analogous in almost all respects.  In
 3    bankruptcy court, the resources are finite by definition.
 4    That's why it's in bankruptcy court.  And frankly, in many
 5    securities class actions I've been involved in we have
 6    different classes of investors fighting for the scraps of
 7    whatever is left of the D&O policy.  That's more the norm than
 8    the exception, frankly, when we're talking about fraud
 9    litigation, and there is really nothing particularly different
10    about receiverships when compared to those contexts.
11         And then let's talk a little bit about receiverships.
12    Well, I think one thing everybody in the room can agree on is
13    we want equity to be done, right?  But what does that mean?
14    Does that mean equity within the receivership, we treat
15    everybody the same who's in the receivership?  If that's the
16    case, we really shouldn't consider what's going on outside of
17    this proceeding.  Those who lost the same amount of money,
18    whether their loss is measured on the Net Loss method or the
19    Rising Tide method should be treated the same in this
20    proceeding, no?
21         Keep in mind these third-party litigations by
22    definition are not against the receivership parties.  If they
23    were, I'm sure the Receiver would have come running into our
24    court and stopped us from suing them.  They are by definition
25    against people who are not in the receivership.
```

JA542

1          And I'm going to talk a little bit about who the

2    defendants were in my clients' case.  I can't speak to the

3    other 25 members of the collateral recovery cohort as it

4    existed in November of 2021, but I can speak about the 15

5    members that I represented.  And first and foremost, we sued

6    somebody named Gary Day.  Gary Day is the leader or proprietor

7    of what is referred to as the Bethesda Group, a feeder fund in

8    the SEC's complaint.  Is Gary Day just an innocent third party

9    or are we just chasing whoever happens to be left around with

10   bags of money because we're a bunch of ambulance chasers?

11   Hardly.

12          Gary Day called Kevin Merrill his very best friend.

13   He bought Kevin Merrill -- he bought himself and Kevin Merrill

14   a set of matching motorcycles.  They would go on casino junkets

15   together.  Yes, some of them were local at the Baltimore

16   Horseshoe.  Others were over at the MGM in Oxon Hill or

17   National Harbor where Gary Day paid off markers in the hundreds

18   of thousands of dollars after money got into his hands from the

19   Ponzi scheme.

20          And Gary Day and Kevin Merrill paid my clients --

21   well, they called it interest.  I realize that nothing is real

22   in a Ponzi scheme, but the notes that my clients got paid 15

23   percent a year payable in quarterly installments, you know, a

24   reasonably generous rate of interest but not terribly unusual

25   for this type of investment.  But at the same time Gary Day had

JA543

Motions Hearing - 11/15/22

1    side deals with Kevin Merrill paying at a minimum 85 percent a
2    year and as much as 180 percent a year.
3           And while Gary Day was calling Kevin Merrill his best
4    friend, at the same time Gary Day was referring in e-mails to
5    Kevin Merrill as his investors as little people who don't ask
6    him any questions, all they want to see is my pretty face.
7    That's who we're suing, Your Honor.  We're suing Gary Day.
8           And when I sued Gary Day, I wasn't sitting on a war
9    chest of tens of millions of dollars.  I only got paid if I
10   won.  I took all the risk in suing Gary Day and my clients came
11   along with me.  My clients flew across the country for their
12   depositions.  My clients had to pull all of their documents.
13   My clients had to be interrogated by the lawyers at Shulman
14   Rogers, the largest law firm in Montgomery County.  I'm going
15   to talk about them in a moment.
16          They didn't do nothing, had this money fall in their
17   hands.  But what the Receiver is proposing today would put them
18   in the same position as people who did nothing.  They have to
19   put all their money in the pot and split it with everybody
20   else, even people who couldn't have had a claim against Gary
21   Day, even people who did not invest through Gary Day and never
22   met him and don't even know who he is.  And that is not fair.
23   That is not equity.  It's certainly not equality.
24          Let me talk about Shulman Rogers.  Did we just chase
25   a law firm because they happened to be standing there holding

JA544

Motions Hearing - 11/15/22

```
 1    bags of money?  No.  In fact, we did not sue Shulman Rogers
 2    when we filed the case initially.  But then we took a look at
 3    their role in the deal and what actually happened, and Shulman
 4    Rogers were the only lawyers at the table.  Kevin Merrill
 5    didn't have any lawyers.
 6            Shulman Rogers put together a deal to sell
 7    unregistered securities in plain violation of the Maryland
 8    Securities Act and the Securities Act of 1933.  And those
 9    securities were sold by unregistered brokers, Gary Day and his
10    partner Jeff May, who were not licensed to sell securities and
11    the lawyers at Shulman Rogers knew all of this.  And we got
12    past a motion to dismiss in front of Judge Albright in
13    Montgomery County Circuit Court who held based on the
14    transaction documents that my clients, the investors were
15    expected beneficiaries of the legal work of Shulman Rogers.
16            Well, anyway, so what we have here is a -- the
17    Receiver points out that there are many instances in which
18    courts have approved setoffs of varying types.  But there are
19    also circumstances in which setoffs have not been affected.  We
20    cite the -- I don't remember the case.  We cited I think the
21    Credit Bancorp case from 2003 in the Southern District of New
22    York where the Court declined to institute any setoff, saying
23    if we do the setoff, nobody's going to have an incentive to
24    chase the Gary Days of this world.  And we should have an
25    incentive.  We shouldn't be punished for doing it.  We should
```

Amanda L. Longmore, RPR - Federal Official Court Reporter

JA545

Motions Hearing - 11/15/22

1  be rewarded and incented, every but as much as the Receiver

2  should be incented for going after bad guys.  I go after bad

3  guys, too.

4       And so what would the result here do?  For my

5  clients, and I can't speak for the other members of the cohort,

6  they would basically get nothing and maybe a few of them would

7  get a few pennies, but they would get about nothing.  And let

8  me explain what the Receiver is doing here that makes it a

9  little bit different from the many cases the Receiver cites

10  that we cite in our papers and both sides discuss.

11       The Receiver plans on, first of all, a 100 percent

12  setoff.  It's not a partial discount.  It's not like 50

13  percent, 25 percent is.  We are going to treat this as if you'd

14  been paid essentially in this receivership 100 cents on the

15  dollar.  It's a complete deduction.

16       Secondly, they are doing it in the context of a

17  Rising Tide distribution which makes it that much more

18  impactful.  And again, my clients are agnostic about whether

19  this should be done through Rising Tide or Net Loss.  Both are

20  very common and I could cite many examples in which both have

21  been done.  But the use of Rising Tide is particularly

22  problematic when there's a 100 percent setoff.  It largely

23  wipes it out and there aren't many cases, frankly, where there

24  has been a 100 percent setoff in a Rising Tide context.

25       Another -- there's really three methods and I'm going

JA546

1    to get to the third -- three ways in which you could temper the

2    effect of the setoff, assuming you wanted to do a setoff, which

3    you do not have to do.  One is reduce the percentage amount

4    from 100 percent to something less than 100 percent.  Second is

5    if not necessarily using that loss distribution, at least allow

6    those members of the collateral recovery cohort to recover what

7    they would have recovered in a Net Loss distribution.  And a

8    third method which was implemented in the *Parrish* case as well

9    as in the Ninth Circuit's decision in *Consultants* is treat

10    distributions from third-party settlements as money that never

11    was invested in the first place rather than money that came

12    out.  That was done as a way of tempering the effect of a

13    setoff in *Parrish*, as well as in *Capital Consultants*.

14         The Receiver likes to distinguish *Capital*

15    *Consultants* -- and again, *Capital Consultants*, let me

16    distinguish it from what the Receiver is proposing to do here,

17    that's the Ninth Circuit case.  It's the only appellate case

18    cited by anybody, and there was a 50 percent setoff, not 100

19    percent.  The setoff was treated as no money and was not

20    treated as money that came in and money that came back out, and

21    it happened to be under a Net Loss calculation.  Very, very big

22    differences from what is being proposed here.

23         The Receiver would distinguish *Capital Consultants* on

24    the ground that, well, things hadn't been settled at that point

25    and they didn't really know it was going to happen.  That's a

Motions Hearing - 11/15/22

```
 1    distinction without a difference, and there is probably no
 2    difference here.  Again, I asked the Receiver a year ago for
 3    information on the other members of the cohort.  The Receiver
 4    refused to give me that information.  We do at least have the
 5    summary information that the Receiver was kind enough to put in
 6    his papers, 38 claimants, about 2.2 million in distributions.
 7    But again, that's a snapshot as of about a year ago.  I don't
 8    know what it is today.
 9              But in any event, for my clients, and I can't speak
10    to the rest of the cohort, what the Receiver is proposing is
11    devastating.  It wipes out everything they did in the
12    litigation against Gary Day and the others in our state court
13    case.  They basically get nothing for their efforts and that is
14    wrong, it is wrong public policy, and I hope Your Honor sees it
15    that way.  If not, another court probably will.
16              THE COURT:  Well, presumably that would be the Fourth
17    Circuit.
18              MS. MILLER:  I know, Your Honor.
19              THE COURT:  I know of no other court that can opine
20    on that, Ms. Miller.
21              MS. MILLER:  That's right.
22              THE COURT:  So in deference to the other court, it
23    would either be the Fourth Circuit or maybe the Supreme Court,
24    but I doubt it would go that high.
25              MS. MILLER:  But I certainly -- you know, for
```

JA548

Motions Hearing - 11/15/22

1    purposes of determining what the delta is here, I would want to

2    know who else is in that cohort as of today.  I'm aware that

3    there are two receiverships in Colorado pertaining to two

4    feeder funds out there.  Are the people who get distributions

5    there going to get wiped out like my clients?  I don't know.  I

6    think those are fair questions and I would need that

7    information in order to evaluate the delta.

8            THE COURT:  Thank you very much, Ms. Miller.

9            MS. MILLER:  You're welcome.

10           THE COURT:  By the way, Ms. Miller, you mentioned

11   your issue as to 100 cents on the dollar as to setoff.  I

12   gather you are making reference to the fact that there may have

13   been legal fees and costs incurred with the ultimate settlement

14   figure that was received by your clients?

15           MS. MILLER:  Well, the Receiver has pointed out, and

16   this is accurate, the Receiver did not consider moneys that

17   went to me, legal fees as money that is received.

18           THE COURT:  I'm not trying to impose myself on the

19   attorney-client privilege.  I'm just saying that your reference

20   is your objection to 100 cents on the dollar and your

21   contention your clients almost get nothing, I gather that there

22   is a -- your point is that your clients did not get 100 percent

23   of the settlement figure that actually went into their pockets;

24   is that correct?

25           MS. MILLER:  I'm not entirely sure what the question

JA549

Motions Hearing - 11/15/22

```
 1    is.
 2              THE COURT:  Well, the question is, which I'm not
 3    asking is does it matter whether there's a contingent fee or
 4    what the fees were.  So it's not complicated.  But to the
 5    extent that you are saying that your clients didn't get 100
 6    cents on the dollar, I have to surmise that some of that is
 7    because of the legal fees came out.  And it's none of my
 8    business as to what the fees were, but I'm giving you an
 9    opportunity to explain to me exactly what would be a fair
10    figure, if it's not 100 cents on the dollar, what would be the
11    fair figure with respect to what actually went to your clients,
12    because that was the thrust of your argument that it was unfair
13    to them.  I'm trying to classify what would be fair in terms of
14    if they did not get 100 cents on the dollar in terms of the
15    settlement that they received, but you are free to indicate
16    what you think that figure would be that actually went to them
17    or not.  I don't know.
18              MS. MILLER:  I think Your Honor's confusing two --
19    well --
20              THE COURT:  This isn't confusing.  I'm asking you a
21    very --
22              MS. MILLER:  I'm trying to answer.  I'll answer it if
23    given an opportunity.
24              THE COURT:  It's not a very difficult question.  It's
25    very blunt, Ms. Miller.  You don't have to tell me what your
```

Motions Hearing - 11/15/22

```
 1   fee was.  You are saying that your clients would be unfairly
 2   treated by not -- by having 100 cents on the dollar reduced and
 3   I'm giving you the opportunity to explain to me very simply
 4   generally what did your clients receive out of the 100 cents on
 5   the dollar what actually -- what amount went to them after fees
 6   and costs were deducted in terms of the Montgomery County
 7   litigation.  What did they get and what did they benefit?
 8            MS. MILLER:  I'm not sure why that matters.
 9            THE COURT:  Well, given that I'm determining what is
10   equitable and you've raised an equitable argument as to what's
11   unfair to your clients, I presume that -- I assume that if
12   there's a $3,000 settlement that went to someone hypothetically
13   that they didn't get $3,000 because there may have been costs
14   or legal fees incurred with it, and I'm giving you an
15   opportunity to explain to me given that you think it's
16   fundamentally unfair, it's within my discretion, it's a matter
17   of equity, okay?  It's a matter of equity and I'm trying to
18   determine given that I'm determining the equity, I'm little bit
19   surprised you don't understand why I'm asking you the question.
20   If you don't want to answer it, you don't have to.
21            MS. MILLER:  I'm happy to answer the question, Your
22   Honor.
23            THE COURT:  Okay.  Then just answer it.
24            MS. MILLER:  I was talking about 100 cents on the
25   dollar in a very different context.  When I said 100 cents on
```

Motions Hearing - 11/15/22

```
 1    the dollar, I was not talking about how much you got that are

 2    attorney's fees in the state court case in Montgomery County.

 3    I was talking about how the Receiver is going to treat the

 4    money that my clients received in terms of the setoff.

 5              50 cents on the dollar in Capital Consultants that we

 6    only discount half the amount they got in the collateral

 7    litigation, that's what I meant by 50 cents and 100 cents.  And

 8    Your Honor -- Your Honor is well aware how contingent fee

 9    litigation works.  My client settled for something less than

10    100 percent of their damages and --

11              THE COURT:  Never mind, Ms. Miller.

12              MS. MILLER:  -- and received something less than

13    that.

14              THE COURT:  I'm doing the best I can for an equitable

15    response and you have been given an opportunity to respond to

16    me and I'll --

17              MS. MILLER:  Of course I got a fee, Your Honor.

18              THE COURT:  Of course you did.  Okay.

19              MS. MILLER:  Okay.  Then why are you asking me

20    something you already know?

21              THE COURT:  Well, I don't mean to get testy with you,

22    Ms. Miller.  I'm trying to be fair to your clients and I'm not

23    asking what your contingent fee was.

24              MS. MILLER:  You think it's a problem that I got a

25    fee?
```

Motions Hearing - 11/15/22

```
 1              THE COURT:  I beg your pardon?

 2              MS. MILLER:  Do you think it's a problem that I got a

 3    fee?

 4              THE COURT:  Of course I don't think it's a problem

 5    you got a fee.

 6              MS. MILLER:  Then why are you asking me about my fee?

 7    Why does it make any difference here?

 8              THE COURT:  Ms. Miller, would you please allow me

 9    to answer?

10              MS. MILLER:  Sure.  You go ahead.  You go ahead.

11              THE COURT:  Well, thank you very much, Ms. Miller.

12    Thank you.  That's what I intend to do.

13              My point is is that to the extent that you say that

14    there is 100 percent deduction as to money that went to your

15    clients and the fundamental unfairness of it, I'm trying to

16    determine in the exercise of my discretion trying to be

17    equitable to all parties the extent to which you can quantify

18    what did go to your clients in terms of the settlement.

19              I understood your argument to be that there is 100

20    percent deduction for a settlement figure.  I don't know what

21    the settlements were with third parties.  I don't know what the

22    settlement was with Gary Day.  I don't know how that worked

23    out.  But you are saying that the Receiver is deducting 100

24    percent of that, whatever it was from the distribution figure,

25    and I'm trying to determine in fairness to your clients that
```

JA553

Motions Hearing - 11/15/22

1    understood what your argument was that they really didn't get

2    exact -- that total amount, it's something less than that.  I

3    can approximate it but I'm trying to give you an opportunity to

4    tell me what you think that figure would have been that they

5    actually received.

6         MS. MILLER:  Sure.  And what the Receiver is

7    deducting is 100 percent of the net that my clients received.

8         THE COURT:  Okay.  That's fine.  Then I misunderstood

9    it and that's fine.  I don't want to know what your fee was.

10        MS. MILLER:  Okay.  Sure, sure.  And I just want to

11   make sure it's apples to apples.

12        THE COURT:  Anything else, Ms. Miller?

13        MS. MILLER:  No, thank you.

14        THE COURT:  Fine.  Then you may be seated.  Thank you

15   very much.

16        MS. MILLER:  Sure.  Sure.

17        THE COURT:  Thank you, Ms. Miller.

18        I'll be glad to hear from you, Ms. Klein.

19        MS. KLEIN:  Thank you, Your Honor.  I want to address

20   a couple of issues and primarily to your point and that this

21   process, this application of an offset to recoveries was

22   something that after review of this particular case and the

23   facts that are discreet to it, we came up with this because

24   there were certain recoveries that clearly put victims in

25   different recovery.

JA554

Motions Hearing - 11/15/22

```
 1              THE COURT:  I understand.

 2              MS. KLEIN:  And specifically the Connaughton Group,

 3     Ms. Miller's clients, sued an individual who is also a net

 4     winner in this case.

 5              THE COURT:  Yes.

 6              MS. KLEIN:  He received through his actions and

 7     through the things that he did to those claims as presumably,

 8     you know, he -- and through distributions from the Merrill

 9     receiverships -- or receivership entities received net winnings

10     which would come back into the estate to be distributed.

11              THE COURT:  I understand.

12              MS. KLEIN:  In this instance, Ms. Miller and her

13     clients pursued those individuals early, they received a

14     settlement early, and they received funds early.

15              THE COURT:  And I gather -- what I probably couldn't

16     get through to Ms. Miller was I'm trying to determine -- to the

17     extent that you determine that there were settlements and

18     moneys distributed, there is a total figure that was

19     distributed in terms of the settlement of which you are aware,

20     without getting into specifics of costs, legal fees, be it

21     hourly, be it contingent, you are dealing with a total figure

22     that was received by those people.

23              MS. KLEIN:  Specifically, Your Honor, actually for

24     the Court's --

25              THE COURT:  And you've set all that out and pulled it
```

JA555

Motions Hearing - 11/15/22

1    out.  Is that what you have done?

2              MS. KLEIN:  That's correct, Your Honor.  And, in

3    fact, it's in the record.

4              THE COURT:  Ms. Miller, please be seated until I ask

5    you to stand and speak and don't seek to interrupt.  Thank you,

6    Ms. Miller.

7              MS. KLEIN:  It's in the docket.  It was filed under

8    seal for the Court at Docket Number 591-1.  It's the last page

9    of that CGL-R50, and it actually lays out the gross settlement,

10   expenses, fees, net distribution, and the individual claims,

11   the amount of distribution they received.  And that's what

12   the --

13             THE COURT:  So there is a definitive figure that

14   exists with respect to the money that was actually received --

15             MS. KLEIN:  That's correct.

16             THE COURT:  -- by those individuals, the Connaughton

17   Group.

18             MS. KLEIN:  That's correct, Your Honor.

19             THE COURT:  Each one of them.  And I gather there are

20   some nine people in that group; is that correct?

21             MS. KLEIN:  There are actually 15 in that group.

22   Nine of them are currently objecting.  The other six did not.

23             THE COURT:  Okay.  So of those nine people we can

24   determine exactly what came into their pockets in terms of my

25   determining the matter of what's equitable or not on this

Motions Hearing - 11/15/22

```
 1    matter.
 2            MS. KLEIN:  That's correct.  That's correct.  Your
 3    Honor --
 4            THE COURT:  That was ECF 591-1?
 5            MS. KLEIN:  Yes, Your Honor.  It's the last page.
 6            THE COURT:  Thank you.  Just making note of that.
 7            MS. KLEIN:  Well, I don't want to repeat what we've
 8    already discussed in the others.
 9            THE COURT:  That's fine.  I understand.
10            MS. KLEIN:  As we've noted, the issue that the came
11    into play in this particular instance and with regard to other
12    settlements that were noted and accounted for and they were
13    noted voluntarily through predominantly all of the victims that
14    gave us information on what other sources that they received,
15    and fundamentally the issue is you have a loss, you have an
16    injury, and there are funds coming in to account for that
17    injury from difference sources.
18            THE COURT:  I understand the legal argument but I was
19    trying to get the equities of it in terms of actually what was
20    received by those people.
21            MS. KLEIN:  And what the Receiver has done throughout
22    this process is taking specifically into account those funds
23    that were coming in to determine what would be equitable
24    because I think the --
25            THE COURT:  I understand.  And again, the
```

Amanda L. Longmore, RPR - Federal Official Court Reporter

JA557

Motions Hearing - 11/15/22

```
1    determination was --

2            MS. KLEIN:  I think --

3            THE COURT:  Again, the determination was is that the

4    figures that was taken for those nine people were the 100

5    percent figure of whatever was distributed out of the

6    settlement and that figure presumably not only included what

7    went to those people but also their legal fees and costs.

8            MS. KLEIN:  No, it's -- I'm sorry, it is only the --

9    yes, it's only that those funds which were actually distributed

10   to the individuals.

11           THE COURT:  Okay.  So I'm looking now at my law clerk

12   Ms. Beleson, I have the distributions with respect to all 15 of

13   those clients, all 15 members of that group.  And this

14   distribution figure is actually what went to them personally in

15   their pockets to them.

16           MS. KLEIN:  That's correct.

17           THE COURT:  That is an answer to the question I was

18   asking of Ms. Miller and that's all I need to know.  Thank you

19   very much.

20           All right.  Ms. Miller, anything else you wanted to

21   say on this now?  You may stand up now.  I didn't want you to

22   interrupt Ms. Klein's presentation.  Go right ahead.

23           MS. MILLER:  I was getting up just in case there were

24   any questions about the facts, but I don't think I have

25   anything further to say, Your Honor.  The amounts that my
```

JA558

Motions Hearing - 11/15/22

1    clients received, my net distributions are what's being

2    deducted and my argument on if the Court's going to do a setoff

3    it should be something less than 100 cents, like 50 cents in

4    *Capital Consultants* would mean that the Receiver would only

5    consider half of their net distribution rather than 100

6    percent.  When I was talking about 50 cents and 100 cents,

7    that's what I was talking about.  I wasn't talking about what

8    my clients got after fees.

9            THE COURT:  I understand.  Thank you very much,

10   Ms. Miller.

11           MS. MILLER:  You're welcome, Your Honor.

12           THE COURT:  Thank you very much.  And with that, I

13   will be addressing this within the next week as well regarding

14   the opinion on this matter in terms of that issue.

15           So I think that we have two more matters to address,

16   and I think the next is with respect to Mr. Fera and the matter

17   of his client, Iwona Howley, if I'm pronouncing her name

18   correctly.

19           And, Mr. Fera, you are still there.  Correct, sir?

20           MR. DELLA FERA:  I'm still here, Your Honor.

21           THE COURT:  All right.  I'll be glad to hear from you

22   with respect to your objection and I believe that, as I

23   understand it, you have objected on behalf of Mrs. Howley to

24   her classification as a Class 5 claimant and that she should be

25   considered a Class 4-A claimant and she contests that she's

JA559

**Securities and Exchange Commission**

**vs.**

USDC - BALTIMORE
'22 NOV 15 PM 5:12

**Merrill, et al.**

Civil No. RDB-18-CV-2844                    **Claimant Dean Investors Exhibits**

| Exhibit No. | Identification | Admitted | Description |
|---|---|---|---|
| 1A | 11/15/2022 | 11/15/2022 | Receiver's Motion, Exhibit B |
| 1B | 11/15/2022 | 11/15/2022 | CCWB: Receiver's Method - $10m Missing |
| 1C | 11/15/2022 | 11/15/2022 | CCWB: Huber Method |
| 1D | 11/15/2022 | 11/15/2022 | CCWB |

Exhibit List (Rev. 3/1999)

JA560

## Receiver's Motion, Exhibit B

| Investor Code | Allowed Claim | | % Loss | Current Recovery | Initial Distribution Rising Tide | | Recovery in Rising Tide | Initial Distribution Net Loss | | Recovery in Net Loss |
|---|---|---|---|---|---|---|---|---|---|---|
| Class 4a | | | | | | | | | | |
| I-0021 [EBC] | $ | 7,930,298.35 | -39.9% | 60.10% | $ | - | 60.10% | $ | 2,233,803.73 | 71.34% |
| I-0022 [MC Dean] | $. | 11,498,134.06 | -82.6% | 17.43% | $ | 4,376,833.00 | 48.86% | $ | 3,238,790.47 | 40.69% |
| I-0019 [CCWB] | $ | 10,826,757.31 | -48.6% | 51.39% | $ | | 51.39% | $ | 3,049,677.30 | 65.08% |

This chart does not include:
- Principal invested
- Amounts of Withdrawals
- Amounts of Reinvestments

# CCWB: Receiver's Method – $10m missing

The Receiver says:
- $22,273,700.48 invested into Receivership Parties
- $11,446,943.17 received by CCWB
- $683,370 total in disbursements from CCWB

Receiver's calculation assumes CCWB recovered and retained **$11,446,943.17 (51.39%)**

But ACTUAL amount of cash retained, per Receiver:
**$683,370 +$125,09.90 = $808,879.90**

**Receiver's calculation leaves approx. $10.75m missing**



Disbursements $683,370

$22,273,700.48 invested

PONZI

CCWB

Ending balance Aug. 2018: $125,509.90

$11,446,943.17 withdrawn

# CCWB: Huber Method

- $11,100,374 invested into Receivership Parties (undisputed)

- $11,100,374 withdrawn
- Nearly all reinvested
- Reinvestments treated as rescinded; total invested is $11,100,374

- $683,370 disbursements

Per Receiver CCWB retained
**$683,370 +$125,09.90 (7.29%)**

**Actual return was 6.15%
($683,370 + $125,509.90) /($11,100,374)**



Disbursements

$683,370

CCWB
Ending balance Aug.
2018: $125,509.90

$11,100,374

$11,446,943.17

>$10,600,000

PONZI

## CCWB

During period while investing with Receivership Parties:

- Made no investments with anyone else

- Invested capital totaling $11,100,374

- Received withdrawals & reinvested all of that, save for $273,862 (worst case: $683,370*)

- Recovered 2.5% of its investment (worst case: 6.15%), compared to Receiver's calculation of 51.39%

- Approx. $5.15M (worst case $4.74M) to raise current recovery to 48.86%

*Worst case scenario uses the numbers from White Decl. ¶5.

JA564

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No.: 1:18-cv-02844-RDB** |
| **v.** ) | |
| ) | |
| **KEVIN B. MERRILL, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

<u>**ORDER GRANTING RECEIVER GREGORY S. MILLIGAN'S MOTION FOR ORDER**</u>
<u>**APPROVING DISTRIBUTION PLAN AND INTERIM DISTRIBUTION**</u>

This matter is before the Court on the Motion for Order Approving Distribution Plan and Interim Distribution filed by the Receiver Gregory S. Milligan (the "<u>Motion</u>") (Dkt. 504). The Court, having considered the Motion and the information submitted in support, responses or objections, if any, the arguments of counsel, and the pleadings on file finds that the Motion should be, and hereby is, GRANTED.

IT IS THEREFORE ORDERED that:

1. The Motion is GRANTED, subject to the Court's ruling on the pending objections to the Motion.

2. The Court finds the distribution plan set forth in the Motion (the "<u>Plan</u>") is fair and reasonable, and is approved, including without limitation:

    a.    The division of those who submitted claims to the Receiver ("<u>Claimants</u>") into five classes based on their relationship to the Receivership Estate;

    b.    The pooling of Receivership Estate assets for distribution;

    c.    The subordination of Class 5 Claimants such that allowed Class 5 Claimants shall not receive any distribution until allowed Class 1, 2, 3, and 4 Claimants

JA565

are paid in full;

d.    The netting of Claimant investments and Claimant recoveries based on their losses in the Ponzi scheme; and

e.    The use of the rising tide methodology to calculate distributions to allowed Class 4 Claimants, and the treatment of Claimant recoveries and net winnings as pre-receivership withdrawals for the purpose of those calculations.

3.    The following Claimants are deemed insiders falling within Class 5: (i) I-0117; (ii) I-0181; (iii) I-0239; (iv) I-0268; (v) I-0104; and (vi) I-0189.  If Relief Defendant Amanda Merrill is unsuccessful on her claims to disputed real and personal property and is determined to have submitted a claim against assets of the Receivership Estate, she will be deemed a Class 5 Claimant.

4.    The Receiver shall reserve sufficient assets to ensure the payment of allowed Class 1, 2, and 3 Claimants and protection of assets in dispute.

5.    Subject to paragraph 4 above, the Receiver is authorized to make an interim distribution of $50,000,000.00 to allowed Class 4 Claimants in accordance with the Plan, withholding and reserving from the distribution the amount sought on disputed claims.

6.    To be eligible for the distribution payment, each allowed Class 4 Claimant must provide the Receiver with a completed and signed W-9 on the most recent form W-9, found at https://www.irs.gov/pub/irs-pdf/fw9.pdf.  The allowed Claimant shall have 90 days from the date the distribution check is issued to negotiate the payment.  To the extent the distribution payment is not negotiated within 90 days from the date of the check, such check shall be canceled, and the underlying funds will remain to the Receivership Estate for distribution to other allowed Claimants in this SEC Action pursuant to the priority established by the Plan or as otherwise ordered by this Court.

JA566

7.     The Court finds that the Receivership Estate is a qualified settlement fund within the

meaning of Section 468B of the Internal Revenue Code.

IT IS SO ORDERED, this 15th day of November, 2022.


_____/s/_____

HON. RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE

3

JA567

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | * | |
| | * | |
| Plaintiff, | * | Civil Action No. RDB-18-2844 |
| | * | |
| v. | * | |
| | * | |
| KEVIN B. MERRILL, *et al.* | * | |
| | * | |
| Defendants. | | |

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

## **MEMORANDUM ORDER**

On September 11, 2018, a grand jury in the District of Maryland returned an indictment

charging Defendants Kevin B. Merrill, Jay B. Ledford, and Cameron Jezierski with numerous

counts, including wire fraud, identity theft, and money-laundering. *See United States v. Kevin B.

Merrill, et al.*, Criminal No. RDB-18-0465 (ECF No. 1, unsealed on September 18, 2018, ECF

No. 12.) On January 8, 2019, a superseding indictment charged an additional defendant,

Amanda Merrill, with conspiracy to obstruct justice. *United States v. Kevin B. Merrill, et al.*,

Criminal No. RDB-18-0465 (Superseding Indictment, ECF No. 60). Kevin Merrill, Jay

Ledford, Cameron Jezierski, and Amanda Merrill have all since pled guilty and were sentenced

by this Court in the criminal case. *Id.* (ECF Nos. 76, 81, 87, 140, 146, 169, 183, 218).

The Securities and Exchange Commission ("SEC") ultimately filed this action alleging

that Kevin Merrill, Jay Ledford, and Cameron Jezierski (collectively, the "Defendants") raised

more than $345 million from over 230 investors to purportedly purchase consumer debt

portfolios. (Compl., ECF No. 1.) The SEC alleges that from at least 2013 to 2018, the

Defendants operated a Ponzi-like scheme that involved, among other things, securities

JA568

offerings "rife with misrepresentations," fake debt, forged signatures, fabricated wire transfers, the movement of millions of dollars into personal accounts, and an elaborate scheme wherein Defendants offered and sold investments in the same debt and/or debt portfolios, to multiple victims. (Compl., ECF No. 1 ¶ 1.) Judgements in this civil action have been entered against Jezierski (ECF No. 181), Jay Ledford (ECF No. 196), and Kevin Merrill (ECF No. 211). On November 6, 2018, the SEC filed an Amended Complaint, adding Amanda Merrill ("Ms. Merrill") and Lalaine Ledford as Relief Defendants.[1] (Am. Compl., ECF No. 50.)

This Court conducted a hearing on November 15, 2022, for oral arguments concerning various pending motions, including the Receiver Gregory Milligan's Motion for Interim Distribution (ECF No. 504) of funds to the victims of this Ponzi scheme. Several parties objected to the Receiver's Motion based on either the proposed framework or personal categorizations within the plan. (ECF Nos. 512, 558, 559, 565). Presently before this Court are objections by Claimants CCWB Asset Investments, LLC, ECB Asset Investment, LLC, and M.C. Dean, Inc. (collectively the "Virginia Group" or "Dean Group") (ECF No. 558) and objections by Claimants Jeffrey J. Connaughton, Tony Davis, Barbara Louderback, Rochelle Katz, Scott D. Oser, Ojas Patel, Pulin Patel, Dhaval Shukla, and Nishant Shukla (collectively the "Connaughton Group") (ECF No. 559). The Court has considered the relevant filings (ECF Nos. 558, 559, 584, *SEALED* 591, 594, 684) and arguments presented during the

---

[1] A "relief defendant" or a "nominal defendant" is someone who is not accused of violating the securities laws but who is nevertheless in possession of funds that the violator passed along to him or her. *See supra* (citing *CFTC v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 191-2 (4th Cir. 2002) ("a nominal defendant is part of a suit only as the holder of assets that must be recovered in order to afford complete relief; no cause of action is asserted against a nominal defendant")). Ms. Merrill's plea of guilty as to obstruction of justice in the criminal case did not implicate her in the Ponzi scheme which is the subject of this securities enforcement action, and she has not been accused of any wrongdoing in this civil case.

hearing. For the reasons explained below, objections by the Virginia Group and the Connaughton Group are OVERRULED.

## BACKGROUND

On November 17, 2021, the Receiver Gregory Milligan submitted a proposed distribution plan for the Receivership Estate and sought authorization for a $50 million interim distribution. (ECF No. 504). The plan creates a hierarchy for distribution and groups Claimants into five classes. *Id.* The classes are divided into priorities based on the types of claims against the receivership. *Id.* The classes include: Class 1: administrative professional fees and claims; Class 2: priority claims; Class 3: secured claims; Class 4a: investor claims; Class 4b: general unsecured claims; Class 5: insider claims. *Id.*

In the instant objections, the parties do not contest their Class appointments, but instead argue against the methodology used to determine their owed distributions. The Class 4a Virginia Group contests that their withdrawals from the Merrill Ponzi[2] scheme should not be considered as recovery from the scheme when those withdrawals were subsequently reinvested into the scheme. (ECF No. 558 at 2). The Class 4a Connaughton Group argues that their third-party settlements should not be counted against their owed distributions. (ECF No. 559 at 4). In applying principles of equity and reasonableness, this Court finds that the Receiver's proposed treatment of the Virginia Group and Connaughton Group in the distribution plan is fair and reasonable, and therefore their corresponding objections shall be overruled.

---

[2] Black's law dictionary defines a Ponzi scheme as a "fraudulent investment scheme in which money contributed by later investors generates artificially high dividends or returns for the original investors, whose example attracts even larger investments." PONZI SCHEME, Black's Law Dictionary (11th ed. 2019).

JA570

### STANDARD OF REVIEW

A district court "has 'broad equitable power' in approving a distribution plan." *Sec. Exch. Comm'n. v. Quan*, 870 F.3d 754, 762 (8th Cir. 2017). "In supervising an equitable receivership, the primary job of the district court is to ensure that the proposed plan of distribution is fair and reasonable." *Sec. Exch. Comm'n. v. Wealth Mgmt. LLC*, 628 F.3d 323, 332 (7th Cir. 2010). "[T]he receiver's choice among allocation schemes [is] one within the discretion of the district court to approve or disapprove, like other aspects of the administration of a receivership." *Sec. Exch. Comm'n. v. Huber*, 702 F.3d 903, 908 (7th Cir. 2012).

"[T]he SEC's charge to enforce the securities laws carries with it the discretion to determine how to distribute recovered profits among injured investors." *Off. Comm. of Unsecured Creditors of WorldCom, Inc. v. Sec. Exch. Comm'n.*, 467 F.3d 73, 84 (2d Cir. 2006). "[D]istrict courts supervising receiverships have the power to 'classify claims sensibly.'" *Wealth Mgmt.*, 628 F.3d 323 at 333 (citing *Sec. Exch. Comm'n. v. Enter. Tr. Co.*, 559 F.3d 649, 651 (7th Cir. 2009)). "This power includes the authority to subordinate the claims of certain investors to ensure equal treatment." *Id.* Relevant to the Class 4 claims, "[r]ising tide appears to be the method most commonly used (and judicially approved) for apportioning receivership assets." *Huber*, 702 F.3d at 906 (collecting cases).

### VIRGINIA/DEAN GROUP OBJECTION

As Class 4a investors, the Virginia Group's owed distribution is calculated using the "rising tide" method under the Receiver's distribution plan. "Under the rising tide method,

4

withdrawals are considered part of the distribution received by an investor and so are subtracted from the amount of the receivership assets to which he would be entitled had there been no withdrawals." *Huber*, 702 F.3d at 905. Consequently, the rising tide method, as compared to the net loss method, inevitably disadvantages those that withdraw from a Ponzi scheme as their distribution relief is less. *Id.* at 906. However, where the percentage of investors that would receive some reimbursement is greater under the rising tide method, such methodology is more likely to "maximize the overall utility of the investors." *Id.* at 907. In *Huber*, the United States Court of Appeals for the Seventh Circuit noted in *dicta* that in a hypothetical situation where an investor reinvests his withdrawal into the Ponzi scheme, a receiver might apply a "maximum balance" approach. 702 F.3d at 907-08. Under this approach, the maximum balance in a Ponzi scheme "should be treated as his investment; the withdrawals, having in effect been rescinded, should be ignored." *Id.* at 907. The Seventh Circuit ultimately declined to pursue such a scenario between there existed no "discussion in case law or commentary of this 'maximum balance' approach." *Id.* at 907-08.

Under the distribution plan, the Class 4a Claimants' owed distribution accounts for pre-receivership withdrawals. (ECF No. 504 at 16). As a result, the pre-receivership withdrawals "are credited dollar-for-dollar from the principal amount they invested with the Receivership Parties." *Id.* The individual entities that comprise the Virginia Group each reinvested their withdrawals and therefore contend that they "received no benefit at the expense" of other investors in the Ponzi scheme, and therefore they "should receive distributions based on their having recovered the portion of their principal investments reflected by those small withdrawals." (ECF No. 558 at 8.) In effect, the Virginia Group argues

5

that the Receiver should instead apply this "maximum balance" approach discussed by the Seventh Circuit. *Id.* at 10. Alternatively, it argues that the Court should otherwise apply a net loss method, as the rising tide method is "unfair and inequitable to Investors and all other victims who have reinvested withdrawals." *Id.*

As the Receiver notes, the Virginia Group's proposed calculations under this "maximum balance" approach have not been adopted by any other court to date. (ECF No. 584 at 1-2). With equity in mind, the Receiver aptly highlights that "the 'maximum balance' approach as requested in the Objection would be extremely difficult from an administrative perspective, would require extensive time and resources that would further diminish the limited assets of the Receivership Estate, and is prone to inaccuracies." *Id.* at 2. Furthermore, and as discussed in this Court's hearing, the concerns and potential solutions explained in *Huber* about reinvestments are dicta; the Seventh Circuit expressly mentioned that there was no precedent for this maximum balance approach. 702 F.3d at 907-08. Despite the Virginia Group's emphasis on their own equitable distribution, their arguments omit the fact that when each entity withdrew money, there was a benefit from that withdrawal, however big or small. Further, the sheer number of transactions between the Virginia Group entities and the Merrill Ponzi Scheme is such that identifying and tracing the origin of all of the Group's funds for each reinvestment would be impracticable. As the Receiver explained during the hearing, the Virginia' Group's proposed method of calculation is a subjective test that is not founded in equity. Accordingly, the Virginia Group's objection (ECF No. 558) is OVERRULED.

**CONNAUGHTON GROUP OBJECTION**

6

JA573

The Connaughton Group is comprised of individuals categorized as Class 4 Claimants that have received money from third-party settlements. According to the distribution plan, the distributions owed to these Claimants is lessened by the amount they received in those third-party settlements. (ECF No. 504). In their objection, the Connaughton Group argues that the distribution calculation has the effect of disincentivizing victims of Ponzi schemes from settling with third parties. (ECF No. 559). The Group asserts that the Receiver should not consider third-party recoveries, or instead should merely factor those recoveries, when making distributions. *Id.* The Receiver has responded that the Connaughton Group's request would "result in these few investors receiving a disproportionately higher recovery on their investment as compared to other victims." (*SEALED* ECF No. 591 at 1). The Receiver appropriately notes that the United States Court of Appeals for the Ninth Circuit has rejected the same argument that the Connaughton Group advances. *Id.* (citing *Sec. Exch. Comm'n. v. Capital Consultants, LLC*, 397 F.3d 733, 743 (9th Cir. 2005).

The Ninth Circuit in *SEC v. Capital Consultants* stated that a "judge is allowed to reduce a judgment in his own court to reflect the amount a plaintiff has already received from another party or in another proceeding." 397 F.3d at 742. This is especially true where there are limited funds and the court attempts to fashion a more equitable distribution of those limited funds. *Id.* Here, this Court rejects the Connaughton Group's objection, namely for the principle that under the Connaughton proposed calculation, the Connaughton Objectors would receive "a disproportionately higher recovery on their investment as compared to other victims." (*SEALED* ECF No. 591 at 1). To illustrate, the Connaughton Group received an average 57.72% percent recovery from their settlement efforts, which is about "9% higher than the

48.86% recovery the most injured investors in this SEC Action will receive from the proposed interim distribution." *Id.* at 6. As the Receiver states, the Connaughton Group will receive distributions from the Estate once the rising tide reaches the 57.72% recovery rate as presently received by the Connaughton Group, so recovery from the Receivership Estate is not wholly precluded. With this Court's broad equitable power, and with fairness and reasonableness in mind, the Connaughton Group's objection (ECF No. 559) is OVERRULED.

<div align="center">

**CONCLUSION**

</div>

Accordingly, IT IS this <u>18th</u> day of <u>November 2022</u>, hereby **ORDERED** that the Virginia Group's objection (ECF No. 558) to Receiver Gregory Milligan's Motion for Order Approving Distribution Plan and Interim Distribution (ECF No. 504) is **OVERRULED**. Similarly, the Connaughton Group's objection (ECF No. 559) is **OVERRULED**.

_____/s/_____
Richard D. Bennett
United States District Judge

<div align="center">

8

</div>

<div align="center">

**JA575**

</div>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>  v.<br><br>KEVIN B. MERRILL et al.,<br><br>    Defendants. | Case No. 1-18-cv-02844-RDB |

**NOTICE OF APPEAL**

CCWB Asset Investments, LLC, EBC Asset Investment, Inc. and M.C. Dean, Inc. appeal to the United States Court of Appeals for the Fourth Circuit from the final judgment overruling their objections to Receiver Gregory Milligan's Motion for Order Approving Distribution Plan and Interim Distribution, entered on November 18, 2022 (ECF 690).

Dated:   December 5, 2022

/s/ Robert F. Muse
Robert F. Muse
Rachel Clattenburg
Ronald Kovner
**LEVY FIRESTONE MUSE LLP**
**Counsel for Appellants**
900 17th Street. NW, Suite 1200
Washington, DC 20006
Tel: (202) 845-3215
Fax: (202) 595-8253
rmuse@levyfirestone.com
rmc@levyfirestone.com
rk@levyfirestone.com

JA576

**CERTIFICATE OF SERVICE**

I certify that on December 5, 2022, I electronically filed this Notice of Appeal using the

Court's CM/ECF system, which serves a copy on all counsel of record.

_____/s/__Robert F. Muse_____

Robert F. Muse